Joseph J. Tabacco, Jr. (SBN 75484)
Todd A. Seaver (SBN 271067)
Sarah Khorasanee McGrath (SBN 263935)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA  94111
Tel.: 415- 433-3200
Fax:  415-433-6282
Email: jtabacco@bermandevalerio.com
        tseaver@bermandevalerio.com
        skmcgrath@bermandevalerio.com

*Attorneys for Plaintiff*
*Government Employees Health Association*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| This document relates to:<br><br>Individual Case No. 3:14-cv-02180-WHO<br><br>GOVERNMENT EMPLOYEES HEALTH ASSOCIATION;<br><br>        Plaintiff,<br><br>        v.<br><br>ENDO PHARMACEUTICALS, INC., TEIKOKU PHARMA USA, INC., TEIKOKU SEIYAKU CO., LTD., ACTAVIS, INC., WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., ANDA, INC., ANDA PHARMACEUTICALS, INC., and VALMED PHARMACEUTICALS, INC.;<br><br>        Defendants. | Individual Case No. 3:14-cv-02180<br><br>**GOVERNMENT EMPLOYEES HEALTH ASSOCIATION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT**<br><br>Date:      November 5, 2014<br>Time:     2:00 p.m.<br>Courtroom: Courtroom 2, 17th Floor<br>Before:   Hon. William H. Orrick |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.   GEHA HAS ADEQUATELY PLEADED ITS STATE LAW CLAIMS ........................3

A.  GEHA Has Article III Standing to Bring its Claims Under the Laws of the States
Where it Purchased Lidoderm and/or Generic Lidoderm.............................................3

B.  GEHA Has Adequately Pleaded Its State Law Antitrust Claims ...............................5

1.  GEHA May Assert Antitrust Claims Under Florida, Massachusetts
and Rhode Island Law ...........................................................................6

2.  GEHA Does Not Assert Class Claims Under Illinois Law.................................6

C.  GEHA Has Adequately Pleaded Its Consumer Protection State Law Claims............7

1.  *Illinois Brick* Does Not Bar GEHA's Consumer Protection
Claim Under Alaska Law.........................................................................7

2.  GEHA is a "Consumer" and May Bring Claims Under
the Consumer Protection Laws of the District of Columbia,
Maine, Massachusetts, Missouri, Montana and Pennsylvania ...........................8

3.  GEHA's Claims Are Actionable Under the Consumer Protection Laws of
Arkansas, Idaho, Michigan, Oregon, Pennsylvania, South Dakota and West
Virginia.................................................................................................10

4.  GEHA Adequately Alleges Consumer Deception Under the Laws of Arizona,
Idaho, Maine, Michigan, Minnesota, New Mexico, New York and
South Dakota .......................................................................................12

5.  GEHA Alleges Requisite Intrastate Conduct Under the Consumer Protection
Laws of New Hampshire, New York and North Carolina ................................15

CONCLUSION....................................................................................................................16

1

## **TABLE OF AUTHORITIES**

2

3

*AFSCME v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*,
No. 08-cv-5904, 2010 U.S. Dist. LEXIS 23181 (E.D. Pa. Mar. 11, 2010) ..................... 9

4

*Bonanno v. Thomas*,
309 F.2d 320 (9th Cir. 1962) ...............................................................16

5

6

*Brookings Mun. Utils., Inc. v. Amoco Chem. Co.*,
103 F. Supp. 2d 1169 (D.S.D. 2000) ........................................... 14

7

8

*California v. ARC Am. Corp.*,
490 U.S. 93 (1989) ....................................................................... 5

9

10

*Certified Question United States Dist. Court Order v. Philip Morris*,
621 N.W.2d 2 (Minn. 2001) ................................................... 13

11

*Ciardi v. F. Hoffmann La Roche, Ltd.*,
762 N.E.2d 303 (Mass. 2002) ...................................................... 6

12

13

*Commonwealth v. TAP Pharm. Prods.*,
885 A.2d 1127 (Pa. Commw. Ct. 2005) .................................... 10

14

15

*Cook, Perkiss & Liehe, Inc. v. Northern California Collection Service, Inc.*,
911 F.2d 242 (9th Cir. 1990) ...................................................... 16

16

17

*Desiano v. Warner-Lambert Co.*,
326 F.3d 339 (2d Cir. 2003) ........................................................ 3

18

*Dix v. American Bankers Life Assurance Co.*,
415 N.W.2d 206 (Mich. 1987) ................................................. 14

19

20

*Dunbar v. Google, Inc.*,
No. 5:12-cv-3305, 2012 U.S. Dist. LEXIS 177058 (N.D. Cal. Dec. 12, 2012) ............ 16

21

22

*Fowler v. Cooley*,
245 P.3d 155 (Or. Ct. App. 2010) ............................................. 11

23

*FTC v. Mylan Lab.*,
99 F. Supp. 2d 1 (D.D.C. 1999) ........................................... 8, 12

24

25

*Gasperoni v. Metabolife*,
No. 00-cv-71255, 2000 U.S. Dist. LEXIS 20879 (N.D. Ill. Sept. 27, 2000) ................ 14

26

27

28

*Gibbons v. J. Nuckolls, Inc.*,
   216 S.W.3d 667 (Mo. 2007) ...................................................................... 10

*Goshen v. Mut. Life Ins. Co.*,
   774 N.E.2d 1190 (N.Y. 2002) ............................................................ 14, 15

*Grimes v. Enter. Leasing Co. of Phila., LLC*,
   66 A.3d 330 (Pa. Super. Ct. 2013) .......................................................... 11

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) .................................................................................. 5

*In re Auto. Parts Antitrust Litig.*,
   No. 12-cv-0103, 2013 U.S. Dist. LEXIS 80338 (E.D. Mich. June 16, 2013) ............... 14

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
   495 F. Supp. 2d 1027 (N.D. Cal. 2007) ........................................... 8, 11, 14

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   123 F.3d 599 (7th Cir. 1997) ................................................................... 15

*In re Cardizem CD Antitrust Litig.*,
   105 F. Supp. 2d 618 (E.D. Mich. 2000) ................................................... 16

*In re Cardizem CD Antitrust Litig.*,
   200 F.R.D. 326 (E.D. Mich. 2001) ............................................................. 5

*In re Chocolate Confectionary Antitrust Litig.*,
   602 F. Supp. 2d 538 (M.D. Pa. 2009) ................................................. 11, 14

*In re Chocolate Confectionary Antitrust Litig.*,
   749 F. Supp. 2d 224 (M.D. Pa. 2010) ..................................................... 15

*In re DDAVP Indirect Purchaser Antitrust Litig. v. Ferring Pharms, Inc.*,
   903 F. Supp. 2d 198 (S.D.N.Y. 2012)...................................... 11, 12, 14, 15

*In re Digital Music Antitrust Litig.*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011)................................................. 15, 16

*In re Ditropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007) ..................................................... 4

*In re Flonase Antitrust Litig.*,
   815 F. Supp. 2d 867 (E.D. Pa. 2011) ......................................................... 3

*In re Graphics Processing Units Antitrust Litig.,*
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ............................................................. 4

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.,*
    350 F. Supp. 2d 160 (D. Me. 2004) ........................................................... 10, 11

*In re Nexium (Esomeprazole) Antitrust Litig.,*
    297 F.R.D. 168 (D. Mass. 2013) ..................................................................... 5

*In re Processed Egg Prods. Antitrust Litig.,*
    851 F. Supp. 2d 867 (E.D. Pa. 2012) ............................................................... 9

*In re Terazosin Hydrochloride Antitrust Litig.,*
    220 F.R.D. 672 (S.D. Fla. 2004) ................................................................. 4, 5

*In re TFT-LCD Antitrust Litig.,*
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ......................................................... 14

*In re Wellbutrin XL Antitrust Litig.,*
    260 F.R.D. 143 (E.D. Pa. 2009) ..................................................................... 4

*In re Wellbutrin XL Antitrust Litig.,*
    282 F.R.D. 126 (E.D. Pa. 2011) ................................................................. 4, 5

*LaChance v. U.S. Smokeless Tobacco Co.,*
    931 A.2d 571 (N.H. 2007) ........................................................................... 15

*Mack v. Bristol-Myers Squibb Co.,*
    673 So. 2d 100 (Fla. Dist. Ct. App. 1996) ....................................................... 6

*McKinnon v. Honeywell Int'l, Inc.,*
    977 A.2d 420 (Me. 2009) ......................................................................... 9, 13

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
    647 N.E. 2d 741 (N.Y. 1995) ....................................................................... 14

*Pa. Emple. Benefit Trust Fund v. Zeneca, Inc.,*
    710 F. Supp. 2d 458 (D. Del. 2010) ............................................................... 8

*Ports Petrol. Co. v. Nixon,*
    37 S.W.3d 237 (Mo. 2001) ........................................................................... 9

*Rojas v. Gen. Mills, Inc.,*
    No. 12-cv-5099-WHO, 2014 U.S. Dist. LEXIS 41315 (N.D. Cal. Mar. 26, 2014) .......... 2

*Shaw v. Marriott Int'l, Inc.,*
    605 F.3d 1039 (D.C. Cir. 2010) ................................................................. 9

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC,*
    737 F. Supp. 2d 380 (E.D. Pa. 2010) ................................................ 4, 10, 11

*Sheet Metal Workers Nat'l Health Fund v. Amgen,*
    No. 07-5295, 2008 U.S. Dist. LEXIS 62181 (D.N.J. Aug 12, 2008) ........................... 16

*Soares v. Lorono*,
    No. 12-cv-5979-WHO, 2014 U.S. Dist. LEXIS 24674 (N.D. Cal. Feb. 25, 2014) ......... 2

*State by Humphrey v. Philip Morris, Inc.,*
    551 N.W.2d 490 (Minn. 1996) .................................................................. 13

*State ex rel. Bryant R&A Inv. Co., Inc.,*
    985 S.W.2d 299 (Ark. 1999) .................................................................. 11

*W. Acceptance Corp. v. Jones (In re W. Acceptance Corp.),*
    788 P.2d 214 (Idaho 1990) .................................................................. 11

**Federal Rules**

Fed. R. Civ. P. 15(a) .......................................................................... 16

**State Statutes**

10 L.P.R.A. §§ 251, *et seq.* ..................................................................... 1
73 Pa. Stat. §§ 201-1, *et seq.* ................................................................. 11
740 Ill. Comp. Stat. 10/1, *et seq.* ............................................................. 6
740 Ill. Comp. Stat. 10/7(2) ................................................................... 7
Alaska Stat. § 01.10.060 (a)(8) ................................................................ 8
Alaska Stat. §§ 45.50.471, *et seq.* ............................................................ 8
Alaska Stat. § 45.50.531(a) .................................................................... 8
Ariz. Rev. Stat. §§ 44-1521, *et seq.* ......................................................... 12
Ariz. Rev. Stat. § 44-1521(5) ................................................................. 12
Ariz. Rev. Stat. § 44-1521(7) ................................................................. 12
Ariz. Rev. Stat. § 44-1522(A) ................................................................. 12
Ark. Code Ann. §§ 4-88-101, *et seq.* ......................................................... 10
Ark. Code Ann. § 4-88-107(a)(10) ............................................................. 10
D.C. Code § 28-3901(a)(2) ...................................................................... 9
D.C. Code § 28-3905(k)(1)(A) ................................................................... 9
Fla. Stat. §§ 501.201, *et seq.* ................................................................ 6
Haw. Rev. Stat. § 480-2 ........................................................................ 1
Idaho Code Ann. §§ 48-601–619 ................................................................. 11

Kan. Stat. §§ 50-623, *et seq.* ............................................................................ 1
Mass. Gen. Law ch. 93A, §§ 1–11 ................................................................... 6, 9
5 Me. Rev. Stat. § 206 ........................................................................................ 9
5 Me. Rev. Stat. § 213 ........................................................................................ 9
5 Me. Rev. Stat. § 213(1) .................................................................................... 9
Mich. Comp. Laws §§ 445.901, *et seq.* ...................................................... 11, 14
Minn. Stat. § 8.31(3a) ........................................................................................ 13
Minn. Stat. § 325F.69 ........................................................................................ 13
Minn. Stat. § 325F.69(1) .................................................................................... 13
Minn. Stat. Ann. §§ 325D43–48 ........................................................................ 13
Minn. Stat. Ann. § 325D44(1)(13) ..................................................................... 13
Mont. Code Ann. §§ 30-14-102(1), *et seq.* ...................................................... 10
Mont. Code Ann. § 30-14-102(6) ....................................................................... 10
N.C. Gen. Stat. §§ 75-1.1, *et seq.* .................................................................... 15
N.C. Gen. Stat. §§ 75-1.1(a) .............................................................................. 15
N.H. Rev. Stat. Ann. §§ 358-A:2 ....................................................................... 15
N.M. Stat. Ann. § 57-12-2 .................................................................................. 13
N.Y. Gen. Bus. Law §§ 349, *et seq.* ........................................................... 14, 15
Or. Rev. Stat. § 646.605(4) ................................................................................ 11
Or. Rev. Stat. §§ 646.607, *et seq.* ................................................................... 11
Or. Rev. Stat. § 646.638 .................................................................................... 11
S.D. Code Laws §§ 37-24-1, *et seq.* .......................................................... 11, 14
Vernon's Missouri Stat. §§ 407.010, *et seq.* ...................................................... 9
Vernon's Missouri Stat. § 407.010(5) ................................................................... 9
Vernon's Missouri Stat. § 407.025 ....................................................................... 9
W. Va. Code § 46A-6-102 ................................................................................... 12

# INTRODUCTION

Plaintiff Government Employees Health Association ("GEHA" or "Plaintiff") is the second-largest national health plan and the second-largest national dental plan serving federal employees, federal retirees and their families. First Amended Complaint, MDL Dkt. No. 71 ("GEHA FAC" or the "Complaint"), ¶ 21. GEHA provides health benefits to nearly 1.5 million covered lives with federal employee members residing in all 50 states as well as the District of Columbia. *Id.* In this action, GEHA charges that Defendants Endo Pharmaceuticals, Inc., Teikoku Pharma USA, Inc., and Teikoku Seiyaku Co., Ltd. (collectively "Endo"), and Actavis, Inc., Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., Anda, Inc., Anda Pharmaceuticals, Inc., and Valmed Pharmaceuticals, Inc. (collectively "Actavis")[1] have illegally delayed generic competition for Lidoderm, causing GEHA to overpay for Lidoderm products in all 50 states and the District of Columbia.

On June 13, 2014, GEHA filed its First Amended Complaint, asserting claims for damages resulting from (1) violations of monopolization laws of twenty-three states and the District of Columbia and Puerto Rico;[2] (2) violations under the antitrust laws of twenty-seven states and the District of Columbia; and (3) violations of unfair trade practices and consumer protection laws of thirty-six states and the District of Columbia.[3] GEHA also seeks restitution for unjust enrichment under the common laws of forty-eight states (not Ohio and Indiana) and the District of Columbia. GEHA FAC ¶¶ 125-218. Similar claims have been asserted against

---

[1] Watson and Actavis (a subsidiary of Watson) are referenced interchangeably throughout this brief. *See* GEHA FAC ¶ 27.

[2] GEHA has not purchased Lidoderm products in Puerto Rico during the relevant time period. Accordingly, GEHA voluntarily withdraws its antitrust and monopolization claims under the Puerto Rico Anti-Monopoly Act ("PRAA"), 10 L.P.R.A. §§ 251, *et seq.*, GEHA FAC ¶¶ 130(t); 138(t); 150(v); 158(u), as well as its unjust enrichment claim under Puerto Rico common law, *id. ¶¶* 205-18. This moots Defendants' argument in Section VIII.B.1. with respect to Puerto Rico. *See Defs' MTD Br.* at 32.

[3] GEHA voluntarily withdraws its consumer protection claims included within its Fifth Claim for Relief under the following two states' statutes: Hawaii Unfair Competition Law, Haw. Rev. Stat. § 480-2 (GEHA FAC ¶ 173), and the Kansas Consumer Protection Act, Kan. Stat. §§ 50-623, *et seq.* (GEHA FAC ¶ 177). This moots Defendants' arguments at Sections VIII.B.2 and 3 with respect to these statutes. *See Defs' MTD Br.* at 35–36.

Defendants by a class of Direct Purchaser Plaintiffs ("DPPs"), Dkt. No. 70, and End-Payer

Plaintiffs ("EPPs"), Dkt. No. 71.  These three actions are constituent cases in this MDL.

On July 28, 2014, all Defendants filed a single joint motion to dismiss GEHA's, the

DPPs', and the EPPs' complaints ("*Defs' MTD Br.*").  MDL Dkt. No. 95.  To avoid redundancy

and unnecessary burdens, GEHA joins Sections I, II, III.A–G, III.I.2, III.I.4, and III.J, of the

DPPs' and EPPs' joint brief ("*Joint Br.*"), that provide the factual background relevant to this

motion and address the arguments raised by Defendants in Sections IV (*Defs' MTD Br.* at 13-15

(Defendants' Authorized Generic License is a *Per Se* Violation)), V (*Defs' MTD Br.* at 16-20

(Anticompetitive Conduct of Defendants)), VI (*Defs' MTD Br.* at 21-24 (Injury Stemming from

Reverse Settlement)), VII (*Defs' MTD Br.* at 24-26 (Monopolization Claims)), Section VIII.B.1

(*Defs' MTD Br*. at 32-33 (with respect to indirect purchaser standing under Rhode Island law));

VIII.C.3. (*Defs' MTD Br*. at 37 (with respect to businesses' abilities to assert claims under the

Massachusetts Consumer Protection Act)) and VIII.D. (*Defs' MTD Br*. at 41-46 (Unjust

Enrichment)) of their brief.  GEHA files this opposition separately to address Defendants'

arguments regarding GEHA's Article III standing, its standing to pursue antitrust claims in

Florida, Illinois and Massachusetts and the legal viability of its consumer protection claims.[4]

## ARGUMENT

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege 'enough facts to

state a claim to relief that is plausible on its face.'"  *Soares v. Lorono*, No. 12-cv-05979-WHO,

2014 U.S. Dist. LEXIS 24674, at *4 (N.D. Cal. Feb. 25, 2014) (Orrick, J.) (citing *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 556 (2007)).  "A claim is facially plausible when the plaintiff pleads

facts that 'allow the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The "Court

must 'accept factual allegations in the complaint as true and construe the pleadings in the light

most favorable to the nonmoving party.'"  *Rojas v. Gen. Mills, Inc.*, No. 12-cv-05099-WHO,

---

[4] Unlike the EPPs, GEHA is not pursuing claims on behalf of a class.  In addition, GEHA asserts state law consumer protection claims that are not asserted by the EPPs.  *See Defs' MTD Br*. at Appendices 2 & 3.  These GEHA specific facts and claims are addressed herein.

2014 U.S. Dist. LEXIS 41315, at *6-7 (N.D. Cal. Mar. 26, 2014) (Orrick, J.) (quoting *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008)).

## I.   GEHA HAS ADEQUATELY PLEADED ITS STATE LAW CLAIMS

### A.   GEHA Has Article III Standing to Bring its Claims Under the Laws of the States Where it Purchased Lidoderm and/or Generic Lidoderm

Defendants argue that GEHA's standing is limited to its purchases in Missouri—the state in which GEHA is incorporated and has its principal place of business, GEHA FAC ¶ 21—because GEHA "gives no basis to find standing to bring claims based on the laws of any state." *Defs' MTD Br.* at 30.  Defendants further state that "[n]owhere does GEHA adequately allege that it purchased, reimbursed, or otherwise paid for Lidoderm in *any* state." *Id.*  Defendants are wrong on the facts and the law.

*First*, GEHA pleads that it purchased Lidoderm in *all fifty* states, as well as the District of Columbia.  *See* GEHA FAC ¶ 22; *id.* ¶ 130 (asserting claims for monopolization under state law "with respect to Plaintiff's purchases of Lidoderm and generic Lidoderm in …"—listing states); *id.* ¶ 138 (same for claim of attempted monopolization under state law); *id.* ¶ 150 (same for claim of conspiracy to monopolize under state law); *id.* ¶ 158 (same for claim for conspiracy and combination in restraint of trade under state law).[5]

A third party payer ("TPP") has Article III standing to assert antitrust causes of action in each state that it purchases an over-priced prescription drug for its members.  *See In re Flonase Antitrust Litig.,* 815 F. Supp. 2d 867, 875 (E.D. Pa. 2011) ("Like many courts before me, I held that the Plans could have standing to assert claims under the laws of states in which Plan Members made Flonase purchases, where those purchases were reimbursed by the Plans.");

---

[5] Defendants' argument that these allegations are insufficient "because GEHA fails to specifically allege that it was a party to a transaction in any particular state" ignores the well-pleaded allegations of the Complaint.  GEHA pleaded the basic contours of the economic model of prescription drug purchases, which shows GEHA's purchasing role in Lidoderm transactions of its plan members.  *See* GEHA FAC ¶¶ 46-53.  Moreover, the direct relationship between the illegal acts of drug manufacturers and the effects suffered by third party payers like GEHA has long been recognized.  *E.g.*, *Desiano v. Warner-Lambert Co.,* 326 F.3d 339, 349-50 (2d Cir. 2003).

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC,* 737 F. Supp. 2d 380, 393 n.4 (E.D. Pa. 2010) ("[A]ntitrust injury takes places in those states where a drug is purchased. The state where drugs are purchased will naturally have a great interest in regulating the sale of those drugs within its borders."); *In re Wellbutrin XL Antitrust Litig.,* 260 F.R.D. 143, 156 (E.D. Pa. 2009) ("The named plaintiffs have identified an injury in fact that is fairly traceable to conduct taking place in states where their members purchased Wellbutrin XL. Those injuries would be redressed by a favorable determination under the laws of the states where their members purchased Wellbutrin XL.");[6] *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 680-82 (S.D. Fla. 2004) (holding that individual named plaintiffs had standing to assert claims in states where the purchases were made).[7]

GEHA "purchased Lidoderm and/or its AB-rated generic equivalent from retail pharmacies" during the period of generic delay and its aftereffects, GEHA FAC ¶¶ 159, 17, 122, 131, 139, 151, 160, 204, and it has pleaded that it made those purchases in each respective state where it brings its claims, *id.* ¶¶ 130, 138, 150, 158. GEHA sustained an injury in fact with each over-priced purchase of Lidoderm and generic Lidoderm—injuries that should be redressed under the laws of the states where these purchases were made.

---

[6] The *Wellbutrin XL* Court explained on this point later in the case when certifying the indirect purchaser class, finding that the place of purchase is the place of injury to endpayer plaintiffs. *In re Wellbutrin XL Antitrust Litig.,* 282 F.R.D. 126, 135 (E.D. Pa. 2011) ("A place-of-purchase rule protects justified expectations because an in-state transaction will be governed by the antitrust laws and/or consumer protection laws of that state and not by the chance location of the TPP's principal place of business….").

[7] The cases cited by Defendants (*Defs' MTD Br.* at 28) do not support limiting standing solely to the location of the plaintiff TPP—as opposed to the place of purchase. *See In re Wellbutrin XL,* 260 F.R.D. at 156-57 ("The elements of a standing analysis of the plaintiffs' claims have clear connection to the states where the plaintiffs themselves are located and *the states where their members made purchases* of Wellbutrin XL.") (emphasis added); *In re Ditropan XL Antitrust Litig.,* 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (indirect purchasers had standing to assert state-law claims only in states where they resided *or suffered injury*); *In re Graphics Processing Units Antitrust Litig.,* 527 F. Supp. 2d 1011, 1027 (N.D. Cal. 2007) (same).

### B. GEHA Has Adequately Pleaded Its State Law Antitrust Claims[8]

In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court limited the private right of action for damages under Section 4 of the Clayton Act for violations of the Sherman Act to direct purchasers. In *California v. ARC Am. Corp.*, 490 U.S. 93 (1989), the Supreme Court clarified the limits of *Illinois Brick*, holding that federal antitrust laws do not preempt state law rights of action that permit indirect purchasers to prosecute such claims. Jurisdictions that do not require plaintiffs claiming damages under their statutes to be direct purchasers are commonly known as "*Illinois Brick* Repealer States."

GEHA allegedly purchased branded and generic Lidoderm at inflated prices in all fifty states and the District of Columbia, *see supra* Section I.A., and asserts antitrust damages claims for monopolization and combination in restraint of trade[9] under the laws of twenty-seven *Illinois Brick* Repealer States. GEHA incurred antitrust injuries each time it paid supracompetitive prices for branded and generic Lidoderm in these states. *See supra* Section I.A. Indirect purchaser antitrust claims in *Illinois Brick* Repealer States have been sustained for endpayers like GEHA in numerous similar "pay-for-delay" generic drug delay cases.[10] Indeed, apart from their arguments regarding anticompetitive conduct and injury addressed in Sections III.B–F of the *Joint Br.*, which GEHA joins, Defendants do not contest the sufficiency

---

[8] GEHA has asserted state law antitrust claims in all states in which EPPs pursue state law antitrust claims—with the exception of Utah. *See Defs' MTD* at Appendices 2 & 3. GEHA joins in the arguments made by EPPs to the extent applicable, *Joint Br*. Sections III.I.2 and 4, and makes the following GEHA-specific arguments contained herein.

[9] <u>Count I</u>: Monopolization Under State Law (GEHA FAC ¶ 130(a)–(y)); <u>Count II</u>: Attempted Monopolization Under State Law (GEHA FAC ¶ 138(a)–(y)); <u>Count III</u>: Conspiracy to Monopolize Under State Law (GEHA FAC ¶ 150(a)–(bb)); and <u>Count IV</u>: Conspiracy and Combination in Restraint of Trade Under State Laws (GEHA FAC ¶ 158(a)–(bb)).

[10] *See, e.g., In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168, 184 (D. Mass. 2013) (certifying class of endpayers that paid all or part of the purchase price for Nexium in twenty-five states); *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. at 145 (certifying litigation class of endpayers who purchased Wellbutrin XL in six states); *In re Terazosin*, 220 F.R.D. at 701 n.45, 703 (certifying classes of endpayers who or which paid all or part of the purchase price of Hytrin in 17 class states); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 332, 352 (E.D. Mich. 2001) (certifying a class of indirect purchaser endpayers "who or which have paid and/or co-paid pharmacies in the Indirect Purchaser States for Cardizem CD or Catia XT....").

of GEHA's antitrust claims in *twenty-four*[11] of the twenty-seven *Illinois Brick* Repealer States under which GEHA asserts its claims.  Defendants only attack the sufficiency of those claims for state-specific reasons in Florida, Massachusetts, Puerto Rico,[12] and Rhode Island.  GEHA responds to these arguments below.

### 1.   GEHA May Assert Antitrust Claims Under Florida, Massachusetts and Rhode Island Law

Defendants argue that the Florida and Massachusetts antitrust acts do not permit indirect purchaser actions.  *Defs' MTD Br.* at 32.  However, GEHA pleads no claims under these statutes.  Rather, GEHA pursues its Massachusetts and Florida claims exclusively under these states' consumer protection laws.  *See* GEHA FAC ¶¶ 130(d), 138(d), 150(d), 158(d), 130(h), 138(h), 150(i), 158(i).  GEHA has standing to pursue its antitrust claims under the <u>Massachusetts Consumer Protection Act</u>, Mass. Gen. L. ch. 93A §§ 1-11 and the <u>Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA")</u>, Fla. Stat. §§ 501.201, *et seq.  See Ciardi v. F. Hoffmann La Roche, Ltd.*, 762 N.E.2d 303, 312 (Mass. 2002) (holding that indirect purchaser consumers who cannot prosecute claims under the Massachusetts Antitrust Act can pursue such claims under the Massachusetts Consumer Protection Act); *Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 110 (Fla. Dist. Ct. App. 1996) (holding that indirect purchasers can sue for damages for anticompetitive conduct under FDUTPA despite not having standing under Florida Antitrust Act).  GEHA also properly asserts antitrust claims under Rhode Island law (GEHA FAC ¶¶ 130(u), 138(u), 150(w), 158(v)), as set forth in the *Joint Br.* at Section III.I.4.

### 2.   GEHA Does Not Assert Class Claims Under Illinois Law

Defendants' argument (*Defs' MTD Br.* at 33) with respect to the <u>Illinois Antitrust Act</u>, 740 Ill. Comp. Stat. 10/1, *et seq.*, is inapplicable to GEHA because GEHA has brought an

---

[11] These twenty-four *Illinois Brick* Repealer States are: Arizona, California, District of Columbia, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, Vermont, West Virginia and Wisconsin.

[12] GEHA voluntarily withdraws its antitrust claims under the Puerto Rico law.  *See supra* note 2.

individual action and not an "indirect purchaser class suit."  Individual actions by indirect

purchasers are expressly permitted under Illinois law.  740 Ill. Comp. Stat. 10/7(2) ("No

provision of this Act shall deny any person who is an indirect purchaser the right to sue for

damages.").

### C.     GEHA Has Adequately Pleaded Its Consumer Protection State Law Claims[13]

As a purchaser of Lidoderm and its generics, GEHA is a "consumer" for purposes of the

claims it has asserted under state consumer protection statutes.  GEHA FAC ¶¶ 130(d), 138(d),

150(d), 158(d), 130(h), 138(h), 150(i), 158(i), 166-202.  Defendants contend GEHA is not a

"consumer" in several states because it is a "business entity."  *Defs' MTD Br*. at 36–37.  But as

it describes health benefit providers' participation in the U.S. prescription drug economy,

GEHA FAC ¶¶ 46-53, GEHA pays for brand and generic Lidoderm at retail pharmacies in the

same transactions and in the same way as its members who use the drug.  *See* GEHA FAC

¶¶ 46-53.  And business entities qualify as "consumers" under the relevant state laws.

GEHA addresses each of Defendants' consumer protection arguments—state-by-state—

below.

### 1.     *Illinois Brick* Does Not Bar GEHA's Consumer Protection Claim Under Alaska Law

Defendants argue that *Illinois Brick* bars GEHA's consumer protection claim under

Alaska's Unfair Trade Practices and Consumer Protection Act ("ACPA"), Alaska Stat.

§ 45.50.471, *et seq*. (GEHA FAC ¶ 166).  *Defs' MTD Br*. at 34–35.  Defendants presume that

because Alaska has not expressly enacted *Illinois Brick* repealer language in its antitrust law,

indirect purchasers are barred from asserting claims under the state's consumer protection law.

However, the ACAP provides a right of action to *any* "person who suffers an ascertainable loss

of money or property as a result of another person's act or practice declared unlawful by [the

---

[13]  As discussed above at notes 3 and 4 and accompanying text, GEHA is currently pursuing claims for violations of unfair trade and consumer protection laws of thirty-four states and the District of Columbia.  EPPs assert claims under the state consumer protection laws of California, Florida, Massachusetts and Vermont only.  *See Defs' MTD Br*. at Appendices 1-3.

ACPA]."  Alaska Stat. § 45.50.531(a).  For purposes of interpreting the ACPA, "person" includes "a corporation, company, partnership, firm, association,[or] organization...."  Alaska Stat. § 01.10.060 (a)(8).  Moreover, the ACPA extends to both "unfair methods of competition" and "unfair or deceptive acts or practices."  Alaska Stat. § 45.50.471.  While Alaska courts have not spoken on the issue, nothing in the statute bars GEHA from asserting its claims for purchases of Lidoderm products in Alaska.  *See FTC v. Mylan Lab.*, 99 F. Supp. 2d 1, 5 (D.D.C. 1999) (reinstating attorney general's claims for restitution on behalf of indirect purchasers).

### 2.    GEHA is a "Consumer" and May Bring Claims Under the Consumer Protection Laws of the District of Columbia, Maine, Massachusetts, Missouri, Montana and Pennsylvania

Defendants argue that GEHA does not have standing to assert claims under the consumer protection laws of six jurisdictions[14] because "claims brought by entities that purchase goods for business purposes" are not actionable.  *Defs' MTD Br.* at 31, 36.  By making these arguments, Defendants improperly focus on the nature of the purchaser, rather than the purpose of the purchase.  While GEHA may be a "business entity," as Defendants refer to it, it does not buy Lidoderm prescription products for "business purposes," but for the personal purposes and usages of its plan members.  When pharmacies in each of these states dispense a Lidoderm prescription, GEHA and its plan members jointly pay for it.  *See* GEHA FAC ¶¶ 46-53.

This Court has held that health plans—such as GEHA—have standing to assert consumer protection claims for prescription drug purchases on behalf of their plan participants.  *See In re Bextra & Celebrex Mktg. Sales Prac. & Liab. Litig.*, 495 F. Supp.  2d 1027, 1032 (N.D. Cal. 2007) (finding "no serious dispute" that the plan purchased prescription drugs for the personal use of its members); *accord Pa. Emple. Benefit Trust Fund. v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 483 (D. Del. 2010) ("the ultimate purpose for which the product is purchased

---

[14] Defendants argue that GEHA has no right of action under the consumer protection statutes of the following six states on this ground: District of Columbia (GEHA FAC ¶ 171); Main (GEHA FAC ¶ 180); Massachusetts (GEHA FAC ¶¶ 130(h), 138(h), 150(i), 158(i), 179); Missouri (GEHA FAC ¶ 184); Montana (GEHA FAC ¶ 185); and Pennsylvania (GEHA FAC ¶ 194).

is determinative in deciding whether plaintiff has a cognizable claim," not the identity of the

purchaser); *AFSCME v. Ortho-McNeil-Janssen Pharms., Inc.,* No. 08-cv-5904, 2010 U.S. Dist.

LEXIS 23181, at *12-13 (E.D. Pa. Mar. 11, 2010) (holding health and welfare trust fund

plaintiffs had standing under the Pennsylvania Unfair Trade Practices and Consumer Protection

Law because they "actually paid for the fentanyl patches on behalf of their members for their

members' personal, family or household use"). GEHA has standing to bring consumer

protection claims under the laws of the District of Columbia, Maine, Massachusetts, Missouri,

Montana and Pennsylvania.[15]

---

[15] **District of Columbia Consumer Protection Procedures Act ("DCCPPA"):** D.C. Code § 28-3905(k)(1)(A) states "[a] consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District." The DCCPPA defines "consumer" as "a person who . . . does or would purchase . . . consumer goods or services . . . as an adjective, 'consumer' describes anything, without exception, that (i) [a] person does or would purchase ... and normally use for personal, household, or family purposes." D.C. Code § 28-3901(a)(2). GEHA's purchases of Lidoderm were primarily for the personal family or household use of its members. Courts have allowed indirect purchasers of goods used for personal, household or family purposes to proceed with claims of price fixing under the statute. *See, e.g., In re Processed Egg Prods. Antitrust Litig.,* 851 F. Supp. 2d 867, 897-99 (E.D. Pa. 2012) (upholding DCCPPA price fixing claims of indirect purchasers and noting that it is "apparent" that such behavior is a violation of the DCCPPA) (quoting *Marbry v. EMI Music Distrib.,* Civil Action No. 3731-00, 129 Daily Wash. L. Rptr. 2065, 2067 (D.C. Super. Ct. June 12, 2001)). Defendants' (*Defs' MTD Br.* at 36) citation to *Shaw v. Marriott Int'l, Inc.,* 605 F.3d 1039, 1044 (D.C. Cir. 2010), is inapposite because that court dismissed claims for hotel room overcharges with respect to individuals who stayed at defendant's hotels purely for business purposes and whose expenses were fully borne by their employers—plaintiffs did not allege that they suffered any pecuniary injury.

**Maine Unfair Trade Practices Act ("Maine UTPA"):** The Supreme Judicial Court of Maine has held that indirect purchasers may recover under the Maine UTPA. *See McKinnon v. Honeywell Int'l, Inc.,* 977 A.2d 420, 427 (Me. 2009). The Maine UTPA, 5 Me. Rev. Stat. § 213, provides a cause of action for "[a]ny person who purchases or leases goods…primarily for personal, family or household purposes and thereby suffers any loss of money" as a result of a violation of the statute. *Id.* § 213(1). A corporation is a "person" under the statute. *Id.* § 206. Lidoderm is used by GEHA plan participants for personal, family, or household purposes.

**Massachusetts Consumer Protection Act (Mass. Gen. L. Ch. 93A §§ 1-11):** Defendants argue that under Massachusetts law, business entities can maintain consumer protection claims, but not if they are indirect purchasers. *Def's MTD Br.* at 37. As set forth above, in order to avoid redundancy, GEHA joins in and incorporates by reference the *Joint Br.* at Section III.I.2. in opposing Defendants' argument on this point.

**Missouri's Merchandising Practices Act ("MMPA"):** The MMPA (Vernon's Missouri Stat. §§ 407.010, *et seq*.), provides a cause of action to "any person" injured as a result of a violation of the Act. *Id.* at § 407.025. Corporations are explicitly included in the definition of "person." *Id.* at § 407.010(5). The Supreme Court of Missouri has observed that the MMPA's "literal words cover every practice imaginable and every unfairness to whatever degree." *Ports Petrol. Co. v. Nixon,* 37 S.W.3d 237, 240 (Mo. 2001). Indirect purchasers of consumer goods like

3.  **GEHA's Claims Are Actionable Under the Consumer Protection Laws of Arkansas, Idaho, Michigan, Oregon, Pennsylvania, South Dakota and West Virginia**

Defendants argue that the consumer protection statutes of eight jurisdictions are inapplicable to the *type* of misconduct that injured GEHA in each of these jurisdictions: Arkansas (GEHA FAC ¶ 168), Idaho (GEHA FAC ¶ 174), Michigan (GEHA FAC ¶ 181), Oregon (GEHA FAC ¶ 193), Pennsylvania (GEHA FAC ¶ 194), South Dakota (GEHA FAC ¶ 196) and West Virginia (GEHA FAC ¶ 201). *Defs' MTD Br.* at 35–36. However, as further demonstrated in Sections I.C.2 and 4 herein, the conduct complained of by GEHA is sufficiently related to consumer transactions in each of these states—namely, GEHA's purchases of prescription Lidoderm and generic Lidoderm for use by its plan members—and accordingly falls within the purview of each state's statute.[16]

GEHA have standing to assert claims under the MMPA. *See Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. 2007) ("The statute's broad language of 'any person who has suffered any ascertainable loss' contemplates that other parties, besides the direct purchaser or contracting party, who suffer damages resulting from the violator's prohibited conduct under the Act are included among those eligible to receive restitution.'") (citation omitted); *Sheet Metal Workers,* 737 F. Supp. 2d at 416 (upholding endpayers' MMPA claims brought on behalf of themselves and plan members due to "the MMPA's expansive scope").

**Montana Unfair Trade Practices Act ("MUTPA"):** A "consumer" under the MUTPA is defined as any "person who purchases or leases goods… primarily for personal, family, or household purposes." Mont. Code Ann. § 30-14-102(1). A "corporation" is a "person." *Id.* § 30-14-102(6). The MUPTA's "primarily for personal, family, or household purposes" element "is not limited to those who engage directly in consumer transactions." *In re New Motor Vehicles Canadian Exp. Antitrust Litig*, 350 F. Supp. 2d 160, 193 (D. Me. 2004).

**Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"):** Defendants' "primary use" argument, *Defs' MTD Br.* at 36, has been repeatedly rejected by Pennsylvania courts. *See, e.g., AFSCME*, 2010 U.S. Dist. LEXIS 23181, at *9-13 ("The Court finds that since [endpayer] Plaintiffs purchased the fentanyl patches on behalf of their members in their representative capacity, and those patches were purchased for the personal, family and household use of their members, Plaintiffs have properly asserted a claim under the UTPCPL."); *Commonwealth v. TAP Pharm. Prods., Inc.,* 885 A.2d 1127, 1142-43 (Pa. Commw. Ct. 2005) ("[T]he UTPCPL restricts suits not on the basis of the type of product, but rather the purpose of the purchase. Here . . . the drugs are ultimately used for a personal, family or household purpose.").

[16] **Arkansas Deceptive Trade Practices Act ("ADTPA")**: The Ark. Code Ann. § 4-88-101, *et seq.*, prohibits ten specific offenses as well as "any . . . unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4-88-107(a)(10). The Supreme Court of Arkansas has construed the ADTPA liberally: "Section 4-88-107(b) illustrates that liberal construction of the DTPA is appropriate, as it provides that 'the deceptive and unconscionable trade practices listed in this section are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state.'" *State ex rel. Bryant R&A Inv. Co., Inc.*, 985 S.W.2d 299, 302 (Ark. 1999) (quoting the ADTPA). A

1   number of courts have concluded that antitrust claims are cognizable under the Act. *See, e.g., In*
2   *re New Motor Vehicles* 350 F. Supp. 2d at 178-79 ("I find no support in the ADTPA or
    Arkansas caselaw for a ban on indirect purchaser suits. The ADTPA provides a private cause of
3   action for damages for any person injured by a violation of the ADTPA, and is not limited to a
    cause of action for direct purchasers."); *Sheet Metal Workers*, 737 F. Supp. 2d at 405; *In re*
4   *Chocolate Confectionary Antitrust Litig.,* 602 F. Supp. 2d 538, 583 (M.D. Pa. 2009) (citing
    cases).

5   **Idaho Consumer Protection Act ("ICPA"):** Defendants argue that GEHA's claims under the
6   ICPA, Idaho Code Ann. §§ 48-601–619, must be dismissed because, like the ADTPA, the ICPA
    prohibits an enumerated list of activities. *Defs' MTD Br.* at 35. The ICPA's express purpose is
7   "to protect both consumers and businesses against unfair methods of competition and unfair or
    deceptive acts and practices in the conduct of trade or commerce," Idaho Code Ann. § 48-601.
8   Among the list of "unfair or deceptive acts or practices" is "(2) [c]ausing likelihood of
    confusion or of misunderstanding as to the source, sponsorship, approval, or certification of
9   goods or services" and "(17) [e]ngaging in any act or practice which is otherwise misleading,
    false, or deceptive to the consumer." Idaho Code § 48-603. The statute is construed liberally.
10  *W. Acceptance Corp. v. Jones (In re W. Acceptance* Corp.), 788 P.2d 214, 216 (Idaho 1990).
    Indirect purchaser claims under the ICPA have been upheld on a motion to dismiss. *See In re*
11  *DDAVP Indirect Purchaser Antitrust Litig.,* 903 F. Supp. 2d 198 (S.D.N.Y. 2012) (upholding
    indirect purchaser's claims under the ICPA because "[p]laintiffs have plausibly pleaded
12  misrepresentations that, although they may not have been made directly to consumers, had the
    kind of effect on end payors that [consumer protection] statutes seek to remedy").

13  **Michigan Consumer Protection Act ("MCPA"):** GEHA has standing to assert its claim
14  under the MCPA, Mich. Comp. Laws § 445.901 ("MCPA"). While Michigan courts have yet to
    address the issue of whether end payers can recover for antitrust injuries under the Act, this
15  Court has upheld such claims. *See, e.g., In re Bextra,* 495 F. Supp. 2d at 1033-34 (finding that
    third party payers had standing under Mich. Stat. § 445.902 as long as the defendants'
16  challenged acts were in "trade or commerce," and noting that "the Act does not require the
    plaintiff itself to have engaged in the 'trade or commerce' transaction with the defendant").

17  **Oregon Unfair Trade Practice Act ("OUTPA"):** Under the OUTPA "a person engages in an
    unlawful practice if in the course of the person's business, vocation or occupation the person
18  *inter alia* employs any unconscionable tactic in connection with selling, renting or disposing of
    real estate, goods or services, or collecting or enforcing an obligation." Or. Rev. Stat.
19  § 646.607. The OUTPA allows "a person that suffers an ascertainable loss" to bring a claim.
    Or. Rev. Stat. § 646.638. Corporations are included within the definition of "person." Or. Rev.
20  Stat. § 646.605(4). In Oregon, "[i]f goods are customarily bought by a substantial number of
    purchasers for personal, family or household uses and were, in fact, bought by the plaintiff for
21  his or someone else's use and not for resale, the [UTPA] applies." *Fowler v. Cooley,* 245 P.3d
    155, 159 (Or. Ct. App. 2010) (alterations in original) (citing *Searle v. Exley Express,* 564 P.2d
22  1054 (Or. 1977)). GEHA purchased Lidoderm products for the personal use of its plan
    members, not for resale. GEHA FAC ¶¶ 46-53.

23  **Pennsylvania Unfair Trade and Consumer Protection Law ("PUTCPL"):** *See supra*
24  Section I.C.2. note 15 and accompanying text. Allegations of artificial price inflation by
    endpayers actionable under the catch-all provision of the PUTCPL, 73 Pa. Stat. §§ 201-1, *et seq*.
25  *See Grimes v. Enter. Leasing Co. of Phila., LLC,* 66 A.3d 330, 337 (Pa. Super. Ct. 2013)
    (finding plaintiff's pleading sufficient that defendant "engaged in deceptive conduct [b]y
26  intentionally and artificially inflating the costs it incurred under the rental car contracts"
    (citation omitted)).

27  **South Dakota Deceptive Trade Practices and Consumer Protection Law ("SDDTPCP"):**
28  Courts have upheld claims of artificial price inflation by endpayers under the SDDTPCP, S.D.
    Code Laws §§ 37-24-1, *et seq. See, e.g., In re DDAVP,* 903 F. Supp. 2d at 229. *See also infra*

4.      **GEHA Adequately Alleges Consumer Deception Under the Laws of Arizona, Idaho, Maine, Michigan, Minnesota, New Mexico, New York and South Dakota**

The allegations of the FAC—which must be accepted as true for purposes of this motion—paint a picture of Defendants who preyed on the purchasers of Lidoderm, like GEHA, to maintain monopoly profits of their brand or receive a payoff.  Defendants, thus, deceived the public, in violation of several states' consumer protection statutes, by selling Lidoderm prescription products at prices that were not the result of fair and open market competition, but rather the result of illegal payoffs to keep generics off the market.  The Complaint pleads in detail how Defendants conspired to charge, collect and fix prices that were not the result of fair and open market competition.  *See* GEHA FAC ¶¶ 93-113.

Defendants argue that claims under the operative statutes of Arizona (GEHA FAC ¶ 167), Maine (GEHA FAC ¶ 156), Minnesota (GEHA FAC ¶ 182), New Mexico (GEHA FAC ¶ 189), New York (GEHA FAC ¶ 166) and South Dakota (GEHA FAC ¶ 196), fail because GEHA has not alleged "deceit or fraud," and/or actual consumer deception or reliance.  *Defs' MTD Br.* at 38-9.  Defendants overstate the pleading requirements of these states.[17]

---

Section I.C.4. note 17.

**West Virginia Consumer Credit and Protection Act ("WVCCPA"):**  The WVCCPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of *any trade or commerce*."  W. Va. Code § 46A-6-102 (emphasis added).  Trade or commerce "means the advertising, offering for sale, or distribution of any goods or services and shall include any trade or commerce, directly or indirectly, affecting the people of this state."  *Id.* § 46A-6-102(e).  Based on these definitions, courts have sustained indirect purchaser claims for anticompetitive conduct under the WVCCPA.  *See, e.g.*, *FTC v. Mylan Lab.*, 99 F. Supp. 2d at 10.

[17] **Arizona Consumer Fraud Act ("ACFA"):**  The ACFA, Ariz. Rev. Stat. §§ 44-1521, *et seq.*, declares unlawful any "act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such…in connection with the sale…of any merchandise *whether or not any person has in fact been misled, deceived or damaged thereby*."  *Id.* at § 44-1522(A).  Lidoderm products are merchandise, defined as "any objects wares, goods, commodities, intangibles real estate or services." Ariz. Rev. Stat. § 44-1521(5).  "Sale" includes "any sale, offer for sale, or attempt to sell any merchandise for any consideration . . . ."  Ariz. Rev. Stat. § 44-1521(7).  Allegations that Defendants' engaged in deceptive conduct, "even if to a regulatory agency rather than consumers directly," have been held sufficient to state a claim under the ACFA.  *See In re DDAVP*, 903 F. Supp. 2d at 222 (upholding indirect purchaser claim "even though the alleged false representations were not

made directly to them." (citing *Persky v. Turley*, Nos. 88-CV-1830, 88-CV-2089, 1991 U.S. Dist. LEXIS 19841, at *9-10 (D. Ariz. Dec. 19, 1991) (looking to Title 15 of the Federal Trade Commission Act, which allows plaintiffs to plead fraud on the market to state a claim, and therefore finding that plaintiffs stated a claim under AFCA because they pleaded that they relied on market price induced by defendant's allegedly false registration statements and prospecti))).

**Maine Unfair Trade Practices Act ("Maine UTPA"):** The Supreme Judicial Court of Maine has held that indirect purchasers may recover under the Maine where the plaintiff can demonstrate a "loss of money or property." *See McKinnon*, 977 A.2d at 427 ([T]he First Circuit recognized that Maine's antitrust law…permits recovery by an indirect purchaser…and has correctly noted that Maine's UTPA allows recovery by an indirect purchaser") (citations omitted); *see also supra* Section I.C.2. note 15 (citing definitions under the Maine UTPA).

**Minnesota Prevention of Consumer Fraud Act ("MPCFA") and the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA"):** Endpayers have standing to recover under the MPCFA, Minn. Stat. § 325F.69, and the MUDTPA, Minn. Sta. Ann. §§ 325D43–48. Defendants challenge GEHA's standing under these statutes on the basis that such actions require allegations of consumer deception. *Defs' MTD Br.* at 39. The MPCFA defines unlawful activity as "the act, use or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or *deceptive practice*, with the intent that others rely thereon in connection with the sale of any merchandise, *whether or not any person has in fact been misled, deceived, or damaged thereby*…" Minn. Stat. § 325F.69(1) (emphasis added). Minn. Stat. § 8.31(3a), expressly provides that "any person injured" by such conduct in violation of the MPCFA may bring suit.

The Supreme Court of Minnesota, on certified question from the District Court in an action brought by endpayer HMOs seeking to recover costs of increased health-care services incurred as a result of their members' tobacco-related illnesses, expressly addressed the following issues with respect to Minn. Stat. § 325F.69 and corresponding Minn. Stat. § 8.31(3a): i) "must a private plaintiff be a purchaser of the defendant's products in order to properly plead a claim" under the MPCFA and ii) "must a private plaintiff plead and prove reliance on the defendant's statements or conduct in order to be eligible for relief in the form of damers" under the MPCFA. *Certified Question United States Dist. Court Order v. Philip Morris*, 621 N.W.2d 2, 4 (Minn. 2001). The Supreme Court answered both questions in the negative. *Id*. at 9-10, 12 ("the plaintiff need only plead that the defendant engaged in conduct prohibited by the statute[] and that the plaintiff was damaged thereby....Allegations of reliance are….not necessary to state a claim under section 8.31, subdivision 3a for damages resulting from a violation.").

The MUDTPA also broadly defines unlawful trade practices, by stating that, *inter alia*, "a person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person. . .engages in any other conduct which…creates a likelihood of confusion or of misunderstanding." Minn. Stat. § 325D.44(1)(13). The Supreme Court of Minnesota has recognized that the MUDTPA not only provides for injunctive relief sought by private actors, but also "any relief available at common law for conduct that might also violate this statute." *State by Humphrey v. Philip Morris, Inc.*, 551 N.W.2d 490, 496 (Minn. 1996) (citing Minn. Stat. § 325D.45(3)). In circumstances almost identical to those analyzed by the *Certified Question* court above, the *Humphrey* Court upheld MUDTPA claims asserted by endpayer Blue Cross Blue Shield of Minnesota, a nonprofit health care organization, against defendant tobacco to recover costs of increased health-care services incurred as a result of their members' tobacco-related illnesses: "Blue Cross has standing to sue under the various consumer protection theories, including antitrust, alleged in its complaint." *Id*. at 497.

**New Mexico Unfair Practices Act ("NMUPA"):** The NMUPA defines "unconscionable trade practice" as "an act or practice in connection with the sale . . . of any goods . . . [that] results in a gross disparity between the value received by a person and the price paid." N.M. Stat. Ann. § 57-12-2. Further, "Federal courts generally permit NMUPA actions in price-fixing cases provided that the plaintiff alleges a 'gross disparity' between the price paid for a product and the

Defendants also argue that GEHA fails to allege first-hand reliance on Defendants' deceptive conduct under the laws of Idaho (GEHA FAC ¶ 174) and Michigan (GEHA FAC ¶ 181). *Defs' MTD Br.* at 39. No such allegations are required.[18]

value received." *In re Chocolate.,* 602 F. Supp. 2d at 586; *In re TFT-LCD Antitrust Litig.,* 586 F. Supp. 2d 1109, 1127 (N.D. Cal. 2008) (upholding plaintiffs' pleading that the conspiracy produced "significant artificial increases in [product] price"); *In re Auto. Parts Antitrust Litig.,* No. 12-cv-0103, 2013 U.S. Dist. LEXIS 80338, at *9 (E.D. Mich. June 6, 2013) (upholding plaintiffs' claim that significant artificial increases caused a "gross disparity" between the value received and the prices paid).

**New York Deceptive Acts & Practices Act:** New York's consumer protection statute, N.Y. Gen. Bus. Law §§ 349, *et seq.,* prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." The statute's scope "is intentionally broad, applying to virtually all economic activity." *Goshen v. Mut. Life Ins. Co.,* 774 N.E.2d 1190, 1195 (N.Y. 2002) (citations omitted). Scienter under N.Y. Gen. Bus. Law § 349 is only necessary to permit the court to award treble damages, not at the pleading stage. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 647 N.E.2d 741, 744 (N.Y. 1995) ("it is not necessary under the statute that a plaintiff establish the defendant's intent to defraud or mislead"); *see also In re DDAVP,* 903 F. Supp. 2d at 228 (upholding indirect plaintiffs' Section 349 claim because "Defendants' conduct was plausibly imbued with a degree of subterfuge, and the fraud was plausibly designed to prevent competitors' entry into the market, thereby allowing Defendants to overcharge consumers for DDAVP") (citation omitted). Defendants argue that GEHA also fails to allege conduct "directed to consumers" under New York law. *Defs' MTD Br.* at 39. However, this Court has recognized that endpayers have standing to assert claims under Section 349 on behalf of their plan members. *In re Bextra,* 495 F. Supp. 2d at 1034-35 (upholding TPP plaintiffs' claims under Section 349 as sufficiently "consumer oriented," as the defendants' wrongful conduct had "an impact of consumers who may also pay more for their prescriptions").

**South Dakota Deceptive Trade Practices and Consumer Protection Law ("SDDTPCP"):** Under the SDDTPCP, S.D. Code Laws §§ 37-24-1, *et seq.,* a plaintiff may bring a claim, premised on a previous fraud committed by defendants by showing they were "adversely affected" when they relied on representations and therefore paid supracompetitive prices. *In re DDAVP,* 903 F. Supp. 2d at 229; *see also Brookings Mun. Utils., Inc. v. Amoco Chem. Co.,* 103 F. Supp. 2d 1169, 1178 (D.S.D. 2000) ("Defendants cannot escape liability to plaintiffs for their alleged misrepresentations simply because they did not make any statements directly to plaintiffs. Defendants may be liable to plaintiffs, even if plaintiffs only received misrepresentations through [a third party].").

[18] **Idaho Consumer Protection Act ("ICPA"):** *See supra* Section I.C.3. note 16; *In re DDAVP,* 903 F. Supp. 2d 198 (upholding indirect purchaser's claims under the ICPA because "[p]laintiffs have plausibly pleaded misrepresentations that, although they may not have been made directly to consumers, had the kind of effect on end payors that [consumer protection] statutes seek to remedy").

**Michigan Consumer Protection Act ("MCPA"):** In a claim for misrepresentation under the MCPA, Mich. Stat. § 445.901, *et seq.,* "reliance and causation are satisfied by proof that plaintiffs purchased and consumed the product." *Gasperoni v. Metabolife,* No. 00-cv-71255, 2000 U.S. Dist. LEXIS 20879, at *20 (N.D. Ill. Sept. 27, 2000); *see also In re DDAVP,* 903 F. Supp. 2d at 225-26; *Dix v. American Bankers Life Assurance Co.,* 415 N.W.2d 206, 209 (Mich. 1987) (holding that members of a class proceeding under the MCPA did not have to prove individual reliance on the alleged misrepresentations).

### 5. GEHA Alleges Requisite Intrastate Conduct Under the Consumer Protection Laws of New Hampshire, New York and North Carolina

Defendants argue that GEHA's claims under the consumer protection statutes of New Hampshire (GEHA FAC ¶ 188), New York (GEHA FAC ¶ 190) and North Carolina (GEHA FAC ¶ 191), are insufficiently "intrastate." *Defs' MTD Br.* at 40-41. GEHA pleads purchases of Lidoderm prescription products in *each* of these three states (GEHA FAC ¶¶ 130(o), 130(q), 138(o), 138(q), 150(p), 150(r), 150(s)), and has asserted state-specific consumer protection claims for monetary damages in connection with GEHA's purchases in *each* state. GEHA FAC ¶¶ 188 (New Hampshire), 190 (New York), 191 (North Carolina). GEHA's allegations regarding Defendants' nationwide anticompetitive scheme that directly impacted commerce within each state, coupled with GEHA's purchases and resulting injuries within each of these states plead a sufficient nexus to these states' intrastate commerce.[19]

Moreover, courts have held that a complaint alleging a nationwide antitrust or consumer law violation satisfies "intrastate" pleading requirements. *See, e.g.*, *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 408 (S.D.N.Y. 2011) (allegations that anticompetitive conduct similarly impacted both intrastate and interstate commerce held to be sufficient to satisfy the intrastate requirements of numerous states, including the North Carolina's Unfair

---

[19] **New Hampshire Consumer Protection Act ("NHCPA"):** The NHCPA, N.H. Rev. Stat. Ann. §§ 358-A:2, states that it is "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." The NHCPA was intended by the legislature to have a "broad sweep." *LaChance v. U.S. Smokeless Tobacco Co.*, 931 A.2d 571, 578 (N.H. 2007); *see also In re Chocolate*, 749 F. Supp. 2d at 234-35 (injection of price fixed chocolate into the state satisfied NHCPA intrastate requirement).

**New York Deceptive Acts & Practices Act:** New York's consumer protection statute, N.Y. Gen. Bus. Law §§ 349, *et seq.*, prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." The statute's scope "is intentionally broad, applying 'to virtually all economic activity.'" *Goshen*, 774 N.E.2d at 1195 (citations omitted).

**North Carolina's Unfair and Deceptive Trade Practices Act ("NCUDTPA"):** Defendants argue that GEHA's claim under the NCUDTPA, N.C. Gen. Stat. § 75-1.1, is barred because the statute requires that the alleged anticompetitive conduct have "a substantial effect on in-state business." *Defs' MTD Br.* at 40. However, the NCUDTPA has no such "substantial effects" language or territorial boundaries, and explicitly proscribes unfair methods of competition and unfair or deceptive acts or practices "in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). *See In re DDAVP*, 903 F. Supp. 2d at 231 (upholding pay-for-delay claims under NCUDTPA).

and Deceptive Trade Practices Act).  Nationwide antitrust violations decrease competition in each state, thereby increasing the prices paid by consumers in each state.  *See, e.g., In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 613 (7th Cir. 1997); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 665-70 (E.D. Mich. 2000).[20]

**CONCLUSION**

Defendants' Motion to Dismiss should be denied for the stated reasons.[21]


Dated: September 8, 2014                **BERMAN DEVALERIO**

                                        By: */s/ Todd A. Seaver*
                                             Todd A. Seaver

                                        Joseph J. Tabacco, Jr.
                                        Sarah Khorasanee McGrath
                                        One California St., Suite 900
                                        San Francisco, CA 94111
                                        Tel.:  415- 433-3200
                                        Fax:  415- 433-6382
                                        Email: jtabacco@bermandevalerio.com
                                               tseaver@bermandevalerio.com
                                               skmcgrath @bermandevalerio.com

---

[20] Courts have repeatedly rejected Defendants' argument that these state statutes require that claims arise "purely or primarily" from intrastate conduct.  *See, e.g., In re Digital Music*, 812 F. Supp. 2d at 408 ("[T]he Court does not interpret the statutes to be inapplicable where the anticompetitive conduct may have both interstate effects and, as concerns the particular state in question, intrastate impact."); *Sheet Metal Workers Nat'l Health Fund v. Amgen*, No. 07-5295, 2008 U.S. Dist. LEXIS 62181, at *41 (D.N.J. Aug 12, 2008) (collecting cases).

[21] In the alternative, GEHA respectfully requests leave to amend its Complaint if the Court grants Defendants' motion to dismiss in whole or in part.  *See* FED. R. CIV. P. 15(a); *Dunbar v. Google, Inc.*, No. 5:12-cv-3305-LHK, 2012 U.S. Dist. LEXIS 177058, at *21–23 (N.D. Cal. Dec. 12, 2012) (granting plaintiff leave to file third amended complaint, as leave to amend should be given freely when justice requires); *see also Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990); *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962).

**LOWEY DANNENBERG COHEN
& HART, P.C.**
Barbara Hart
Peter D. St. Phillip
Uriel Rabinovitz
Noelle Ruggiero
One North Broadway, Suite 509
White Plains, New York 10601
Tel.: 914-997-0500
Fax: 914-997-0035
Email: bhart@lowey.com.
       pstphillip@lowey.com
       urabinovitz@lowey.com
       nruggiero@lowey.com

**RAWLINGS & ASSOCIATES PLLC**
Mark D. Fischer
Robert Griffith
One Eden Way
LaGrange, KY  40031-8100
Tel.:  502-587-1279

*Attorneys for Plaintiff Government Employees
Health Association*