DANIEL B. ASIMOW (SBN 165661)
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
Email: daniel.asimow@aporter.com

JONATHAN L. STERN (admitted *pro hac vice*)
RYAN Z. WATTS (admitted *pro hac vice*)
ARNOLD & PORTER LLP
555 12th Street NW
Washington, D.C. 20004
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
Email: jonathan.stern@aporter.com
Email: ryan.watts@aporter.com

Attorneys for Defendant
ENDO PHARMACEUTICALS INC.
[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| This Document Relates to:<br>Individual Case No. 3:14-cv-2180-WHO | **REPLY MEMORANDUM IN SUPPORT OF JOINT MOTION TO DISMISS GEHA'S FIRST AMENDED COMPLAINT** |
| GOVERNMENT EMPLOYEES HEALTH ASSOCIATION,<br><br>       Plaintiff,<br><br>          v.<br><br>ENDO PHARMACEUTICALS INC., TEIKOKU PHARMA USA, INC., TEIKOKU SEIYAKU, CO. LTD, ACTAVIS, INC., WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., ANDA, INC., ANDA PHARMACEUTICALS, INC., and VALMED PHARMACEUTICALS, INC.,<br><br>       Defendants. | Date:        November 5, 2014<br>Time:        2:00 p.m.<br>Place:       Courtroom 2, 17th Floor<br>Judge:      Hon. William H. Orrick |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................1

I.      GEHA'S STATE LAW CLAIMS MUST BE DISMISSED FOR LACK OF
        ARTICLE III STANDING OUTSIDE OF ITS HOME STATE OF MISSOURI. ................1

II.     GEHA'S CLAMS UNDER MISSOURI'S CONSUMER PROTECTION LAW AND
        THE LAWS OF SEVERAL OTHER STATES MUST BE DISMISSED FOR
        FAILURE TO PLEAD THAT IT PURCHASED LIDODERM FOR PERSONAL,
        FAMILY, OR HOUSEHOLD USE. .......................................................................4

III.    GEHA FAILS TO STATE CLAIMS UNDER OTHER STATE CONSUMER
        PROTECTION LAWS. ......................................................................................8

        A.      GEHA Cannot Circumvent *Illinois Brick* by Asserting Antitrust Claim Under
                Alaska's Consumer Protection Statute. ...................................................8

        B.      GEHA's Claims Under the Consumer Protection Laws of Several States Fail
                Because the Laws Do Not Reach Antitrust Violations. ..............................9

        C.      GEHA Has Not Adequately Pleaded Deceptive Acts or Practices. ...........12

        D.      GEHA Has Not Alleged Primarily Intrastate Commerce As Required By
                Certain Consumer Protection Statutes. ..................................................13

CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

CASES

*Adam A. Weschler & Son, Inc. v. Klank,*
   561 A.2d 1003 (D.C. 1989) ...................................................................................... 6

*American Federation of State County & Municipal Employees v. Ortho-McNeil-Janssen Pharm., Inc. (AFSCME),*
   No. 08-cv-5904, 2010 WL 891150 (E.D. Pa. Mar. 11, 2010) ................................. 7

*Balderston v. Medtronic Sofamor Danek, Inc.,*
   285 F.3d 238 (3d Cir. 2002) ................................................................................ 7, 8

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................ 2

*Brookings Municipal Utilities, Inc. v. Amoco Chemical Co.,*
   103 F. Supp. 2d 1169 (D.S.D. 2000)..................................................................... 11

*California v. Infineon Technologies AG,*
   531 F. Supp. 2d 1124 (N.D. Cal. 2007) .................................................................. 8

*Commonwealth ex rel. Pappert v. TAP Pharmaceutical Products, Inc. (TAP),*
   885 A.2d 1127 (Pa. Commw. Ct. 2005).................................................................. 7

*Desiano v. Warner-Lambert Co.,*
   326 F.3d 339 (2d Cir. 2003) .................................................................................... 3

*Duke Energy Int'l, L.L.C. v. Napoli,*
   748 F. Supp. 2d 656 (S.D. Tex. 2010) .................................................................. 15

*E-Shops Corp. v. U.S. Bank Nat'l Ass'n,*
   795 F. Supp. 2d 874 (D. Minn. 2011) ..............................................................12, 13

*Ford v. Chartone, Inc.,*
   908 A.2d 72 (D.C. 2006) ......................................................................................... 6

*Forrester v. Daniels,*
   373 S.W.3d 871 (Ark. 2010).................................................................................. 12

*Forton v. Laszar,*
   239 Mich. App. 711, 609 N.W.2d 850 (2000) ..................................................... 10

*FTC v. Mylan Lab.,*
   99 F. Supp. 2d 1 (D.D.C. 1999) ........................................................................ 8, 10

*Gibbons v. J. Nuckolls, Inc.,*
   216 S.W.3d 667 (Mo. 2007) ................................................................................... 6

iii

*Goshen v. Mut. Life Ins. Co.*,
    774 N.E.2d 1190 (N.Y. 2002) .................................................................... 14

*Grimes v. Enterprise Leasing Co. of Philadelphia, LLC*,
    66 A.3d 330, 337 (Pa. Super. Ct. 2013) .................................................. 11

*Illinois Brick v. Illinois*,
    431 U.S. 720 (1977) ..................................................................................3, 8, 9

*In re Actimmune Marketing Litig.*,
    No. 08-cv-2376, 2010 WL 3463491, at *12 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 F.
    App'x 651 (9th Cir. 2011) ......................................................................... 5, 6

*In re Auto. Parts Antitrust Litig.*,
    No. 12-md-2311, 2013 WL 2456612 (E.D. Mich. June 6, 2013) ........................... 7

*In re Auto. Refinishing Antitrust Litig.*,
    515 F. Supp. 2d 544 (E.D. Pa. 2007) .......................................................... 13

*In re Bextra & Celebrex Marketing Sales Practices and Product Liability Litig.*,
    495 F. Supp. 2d 1027 (N.D. Cal. 2007) .................................................. 5, 11

*In re Chocolate Confectionary Antitrust Litig.*,
    602 F. Supp. 2d 538 (M.D. Pa. 2009) ........................................................ 12

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
    903 F. Supp. 2d 198 (S.D.N.Y. 2012) ...................................................... 9, 11

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ........................................................... 9

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ........................................................ 2

*In re Dynamic Random Access Memory Antitrust Litig. (DRAM)*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) .................................................8, 9, 10

*In re Flonase Antitrust Litig.*,
    692 F. Supp. 2d 524 (E.D. Pa. 2010) ............................................................ 3

*In re Graphics Processing Units Antitrust Litig. (GPU I)*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................................... 2, 10

*In re Graphics Processing Units Antitrust Litig. (GPU II)*,
    540 F. Supp. 2d 1085 (N.D. Cal. 2007) ...................................................... 13

*In re K-Dur Antitrust Litig.*,
    No. 01-md-1652, 2008 WL 2660783 (D.N.J. Mar. 19, 2008) ............................... 2

iv

*In re New Motor Vehicles Canadian Export Antitrust Litig. (NMV)*,
   350 F. Supp. 2d 160 (D. Me. 2004) ............................................................................... passim

*In re Packaged Ice Antitrust Litig.*,
   779 F. Supp. 2d 642 (E.D. Mich. 2011) .................................................................................. 2

*In re Processed Egg Products Antitrust Litig.*,
   851 F. Supp. 2d 867 (E.D. Pa. 2012) ................................................................................... 13

*In re Refrigerant Compressors Antitrust Litig.*,
   No. 2:09-md-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ............................... 14, 15

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   299 F.R.D. 555 (E.D. Tenn. 2014) .......................................................................................... 3

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   No. 07-md-1819, 2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) ............................................ 12

*In re Terazosin Hydrochloride Antitrust Litig.*,
   220 F.R.D. 672 (S.D. Fla. 2004) ............................................................................................. 3

*In re TFT-LCD (Flat Panel) Antitrust Litig. (TFT IV)*,
   787 F. Supp. 2d 1036 (N.D. Cal. 2011) ............................................................................... 12

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa. 2009) .............................................................................................. 3

*LaChance v. U.S. Smokeless Tobacco Co.*,
   931 A.2d 571 (N.H. 2007) ............................................................................................... 13, 14

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,
   No. 13-cv-01180-BLF, 2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) .................................. 2

*McKinnon v. Honeywell, Inc.*,
   977 A.2d 420 (Me. 2009) ........................................................................................................ 6

*Merck & Co., Inc. v. Lyon*,
   941 F. Supp. 1443 (M.D.N.C. 1996) .................................................................................... 15

*Mueller Co. v. U.S. Pipe & Foundry Co.*,
   No. 03-cv-0170, 2003 WL 22272135 (D.N.H. Oct. 2, 2003) ............................................... 14

*Pennsylvania Employee Benefit Trust Fund v. Zeneca*,
   710 F. Supp. 2d 458 (D. Del. 2010) ....................................................................................... 5

*Ports Petroleum Co., Inc. of Ohio v. Nixon*,
   37 S.W.3d 237 (Mo. 2001) ...................................................................................................... 6

*Precourt v. Fairbank Reconstruction Corp.*,
   856 F. Supp. 2d 327 (D.N.H. 2012) ...................................................................................... 14

v

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC (Sheet Metal Workers I),*
   263 F.R.D. 205 (E.D. Pa. 2009) ........................................................................... 3, 14

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC (Sheet Metal Workers II),*
   737 F. Supp. 2d 380 (E.D. Pa. 2010) ......................................................................... 6, 12

*Smith v. Commercial Banking Corp. (In re Smith),*
   866 F.2d 576 (3d Cir. 1989) ...................................................................................... 11

*State ex rel. Bryant v. R & A Investment Co., Inc.,*
   985 S.W.2d 299 (Ark. 1999) ....................................................................................... 12

*State ex rel. Wasden v. Daicel Chemical Indus.,*
   141 Idaho 102, 106 P.3d 428 (2005) ............................................................................ 9

*Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc.,*
   574 A.2d 641 (Pa. Super. Ct. 1990) .............................................................................. 7

*Wilcox Indus. Corp. v. Hansen,*
   870 F. Supp. 2d 296 (D.N.H. 2012) ............................................................................ 14

**STATUTES**

73 PA. STAT. ANN. § 201-1 ................................................................................... 9, 11

ALASKA LAWS CH. 104 (H.B. 225) ........................................................................... 8

ALASKA STAT. ANN. § 45.50.577 ............................................................................. 8

ARK. CODE ANN. § 4-88-101 .................................................................................... 9

ARK. CODE ANN. § 4-88-107(a) .......................................................................... 11, 12

D.C. CODE § 28-3901(a)(2)(B)(i) ............................................................................... 6

IDAHO CODE ANN. § 48-603 ...................................................................................... 9

ME. REV. STAT. tit. 5, § 213(1) .................................................................................. 6

MICH. COMP. LAWS § 445.903 ............................................................................. 9, 10

MO. REV. STAT. § 407.025 .......................................................................................... 5

N.H. REV. STAT. ANN. § 358-A.2 ............................................................................ 13

N.Y. Gen. Bus. Law § 349 ...................................................................................... 14

OR. REV. STAT. § 646.605 ..................................................................................... 9, 10

vi

S.D. CODIFIED LAWS § 37-24-1 ........................................................................................ 9

W. VA. CODE ANN. § 46A-6-101 .................................................................................... 9

REPLY ISO MOTION TO DISMISS GEHA COMPLAINT                    MDL No. 14-md-02521-WHO

# INTRODUCTION[1]

Government Employees Health Association ("GEHA") is a health plan based in Lee's Summit, Missouri.  GEHA seeks to bring claims under the statutes and common law of fifty states. Defendants explained in their initial brief that GEHA's complaint is devoid of allegations demonstrating that GEHA *itself* was a party to any purchase or reimbursement transaction for Lidoderm or generic Lidoderm in any specific state.  (*See* Defs.' Mot. to Dismiss at 30-31.)  As set forth below and in Defendants' initial brief, GEHA lacks Article III standing to bring claims under state laws other than that of its home state of Missouri, and GEHA's claims under Missouri law are defective as a matter of law.  Accordingly, GEHA's complaint must be dismissed in its entirety.

Even if the Court determines that GEHA has Article III standing to bring the claims it asserts, all of its claims should be dismissed for the same reasons the Direct Purchaser Plaintiffs' federal claims must be dismissed.  (*See* Defs.' Mot. to Dismiss at 26-27.[2])  Furthermore, as Defendants demonstrated in their initial brief, many of GEHA's state law claims must be dismissed on independent grounds.

# ARGUMENT

## I.    GEHA'S STATE LAW CLAIMS MUST BE DISMISSED FOR LACK OF ARTICLE III STANDING OUTSIDE OF ITS HOME STATE OF MISSOURI.

GEHA states that it is the second largest national health plan serving federal employees, federal retirees and their families.  (GEHA FAC ¶ 21.)  GEHA's principal place of business is in Missouri, and GEHA alleges it "purchased a significant amount of branded Lidoderm at monopoly prices during the relevant time period."  (*Id.* at ¶¶ 21-22.)  Importantly, GEHA is not bringing

---

[1]    In response to Defendants' Joint Motion to Dismiss Plaintiffs' Complaints ("Defs.' Mot. to Dismiss") (Dkt. No. 95), Direct Purchaser Plaintiffs, End-Payor Plaintiffs, and GEHA filed a Consolidated Opposition ("Pls.' Consol. Opp.") (Dkt. No. 103), and GEHA filed a separate opposition addressing arguments specific to GEHA ("GEHA Opp.") (Dkt. No. 102).  This reply brief addresses the arguments that are specific to GEHA, and Defendants' Reply in Support of Defendants' Joint Motion to Dismiss Plaintiffs' Complaints ("Defs.' Consolidated Reply"), filed herewith, addresses all other arguments.  *See* Stipulation and Order dated September 8, 2014 (Dkt. No. 101).

[2]    GEHA offers no reason why its claims under state laws should survive if the federal claims are dismissed.  (GEHA Opp. at 5-6 & n.11.)  Indeed, if dismissal of GEHA's state law claims on the same grounds as the federal claims were not proper, there would have been no reason for GEHA to join in Sections III.A-G of the Plaintiffs' Consolidated Opposition.  (*See* GEHA Opp. at 2.)

claims on behalf of individual consumers or its plan members.  Rather, GEHA's claims are based on injuries GEHA *itself* allegedly suffered by indirectly paying for Lidoderm prescriptions.  (*See, e.g.,* GEHA FAC ¶¶ 122-24 (claiming injury based on "prices that GEHA paid").)  Unlike individual consumers, a health plan like GEHA does not go into a pharmacy in any state and "purchase" Lidoderm.  (GEHA FAC ¶ 49.)  Instead, it reimburses purchases made by others by forwarding payment (if any) from its business locations.

As an initial matter, a health plan's standing should be limited to the states in which the plan itself made purchases or payments, not the location of the purchase by its members.  *See, e.g.,* *In re K-Dur Antitrust Litig.*, No. 01-md-1652, 2008 WL 2660783, at *5 (D.N.J. Mar. 19, 2008) ("[N]either the residence of [plan] participants nor the location of their purchases is determinative of the law governing the claims asserted by a [plan] on its own behalf.  On the contrary . . . the state with the greatest interest in a [plan's] claims brought on its own behalf is the state where the [plan] has its principal place of business and from which it presumably paid the allegedly supracompetitive prices.").[3]  Nowhere in the complaint does GEHA specifically allege that it purchased Lidoderm or generic Lidoderm in any particular state.  Instead, it repeatedly asserts that it is bringing claims "with respect to Plaintiff's purchases of Lidoderm and generic Lidoderm" in each jurisdiction, without ever stating that any such purchases in fact occurred.  (GEHA FAC ¶¶ 130, 138, 150, 158.)  Such allegations—which are merely consistent with such purchases having occurred—are insufficient under the pleading standards adopted in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  *See, e.g.,* *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 658 (E.D. Mich. 2011) (holding that similarly conclusory allegations to establish multi-state standing

---

[3]    While GEHA tries to distinguish *In re Ditropan XL Antitrust Litigation*, 529 F. Supp. 2d 1098 (N.D. Cal. 2007), the court there dismissed state law claims brought by health plan named plaintiffs in all states outside their home states for lack of standing where the plans did not allege they *"personally purchased"* the drug at issue in those states.  *Id.* at 1107 (emphasis added); *see also Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, No. 13-cv-01180-BLF, 2014 WL 4774611, at *4 (N.D. Cal. Sept. 22, 2014) (dismissing indirect purchaser claims in states where plaintiffs did not reside nor alleged they purchased product); *In re Graphics Processing Units Antitrust Litig. (GPU I)*, 527 F. Supp. 2d 1011, 1026 (N.D. Cal. 2007) (limiting indirect purchaser claims to states in which plaintiffs resided as those were the states where the alleged injury was suffered).  GEHA's vague allegations similarly fail to demonstrate it personally made purchases or suffered injury in any state outside its home state.

"fails to 'nudge' [indirect purchaser plaintiffs'] claims of injury in the states in which they do not reside from 'conceivable' to 'plausible.'").

While some courts have permitted a health plan to assert claims when the health plan sent reimbursement into a particular state,[4] GEHA's allegations also fall short of establishing that its payments for Lidoderm took place in any specific state. GEHA alleges that its insurance plans cover "members residing in" all fifty states as well as the District of Columbia and Puerto Rico,[5] but it does not state that it has reimbursed members in each such state. This is perhaps unsurprising, given the complicated nature of prescription drug health insurance. For instance, many insurers contract with a third-party pharmacy benefit manager, and the third party undertakes responsibility for paying pharmacies and members. *See generally In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 565-66 (E.D. Tenn. 2014) (observing that health plans frequently contract with commercial insurers or Pharmacy Benefits Managers who, in turn, reimburse retail pharmacies for dispensing pharmaceutical products to health plan members on behalf of the health plan). In such instances, the insurer may never engage in transactions directly with pharmacies or members. Here, GEHA's complaint states generally that "[v]irtually all United States pharmacies have dispensing contracts with [third party payors ("TPPs")]," and "[u]nder these contracts, for drugs dispensed to members of TPP plans, pharmacies typically charge the TPP and consumer end payer a retail

---

[4]    *See, e.g., In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 532 (E.D. Pa. 2010) ("They have experienced an injury…in states where they are located, in states where *they* purchased Flonase and in states where *they reimbursed* members for purchases of Flonase.") (emphasis added); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC (Sheet Metal Workers I)*, 263 F.R.D. 205, 213 (E.D. Pa. 2009) (dismissing claims in states where plans had not specifically alleged they "sent a reimbursement into a particular state"); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 156 (E.D. Pa. 2009) (standing was proper in states where plans specifically alleged injury "through the act of reimbursing their members…"); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 681 (S.D. Fla. 2004) (dismissing health plan claims in state where plan failed to establish it "reimbursed any claims in that state"). GEHA also cites *Desiano v. Warner-Lambert Co.*, 326 F.3d 339 (2d Cir. 2003), for the general proposition that courts have recognized the "direct relationship between the illegal acts of drug manufacturers and the effects suffered by third party payors like GEHA" (GEHA Opp. at 3 n.5), but this does not relieve GEHA of the obligation to adequately allege in its complaint in what states those alleged "effects" were suffered by GEHA.

[5]    GEHA has voluntarily withdrawn its claim under the Puerto Rico Antitrust Act. (*See* GEHA Opp. at 1 n.2.) Because *Illinois Brick v. Illinois*, 431 U.S. 720 (1977) forecloses GEHA's claim under Puerto Rico law, this Court should dismiss the claim with prejudice. (*See* Defs.' Mot. to Dismiss at 32; Defs.' Consol. Reply at 24-25.)

price . . . per prescription" (GEHA FAC ¶ 49), but it never specifically alleges that GEHA *itself* has contracts with retail pharmacies, that it *directly* reimburses retail pharmacies, or that it *directly* reimburses members in each state in which it attempts to assert a claim. Likewise, while the complaint says that GEHA "purchased Lidoderm and/or its AB-rated generic equivalent from retail pharmacies," it does not say in which states, if any, such purchases occurred, nor does it state that these "purchases" were direct transactions with pharmacies as opposed to indirect transactions through an intermediary. (GEHA FAC ¶ 159.)

In short, none of the complaint's allegations cited in GEHA's opposition establishes that GEHA itself directly engaged in a transaction for the purchase of Lidoderm or its generic equivalent outside of its home state of Missouri or identifies the specific states where GEHA itself sent reimbursements to its members or to pharmacies. There are no allegations in the complaint that establish that GEHA actually participates in transactions for the purchase of Lidoderm in jurisdictions beyond Missouri. And, as set forth below, its claims under Missouri law fail for separate reasons.

## II.   GEHA'S CLAMS UNDER MISSOURI'S CONSUMER PROTECTION LAW AND THE LAWS OF SEVERAL OTHER STATES MUST BE DISMISSED FOR FAILURE TO PLEAD THAT IT PURCHASED LIDODERM FOR PERSONAL, FAMILY, OR HOUSEHOLD USE.

Defendants' initial brief demonstrated that GEHA's claims under Missouri's consumer protection statute, as well as similar statutes under other states' laws (District of Columbia, Hawaii, Maine, Massachusetts, Montana, and Pennsylvania),[6] must be dismissed because GEHA does not, and cannot, allege that GEHA purchased Lidoderm for "personal, family, or household" use. (Defs.' Mot. to Dismiss at 31, 36-37.) GEHA attempts to argue that it may assert claims on behalf of its plan participants, who may themselves have purchased for personal, family or household use. (GEHA Opp. at 8-9.) GEHA cites paragraphs 45-53 of its complaint in support of its argument, but those paragraphs only consist of general descriptions of the "Economic Model of Prescription Drug

---

[6]   Defendants' response to Plaintiffs' arguments concerning Massachusetts is set forth in Defendants' Consolidated Reply filed herewith. GEHA's brief states that it is voluntarily withdrawing its claims under Hawaii's Unfair Competition Law. (GEHA Opp. at 1 n.3.) Defendants' motion therefore should be granted as to that claim with prejudice.

Purchases and Sales" (as that part of the complaint is titled) and contain no indication that GEHA is proceeding in a representative capacity. To the contrary, GEHA's complaint is rife with allegations that it is proceeding based on its own purchases. (*See, e.g.,* GEHA FAC ¶¶ 3, 130, 138, 150, 158.)

GEHA also cites *In re Bextra & Celebrex Marketing Sales Practices and Product Liability Litigation*, 495 F. Supp. 2d 1027, 1032 (N.D. Cal. 2007) and *Pennsylvania Employee Benefit Trust Fund v. Zeneca*, 710 F. Supp. 2d 458, 483 (D. Del. 2010), for the proposition that it can bring consumer protection claims under Missouri's and other states' consumer protection laws identified in Defendants' motion. Reliance on these cases is misplaced, however, because they only addressed claims under Michigan law, and Defendants have not moved to dismiss GEHA's Michigan statutory claims on this basis. Moreover, the court in *Zeneca* dismissed the third party payor's complaint based on its failure to allege that it purchased for "personal, family, or household" use, which, at a minimum, is the same result that should occur here. 710 F. Supp. 2d at 484.

GEHA's various state-specific arguments are similarly defective because each of the states in question limits consumer protection claims to persons who have bought a production for personal, family or household use.

**Missouri**. Missouri's consumer protection law provides a private civil cause of action for persons who purchase or lease merchandise primarily for "personal, family or household purposes." MO. REV. STAT. § 407.025 (2014). Defendants' initial brief showed that GEHA does not allege that its Lidoderm purchasers were for "personal, family or household purposes" as required under Missouri's statute. (Defs.' Mot. to Dismiss at 31, 36); MO. REV. STAT. § 407.025. In support of this argument, among other authorities, Defendants cited *In re Actimmune Marketing Litigation*, in which the Ninth Circuit affirmed this Court's decision dismissing the same Missouri consumer protection claim asserted by GEHA on the very same grounds Defendants argue as the basis for dismissal here. No. 08-cv-2376, 2010 WL 3463491, at *12 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 F. App'x 651 (9th Cir. 2011). GEHA's opposition ignores this authority and instead cites decisions that do not address Missouri's statutory requirement that a plaintiff purchase merchandise primarily

1    for "personal, family, or household purposes."[7]  The Court should follow the result in *Actimmune*

2    and dismiss GEHA's Missouri consumer protection claim.   Because GEHA does not have

3    Article III standing to bring claims under any other state laws as discussed *supra*, GEHA's

4    complaint should be dismissed in its entirety with prejudice.

5        **District of Columbia**.   GEHA does not have standing to pursue relief under the D.C.

6    Consumer Protection Procedures Act ("CPPA").   "[A] valid claim for relief under the CPPA must

7    originate out of a consumer transaction." *Ford v. Chartone, Inc.*, 908 A.2d 72, 81 (D.C. 2006).  The

8    relevant transaction is the "ultimate retail transaction between the final distributor and the individual

9    member of the consuming public that the Act covers."  *Adam A. Weschler & Son, Inc. v. Klank*, 561

10   A.2d 1003, 1005 (D.C. 1989).   GEHA does not allege that it was a party to the "ultimate retail

11   transaction" in which its members obtained Lidoderm in the District of Columbia.  Nor does GEHA

12   allege that it participated in a consumer transaction in which *it* purchased Lidoderm for "personal,

13   household, or family purpose," as required by the CPPA.  *See* D.C. CODE § 28-3901(a)(2)(B)(i).

14       **Maine**.   To recover under Maine's Unfair Trade Practices Act ("Maine UTPA"), a plaintiff

15   must purchase goods, services, or property "primarily for personal, family or household purposes."

16   ME. REV. STAT. tit. 5, § 213(1).   GEHA does not allege that it purchased Lidoderm for such

17   purposes.   GEHA cites *McKinnon v. Honeywell, Inc.*, 977 A.2d 420, 427 (Me. 2009) for the

18   proposition that indirect purchasers may recover under the Maine UTPA.   GEHA does not,

19   however, cite any case law supporting its claim that it may pursue a Maine UTPA claim where it

20   has failed to allege specifically that it purchased Lidoderm for personal use.

21       **Montana**.   GEHA acknowledges that the Montana Unfair Trade Practices Act ("MUTPA")

22   limits claims to those who purchase goods "primarily for personal, family, or household purposes."

23   GEHA cites *In re New Motor Vehicles Canadian Export Antitrust Litigation (NMV)*, 350 F. Supp.

24   2d 160, 193 (D. Me. 2004), in support of its Montana claim, but its reliance on that decision is

25   misplaced.   That case did not address whether plaintiffs purchased goods "primarily for personal,

26   _____

27   [7]    *See generally Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237 (Mo. 2001), *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667 (Mo. 2007), and *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC (Sheet Metal Workers II)*, 737 F. Supp. 2d 380 (E.D. Pa.

28   2010).

family, or household purposes."  It held that certain defendants could be liable under the MUTPA although they had not engaged directly in trade with consumers.  *Id.* at 187, 193.  Courts addressing Defendants' argument, which is focused on the purpose of the plaintiff's purchase, have dismissed Montana claims on this basis.  (*See* Defs.' Mot. to Dismiss 36); *see also In re Auto. Parts Antitrust Litig.*, No. 12-md-2311, 2013 WL 2456612, at *30 (E.D. Mich. June 6, 2013) (dismissing claims under Montana law because plaintiffs did not purchase goods "primarily for personal, family or household uses").

**Pennsylvania**.  In support of its Pennsylvania claim, GEHA relies on *American Federation of State County & Municipal Employees v. Ortho-McNeil-Janssen Pharm., Inc. (AFSCME)*, No. 08-cv-5904, 2010 WL 891150 (E.D. Pa. Mar. 11, 2010), and *Commonwealth ex rel. Pappert v. TAP Pharmaceutical Products, Inc. (TAP)*, 885 A.2d 1127, 1142-43 (Pa. Commw. Ct. 2005).  The holding in *AFSCME*, however, is based on a misreading of *TAP* and another Pennsylvania case, *Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641 (Pa. Super. Ct. 1990).  In both earlier cases, plaintiff entities asserted claims in a *representative capacity* on behalf of others who obtained products for "personal, family, or household use."  *TAP*, 885 A.2d at 1142-43 (holding that state of Pennsylvania could bring claims in a representative capacity on behalf of consumers); *Valley Forge Towers,* 574 A.2d at 648-9 (holding that condominium association could assert claims on behalf of its members).  The court in *AFSCME* cited *TAP* and *Valley Forge Towers* for the proposition that Pennsylvania courts have "recognized the ability of third-party trusts and associations to assert [Pennsylvania consumer protection] claims *on behalf of their constituent members* . . . ."  2010 WL 891150, at *3 (emphasis added).  While the court in *AFSCME* held that the third party plaintiff had standing to assert claims, it offered no support under Pennsylvania law (or any other rationale) for extending *TAP* and *Valley Forge Towers* to a plaintiff asserting claims *on its own behalf.  Id.* at *3-4.

Other courts have recognized the limits of cases like *TAP* and *Valley Forge Towers* under Pennsylvania law.  In *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238 (3d Cir. 2002), for instance, an orthopedic surgeon who specialized in spinal surgery sued manufacturers of certain bone screws based on alleged misrepresentations by the manufacturers.  *Id.* at 239.  The Third

1    Circuit affirmed dismissal of the surgeon's claims, holding that the surgeon was not a "purchaser"

2    and did not "purchase" the bone screws. *Id.* at 240-42. In doing so, the court considered whether

3    the surgeon purchased the bone screws for "personal, family, or household use" and explicitly

4    rejected the surgeon's argument that his purchase qualified because he purchased the screws for his

5    patients' "personal use." *Id.* at 242. The court observed that "we have uncovered no Pennsylvania

6    decision finding actionable a *non-representative* plaintiff's claim based on others' 'personal uses.'"

7    *Id.* (emphasis added). As in *Balderston*, GEHA does not purport to assert a claim on behalf of its

8    members, and did not purchase Lidoderm for "personal, family, or household use."

9    **III.    GEHA FAILS TO STATE CLAIMS UNDER OTHER STATE CONSUMER
     PROTECTION LAWS.**

10

11       **A.    GEHA Cannot Circumvent *Illinois Brick* by Asserting Antitrust Claim Under
             Alaska's Consumer Protection Statute.**

12          Alaska amended its antitrust statute in 2003 to make clear that *only* the attorney general may

13   seek monetary relief on behalf of indirect purchasers. *See* 2003 ALASKA LAWS CH. 104 (H.B. 225),

14   effective July 1, 2003, codified at ALASKA STAT. ANN. § 45.50.577. GEHA cannot and does not

15   assert a claim under Alaska's antitrust statute. Instead, GEHA attempts to assert a claim under

16   Alaska's consumer protection statute. In support of its claim, GEHA relies exclusively on *FTC v.*

17   *Mylan Lab.*, 99 F. Supp. 2d 1, 5 (D.D.C. 1999).

18          GEHA's reliance on *Mylan* is misplaced. Because *Mylan* was decided before the 2003

19   amendment, the court did not have occasion to evaluate the "wisdom of allowing plaintiffs' claims

20   to proceed under Alaska's consumer protection statute where those exact same claims were

21   explicitly barred under the state antitrust statute." *California v. Infineon Technologies AG*, 531 F.

22   Supp. 2d 1124, 1142 (N.D. Cal. 2007) (dismissing claim under Alaska's consumer protection

23   statute). In any event, *Mylan* dealt only with whether the Alaska Attorney General can sue for

24   restitution under Alaska's consumer protection statute; it did not address whether a private plaintiff

25   can sue for damages under Alaska's consumer protection statute. 99 F. Supp. 2d at 5.

26          Absent specific guidance from the Alaska authorities to the contrary, this Court should not

27   construe Alaska's consumer protection statute to permit claims that are expressly barred under

28   Alaska's antitrust statute. *In re Dynamic Random Access Memory Antitrust Litig. (DRAM)*, 516 F.

Supp. 2d 1072, 1108 (N.D. Cal. 2007) ("adopt[ing] the interpretation that will wreak the least amount of havoc on the existing law in Alaska" and dismissing claims under Alaska consumer protection statute); *see also In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 413 (S.D.N.Y. 2011) (holding that "any state that has not expressly passed *Illinois Brick* repealer legislation or interpreted its law in such a way as to override the rule of *Illinois Brick* is presumed to have decided to follow federal law"). Accordingly, the court should dismiss GEHA's Alaska consumer protection claim.

### B.   GEHA's Claims Under the Consumer Protection Laws of Several States Fail Because the Laws Do Not Reach Antitrust Violations.

Defendants' initial brief explained that certain states' consumer protection statutes prohibit specific, enumerated acts, and that entering into an allegedly anticompetitive patent settlement agreement is not one of those acts.[8]  (*See* Defs.' Mot. to Dismiss at 35-36.)

**Idaho**.  "[T]he Idaho Supreme Court has explicitly held that indirect purchasers of price-fixed products cannot sue under Idaho's consumer protection statute—the CPA—since the statute specifically lists the types of conduct that are unlawful, and price-fixing is not one of them." *DRAM*, 516 F. Supp. 2d at 1110 (referencing *State ex rel. Wasden v. Daicel Chemical Indus.*, 141 Idaho 102, 106 P.3d 428 (2005)).  GEHA does not dispute the holding in *Wasden* or attempt to differentiate the antitrust allegations in that case with the allegations at issue here.  Instead, GEHA cites *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 225 (S.D.N.Y. 2012), a case in which plaintiffs' allegations of consumer fraud were expressly premised on misrepresentations to governmental entities.  But here, GEHA's complaint has not identified any misrepresentation by Defendants, or any other conduct that falls under the list of conduct declared unlawful under the CPA.  (*See* Defs.' Mot. to Dismiss at 35.)  Because Idaho's consumer protection statute does not prohibit the conduct at issue in this case, this Court should dismiss GEHA's claim under Idaho law.

**Oregon**.  Defendants' motion to dismiss explained that the Oregon Unfair Trade Practices

---

[8]   *See* IDAHO CODE ANN. § 48-603; MICH. COMP. LAWS § 445.903; OR. REV. STAT. § 646.605, *et seq.*; 73 PA. STAT. ANN. § 201-1, *et seq.*; S.D. CODIFIED LAWS § 37-24-1, *et seq.*; W. VA. CODE ANN. § 46A-6-101, *et seq.*; ARK. CODE ANN. § 4-88-101, *et seq.*

1    Act ("OUTPA") prohibits specific, enumerated activities, and does not reach Defendants' alleged

2    conduct. (*See* Defs.' Mot. to Dismiss at 35); OR. REV. STAT. §§ 646.605, *et seq.* In its response,

3    GEHA makes clear that it is relying on a specific provision of the OUTPA, section 646.607, which

4    classifies as an unlawful practice "any unconscionable tactic in connection with selling, renting or

5    disposing of real estate, goods or services, or collecting or enforcing an obligation." (*See* GEHA

6    Opp. at 11 n.16.) GEHA has not identified or pleaded an unconscionable tactic engaged in by

7    Defendants. *See* OR. REV. STAT. § 646.605 (defining "[u]nconscionable tactics"). Nor does GEHA

8    cite any case that would support the application of section 646.607 to the alleged conduct. Courts in

9    this district have dismissed claims based on anticompetitive conduct brought under OUTPA.

10   *DRAM*, 516 F. Supp. 2d at 1115-18; *GPU I*, 527 F. Supp. 2d at 1030. This court should do the

11   same with respect to GEHA's OUTPA claim.

12       **West Virginia**. Defendants' motion explained that West Virginia's Consumer Credit and

13   Protection Act, ("WVCCPA"), includes a list of prohibited activities. (*See* Defs.' Mot. to Dismiss

14   at 35); *see also DRAM*, 516 F. Supp. 2d at 1118. As the court in *DRAM* observed, "nothing on the

15   list targets what might be called traditional antitrust conduct—*e.g.*, price-fixing and market

16   allocation . . . or conduct otherwise constituting a horizontal or vertical restraint on trade or

17   commerce." *Id.* The list is "aimed at conduct that, in one way or another, 'creates a likelihood of

18   confusion or of misunderstanding' with respect to goods, services or businesses, or involves

19   deceptive, false, or misleading statements and representations in connection with goods, services

20   and businesses." *Id.* In response, GEHA highlights the meaning of "trade or commerce" and cites

21   *Mylan*, 99 F. Supp. 2d at 10, for the proposition that indirect purchaser claims are permitted under

22   the statute. GEHA does not, however, respond to Defendants' argument or otherwise argue that the

23   alleged conduct fits within the list of prohibited activities. Nor does GEHA cite any case suggesting

24   that Defendants' alleged conduct is prohibited under the WVCCPA. Accordingly, GEHA's

25   WVCCPA claim should be dismissed.

26       **Michigan**. Under Michigan's consumer protection statute, MICH. COMP. LAWS § 445.903,

27   "the proscribed practices are limited to those itemized in the statute." *NMV*, 350 F. Supp. 2d at 189

28   (discussing *Forton v. Laszar*, 239 Mich. App. 711, 609 N.W.2d 850, 853 (2000)). GEHA cites

1   *Bextra*, 495 F. Supp. 2d at 1031, a case in which plaintiffs alleged, among other things, that

2   defendants "falsely advertised Celebrex and Bextra" as part of its marketing and sales campaign to

3   doctors and patients.  *Id.* at 1034.  But *Bextra* involved the specific type of conduct that consumer

4   protection claims were designed to remedy—*e.g.*, misrepresentations.  GEHA has not alleged that

5   Defendants engaged in misrepresentations or any of the other practices proscribed under Michigan's

6   consumer protection statute.

7          **Pennsylvania**.  The Pennsylvania consumer protection statute "bans only the enumerated

8   activities" in the statute.  *Smith v. Commercial Banking Corp. (In re Smith)*, 866 F.2d 576, 583 (3d

9   Cir. 1989); *see also NMV*, 350 F. Supp. 2d at 200.  The statute, 73 PA. STAT. ANN. § 201-1, *et seq.*,

10  does not ban the type of antitrust conduct that plaintiffs allege occurred here.  (*See* Defs.' Mot. to

11  Dismiss at 35.)  GEHA claims that it seeks relief under the "catch-all" provision of the PUTCL.

12  (*See* GEHA Opp. at 11 n.16.)  That provision prohibits "[e]ngaging in any other fraudulent or

13  deceptive conduct which creates a likelihood of confusion or misunderstanding."  *Id.* § 201-

14  2(4)(xxi).  GEHA cites *Grimes v. Enterprise Leasing Co. of Philadelphia, LLC*, 66 A.3d 330, 337

15  (Pa. Super. Ct. 2013), which involved allegations that, after plaintiff returned a rental car with

16  certain damages, the rental agency, Enterprise, "made knowingly false statements to deceive

17  [plaintiff] into accepting Enterprise's alleged damages and fees."  *Grimes* does not support GEHA's

18  claim.  Unlike the plaintiff in *Grimes*, GEHA has not pleaded any fraudulent or deceptive conduct,

19  and therefore GEHA has not stated a claim under the PUTCL catch-all provision.

20         **South Dakota**.  Defendants' motion to dismiss explained that South Dakota's consumer

21  protection statute "prohibits only those acts or practices specifically designated as unlawful in the

22  statute."  (*See* Defs.' Mot. to Dismiss at 35); *NMV*, 350 F. Supp. 2d at 202.  In response, GEHA

23  cites *In re DDAVP Indirect Purchaser Antitrust Litigation*, 903 F. Supp. 2d 198, 225 (S.D.N.Y.

24  2012) and *Brookings Municipal Utilities, Inc. v. Amoco Chemical Co.*, 103 F. Supp. 2d 1169, 1178

25  (D.S.D. 2000), both of which involved alleged misrepresentations.  Here, in contrast, GEHA has not

26  pleaded any misrepresentations or otherwise alleged that Defendants engaged in an act or practice

27  designated as unlawful under South Dakota's consumer protection statute.

28         **Arkansas**.  GEHA attempts to rely on the catch-all provision of the Arkansas Deceptive

1  Trade Practices Act ("ADTPA"). The ADTPA prohibits ten specific offenses, as well as "any other

2  unconscionable, false, or deceptive act or practice in business, commerce or trade." ARK. CODE

3  ANN. § 4-88-107(a). As the Arkansas Supreme Court has recognized, "when general words follow

4  specific words in a statutory enumeration the general words are construed to embrace only objects

5  similar in nature to those objects enumerated by the preceding specific words." *Forrester v.*

6  *Daniels*, 373 S.W.3d 871, 876 (Ark. 2010). Accordingly, in *State ex rel. Bryant v. R & A*

7  *Investment Co., Inc.*, 985 S.W.2d 299, 302 (Ark. 1999), the Arkansas Supreme Court defined the

8  term "unconscionable" to include the twin considerations of "gross inequality of bargaining power"

9  and "whether the aggrieved party was made aware of and comprehended the provision in question,"

10  the same considerations that underlie the specific offenses contained in section 4-88-107(a).

11  Plaintiffs cite cases from courts outside Arkansas adopting a broader reading of the term

12  "unconscionable,"[9] but Defendants respectfully suggest that the rationale for those decisions is not

13  well-grounded in Arkansas law. In the absence of authority from Arkansas's highest court, this

14  Court should follow the decisions in this district that have dismissed claims brought under the

15  ADTPA when based on allegedly anticompetitive conduct. *E.g.*, *In re TFT-LCD (Flat Panel)*

16  *Antitrust Litig. (TFT IV)*, 787 F. Supp. 2d 1036, 1042 (N.D. Cal. 2011); *In re Static Random Access*

17  *Memory (SRAM) Antitrust Litig.*, No. 07-md-1819, 2010 WL 5094289, at *8 (N.D. Cal. Dec. 8,

18  2010).

19  **C.   GEHA Has Not Adequately Pleaded Deceptive Acts or Practices.**

20  Defendants' initial brief explained that GEHA's allegations of deceptive conduct are mere

21  "labels and conclusions" that do not pass muster under Rule (8)(a), let alone Rule (9)(b)'s

22  requirement that a plaintiff plead "with particularity the circumstances constituting fraud or

23  mistake." (*See* Defs.' Mot. to Dismiss at 38-39); *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 795 F.

24

25  ───────────────
   [9]   *NMV*, 350 F. Supp. 2d at 178 (noting that definition of "unconscionable" adopted by Arkansas

26  Supreme Court "does not seem pertinent to evaluating an alleged antitrust conspiracy" and selecting
   alternative definition); *Sheet Metal Workers II*, 737 F. Supp. 2d at 405 (citing *NMV* definition); *In*

27  *re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 583 (M.D. Pa. 2009) (same).

28  As noted herein, GEHA has not alleged any fact showing that Defendants engaged in any "false" or
   "deceptive" acts, and GEHA does not argue otherwise in connection with its Arkansas claim.

Supp. 2d 874, 879 (D. Minn. 2011) (applying Rule 9(b) to deceptive trade practices claims under Minnesota law).

GEHA does not dispute that the consumer protection laws of Arizona, Idaho, Maine, Michigan, Minnesota, New Mexico, New York, and South Dakota require a deceptive act or practice. Instead, GEHA has devised new labels and conclusions, arguing that GEHA's complaint "paint[s] a picture of Defendants who preyed on the purchasers of Lidoderm," and that Defendants "deceived the public . . . by selling Lidoderm prescription products at prices that were not the result of fair and open market competition." (GEHA Opp. at 12.) In support of these generalizations, GEHA cites 21 paragraphs in its complaint that summarize GEHA's allegations that Defendants entered into a settlement agreement to resolve patent litigation. (*Id.* (citing GEHA FAC ¶¶ 93-113).) GEHA has not cited within those paragraphs, and none of them contain, any specific allegations of deceptive acts or practices. Nor does an alleged antitrust violation, by itself, constitute a deceptive act or practice.[10] Accordingly, GEHA's consumer protection claims under Arizona, Idaho, Maine, Michigan, Minnesota, New Mexico, New York, and South Dakota law should be dismissed.

### D. GEHA Has Not Alleged Primarily Intrastate Commerce As Required By Certain Consumer Protection Statutes.

A number of states further restrict their consumer protection laws to conduct that is entirely or primarily intrastate. GEHA has failed to show that these states permit a claim to go forward based on generalized conduct, or conduct elsewhere, that might have an effect within the state.

**New Hampshire**. New Hampshire's consumer protection law requires that the alleged unfair or deceptive act take place within New Hampshire. N.H. REV. STAT. ANN. § 358-A.2.

---

[10] *E.g.*, *In re Graphics Processing Units Antitrust Litig. (GPU II)*, 540 F. Supp. 2d 1085, 1100-01 (N.D. Cal. 2007) (dismissing consumer protection claims under Arkansas, the District of Columbia, and Rhode Island law for failure to plead a deceptive practice apart from the anticompetitive conduct itself); *NMV*, 350 F. Supp. 2d at 178, 190-91, 195, 197 (holding that failure to disclose conspiracy was not "false or deceptive act" under Arkansas, Missouri, New Mexico, and New York consumer protection law); *see also In re Auto. Refinishing Antitrust Litig.*, 515 F. Supp. 2d 544, 555 (E.D. Pa. 2007) (observing that under New York law, "mere anticompetitive conduct alone does not constitute deceptive conduct . . . [and thus] the Complaint must allege some additional deception or misrepresentation"); *In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d 867, 909 (E.D. Pa. 2012) (dismissing New York claim because the alleged price-fixing conspiracy, not the allegedly pretextual statements, caused the harm).

1    GEHA's complaint is devoid of any allegations that Defendants' alleged conduct took place in New

2    Hampshire.  Plaintiffs rely on *LaChance v. U.S. Smokeless Tobacco Co.*, 931 A.2d 571, 578 (N.H.

3    2007), for the principle that the NHCPA was intended to have a "broad sweep."  But the court in

4    *LaChance* merely held that indirect purchasers could seek relief under New Hampshire's consumer

5    protection statute.  *See id.* at 575-81.  The court did not address the issue presented here:  whether

6    Defendants' "offending conduct" took place in New Hampshire.[11]   Several courts that have

7    addressed the issue presented here, including several courts within New Hampshire, have held that

8    Defendants' "offending conduct" must take place within New Hampshire.  *Precourt v. Fairbank*

9    *Reconstruction Corp.*, 856 F. Supp. 2d 327, 343-44 (D.N.H. 2012); *accord Wilcox Indus. Corp. v.*

10   *Hansen*, 870 F. Supp. 2d 296, 305 (D.N.H. 2012) (dismissing consumer protection claim where

11   there was "simply no allegation that any offending conduct occurred in New Hampshire"); *In re*

12   *Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2013 WL 1431756, at *18 (E.D.

13   Mich. Apr. 9, 2013) (same); *Mueller Co. v. U.S. Pipe & Foundry Co.*, No. 03-cv-0170, 2003 WL

14   22272135, at *6 (D.N.H. Oct. 2, 2003).  Because GEHA does not allege that any of the Defendants'

15   conduct took place in New Hampshire, its claim under the NHCPA must be dismissed.

16        **New York**.  Likewise, New York General Business Law § 349 "unambiguously evinces a

17   legislative intent to address commercial misconduct occurring within New York," and to be a

18   prohibited act under the statute, "the transaction in which the consumer is deceived must occur in

19   New York." *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195 (N.Y. 2002); *Sheet Metal*

20   *Workers I*, 263 F.R.D. at 214.  GEHA does not allege that any of the Defendants' alleged conduct

21   took place in New York.  GEHA cites *Goshen* for the proposition that the statute's scope is broad,

22   but does not cite any authority for the proposition that its claims may proceed although GEHA fails

23   to allege that any of Defendants' alleged conduct took place in New York.

24        **North Carolina**.    To state a claim under the North Carolina Unfair Trade Practices Act

25

26   _____

     [11]    The court did not need to address this question, because plaintiffs alleged that the defendants,
27   among other things, "'intentionally and routinely' removed competitors' racks from retail stores [in
     New Hampshire] and entered into agreements with [New Hampshire] retailers to restrict the sale,
28   advertising and display of competing brands, as well as gave [New Hampshire] retailers incentives
     to exclude competing brands from stores." *Id.* at 573.

1   ("NC UTPA"), a plaintiff must allege that defendants' conduct had a substantial effect on in-state

2   business.  *See Merck & Co., Inc. v. Lyon*, 941 F. Supp. 1443, 1463 (M.D.N.C. 1996) (dismissing

3   NC UTPA claim where "plaintiffs . . . failed to allege a substantial effect on any in-state business

4   operations," and "[a]ny injury plaintiffs may suffer in North Carolina will be incidental"); *see also*

5   *Duke Energy Int'l, L.L.C. v. Napoli*, 748 F. Supp. 2d 656, 676-77 (S.D. Tex. 2010); *Refrigerant*

6   *Compressors*, 2013 WL 1431756, at *18.  GEHA alleges that it operates in the state of Missouri and

7   has members throughout the United States.  (*See* GEHA FAC ¶¶ 21-22.)  GEHA does not allege

8   that it purchased Lidoderm or generic Lidoderm in North Carolina, but even if it did, its injury is

9   "incidental" under North Carolina law.  *Merck & Co., Inc.*, 941 F. Supp. at 1463.

10                                      **CONCLUSION**

11        For the reasons set forth above, in Defendants' Memorandum of Points and Authorities in

12   Support of Joint Motion to Dismiss Plaintiffs' Complaints, and in Defendants' Consolidated Reply,

13   Defendants respectfully request that the Court dismiss GEHA's First Amended Complaint with

14   prejudice.

15   DATED: October 14, 2014

16                                                  ARNOLD & PORTER LLP

17

18                              By:  _____/s/ Daniel B. Asimow_____
                                              Jonathan L. Stern
19                                            Daniel B. Asimow
                                              Ryan Z. Watts
20                                         Attorneys for Defendant
                                       ENDO PHARMACEUTICALS INC.

21

22

23

24

25

26

27

28

1   | SKADDEN, ARPS, SLATE, MEAGHER &        SQUIRE PATTON BOGGS (US) LLP
    | FLOM LLP
2

3   | By:_____/s/ Steven C. Sunshine_____        By: _____/s/ David S. Elkins_____
    |         Steven C. Sunshine                               David S. Elkins
4   |         Karen Hoffman Lent                               Nathan Lane III
    |       Attorneys for Defendants                          Noriyuki Shimoda
5   | WATSON PHARMACEUTICALS, INC.,                          Joseph A. Meckes
    |                                                       Attorneys for Defendants
6   |    WATSON LABORATORIES, INC.,               TEIKOKU SEIYAKU CO., LTD. and
    |           ACTAVIS, PLC,                        TEIKOKU PHARMA USA, INC.
7   |              ANDA, INC.,
    | ANDA PHARMACEUTICALS, INC., and
8   |   VALMED PHARMACEUTICALS, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28