DANIEL B. ASIMOW (SBN 165661)
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone:  (415) 471-3100
Facsimile:  (415) 471-3400
Email: daniel.asimow@aporter.com

JONATHAN L. STERN (admitted *pro hac vice*)
RYAN Z. WATTS (admitted *pro hac vice*)
ARNOLD & PORTER LLP
555 12th Street NW
Washington, D.C. 20004
Telephone: (202) 942-5000
Facsimile:  (202) 942-5999
Email: jonathan.stern@aporter.com
Email: ryan.watts@aporter.com

Attorneys for Defendant
ENDO PHARMACEUTICALS INC.
[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| This Document Relates to:<br><br>ALL END-PAYOR CASES<br><br>Individual Case No. 3:14-cv-2180-WHO | **DEFENDANTS' NOTICE OF JOINT MOTION, JOINT MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION TO DISMISS END-PAYOR PLAINTIFFS' CONSOLIDATED SECOND AMENDED COMPLAINT AND GEHA'S SECOND AMENDED COMPLAINT**<br><br>Date:        April 22, 2015<br>Time:       2:00 p.m.<br>Place:      Courtroom 2, 17th Floor<br>Judge:     Hon. William H. Orrick |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on April 22, 2015, at 2:00 p.m., or as soon thereafter as the matter may be heard by the Court, at the courtroom of the Honorable William H. Orrick, Courtroom 2, 17th Floor, United States District Court, 450 Golden Gate Avenue, San Francisco, California, Defendants Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., and Actavis, plc, (together, "Watson"); Anda, Inc., Anda Pharmaceuticals, Inc., and Valmed Pharmaceuticals, (together, "Anda"); Endo Pharmaceuticals Inc. ("Endo"); and Teikoku Pharma USA and Teikoku Seiyaku Co. (together, "Teikoku") will and hereby do move the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing certain claims in the End-Payor Plaintiffs' Consolidated Second Amended Complaint and the Second Amended Complaint by the Government Employees Health Association (collectively, the "Second Amended Complaints") with prejudice. This motion to dismiss is brought on the grounds that the claims in the Second Amended Complaints fail to state a claim under certain state laws against Defendants upon which relief can be granted.

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ...................................................................ii

INTRODUCTION .......................................................................................................................1

BACKGROUND ........................................................................................................................2

PLAINTIFFS AND CLAIMS ....................................................................................................3

ARGUMENT .............................................................................................................................3

I.     THE COURT SHOULD DISMISS END-PAYOR PLAINTIFFS' CLAIMS UNDER THE LAWS OF UTAH AND MASSACHUSETTS.........................................................3

    A.    THE COURT SHOULD DISMISS END-PAYOR PLAINTIFFS' UTAH ANTITRUST ACT CLAIM......................................................................................3

    B.    THE COURT SHOULD DISMISS END-PAYOR PLAINTIFFS' MASSACHUSETTS CONSUMER PROTECTION ACT CLAIM.........................4

II.    THE COURT SHOULD DISMISS GEHA'S CLAIMS UNDER THE LAWS OF SEVERAL STATES. .........................................................................................................5

    A.    THE COURT SHOULD DISMISS GEHA'S CLAIM UNDER THE RHODE ISLAND ANTITRUST ACT.........................................................................5

    B.    THE COURT SHOULD DISMISS GEHA'S CLAIMS UNDER THE CONSUMER PROTECTION LAWS OF SEVERAL STATES. ...........................6

        1.    Alaska..............................................................................................7

        2.    Arkansas...........................................................................................8

        3.    District of Columbia........................................................................9

        4.    Idaho..............................................................................................10

        5.    Maine.............................................................................................10

        6.    Massachusetts................................................................................11

        7.    Michigan .......................................................................................12

        8.    Minnesota......................................................................................12

        9.    Montana.........................................................................................12

       10.   New Hampshire.............................................................................12

       11.   New York ......................................................................................13

       12.   North Carolina...............................................................................13

13.      Oregon ..................................................................................... 14

14.      Pennsylvania .......................................................................... 14

15.      South Dakota ......................................................................... 15

16.      West Virginia ......................................................................... 15

C.      THE COURT SHOULD DISMISS GEHA'S UNJUST ENRICHMENT
        CLAIMS UNDER THE LAWS OF SEVERAL STATES. ................... 15

        1.      GEHA Cannot Bring Either Autonomous or Parasitic Unjust
                Enrichment Claims. ........................................................... 15

        2.      GEHA Cannot Use Unjust Enrichment As An End Run To Avoid
                Illinois Brick. .................................................................... 17

        3.      GEHA's Unjust Enrichment Claims Fail to Comply With State Law .......... 17
                a.      Alabama ............................................................ 18
                b.      Arizona ............................................................. 18
                c.      District of Columbia ......................................... 19
                d.      Florida .............................................................. 19
                e.      Georgia ............................................................. 20
                f.      Idaho ................................................................. 20
                g.      Kansas .............................................................. 20
                h.      Maryland .......................................................... 21
                i.      New Jersey ........................................................ 21
                j.      New York .......................................................... 21
                k.      North Carolina .................................................. 22
                l.      North Dakota .................................................... 22
                m.      Pennsylvania ..................................................... 22
                n.      Rhode Island .................................................... 23
                o.      South Carolina .................................................. 23
                p.      Tennessee .......................................................... 23
                q.      Texas ................................................................. 24

        4.      GEHA's Unjust Enrichment Claim In California Should Be
                Dismissed. ........................................................................ 24

CONCLUSION ......................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adam A. Weschler & Son, Inc. v. Klank*,
  561 A.2d 1003 (D.C. 1989) ................................................................................. 9

*Am. Safety Ins. Serv., Inc. v. Griggs*,
  959 So. 2d 322 (Fla. 5th D.C.A. 2007) ............................................................. 19

*Apache Corp. v. MDU Res. Grp., Inc.*,
  603 N.W.2d 891 (N.D. 1999) ............................................................................. 22

*Bassi & Bellotti S.P.A. v. Transcon. Granite, Inc.*,
  No. DKC 08-1309, 2011 WL 856366 (D. Md. Mar. 9, 2011) ........................... 21

*Beco Constr. Co. v. Bannock Paving Co.*,
  797 P.2d 863 (Idaho 1990) ................................................................................. 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................. 7

*Brenner v. Future Graphics, LLC*,
  258 F.R.D. 561 (N.D. Ga. 2007) ........................................................................ 20

*Cal. v. Infineon Techs. AG*,
  531 F. Supp. 2d 1124 (N.D. Cal. 2007) ............................................................... 8

*Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*,
  695 So. 2d 383 (Fla. Dist. App. 1997) .................................................... 17, 18, 19

*Crosby v. Crosby*,
  769 F. Supp. 197 (D. Md. 1991) ......................................................................... 21

*Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Se., Inc.*,
  No. 2:09-cv-192-MHT, 2011 WL 2893629 (M.D. Ala. Jul. 19, 2011) ................ 18

*Eli Lilly & Co. v. Roussel Corp.*,
  23 F. Supp. 2d 460 (D.N.J. 1998) ...................................................................... 21

*Entrialgo v. Twin City Dodge, Inc.*,
  333 N.E.2d 202 (Mass. 1975) .............................................................................. 5

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*,
  1 So. 3d 400 , (Fla. 3d D.C.A.2009) ................................................................... 19

*Fenerjian v. Nongshim Co.*,
  No. 13-cv-04115-WHO, 2014 WL 5685562 (N.D. Cal. Nov. 4, 2014) ............... 21

*Ford v. Chartone, Inc.*,
    908 A.2d 72 (D.C. 2006) ........................................................................................... 9

*Forrester v. Daniels*,
    373 S.W.3d 871 (Ark. 2010) .................................................................................... 9

*FTC v. Mylan Lab.*,
    99 F. Supp. 2d 1 (D.D.C. 1999) ............................................................................... 8

*Goshen v. Mut. Life Ins. Co.*,
    774 N.E.2d 1190 (N.Y. 2002) ................................................................................ 13

*Ham v. Hain Celestial Grp., Inc.*,
    No. 14–cv–02044–WHO, 2014 U.S. Dist. LEXIS 141157 (N.D. Cal. Oct. 3, 2014) ............ 24

*Hayden Lake Fire Prot. Dist. v. Alcorn*,
    111 P.3d 73 (Idaho 2005) ....................................................................................... 20

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ......................................................................................... 4, 11

*In re Aftermarket Filters Antitrust Litig.*,
    No. 08-cv-4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) ......................................... 17, 22

*In re Auto. Parts Antitrust Litig.*,
    No. 12-md-2311, 2013 WL 2456612 (E.D. Mich. Jun. 6, 2013) ........................................ 12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. C 07-5944 SC, 2014 WL 1088256 (N.D. Cal. Mar. 13, 2014) ...................................... 11

*In re Chocolate Confectionary Antitrust Litig.*,
    602 F. Supp. 2d 538 (M.D. Pa. 2009) ...................................................................... 11

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ........................................................................ 8

*In re Dynamic Random Access Memory Antitrust Litig. (DRAM)*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) ............................................................. 8, 10, 14, 15

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ..................................................................... 11

*In re Flonase Antitrust Litig. (Flonase II)*,
    692 F. Supp. 2d 524 (E.D. Pa. 2010) ................................................................ 16, 19, 22

*In re Graphics Processing Units Antitrust Litig. (GPU I)*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................................................. 10, 14

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................................... 24

vi

*In re Magnesium Oxide Antitrust Litig.*,
No. 10-cv-5943, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ...................................... 4

*In re Microsoft Corp. Antitrust Litig.*,
401 F. Supp. 2d 461 (D. Md. 2005) .......................................................................... 23

*In re New Motor Vehicles Canadian Exp. Antitrust Litig. (NMV)*,
350 F. Supp. 2d 160 (D. Me. 2004) ....................................................................... *passim*

*In re Nexium (Esomeprazole) Antitrust Litig.*,
968 F. Supp. 2d 367 (D. Mass. 2013) ........................................................................ 4

*In re Niaspan Antitrust Litig.*,
No. 13-MD-2460, 2014 WL 4403848 (E.D. Pa. Sept. 5, 2014) .................................. 4

*In re Plavix Indirect Purchaser Antitrust Litig.*,
No. 1:06-cv-226, 2011 WL 335034 (S.D. Ohio Jan. 31, 2011) ............................... 17

*In re Refrigerant Compressors Antitrust Litig. (Compressors II)*,
No. 2:09-md-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) .................. 13, 18, 19, 23

*In re Relafen Antitrust Litig. (Relafen II)*,
225 F.R.D. 14 (D. Mass. 2004) ................................................................................ 22

*In re Rezulin Prods. Liab. Litig.*,
390 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................................... 21

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
580 F. Supp. 2d 896 (N.D. Cal. 2008) ................................................................... 10

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
No. 07-md-1819, 2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) ........................... 9, 22

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
No. 13-MD-2445, 2014 WL 6792663 (E.D. Pa. Dec. 3, 2014) ............................. 19

*In re TFT-LCD (Flat Panel) Antitrust Litig. (TFT I)*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................................. 11

*In re TFT-LCD (Flat Panel) Antitrust Litig. (TFT IV)*,
787 F. Supp. 2d 1036 (N.D. Cal. 2011) ................................................................... 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
599 F. Supp. 2d 1179 (N.D. Cal. 2009) ................................................................. 22

*LaChance v. U.S. Smokeless Tobacco Co.*,
931 A.2d 571 (N.H. 2007) ....................................................................................... 13

*McKee v. Meltech, Inc.*,
No. 10-2730, 2011 WL 1770461 (W.D. Tenn. May 9, 2011) ................................. 23

vii

*Merck & Co. v. Lyon*,
   941 F. Supp. 1443 (M.D.N.C. 1996)....................................................................... 13

*Minebea Co. v. Papst*,
   444 F. Supp. 2d 68 (D.D.C. 2006) ......................................................................... 19

*Mueller Co. v. U.S. Pipe & Foundry Co.*,
   No. 03-cv-0170, 2003 WL 22272135 (D.N.H. Oct. 2, 2003) ................................ 13

*Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*,
   532 S.E.2d 868 (S.C. 2000)..................................................................................... 23

*Paschall's, Inc. v. Dozier*,
   407 S.W.2d 150 (Tenn. 1966)................................................................................. 23

*People's Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*,
   667 So. 2d 876 (Fla. 3d D.C.A. 1996) ................................................................... 16

*Precourt v. Fairbank Reconstruction Corp.*,
   856 F. Supp. 2d 327 (D.N.H. 2012)....................................................................... 12

*Rodi v. S. New England Sch. Of Law*,
   389 F.3d 5 (1st Cir. 2004) ......................................................................................... 5

*Senne & Co. v. Simon Capital Ltd. P'ship*,
   No. 93-302, 2007 WL 1175858 (Kan. App. Apr. 20, 2007).................................. 20

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
   263 F.R.D. 205 (E.D. Pa. 2009) ............................................................................. 13

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
   737 F. Supp. 2d 380 (E.D. Pa. 2010) ............................................................... 7, 20

*Smith v. Commercial Banking Corp. (In re Smith)*,
   866 F.2d 576 (3d Cir. 1989)................................................................................... 14

*Sperry v. Crompton Corp.*,
   8 N.Y.3d 204, 831 N.Y.S.2d 760, 863 N.E.2d 1012 (2007) ................................. 21

*State ex rel. Bryant v. R & A Inv. Co.*,
   985 S.W.2d 299 (Ark. 1999)..................................................................................... 9

*State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*,
   42 A.D.3d 301, 304, 840 N.Y.S.2d 8 (2007) ........................................................ 21

*State ex rel. Wasden v. Daicel Chem. Indus., Ltd.*,
   106 P.3d 428 (Idaho 2005)..................................................................................... 10

*State v. Am. Tobacco Co.*,
   14 F. Supp. 2d 956 (E.D. Tex. 1997) ..................................................................... 24

*Steamfitters Loc. Union No. 420 Welfare Fund v. Phillip Morris, Inc.*,
　171 F.3d 912 (3d Cir. 1999) ................................................................................. 16

*Stutzle v. Rhone-Poulenc S.A.*,
　No. 002678, 2003 WL 22250424 (Pa. Com. Pl. Sept. 26, 2003) ........................... 22

*Tradesmen Int'l, Inc. v. U.S. Postal Serv.*,
　234 F. Supp. 2d 1191 (D. Kan. 2002) .................................................................. 20

*Tungate v. MacLean-Stevens Studios, Inc.*,
　714 A.2d 792 (Me. 1998) ...................................................................................... 10

*Weather Doctor Servs. Co. v. Stephens*,
　No. E2000-01427-COA-R3-CV, 2001 WL 849540 (Tenn. App. Jul. 27, 2001) .................. 23

*Wilcox Indus. Corp. v. Hansen*,
　870 F. Supp. 2d 296 (D.N.H. 2012) ...................................................................... 13

*World Surveillance Grp. Inc. v. La Jolla Cove Investors, Inc.*,
　No. 13–cv–03455–WHO, 2014 U.S. Dist. LEXIS 51464 (N.D. Cal. Apr. 11, 2014) ........... 24

STATUTES

ALASKA STAT. ANN. § 45.50.577 .................................................................................. 7

ARK. CODE ANN. § 4-88-107(a) ............................................................................... 8, 9

D.C. CODE ANN.
　§§ 28-3901, *et seq.* ........................................................................................... 9
　§ 28-3901(a)(2)(B)(i) ......................................................................................... 9

IDAHO CODE ANN. § 48-601, *et seq.* ...................................................................... 10

MASS. GEN. LAWS ch. 93A,
　§ 9 ....................................................................................................................... 5
　§ 11 .......................................................................................................... 4, 5, 11

ME. REV. STAT. ANN. tit. 5
　§ 207 ................................................................................................................. 10
　§ 213(1) ............................................................................................................ 11

MICH. COMP. LAWS § 445.903 ................................................................................. 12

MINN. STAT. §§ 325D.44 .......................................................................................... 12

MONT. CODE. ANN. §§ 30-14-02 ............................................................................... 12

N.H. REV. STAT. ANN. § 358-A.2 ............................................................................... 12

N.Y. GEN. BUS. LAW § 349 ...................................................................................... 13

OR. REV. STAT. § 646.605 ............................................................................................ 14

OR. REV. STAT. §§ 646.605, *et seq.* ........................................................................... 14

73 PA. STAT. ANN.
    § 201-2 ...................................................................................................................... 14
    § 201-3 ...................................................................................................................... 14
    § 201-9.2 ................................................................................................................... 14

S.D. CODIFIED LAWS § 37-24-6 ................................................................................. 15

UTAH CODE ANN. § 76-10-3109(1)(a) ......................................................................... 4

W. VA. CODE §§ 47-18-3, *et seq.* ............................................................................... 15

**OTHER AUTHORITIES**

Fed. R. Civ. Proc.
    8(a) ............................................................................................................................ 6
    9(b) ............................................................................................................................ 6

1

### INTRODUCTION

2   End-Payor Plaintiffs and Government Employees Health Association ("GEHA") challenge a

3 Settlement and License Agreement entered into between Endo and Teikoku, on the one hand, and

4 Watson, on the other hand, that resolved patent litigation relating to Lidoderm.  On July 28, 2014,

5 Defendants moved to dismiss the End-Payor Plaintiffs' Consolidated Amended Complaint and

6 GEHA's First Amended Complaint.  Following a hearing on the motions, on November 17, 2014,

7 the Court issued an order granting in part and denying in part Defendants' motion to dismiss.[1]  As

8 part of that Order, the Court held that "GEHA has alleged standing only for its claims under

9 Missouri law," and that the End-Payor Plaintiffs ("EPPs") "fail[ed] to allege sufficient facts to

10 support standing for specific states where no EPP was injured."  (Order at 30.)  Because the Court

11 dismissed certain claims based on standing, it did not reach Defendants' substantive arguments as to

12 those state law claims.

13   On December 19, 2014, the End-Payor Plaintiffs filed a Second Consolidated Amended

14 Complaint ("SCAC") and GEHA filed a Second Amended Complaint ("SAC").  These complaints

15 continue to assert a number of state law claims either for which the Plaintiffs lack standing or that

16 are barred by the substantive law of the states at issue.  Specifically:

17   (1) The End-Payors cannot assert a claim under the Utah Antitrust Act because no End-

18 Payor Plaintiffs are citizens or residents of Utah.

19   (2) The End-Payors cannot assert a claim under the Massachusetts Consumer Protection Act

20 because they have failed to comply with Massachusetts' demand requirement.

21   (3) GEHA cannot assert a claim under the Rhode Island Antitrust Act because Rhode

22 Island's *Illinois Brick* repealer does not apply retroactively.

23   (4) GEHA cannot assert a claim under various states' consumer protection laws for one or

24 more of the following reasons: (a) the statute prohibits indirect purchaser claims; (b) the alleged

25 conduct is not covered by the state's statute; (c) the statute requires that any purchases are for

26 personal, family or household purposes; and/or (d) the statute requires intrastate conduct and/or a

27

28       
---
[1] *See* Dkt. No. 117 ("November 17 Order" or "Order").

1    substantial impact on in-state business.  These deficiencies are discussed on a state-by-state basis

2    below.

3            (5) GEHA cannot assert a claim under various states' unjust enrichment laws for one or

4    more of the following reasons: (a) unjust enrichment laws either cannot be used to circumvent state

5    antitrust and consumer protection laws or must fail for the same reason the underlying antitrust and

6    consumer protection claims fail; (b) unjust enrichment laws cannot be used to avoid *Illinois Brick*;

7    and/or (c) GEHA has failed to adequately allege all elements of certain states' respective unjust

8    enrichment laws.  These deficiencies also are discussed on a state-by-state basis below.[2]

9                                    **BACKGROUND**[3]

10           These actions arise out of the decision by Endo, Teikoku, and Watson to settle their patent

11   litigation relating to Lidoderm (the "Lidoderm Settlement").  Lidoderm (lidocaine patch 5%) is one

12   of several drugs approved by the FDA to relieve the pain of post-herpetic neuralgia. (GEHA SAC

13   ¶57; EPP SCAC ¶ 64.)  Lidoderm was approved by the FDA in 1999 and has been sold in the

14   United States by Endo since that time under a license agreement with Teikoku. (GEHA SAC ¶¶ 58-

15   59; EPP SCAC ¶¶ 65-66.)  The Lidoderm Settlement provided Watson with a license to make and

16   sell generic Lidoderm beginning on September 15, 2013, more than two years earlier than

17   expiration of the '529 Patent, which was the latest-expiring patent covering Lidoderm.  (GEHA

18   SAC ¶ 128; EPP SCAC ¶ 105.)  Despite the agreement allowing Watson to sell generic Lidoderm

19   beginning on September 15, 2013, Watson could not begin selling its generic version of Lidoderm

20   until the FDA approved its ANDA, which at the time of settlement had not occurred.  In order to

21   allow Watson to enter the market even earlier, the Lidoderm Settlement required Endo to provide

22   Lidoderm product to Watson beginning on January 1, 2013.  (GEHA SAC ¶ 129; EPP SCAC ¶

23   106.)  The Lidoderm Settlement thus permitted Watson's wholesaler affiliate, Anda, to compete

24   with Endo in the sale of Lidoderm starting on January 1, 2013—almost three years earlier than if it

25

26   _____

     [2] Notably, the End Payors have dropped all unjust enrichment claims previously asserted in the
27   EPP's Consolidated Amended Complaint.

28   [3] For a more detailed background, Defendants refer the Court to the background provided in their
     prior joint motion to dismiss.

had continued to litigate the '529 Patent and lost, and without the risk of damages stemming from the patent litigations.

### PLAINTIFFS AND CLAIMS

End-Payor Plaintiffs and GEHA allege that the Lidoderm Settlement is an unlawful reverse payment agreement. The End-Payor Plaintiffs are seven employee health and welfare benefit plans, a municipal corporation, and three individual consumers, all of whom allege that they paid someone other than the Defendants for branded and/or generic Lidoderm. The End-Payor Plaintiffs assert claims on behalf of a putative class of indirect purchasers under (1) the antitrust laws of 17 states, (2) Massachusetts's Consumer Protection Law, and (3) California's Unfair Competition Law. (EPP SCAC ¶¶ 162-92.) GEHA, an individual indirect purchaser, asserts claims under (1) the antitrust laws of 26 states and the District of Columbia, (2) the consumer protection laws of 34 states and the District of Columbia, and (3) unjust enrichment theories based on the laws of all states and the District of Columbia, except Missouri, Indiana and Ohio. (GEHA SAC ¶¶ 182-280.) Each count asserted by the End-Payor Plaintiffs and GEHA is based on the alleged unlawfulness of the Lidoderm Settlement.

### ARGUMENT

**I.    THE COURT SHOULD DISMISS END-PAYOR PLAINTIFFS' CLAIMS UNDER THE LAWS OF UTAH AND MASSACHUSETTS.**

**A.    The Court Should Dismiss End-Payor Plaintiffs' Utah Antitrust Act Claim.**

In its November 17 Order, the Court dismissed for lack of standing the End-Payor Plaintiffs' claims under the laws of 20 states, noting End-Payor Plaintiffs' failure to allege any connection to those states.[4] (Order at 33.) While End-Payor Plaintiffs have not attempted to re-plead claims under the laws of most of these states in their SCAC, End-Payor Plaintiffs continue to assert a claim under the Utah Antitrust Act. End-Payor Plaintiffs allege that one of the named plaintiffs, NECA-

---

[4] The Court dismissed with leave to amend the End-Payor Plaintiffs' claims under the laws of Alaska, District of Columbia, Hawaii, Idaho, Iowa, Louisiana, Maryland, Michigan, Mississippi, Montana, Nebraska, New Mexico, Oklahoma, Oregon, Puerto Rico, Utah, Vermont, Virginia, Washington, and Wyoming.

For other reasons, the Court also dismissed with prejudice the End-Payor Plaintiffs' claims under the laws of Florida, Illinois, Massachusetts, Puerto Rico, and Rhode Island.

1    IBEW Welfare Trust Fund ("NECA"), purchased Lidoderm and/or the generic version of Lidoderm

2    in Utah.  While the End-Payor Plaintiffs' allegations may be sufficient to confer Article III standing

3    under the Court's November 17 Order, the Court should nevertheless dismiss the End-Payor

4    Plaintiffs' claim given the specific requirements of the Utah Antitrust Act.

5            Under the Utah Antitrust Act, indirect purchasers may bring antitrust damages claims only if

6    they are citizens or residents of Utah.  *See* UTAH CODE ANN. § 76-10-3109(1)(a) ("A person who is

7    a *citizen* of this state or a *resident* of this state and who is injured or is threatened with injury in his

8    business or property by a violation of the Utah Antitrust Act may bring an action for injunctive

9    relief and damages.") (emphasis added).  A mere purchase in the state is not sufficient.  Here, none

10   of the named End-Payor Plaintiffs alleges that he/she/it is a citizen or resident of Utah.  (*See* EPP

11   SCAC ¶¶ 9-19.)  With respect to NECA in particular, the SCAC alleges that it is a health and

12   welfare plan with its principal place of business in Decatur, Illinois.  (*See id.* ¶ 14.)  Because Utah's

13   citizen/residency requirement is one of statutory standing, "at least one named plaintiff must be a

14   citizen or resident of Utah in order to seek class wide relief under the Utah Antitrust Act."  *In re*

15   *Niaspan Antitrust Litig.*, No. 13-MD-2460, 2014 WL 4403848, at *18 (E.D. Pa. Sept. 5, 2014)

16   (citation omitted).  Here, none of the named End-Payor Plaintiffs is a citizen or resident of Utah;

17   therefore the End-Payor Plaintiffs' Utah Antitrust Act claim must be dismissed.  *Id.*; *see also In re*

18   *Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 410 (D. Mass. 2013); *In re*

19   *Magnesium Oxide Antitrust Litig.*, No. 10-cv-5943, 2011 WL 5008090, at *8 (D.N.J. Oct. 20,

20   2011).

21           **B.    The Court Should Dismiss End-Payor Plaintiffs' Massachusetts Consumer
                     Protection Act Claim.**

22           In its November 17 Order, the Court dismissed with prejudice the End-Payor Plaintiffs'

23   claim under the Massachusetts Consumer Protection Act ("CPA").  (Order at 40-43.)  The Court

24   held that indirect purchaser claims under Section 11 of the CPA are barred by the principles set

25   forth in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  (*See id.* at 42.)  The Court concluded that

26   the End-Payor Plaintiffs' claim arises under Section 11 of the CPA because the only relevant

27   plaintiffs that purchased or were reimbursed for purchases of Lidoderm or the generic version of

28

1    Lidoderm in Massachusetts—the City of Providence and the Iron Workers District Council of New

2    England Welfare Fund—are engaged in the "trade or commerce" of providing health and welfare

3    benefits. (*Id.*)  The Court thus dismissed with prejudice the End-Payor Plaintiffs' CPA claim.  (*Id.*)

4         The End-Payor Plaintiffs now allege that an individual plaintiff, Letizia Galloto, indirectly

5    purchased or paid for Lidoderm and/or the generic version of Lidoderm and that Ms. Galloto resides

6    in Massachusetts.  (*See* EPP SCAC ¶ 17.)  The End-Payor Plaintiffs assert a claim under the CPA,

7    but they do not state whether the claim arises under Section 11 or Section 9 of the CPA.  In either

8    case, the Court should dismiss the claim.  If Ms. Galloto is engaged in "trade or commerce," the

9    End-Payor Plaintiffs' claim arises under Section 11 of the CPA and should be dismissed for the

10   reasons set forth in the Court's November 17 Order.

11        If Ms. Galloto is not engaged in "trade or commerce," the claim arises under Section 9 of the

12   CPA but should still be dismissed, because the End-Payor Plaintiffs have failed to allege

13   compliance with the CPA's demand requirement.  Under Section 9 of the CPA, at least 30 days

14   before filing an action under the act, the plaintiff must send any prospective defendant "a written

15   demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or

16   practice relied upon and the injury suffered."  MASS. GEN. LAWS ch. 93A, § 9(3).  "The statutory

17   notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit,'" which

18   "must be alleged in the plaintiff's complaint."  *Rodi v. S. New England Sch. Of Law*, 389 F.3d 5, 19

19   (1st Cir. 2004) (quoting *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204 (Mass. 1975)).

20   Where, as here, a plaintiff fails to allege that the plaintiff sent the required demand letter to the

21   defendants, the plaintiff's claim should be dismissed.  *See, e.g.*, *In re New Motor Vehicles Canadian*

22   *Exp. Antitrust Litig. (NMV)*, 350 F. Supp. 2d 160 (D. Me. 2004).

**II.    THE COURT SHOULD DISMISS GEHA'S CLAIMS UNDER THE LAWS OF
SEVERAL STATES.**

    **A.    The Court Should Dismiss GEHA's Claim under the Rhode Island Antitrust
Act.**

The Court should dismiss GEHA's claim under the Rhode Island Antitrust Act ("RIAA").

In its November 17 Order, the Court dismissed with prejudice the End-Payor Plaintiffs' claim under

the RIAA.  (Order at 40-43.)  The Court held that while Rhode Island passed an *Illinois Brick*

repealer statute in July 2013, the statute does not apply retroactively.  Because the Defendants entered into the allegedly anticompetitive settlement agreement in May 2012, the Court held that the End-Payor Plaintiffs' claims under the RIAA must be dismissed with prejudice.  GEHA's claim under the RIAA is based on the same allegedly anticompetitive settlement agreement.  (*See* GEHA SAC ¶ 1-17.)  Thus, for the same reasons the Court dismissed the End-Payor Plaintiffs' claim under the RIAA, the Court should dismiss GEHA's claim under the RIAA.[5]

**B.**    **The Court Should Dismiss GEHA's Claims under the Consumer Protection Laws of Several States.**

GEHA asserts claims under the consumer protection laws of 34 states, alleging that Defendants engaged in "unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices."  (GEHA SAC ¶¶ 225-65.)  The claims are based on the same allegations as those brought under the antitrust laws.  As described below, the Court should dismiss GEHA's consumer protection claims for several reasons:

**First**, to the extent a state prohibits indirect purchaser actions under its antitrust law, a plaintiff should not be permitted to repackage its defective antitrust claim as a purported violation of state consumer protection law — particularly in the absence of a holding from a state court permitting this sort of end-run around the limitations of the state's antitrust law.

**Second**, consumer protection statutes are designed to protect *consumers*, defined in many states as those who purchase goods for personal, family, or household use.  Plaintiffs like GEHA that are engaged in trade or commerce lack standing to pursue relief in those states.

**Third**, several states' consumer protection statutes prohibit specific, enumerated offenses that do not encompass the allegations of anticompetitive conduct at issue here.  Such statutes generally prohibit only fraudulent or deceptive conduct which creates a likelihood of confusion for consumers.  Relatedly, some statutes expressly require that a plaintiff specifically allege a fraudulent or deceptive practice in order to state a claim.  Here, GEHA's allegations of deceptive conduct are mere "labels and conclusions" that do not pass muster under Rule 8(a), let alone Rule

---

[5] In its November 17 Order, the Court dismissed nearly all of GEHA's claims—including the RIAA claim—for lack of standing and thus did not address this separate ground for dismissal under the RIAA.  (*See* Order at 35-36.)

9(b).  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  GEHA alleges that Defendants "wrongfully conduct[ed] baseless litigation to trigger the automatic 30-month stay prohibiting FDA from granting final approval permitting Actavis to market its less-expensive authorized generic version of Lidoderm."  (GEHA SAC ¶ 226.)  GEHA's SAC does not, however, include any facts to support the allegation that the patent litigation was baseless.  *See, e.g.*, *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 404 (E.D. Pa. 2010) (allegations of misstated patent applications and sham litigation did not state a claim under Arizona's Consumer Fraud Act).  GEHA also describes the terms of Defendants' settlement agreement, alleging that defendants:

> (b) enter[ed] into the Reverse Payment Agreement whereby Endo agreed to pay Actavis in exchange for Actavis' commitment to postpone marketing its generic version of Lidoderm; (c) compensat[ed] Actavis at least $96 million in free product under the Reverse Payment Agreement; and [(d)] agree[d] not to compete against Actavis with Endo's own authorized generic Lidoderm.

(GEHA SAC ¶ 226.)  GEHA's description of the Defendants' settlement agreement includes the term "Reverse Payment Agreement," but it does not include any facts that support the allegation that Defendants engaged in deceptive or fraudulent conduct.[6]  GEHA's claims under all state consumer protection laws fail to the extent they rely on a theory of deceit or fraud.

**Fourth**, certain states consumer protection statutes require that the defendants' conduct took place in or had a substantial effect on in-state business.

We discuss below the application of these principles to GEHA's consumer protection claims on a state-by-state basis below.

### 1.    Alaska

Alaska amended its antitrust statute in 2003 to make clear that *only* the attorney general may seek monetary relief on behalf of indirect purchasers.  *See* 2003 Alaska Laws Ch. 104 (H.B. 225), effective July 1, 2003, codified at ALASKA STAT. ANN. § 45.50.577.  GEHA does not and cannot

---

[6] GEHA also alleges that Teikoku Seiyaku "committed multiple acts of fraud in connection with the procurement of the '529 patent," (GEHA SAC ¶ 227), but does not allege that such conduct created a likelihood of confusion for consumers.

assert a claim under Alaska's antitrust statute.  Instead, GEHA asserts a claim under Alaska's consumer protection statute.

No Alaska court—or any other court—has construed Alaska's consumer protection statute to permit claims by indirect purchasers that are expressly barred under Alaska's antitrust statute. Absent guidance from the Alaska courts, this Court should reject GEHA's attempt to circumvent *Illinois Brick* and Alaska's express prohibition on antitrust claims by indirect purchasers.  *In re Dynamic Random Access Memory Antitrust Litig. (DRAM)*, 516 F. Supp. 2d 1072, 1108 (N.D. Cal. 2007) ("adopt[ing] the interpretation that will wreak the least amount of havoc on the existing law in Alaska" and dismissing claims under Alaska consumer protection statute); *see also In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 413 (S.D.N.Y. 2011) (holding that "any state that has not expressly passed *Illinois Brick* repealer legislation or interpreted its law in such a way as to override the rule of *Illinois Brick* is presumed to have decided to follow federal law").  Accordingly, the court should dismiss GEHA's claim under Alaska's consumer protection statute.[7]

## 2.    Arkansas

The Arkansas Deceptive Trade Practices Act ("ADTPA") prohibits specific offenses, including "any other unconscionable, false, or deceptive act or practice in business, commerce or trade."  *See* ARK. CODE ANN. § 4-88-107(a).  GEHA's SCAC does not state a claim with respect to any of the offenses enumerated in the ADTPA.

GEHA appears to claim that Defendants' conduct was "unconscionable," but GEHA's allegations do not support that claim.  As the Arkansas Supreme Court has recognized, "when general words follow specific words in a statutory enumeration the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific

---

[7] To the extent that GEHA relies on *FTC v. Mylan Laboratories*, 99 F. Supp. 2d 1, 5 (D.D.C. 1999), in support of its claim, GEHA's reliance is misplaced.  Because *Mylan* was decided before the 2003 amendment, the court did not have occasion to evaluate the "wisdom of allowing plaintiffs' claims to proceed under Alaska's consumer protection statute where those exact same claims were explicitly barred under the state antitrust statute." *Cal. v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1142 (N.D. Cal. 2007) (dismissing claim under Alaska's consumer protection statute).  In any event, *Mylan* dealt only with whether the Alaska Attorney General can sue for restitution under Alaska's consumer protection statute; it did not address whether a private plaintiff can sue for damages under Alaska's consumer protection statute.  99 F. Supp. 2d at 5.

words." *Forrester v. Daniels*, 373 S.W.3d 871, 876 (Ark. 2010).  Accordingly, in *State ex rel. Bryant v. R & A Investment Co.*, 985 S.W.2d 299, 302 (Ark. 1999), the Arkansas Supreme Court defined the term "unconscionable" to include the twin considerations of "gross inequality of bargaining power" and "whether the aggrieved party was made aware of and comprehended the provision in question," the same considerations that underlie other offenses contained in Section 4-88-107(a).  The Arkansas Supreme Court has not defined the term "unconscionable" to encompass the type of conduct that GEHA alleges here.  In the absence of authority from Arkansas's highest court, this Court should follow the decisions in this district that have dismissed claims brought under the ADTPA when based on allegedly anticompetitive conduct, and dismiss GEHA's claims under the ADTPA.  *E.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig. (TFT IV)*, 787 F. Supp. 2d 1036, 1042 (N.D. Cal. 2011); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-1819, 2010 WL 5094289, at *8 (N.D. Cal. Dec. 8, 2010).

### 3.   District of Columbia

In its November 17 Order, this Court dismissed the End-Payor Plaintiffs' claim under the Massachusetts Consumer Protection Act because the relevant plaintiffs were not consumers but rather were engaged in the "trade or commerce" of providing health and welfare benefits.  (Order at 40-43.)  Like the relevant End-Payor Plaintiffs, GEHA is engaged in the trade or commerce of providing health benefits, and therefore GEHA does not have standing to pursue relief under the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. CODE ANN. §§ 28-3901, *et seq.*

"[A] valid claim for relief under the CPPA must originate out of a consumer transaction." *Ford v. Chartone, Inc.*, 908 A.2d 72, 81 (D.C. 2006).  The relevant transaction is the "ultimate retail transaction between the final distributor and the individual member of the consuming public that the Act covers." *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1005 (D.C. 1989).  GEHA does not allege that it was a party to the "ultimate retail transaction" in which its members obtained Lidoderm or the generic version of Lidoderm in the District of Columbia.  Nor does GEHA allege that it participated in a consumer transaction in which *it* purchased Lidoderm for "personal, household, or family purpose," as required by the CPPA.  *See* D.C. CODE ANN. § 28-

3901(a)(2)(B)(i).  Accordingly, the Court should dismiss GEHA's claim under the CPPA.

### 4.    Idaho

Idaho has not passed an *Illinois Brick* repealer statute, and GEHA does not assert a claim under the Idaho Competition Act.  Instead, GEHA asserts a claim under the Idaho Consumer Protection Act ("ICPA").  IDAHO CODE ANN. § 48-601, *et seq*.  GEHA's claim must be dismissed because the ICPA does not prohibit the type of conduct that GEHA alleges here.

The Idaho Supreme Court has explicitly held that the ICPA does not prohibit—and cannot be construed to prohibit—a conspiracy to suppress competition by fixing prices.  *State ex rel. Wasden v. Daicel Chem. Indus., Ltd.*, 106 P.3d 428, 433-34 (Idaho 2005).  In *Wasden*, the Idaho Supreme Court made clear that the ICPA prohibits "nineteen types of conduct that constitute either an unfair method of competition or an unfair or deceptive act or practice," and that there is "nothing in the wording of [the ICPA] indicating that the list is merely illustrative."  *Id.*  GEHA has not alleged any conduct that falls under the list of conduct declared unlawful under the ICPA.  (*See* GEHA SCAC ¶¶ 225-65.)  Because the ICPA does not prohibit the type of conduct that GEHA alleges in this case, this Court should dismiss GEHA's claim under the ICPA.  *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 907 (N.D. Cal. 2008) (relying on *Wasden* in dismissing ICPA claim based on alleged antitrust violation); *DRAM*, 516 F. Supp. 2d at 1110 (same).

### 5.    Maine

The Maine Unfair Trade Practices Act ("MUTPA") prohibits "unfair methods of competition" as well as "unfair or deceptive . . . conduct of any trade."  ME. REV. STAT. ANN. tit. 5 § 207.  The Maine Supreme Court has held that where the allegation is unfair pricing, "the inquiry is whether the price has the effect of deceiving the consumer, or inducing her to purchase something that she would not otherwise purchase."  *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998).  The MUTPA does not create a remedy in a case alleging anticompetitive conduct because higher prices do not deceive or induce a consumer to purchase an item he or she would not otherwise purchase.  *In re Graphics Processing Units Antitrust Litig. (GPU I)*, 527 F. Supp. 2d 1011, 1031 (N.D. Cal. 2007) ("Arguing that higher prices induced consumers to make purchases

simply does not make sense."); *see also In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1159 (N.D. Cal. 2009) (relying on *Tungate* in dismissing MUPTA claim based on alleged antitrust violation); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 584-85 (M.D. Pa. 2009) (same); *In re TFT-LCD (Flat Panel) Antitrust Litig. (TFT I)*, 586 F. Supp. 2d 1109, 1126 (N.D. Cal. 2008) (dismissing MUTPA claim based on alleged antitrust violation).

Moreover, to recover under the MUTPA, a plaintiff must purchase goods, services, or property "primarily for personal, family or household purposes." ME. REV. STAT. ANN. tit. 5, § 213(1). GEHA does not and cannot allege that it purchased Lidoderm or the generic version of Lidoderm for such purposes. (*See* GEHA SAC ¶ 21.) Accordingly, the Court should dismiss GEHA's claim under the MUTPA.

### 6.    Massachusetts

In its November 17 Order, the Court dismissed with prejudice the End-Payor Plaintiffs' claim under the CPA. (Order at 40-43.) The Court held that indirect purchaser claims under Section 11 of the CPA are barred by the principles set for in *Illinois Brick v. Illinois*, 431 U.S. 720 (1977). (*See* Order at 42.) The Court concluded that the End-Payor Plaintiffs' claim arose under Section 11 of the CPA because the only plaintiffs that purchased or reimbursed for purchases of Lidoderm or generic Lidoderm in Massachusetts—the City of Providence and the Iron Workers District Council of New England Welfare Fund ("Iron Workers")—are engaged in the "trade or commerce" of providing health and welfare benefits. (*Id.*)

Like the City of Providence and Iron Workers, GEHA is an indirect purchaser engaged in the "trade or commerce" of providing health benefits. (GEHA SAC ¶ 21.) As such, GEHA's claim arises under Section 11 of the CPA, and the claim is barred under the principles set forth in *Illinois Brick*. *See* November 17 Order at 40-43*; see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C 07-5944 SC, 2014 WL 1088256, at *3 (N.D. Cal. Mar. 13, 2014).[8]

---

[8] In its November 17 Order, the Court dismissed nearly all of GEHA's claims—including the CPA claim—for lack of standing and thus did not address this separate ground for dismissal under the CPA. (*See* Order at 35-36.)

### 7.    Michigan

Michigan's Consumer Protection Act ("MICPA") prohibits only itemized offenses.  *See* MICH. COMP. LAWS § 445.903; *NMV*, 350 F. Supp. 2d at 189 ("Although the MICPA does prohibit unfair practices, the proscribed practices are limited to those itemized in the statute.").  Most of the itemized offenses involve some form of deceptive or fraudulent conduct.  GEHA does not allege that Defendants engaged in deceptive or fraudulent conduct, or any of the other practices proscribed under Michigan's consumer protection statute.  (*See* GEHA SAC ¶¶ 225-65.)  The Court should therefore dismiss GEHA's claim under the MICPA.

### 8.    Minnesota

Minnesota's Uniform Deceptive Trade Practices Act ("MUDTPA") prohibits a variety of acts, but all involve deception or misrepresentation.  *See* MINN. STAT. §§ 325D.44; *NMV*, 350 F. Supp. 2d at 189-90.   GEHA does not allege that Defendants engaged in deception or misrepresentation, or any of the other practices proscribed under the MUDTPA.  (*See* GEHA SAC ¶¶ 225-65.)  The Court should dismiss GEHA's claim under the MUDTPA.

### 9.    Montana

The Montana Unfair Trade Practices Act ("MUTPA") limits claims to consumers or those who purchase goods "primarily for personal, family, or household purposes."  MONT. CODE. ANN. §§ 30-14-02; 30-14-33; *see In re Auto. Parts Antitrust Litig.*, No. 12-md-2311, 2013 WL 2456612, at *30 (E.D. Mich. Jun. 6, 2013) (dismissing claims under Montana law because plaintiffs did not purchase goods "primarily for personal, family or household uses").  GEHA does not and cannot allege that it purchased Lidoderm or the generic version of Lidoderm for "personal, family, or household uses."  (GEHA SAC ¶ 21.)  Accordingly, the Court should dismiss GEHA's claim under the MUTPA.

### 10.    New Hampshire

New Hampshire's consumer protection law requires that the alleged unfair or deceptive act take place within New Hampshire.  N.H. REV. STAT. ANN. § 358-A.2; *see also Precourt v. Fairbank Reconstruction Corp.*, 856 F. Supp. 2d 327, 343-44 (D.N.H. 2012); *accord Wilcox Indus. Corp. v. Hansen*, 870 F. Supp. 2d 296, 305 (D.N.H. 2012) (dismissing consumer protection claim where

there was "simply no allegation that any offending conduct occurred in New Hampshire"); *In re Refrigerant Compressors Antitrust Litig. (Compressors II)*, No. 2:09-md-02042, 2013 WL 1431756, at *18 (E.D. Mich. Apr. 9, 2013) (same), *appeal dismissed* 731 F.3d 586 (6th Cir. 2013); *Mueller Co. v. U.S. Pipe & Foundry Co.*, No. 03-cv-0170, 2003 WL 22272135, at *6 (D.N.H. Oct. 2, 2003). Because GEHA does not allege that any of the Defendants' conduct took place in New Hampshire, its claim under the NHCPA must be dismissed.[9]

### 11.    New York

New York General Business Law § 349 "unambiguously evinces a legislative intent to address commercial misconduct occurring within New York"; for it to apply, "the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195 (N.Y. 2002); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 263 F.R.D. 205, 214 (E.D. Pa. 2009).  The Court should dismiss GEHA's claim under section 349 because GEHA does not allege that any of the Defendants' alleged conduct took place in New York.

### 12.    North Carolina

To state a claim under the North Carolina's consumer protection statute, a plaintiff must allege that defendants' conduct had a substantial effect on in-state business. *Merck & Co. v. Lyon*, 941 F. Supp. 1443, 1463 (M.D.N.C. 1996) (dismissing claim where "plaintiffs . . . failed to allege a substantial effect on any in-state business operations," and "[a]ny injury plaintiffs may suffer in North Carolina will be incidental"); *see also Compressors II*, 2013 WL 1431756, at *19 (holding that inflated prices resulting from alleged antitrust conspiracy constituted an "incidental" rather than a "substantial" in-state injury as required under North Carolina's consumer protection statute). GEHA's claim under North Carolina's consumer protection statute must be dismissed because

---

[9] To the extent that GEHA relies on *LaChance v. U.S. Smokeless Tobacco Co.*, 931 A.2d 571, 578 (N.H. 2007), for the principle that the NHCPA was intended to have a "broad sweep," such reliance is misplaced.  The court in *LaChance* merely held that indirect purchasers could seek relief under New Hampshire's consumer protection statute.  *See id.* at 575-81.  The court did not address the issue presented here:  whether Defendants' "offending conduct" took place in New Hampshire and, significantly, plaintiffs in that case alleged numerous acts taking place within New Hampshire.  *See id.* at 573.

GEHA does not allege any facts showing that Defendants' conduct took place in or had a substantial effect on in-state business in North Carolina.

### 13. Oregon

The Oregon Unfair Trade Practices Act ("OUTPA") prohibits specific, enumerated activities, and does not reach Defendants' alleged conduct. OR. REV. STAT. §§ 646.605, *et seq.* GEHA appears to assert a claim under section 646.607, which classifies as an unlawful practice "any unconscionable tactic in connection with selling, renting or disposing of real estate, goods or services, or collecting or enforcing an obligation." GEHA has not pleaded an unconscionable tactic engaged in by Defendants. *See* OR. REV. STAT. § 646.605 (defining "[u]nconscionable tactics"). Courts in this district have dismissed claims based on antitrust violations brought under OUTPA. *DRAM*, 516 F. Supp. 2d at 1115-18; *GPU I*, 527 F. Supp. 2d at 1030. The Court should do the same and dismiss GEHA's OUTPA claim.

### 14. Pennsylvania

The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("CPL") defines and prohibits specific "unfair methods of competition" and "unfair or deceptive acts or practices." 73 PA. STAT. ANN. §§ 201-2 & -3. The CPL "bans only the enumerated activities" in the statute, none of which GEHA alleges here. *Smith v. Commercial Banking Corp. (In re Smith)*, 866 F.2d 576, 583 (3d Cir. 1989); *see also NMV*, 350 F. Supp. 2d at 200. GEHA appears to assert a claim under the "catch-all" provision of the CPL, which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." *Id.* § 201-2(4)(xxi). As noted, GEHA has not pleaded any fraudulent or deceptive conduct, and therefore GEHA has not stated a claim under the CPL's "catch-all" provision.

The CPL also limits private actions to any person who "purchases or leases goods or services primarily for personal, family or household purposes." 73 PA. STAT. ANN. § 201-9.2. GEHA does not and cannot allege that it purchased Lidoderm or the generic version of Lidoderm for personal, family, or household purposes. Accordingly, the Court should dismiss GEHA's claim under the CPL.

### 15. South Dakota

South Dakota's Deceptive Trade Practices and Consumer Protection statute prohibits and defines what constitutes a "deceptive act or practice." S.D. CODIFIED LAWS § 37-24-6; *NMV*, 350 F. Supp. 2d at 202 (noting that statute "prohibits only those acts or practices specifically designated as unlawful in the statute"). Here, GEHA has not alleged that Defendants engaged in any deceptive act or practice declared illegal under South Dakota's consumer protection statute. The Court should dismiss GEHA's claims under the statute.

### 16. West Virginia

West Virginia's Consumer Credit and Protection Act, ("WVCCPA"), includes a list of prohibited activities. W. VA. CODE §§ 47-18-3, *et seq.*; *see also DRAM*, 516 F. Supp. 2d at 1118. As the court in *DRAM* observed, "nothing on the list targets what might be called traditional antitrust conduct—*e.g.*, price-fixing and market allocation . . . or conduct otherwise constituting a horizontal or vertical restraint on trade or commerce." *Id.* The list is "aimed at conduct that, in one way or another, 'creates a likelihood of confusion or of misunderstanding' with respect to goods, services or businesses, or involves deceptive, false, or misleading statements and representations in connection with goods, services and businesses." *Id.* The Court should therefore dismiss GEHA's claim under the WVCCPA.

### C. The Court Should Dismiss GEHA's Unjust Enrichment Claims Under the Laws of Several States.

Although the End-Payor Plaintiffs have now abandoned their unjust enrichment claims, GEHA continues to assert such claims under the laws of 47 states and the District of Columbia. These claims are subject to dismissal for a variety of reasons: GEHA lacks any substantive state law claim to which the unjust enrichment claim may be tethered, GEHA is attempting an improper end-run around state law limitations, or GEHA has failed to plead required substantive elements under state law.

### 1. GEHA Cannot Bring Either Autonomous or Parasitic Unjust Enrichment Claims.

GEHA does not specify whether its unjust enrichment claims are "autonomous"—i.e., independent of their antitrust or consumer protection claims—or "parasitic"—i.e., merely asserting

an alternative remedy for their underlying predicate antitrust and consumer protection claims.  *See In re Flonase Antitrust Litig. (Flonase II)*, 692 F. Supp. 2d 524, 542 n.13 (E.D. Pa. 2010).  Under either theory GEHA cannot evade federal and state law standing restrictions by resorting to the doctrine of unjust enrichment.

*First*, if GEHA were asserting an autonomous claim, then that claim must fail because GEHA cannot use an unjust enrichment claim to circumvent state antitrust and consumer protection laws.  *See NMV*, 350 F. Supp. 2d at 209-10 (dismissing all autonomous unjust enrichment claims); *see also Flonase II*, 692 F. Supp. 2d at 542 n.13.  Autonomous unjust enrichment claims are problematic because "[t]he premise for such a claim must be that, even if the defendants' conduct is blameless under the substantive requirements of federal and state antitrust statutes and state consumer protection statutes, the plaintiffs nevertheless can still obtain restitution."  *NMV*, 350 F. Supp. 2d at 209.  Such a result "would undermine state legislative policies and an entire body of substantive law."  *Flonase II*, 692 F. Supp. 2d at 542 n.13.  Allowing GEHA to pursue autonomous unjust enrichment claims would circumvent the common-law and statutory schemes that have been designed to address the conduct at issue.

*Second*, if GEHA is asserting a parasitic claim, then that must fail for the same reasons that the underlying antitrust and consumer protection claims fail.  *See id.*; *Steamfitters Loc. Union No. 420 Welfare Fund v. Phillip Morris, Inc.*, 171 F.3d 912, 937 (3d Cir. 1999) (affirming dismissal of unjust enrichment claims where dismissal of antitrust, RICO, and traditional tort claims also were affirmed on appeal).  While GEHA purports to assert unjust enrichment under the laws of 47 states and the District of Columbia, those claims are tethered to their antitrust or consumer protection claims.  To the extent that Plaintiffs' state antitrust and consumer protection claims are dismissed, the corresponding unjust enrichment claims also must be dismissed.

As set forth in Section II, above, the Court should dismiss GEHA's claims under Rhode Island antitrust law, and the consumer protection laws of Alaska, Arkansas, District of Columbia, Idaho, Maine, Massachusetts, Michigan, Minnesota, Montana, New Hampshire, New York, North Carolina, Oregon, Pennsylvania, South Dakota, and West Virginia.  For those same reasons, the corresponding unjust enrichment claims as to these states also should be dismissed.

2.      **GEHA Cannot Use Unjust Enrichment As An End Run To Avoid** *Illinois Brick*.

The Court should dismiss GEHA's unjust enrichment claim under the laws of Alaska, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Kentucky, Louisiana, Maryland, Massachusetts, Missouri, Montana, New Jersey, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Texas, Virginia, Washington, and Wyoming because these states follow *Illinois Brick*.  In its November 17 Order, the Court dismissed with prejudice the End-Payor Plaintiffs' unjust enrichment claims as to these states.  (Order at 46-48.)  The Court expressly adopted the reasoning of the majority of states on this issue, which have held that end-payors cannot circumvent the *Illinois Brick* prohibition absent valid authority allowing them to do so.  (*Id.* at 47.)  Thus, for the same reasons the Court dismissed the End-Payor Plaintiffs' unjust enrichment claims as to these states, the Court should dismiss GEHA's unjust enrichment claims as to these states.[10]

3.      **GEHA's Unjust Enrichment Claims Fail to Comply With State Law.**

Certain states require that a plaintiff confer a direct benefit upon the defendant for which restitution must be provided; an indirect benefit of revenue from the indirect purchase of a drug product will not suffice.  *See, e.g.*, *In re Plavix Indirect Purchaser Antitrust Litig.*, No. 1:06-cv-226, 2011 WL 335034, at *7 (S.D. Ohio Jan. 31, 2011) ("Any payment by Indirect Purchasers for Plavix was not a 'benefit conferred' but instead consideration for the patented drug"); *In re Aftermarket Filters Antitrust Litig.*, No. 08-cv-4883, 2010 WL 1416259, at *2-3 (N.D. Ill. Apr. 1, 2010) ("plaintiffs are unable to allege that they have conferred a benefit on defendants. . . . Any benefit that plaintiffs have conferred, however, would be on others in the chain of distribution from whom they purchased, not on defendants").

Similarly, certain states do not permit unjust enrichment claims where the defendant has provided some consideration for the benefit it received.  In these states, retention of the benefit under such circumstances is not considered "unjust."  *See, e.g.*, *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 390 (Fla. Dist. App. 1997) (unjust enrichment not

---

[10] In its November 17 Order, the Court dismissed nearly all of GEHA's claims—including its unjust enrichment claims—for lack of standing and thus did not address this separate ground for dismissal of GEHA's unjust enrichment claims.  (*See* Order at 35-36.)

available where a defendant provides consideration to a third party for the benefit it received because retention of the benefit is not unjust).

GEHA's SAC does not include any allegations of direct dealings with any Defendants or their affiliates. (*See generally* GEHA SAC.) To the contrary, GEHA's allegations of harm relate to its payments to retail and mail order pharmacies. (*Id.* ¶ 23.) Nor does GEHA allege that Defendants did not provide Lidoderm in exchange for any payments they received. (*See generally* GEHA SAC.) These allegations are insufficient to meet the pleading standards applicable in each state that has adopted the "direct benefit" and "consideration" rules. Accordingly, the Court should dismiss GEHA's unjust enrichment claim with regards to these states, as discussed below on a state-by-state basis:

a. <u>Alabama</u>

***Direct Benefit:*** Alabama law requires that a plaintiff show that money or a benefit was conferred on the defendant by the plaintiff. *Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Se., Inc*., No. 2:09-cv-192-MHT, 2011 WL 2893629, at *6 (M.D. Ala. Jul. 19, 2011) (dismissing in part the unjust enrichment claims because "plaintiffs did not confer a direct benefit on [the individual defendants] . . . [T]here was no money paid by the plaintiffs to the named [defendants]"). GEHA has not alleged that it paid any money directly to any Defendant or its affiliates. To the contrary, GEHA only alleges it made payments to retail and mail order pharmacies. (GEHA SAC ¶ 23.)

b. <u>Arizona</u>

***Direct Benefit:*** Arizona unjust enrichment law requires proof of a direct benefit, and courts have held that plaintiffs who "allege that they purchased an allegedly price-fixed produce indirectly, i.e., not from Defendants, cannot meet this [direct benefit] test." *Compressors II*, 2013 WL 1431756, at *25-26 (plaintiffs' failure to satisfy Arizona's direct benefit requirement justified dismissal of Arizona unjust enrichment claim). Here, GEHA has only alleged that it purchased Lidoderm indirectly from pharmacies. (GEHA SAC ¶ 23.)

c.   District of Columbia

*Direct Benefit:* An unjust enrichment claim under District of Columbia law is improper where a plaintiff has not "afforded any direct benefit" to the defendant. *Minebea Co. v. Papst*, 444 F. Supp. 2d 68, 186 (D.D.C. 2006). Here, GEHA has not alleged that it provided any direct benefit to Defendants, but only that it purchased Lidoderm indirectly through pharmacies. (GEHA SAC ¶ 23.)

d.   Florida

*Direct Benefit:* Numerous courts have held that "Florida law requires that a benefit be conferred upon the defendant directly in order to state a claim for unjust enrichment." *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2014 WL 6792663, *32 (E.D. Pa. Dec. 3, 2014) (citing *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d D.C.A.2009) (affirming dismissal of unjust enrichment claim for failure to demonstrate that a benefit was directly conferred on the defendant); *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th D.C.A. 2007)); *see also People's Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So. 2d 876, 879 (Fla. 3d D.C.A. 1996) (plaintiffs must show they "directly conferred a benefit on the defendants"); *Flonase II*, 692 F. Supp. 2d at 544 ("As best I can tell, Florida law is clear; it requires that a plaintiff confer a direct benefit upon a defendant in order to state a claim for unjust enrichment")); *Compressors II*, 2013 WL 1431756, at *25-26 (viewing plaintiffs' failure to satisfy Florida's direct benefit requirement as a basis for dismissal of Florida unjust enrichment claim). GEHA has failed to allege such a direct benefit. To the contrary, GEHA admits that any alleged benefit was only conferred on Defendants indirectly through GEHA's payments to pharmacies. (GEHA SAC ¶ 23.)

*Consideration:* Similarly, a Florida unjust enrichment claim must be rejected when the defendant has provided consideration in exchange for any alleged benefit. *See Commerce P'ship 8098 Ltd. P'ship*, 695 So. 2d at 390 (unjust enrichment not available where a defendant provides consideration to a third party for the benefit it received because retention of the benefit is not unjust); *Am. Safety Ins. Serv. Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. Dist. App. 2007) ("When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust

enrichment fails"). GEHA's SAC does not dispute that Defendants provided Lidoderm in exchange for any payments they may have received. Consequently, Defendants have provided the consideration required under Florida law.

### e.   Georgia

***Direct Benefit:*** Georgia law requires that a plaintiff show that money or a benefit was conferred on the defendant directly by the plaintiff. *Brenner v. Future Graphics, LLC*, 258 F.R.D. 561, 576 (N.D. Ga. 2007) (dismissing unjust enrichment claim by indirect purchasers because "[t]here is no evidence to establish that any of named plaintiffs conferred a benefit directly to [defendant]"). Here, GEHA has not asserted it provided any direct benefit to Defendants, but only purchased Lidoderm indirectly through pharmacies. (GEHA SAC ¶ 23.)

### f.   Idaho

***Direct Benefit:*** To state an unjust enrichment claim under Idaho law, plaintiffs must assert the conferral of a direct benefit. *Sheet Metal Workers*, 737 F. Supp. 2d at 433-34 n.26 (if court had not dismissed unjust enrichment claims on other grounds, it would have dismissed for failure to allege a direct benefit) (citing *Hayden Lake Fire Prot. Dist. v. Alcorn*, 111 P.3d 73, 91-2 (Idaho 2005)); *Beco Constr. Co. v. Bannock Paving Co*., 797 P.2d 863, 867 (Idaho 1990) (in determining whether a direct benefit was conferred, lack of legal relationship was persuasive in finding no claim for unjust enrichment). GEHA has failed to assert such a relationship with Defendants. (GEHA SAC ¶ 23.)

### g.   Kansas

***Consideration:*** Under Kansas law, the premise of an unjust enrichment claim is that the defendant received a benefit without providing consideration. *Senne & Co. v. Simon Capital Ltd. P'ship*, No. 93-302, 2007 WL 1175858, at *8 (Kan. App. Apr. 20, 2007); *see also Tradesmen Int'l, Inc. v. U.S. Postal Serv*., 234 F. Supp. 2d 1191, 1205-06 (D. Kan. 2002) (dismissing unjust enrichment claim by sub-subcontractor against contractor because sub-subcontractor did not allege that contractor did not pay for the benefits it received). Here, GEHA has not asserted that it failed to receive the quantity of Lidoderm it sought in exchange for its purchases.

h.   <u>Maryland</u>

**Direct Benefit:** An unjust enrichment claim will be denied under Maryland law if "Plaintiff has not conferred any benefit directly on Defendant."  *Bassi & Bellotti S.P.A. v. Transcon. Granite, Inc.*, No. DKC 08-1309, 2011 WL 856366, at *11 (D. Md. Mar. 9, 2011); *see also Crosby v. Crosby*, 769 F. Supp. 197, 200-01 (D. Md. 1991) (recognizing lack of authority to support unjust enrichment claim on theory of indirect benefit).  GEHA has not asserted that it conferred a direct benefit on Defendants.  (GEHA SAC ¶ 23.)

i.   <u>New Jersey</u>

**Direct Benefit:** To state an unjust enrichment claim under New Jersey law, plaintiffs must assert the conferral of a direct benefit.  *In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319, 342-43 (S.D.N.Y. 2005) ("The benefit at issue must have been conferred on the defendant by the plaintiff, not by some third party"); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998) ("[I]t is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis of an unjust enrichment claim.").  Here, GEHA has not asserted it provided any direct benefit to Defendants, but only purchased Lidoderm indirectly through pharmacies. (GEHA SAC ¶ 23.)

j.   <u>New York</u>

**Direct Benefit:** In *Fenerjian v. Nongshim Co.*, No. 13-cv-04115-WHO, 2014 WL 5685562 (N.D. Cal. Nov. 4, 2014), the Northern District held that the relationship and transactions between indirect purchasers and defendants were too attenuated to state an unjust enrichment claim under New York law.  *Id.* *22 (citing *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215, 831 N.Y.S.2d 760, 863 N.E.2d 1012 (2007) (relationship between indirect purchasers of tires and defendants who fixed prices for chemical additives in the tires was too attenuated for an unjust enrichment claim); *State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*, 42 A.D.3d 301, 304, 840 N.Y.S.2d 8 (2007) ("[w]hile privity is not required for an unjust enrichment claim, the end-users of the products, in whose interest plaintiff is acting, are too attenuated from the producers of the chemicals which are among the ingredients of those products.")).  The connection is similarly attenuated in this matter.  GEHA has not alleged that it provided any direct benefit to Defendants, but only purchased Lidoderm

indirectly through pharmacies.  (GEHA SAC ¶ 23.)

### k.     North Carolina

*Direct Benefit:* Unjust enrichment claims under North Carolina law must be dismissed if indirect purchaser plaintiffs cannot allege that they conferred a direct benefit on defendants.  *In re Aftermarket Filters Antitrust Litig.*, 2010 WL 1416259, at *2-3; *Flonase II*, 692 F. Supp. 2d at 546 (North Carolina courts require conferral of a direct benefit in order to state an unjust enrichment claim).  GEHA has failed to assert such a direct benefit in its SAC.  (GEHA SAC ¶ 23.)

### l.     North Dakota

*Direct Benefit:* Unjust enrichment claims under North Dakota law must be dismissed if indirect purchaser plaintiffs cannot allege that they conferred a direct benefit on defendants.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1190-91 (N.D. Cal. 2009) (granting motion to dismiss unjust enrichment claim under North Dakota law); *In re Relafen Antitrust Litig. (Relafen II)*, 225 F.R.D. 14, 28 (D. Mass. 2004) (relying on *Apache* to preclude unjust enrichment claims brought by indirect purchaser plaintiffs due to absence of direct benefit conferred by them on defendants); *Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891, 895 (N.D. 1999) (approving dismissal of unjust enrichment claims and explaining a defendant must have obtained "a benefit at the direct expense of the [plaintiff]").  Here, GEHA has not alleged that it provided any direct benefit to Defendants, but only that it purchased Lidoderm indirectly through pharmacies.  (GEHA SAC ¶ 23.)

### m.     Pennsylvania

*Direct Benefit:* Pennsylvania law does not permit unjust enrichment claims by indirect purchasers.  *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2010 WL 5094289, at *7 (finding that Pennsylvania unjust enrichment claims require conferral of direct benefits, and dismissing claims of indirect purchasers); *Stutzle v. Rhone-Poulenc S.A.*, No. 002678, 2003 WL 22250424, at *1 (Pa. Com. Pl. Sept. 26, 2003) (unjust enrichment claims were dismissed because they were "indirect purchasers and had no direct dealings with defendants").  Consequently, GEHA's unjust enrichment claim under Pennsylvania law must be rejected.

n.   <u>Rhode Island</u>

***Direct Benefit:*** Rhode Island unjust enrichment law requires proof of a direct benefit, and courts have held that plaintiffs who "allege that they purchased an allegedly price-fixed product indirectly, i.e., not from Defendants, cannot meet this [direct benefit] test." *Compressors II*, 2013 WL 1431756, at \*25-26 (viewing plaintiffs' failure to satisfy Rhode Island's direct benefit requirement as a basis for dismissal of Rhode Island unjust enrichment claim). Here, GEHA has only alleged that it purchased Lidoderm indirectly from pharmacies. (GEHA SAC ¶ 23.)

o.   <u>South Carolina</u>

***Direct Benefit:*** The South Carolina Supreme Court has held that no unjust enrichment claim can lie where plaintiff did not allege conferral of benefit directly upon the defendant. *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868, 872-73 (S.C. 2000); *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464 (D. Md. 2005) ("As part of the claim, the plaintiff must establish the existence of a duty owed to him or her by the defendant"). Here, GEHA has not alleged it provided any direct benefit to Defendants, but only that it purchased Lidoderm indirectly through pharmacies. (GEHA SAC ¶ 23.)

p.   <u>Tennessee</u>

***Consideration:*** Under Tennessee law, an unjust enrichment claim must be rejected when the defendant has provided consideration in exchange for any alleged benefit. *McKee v. Meltech, Inc.*, No. 10-2730, 2011 WL 1770461, at \*10 (W.D. Tenn. May 9, 2011) (dismissing unjust enrichment claim because defendant had provided compensation for the services provided to plaintiff's wife and thus "there [wa]s no injustice in allowing the defendant to retain th[e] benefit[]"); *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966) ("[I]f the [defendant] has given any consideration to any person for the [benefit], it would not be unjust for him to retain the benefit without paying the furnisher."); *Weather Doctor Servs. Co. v. Stephens*, No. E2000-01427-COA-R3-CV, 2001 WL 849540, at \*2-3 (Tenn. App. Jul. 27, 2001) (rejecting contractor's unjust enrichment claim against homeowner because homeowner provided consideration to a third-party). GEHA's SAC does not dispute that Defendants provided Lidoderm in exchange for any payments they may have received. Consequently, Defendants have provided the consideration required under Tennessee law.

1

q.      Texas

2

**Direct Benefit:** Texas law requires that a plaintiff show that money or a benefit was

3

conferred on the defendant by the plaintiff.  *State v. Am. Tobacco Co.*, 14 F. Supp. 2d 956, 972 (E.D.

4

Tex. 1997) ("[I]t is the individual smokers and not the Defendants who have received the primary

5

and direct benefit of the payment of their medical expenses . . . . The Court finds that the alleged

6

benefit enjoyed by Defendants is too attenuated and indirect to find support under the theory of

7

unjust enrichment as enunciated in Texas").  GEHA has not alleged that it paid any money directly

8

to any Defendant or its affiliates.  To the contrary, GEHA only alleges it made payments to retail

9

and mail order pharmacies.  (GEHA SAC ¶ 23.)

10

**4.      GEHA's Unjust Enrichment Claim In California Should Be Dismissed.**

11

In its November 17 Order, the Court dismissed with prejudice the End-Payor Plaintiffs'

12

unjust enrichment claims as to California.  (Order at 49-50.)  The Court noted that recent California

13

and Northern District cases "have expressly held that unjust enrichment is not an independent cause

14

of action."  (*Id.* at 49 (citing *Ham v. Hain Celestial Grp., Inc.*, 2014 U.S. Dist. LEXIS 141157, at

15

\*14 (N.D. Cal. Oct. 3, 2014); *World Surveillance Grp. Inc. v. La Jolla Cove Investors, Inc.*, 2014

16

U.S. Dist. LEXIS 51464, at \*4-5 (N.D. Cal., Apr. 11, 2014); *In re iPhone Application Litig.*, 844 F.

17

Supp. 2d 1040, 1075 (N.D. Cal. 2012))).  Thus, for the same reasons the Court dismissed the End-

18

Payor Plaintiffs' California unjust enrichment claim as to these states, the Court should dismiss

19

GEHA's California unjust enrichment claim.

20

**CONCLUSION**

21

For the reasons set forth above in Defendants' Memorandum of Points and Authorities in

22

Support of Joint Motion to Dismiss End-Payor Plaintiffs' Consolidated Second Amended

23

Complaint and GEHA's Second Amended Complaint, Defendants respectfully request that the

24

Court dismiss the End-Payor Plaintiffs' and GEHA's Second Amended Complaints with prejudice.

25

26

27

28

1    DATED: January 30, 2015                                     ARNOLD & PORTER LLP

2

3
                                                    By:    _____/s/ Daniel B. Asimow_____
4                                                              Jonathan L. Stern
                                                               Daniel B. Asimow
5                                                               Ryan Z. Watts
                                                            Attorneys for Defendant
6                                                          ENDO PHARMACEUTICALS INC.

7

8
     SKADDEN, ARPS, SLATE, MEAGHER &        SQUIRE PATTON BOGGS (US) LLP
9    FLOM LLP

10

11   By:_____/s/ Steven C. Sunshine_____      By:    _____/s/ David S. Elkins_____
                Steven C. Sunshine                         David S. Elkins
12             Karen Hoffman Lent                          Nathan Lane III
              Attorneys for Defendants                    Noriyuki Shimoda
13        WATSON PHARMACEUTICALS, INC.,            Joseph A. Meckes
14          WATSON LABORATORIES, INC.,           Attorneys for Defendants
                 ACTAVIS, PLC,                 TEIKOKU SEIYAKU CO., LTD. and
15                ANDA, INC.,                   TEIKOKU PHARMA USA, INC.
        ANDA PHARMACEUTICALS, INC., and
16       VALMED PHARMACEUTICALS, INC.

17

18

19

20

21

22

23

24

25

26

27

28