United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Case No.  14-md-02521-WHO

In re Lidoderm Antitrust Litigation

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINTS**

Re: Dkt. No. 139

**INTRODUCTION**

This case concerns the alleged antitrust and anticompetitive impact of a July 2012 settlement agreement between defendants Endo Pharmaceuticals Inc., Teikoku Seiyaku Co., Teikoku Pharma USA (collectively "Endo defendants") and defendant Watson Pharmaceuticals, Inc. (collectively "defendants"), which terminated Watson's patent litigation lawsuit against the Endo defendants in exchange for the provision of brand-name Lidoderm patches to Watson and giving Watson a period of exclusivity to market its generic version of Lidoderm patches without competition from the Endo defendants' generic patch.[1]  Following my prior Order granting in part and denying in part the defendants' motion to dismiss, the End-Payor Plaintiffs (EPPs) and the Government Employees Health Organization (GEHA) filed Second Amended Complaints (SACs) on December 19, 2014.  Dkt Nos. 22, 23.[2]  Defendants move to dismiss specific state law antitrust,

---

[1] The factual background and procedural background in these consolidated antitrust cases was explained in depth in my prior Order, granting in part and denying in part defendants' prior motion to dismiss.  November 17, 2014 Order [Dkt. No. 117] at 1-9.  That discussion is incorporated into this Order.  In this Order I will refer to brand name and generic Lidoderm patches as "Lidoderm" or "Lidoderm patches."

[2] In my November 17, 2014 Order, some of the claims of the direct purchaser plaintiffs were also dismissed with leave to amend.  The DPPs filed their Second Amended Complaint on December

consumer protection, and unjust enrichment claims.[3]

Each state's statutes and case law, to the extent the latter exists, must be analyzed independently to determine the merits of the motion--it is not helpful, for example, to look to cases in Michigan to determine the reach of the consumer protection statute in Maine. Following oral argument on the motion, and having analyzed the pleadings requirements under each of the state law claims at issue, I GRANT in part and DENY in part the motion to dismiss.

## LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A complaint may be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (quotation marks and brackets omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv*., 911 F.2d 242, 247 (9th Cir. 1990).

## DISCUSSION

## I.   END-PAYOR SECOND AMENDED COMPLAINT

Defendants move only to dismiss the EPPs' claims asserted under Massachusetts and Utah laws. In opposition, the EPPs agree to dismiss their claim under Utah law, asking that the

---

19, 2014. Dkt. No. 121. Defendants have not moved to dismiss any claims asserted by the DPPs in their SAC.

[3] Defendants challenge the following claims: EPPs' state antitrust and monopolization claims under Utah and Massachusetts law; GEHA's state antitrust and monopolization claims under Rhode Island and Massachusetts law; GEHA's state consumer protection claims under 17 states' laws; and GEHA's unjust enrichment claims under 38 states' laws.

2

United States District Court
Northern District of California

United States District Court
Northern District of California

1  dismissal be without prejudice to amending to bring in a Utah resident as a class representative in

2  the future.  EPP Oppo. [Dkt. No. 143] at 1.  The EPPs' claim under Utah law is DISMISSED

3  WITHOUT PREJUDICE.

4       With respect to the EPPs' claim under Massachusetts law, the question is whether End-

5  Payor plaintiff Letizia Galloto, who is bringing her claim under Section 9 of the Massachusetts

6  Consumer Protection Act (CPA), was required to provide pre-suit notice to defendants prior to

7  bringing her claim.  Mass. Gen. Law ch.93A § 9.  Plaintiff Galloto is a resident of Massachusetts

8  who pleads that she indirectly purchased Lidoderm and/or the generic version at supracompetitive

9  prices during the Class Period.  EPP SAC, ¶ 17.  In their Opposition, the EPPs argue that Galloto

10  does not need to comply with the pre-suit notice requirement because none of the defendants

11  maintain a place of business or keep assets in Massachusetts.  EPP Oppo. at 2; CPA, § 9(3).

12       Defendants counter that in order to avoid the pre-suit notice requirement, a plaintiff must

13  plead that defendants do not maintain a place of business or keep assets in Massachusetts and the

14  EPP SAC is devoid of those allegations.  *See Bean v. Bank of New York Mellon*, No. CIV.A. 12-

15  10930-JCB, 2012 WL 4103913, at *7 (D. Mass. Sept. 18, 2012) ("Although Bean is not required

16  to allege the legal conclusion that the demand letter requirement is inapplicable, she must allege

17  facts that BNY does not maintain a place of business or keep assets in Massachusetts to show the

18  exception to the demand letter requirement applies to plead a Chapter 93A claim."); *Sumner v.*

19  *Mortgage Elec. Registration Sys., Inc.*, No. CIV.A. 11-11910-DJC, 2012 WL 3059429, at *6 (D.

20  Mass. July 26, 2012).

21       Because the EPP SAC does not allege that none of the defendants maintain a place or

22  business or have assets in Massachusetts – which would excuse the pre-suit demand requirement –

23  defendants' motion to dismiss the EPPs' claim under Massachusetts law is GRANTED with leave

24  to amend.  The Third Amended Complaint shall be filed within 35 days of the date of this Order.[4]

25  **II.  GEHA'S SECOND AMENDED COMPLAINT**

26       Defendants challenge GEHA's state law antitrust, consumer protection, and unjust

27

28  [4]  At oral argument, the EPPs indicated that in addition to filing a Third Amended Complaint, they will also serve a demand letter on defendants in accordance with the statute.

United States District Court
Northern District of California

enrichment claims for various states.

### A.  State Law Antitrust and Consumer Protection Claims[5]

### 1.  Rhode Island

In dismissing the EPPs' antitrust and monopolization claims under Rhode Island law, I concluded that the *Illinois Brick* repealer statute passed by Rhode Island in July 2013 was not retroactive and therefore that the EPPs' claims, including claims for injuries occurring after July 2013, were barred.  Dkt. No. 117 at 45.  GEHA challenges that conclusion and contends, at a minimum, that injuries resulting from purchases of Lidoderm after July 2013 should be actionable. GEHA Oppo. [Dkt. No. 146] at 4-5.  GEHA argues that in cases where there is a continuing conspiracy to violate the federal antitrust laws, "this has usually been understood to mean that each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act."  *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 338 (1971).  That, plus the fact that Rhode Island's antitrust statute prohibits "a construction of the Antitrust Act that is not in harmony with federal antitrust law," *Siena v. Microsoft Corp*., 796 A.2d 461, 464 (R.I. 2002), means, according to GEHA, that it should be able to pursue injuries suffered after July 2013, even though the antitrust conduct at issue was effectuated by the 2012 agreement.

The issue here is not a statute of limitations defense or a continuing conspiracy to commit antitrust conduct between the defendants.  It is whether injury that occurred *after* Rhode Island passed legislation allowing indirect purchaser actions is barred because the only alleged antitrust conduct – the May 2012 agreement – occurred well before the repealer statute was passed.  In effect, GEHA is attempting to overcome my prior conclusion that Rhode Island's repealer statute is not retroactive.  I conclude, as before, that because the antitrust conduct identified by GEHA occurred before the Rhode Island legislature passed the law allowing for indirect purchaser actions, GEHA's claims under Rhode Island's antitrust law are barred.  *See, e.g., Sheet Metal*

---

[5]  GEHA voluntarily withdraws its claims under the New Hampshire Consumer Protection Act. GEHA Oppo. at 2, fn. 2.

United States District Court
Northern District of California

1   *Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 430

2   (E.D. Pa. 2010) (looking to date of alleged antitrust conduct and not date of damage to determine

3   whether claims were barred because conduct occurred before repealer statute passed); *see also In*

4   *re Relafen Antitrust Litig.*, 225 F.R.D. 14, 26 (D. Mass. 2004) (focusing on alleged date of

5   antitrust conduct, not date of resulting injury, where repealer statutes were prospective in

6   application).[6]  GEHA's claim under Rhode Island's antitrust statute is DISMISSED WITH

7   PREJUDICE.

8       *2.* **Alaska**

9       Defendants move to dismiss GEHA's claim under the Alaska consumer protection statute,

10  arguing that it is barred by *Illinois Brick*.  They note that Alaska's antitrust statute was amended in

11  2003 to clarify that only the Alaska Attorney General may seek monetary relief on behalf of

12  indirect purchasers.  Alaska Stat. Ann. § 45.50.577(i) ("Only the attorney general, in a suit brought

13  under this section, may seek monetary relief for injury indirectly sustained for a violation.").  They

14  point out that no court has construed Alaska's consumer protection statute (Alaska Stat. Ann. §

15  45.50.531(a)) to permit claims based on alleged antitrust and monopolization conduct by indirect

16  purchasers.  And a judge in this District has addressed this exact question and rejected the

17  plaintiffs' attempt to circumvent the *Illinois Brick* bar by reliance on the more general Alaska

18  Consumer Protection statute.  *See In re Dynamic Random Access Memory (Dram) Antitrust Litig.*,

19  Case No. 02–1486 PJH, 516 F. Supp. 2d 1072, 1108 (N.D. Cal. 2007) ("recognizing that this court

20  is not in the best position to decide unresolved legal issues for the state of Alaska, the court

21  chooses to adopt the interpretation that will wreak the least amount of havoc on the existing law in

22  Alaska. To that end, the court therefore declines to read the AUTPCPA to permit indirect

23  purchaser standing, since no court has affirmatively found to the contrary, and since, under the

24  current status of the law in Alaska, only the attorney general may sue for money damages on

25  

26  _____

[6] At the hearing, GEHA relied on a recent decision in *In re Aggrenox Antitrust Litigation* from the
District Court of Connecticut, Case No. 14-md-2516 SRU.  In that case, the court agreed that the
27  Rhode Island repealer statute was not retroactive but then – in one sentence without any analysis
of authority – held without explanation that indirect purchaser claims based on "overcharges
incurred after" the date the Rhode Island repealer statute was passed could continue.  In absence of
28  any persuasive analysis that supports the court's conclusion, I will not follow that case.

1   behalf of indirect purchasers as a result of antitrust violations.").

2       In opposition, GEHA relies only on the broad language of the Alaska consumer protection

3   statute and on *Fed. Trade Comm'n v. Mylan Labs., Inc.*, 99 F. Supp. 2d 1, 5 (D.D.C. 1999).  In

4   *Mylan*, the court simply allowed the Alaska Attorney General to seek restitution on behalf of

5   indirect purchasers under the Alaska consumer protection act for alleged anticompetitive acts.  *Id.*

6   That case was decided prior to the 2003 amendment to Alaska's antitrust statute and rests on the

7   authority of the Alaska Attorney General.[7]

8       In absence of any persuasive authority from Alaska, and in light of the clear intent of the

9   Alaska antitrust statute reserving to the Alaska Attorney General the ability to seek damages on

10  behalf of indirect purchasers, I agree with the analysis of *In re Dram*, and DISMISS WITH

11  PREJUDICE GEHA's claim under Alaska law.

12      **3.  Massachusetts**

13      Defendants contend that GEHA lacks standing under section 11 of Massachusetts'

14  Consumer Protection Act because indirect purchasers who are engaged in "trade or commerce"

15  cannot bring claims under section 11 of the Massachusetts CPA.  In my November 17, 2014

16  Order, I dismissed the EPPs' claims under section 11 as to the City of Providence and the Iron

17  Workers District Council or New England Welfare Fund ("Iron Workers," a health and welfare

18  fund) because I found both entities were engaged in "trade or commerce" when paying for the

19  Lidoderm patches on behalf of their employees or members.  Dkt. No. 117 at 40-43.  In that Order,

20  I recognized that the Massachusetts statute focuses on the persons engaged in the "conduct of any

21  trade or commerce" and that Massachusetts courts had struggled with identifying the line between

22  a consumer claim – which could be brought on behalf of an indirect purchasers – and a business

23  claim – which could not.  *Id.*  I relied on the decision in *Frullo v. Landenberger*, 61 Mass. App.

24  Ct. 814 (2004), which explained that "the choice appears to turn on whether a given party has

25  undertaken the transaction in question for business reasons, or has engaged in it for purely

26

27  [7] In *California v. Infineon Technologies AG*, Case No. 06-4333 PJH, 531 F. Supp. 2d 1124, 1142
    (N.D. Cal. 2007), the court addressed *Mylan* and concluded that in light of the 2003 amendment to
    Alaska's antitrust statute, the Attorney General was *only* allowed to seek recovery for indirect
28  purchasers under Alaska's consumer protection statute after the 2003 amendment.

United States District Court
Northern District of California

United States District Court
Northern District of California

personal reasons (such as the purchase of an item for personal use)" and that "any transaction in which the plaintiff is motivated by business considerations gives rise to claims only under the statute's business section." *Id*. at 821.  Given that holding, I concluded that the city and the health and welfare plan who bought Lidoderm patches for their employees or members (or reimbursed them for those purchases) did so for business reasons and not for "purely personal" reasons.   Dkt. No. 117 at 42.

GEHA does not attempt to distinguish itself from the Iron Workers.  Instead, GEHA asserts that it was not engaged in trade or commerce when purchasing or reimbursing its members because it was acting solely as a "dual end payor along with its plan members in consumer retail transactions."  GEHA Oppo. at 7-8, n.15. However, because GEHA did not engage in the transactions for its own "purely personal reasons" but instead acted in its business interests of providing health care coverage for its members, I find that GEHA's purchases were for business reasons that fall within the "business or trade" exception for indirect purchaser actions.[8]  GEHA's claim under Massachusetts' CPA is DISMISSED WITH PREJUDICE.

### 4.  Can GEHA be considered to have purchased Lidoderm for "personal, family, or household" purposes under consumer protection statutes of specific states?

Somewhat relatedly, defendants move to dismiss a number of state law consumer protection claims, arguing that as a health plan GEHA cannot be considered to have purchased Lidoderm patches for "personal, family, or household" purposes as required under various states' statutes.  I will only address the arguments regarding the District of Columbia and Montana in this section because I am dismissing the claims for Maine and Pennsylvania on separate grounds (plaintiffs' failure to plausibly allege fraud or deception, as discussed in section 5, below).

#### a.  District of Columbia

The District of Columbia's consumer protection statute allows causes of action on behalf

---

[8] GEHA also argues, as the EPPs did on the prior motion to dismiss, that even if GEHA is considered to be engaged in "trade or commerce," it can still pursue a Section 11 indirect purchaser claim under the rationale of *Blue Cross & Blue Shield v. AstraZeneca Pharms. LP (In re Pharm. Indus. Average Wholesale Price Litig.),* 582 F.3d 156 (1st Cir. 2009).  I specifically rejected that argument in my prior Order (Dkt. No. 117 at 42) and GEHA offers no persuasive reason why I should revisit that determination on this motion.

7

United States District Court
Northern District of California

of a "consumer" who "does or would purchase, lease (as lessee), or receive and normally use" consumer goods or services "for personal, household, or family purposes."  D.C. Code § 28-3901(a)(2)(B)(i).  As explained by the District of Columbia Court of Appeals, "the relevant distinction is one between retail and wholesale transactions. Transactions along the distribution chain that do not involve the ultimate retail customer are not 'consumer transactions' that the Act seeks to reach.  Rather, it is the ultimate retail transaction between the final distributor and the individual member of the consuming public that the Act covers. Accordingly, it is not the use to which the purchaser ultimately puts the goods or services, but rather the nature of the purchaser that determines the nature of the transaction." *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1005 (D.C. 1989); *see also Julian Ford v. ChartOne, Inc*., 908 A.2d 72, 81 (D.C. 2006) ("the CPPA 'was designed to police trade practices arising only out of consumer-merchant relationships,' . . . and does not apply to commercial dealings outside the consumer sphere." (citation omitted)).

Here the purchaser at issue – the one trying to secure a recovery for its indirect purchases – is GEHA.  It is true that GEHA has pled it is a joint "end payor" for the Lidoderm patches, GEHA SAC ¶ 50, and that it has paid retail and mail order pharmacies in the District of Columbia $13,432.85 for Lidoderm patches during the relevant period.  *Id*. ¶ 23.  However, GEHA was not part of the "retail" transaction, in terms of deciding to purchase the product or actually purchasing it.  It, instead, was required to pay the pharmacies for a portion of the expenses for the patches because its members filled personal prescriptions for Lidoderm patches.  Although GEHA played a role in the retail transaction, its own transactions with the pharmacies were more akin to "wholesale" than retail transactions.  Following the guidance of courts in the jurisdiction, I conclude that GEHA is not a consumer under the District of Columbia's statute and GEHA's claim is DISMISSED WITH PREJUDICE.[9]

### b.  Montana

Montana's Unfair Trade Practices and Consumer Protection Act defines a "consumer" as

---

[9]  GEHA's reliance on *In re Processed Egg Prods. Antitrust Litig*., 851 F. Supp. 2d 867, 898 (E.D. Pa. 2012) is misplaced, as that case does not discuss who is a "consumer" under the statute.

United States District Court
Northern District of California

"a person who purchases or leases goods, services, real property, or information primarily for personal, family, or household purposes." Mont. Code Ann. § 30-14-102(1). The statute excludes persons who buy goods for resale. *See, e.g., In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2013 WL 2456612, at *30 (E.D. Mich. June 6, 2013) (automotive dealer plaintiffs could not bring a claim under Montana's UTPCA). In the absence of any authority from Montana, I find that GEHA is not a "consumer" under Montana's statute and I DISMISS WITH PREJUDICE GEHA's claims under Montana law.

### 5.   GEHA's Allegations of Fraud or Deception

Defendants argue that under specific states' statutes, GEHA has failed to allege false, fraudulent, or deceptive conduct on the part of defendants to state a consumer protection claim. GEHA responds that in its SAC it added allegations about defendant Teikoku Seiyaku's fraud on the United States Patent and Trademark Office; specifically that during the prosecution of the '529 Patent, Teikoku failed to disclose multiple instances of prior art which would have prevented the patent from issuing. GEHA SAC ¶¶ 80-114, 227. GEHA also relies more generally on its allegations that defendants deceived the public by selling Lidoderm patches at prices that were not the result of fair and open market competition, but rather the result of the illegal payoffs to Watson. GEHA SAC ¶¶ 124-181.

As the pleading requirements under each state's law differs, I will address each jurisdiction in turn.[10]

#### a.   Arkansas

The Arkansas Deceptive Trade Practices Act prohibits deceptive and unconscionable trade practices including any "unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4-88-107(a)(10). The court in *State ex rel. Bryant v. R & A Inv. Co.*, 336 Ark. 289 (1999) held that the legislature's use of "unconscionable" "illustrates that liberal construction of the DTPA is appropriate" and that section (a)(10) was intended to expand and not

---

[10] GEHA argues that defendants are "implicitly" challenging its consumer protection claim under Arizona law. GEHA Oppo. at 3, n. 9. However as defendants clarified at the hearing, they did not challenge the Arizona consumer protection claim and, as such, GEHA may continue to pursue it.

United States District Court
Northern District of California

1  "limit the types of unfair trade practices actionable at common law or under other statutes of this

2  state." *Id*. at 302 ; *see also Baptist Health v. Murphy*, 365 Ark. 115, 128 n.6 (2006) (Arkansas

3  Supreme Court relying on Black's Law Dictionary to define unconscionable as "an act that

4  'affront[s] the sense of justice, decency, or reasonableness.'").

5      GEHA relies on *Sheet Metal Workers Local 441 Health & Welfare Plan v.*

6  *GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 405 (E.D. Pa. 2010) which held that "plaintiffs'

7  allegation that GSK engaged in a scheme designed to maintain its monopoly over the Wellbutrin

8  SR market and prevent generic manufacturers from entering the market does fall under the catch

9  all provision in subsection (a)(10)." *See also In re Chocolate Confectionary Antitrust Litig*., 602

10  F. Supp. 2d 538, 583 (M.D. Pa. 2009) (allowing indirect end users of chocolate to pursue price

11  fixing claims under ADTPA) and *In re New Motor Vehicles Canadian Exp. Antitrust Litig*., 350 F.

12  Supp. 2d 160, 178-879 (D. Me. 2004) (finding that allegations of a conspiracy to keep Canadian

13  cars out of the United States' market "unconscionable" under ADTPA, but failure to disclose

14  conspiracy insufficient to constitute "false or deceptive" act).  Three judges in this District have

15  likewise held that price fixing allegations are sufficient to state "unconscionable" conduct under

16  the ADTPA. *See In re Lithium Ion Batteries Antitrust Litig.,* Case No. 13-md-2420 YGR, 2014

17  U.S. Dist. LEXIS 141358, *124-125 (N.D. Cal. Oct. 2, 2014) (relying on broad definition of

18  "unconscionable" conduct adopted by Arkansas Supreme Court in *Baptist Health v. Murphy* as

19  conduct that "affront[s] the sense of justice, decency, or reasonableness," and "includes conduct

20  violative of public policy or statute."); *In re Flash Memory Antitrust Litig*., Case No. 07-0086

21  SBA, 643 F. Supp. 2d 1133, 1156-57 (N.D. Cal. 2009); *see also In re Dynamic Random Access*

22  *Memory Antitrust Litig*., Case No. 02-1486 PJH, 516 F. Supp. 2d 1072, 1108-09 (N.D. Cal. 2007)

23  (allowing indirect purchaser claim to proceed under ADTPA based on allegations that acts were

24  unconscionable, including misleading consumers into believing price were set by a free market

25  and that conduct was substantively unconscionable because it was one-sided and unfairly

26  benefitted defendants at the expense of plaintiffs).

27      However, three other judges in this District have found that even in light of the broad

28  definition of unconscionability adopted by the Arkansas Supreme Court, in absence of authority

10

United States District Court
Northern District of California

from Arkansas courts that the ADTPA extends to price fixing claims, those claims should be

dismissed.  *See In re TFT-LCD Antitrust Litig.*, Case No. 07-1827 SI, 787 F. Supp. 2d 1036, 1042

(N.D. Cal. 2011) (addressing *Baptist Health* but declining to recognize indirect purchaser claim

for price fixing "in light of this split among federal authorities, and the lack of any cases from

Arkansas state or federal courts recognizing a price-fixing claim under the ADTPA."); *In re Static

Random Access Memory Antitrust Litig. (SRAM)*, Case No. 07-md-0819 CW, 2010 U.S. Dist.

LEXIS 131002, *51 (N.D. Cal. Dec. 8, 2010) ("The Court has found no Arkansas case law

indicating that the ADTPA reaches price-fixing conduct of the nature presented in this lawsuit.

Thus, the Court declines to extend the statute to permit indirect purchasers to sue manufacturers

for a conspiracy to fix prices); *In re Graphics Processing Units Antitrust Litig.*, Case No. 06-

07417 WHA, 527 F. Supp. 2d 1011, 1029-30 (N.D. Cal. 2007); *see also In re Graphics

Processing Units Antitrust Litig.*, Case No. 06-07417 WHA, 540 F. Supp. 2d 1085, 1101 (N.D.

Cal. 2007) (dismissing claim under ADTPA where there were no allegations other than the price

fixing allegations).

       In light of the split in federal authority and the absence of authority from Arkansas, I

conclude – as Judges Illston, Wilken, and Alsup have – that the ADTPA does not extend to the

monopoly and price inflation claims at issue here.  GEHA's allegations regarding Teikoku's

conduct at the PTO does not change this conclusion; GEHA has not cited any authority from

Arkansas that would extend the reach of the consumer protection statute to allegedly fraudulent

conduct that occurred *exclusively* before the PTO and was not directed to consumers.  GEHA's

consumer protection claims under Arkansas law are DISMISSED WITH PREJUDICE.

### b.  Idaho

       Defendants move to dismiss GEHA's claims under the Idaho Consumer Protection Act,

Idaho Code § 48-601, arguing that the antitrust conduct alleged does not fall within any of the

categories of conduct specifically prohibited by the ICPA.  Idaho Code § 48-603.  GEHA responds

that under Section 48-601(17) – prohibiting "any act or practice which is otherwise misleading,

false, or deceptive to the consumer" – the allegations regarding Teikoku's fraud in securing the

patent and defendants' overall scheme to charge inflated prices are covered.

United States District Court
Northern District of California

1    Defendants point out that in *State ex rel. Wasden v. Daicel Chem. Indus., Ltd.*, 141 Idaho

2    102, 107-08, 106 P.3d 428, 433-34 (2005), the Idaho Supreme Court concluded that "there is

3    nothing in the wording of Idaho Code § 48-603 indicating that the list of conduct is merely

4    illustrative.  Price-fixing is not listed in § 48-603 as conduct that constitutes either an unfair

5    method of competition or an unfair or deceptive act or practice."  The court also specifically

6    rejected the argument that the price-fixing conduct at issue (price fixing by sorbate manufacturers)

7    could be covered by 48-603(18), which prohibits "unconscionable method, act or practice in the

8    conduct of trade or commerce, as provided in section 48-603C" because the antitrust conduct was

9    not directed to consumers.  Following *Wasden*, Judge Hamilton in *In re Static Random Access*

10   *Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 907 (N.D. Cal. 2008), dismissed indirect

11   purchaser claims under the Idaho statute because the Idaho Supreme Court "expressly held that

12   indirect purchasers may not bring suit under the Idaho Consumer Protection Act."

13   Neither the *Wasden* Court nor Judge Hamilton considered whether antitrust conduct could

14   be pursued under Section 48-603(17), as asserted by GEHA here.  Like section 48-603C,

15   examined by the Idaho Supreme Court in *Wasden*, Section 48-603(17) prohibits practices which

16   are "misleading, false, or deceptive *to* the consumer."  (emphasis added).  Defendants argue that

17   none of the conduct alleged--neither Teikoku's alleged fraudulent conduct before the PTO nor the

18   agreement to settle the patent litigation in exchange for payments of product and a period of

19   generic exclusivity to Watson--was "misleading, false, or deceptive" to consumers.

20   Two conflicting cases have addressed this question.  GEHA relies on *In re DDAVP*

21   *Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 225 (S.D.N.Y. 2012), where the court

22   construed the ICPA liberally and because defendants had "not cited case law in which a court has

23   dismissed consumers' claims under the ICPA if they suffered monetary loss as a result of a

24   defendant's deceptive acts toward a third party," allowed the ICPA claim to proceed under section

25   48-603(17) based on plaintiffs' allegations that defendants committed fraud at the PTO and filed a

26   baseless citizen petition with the FDA.  *Id*. at 214, 225.  The defendants point to *Sheet Metal*

27   *Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380 (E.D.

28   Pa. 2010), where the court held that conduct in violation of section 48-603(17) must be directed to

consumers.  The allegations in that case –defendants committed fraud at PTO and filed sham

litigation against generic drug manufacturers in an attempt to preserve defendants' monopoly

power – were not directed to consumers, but were directed to the PTO and genetic drug

manufacturers.  *Id*. at 411.

Sheet Metal Workers is more persuasive.  Contrary to the *DDVAP* court's attempt to

distinguish *Sheet Metal Workers*, the same subsection of 48-603(17) was at issue and discussed in

both cases.  I agree with the *Sheet Metal Workers* court that to be actionable, the conduct at issue

must be directed to consumers.  None of the conduct alleged here satisfies that requirement.

GEHA's claims under the Idaho statute are DISMISSED WITH PREJUDICE.

### c. Maine

Under Maine's Unfair Trade Practices Act, "[u]nfair methods of competition and unfair or

deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."  5

M.R.S. § 207.  The Maine Supreme Court has held "[i]n pricing cases under the Act the inquiry is

whether the price has the effect of deceiving the consumer, or inducing her to purchase something

that she would not otherwise purchase."  *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792,

797 (Me. 1998).  Courts in this District have relied on *Tungate* to dismiss antitrust-based

consumer protection claims where higher prices alleged could not have deceived or induced

consumers into buying a product.  *See, e.g., In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109,

1126 (N.D. Cal. 2008) ("the complaint does not allege that the prices of LCD products had the

effect of deceiving plaintiffs or inducing them to purchase something they would not otherwise

purchase."); *In re Graphics Processing Units Antitrust Litig.*, Case No. 06-07417 WHA, 527 F.

Supp. 2d 1011, 1031 (N.D. Cal. 2007) ("Here, the higher prices plaintiffs allegedly paid for GPUs

because of the price-fixing conspiracy could not have induced plaintiffs to purchase them. Arguing

that higher prices induced consumers to make purchases simply does not make sense.").

At oral argument, GEHA attempted to get around *Tungate* by arguing that in addition to

inflated prices, the allegations here also include the intentional delay of competing generic

products.  But GEHA admits in its SAC that the result of the agreement to delay the Endo

defendants' generic was inflated prices.  GEHA SAC ¶ 17.

United States District Court
Northern District of California

1    GEHA also  relies on its allegations that defendants' deceptive conduct with respect to the

2    PTO is sufficient "deception" to allow this claim to go forward.  GEHA Oppo. at 10-11, n.20.

3    However, GEHA presents no case law discussing what constitutes "deceptive" conduct under the

4    Maine statute to support its augment that deceptive conduct before the PTO – which allegedly

5    resulted in the issuance of the '529 Patent – suffices.[11]    In absence of any persuasive authority

6    that Maine would recognize the fraud committed by Teikoku at the PTO as a ground for

7    "deception" under its consumer protection statute, the claim under Maine's UTPA is DISMISSED

8    WITH PREJUDICE.

9        **d.  Michigan**

10    The Michigan Consumer Protection Act (MICPA) prohibits specifically identified

11    "[u]nfair, unconscionable, or deceptive methods, acts or practices." Mich. Comp. Laws §

12    445.903(1).  Defendants cite *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F.

13    Supp. 2d 160, 176 (D. Me. 2004), which rejected the argument that defendants' failure to inform

14    consumers of the antitrust conspiracy (to keep out Canadian cars, resulting in inflated new car

15    prices in the United States) was actionable "deception" under MICPA.  *Id*. at 189.

16    GEHA relies on *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust*

17    *Litig.*, 2014 U.S. Dist. LEXIS 167204, *80 (E.D. Pa. Dec. 3, 2014).  However, in *In re Suboxone*,

18    the court refused to dismiss the end payor's claim under MICPA because the complaint adequately

19    alleged fraudulent and deceptive conduct; namely that (i) defendant fabricated a safety issue

20    regarding its drug for the purpose of impairing generic competition and eliciting monopoly

21    proceeds from consumers, (ii) broadcast the false safety issue to the FDA, doctors, industry

22

23    ─────────────

24    [11] In support of its general argument that allegations of fraud before the PTO is sufficient to be
     actionable deception and fraud under state's consumer protection laws, GEHA relies on three

25    cases:  *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2014 U.S.
     Dist. LEXIS 167204, 1 (E.D. Pa. Dec. 3, 2014); *In re DDAVP Indirect Purchaser Antitrust Litig.*

26    *v. Ferring Pharms. Inc.*, 903 F. Supp. 2d 198, 224 (S.D.N.Y. 2012); *Abbott Labs. v. Teva Pharms.*
     *USA, Inc.*, 432 F. Supp. 2d 408, 433 (D. Del. 2006).  In each of these three cases, the courts found

27    that allegations that defendants committed fraud on the PTO, filed sham patent litigation and/or
     filed sham Citizen Petitions with the FDA were sufficient to remove the cases from the scope of
     preemption under the patent laws and *Noerr-Pennington* immunity for petitioning the government.

28    However, none of those cases addressed Maine's UPTA and GEHA does not argue why the
     language of Maine's UPTA would be specifically covered by the rationale in any of these cases.

United States District Court
Northern District of California

United States District Court
Northern District of California

participants, and the public, and (iii) made misrepresentations in a Citizen Petition to the FDA.  *Id.* at *77-78.  Here, the only falsity relied on by GEHA is defendants' conduct in prosecuting of the '529 Patent.  There is not the sort of wide-spread dissemination of false information to the *public* that was alleged in *In re Suboxone*.

I conclude that the deceptive conduct alleged is more similar to the omissions at issue in *New Motor Vehicles* as opposed to the broad dissemination of false safety concerns at issue in *In re Suboxone*.  GEHA's claims under Michigan's statute are DISMISSED WITH PREJUDICE.

### e.  Minnesota

Minnesota's Uniform Deceptive Trade Practices Act (MUDTPA) prohibits acts involving "deceptive trade practice[s]."  Minn. Stat. § 325D.44.  GEHA argues that its allegations satisfy subsection (13), which makes actionable conduct that "similarly creates a likelihood of confusion or of misunderstanding."  Minn. Stat. § 325D.44(13).  The only case relied on by GEHA is *State by Humphrey v. Philip Morris, Inc.*, 551 N.W.2d 490, 497 (Minn. 1996).  However, that case is inapposite because it addressed a different question (standing) and rested on far different allegations regarding deception.[12]

Looking more broadly at the types of actionable conduct under MUDTPA – prohibiting sellers from passing off good, causing likelihood of confusion as to product qualities/origin, false representations about goods – it appears that each of the prohibited acts focuses on affirmative representations made by the sellers to consumers.  Minn. Stat. § 325D.44(1) – (13).  In absence of any authority directly on point, I find that the conduct alleged by GEHA – antitrust conduct and fraud before the PTO – are not acts which create a "likelihood of confusion" or "misunderstanding" on the part of consumers under MUDTPA.

GEHA also relies on Minnesota's Prevention of Consumer Fraud Act (MPCFA).  *See*

---

[12]  In *State by Humphrey*, the Minnesota Supreme Court addressed only Blue Cross's standing to sue for consumer protection and antitrust claims against tobacco companies on the theory that Blue Cross paid inflated costs due to the tobacco companies' conduct.  *Id.* at 495-97.  The allegations of deceptive conduct by the tobacco companies included that the tobacco companies illegally conspired to suppress research on the deleterious effects of smoking, manipulated nicotine levels in cigarettes, undertook a duty but failed to protect the public health by its assertions that it would cooperate with public health authorities, and utilized false advertising.  *Id.* at 492, 495.  Those are starkly different allegations than the "deception" alleged in this case.

GEHA SAC ¶ 243.  Defendants did not mention MPCFA in their motion to dismiss, but in reply argue that they inadvertently omitted a citation to MPCFA and that for the same reasons that the MUDPTA claim must be dismissed, so must the MPCFA claim.  Reply at 11, n. 15.  The MPCFA prohibits "fraud, misrepresentation, deceptive practices" "with the intent that others rely thereon in connection with the sale of any merchandise."  Minn. Stat. § 325F.69.  I find that in absence of any authority interpreting the breadth of MPCFA, the alleged fraudulent and deceptive conduct at issue – which occurred only in negotiations between defendants and before the PTO – is not the type of fraud, misrepresentation or deceptive practices covered by MPCFA.  GEHA's claim is DISMISSED WITH PREJUDICE.

### f.  Oregon

Oregon's Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, prohibits "any unconscionable tactic in connection with selling, renting or disposing of real estate, goods or services, or collecting or enforcing an obligation."  Or. Rev. Stat. § 646.607.  "Unconscionable" tactics "include, but are not limited to, actions by which a person" "(a) [k]nowingly takes advantage of a customer's physical infirmity, ignorance, illiteracy or inability to understand the language of the agreement; (b) [k]nowingly permits a customer to enter into a transaction from which the customer will derive no material benefit; (c) [p]ermits a customer to enter into a transaction with knowledge that there is no reasonable probability of payment of the attendant financial obligation in full by the customer when due."  Or. Rev. Stat. Ann. § 646.605(9).

Defendants argue that because the conduct alleged – conspiracy to maintain prices/profits and fraud on the PTO – are not the sorts of acts covered by the definition of "unconscionable" in the statute, GEHA cannot state a claim under OUTPA.  GEHA responds that the types of unconscionable acts listed in the statute are examples but not an exclusive list.

In *In re Dynamic Random Access Memory (Dram) Antitrust Litig*., Case No. 02–1486 PJH, 516 F. Supp. 2d 1072, 1115 (N.D. Cal. 2007), the court did not address the "unconscionability" subsection of the statute, but instead the catchall provision which prohibits "other unfair or deceptive conduct in trade or commerce."  Or. Rev. Stat. § 646.608(u).  The court concluded that the horizontal price fixing allegations did not state a claim under OUTPA because none "of the

allegations of plaintiffs' complaint specifically allege false and misleading representations made by defendants to plaintiffs, or set forth conduct that caused plaintiffs confusion or misunderstanding, as is intended by OUTPA."  *Id*. at 1115.

While a different subsection of the statute is being asserted by GEHA in this case, Judge Hamilton's approach makes sense.  GEHA has failed to cite to any authority applying the "unconscionable" tactics provision and the conduct alleged here is not sufficiently similar to the examples provided in the statute of actionable unconscionable acts.  In absence of authority from Oregon, I will not extend the statute to cover the allegations of GEHA asserted here.  GEHA's claim is DISMISSED WITH PREJDUICE.

### g.   Pennsylvania

The Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) prohibits specific unfair methods of competition and unfair or deceptive trade practices, including "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  73 Penn. Stat. § 201-2(4)(xxi).  GEHA argues that its allegations are actionable under the catchall provision, and for support relies on *Grimes v. Enter. Leasing Co. of Phila., LLC*, 66 A.3d 330, 332 (Pa. Superior Ct. 2013), *reversed on other grounds by* 105 A.3d 1188, 1190 (Pa. 2014).

In *Grimes*, the allegations were not simply that defendants charged a consumer "inflated prices," but that defendants made intentionally inflated the cost of the damage to a rental car, failed to explain justification for the inflated charges, and improperly sought to collect those charges.  *Id*. at 336-37.   There are no similar facts alleged here to demonstrate that defendants' conduct created a "likelihood of confusion or of misunderstanding" on behalf of purchasers of Lidoderm patches.  *See also In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 200 (D. Me. 2004) (finding the language of the UPTCPL catchall section "requires fraud or deception" and allegations of conspiracy to prevent less expensive Canadian vehicles from entering the American market insufficient to state a claim).  Accordingly, in the absence of authority from Pennsylvania to extend the statute to cover GEHA's allegations here, its claim is DISMISSED WITH PREJUDICE.

United States District Court
Northern District of California

### h.  South Dakota

Under South Dakota's Deceptive Trade Practices and Consumer Protection statute, it is a deceptive practice to "[k]nowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise."  S.D. Codified Laws § 37-24-6(1).  In *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160 (D. Me. 2004), the court determined that the SDDTPA required proof of an affirmative misrepresentation, and the allegations in that complaint – that consumers suffered injury because defendants conspired to keep Canadian cars out of the market – were insufficient to state a claim of fraud or deception under the statute.  *Id*. at 202-03.

This analysis is consistent with *Nw. Pub. Serv., a Div. of Nw. Corp. v. Union Carbide Corp.*, 236 F. Supp. 2d 966 (D.S.D. 2002),which held that "proof of an intentional misrepresentation or concealment of a fact on which plaintiff relied and that caused an injury to plaintiff" is required to state a claim under § 37-24-6.  *Id*. at 973-74.  Here, there are no allegations that defendants made affirmative misrepresentations that were passed along to the purchasers of Lidoderm.

GEHA relies on *In re DDAVP Indirect Purchaser Antitrust Litig. v. Ferring Pharms. Inc*., 903 F. Supp. 2d 198 (S.D.N.Y. 2012).  There, the court concluded that because defendants "made misrepresentations to the PTO and FDA, which in turn allowed Defendants to manufacture and market DDAVP to consumers on the premise that the patent underlying DDVAP was legally obtained, Plaintiffs were 'adversely affected' by the fraud committed by Defendants within the meaning of the SDDTPA when they relied on such representations and paid supra-competitive prices for the drug."  *Id*. at 229 (misrepresentations to the PTO included submitting declarations from purported non-interested parties who were in fact interested/aligned with defendants' interests and FDA citizen petition was alleged to be baseless).  However, the only South Dakota case the *DDAVP* court relied on is *Brookings Mun. Utils., Inc. v. Amoco Chem. Co*., 103 F. Supp. 2d 1169 (D.S.D. 2000), which is distinguishable.  The *Brookings* court held that where *affirmative* misrepresentations were made by defendant and passed along to the consumers by a third-party,

18

those misrepresentations were nonetheless actionable.  *See id.* at 1178 ("Defendants cannot escape liability to plaintiffs for their alleged misrepresentations simply because they did not make any statements directly to plaintiffs.  Defendants may be liable to plaintiffs, even if plaintiffs only received misrepresentations through" a third party.").  Here, there are no similar allegations that affirmative misrepresentations or concealment of a fact were passed along to or relied upon by GEHA.

Following the more in-depth analysis of the *New Motor Vehicles* and *Brookings* cases, GEHA's claims under South Dakota law are DISMISSED WITH PREJUDICE.

### i.   West Virginia

West Virginia's Consumer Credit and Protection Act prohibits "unfair methods of competition and unfair or deceptive acts or practices" and defines trade or commerce as "advertising, offering for sale, sale or distribution of any goods or services and shall include any trade or commerce, directly or indirectly, affecting the people of this state."  W. Va. Code § 46A-6-102.  One judge in this District has found that general antitrust allegations are insufficient to establish a violation of WCCCPA.  *In re Dynamic Random Access Memory Antitrust Litig.*, Case No. 02-1486 PJH, 516 F. Supp. 2d 1072, 1118 (N.D. Cal. 2007) ("reading the list literally, nothing on the list targets what might be called traditional antitrust conduct - e.g., price-fixing and market allocation such as that alleged by plaintiffs here, or conduct otherwise constituting a horizontal or vertical restraint on trade or commerce.  Rather, the list is aimed at conduct that, in one way or another, 'creates a likelihood of confusion or of misunderstanding' with respect to goods, services or businesses, or involves deceptive, false, or misleading statements and representations in connection with goods, services and businesses.").  The court also concluded that "[w]hile the WVCCP expressly states that the list of enumerated acts and practices is not meant to be exclusive, it is nonetheless clear that the statute is aimed at conduct different from the allegations of price-fixing asserted by plaintiffs here."  *Id.* at 1072.

The *DRAM* Court also expressly distinguished the one case relied on by GEHA here, *FTC v. Mylan Lab., Inc.*, 99 F. Supp. 2d 1 (D.D.C. 1999).  In *Mylan*, the court allowed direct and indirect purchaser claims for antitrust conduct to continue under WVCCP.  *Id.* at 10.  The *DRAM*

United States District Court
Northern District of California

1   court declined to follow *Mylan* because that decision did "not contain any detailed rationale for

2   finding indirect purchaser standing under the statute, or how price-fixing allegations fall within the

3   purview of the statute." *Id*. at 1119.

4       In absence of any West Virginia cases defining unfair methods of competition and unfair

5   or deceptive acts or practices to include the types of antitrust allegations and fraud on the PTO

6   allegations asserted here, I will follow Judge Hamilton's analysis in *DRAM*.  GEHA's claim under

7   West Virginia law is DISMISSED WITH PREJUDICE.

8       **6.  Intrastate Commerce**

9       Defendants contend that for two states, GEHA has failed to allege sufficient intrastate

10   commerce to state actionable consumer protection claims.  I disagree.

11       **a.  New York**

12       Defendants argue that New York's consumer protection statute, N.Y. Gen. Bus. Law §

13   349, applies only to commercial conduct occurring within New York and for it to apply, "the

14   transaction in which the consumer is deceived must occur in New York."  *Goshen v. Mut. Life Ins.*

15   *Co.*, 98 N.Y.2d 314, 324 (2002).  Defendants argue that because GEHA's SAC does not allege

16   any conduct took place in New York, this claim must be dismissed.

17       The court in *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline,*

18   *PLC*, 263 F.R.D. 205 (E.D. Pa. 2009) dismissed plaintiffs' claim under New York consumer

19   protection statute because plaintiffs' allegations of fraud on patent examiners and filling of sham

20   litigation was not deception that took place in New York.  *Id*. at 214.  However, in  *In re*

21   *Suboxone*, 2014 U.S. Dist. LEXIS 167204 (E.D. Pa. Dec. 3, 2014), the court concluded that

22   allegations that overcharges for drugs occurred in New York, were sufficient to establish an

23   intrastate nexus.  *Id*. at *83; *see also In re DDAVP Indirect Purchaser Antitrust Litig. v. Ferring*

24   *Pharms. Inc*., 903 F. Supp. 2d 198, 228 (S.D.N.Y. 2012) (finding that defendants' fraudulent

25   conduct before the PTO and FDA in effort to maintain drug prices "was plausibly 'imbued with a

26   degree of subterfuge,'  . . . . and the fraud was plausibly designed to prevent competitors' entry

27   into the market, thereby allowing Defendants to overcharge consumers for DDAVP, Plaintiffs

28   have stated a claim under Section 349.").

20

Here, GEHA alleges that it paid retail and mail order pharmacies in New York $21,464.46 for Lidoderm.  GEHA SAC ¶ 23.  That is sufficient to state an intrastate nexus under New York's statute.

### b.  North Carolina

Defendants move to dismiss GEHA's claim under North Carolina's Unfair and Deceptive Trade Practices Act (NCUDTPA) because only conduct that has a "substantial effect on in-state business" is actionable, and the allegations here amount only to incidental, not substantial, effect.

The "substantial effects" test was first applied under the NCUDPTA by a district court in North Carolina considering whether a foreign corporation who had no operations and suffered no injury in North Carolina could bring an unfair practices claim under NCUDPTA consistent with jurisdictional and commerce clause concerns.  *See The 'In' Porters, S.A. v. Hanes Printables, Inc*., 663 F. Supp. 494, 501 (M.D.N.C. 1987) (finding that the UDPTA is not available "to a foreign plaintiff suing a resident defendant over alleged foreign injuries having a negligible effect, if any, on North Carolina trade or commerce.").  That case found that NCUDPTA "allows personal jurisdiction over defendants in a case involving foreign acts if an injury to person or property occurs within North Carolina and, at or about the time of the injury, the defendants were either working in North Carolina or had products in the North Carolina commerce through the ordinary course of business." *Id*. at 501.  The court also held that in order not to unduly burden interstate commerce, courts should not allow the Act to have extra-territorial effect and be used by a foreign plaintiff with no operations in the state because to do so would raise due process concerns.  *Id*. at 502.[13]

As GEHA points out, the NCUDPTA itself does not contain or mandate a "substantial effects" analysis.  The case law relied on by defendants is inapposite.  Like *The 'In' Porters, S.A. v.*

---

[13] The *The 'In' Porters, S.A. v. Hanes Printables, Inc*., 663 F. Supp. 494, 501 (M.D.N.C. 1987) court relied extensively on *Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp*., 640 F. Supp. 1411, 1428 (E.D.N.C. 1986) for imposing a "substantial" injury requirement to determine whether the NCUDTPA could be asserted by the foreign plaintiff.  The *Am. Rockwool* case determined whether North Carolina law could be applied by a plaintiff to seek recovery for "multi-state conduct" and not just acts occurring in North Carolina.  *Id*. at 1428.  None of those issues are involved in *this* case, where GEHA seeks to apply North Carolina law only to remedy injuries suffered in North Carolina.

United States District Court
Northern District of California

*Hanes Printables, Inc*., a number of the cases on which they rely did not address claims of in-state injury by plaintiffs.[14]  Defendants cite another case where the district court relied on *The 'In' Porters* reasoning to dismiss indirect purchaser claims where there were no allegations of "substantial wrongful conduct" in North Carolina.[15]  I decline to follow that case because it did not recognize the specific type of cases that call for application of the "substantial effects" requirement, *e.g.,* a foreign plaintiff with no in-state injury or attempted extra-territorial application of NCUDTPA.

Here, GEHA has alleged in-state injury and that defendants' products were being sold in North Carolina.  GEHA SAC ¶ 23.  That is sufficient at this juncture to state a claim under the NCUDTPA.

## B.  Unjust Enrichment Claims[16]

### 1.  Unjust Enrichment Claims for States that Have Not Passed *Illinois Brick* Repealers

In my November 17, 2014 Order, I reviewed the split in authority among district courts concerning whether the EPPs could assert unjust enrichment claims for states which had not passed an *Illinois Brick* repealer statute and followed the majority of courts that found they could not.  Dkt. 117 at 46-48.  GEHA asks me to reconsider that decision, arguing that it ignores the lack of Sherman Act preemptive force over state antitrust law as well as the interplay between state common law and statutory law.  GEHA Oppo. at 14-15.

---

[14] *See, e.g., Duke Energy Int'l, L.L.C. v. Napoli*, 748 F. Supp. 2d 656, 677 (S.D. Tex. 2010) (dismissing NCUDTPA where plaintiff failed to explain how it "experienced harm in North Carolina as a result of the alleged wrongful conduct" and failed to allege any harm to North Carolina consumers); *In re Parmalat*, 383 F. Supp. 2d 587, 603 (S.D.N.Y. 2005)(dismissing claim where plaintiff failed to allege any in-state injury); *Merck & Co. Inc. v. Lyon*, 941 F. Supp. 1443, 1463 (M.D.N.C. 1996) (dismissing claim where foreign plaintiffs failed to allege in-state injury); *Dixie Yarns, Inc. v. Plantation Knits, Inc*., No. 3:93CV301-P, 1994 WL 910955, at *2 (W.D.N.C. July 12, 1994) (declining to apply NCUDTPA where unclear whether plaintiff suffered injury in North Carolina and defendants did not manufacture or sell their product in North Carolina).

[15] *See In re Refrigerant Compressors Antitrust Litig*., No. 2:09-MD-02042, 2013 WL 1431756, at *19 (E.D. Mich. Apr. 9, 2013) (where "alleged conspiracy caused manufacturers to pay inflated prices for compressors and, any retail customers who ultimately purchased finished products containing compressors paid an inflated price for those products," such effect is merely "an incidental in-state injury" absent allegations that defendants "engaged in any wrongful conduct in North Carolina.").

[16] GEHA voluntarily withdraws its unjust enrichment claims under Idaho and New Jersey common law.  GEHA Oppo. at 2, fn. 3.

United States District Court
Northern District of California

GEHA does not rely on any authority that I did not address in my prior opinion or address the district court decisions I relied on.  It cannot make an "end run" around *Illinois Brick* by relying on its unjust enrichment claim for states that have not enacted an *Illinois Brick* repealer statute absent authority from the courts of those states that would allow unjust enrichment claims to proceed.  Therefore, GEHA's unjust enrichment claims under the laws of Alaska, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Kentucky, Louisiana, Maryland, Massachusetts, Montana, New Jersey, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Texas, Virginia, Washington, and Wyoming are DISMISSED WITH PREJUDICE.

### 2.  Autonomous Unjust Enrichment Claims

Relatedly, defendants argue that GEHA's "autonomous" unjust enrichment claims must be dismissed where the recovery is prohibited by *Illinois Brick* or under the particular requirements of a state's consumer protection statute.  *See, e.g., In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 542 (E.D. Pa. 2010) (discussing distinction between autonomous and parasitic unjust enrichment claims and concluding that allowing autonomous unjust enrichment claims where plaintiffs were unable to state antitrust or consumer protection claims "would undermine state legislative policies and an entire body of substantive law."); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 208 n.13 (D. Me. 2004) (same).[17]

I agree that to the extent GEHA has been unable to assert a claim under a state's antitrust or consumer protection statute, GEHA cannot assert an unjust enrichment claim unless it has support for that proposition from authority in that state.  Without such support, I will not allow an autonomous claim for restitution to proceed.[18]

### 3.  Autonomous Unjust Enrichment Claims in States with Repealer Statutes

Defendants make a number of additional arguments why GEHA's remaining unjust

---

[17] Defendants also argue that to the extent GEHA's claims are "parasitic" unjust enrichment claims – claims which rely on a violation of a state's antitrust or consumer protection statutes – then those claims must fail where GEHA has failed to adequately plead a claim under either the antitrust or consumer protection statutes of those states.  In its opposition brief, GEHA clarifies that the unjust enrichment claims it intends to pursue are "autonomous" claims that are not tethered to its allegations of antitrust or consumer protection violations.  GEHA Oppo. at 15-16.
[18] The unjust enrichment claims DISMISSED WITH PREJUDICE on this basis are Alabama and Arkansas.

23

United States District Court
Northern District of California

1    enrichment claims fail under specific state laws.  I address each in turn.

2            **a.  Arizona**

3            Defendants assert that Arizona requires that a "direct benefit" pass from a plaintiff to the

4    defendant to state an unjust enrichment claim under Arizona law.  Defendants rely *on In re*

5    *Refrigerant Compressors Antitrust Litig.* (*Compressors II*), No. 2:09-MD-02042, 2013 WL

6    1431756, at *26 (E.D. Mich. Apr. 9, 2013), which dismissed unjust enrichment claims under

7    Arizona and other jurisdictions' laws because "[a]ny benefit that the IP Plaintiffs conferred would

8    be on others in the chain of distribution from whom they purchased, not on Defendants."  *Id.* at

9    *26.  However, the *Compressors II* court did not cite or rely on *any* cases from Arizona or any

10   cases applying Arizona's unjust enrichment statute in reaching its conclusion.

11           GEHA relies on *In re Auto. Parts Antitrust Litig.*, 2014 U.S. Dist. LEXIS 136404, 232

12   (E.D. Mich. Sept. 25, 2014), which denied a motion to dismiss an unjust enrichment claim under

13   Arizona law, finding that the " critical inquiry" was not whether a benefit was conferred directly,

14   but whether plaintiff "'can establish the relationship between his detriment and the defendant's

15   benefit "flow from the challenged conduct."'" *Id.* at *232 (quoting *In re Cardizem CD Antitrust*

16   *Litig.*, 105 F. Supp. 2d 618, 669 (E.D. Mich. 2000)).[19]  Similarly, in *D.R. Ward Constr. Co. v.*

17   *Rohm & Haas Co.*, 470 F. Supp. 2d 485 (E.D. Pa. 2006), the court declined to dismiss an unjust

18   enrichment claim under Arizona law where plaintiffs alleged that defendants were enriched by

19   colluding to inflate prices, plaintiffs were impoverished by paying the inflated price, and that

20   plaintiffs' overpayment flowed up the distribution chain to inure to defendants' financial benefit.

21   *Id.* at 507-08.  The court reached its conclusion after reviewing Arizona unjust enrichment cases.

22   *Id.* at 507, n.10.

23           I will follow *In re Auto Parts* and *D.R. Ward*, which relied on cases decided by Arizona

24   courts.  GEHA has adequately alleged a traceable benefit to defendants from their co-payments for

25

26   [19] The *In re Auto Parts* court also relied on a district court case from Arizona, *Yee v. Nat'l Gypsum
     Co.*, 2010 U.S. Dist. LEXIS 61488 (D. Ariz. June 22, 2010), which dismissed an unjust
27   enrichment claim absent an allegation that plaintiff conferred some benefit on defendant – the
     manufacturer of a product plaintiff indirectly purchased.  *Id.* at * 12.  However, there was no
28   discussion of a need for that benefit to have been conferred "directly" to the defendant from
     plaintiff.

1    Lidoderm patches.

2              **b.  California**

3              In my November 17, 2014 Order, I dismissed the EPPs' unjust enrichment claim under

4    California law finding that the weight of authority in California state and federal court decisions is

5    that unjust enrichment does not state an independent claim under California law.  Dkt. No. 117 at

6    50.  GEHA argues that in light of the split on this issue, the court should reconsider and allow its

7    claim to go forward.  Oppo. at 23-24.  In absence of any newly decided authority on the issue, I

8    will not reconsider.  GEHA's stand-alone claim for unjust enrichment under California law is

9    DISMISSED WITH PREJUDICE.

10             **c.  District of Columbia**

11             Defendants contend that GEHA fails to allege a sufficient direct benefit under District of

12   Columbia law, but their authorities are not helpful.  Defendants rely on *Minebea Co. v. Papst*, 444

13   F. Supp. 2d 68 (D.D.C. 2006), where the court dismissed the unjust enrichment claim because

14   plaintiff never "afforded any direct benefit" to the defendant.  *Id.* at 186.  However, no benefit was

15   conferred because there was no evidence plaintiff ever paid anything to the defendant with respect

16   to the patent portfolio at issue and the defendant actually paid substantial consideration for the

17   patents to a third-party.  *Id.*  Defendants also cite *Compressors II*, 2013 WL 1431756, at *26,

18   which dismissed an unjust enrichment claim under District of Columbia law without any analysis

19   or citation to any case decided under District of Columbia law.  In addition, defendants point to

20   *Sabre Int'l Sec. v. Torres Advanced Enter. Solutions, LLC*, 2014 WL 4162236, at *4 (D.D.C. Aug.

21   21, 2014).  The unjust enrichment claim there was dismissed as to individual defendants because

22   there were no factual allegations that connected the individual defendants' salaries or bonuses to

23   the monies plaintiff paid the individual defendants' company.  *Cf.  Danny Lynn Elec. & Plumbing,*

24   *LLC v. Veolia ES Solid Waste Se., Inc*., 2011 WL 2893629 (M.D. Ala. July 19, 2011).

25             GEHA relies on *In re TFT-LCD (Flat Panel) Antitrust Litig*., Case No. 07-1827 SI, 2011

26   U.S. Dist. LEXIS 110635, 49 (N.D. Cal. Sept. 28, 2011), which distinguished *Minebea Co*. and

27   allowed indirect purchasers to pursue their unjust enrichment claims under District of Columbia

28   law despite the lack of a "direct benefit" that defendants claim is required.  *Id*. at *48-49; *see also*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *In re Auto. Parts Antitrust Litig.*, 2014 U.S. Dist. LEXIS 136404, 235 ( E.D. Mich. Sept. 25, 2014)

2    (following *In re TFT-LCD* and allowing unjust enrichment claims under District of Columbia law

3    to proceed).  I find that in absence of cases arising under District of Columbia law that support

4    defendants' proposed narrow definition of direct benefit, the claims under District of Columbia

5    law can proceed.

6            **d.  Kansas**

7            Defendants contend that under Kansas law, the premise of an unjust enrichment claim is

8    that defendant received a benefit without providing consideration.  Because GEHA has not

9    asserted that it failed to receive the Lidoderm patches, defendants argue that GEHA cannot assert

10   this claim.  GEHA responds that a plaintiff's unjust enrichment claim is not vitiated where a

11   plaintiff received some consideration (here the Lidoderm patches) as long as the consideration was

12   not adequate, *e.g.*, the defendant was paid more than it should have been and was still unjustly

13   enriched.  *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 545 (D.N.J. 2004) (Plaintiffs' receipt

14   of valuable medicine for their payments does not, as Defendants contend, bar an unjust enrichment

15   claim."); *see also In re Auto. Parts Antitrust Litig.*, 2014 U.S. Dist. LEXIS 136404, 229 (E.D.

16   Mich. Sept. 25, 2014) ("the Court disagrees with Defendants that the exchange of Bearings for

17   payment bars IPPs' unjust enrichment claims. The issue is whether the transaction was unjust.").

18           The cases defendants rely on are inapposite, dealing mostly with the situation where a

19   property owner is sued by an unpaid subcontractor hired by a tenant.  In *Senne & Co. v. Simon*

20   *Capital Ltd. P'ship*, 155 P.3d 1220 (Kan. Ct. App. 2007) the court recognized the unremarkable

21   proposition that a "claim for unjust enrichment is that the defendant received a benefit without

22   having paid for it."   The court there dismissed the claim for unjust enrichment because the

23   defendant – the mall property owner – had not contracted for plaintiff's construction work (the

24   property lessor had) and had not benefitted from it or from the lessors' failure to pay plaintiff.  *Id*.

25   The court's analysis does not bar the type of unjust enrichment claim at issue here.  *See also*

26   *Tradesmen Int'l, Inc. v. U.S. Postal Serv.*, 234 F. Supp. 2d 1191, 1204 (D. Kan. 2002) (addressing

27   the "special circumstances" where "under which an unjust enrichment claim may be brought by a

28   subcontractor against an owner, absent privity," may proceed).

1    Absent any case law on point to support defendants' attempt to limit the unjust enrichment

2    claim under Kansas law, this claim may proceed.

3    **e.  New York**

4    As defendants point out, in *Fenerjian v. Nongshim Co*., Ltd, Case No. 13-CV-04115-

5    WHO, 2014 WL 5685562 (N.D. Cal. Nov. 4, 2014), I held that "the transactions and relationships

6    between the indirect purchaser plaintiffs and the defendants" – where plaintiffs indirectly

7    purchased allegedly price-fixed noodles – were "too attenuated to state an unjust enrichment claim

8    under New York law" after considering cases decided by New York's highest court.  *Id*. at *22-23.

9    GEHA does not provide any basis on which to distinguish my conclusion in *Fenerjian* based on

10   the facts alleged here.  Therefore, GEHA's unjust enrichment claim under New York law is

11   DISMISSED WITH PREJUDICE.

12   **f.  North Carolina**

13   There is a split in authority whether North Carolina requires the type of narrowly defined

14   direct benefit proposed by defendants (i.e., direct payment, not through a third-party) to state an

15   unjust enrichment claim.  Defendants rely on *In re Aftermarket Filters Antitrust Litig*., 2010 WL

16   1416259, at *3 (N.D. Ill. Apr. 1, 2010) and *In re Flonase Antitrust Litig*., 692 F. Supp. 2d 524,

17   546 (E.D. Pa. 2010), both of which adopted a narrow definition of "direct benefit" as requiring a

18   plaintiff to confer a benefit directly on a defendant, and not through a third-party.[20]

19   However, more recently the court in *In re Processed Egg Products Antitrust Litig*., 851 F.

20   Supp. 2d 867, 932 (E.D. Pa. 2012), rejected that argument.  In doing so, the court reviewed the

21   North Carolina appellate cases relied on by the *Aftermarket* and *Flonase* courts, found those cases

22   to be unpersuasive, and instead relied on North Carolina Supreme Court cases which had taken a

23   more expansive view of unjust enrichment claims under North Carolina law.  *In re Processed Egg*

24   *Products Antitrust Litig*., 851 F. Supp. 2d 867 at 931-32 (discussing *Booe v. Shadrick*, 322 N.C.

25   567, 369 S.E.2d 554 (1988) and *Embree Const. Group, Inc. v. Rafcor, Inc*., 330 N.C. 487, 411

26

27   ---
     [20]  The *Aftermarket* and *Flonase* cases relied on two North Carolina Court of Appeals decisions:
     *Effler v. Pyles*, 94 N.C. App. 349, 380 S.E.2d 149, 152 (N.C. Ct. App. 1989) and *Baker Constr.*

28   *Co., Inc. v. City of Burlington*, No. COA09-13, 683 S.E.2d 790, 2009 WL 3350747, at *6 (N.C.
     Ct. App., Oct. 20, 2009) (unpublished).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    S.E.2d 916 (1992), which did not require a benefit to flow from plaintiff directly to defendant).

2    This analysis is consistent with the decision of a court in this district.  In *In re TFT-LCD Antitrust*

3    *Litig.*, 599 F. Supp. 2d 1179 (N.D. Cal. 2009), the court likewise rejected the narrow definition

4    applied in *Effler* and accepted the broader application of unjust enrichment from the North

5    Carolina  Supreme Court in *Booe*.  *Id*. at 1190.  The court concluded that plaintiffs' allegations

6    that they conferred a benefit on defendants by paying higher prices for LCD products than they

7    would have absent the alleged price-fixing conspiracy, was sufficient under North Carolina law.

8    *Id*. at 1190.

9          I agree with the more expansive analysis applied by the courts in *In re TFT-LCD Antitrust*

10   *Litig.* and *In re Processed Egg Products Antitrust Litig.* – which rely on North Carolina Supreme

11   Court cases – and find that the allegations here are sufficient under North Carolina law.

12               **g.  North Dakota**

13         Defendants argue that a "direct benefit" from a plaintiff directly to a defendant is required

14   under North Dakota law.  A number of district courts have – relying on North Dakota case law[21] –

15   concluded that indirect purchaser allegations are insufficient to establish a "direct benefit" under

16   North Dakota law.  *See, e.g., In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d

17   198, 235 (S.D.N.Y. 2012) ("Plaintiffs have not and cannot plead a direct benefit of the kind that

18   North Dakota law requires—in other words, something akin to an arms-length transaction between

19   the Indirect Purchaser Plaintiffs and Defendants is required to state a claim."); *In re TFT-LCD*

20   *(Flat Panel) Antitrust Litig.*, Case No. M 07–1827 SI, 599 F. Supp. 2d 1179, 1191 (N.D. Cal.

21   2009) (finding that the "broader language of *Apache* suggests that a 'direct benefit' is required

22   under North Dakota law . . . .  Plaintiffs have not cited any authority holding that North Dakota

23   law does not require a direct benefit, and in the face of *Apache*."); *In re Relafen Antitrust Litig.*,

24   225 F.R.D. 14, 28 (D. Mass. 2004) ("Here, the benefits that SmithKline received were obtained

25   most directly from wholesalers, who, in turn, obtained benefits from end payors. Because [North

26   Dakota] precedent casts doubt on the end payors' unjust enrichment claims," were dismissed).

27

28   _____
[21] *See Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891, 895 (N.D. 1999).

United States District Court
Northern District of California

1   GEHA does not distinguish these district court cases or cite any more recent North Dakota

2   authority.  Accordingly, I will follow the courts that have addressed this issue directly and

3   DISMISS WITH PREJUDICE GEHA's unjust enrichment claim under North Dakota law.

4   **h.  Tennessee**

5   Similar to the argument raised with respect to Kansas law, defendants contend that under

6   Tennessee law as long as a defendant has provided any benefit (here the Lidoderm patches),

7   plaintiffs are precluded from bringing unjust enrichment claims, even if the amount paid was

8   inflated.  In support, defendants cite cases that stand for the general proposition that a claim for

9   unjust enrichment is not stated where defendant paid compensation to a third party (usually under

10  a contract), even though the plaintiff did not receive compensation.   *See, e.g., McKee v. Meltech,*

11  *Inc.*, No. 10-2730, 2011 WL 1770461, at *10 (W.D. Tenn. May 9, 2011) (where wife of plaintiff

12  under contract with, and compensated by defendant, plaintiff could not being unjust enrichment

13  claim because he was not directly compensated); W*eather Doctor Servs. Co. v. Stephens*, 2001

14  WL 849540, at *1 (Tenn. Ct. App. July 27, 2001) (where property owner defendant testified he

15  had paid contractor for materials, subcontractor could not allege an unjust enrichment claim

16  against property owner); *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 57 (1966) ("Consequently, if the

17  landowner has given any consideration to any person for the improvements, it would not be unjust

18  for him to retain the benefit without paying the furnisher.").

19  As I discussed with respect to Kansas, these cases are different from the situation alleged

20  here, where GEHA alleges that it paid inflated prices for the Lidoderm patches and that it would

21  be unjust for defendants to retain the excess.  *See In re Auto. Parts Antitrust Litig*., 2014 WL

22  4793850, at *19 (E.D. Mich. Sept. 25, 2014) (sustaining unjust enrichment claim under Tennessee

23  law where "allegations create an inference that the consideration was not reasonable, valuable, or

24  adequate."); *see also In re K-Dur Antitrust Litig*., 338 F. Supp. 2d 517, 545 (D.N.J. 2004)

25  ("Plaintiffs' receipt of valuable medicine for their payments does not, as Defendants contend, bar

26  an unjust enrichment claim.").  In absence of any on point authority under Tennessee law,

27  GEHA's unjust enrichment claim may proceed.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

Defendants' motion to dismiss is GRANTED in part and DENIED in part.

The EPPs' consumer protection claim under Utah law is DISMISSED without prejudice. The EPPs' consumer protection claim under Massachusetts law on behalf of plaintiff Gallato is DISMISSED WITH LEAVE TO AMEND.  Any amended complaint shall be filed within thirty days of this Order.

GEHA's antitrust claim under Rhode Island law is DISMISSED WITH PREJUDICE.

GEHA's consumer protection claims under Alaska, Arkansas, District of Columbia, and Idaho, Maine, Massachusetts, Michigan, Minnesota, Montana, New Hampshire, Oregon, Pennsylvania, South Dakota, West Virginia law are DISMISSED WITH PREJUDICE.

GEHA's unjust enrichment claims under Alabama, Alaska, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Kentucky, Louisiana, Maryland, Massachusetts, Montana, New Jersey, New York, North Dakota, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Texas, Virginia, Washington and Wyoming law are DISMISSED WITH PREJUDICE.

In all other respects, defendants' motion is DENIED.

**IT IS SO ORDERED**.

Dated: May 5, 2015



WILLIAM H. ORRICK
United States District Judge