DANIEL B. ASIMOW (SBN 165661)
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone:   415.471.3100
Facsimile:   415.471.3400
Email: daniel.asimow@aporter.com

JONATHAN L. STERN (admitted *pro hac vice*)
RYAN Z. WATTS (admitted *pro hac vice*)
ARNOLD & PORTER LLP
555 12th Street NW
Washington, D.C. 20004
Telephone:   202.942.5000
Facsimile:   202.942.5999
Email: jonathan.stern@aporter.com
Email: ryan.watts@aporter.com

Attorneys for Defendant
ENDO PHARMACEUTICALS INC.

[*Additional Counsel Listed on Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| This Document Relates to:<br>Individual Case No. 3:15-cv-1032-WHO<br><br>WALGREEN CO., THE KROGER CO., SAFEWAY INC., HEB GROCERY COMPANY L.P., and ALBERTSON'S LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ENDO PHARMACEUTICALS INC., TEIKOKU PHARMA USA, TEIKOKU SEIYAKU, CO. LTD, WATSON PHARMACEUTICALS, INC., ACTAVIS, INC., WATSON LABORATORIES, INC., ANDA, INC.,<br><br>Defendants. | **DEFENDANTS' NOTICE OF JOINT MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION TO DISMISS OR STAY AMENDED COMPLAINT OF WALGREEN CO. ET AL.**<br><br>Date:         July 8, 2015<br>Time:         2:00 p.m.<br>Courtroom:  Courtroom 2, 17th Floor<br>Before:        Hon. William H. Orrick |

- i -

# NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on July 8, 2015, at 2:00 p.m., or as soon thereafter as the matter may be heard by the Court, at the courtroom of the Honorable William H. Orrick, Courtroom 2, 17th Floor, United States District Court, 450 Golden Gate Avenue, San Francisco, California, Defendants Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., and Actavis, plc, (together, "Watson"); Anda, Inc., Anda Pharmaceuticals, Inc., and Valmed Pharmaceuticals, (together, "Anda"); Endo Pharmaceuticals Inc. ("Endo"); and Teikoku Pharma USA and Teikoku Seiyaku Co. (together, "Teikoku") will and hereby do move the Court, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing or staying the Amended Complaint brought by Plaintiffs Walgreen Co., The Kroger Co., Safeway Inc., Albertson's LLC, and HEB Grocery Company L.P. with prejudice.  This motion to dismiss or stay is brought on the grounds that the Plaintiffs have not sufficiently pleaded that they have antitrust standing, that they lack Article III standing with respect to their allegedly assigned claims, and that in any event claims based on a partial assignment should be dismissed or stayed pending class certification.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................1

BACKGROUND ..............................................................................................................................2

PLAINTIFFS AND CLAIMS...........................................................................................................2

ENDO'S WHOLESALER CONTRACTS .......................................................................................3

ARGUMENT ....................................................................................................................................3

I.   LEGAL STANDARDS........................................................................................................3

II.  PLAINTIFFS HAVE NOT ESTABLISHED STANDING BASED ON THEIR
     OWN PURCHASES OF LIDODERM DURING THE RELEVANT TIME PERIOD. .........5

III. PLAINTIFFS LACK STANDING BECAUSE EACH OF THE ALLEGED
     ASSIGNMENTS IS INVALID. ...........................................................................................6

     A.   The Wholesalers' Lidoderm Purchases Were Made Pursuant To Endo's
          Contracts With The Wholesalers. ..............................................................................6

     B.   Endo's Wholesaler Contracts Expressly Preclude The Alleged Wholesalers'
          Assignments To Plaintiffs Without Endo's Consent. ................................................8

     C.   To The Extent Plaintiffs Assert Claims Based On Assignments From
          Wholesalers, Their Claims Should Be Dismissed With Prejudice Because
          Amendment Would Be Futile. .................................................................................11

IV.  WALGREEN'S ALLEGED CONTRACTUAL RIGHT TO AN ASSIGNMENT
     FROM ABDC IS INSUFFICIENT TO CONFER STANDING. .......................................11

V.   EVEN IF PLAINTIFFS' ALLEGED ASSIGNMENTS ARE VALID, PLAINTIFFS
     ARE REQUIRED TO PURSUE SUCH CLAIMS AS PART OF THE DIRECT
     PURCHASER CLASS UNDER F.R.C.P. 19. ....................................................................12

CONCLUSION ...............................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................. 5

*Bailey Lumber & Supply Co. v. Georgia-Pacific Corp.*,
   No. 1:08CV1394, 2009 WL 2872307 (S.D. Miss. Aug. 10, 2009) ................................... 12, 13

*Barnes v. Windsor Sec. LLC*,
   No. 13-cv-1878-WHO, 2013 WL 4426244 (N.D. Cal. Aug. 15, 2013) .................................... 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................................. 4, 5

*Davidowitz v. Delta Dental Plan of California, Inc.*,
   946 F.2d 1476 (9th Cir. 1991) .................................................................................................. 9

*Del. Valley Surgical Supply Inc. v. Johnson & Johnson*,
   523 F.3d 1116 (9th Cir. 2008) .................................................................................................. 5

*Easter v. Am. W. Fin.*,
   381 F.3d 948 (9th Cir. 2004) .................................................................................................... 4

*Federation of African Amer. Contractors v. City of Oakland*,
   96 F.3d 1204 (9th Cir. 1996) .................................................................................................... 4

*Illinois Brick Company v. Illinois*,
   431 U.S. 720 (1977) ......................................................................................................... 1, 5, 6

*In re ATM Fee Antitrust Litig.*,
   686 F.3d 741 (9th Cir. 2012), *cert denied*, 134 S. Ct. 257 (2013) ............................................ 5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. 07-5944 SC, 2013 WL 567281 (N.D. Cal. Feb. 13, 2013) ............................................ 5, 6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. 1917, 2014 WL 1047207 (N.D. Cal. Mar. 13, 2014) ......................................................... 8

*In re Ditropan XL Antitrust Litig.*,
   No. M:06-CV-01761-JSW, 2007 WL 2978329 (N.D. Cal. Oct. 11, 2007) ...... 3, 4, 8, 9, 10, 11

*In re Fine Paper Litig.*,
   632 F.2d 1081 (3d Cir. 1980) ............................................................................................ 12, 13

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   42 F. Supp. 3d 231 (D. Mass. 2014) ....................................................................................... 13

*In re Refrigerant Compressors Antitrust Litig.*,
   795 F. Supp. 2d 647 (E.D. Mich. 2011) .................................................................................. 6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. C 10-3517 SI, 2011 WL 4345316 (N.D. Cal. Sept. 15, 2011) ........................................ 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. C 11-00711 SI, 2011 WL 3475408 (N.D. Cal. Aug. 9, 2011), *modified*, No. C 11-
   00711 SI, 2011 WL 5573930 (N.D. Cal., Nov. 16, 2011) ...................................................... 10

*JLM Indus. Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004) .................................................................................................... 8

*Kendall v. Visa U.S.A., Inc.*
   518 F.3d 1042 (9th Cir. 2008) ................................................................................................. 5

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,
   No. 13-cv-01180-BLF, 2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) .................................. 4

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................................ 4

*Lutheran Medical Ctr. v. Contractors, Laborers, Teamsters & Eng'rs Health &
   Welfare Plan*, 25 F.3d 616 (8th Cir.1994), *abrogated on other grounds,* 299
   F.3d 966 (2002) (en banc) ..................................................................................................... 10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ............................................................................................................. 78

*Nat'l Ass'n of Assoc. Publishers, Inc. v. Prince Publ'g, Inc.*,
   No. 6:96-CV-1063, 1997 WL 34588520 (M.D.N.C. May 8, 1997) ........................................ 8

*PNY Technologies, Inc. v. SanDisk Corp.*,
   No. 11-CV-04689-WHO, 2014 WL 1677521 (N.D. Cal. Apr. 25, 2014) ............................... 7

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ................................................................................................. 4

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ................................................................................................... 5

*Stewart Org., Inc. v. Ricoh Corp.,*
   810 F.2d 1066 (11th Cir. 1987), *aff'd and remanded*, 487 U.S. 22 (1988) ............................. 8

*Terenkian v. Republic of Iraq*,
   694 F.3d 1122, (9th Cir. 2012), *cert denied*, 134 S. Ct. 64 (2014) ..................................... 4, 7

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ................................................................................................... 7

*Warth v. Seldin*,
   422 U.S. 490 (1975) .......................................................................................................... 4

*Wilbur v. Locke*,
   423 F.3d 1101 (9th Cir.2005), *abrogated on other grounds*, 560 U.S. 413 (2010) ............ 4, 11

**STATUTES**

15 U.S.C. § 15(a) ........................................................................................................................ 5

**OTHER**

Fed. R. Civ. Proc.
   12(b)(1) ................................................................................................................................. 4, 7
   12(b)(6) ............................................................................................................................. 4, 6, 7
   19 .................................................................................................................................... 1, 12, 13

# INTRODUCTION

Nearly a year after the Judicial Panel on Multidistrict Litigation centralized the Lidoderm antitrust litigation before this Court, five grocery stores filed a separate case, purportedly as direct purchasers of Lidoderm and generic lidocaine 5% patch. In allegations virtually identical to those of the Direct Purchaser Plaintiffs, the grocery stores claim that Defendants' Settlement and License Agreement, which resolved patent litigation concerning Lidoderm (the "Lidoderm Settlement"), violated the federal antitrust statutes by allegedly delaying entry of generic lidocaine patch 5%. The grocery stores purport to bring damages claims for violations of Sections 1 and 2 of the Sherman Act (and not under state law). Yet nowhere do the grocery stores allege that they purchased Lidoderm or generic lidocaine patch 5% directly from any of the Defendants. Instead, in an effort to circumvent the Supreme Court's prohibition against indirect purchaser damages claims under the federal antitrust laws set forth in *Illinois Brick Company v. Illinois,* 431 U.S. 720, 728 (1977), the Plaintiffs allege that certain non-party wholesalers purchased Lidoderm directly from Defendants, and that they have obtained or will obtain partial assignments from the wholesalers in connection with those purchases. The actual or prospective assignments, however, are prohibited under the non-assignment provisions of the wholesalers' contracts with Endo, and therefore are invalid. Because the assignments are invalid, and because Plaintiffs' injuries derive entirely from the injuries allegedly sustained by the wholesalers, Plaintiffs lack standing.

In addition, it is highly problematic that the assignments are, at best, *partial* assignments. The wholesalers have not assigned their entire claims to the Plaintiffs, but rather some portion of their claims. This practice gives rise to the possibility that a single, unitary claim belonging to a particular wholesaler could be divided nearly infinitely and asserted in multiple, opt-out cases. Federal Rule of Civil Procedure 19 gives the Court the power to prevent this unjust and inefficient outcome and require the Plaintiffs to litigate their claims—even assuming a valid assignment—as part of the class and not as a stand-alone, opt-out case.

## BACKGROUND[1]

Lidoderm (lidocaine patch 5%) is one of several drugs approved by the FDA to relieve the pain of post-herpetic neuralgia. (Amended Complaint and Demand for Jury Trial ("Am. Compl.") ¶ 53.) Lidoderm was approved by the FDA in 1999 and has been sold in the United States by Endo since that time under a license agreement with Teikoku. *Id.* ¶¶ 54-55. The Lidoderm Settlement provided Watson with a license to make and sell generic Lidoderm beginning on September 15, 2013, more than two years earlier than expiration of the '529 Patent, which was the latest-expiring patent covering Lidoderm. *Id.* ¶¶ 58, 92. Despite the agreement allowing Watson to sell generic Lidoderm beginning on September 15, 2013, Watson could not begin selling its generic version of Lidoderm until the FDA approved its ANDA, which at the time of settlement had not occurred. In order to allow Watson to enter the market even earlier, the Lidoderm Settlement required Endo to provide Lidoderm product to Watson beginning on January 1, 2013. *Id.* ¶ 93. The Lidoderm Settlement thus permitted Watson's wholesaler affiliate, Anda, to compete with Endo in the sale of Lidoderm starting on January 1, 2013—almost three years earlier than if it had continued to litigate the '529 Patent and lost, and without the risk of damages stemming from the patent litigations.

## PLAINTIFFS AND CLAIMS

Plaintiffs are Walgreen Co. ("Walgreen"), The Kroger Co. ("Kroger"), Safeway Inc. ("Safeway"), Albertson's LLC ("Albertson's"), and HEB Grocery Company L.P. "(HEB"). *See* Am. Compl. ¶¶ 8-12. The Amended Complaint does not allege that Plaintiffs purchased Lidoderm directly from any of the Defendants. *See generally id.* Instead, Plaintiffs allege that certain non-party wholesalers purchased Lidoderm directly from Defendants, and that certain wholesalers have assigned claims to Plaintiffs. *See, e.g.*, *id.* ¶¶ 8-12. Walgreen alleges that the wholesaler Cardinal Health, Inc. ("Cardinal") "purchased Lidoderm directly from Endo for resale to Walgreen, and [that Cardinal] has assigned its claim arising out of those purchases to Walgreen." *Id.* ¶ 8. Walgreen alleges that it is bringing this action "in its own behalf and as the assignee of Cardinal." *Id.* The

---

[1] For a more detailed background, Defendants refer to the Court to their July 28, 2014 motion to dismiss complaints brought by Direct Purchaser Plaintiffs, End-Payor Plaintiffs, and Government Employees Health Association (Doc. No. 95).

other Plaintiffs' allegations are nearly identical. *Id.* ¶¶ 9-10, 12. Kroger, Safeway, and HEB each allege that they have obtained an assignment from Cardinal. *Id.* Albertson's and HEB each allege that they have obtained an assignment from McKesson Corporation ("McKesson"). *Id.* ¶¶ 11, 12. Walgreen also alleges that it is "entitled to a second assignment from AmeriSource Bergen Drug Corporation ('ABDC'),'" and that it "intends to include purchases made through ABDC in its damage claim when it obtains that assignment." *Id.* ¶ 8.

Plaintiffs' Amended Complaint includes four counts, all asserted under the federal antitrust laws. *Id.* ¶¶ 146-171. Count I asserts that the Lidoderm Settlement was an unreasonable restraint of trade in violation of Section 1 of the Sherman Act under the rule of reason. *Id.* ¶¶ 146-152. Count II asserts that the Lidoderm Settlement constituted a "conspiracy to monopolize" under Section 2 of the Sherman Act. *Id.* ¶¶ 153-160. Counts III and IV assert that the Lidoderm Settlement resulted in monopolization or attempted monopolization, respectively, of a "relevant market." *Id.* ¶¶ 161-171. Plaintiffs seek, among other relief, damages for alleged overcharges paid for Lidoderm. *Id.* at 40 ("Demand for Judgment").

### ENDO'S WHOLESALER CONTRACTS

Endo has Distribution Services Agreements ("DSAs") with each of the wholesalers from which Plaintiffs allege they have or intend to obtain assignments. Endo's DSA with ABDC is effective January 1, 2007, and includes six amendments. Decl. of Jodi L. Travis Decl. [hereinafter "Travis Decl."], Ex. A. Endo's DSA with Cardinal is effective April 1, 2012, and includes five amendments. *Id.*, Ex. B. Endo entered into a DSA with McKesson, effective August 1, 2006, which has had six amendments. *Id.*, Ex. C. Endo and McKesson entered into a DSA, effective January 1, 2014, which replaced the prior DSA. *Id.*, Ex. D. The Lidoderm purchases by ABDC, Cardinal, and McKesson that Plaintiffs allege in their Amended Complaint were made pursuant to those wholesalers' respective DSAs with Endo, referenced above. Travis Decl. ¶ 7.

### ARGUMENT

### I.  LEGAL STANDARDS

Because the deficient assignments deprive the grocery stores of standing, Defendants bring this motion under Rule 12(b)(1). *See, e.g.*, *In re Ditropan XL Antitrust Litig.*, No. M:06-CV-01761-

JSW, 2007 WL 2978329, at *2 (N.D. Cal. Oct. 11, 2007) (dismissing complaint under Rule 12(b)(1) where invalid assignment deprived plaintiff of constitutional standing). Whether plaintiffs have standing to bring each of their claims is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). If plaintiffs do not have Article III standing to bring a claim, the court lacks the power to hear that claim. *Id.* To demonstrate the requisite standing, plaintiffs must establish: "(1) an injury in fact; (2) traceability, *i.e.*, a causal connection between the injury and the actions complained of; and (3) redressability." *Easter v. Am. W. Fin.*, 381 F.3d 948, 961 (9th Cir. 2004) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). When faced with a motion to dismiss, such as this, that challenges a claimant's standing, "the party invoking federal jurisdiction bears the burden of establishing these elements." *See id.* at 561; *see also Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir.2005), *abrogated on other grounds*, 560 U.S. 413 (2010) (plaintiff bears burden of establishing standing).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where a defendant asserts a "facial" attack on jurisdiction, the factual allegations of the complaint are taken as true and the plaintiffs are entitled to have those facts construed in the light most favorable to them. *Federation of African Amer. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). Where, as here, defendants assert a "factual" attack on jurisdiction, defendants may rely on affidavits or other evidence that would be properly before the court, and the plaintiffs are not entitled to any presumptions of truthfulness with respect to the allegations in the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012), *cert denied,* 134 S. Ct. 64 (2013). Rather, they must come forward with evidence establishing jurisdiction. *Safe Air for Everyone*, 373 F.3d at 1039.

Alternatively, the Court may reach the defective assignment issue under Rule 12(b)(6). *See, e.g.*, *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, No. 13-cv-01180-BLF, 2014 WL 4774611, at *5 (N.D. Cal. Sept. 22, 2014) ("A challenge to antitrust standing properly is brought under Federal Rule of Civil Procedure 12(b)(6).") An antitrust complaint that fails to state a claim that is "plausible on its face" must be dismissed under Rule 12(b)(6). *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 558-59, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). "Naked assertion[s]," "[t]hreadbare recitals of the elements of a cause of action," and "mere conclusory statements" are insufficient to survive dismissal. *Id.* at 678 (citation omitted). As the Ninth Circuit warned in *Kendall v. Visa U.S.A., Inc.*, "discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case." 518 F.3d 1042, 1047 (9th Cir. 2008). Consequently, courts should scrutinize claims "at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotation marks and citation omitted).

## II. PLAINTIFFS HAVE NOT ESTABLISHED STANDING BASED ON THEIR OWN PURCHASES OF LIDODERM DURING THE RELEVANT TIME PERIOD.

All of Plaintiffs' damages claims for alleged antitrust violations arise under Clayton Act § 4, which provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue . . . and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a). However, "the Supreme Court has interpreted that section narrowly, thereby constraining the class of parties that have statutory standing to recover damages through antitrust suits." *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 748 (9th Cir. 2012), *cert denied,* 134 S. Ct. 257 (2013) (quotation marks and citation omitted). In *Illinois Brick Company v. Illinois,* 431 U.S. 720, 728 (1977), the Supreme Court held that indirect purchasers generally may not sue for money damages under Clayton Act § 4. *See also Somers v. Apple, Inc.*, 729 F.3d 953, 961 (9th Cir. 2013) ("The indirect purchaser rule bars suits for antitrust damages by customers who do not buy directly from a defendant . . . ."); *Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120-21 (9th Cir. 2008) ("[A] bright line rule emerged from *Illinois Brick*: only direct purchasers have standing under § 4 of the Clayton Act to seek damages for antitrust violations."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944 SC, 2013 WL 567281, at *1 (N.D. Cal. Feb. 13, 2013) ("*Illinois Brick* sets forth a straightforward rule about standing in antitrust cases: only the first party in a chain of distribution to purchase a price-fixed product has standing to sue for antitrust violations under § 4 of the Clayton

Act").

While each of the Plaintiffs purports to assert claims "in its own behalf," each has failed to allege sufficient facts to permit the Court to find that it has standing to seek damages under the Clayton Act. Plaintiffs do not allege that they purchased Lidoderm directly from any of the Defendants. Plaintiffs allege that "[d]uring the relevant period, Plaintiffs *and/or* their assignors purchased substantial amounts of Lidoderm directly from Endo and purchased substantial amounts of generic Lidoderm directly from Watson." Am. Compl. ¶ 143 (emphasis added). Yet nowhere do they allege unambiguously that Plaintiffs themselves purchased Lidoderm directly from Endo or any other Defendant. To the extent that Plaintiffs purport to assert claims based on their own alleged injuries as purchasers of Lidoderm, (*see id.* ¶¶ 8-12), those claims must be dismissed under Rule 12(b)(6) for failure to state a claim under *Illinois Brick*. *See, e.g.*, *In re Refrigerant Compressors Antitrust Litig.*, 795 F. Supp. 2d 647, 659 (E.D. Mich. 2011) (dismissing claims because "the way the [complaint] is drafted, it is impossible to determine which, *if any,* of the named [direct purchaser] Plaintiffs allege that they purchased compressors directly from a Defendant").

### III. PLAINTIFFS LACK STANDING BECAUSE EACH OF THE ALLEGED ASSIGNMENTS IS INVALID.

Plaintiffs' alternative asserted basis for standing — that they have obtained assignments from three particular wholesalers who purchased directly from Endo — also fails. The assignments are invalid under the plain language of Endo's contracts with each of those wholesalers.

#### A. The Wholesalers' Lidoderm Purchases Were Made Pursuant To Endo's Contracts With The Wholesalers.

Plaintiffs allege that wholesalers ABDC, Cardinal, and McKesson each purchased Lidoderm directly from Endo for resale to the Plaintiffs. Plaintiffs further allege that they have obtained assignments from Cardinal and McKesson for claims "arising out of those purchases." Am. Compl. ¶¶ 8-12.[2]

---

[2] Walgreen further alleges that it is "contractually entitled to a second assignment from ABDC . . . ," and that "Walgreen intends to include purchases made through ABDC in its damage claim when it obtains that assignment." Am. Compl. ¶ 8. As noted below in Section IV *infra*, that allegation is insufficient to confer standing on Walgreen to bring its claims.

- 6 -

Each of the wholesalers purchased Lidoderm from Endo pursuant to its respective Distribution Services Agreements ("DSAs" or "wholesaler contracts") with Endo.[3] Pursuant to the McKesson DSAs, for example, Endo appointed McKesson as an authorized distributor of Lidoderm and other products sold by Endo.[4] The DSAs not only govern the wholesalers' purchases of Lidoderm,[5] but each includes the obligation that the parties comply with all applicable laws.[6]

Plaintiffs' antitrust claims are predicated on the wholesalers' purchases of Lidoderm made pursuant to the DSAs and premised on the theory that Endo and the other Defendants did not comply with federal antitrust laws. Accordingly, the Plaintiffs' claims fall within the ambit of the wholesaler contracts.

The fact that Plaintiffs' claims arise from federal antitrust statutes and not a breach of contract is of no consequence. The Supreme Court held in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), that statutory claims, including antitrust claims, were

---

[3] The DSAs may be considered by the Court whether it evaluates this motion under Rule 12(b)(1) or Rule 12(b)(6). Under Rule 12(b)(1), the Court is free to consider factual evidence in evaluating its jurisdiction. *See Terenkian*, 694 F.3d at 1131. Alternatively, under Rule 12(b)(6), a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A document may be "incorporated by reference into a complaint if the plaintiff refers extensively to the document or *the document forms the basis of the plaintiff's claim*." *Id.* (emphasis added); *see also PNY Technologies, Inc. v. SanDisk Corp.*, No. 11-CV-04689-WHO, 2014 WL 1677521, at *2 n.4 (N.D. Cal. Apr. 25, 2014); *Barnes v. Windsor Sec. LLC*, No. 13-cv-1878-WHO, 2013 WL 4426244, at *2 (N.D. Cal. Aug. 15, 2013). Here, the DSAs form the basis of the Plaintiffs' claims. Defendants have filed a Request for Judicial Notice in Support of Joint Motion to Dismiss or Stay Amended Complaint of Walgreen Co. et al. requesting that the Court take judicial notice of Exhibits A-D to the Travis Declaration.

[4] Travis Decl., Ex. C (McKesson 2006 DSA) § 2.1; *id.* Ex. D (McKesson 2014 DSA) § 2.1; *see also id.* Ex. B (Cardinal DSA) § 2.6, § 4.1; *id.* Ex. A (ABDC DSA) § 2.1.

[5] Travis Decl. ¶7; *id.* Ex. A (ABDC DSA) §§ 3.1-3.6, 4.6-4.7; *id.* Ex. B (Cardinal DSA) § 2.2, 2.6; *id.* Ex. C (McKesson 2006 DSA) §§ 2.3, 2.6-2.14; *id.* Ex. D (McKesson 2014 DSA) §§ 2.3, 2.6-2.12.

[6] *See* Travis Decl. Ex. A (ABDC DSA) § 5.17 ("Supplier will comply with all applicable federal, state, and local laws involving the purchase, handling, sale, marketing, and distribution of Products purchased under this Agreement.); *id.* Ex. B (Cardinal DSA) § 2.11 ("In addition . . . the Parties shall comply with all other applicable laws, rules and regulations in performing its obligations hereunder."); *id.* Ex. C (McKesson 2006 DSA) § 2.1 ("Endo and McKesson at all times during the [t]erm of this Agreement shall each comply, in all material respects, with all [f]ederal and state laws, regulations and orders applicable to its [sic] operations as a pharmaceutical marketer and distributor and pharmaceutical wholesale distributor, respectively."); *id.* Ex. D (McKesson 2014 DSA § 2.1) (same).

fairly encompassed by an arbitration requirement in the parties' contract. *Id.* at 624-25. Lower courts similarly have applied contractual obligations concerning arbitration, forum selection, and non-assignment clauses to antitrust claims. *See JLM Indus. Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 167 (2d Cir. 2004) (finding federal antitrust claims arbitrable pursuant to a contract between the parties); *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987), *aff'd and remanded*, 487 U.S. 22 (1988) (holding that a forum selection clause encompassed all causes of action, including antitrust claims); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 12-cv-1173-SC, 2014 WL 1047207, at *4 (N.D. Cal. Mar. 13, 2014) (granting motion to dismiss antitrust claims where forum-selection clause in parties' contract required claims "related to" the agreement be brought in Japanese courts); *In re Ditropan XL Antitrust Litig.*, No. M:06-CV-01761-JSW, 2007 WL 2978329, at *2 (N.D. Cal. Oct. 11, 2007) (holding that an assignment of an antitrust claim was invalid where assignor's contract with defendant included a non-assignment clause); *Nat'l Ass'n of Assoc. Publishers, Inc. v. Prince Publ'g, Inc.*, No. 6:96-CV-1063, 1997 WL 34588520, at *4 (M.D.N.C. May 8, 1997) (holding that agreement to arbitrate disputes "arising under" contract encompassed antitrust claims).

### B. Endo's Wholesaler Contracts Expressly Preclude The Alleged Wholesalers' Assignments To Plaintiffs Without Endo's Consent.

Each of Endo's DSAs with the wholesalers includes a non-assignment clause that expressly precludes assignment of the "agreements," or of the "duties and responsibilities" without Endo's "prior written consent."[7] Endo has not consented to any assignment by ABDC, Cardinal, or McKesson to any of the Plaintiffs, and the Amended Complaint contains no allegations to the

---

[7] Travis Decl. Ex. A (ABDC DSA) §13.2 ("Neither Party may assign this Agreement or delegate any of its respective duties or responsibilities [sic] this Agreement without prior written consent of the other Party which shall not be unreasonably withheld; provided, however, that either Party may assign its rights and obligations under this Agreement without such consent to an Affiliate."); *id.* Ex. B (Cardinal DSA) § 4.3 ("Neither party may assign this Agreement without the prior written consent of the other party; provided, however, that either party may assign this Agreement without such consent to an Affiliate."); *id.* Ex. C (McKesson 2006 DSA) § 5.3 ("Neither party may assign this Agreement or delegate any of its respective duties or responsibilities under this Agreement without the prior written consent of the other party which consent shall not be unreasonably withheld."); *id.* Ex. D (McKesson 2014 DSA) § 5.3 (same).

contrary.[8]  Absent such consent, the alleged assignments are invalid.  *In re Ditropan XL Antitrust Litig.*, 2007 WL 2978329 at *2; *Davidowitz v. Delta Dental Plan of California, Inc.*, 946 F.2d 1476, 1478 (9th Cir. 1991) ("As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions.").

This Court's *Ditropan XL* decision granting defendants' motion to dismiss is directly on point.  In that case, the plaintiff, an indirect purchaser, brought an antitrust action against subsidiaries of a pharmaceutical manufacturer alleging that they delayed generic competition by pursuing an allegedly baseless patent litigation and Citizen's Petitions before the Food and Drug Administration.  There, as here, the plaintiff's claim was premised on a purported assignment from a wholesaler.  Defendants moved to dismiss the complaint for lack of standing on the ground that a defendant's contract with its wholesaler, who purportedly provided the assignment to the plaintiff, contained a non-assignment provision.  2007 WL 2978329 at *2.  In granting defendants' motion to dismiss, the Court held that the wholesaler "Distribution Performance Agreement," like the DSA contracts here, governed the wholesaler's purchases and the relationship between the wholesaler and the defendant.  *Id.*  The Court further held that the wholesaler contract prohibited the parties from assigning rights or obligations arising under the agreement without the consent of the other party, and that the defendant had not consented to an assignment.  *Id.*  Accordingly, the Court ultimately held that the assignment was barred by the wholesaler's failure to obtain the defendant's consent, and that the plaintiff lacked standing to bring the antitrust claim.  *Id.*

Here, Plaintiffs' alleged assignments suffer the same fatal flaw as those in *Ditropan XL*.  Specifically, Endo's wholesaler contracts show that the parties intended to preclude assignment of all claims; each of the DSAs governs the wholesaler's Lidoderm purchases from Endo; and the express terms of the wholesaler agreements preclude assignments without written consent.  Plaintiffs have failed to obtain consent to the alleged assignments, and therefore the assignments are

---

[8] *See* Travis Decl. ¶ 8.  As discussed in Section IV *infra*, Walgreen lacks standing to bring a claim based on "contractual right" to an assignment from ABDC.  As demonstrated in this section, however, even if Walgreen were to obtain an assignment from ABDC, the assignment would be invalid according to the terms of Endo's DSA with ABDC.

1  invalid. Because the assignments are invalid, and because Plaintiffs' alleged injuries are premised
2  on the invalid assignments, Plaintiffs lack standing and their amended complaint must be dismissed.

3  Although decisions from the *Flat Panel* cases[9] in this district reached a different result,
4  Defendants submit that the Court should instead follow the analysis in *Ditropan XL*. In the *Flat*
5  *Panel* decisions, the Court did not address, let alone specifically address, the holding or analysis in
6  *Ditropan XL*. Rather, relying principally on *Lutheran Medical Ctr. v. Contractors, Laborers,*
7  *Teamsters & Eng'rs Health & Welfare Plan*, 25 F.3d 616, 619 (8th Cir.1994), *abrogated on other*
8  *grounds,* 299 F.3d 966 (2002) (en banc), the court narrowly construed the non-assignment clause at
9  issue there.

10 *Lutheran Medical* involved a claim assigned from a health-plan beneficiary to healthcare
11 providers for the purpose of seeking reimbursement from the health plan for the services provided
12 to the beneficiary. The health plan appealed the district court's judgment awarding benefits to the
13 healthcare providers on the ground that its contract with the beneficiary precluded assignments of
14 the "rights and benefits" of the plan, invalidating the beneficiary's assignment to the healthcare
15 providers. *Id.* at 619. The *Lutheran Medical* court held that the assignment was valid by reading
16 the assignment clause narrowly so as not to include causes of action arising out of the denial of
17 benefits, but it did so in the context of facts that are not present in this case. *Id.* For example, the
18 court found persuasive that the health plan paid benefits to assignees for years, and the health plan's
19 own summary of its benefits stated that a participant could assign benefits to a health care provider.
20 *Id.*

21 Given that the facts here mirror those in *Ditropan XL* and that the *Flat Panel* decisions rely
22 upon the factually distinguishable *Lutheran Medical*, Defendants respectfully submit that the Court
23 should follow the analysis in the analogous *Ditropan XL* discussion and dismiss Plaintiffs' damages
24 claims for lack of standing.

---

[9] *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 11-00711 SI, 2011 WL 3475408, at *1 (N.D. Cal. Aug. 9, 2011), *modified,* No. C 11-00711 SI, 2011 WL 5573930 (N.D. Cal., Nov. 16, 2011), and *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 10-3517 SI, 2011 WL 4345316, at *1 (N.D. Cal. Sept. 15, 2011).

- 10 -

DEFS.' JOINT MOT. TO DISMISS OR STAY WALGREEN COMPLAINT     MDL No. 14-md-02521-WHO

### C. To The Extent Plaintiffs Assert Claims Based On Assignments From Wholesalers, Their Claims Should Be Dismissed With Prejudice Because Amendment Would Be Futile.

The wholesaler contracts render Plaintiffs' assignments invalid. Accordingly, Plaintiffs cannot cure the defects in their Amended Complaint by amending their allegations concerning assignments from wholesalers. Because Plaintiffs cannot cure their assignment-based defects by amendment, the Court should dismiss the Plaintiffs' assignment-based claims with prejudice.

## IV. WALGREEN'S ALLEGED CONTRACTUAL RIGHT TO AN ASSIGNMENT FROM ABDC IS INSUFFICIENT TO CONFER STANDING.

In addition to alleging that it has obtained an assignment from Cardinal to pursue its antitrust claims against Defendants, Walgreen alleges that it is contractually entitled to an assignment from ABDC. This allegation, however, is insufficient to confer standing on Walgreen to bring its claims.

This Court addressed a factually similar situation in *Ditropan XL*. In that case, plaintiff had obtained an assignment from a wholesaler to bring its antitrust claim against only one of the two defendants at the time of the filing of the complaint. 2007 WL 2978329, at *2. Plaintiff obtained an assignment from a wholesaler for the claims against the other defendant after the complaint was filed. *Id.* The Court held that, standing to sue "is determined as of the date of filing the complaint . . . The party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing." *Id.* (quoting *Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005), *abrogated on other grounds,* 560 U.S. 413 (2010) (alteration in original). Because the assignment post-dated the complaint, the court held it was insufficient to confer standing. *Id*.

Here, Walgreen does not even allege an assignment that post-dates the filing of its Complaint; it merely alleges that it is entitled to an assignment from ABDC at some future time. *See* Am. Compl. ¶ 8. Walgreen's allegations are therefore insufficient to confer standing. In any event, for the reasons described in Section III *supra*, even if Walgreen had obtained an assignment from ABDC, the assignment would be invalid under the terms of Endo's DSA with ABDC, absent Endo's consent.

### V. EVEN IF PLAINTIFFS' ALLEGED ASSIGNMENTS ARE VALID, PLAINTIFFS ARE REQUIRED TO PURSUE SUCH CLAIMS AS PART OF THE DIRECT PURCHASER CLASS UNDER F.R.C.P. 19.

Even if this Court determines that Plaintiffs' assignments are valid, their claims cannot be pursued through the current Complaint. Plaintiffs' asserted claims are based on *partial* assignments from the actual direct purchasers of Lidoderm. Am. Compl. ¶¶ 8-12. The direct purchaser wholesalers are alleged to have assigned (or agreed to assign) to Plaintiffs only a fraction of the wholesalers' claims against Defendants—namely, that portion related to the purchases resold to Plaintiffs. *Id*. In theory, the direct purchaser wholesalers could grant partial assignments to hundreds of their customers. These partial assignments multiply the number of lawsuits brought on the basis of each wholesaler's putative antitrust claim against the Defendants, complicate the administration of the litigation, and impermissibly force Defendants to face a multiplicity of suits rather than a single claim.

Federal courts have expressly rejected the litigation of duplicative antitrust claims arising from partial assignments. While normally class members with individual claims may opt out of the class to pursue them separately, "[a] different rule applies when a class member partially assigns its claim to a third party." *Bailey Lumber & Supply Co. v. Georgia-Pacific Corp.*, No. 1:08CV1394 LG–JMR, 2009 WL 2872307, at *6 (S.D. Miss. Aug. 10, 2009). A partial assignee must litigate its claims as part of the relevant class and "will not have the right to opt out." *In re Fine Paper Litig.*, 632 F.2d 1081, 1091 (3d Cir. 1980).

In *In re Fine Paper*, an opt-out plaintiff was assigned certain distributors' antitrust claims pertaining to paper products that it had purchased. *Id.* at 1089. The opt-out plaintiff sought to assert its assigned rights in a separate complaint. The court concluded that a partial assignment of an antitrust cause of action cannot form the basis for an independent damages claim under the Sherman Act. *Id*. at 1091. The court reasoned that, regardless of whether a case is brought as a class action or in some other form, the defendant has a right to have all persons with the collective right to the *entire* claim joined as plaintiffs. *Id.* ("[U]nless the obligor has consented, the partial assignee may not maintain the original suit against the obligor unless all parties having the collective right to the entire claim are joined in the proceeding.") In the context of the pending class

1  claims, the court concluded that the opt-out plaintiff "can be made a party but, unlike other class
2  members, *will not have the right to opt out*." *Id.* (emphasis added). The opt-out plaintiff had to be
3  joined with the class plaintiffs and bound by their settlement. *Id.* The court justified this conclusion
4  by explaining that "[t]he compulsory joinder provisions of Rule 19 and the necessity to give
5  protection to the obligors from additional litigation from partial assignees require such a result." *Id*.

6  Similarly, in *Bailey Lumber & Supply Co.*, an opt-out plaintiff sought to pursue its own
7  antitrust complaint based, in part, on a partial assignment. 2009 WL 2872307, at *6. The
8  defendants moved to dismiss the plaintiff's claims based on the partial assignment on the grounds
9  that the assigned claim could only be litigated as part of the class action and could not be brought
10 separately without their consent. *Id.* The court reaffirmed the holding in *In re Fine Paper*, and
11 concluded that "[a]s to the assigned OSB claims, however, Bailey was not entitled to opt out of the
12 class action and bring them in this suit without the Defendants' consent . . . . Accordingly, Bailey's
13 assigned OSB claims should be dismissed as a matter of law." *Id*. at *7.[10]

14 Here, Plaintiffs attempt to bring their partial assignments in a separate complaint, giving rise
15 to at least the potential of separate trials and separate judgments. Already at least one other plaintiff
16 has filed a similar case, and there is virtually no limit to the theoretical number of downstream
17 indirect customers who may procure partial assignments and attempt to litigate their claims
18 separately, even though they are simply pieces of one claim — that of the assigning wholesaler.
19 Plaintiffs' approach—and the problem of partial assignments countless downstream indirect
20 customers—is exactly what *In re Fine Paper* and *Bailey Lumber* seek to prevent. Plaintiffs do not
21 allege that Defendants consented to this approach—nor can they because Defendants have not
22 provided such consent. Nor do Plaintiffs assert that they received an assignment of all of the
23 wholesalers' claims against Defendants. Without such facts, Plaintiffs should not be permitted to
24 litigate their partial assignment claims in a separate suit. Defendants respectfully request that this

---

[10] While the court in *In re Nexium (Esomeprazole) Antitrust Litig.*, 42 F. Supp. 3d 231, 297 (D. Mass. 2014) allowed certain retailer plaintiffs to pursue their assigned claims, the court expressly noted that the retailer plaintiffs "have declined the opportunity to opt out of the Direct Purchaser Class, and they have not indicated any desire to litigate their claims in a separate proceeding." Indeed, the retailer plaintiffs described themselves as "absent members of [the Direct Purchaser] class." *Id.*

Court dismiss Plaintiffs' partial assignment claims or, alternatively, stay Plaintiffs' complaint until the Court has resolved the anticipated motion for class certification by the Direct Purchaser Plaintiffs.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss the Plaintiffs' Amended Complaint with prejudice, or alternatively stay it pending the determination of class certification for the Direct Purchaser class.

DATED: May 8, 2015

|  |  |
|---|---|
|  | ARNOLD & PORTER LLP |
|  | By: /s/ *Daniel B. Asimow* <br> Jonathan L. Stern <br> Daniel B. Asimow <br> Ryan Z. Watts |
|  | Attorneys for Defendant <br> ENDO PHARMACEUTICALS INC. |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | SQUIRE PATTON BOGGS (US) LLP |
| By: /s/ *Steven C. Sunshine* <br> Steven C. Sunshine <br> Karen Hoffman Lent | By: /s/ *Joseph A. Meckes* <br> David S. Elkins <br> Nathan Lane III <br> Noriyuki Shimoda <br> Joseph A. Meckes |
| Attorneys for Defendants <br> WATSON PHARMACEUTICALS, INC., <br> WATSON LABORATORIES, INC., <br> ACTAVIS, PLC, ANDA, INC., ANDA <br> PHARMACEUTICALS, INC., and <br> VALMED PHARMACEUTICALS, INC. | Attorneys for Defendants <br> TEIKOKU SEIYAKU CO., LTD. and <br> TEIKOKU PHARMA USA, INC. |

## ATTESTATION

I, Daniel B. Asimow, am the ECF User whose ID and password are being used to file this Defendants' Notice Of Joint Motion, And Memorandum Of Points And Authorities In Support Of Joint Motion To Dismiss Or Stay Amended Complaint Of Walgreen Co. et al.  In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, have concurred in this filing.

*/s/ Daniel B. Asimow*
DANIEL B. ASIMOW