UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS LOCAL 1776 & PARTICIPATING EMPLOYERS HEALTH AND WELFARE FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TEIKOKU PHARMA USA, INC., et al.,<br><br>Defendants. | Case No. 14-md-02521-WHO<br><br>**ORDER ON DEFENDANTS' JOINT MOTION TO DISMISS OR STAY PLAINTIFFS' AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 183, 184, 188, 190, 203, 204 |

A group of indirect purchaser plaintiffs composed of retail establishments (collectively, "Walgreen Plaintiffs") brought a First Amended Complaint against defendants Endo Pharmaceuticals Inc., Teikoku Pharma USA, Teikoku Seiyaku Co., Watson Pharmaceuticals, Inc., Actavis, plc, formerly known as Watson Pharmaceuticals, Inc., and Watson Laboratories, Inc. (collectively "defendants") in this multidistrict antitrust litigation relating to a settlement agreement entered into by defendants that resolved a patent dispute over the drug Lidoderm (the "Lidoderm Settlement"). Defendants move to dismiss, arguing that (i) the Walgreen Plaintiffs lack statutory standing as indirect purchasers of Lidoderm, (ii) the assignments of claims from Lidoderm wholesalers are invalid and fail for lack of Article III standing, and (iii) any valid assignments of claims should be joined with those of the group of direct purchaser plaintiffs.

The Walgreen Plaintiffs do not have standing to bring claims on their own behalf as indirect purchasers and have not adequately pleaded that they are entitled to injunctive relief. That portion of their claims is STRUCK. The remainder of defendants' motion is DENIED. The assignments of the right to bring antitrust claims are valid and the partial assignment of claims does not require me to dismiss or stay the Walgreen Plaintiffs' claims at this stage of the litigation.

**BACKGROUND**

The facts relating to the underlying suit are recited in my prior orders and incorporated by reference. *See*, e.g., Dkt. No. 117. The Lidoderm Settlement allegedly violated federal antitrust laws, in part because defendants agreed to delay the release of a generic equivalent of Lidoderm into the market. FAC ¶¶ 146-171 (Dkt. No. 166).

On April 22, 2015, the Walgreen Plaintiffs filed an Amended Complaint ("FAC") against defendants. The FAC asserts that: (i) the Lidoderm Settlement is an unreasonable restraint on trade that violates Section 1 of the Sherman Act, *see* FAC ¶¶ 146-152; (ii) by entering into the Lidoderm Settlement, defendants conspired to expand monopoly power by intentionally forestalling the introduction of generic Lidoderm in violation of Section 2 of the Sherman Act, *see id.* ¶¶ 153-160; (iii) defendant Endo exercised monopoly power over the relevant market by intentionally excluding competitors and charging artificially high prices for Lidoderm, *see id.* ¶¶ 161-166; and (iv) defendant Endo attempted to monopolize the relevant market by entering into the Lidoderm Settlement with the other defendants, *see id.* ¶¶ 167-171.

On May 8, 2015, defendants collectively moved to dismiss the Walgreen Plaintiffs' FAC for lack of Article III and statutory standing. Mot. (Dkt. No. 183). I heard argument on July 8, 2015.

**LEGAL STANDARDS**

**I.    RULE 12(b)(1)**

Defendants move to dismiss for lack of standing under Article III and Federal Rule of Civil Procedure 12(b)(1). The burden of proving standing rests with the party invoking federal subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a factual attack is raised, the plaintiff must support the jurisdictional allegations with "competent proof[] under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir.

2014) (internal citations omitted). "If the moving party converts the motion to dismiss into a factual motion by presenting affidavits and other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (internal quotations omitted).

Here, defendants bring a factual attack because they challenge the validity of the wholesalers' assignments of their claims to the Walgreen Plaintiffs. *See* Mot. 4. Accordingly, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (internal quotations omitted).

## II. RULE 12(b)(6)

Defendants also challenge the Walgreen Plaintiffs' standing under the Sherman Act by moving to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *See* Mot. 4. A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court should dismiss "if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Salazar*, 646 F.3d at 1242.

In the private antitrust context, plaintiffs must establish "antitrust standing" to survive a motion to dismiss. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000); *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, No. 13-CV-01180-BLF, 2014 WL 4774611, at *5 (N.D. Cal. Sept. 22, 2014). "To determine whether [antitrust standing] is met, the court must evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *Knevelbaard*, 232 F.3d at 987 (internal quotations omitted). "[A] showing of antitrust injury is necessary, but not always sufficient, to establish standing under § 4."

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999) (internal quotations omitted).

**DISCUSSION**

**I. THE WALGREEN PLAINTIFFS' CLAIMS BROUGHT ON THEIR OWN BEHALF**

Defendants argue that as indirect purchasers of Lidoderm, the Walgreen Plaintiffs lack standing under section 4 of the Clayton Act. Mot. 5-6. The Walgreen Plaintiffs do not contend that they are entitled to treble damages under Section 4 as indirect purchasers. Oppo. 9-10. Instead, they assert standing as indirect purchasers under section 16 of the Clayton Act, requesting injunctive relief for violations of sections 1 and 2 of the Sherman Act. *Id.*

Section 4 of the Clayton Act provides a private right of action for those injured as a result of antitrust violations and entitles them to treble damages. 15 U.S.C. § 15; *see also In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377, at *5 (N.D. Cal. Oct. 2, 2014). Only direct purchasers, and not indirect purchasers, may bring claims under section 4. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 744-47 (1977); *see also Del. Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1120-21 (9th Cir. 2008) ("[A] bright line rule emerged from *Illinois Brick*: only direct purchasers have standing under § 4 of the Clayton Act to seek damages for antitrust violations.").

Section 16 of the Clayton Act provides a private right of action for injunctive relief based upon violations of antitrust law. It states that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by violation of the antitrust laws . . ." 15 U.S.C. § 26. In order to obtain injunctive relief, a plaintiff "must allege facts showing that the remedy she seeks is needed to prevent a threatened antitrust injury, meaning an injury of the type the antitrust laws were intended to prevent − *i.e.*, an injury to competition." *Somers v. Apple, Inc.* 729 F.3d 953, 967 (9th Cir. 2013) (internal quotations omitted).

Unlike section 4, under section 16 "indirect purchasers are not barred from bringing an antitrust claim for injunctive relief against manufacturers." *Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1235 (9th Cir. 1998); *see also Sundance Land Corp.*

*v. Community First Federal Savings & Loan Association*, 840 F.2d 653, 661 (9th Cir. 1988) ("The standing requirements under section 16 of the Clayton Act are 'less stringent' than those under section 4.  Parties who cannot recover damages may nevertheless obtain injunctive relief.") (internal citations omitted).  Therefore, the Walgreen Plaintiffs would not be barred from bringing claims for injunctive relief as indirect purchasers.

That said, the Walgreen Plaintiffs have failed to show a "threatened loss or injury cognizable in equity proximately resulting from the alleged antitrust violation."  *Sundance Land*, 840 F.2d at 661 (internal quotations omitted).  Defendants' anticompetitive conduct ended on September 15, 2013, when generic drug competitors were able to enter the market.  FAC ¶¶ 122, 135.  There are no other allegations of anticompetitive conduct that would be subject to an injunction or that designate conduct to be enjoined; the FAC only mentions injunctive relief in the demand for judgment in a cursory manner.  The Walgreen Plaintiffs argue that they have demonstrated "monetary harm" that will continue in the future, *see* Oppo. 9, and argued at the hearing that harm is ongoing because it takes time for prices to reach an equilibrium.  These facts were not alleged in the FAC.  The Walgreen Plaintiffs also argue that the injunctive relief is a prayer for damages and should not be resolved on a motion to dismiss, but provide no support for this argument.[1]

In short, the Walgreen Plaintiffs have alleged past injuries that they suffered, but have not stated with sufficient particularity any ongoing or future harm caused by the alleged Sherman Act violations.  *See San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) ("it is insufficient for [plaintiffs] to demonstrate only a past injury"); *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 195 (N.D. Cal. 2015), *leave to appeal denied* (May 12, 2015).  Therefore, to the extent that the Walgreen Plaintiffs bring claims under the Sherman Act on their own behalf, such claims are STRUCK with leave to amend.

---

[1] In fact, courts may strike prayers for relief in resolving a motion to dismiss. *See*, e.g., *Lang v. Cnty. of Sonoma*, No. C12-0983 TEH, 2012 WL 4674527, at *6 (N.D. Cal. Oct. 2, 2012); *Grohal v. Stauffer Chem. Co.*, 385 F. Supp. 1267, 1269 (N.D. Cal. 1974).

## II. PLAINTIFFS' ASSIGNMENTS OF THE WHOLESALERS' CLAIMS ARE VALID

Because the Walgreen Plaintiffs may not bring claims under section 4 of the Clayton Act as indirect purchasers, they must establish standing based upon the assignments of antitrust claims from the direct purchaser wholesalers that entered into a distribution service agreement ("DSA") with defendant Endo.[2] *See* FAC ¶¶ 8-12. The Walgreen Plaintiffs have obtained assignments of the wholesalers' claims against Lidoderm arising from the direct purchases. *Id.* The DSAs contain non-assignment clauses that (generally) prohibit the wholesalers from assigning their claims against Endo. Defendants point to these non-assignment clauses to argue that the assignments of the wholesaler's rights under the DSAs to the Walgreen Plaintiffs are invalid and that the Walgreen Plaintiffs lack standing. Mot. 8-10.

The DSAs govern Endo's sale of Lidoderm to the wholesalers, and include general provisions for product distribution, inventory management services, and distribution channel information, among other services. *See*, e.g., Dkt. No. 188-1. Each DSA contains essentially the same non-assignment clause: neither party to the DSA is permitted to assign "this Agreement" or any of its "duties or responsibilities" without the other party's consent. *See* Dkt. Nos. 188-1, 188-2, 188-3, 188-4; Mot. 8. In addition, the DSAs all contain language requiring that each party "comply with all applicable federal, state, and local laws involving the purchase, handling, sale, marketing and distribution of Products purchased under the Agreement." *See* Dkt. No. 188-1 at 9.

Defendants' argument rests primarily on *In re Ditropan XL Antitrust Litigation*, No. M:06-CV-01761-JSW, 2007 WL 2978329 (N.D. Cal. Oct. 11, 2007). In that case, the Hon. Jeffrey S. White addressed various antitrust claims brought by a plaintiff who, as here, was the purported assignee of a direct purchaser wholesaler. Judge White found that the assignment of rights to the plaintiff under a Distribution Performance Agreement between the drug manufacturer defendant and the wholesaler was invalid due to a non-assignment clause. *Id.* at *2. He determined that

---

[2] Defendants request that I take judicial notice of the DSAs and the Agreements for Assignment of Claims between Endo and the wholesalers, and between the wholesalers and the Walgreen Plaintiffs, respectively. Dkt. Nos. 184, 204. These agreements are incorporated into the FAC by reference and plaintiffs do not dispute their authenticity. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). To the extent that I rely on these documents, defendants' requests are GRANTED.

6

because the distribution agreement discussed price control protection, it could "not be construed accurately as merely an inventory replenishment agreement." *Id.* Because it encompassed antitrust claims, he dismissed the complaint for lack of standing. Defendants argue that this case raises precisely the same issue and urge me to adopt the same analysis. Mot. 9.

I decline that invitation. First, I note that the reasoning that defendants rely on in *Ditropan XL* is dicta, because the court concluded that the plaintiff lacked standing on other grounds. *See* 2007 WL 2978329, at *2 (plaintiff lacked standing because the assignment occurred *after* the plaintiff filed its amended complaint). Second, other courts that have recently addressed similar questions relating to the validity of assignment of antitrust claims have come to different conclusions.

In *In re TFT-LCD (Flat Panel) Antitrust Litigation*, the plaintiff brought antitrust claims that were assigned to it by vendors, but that the defendants argued were invalid due to non-assignment clauses in agreements that they had with the vendors.[3] Nos. M 07-1827 SI, C 11-00711 SI, 2011 WL 3475408, at *3-4 (N.D. Cal. Aug. 9, 2011). The Hon. Susan Illston found that the non-assignment clause's bar on the unilateral assignment of "rights and obligations" under the agreement had no bearing on the assignment of legal claims arising from those rights and obligations. *Id.* The court cited the RESTATEMENT (SECOND) OF CONTRACTS § 322 (AM. LAW INST. 1981), which states that: "Unless the circumstances indicate the contrary, a contract term prohibiting assignment of 'the contract' bars only the delegation to an assignee of the performance by the assignor of a duty or condition." *Id.* at *3. Observing no such circumstances, the court concluded that "litigation over antitrust claims cannot be seen as a 'right or duty' contemplated by the contract." *Id.* at *4. Thus, the non-assignment clause did not provide a basis for dismissing the plaintiff's claims. *Id.* at *3-4; *accord In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827 SI, C 10-3517 SI, 2011 WL 4345316, at *3 (N.D. Cal. Sept. 15, 2011) (adopting the same

---

[3] The language of the non-assignment clauses in the *Flat Panel* cases was similar to the relevant provisions in this case. *Compare* 2011 WL 3475408, at *4 ("[n]either party will assign their rights or delegate or subcontract their duties under this Agreement to third parties or Affiliates") *with* Dkt. No. 188-1 at 13 ("[n]either Party may assign this Agreement or delegate any of its respective duties or responsibilities [under] this Agreement without prior written consent . . .").

7

analysis).

Defendants urge me to disregard the *Flat Panel* decisions and follow *Ditropan XL* here. Mot. 10. They do so first by distinguishing the facts of a case upon which the *Flat Panel* decisions relied: *Lutheran Medical Center v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan*, 25 F.3d 616 (8th Cir. 1994) *abrogated on other grounds*, *Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966 (2002) (en banc).

*Lutheran Medical* involved the assignment of an employee's rights under a health plan, which prohibited employees from assigning their rights or benefits under the plan. 25 F.3d at 619. While it did not involve antitrust claims or distribution agreements, this factual distinction is largely irrelevant. The *Lutheran Medical* court concluded that notwithstanding language that prohibited the assignment of "rights or benefits," the assignees were not prevented from bringing causes of action arising after the denial of benefits. *Id.* Because the employees assigned their causes of action, not the right to receive benefits under the plan, the assignment was valid. *Id.*

As Judge Illston recognized in the *Flat Panel* cases, the reasoning of *Lutheran Medical* applies to contexts in which a vendor assigns antitrust claims. *See* 2011 WL 3475408, at *4 ("litigation over antitrust claims cannot be seen as a 'right or duty' contemplated by the contract"). Other courts have come to similar conclusions. *See*, e.g., *Meijer, Inc. v. Barr Pharmaceuticals, Inc.*, 572 F. Supp. 2d 38, 64 (D.D.C. 2008) (finding that a non-assignment clause barring the assignment of "this Agreement" could not "be read to prevent the assignment of the parties' statutorily-based antitrust claims.") (internal citations omitted); *Health Alliance Network, Inc. v. Cont'l Cas. Co.*, 354 F. Supp. 2d 411, 417 n.8 (S.D.N.Y. 2005) ("a non-assignment clause does not prohibit assignment of a right to damages for breach of the whole contract or a right arising out of due performance").

Even if the DSAs are construed to prohibit the assignment of the right to bring antitrust claims, the violation of this provision would not render the assignment of a cause of action, instead of the "duty or condition," invalid. While the legal compliance provisions of the DSAs arguably prevent signatories from assigning their duties to comply with applicable law to third parties, a duty is not equivalent to a right arising from a breach of that duty. *See TransWorld*

*Airlines, Inc. v. Am. Coupon Exch., Inc.*, 913 F.2d 676, 685 (9th Cir. 1990) (explaining that contractual rights "must be distinguished from *duties*"). Even after the wholesalers assigned their rights to sue for antitrust violations to the Walgreen Plaintiffs, the duty of legal compliance remained with the original parties to the DSAs.

Defendants argue that like *Ditropan XL* and unlike the *Flat Panel* cases, the duty of legal compliance outlined in the DSAs encompasses antitrust laws and demonstrates the parties' intent to prevent the assignment of legal claims. Reply 7-8. The court in *Flat Panel* acknowledged that there are some "circumstances [that] indicate that the parties intended the anti-assignment provisions to cover territory beyond the rights and obligations set forth in the sales contracts." 2011 WL 3475408, at *4 (internal quotation marks and modifications omitted). But here the non-assignment provisions do not clearly prevent the wholesalers from assigning claims arising out of antitrust law. *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1478 (9th Cir. 1991) ("As a general rule of law, *where the parties' intent is clear*, courts will enforce non-assignment provisions.") (emphasis added).

The existence of a boilerplate duty to abide by "applicable law" does not manifest the requisite intent to expand the scope of the non-assignment clauses beyond their ordinary language. *See Flat Panel*, 2011 WL 3475408, at *4; 2011 WL 4345316, at *3; *see also TransWorld Airlines*, 913 F.2d at 685 ("an explicit contractual provision forbidding assignment of a right created by that contract is ordinarily enforceable *according to its terms*") (emphasis added). The DSAs do not specifically mention antitrust law or the assignment of legal claims. As in *Flat Panel* and *Meijer*, the non-assignment clause is limited to "this Agreement," and does not cover unrelated claims arising from antitrust law.

*Flat Panel*, *Lutheran Medical*, and *Meijer* are well-reasoned and factually analogous to this case, notwithstanding defendants' attempts to distinguish them. The DSAs' non-assignment clauses are limited to the assignment of duties and obligations under the DSAs themselves and do not include causes of action sounding in antitrust arising from those agreements. Therefore, the wholesalers' assignments of antitrust claims to the Walgreen Plaintiffs are valid and the FAC does not fail under Rule 12(b)(1).

Defendants also challenge the FAC's allegations that the individual plaintiff Walgreen Co. is "contractually entitled to a second assignment from . . . another pharmaceutical wholesaler, which during the relevant period purchased Lidoderm directly from Endo for resale to Walgreen." FAC ¶ 8; Mot. 11. Because all Walgreen Plaintiffs have standing under the assignments, this argument is inapposite. *See In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 115 (S.D.N.Y. 2009) ("To the extent courts allow assignment of a claim after litigation commences, the plaintiff generally has Article III standing on at least one other claim at the time the action was filed."). The issue of Walgreen's future assignment may become relevant in determining damages, but need not be considered at this stage. *See* FAC ¶ 8 (Walgreen "intends to include purchases made through ABDC in its damage claim when it obtains that assignment.").

III. **GRANTING A STAY PENDING CLASS CERTIFICATION IS IMPROPER**

Defendants argue that Rule 19 of the Federal Rules of Civil Procedure requires the Walgreen Plaintiffs to pursue any legitimately assigned claims as part of the putative class action brought by the Direct Purchaser Plaintiffs ("DPPs") in this litigation, and request a stay in anticipation of that group's Rule 23 motion. Mot. 12. They further assert that because the Walgreen Plaintiffs only have partial assignments from the wholesalers, allowing their action to continue separately from those of the DPPs would "complicate the administration of the litigation, and impermissibly force Defendants to face a multiplicity of suits rather than a single claim." *Id.* The Walgreen Plaintiffs respond that this multidistrict litigation sufficiently consolidates the cases to alleviate any of the concerns raised by defendants, and contend that any denial of their rights to opt out of any such class violates Rule 23 and raises serious due process concerns. Oppo. 11.

Defendants rely heavily on *In re Fine Paper Litigation State of Washington*, 632 F.2d 1081, 1091 (3d Cir. 1980) and *Bailey Lumber & Supply Co. v. Georgia-Pac. Corp.*, No. 1:08CV1394 LG-JMR, 2009 WL 2872307, at *1 (S.D. Miss. Aug. 10, 2009). In *Fine Paper*, the court held that a partial assignee in an antitrust class action was precluded from opting out of a class post-certification. In doing so, the court stated that partial assignment of claims did not pose any problems identified in *Illinois Brick*; namely, that indirect purchasers would bring claims and expose defendants to double liability, or that there would be "insurmountable problems of proof

10

and procedure in typical antitrust cases." 632 F.2d at 1090. Instead, *Fine Paper* found that the partial assignments created potential complications associated with permitting a partial assignee to opt out of a class, including defendants' uncertainty regarding outstanding liability following settlement with assignors, protection from "additional litigation," and Rule 19's compulsory joinder provisions. *Id.* at 1090-91.

In *Bailey Lumber*, the court addressed two sets of partial assignments of antitrust claims. The first involved claims with "no prior history," while the second involved claims assigned from a party who had opted out of a prior class action bringing the same claims. 2009 WL 2872307, at *7. The court held that the plaintiff could not bring the second set of claims because it "was not entitled to opt out of the class action and bring [the claims] in this suit without the Defendants' consent." *Id.* Notably, it held that the plaintiff *could* bring the first set of claims. *Id.*

At this stage of the litigation, there is no basis to dismiss or stay the case due to the concerns raised in *Bailey Lumber* or *Fine Paper*. Unlike here, in those cases the partial assignee attempted to opt out of a class that had already been certified, and the assignors were members of that class. *See Fine Paper*, 632 F.2d at 1089. Moreover, all relevant cases, claims, and parties are joined in this multidistrict litigation lawsuit, removing many of the problems discussed in those cases. I see no reason why this case cannot be managed in a way to avoid the problems in administration and multiplicity of suits cited by the defendants.

Finally, *Bailey Lumber* and *Fine Paper* stand for the principle that antitrust plaintiffs with partially assigned claims may not opt of a class due to concerns that they will circumvent joinder rules or interfere with the rights of the defendant to be free of excessive and repeated suits growing out of same basic facts. They do not stand for the proposition that partially assigned claims must be dismissed or stayed in actions such as this, where there is no "prior history" of litigation of these claims in a different court.

The current status of this litigation makes a decision to dismiss or stay those claims premature. Although the DPPs have filed a class action complaint, Dkt. No. 70, that group has not yet moved for class certification. And interestingly, none of the *wholesalers* from whom the Walgreen Plaintiffs have been assigned claims are named in the DPP complaint. *See id.* Although

1 defendants raise the issue of partial assignments, it remains unclear whether the wholesalers that
2 assigned their claims to the Walgreen Plaintiffs have reserved for themselves any portion of their
3 right to sue defendants. Thus, defendants' argument is not persuasive. The motion to dismiss or
4 stay the partial assignment claims is DENIED.

## CONCLUSION

For the foregoing reasons, I STRIKE the Walgreen Plaintiffs' claims insofar as they are brought as indirect purchasers, with leave to amend, and DENY the remainder of defendants' motion to dismiss.

**IT IS SO ORDERED**.

Dated: July 17, 2015



WILLIAM H. ORRICK
United States District Judge

12