SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

1440 NEW YORK AVENUE, N.W.

WASHINGTON, D.C. 20005-2111

———

TEL: (202) 371-7000

FAX: (202) 393-5760

**www.skadden.com**

FIRM/AFFILIATE OFFICES

———

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WILMINGTON

———

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO

August  6, 2015

Honorable William H. Orrick
United States District Judge
Northern District of California, San Francisco Division
450 Golden Gate Avenue
San Francisco, CA 94102

RE:      *In re Lidoderm Antitrust Litig*.; Case No. 14-md-2521-WHO

Dear Judge Orrick:

Pursuant to your Honor's standing order, Defendants and Direct Purchaser Plaintiffs ("DPPs") submit this Joint Statement regarding the pending discovery dispute between the parties regarding certain Requests for Production.[1]  Counsel have met and conferred multiple times regarding the dispute described below, but have reached an impasse.

## I.      Defendants' Statement

Defendants request the production of data and documents relating to DPPs' pricing and sales of Lidoderm and contracts with their customers.  DPPs object to the request as seeking "downstream" discovery that they contend is "irrelevant as a matter of law" based on the holdings of *Hanover Shoe v. United Shoe Machinery Corp*., 392 U.S. 481 (1978) and *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

Notably, DPPs do not object to the production of Lidoderm sales data on burden grounds, recognizing that it involves a process similar to their production of purchase data.  DPPs now protest that producing *documents* would impose an "unreasonable burden" (even though this was not raised during meet and confer discussions), but point to nothing more than the normal burdens of discovery.  Moreover, DPPs' objection is belied by the fact that two of the DPPs have already conducted company-wide electronic searches for "Lidoderm" and the other two DPPs would have to conduct only a targeted search of a limited number of custodians.

Instead, DPPs have taken the extreme position that they are immune from so-called "downstream" discovery *under all circumstances*.  In meet and confer conversations and in correspondence, DPPs argued that the requested information is "not relevant for any purpose," "absolutely irrelevant in an action brought by a direct purchaser" and "antithetical to the very

---

[1] *See* Defs' First Set of Requests for Prod. to Direct Purchaser Pls., Nos. 2, 6, 9, 11-16, 20, and 21 (Jan. 13, 2015) (Attachment A).  DPPs responded on March 16, 2015 (Attachment B).

Honorable William H. Orrick
August 6, 2015
Page 2

purposes of the federal antitrust laws." DPPs' position is incorrect for four reasons.

First, DPPs' categorical opposition to the requested discovery is fundamentally at odds with the liberal discovery under the Federal Rules of Civil Procedure[2] and the case law.[3]

Second, DPPs' sales data and documents (particularly those responsive to RFP Nos. 2, 6, 11, 13, 14, 20, 21) are relevant to Defendants' merits arguments that are not based on the "downstream" damages "pass-on" issues at the heart of *Hanover Shoe* and *Illinois Brick*. DPPs challenge Endo's supply of branded Lidoderm to Defendant Anda, Inc., the wholesaler affiliate of Defendant Actavis (then Watson), pursuant to the Settlement Agreement. (SAC ¶¶ 95, 98.) DPPs allege that this provision was anti-competitive, "ensured" Anda's sales "would not result in price competition" with Endo-supplied Lidoderm, and that "[Anda's] sales of branded Lidoderm did not increase output, reduce price, or increase consumer choice." (*Id*. ¶ 98.) To rebut these allegations and examine the effect Anda's sales had on competition in the wholesale market to supply retail pharmacies, Defendants logically require the sales data and documents of other participants in the wholesale market, *e.g.*, the DPPs.[4] The requested discovery, which will reflect wholesaler price and output levels and will allow for a comparison of DPPs' and Anda's prices for Lidoderm, is relevant to Defendants' contention that this provision was pro-competitive.[5] Finally, it is plainly inequitable for DPPs to allege Anda's sales have no positive effect on competition but deny Defendants discovery to challenge that allegation, as well as to request (and receive from Anda) discovery of its data and documents while refusing to reciprocate.[6]

Belatedly, in response to this letter, DPPs seemingly acknowledge the relevance of its sales, yet *still refuse* production. They argue Defendants should rely instead on IMS data, but aggregated IMS data do not allow for comparisons between specific companies, do not reflect all relevant discounts and rebates, and are simply inadequate for the contemplated analyses. DPPs also argue that to the extent ordered to produce data, it should be limited to their chosen time period (Jan.-Aug. 2013), effectively prohibiting Defendants from investigating how pricing

---

[2] *See, e.g., Quintana v. Claire's Boutiques, Inc.*, 2014 WL 3371847, at *2 (N.D. Cal. July 9, 2014) ("Both the Supreme Court and the Ninth Circuit have accepted that the right to discovery must be 'accorded a broad and liberal treatment.'"); *Thought, Inc. v. Oracle Corp.*, 2014 WL 3940294, at *2 (N.D. Cal. Aug. 11, 2014) (party opposing discovery bears burden "of showing that discovery should not be allowed") (internal quotation marks omitted).

[3] As the court in *Urethane Antitrust Litigation* found after surveying the law: "[N]either *Hanover Shoe* nor *Illinois Brick* holds that downstream data is irrelevant or non-discoverable. . . . Nor can it be said that any courts interpreting *Hanover Shoe* hold downstream data irrelevant as a general rule." 237 F.R.D. 454, 462-63 (D. Kan. 2006). The decisions in *Braintree Labs, Inc. v. McKesson Corp*., 2011 WL 5025096 (N.D. Cal. Oct. 20, 2011) and *Meijer, Inc. v. Abbott Labs*., 251 F.R.D. 431 (N.D. Cal. 2008), are not to the contrary, because they considered the narrow issue of whether downstream discovery was relevant to adequacy and commonality under Rule 23 and did not consider relevance for merits, damages or class certification predominance. Plaintiffs repeatedly overstate their holdings.

[4] Plaintiffs make the illogical argument that Actavis can rebut allegations about the lack of "price competition" by looking only at Anda's prices and not the prices of the competition. Yet, in *Pressure Sensitive Labelstock Antitrust Litig*., the court held defendants "may be able to engage in discovery" of a plaintiff "selling to customers in common with Defendants" while denying other "wide-ranging discovery." 226 F.R.D. 492, 498 n.2 (M.D. Pa. 2005).

[5] Courts grant "downstream" discovery where relevant to merits defenses. *See Urethane*, 2010 WL 10876331, at *4 (D. Kan. Jan. 20, 2010) (compelling downstream discovery to show "non-collusive explanation exists for defendants' conduct"); *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc*., 2004 WL 7081790, at *4-5 (S.D. Ohio June 7, 2004) (compelling downstream discovery of wholesalers so that defendants can explore merits causation issue).

[6] *Cf. Stewart Title Guar. Co. v. Credit Suisse*, 2015 WL 1481341, at *2 (D. Idaho Mar. 31, 2015) ("Credit Suisse argues that discovery is not a one-way street, and that if Stewart Title is entitled to inquire into the mitigation of damages issue, Credit Suisse should be entitled to reciprocal discovery. The Court agrees.").

Honorable William H. Orrick
August 6, 2015
Page 3

compared to that occurring before or after that period and ignoring the fact that Anda and DPPs sold Lidoderm outside that period. Moreover, DPPs refuse to produce any *documents* (contracts, price lists or policies, offer sheets, etc.) that relate to and provide the terms and conditions of the relevant sales and would, therefore, be as relevant as the data.

Third, even in the "downstream" context emphasized by DPPs, the requested information is relevant to damages and class certification's predominance inquiry. DPPs claim damages based on the allegation that in a "but for" world, where Defendants did not enter into the challenged Settlement Agreement, generic Lidoderm would have been sold as early as August 23, 2012, and in all cases prior to September 15, 2013. (SAC ¶¶ 142, 144.) Overcharge damages are "predicated on determining the prices *and quantities* . . . that would have prevailed but for the alleged anticompetitive behavior." ABA, Section of Antitrust Law, PROVING ANTITRUST DAMAGES 199 (2010) (emphasis added). Retail pharmacies tend to purchase brand pharmaceuticals from wholesalers, like DPPs, but often "bypass" the wholesalers and purchase directly from the generic manufacturers. Thus, in a but for world of earlier generic entry, DPPs would purchase and resell fewer brand units. The failure to account for this demand-side phenomena would allow DPPs to recover fictional overcharges and damages. Courts have recognized that generic bypass is an issue relevant to calculation of damages.[7]

Finally, courts permit discovery of the type requested (particularly RFP Nos. 11, 12, 15, 21) to determine whether the "cost-plus" exception to the pass-on defense is applicable.[8] DPPs now concede the relevance of this inquiry, offering to produce "relevant contracts," but then attempt to avoid discovery by claiming not to possess the types of contracts to sell Lidoderm that track their view of the law and unverified understanding of the facts.

Defendants respectfully request that the Court compel production because the *de minimis* burden associated with producing the requested information is outweighed by the information's clear relevance to the issues *in this case*, which DPPs are hard-pressed to deny.

## II.    Direct Purchaser Plaintiffs' Statement

Defendants' request for downstream data and documents relating to DPPs' sales of Lidoderm and contracts with customers seeks discovery that is irrelevant as a matter of law. In addition, production of downstream discovery is unduly burdensome, at least for anything beyond limited sales data.[9]

---

[7] *See, e.g., In re Nexium Antitrust Litig.*, 296 F.R.D. 47, 56 (D. Mass. 2013) ("generic bypass primarily affects the measure of damages"); *In re K-Dur Antitrust Litig.*, 2008 WL 2699390, at *15 (D.N.J. Apr. 14, 2008) ("effects of generic bypass relate to the quantum of damages"); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 317 (E.D. Mich. 2001) (may not "ignore the effect of . . . by-pass" so that plaintiffs "will not overstate the extent" of damages). The requested discovery also will be relevant to testing whether the model controls for demand variables like generic bypass and "measure[s] only those damages attributable to" the alleged wrongful conduct. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). While some courts have weighed into this complex subject in the discovery phase, they have looked primarily into different issues of lost profits and intra-class conflicts.

[8] *See Meijer, Inc. v. Warner Chilcott Holdings Co.*, 245 F.R.D. 26, 35 (D.D.C. 2007) (ordering production of documents to determine applicability of "cost-plus" exception); *Hypodermic Product Direct Purchaser Antitrust Litig.*, 2006 WL 6907107, at *39-40 (D. N.J. Sept. 7, 2006) (permitting discovery of contracts to ascertain the existence of "cost-plus" exception). DPPs' argument that the exception does not apply here is premature.

[9] Defendants argue that DPPs have not previously objected to downstream discovery on burden grounds, but this is incorrect. *E.g.*, Attachment B, Extract of DPPs' Objections and Responses to Defendants' First Request for Production of Documents, at Response No. 47.

Honorable William H. Orrick
August 6, 2015
Page 4

First, virtually all courts have prohibited downstream discovery from direct purchasers in pharmaceutical antitrust cases. Under *Hanover Shoe v. United Shoe Mach. Corp*., 392 U.S. 481, 492-95 (1968) and *Ill. Brick Co. v. Ill.*, 431 U.S. 720, 724 (1977), a direct purchaser may recover the "full amount" of an overcharge, and the downstream effect of the overcharge on the direct purchaser's own prices, sales, and profits is irrelevant as matter of law. Accordingly, two courts in this District have denied requests for downstream discovery in actions by drug wholesalers against brand manufacturers alleging unlawful generic delay. *See Meijer, Inc. v. Abbott Labs.*, 251 F.R.D. 431, 433 (N.D. Cal. 2008) (the "downstream sales information Abbott seeks is not relevant to any issue to be tried in this case"); *Braintree Labs., Inc. v. McKesson Corp.*, 2011 WL 5025096, at *2 (N.D. Cal. Oct. 20, 2011) (same; "the Supreme Court reaffirmed its *Hanover Shoe* holding in *Illinois Brick Co. v. Illinois* and it is still the law today.").[10]

Second, such discovery is unnecessary for "a comparison of DPPs' and Anda, Inc.'s prices for Lidoderm," to purportedly allow Defendants to explore whether the reverse payment of free product purportedly "allowed" Watson's subsidiary Anda, Inc. ("Anda") to in, turn, sell branded Lidoderm to pharmacies at a lower price than DPPs. Because Anda sold branded Lidoderm even prior to Watson's receiving free Lidoderm from Endo, Defendants need not look at anything more than Anda's own sales data to determine whether Anda lowered its price of branded Lidoderm when it started selling the free branded Lidoderm Watson received from Endo.[11] And this argument, which Defendants call "a merits issue unique to this case," *at most* would justify production by the DPPs of their sales *data* for branded Lidoderm during the time (January-August 2013) Watson received its free product from Endo and resold it through Anda.[12]

_____

[10] *See also In re K-Dur Antitrust Litig.*, 2007 WL 5302308, *12 (D.N.J. Jan. 2, 2007) ("downstream discovery is irrelevant as a matter of law"). Courts across the country deny such discovery regardless of the requestor's theory of relevance. *See In re Plasma-Derivative Protein Therapies Antitrust Litig*., 2012 WL 1533221, *2 (N.D. Ill. Apr. 27, 2012) (discovery denied even though "defendants are not seeking the downstream data in order to assert a pass-on defense"); *In re Aspartame Antitrust Litig*., 2008 WL 2275528, *4 (E.D. Pa. Apr. 8, 2008) (denied for purposes of showing "(a) the market for aspartame, (b) the fungibility and substitutability of sweeteners; and (c) Plaintiffs' buying power, market position and demand elasticity"); *In re Hypodermic Prod. Direct Purchaser Antitrust Litig*., 2006 WL 6907107, *13 (D.N.J. Sept. 7, 2006) (denied to "establish that Plaintiffs lack injury or standing"); *In re Auto. Refinishing Paint Antitrust Litig*., 2006 WL 1479819, *7 (E.D. Pa. May 26, 2006) (denied "where, as here, no pass-on defense is being asserted"); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497 (M.D. Pa. 2005) (denied to explore "whether a conflict of interest exists among the named and unnamed members of the class"); *In re Vitamins Antitrust Litig*., 198 F.R.D. 296, 299-300 (D.D.C. 2000) (denied to determine "consumer demand which, according to [defendants], is a relevant factor in the calculation of 'but for' prices that will be determinative of plaintiffs' damages"); *In re Folding Carton Antitrust Litig.*, 1978 U.S. Dist. LEXIS 20409, *9 (N.D. Ill. May 5, 1978) ("Whether purchasers absorbed, passed-on, or made a profit on the overcharges in comparison with the industry generally is irrelevant, and investigations into such matters are proscribed by *Illinois Brick*.").

[11] Alternatively, Defendants can use the commercially-available, market-wide IMS data they already possess. *See, e.g.*, ACTLIDODERM-00024922, ENDO-LID-AT-000254214, TEI-AT0188417, TEI-AT0210670. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) and (iii). IMS data has nationwide coverage and thus is superior to the sought data from a few class representatives. *See Vitamins*, 198 F.R.D. at 299 (production of individual plaintiff data unnecessary where public information available to assess the impact of demand on damages); *K-Dur*, 2007 WL 5302308, at *14 ("It also appears that the information the Defendants seek is available from IMS Health on a market-wide basis.").

[12] Defendants mischaracterize *Pressure Sensitive Labelstock* as holding to the contrary, but that is simply wrong. *See* 226 F.R.D. at 498 n.2 ("Those two instances [where plaintiffs and defendant sold to common customers], however, do *not* justify the wide-ranging discovery that Defendants would like to pursue.") (emphasis added).

Honorable William H. Orrick
August 6, 2015
Page 5

Defendants do not explain the need for downstream discovery *documents*, which are burdensome to produce[13] and would be cumulative of DPPs sales data.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

Third, generic "bypass" is irrelevant as a matter of law to class certification and damages and cannot justify downstream discovery.  Bypass occurs when *indirect* purchasers of the brand (mostly large retailers who buy the brand from wholesalers) buy the generic directly from generic manufacturers, bypassing wholesalers for those units.  The cited decisions (including two by this Court) unanimously hold that this phenomenon is irrelevant to class certification or overcharge damages.[14]

Fourth, even though the continued vitality of the "cost-plus contract" doctrine is "doubtful,"[15] DPPs have nevertheless agreed to produce any relevant contracts.  But DPPs have disclosed that no DPP possesses contracts involving the selling of Lidoderm or generic Lidoderm, [1] entered into prior to August 23, 2012 (when overcharges in this case began), that provide that the DPP's customer [2] must buy a fixed quantity of the drug regardless of price.  This is the definition of a "cost-plus" contract under the law.[16]  Thus, no further discovery is warranted, according to a decision Defendants themselves cite.[17]

---

[13] The burden is that two DPPs would have to review and produce additional documents from the set already collected, and two other DPPs would have to search multiple email and document/data sets for additional employees, which will substantially increase the volume of documents to be reviewed and produced.

[14] *See In re K-Dur Antitrust Litig.*, 686 F.3d 197, 220-21 (3d Cir. 2012) (bypass argument is "simply a version of the so-called 'passing-on defense' that was rejected by the Supreme Court in *Hanover Shoe*"); *In re Niaspan Antitrust Litig.*, 2015 WL 4197590, at *1-2 (E.D. Pa. July 9, 2015) (same); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2002887, at *4-5 (E.D. Tenn. May 15, 2014) (same) (quoting *In re Relafen Antitrust Litig.*, 346 F. Supp. 2d 349, 370 (D. Mass. 2004) (same)); *In re Prograf Antitrust Litig.*, 2014 WL 7641156, at *4 (D. Mass. Dec. 23, 2014) (same); *Braintree Labs v. McKesson Corp.*, 2011 WL 5025096 (N.D. Cal. Oct. 20, 2011) (same); *Meijer, Inc. v. Abbott Labs.*, 251 F.R.D. 431, 433-36 (N.D. Cal. 2008) (same); *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293, 303 & n.9 (D.D.C. 2007) (same).  *Relafen* was decided by Judge Young, who later "adhere[d]" to his *Relafen* ruling in *Nexium* (contrary to defendants' incorrect suggestion).  *See In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47, 56 (D. Mass. 2013) ("generic bypass cannot preclude recovery").

[15] *See McCarthy v. Recordex Servs., Inc.*, 80 F.3d 842, 855 (3d Cir. 1996).

[16] *See In re Wyoming Tight Sands Antitrust Cases*, 866 F.2d 1286, 1290 (10th Cir. 1989) (exception "requir[es] a pre-existing cost-plus contract for a fixed quantity," and noting that "the Supreme Court did not say this would constitute an exception but rather that it 'might be'"), *aff'd sub nom. Kan. v. UtiliCorp United Inc.*, 497 U.S. 199 (1990).  Therefore, to be a qualifying "cost-plus" contract within the meaning of *Illinois Brick*, the agreement at issue must have, at a minimum, two particular qualities:  *First*, it must pre-exist the overcharge, so as to prevent the indirect purchaser from reacting to the overcharge.  *See Utilicorp*, 497 U.S. at 218 ("respondent did not sell . . . under a *pre-existing* cost-plus contract") (emphasis added); *McCarthy*, 80 F.3d at 855 (requirements include "a *pre-existing* agreement") (emphasis in original).  *Second*, it must be for a *fixed quantity*, regardless of the price charged to the indirect purchaser by the direct purchaser.  *See Ill. Brick*, 431 U.S. at 736 ("customer is committed to buying a fixed quantity regardless of price"); *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1066-67 (E.D. Cal. 2011) ("In a 'cost-plus' contract, the customer is committed to buying a fixed quantity regardless of the price.").  Contracts or other arrangements not meeting this strict definition do not suffice.  *See Meijer, Inc. v. Abbott Labs.*, 251 F.R.D. 431, 433-36 (N.D. Cal. 2008) (cost-plus "pricing" insufficient); *Pressure Sensitive Labelstock*, 226 F.R.D. at 498 ("functional equivalent" of cost-plus contract insufficient); *Dahl v. Bain Capital Partners, LLC*, 760 F. Supp. 2d 196, 202 (D. Mass. 2011) (same).

[17] *Pressure Sensitive Labelstock*, 226 F.R.D. at 498 (denying discovery of cost-plus contracts where defendants were "not content with the negative responses they have received" from plaintiffs that they had no such contracts).

Honorable William H. Orrick
August 6, 2015
Page 6

Respectfully submitted,

  /s/ Karen Hoffman Lent
Steven C. Sunshine (admitted *pro hac vice*)
Sean M. Tepe (admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP**
1440 New York Ave. NW
Washington, D.C.  20005
Telephone:  202.371.7000
Facsimile:  202.393.5760
Email: Steve.Sunshine@skadden.com
Email: Sean.Tepe@skadden.com

Karen Hoffman Lent (admitted *pro hac vice*)
**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP**
Four Times Square
New York, NY  10036
Telephone: 212.735.3000
Facsimile:  917.777.3000
Email: Karen.Lent@skadden.com

James P. Schaefer
**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP**
525 University Avenue, Suite 1100
Palo Alto, California 94301
Telephone: 650.470.4500
Facsimile:  650.470.4570
Email: james.schaefer@skadden.com

*Attorneys for Defendants
Actavis Inc. (f/k/a Watson Pharmaceuticals,
Inc.) Watson Laboratories, Inc. and
Actavis, plc*

  /s/ Peter Kohn
Peter R. Kohn
Joseph T. Lukens
**FARUQI & FARUQI LLP**
101 Greenwood Avenue
Suite 600
Jenkintown, PA 19046
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
Email: pkohn@faruqilaw.com

  /s/ David Nalven
Thomas M. Sobol
David S. Nalven
Donna M. Evans
**HAGENS BERMAN SOBOL SHAPIRO
LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Email: tom@hbsslaw.com
Email: davidn@hbsslaw.com

  /s/ Noah Silverman
Bruce E. Gerstein
Noah Silverman
Ephraim R. Gerstein
**GARWIN GERSTEIN & FISHER LLP**
88 Pine Street, 10th Floor
New York, NY 10005
Telephone: (212) 398-0055
Facsimile: (212) 764-6620
Email: bgerstein@garwingerstein.com
Email: nsilverman@garwingerstein.com
Email: egerstein@garwingerstein.com

*Interim Co-Lead Counsel for the proposed
Direct Purchaser Class*

Honorable William H. Orrick
August 6, 2015
Page 7

  /s/ Daniel B. Asimow
Daniel B. Asimow
**ARNOLD & PORTER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone:    415.471.3100
Facsimile:    415.471.3400
Email: daniel.asimow@aporter.com

Jonathan L. Stern (admitted *pro hac vice*)
Ryan Z. Watts (admitted *pro hac vice*)
**ARNOLD & PORTER LLP**
555 12th Street NW
Washington, D.C. 20004
Telephone:    202.942.5000
Facsimile:    202.942.5999
Email: jonathan.stern@aporter.com
Email: ryan.watts@aporter.com

*Attorneys for Defendant*
*Endo Pharmaceuticals Inc.*

  /s/ Joseph Meckes
Joseph A. Meckes
David S. Elkins
Nathan Lane III
Noriyuki Shimoda
**SQUIRE PATTON BOGGS (US) LLP**
275 Battery Street, 26th Floor
San Francisco, CA  94111
Telephone:  415.954.0200
Facsimile:  415.393.9887
Email: Joseph.Meckes@squiresanders.com

*Attorneys for Defendants*
*Teikoku Seiyaku Co., Ltd. and*
*Teikoku Pharma USA, Inc.*

Honorable William H. Orrick
August 6, 2015
Page 8

## FILER'S ATTESTATION

I, Karen Hoffman Lent, am the ECF user whose identification and password are being

used to file this JOINT DISCOVERY LETTER BRIEF.  In compliance with Local Rule 5-

1(i)(3), I hereby attest that all signatories hereto concur in this filing.

/s/ Karen Hoffman Lent