SEATTLE   BOSTON   CHICAGO   COLORADO SPRINGS   LOS ANGELES   PHOENIX   SAN FRANCISCO   WASHINGTON, D.C.   617.482.3700   F 617.482.3003

**HAGENS BERMAN**

Honorable William H. Orrick                                          October 1, 2015
United States District Judge
Northern District of California, San Francisco Division
450 Golden Gate Avenue
San Francisco, CA 94102

                         RE:      *In re Lidoderm Antitrust Litig*.; Case No. 14-md-2521-WHO

Dear Judge Orrick:

       Plaintiffs and Defendant Endo Pharmaceuticals Inc. submit this Joint Statement setting forth the parties' dispute concerning 10 documents that Endo has "clawed back" based on claims that the documents were inadvertently produced and are privileged and work product. Counsel have met and conferred multiple times, but are at an impasse.

**I.     Plaintiffs' Statement**

       *Relief requested*. Plaintiffs respectfully request that the Court: (1) conduct an *in camera* review of the documents Endo clawed back,[1] and (2) order Endo to produce the documents in their entirety or, order that only actual legal advice may be redacted from the 10 drafts.[2]

       *Background/Position*. In July 2012, after signing the reverse payment deal, Endo sent a letter to the SEC's Accounting Group – Interpretations department, purporting to describe the deal and seeking pre-clearance of proposed accounting treatment for its payment of free goods to Watson.[3] The letter was sent pursuant to an SEC guidance document which encouraged companies and their auditors to consult the SEC regarding accounting, financial reporting, and auditing concerns or questions. There are three independent reasons these documents are not privileged. First, according to Endo's own privilege log, all 10 of the drafts were exchanged between non-lawyer Endo employees and non-lawyer accountants at Deloitte LLP, which provided accounting services related to the treatment of the reverse payments addressed by the letter, a business matter of financial reporting. Second, based on the final letter, the 10 drafts must reference non-privileged business information and facts (including, for example, the "extensive negotiations between Watson and [Endo]"). Third, the drafts are not privileged because third-party Deloitte was not engaged by outside counsel to translate client information in order for outside counsel to render legal advice to the client. Thus, they do not fall within the protection afforded by *Kovel*, and because Endo waived any purported privilege by its disclosure of the drafts to third party Deloitte.[4]

---

[1] The 10 documents bear privilege log Bates numbers: P_ENDO-LID-AT0029924 through AT0029933.
[2] A district court may conduct an *in camera* inspection of withheld documents and require an explanation of how the asserted privilege applies. *See Clarke v. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992).
[3] ENDO-LID-AT000624973.
[4] *See United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (Friendly, J.); *see also United States. v. Gurtner*, 474 F.2d 297, 299 (9th Cir.1973). The June 12, 2012 engagement letter, DT000404-425, by and between Deloitte & Touche LLP, the Chair of the Audit Committee of Endo Health Solutions Inc., and the Executive Vice President and CFO of Endo Health Solutions Inc. and its subsidiaries, engaged Deloitte soley for independent business accounting services. Deloitte was not engaged by Endo's lawyers to assist in the provision of legal advice or otherwise.

Honorable William H. Orrick
October 1, 2015
Page 2

    Beginning April 4, 2014, before document production in this case, Endo produced documents to the FTC, including the 10 draft pre-clearance letters. Endo withheld other drafts of the letter based on attorney-client privilege and work product.[5] In January 2015, Endo made the same production to Plaintiffs. On June 3, 2015, Endo clawed them back, claiming inadvertent production. The privilege log Endo supplied with its clawback demand does not disclose any lawyers as senders or recipients of the clawbacks. It does list receipt by outside accountants from Deloitte.

    *Basis for requested relief:* Endo has not met its burden to prove that privilege or work product protection applies to the 10 drafts.[6] Accordingly, the Court should order Endo to produce the 10 documents in their entirety or in redacted form.

    *First*, the 10 drafts are not privileged. None of these drafts, as reflected in Endo's privilege log, shows lawyer involvement. Moreover, the pre-clearance letter involves business activity, not legal activity. It responds to an SEC invitation for advice on "accounting, financial reporting, and auditing concerns."[7] It was signed by Endo's CFO, not general counsel. Endo admits that the draft letters in question were not even cc'd to a lawyer. To the extent lawyers received, edited or forwarded other drafts (not at issue here), that does not make the 10 drafts at issue privileged. Nor does work-product protection apply, as the pre-clearance letter was not prepared in anticipation of litigation, and the facts in *eSpeed*, relied on by Endo, are not applicable here.[8]

    *Second,* even if Endo proffers evidence suggesting involvement of lawyers as lawyers, if the drafts reflect Endo's and Watson's own statements to one another during the reverse payment agreement negotiations (as the final letter does), then the drafts convey facts – not legal advice – that are not themselves privileged. Statements between litigation adversaries (as Endo and Watson were when they negotiated the settlement) are not privileged,[9] and such non-privileged statements do not become privileged simply because they are inserted into a document that passes before counsel's eyes or are communicated between counsel and client. Attorney-client communication of statements to or from third parties, or other non-confidential information, is not privileged.[10] Even if some portion of the drafts explicitly contained attorney comments

---

[5] Much of Endo's response to Plaintiffs' argument relates to other drafts that it claims were received or reviewed by Endo lawyers. Those other drafts are not at issue at this time.

[6] *Weil v. Investment/Indicators Research & Management*, 647 F.2d 18, 25 (9th Cir.1981) (burden of proof rests on party asserting privilege).

[7] *See, e.g.*, *Christman v. Brauvin Realty Advisors, Inc.*, 185 F.R.D. 251, 256 (N.D. Ill. 1999) (drafts of proxy statements and lawyers' comments thereto are not legal advice and are not privileged); *United States v. Richey*, 632 F.3d 559, 566-67 (9th Cir. 2011) (communications related to preparation and drafting of an appraisal for submission to the IRS are not made for the purpose of providing legal advice, and therefore not privileged or work product).

[8] The pre-clearance letter does not concern litigation, but accounting treatment of a settlement payment, and was prepared *after* Endo reached a settlement concluding its litigation with Watson, not in anticipation of it. *See LightGuard Systems, Inc. v. Spot Device, Inc.*, 381 F.R.D. 593, 602 (D. Nev. 2012) (no work product protection where the challenged document "makes no mention of impending litigation"). Nor was the letter written "because of" the prospect of litigation. *See Richey*, 632 F.3d at 567-68 (appraisal prepared in anticipation of IRS audit not work-product protected).

[9] *See Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 579-80 (N.D. Cal. 2007) (legal document made in the course of negotiating a commercial transaction was not privileged where the parties had opposing interests).

[10] *See United States v. Posin*, 1993 WL 230270 (9th Cir. June 29, 1993) (attorney communications to a client transmitting non-confidential information is not privileged); *United States v. Osborn*, 561 F.2d 1334, 1337-39 (9th Cir. 1977) (factual information does not become privileged merely because it passes through an attorney's hands);

providing legal advice, only that portion could arguably be redacted, leaving the factual statements, including Endo's and Watson's non-privileged statements, unredacted. This issue was addressed in *Softview Computer Prods. Corp. v. Haworth, Inc.*, No. 97 Civ. 8815 KMWHBP, 2000 WL 351411, at *55 (S.D.N.Y. Mar. 21, 2000) (counsel's summary of a meeting with a competitor and licensing terms that were offered to the competitor was not privileged at all and draft communications with a third party that had counsel's notes should be produced with only the notes redacted).

*Third* – and perhaps most importantly – where (as here) an outside accountant participates in the communications, and "what is sought is not legal advice but only accounting service . . . no privilege exists."[11] There is no privilege where "the accountant is enlisted merely to give his or her own advice about the client's situation."[12] Here, Endo and Deloitte's engagement letter shows that Deloitte was engaged by Endo business people for business advice in the form of an independent audit. Deloitte was *not* engaged by outside counsel and was *not* engaged to provide legal advice or interpret client data for counsel, as *Kovel* requires for attorney-client or work product protections to apply. The 10 draft letters were exchanged solely between financial personnel: Riviello (Deloitte), Casten (Endo Dir. Financial Reporting), Rudio (Endo Sr. Dir. Finance & Accounting), and Orlando (Sr. Mgr. Technical Accounting & Compliance). Endo does not explain how the clawed-back drafts are immune from the rule of *Kovel*,[13] and the cases it cites are inapposite.

## II. Defendant Endo's Statement

Endo agrees that an *in camera* review is necessary to resolve the issues Plaintiffs raise regarding the drafts of Endo's letter to the SEC (the "Letter"). Endo also requests an opportunity to submit additional briefing to provide individualized explanations of and, if necessary, evidentiary support for Endo's privilege assertions, which cannot fully be provided here.

The documents at issue are various drafts of the Letter, the final version of which was sent to the SEC to obtain regulatory guidance concerning the proper accounting for Endo's patent litigation settlement with Watson. The final version of the Letter has been produced to Plaintiffs. Endo, however, consistently has withheld from production drafts of the Letter because such drafts reflect the advice of legal counsel or counsel's work product and/or were sent to legal counsel for the purpose of obtaining legal advice. Endo discovered that the drafts at issue here had been inadvertently produced and promptly requested their return pursuant to Section 8.1 of

---

*United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990) (attorney's communication to a client relaying statement of third party was not privileged); *Elec. Frontier Found. v. CIA*, 2013 WL 5443048 (N.D. Cal. Sept. 30, 2013) ("information . . . known by or disclosed to any third party" is not privileged); *Softview*, 2000 WL 351411, at *56 (defendant's counsel's report of a meeting with a competitor's attorney, which summarized the licensing terms that the defendant offered to the competitor, was not privileged).

[11] *Kovel*, 296 F.2d at 922; *see also Gurtner*, 474 F.2d at 299 (taxpayer's consultations with accountant for purposes of preparing tax returns did not fall within privilege, even where accountant worked with taxpayer's attorney and attorney advised taxpayer to consult with accountant); *Samuels v. Mitchell,* 155 F.R.D. 195, 199 (N.D. Cal. 1994) (attorney-client privilege waived when documents were disclosed to accountant Ernst & Young not to obtain assistance in rendering legal advice).

[12] *United States v. ChevronTexaco Corp.,* 241 F.Supp.2d 1065, 1072 (N.D. Cal. 2002) (citing *Kovel*).

[13] *Judson* cited below is unavailing. In *Judson*, the analysis (1) was created at the *attorney's* request, and (2) *solely* for *defense of his client* in a criminal tax case.

the Stipulated Protective Order (Doc. 37) and Rule 26(b)(5)(B). Contemporaneously, Endo clawed back the same documents from the FTC.

Not surprisingly, Endo's legal department heavily vetted drafts of the Letter before the final version was sent. Members of Endo's finance team sought legal advice regarding the submission at the outset of the drafting process, and the record reflects extensive attorney involvement throughout. The drafts at issue thus reflect privileged communications between Endo's legal counsel and Endo's financial personnel, including a draft expressly reflecting legal advice in "tracked changes."

The language in the drafts was intended to be reviewed and, as appropriate, revised by legal counsel. Multiple versions of the drafts were sent to counsel for legal review at various points in the drafting process. Until the final version was sent to the SEC, the language in those drafts was subject to revision or comment by counsel. As courts have noted, "[d]raft documents ultimately sent to third parties retain their privilege if they were prepared for the purpose of obtaining legal advice and/or contain information a client considered but decided not to include in the final version."[14] Moreover, sharing privileged drafts with other Endo employees did not waive the privilege simply because the drafts were separately transmitted to those other employees.[15]

Plaintiffs' attempt to characterize drafts of a submission to a federal regulatory agency as "business activity" as opposed to "legal activity," and thus not privileged, is unsupported and proves too much. The attorney-client privilege attaches to draft business documents that are provided to counsel for the purpose of obtaining legal advice with respect to business activities.[16] That a company's attorneys provide legal advice on matters relating to the company's business does not deprive that advice of its legal nature. Moreover, the title of the individual who ultimately signed the Letter, which was also copied to Endo's then-chief legal officer, is irrelevant to whether the drafts are privileged.

At least some of the drafts of the Letter also reflect Endo's legal counsel's mental impressions[17] and legal strategies regarding the Watson patent litigation that are not included in the final version of the Letter that was submitted to the SEC and, therefore, are protected work product.[18] The fact that this work product was committed to writing after the settlement does not

---

[14] *United States v. New York Metro. Transp. Auth.*, 2006 WL 3833120, at *1 (E.D.N.Y. Dec. 29, 2006) (internal quotations omitted); *see also Macario v. Pratt & Whitney Canada, Inc.*, 1991 WL 6117, at *1 (E.D. Pa. Jan. 17, 1991) (draft was privileged because it was "contingent on [an attorney's] approval and subject to his revision" and thus "intended . . . to remain confidential until a final draft was achieved").

[15] *See Garvey v. Hulu, LLC*, 2015 WL 294850, at *2 (N.D. Cal. Jan. 21, 2015) ("[P]rivilege also extends to communications about the privileged material between non-attorneys who are properly privy to the privileged information" (quoting *United States v. Dish Network, L.L.C.*, 283 F.R.D. 420, 423 (C.D. Ill. 2012))).

[16] Plaintiffs' reliance on *Richey* is misplaced. There was no assertion by the party resisting production in *Richey* that any privileged communications even existed in the materials sought to be produced. 632 F.3d at 567. Furthermore, *Christman* provides no analysis and is thus unpersuasive. 185 F.R.D. 251 (N.D. Ill. 1999).

[17] *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 511-12 (1947) (mental impressions of lawyers prepared in anticipation of litigation are generally protected from discovery).

[18] *See F.T.C. v. Grolier Inc.*, 462 U.S. 19, 25 (1983) (noting that "the literal language of [Rule 26(b)(3)] protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent

detract from its work product status.[19] Moreover, certain of these attorney mental impressions were potentially applicable to other pending and possible future patent litigations.[20]

      Plaintiffs' assertion that the documents may contain "facts" misses the point that the drafts constitute communications to counsel for the purposes of seeking legal advice – those communications retain their privileged status even if they do discuss facts.[21] Indeed, *Softview*, cited by Plaintiffs, observed that "communications regarding negotiations and anticipated litigation strategy, and contain[ing] client confidences" are privileged. 2000 WL 351411, at *13.

      Finally, Endo did not waive attorney-client privilege or work product protection by obtaining input on certain privileged drafts from Endo's accounting firm, Deloitte. Deloitte kept these drafts in confidence and its input, at least in part, facilitated counsel's giving of legal advice to Endo.[22] The provision of work product to a third party does not waive the protection afforded such materials if the third party is not an "adversary or a conduit to a potential adversary."[23] Deloitte was neither Endo's adversary nor a conduit to an adversary.[24] The Deloitte retention letter, moreover, does not limit the scope of Endo's privileges.

      The pursuit of SEC pre-clearance was a collaborative effort between Endo's financial team and legal counsel, and at all times subject to attorney input and review. Drafts were provided to counsel for the purposes of seeking legal advice and certain of the drafts at issue explicitly reflect confidential legal advice from counsel. The drafts are therefore privileged.

---

litigation"); *see also Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, 2006 WL 2050999, at *5 (E.D. Cal. July 20, 2006) (clarifying that "work product is not limited to proceedings which are strictly related to each other").
[19] *See eSpeed, Inc. v. Bd. of Trade of City of Chicago, Inc.*, 2002 WL 827099, at *2 (S.D.N.Y. May 1, 2002) (work product from a prior case was privileged despite being committed to writing after the case had been settled).
[20] *See Cities Serv. Co. v. F.T.C.*, 627 F. Supp. 827, 832 (D.D.C. 1984) ("Any litigants who face litigation of a commonly recurring type . . . have an acute interest in keeping private the manner in which they conduct and settle recurring legal disputes." (quoting *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 31 (1983) (Brennan, J., concurring))).
[21] *See Upjohn*, 449 U.S. at 395-96 ("A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' . . ." (quoting *City of Philadelphia v. Westinghouse Electric Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962))); *Willnerd v. Sybase, Inc.*, 2010 WL 5391270, at *3 (D. Idaho Dec. 22, 2010) ("Even if the privilege does not attach to the underlying fact, communications of that fact are privileged."). Plaintiffs' authority is not to the contrary and inapplicable. *See Posin*, 1993 WL 230270, at *1 (holding that *the fact of whether attorney advised client* of a sentencing date is not confidential); *Osborn*, 561 F.2d at 1338-39 (addressing whether certain documents delivered to attorney could have been previously protected from disclosure by client's Fifth Amendment privilege); *Defazio,* 899 F.2d at 635 (observing that a lawyer's testimony concerning what an IRS agent said to the lawyer was not privileged); *Elec. Frontier Found.*, 2013 WL 5443048, at *16 (stating that communications must be kept confidential to maintain the privilege; Endo contends that the drafts are confidential).
[22] *Cf. United States v. Judson*, 322 F.2d 460, 462 (9th Cir. 1963) (accountant's role in preparing a net worth statement was "to facilitate an accurate and complete consultation between the client and the attorney").
[23] *S.E.C. v. Roberts*, 254 F.R.D. 371, 381-82 (N.D. Cal. 2008); *see also United States v. Deloitte LLP*, 610 F.3d 129, 140-43 (D.C. Cir. 2010) (work product protection was not waived because Deloitte was not a conduit to disclosing party's adversaries nor sufficiently adverse in relation to the sort of litigation the documents at issue addressed).
[24] *See Skynet Elec. Co., Ltd v. Flextronics Int'l, Ltd.*, 2013 WL 6623874, at *3 (N.D. Cal. Dec. 16, 2013) ("A voluntary waiver, however, only occurs when a party discloses protected information to a third party who is not bound to maintain its confidence, or otherwise shows disregard for the protection by making the information public.") (internal quotations omitted).

Respectfully submitted,

*/s/ Daniel B. Asimow*
Daniel B. Asimow
**ARNOLD & PORTER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone:   415.471.3100
Facsimile:    415.471.3400
Email: daniel.asimow@aporter.com

Jonathan L. Stern (admitted *pro hac vice*)
Steven G. Reade (admitted *pro hac vice*)
Ryan Z. Watts (admitted *pro hac vice*)
**ARNOLD & PORTER LLP**
601 Massachusetts Ave., NW
Washington, DC  20001
Telephone:   202.942.5000
Facsimile:    202.942.5999
Email: jonathan.stern@aporter.com
Email: steven.reade@aporter.com
Email: ryan.watts@aporter.com

*Attorneys for Defendant
Endo Pharmaceuticals Inc.*

*/s/ Peter R. Kohn*
Peter R. Kohn
Joseph T. Lukens
**FARUQI & FARUQI LLP**
101 Greenwood Avenue
Suite 600
Jenkintown, PA 19046
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
Email: pkohn@faruqilaw.com

*/s/ Thomas M. Sobol*
Thomas M. Sobol
David S. Nalven
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Email: tom@hbsslaw.com
Email: davidn@hbsslaw.com

*/s/ Bruce E. Gerstein*
Bruce E. Gerstein
Noah Silverman
Ephraim R. Gerstein
*GARWIN GERSTEIN & FISHER LLP*
88 Pine Street, 10th Floor
New York, NY 10005
Telephone: (212) 398-0055
Facsimile: (212) 764-6620
Email: bgerstein@garwingerstein.com
Email: nsilverman@garwingerstein.com
Email: egerstein@garwingerstein.com

*Interim Co-Lead Counsel for the proposed Direct Purchaser Class*

*/s/ Dena C. Sharp*
Daniel C. Girard (SBN 114826)
Dena C. Sharp (SBN 245869)
**GIRARD GIBBS LLP**

601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dcg@girardgibbs.com
Email: chc@girardgibbs.com

*/s/ Renae D. Steiner*
Renae D. Steiner
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: rsteiner@heinsmills.com

*/s/ J. Douglas Richards*
J. Douglas Richards
Sharon K. Robertson
Donna M. Evans
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 758-3042
Facsimile: (212) 838-7745
Email: drichards@cohenmilstein.com

*Interim Co-Lead Counsel for the proposed End-Payor Class*

Joseph R. Saveri
Joshua P. Davis
Andrew M. Purdy
Ryan J. McEwan
**JOSEPH SAVERI LAW FIRM, INC.**
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com

*Interim Liaison Counsel for the proposed End-Payor Class Plaintiffs*

/s/ Barry L. Refsin
Barry L. Refsin
**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
One Logan Square, 27th Floor
Philadelphia, PA 19103
Telephone: (215) 496-7031
Facsimile: (215) 568-0300
Email: brefsin@hangley.com

Monica L. Rebuck
Eric L. Bloom
**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
4400 Deer Path Road, Suite 200
Harrisburg, PA 17110
Telephone: (717) 364-1007
Facsimile: (717) 234-3982
Email: mrebuck@hangley.com

*Attorneys for Rite Aid Plaintiffs*

/s/ Anna T. Neill
Anna T. Neill
Scott E. Perwin
Lauren C. Ravkind
**KENNY NACHWALTER P.A.**
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
Email: aneill@knpa.com

*Attorneys for Walgreen Plaintiffs*

## ATTESTATION

I, Dena C. Sharp, am the ECF User whose ID and password are being used to file this Joint Discovery Letter Brief. In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, have concurred in this filing.

/s/ Dena C. Sharp
Dena C. Sharp

**CERTIFICATE OF SERVICE**

I, Dena C. Sharp, hereby certify that on October 1, 2015, I caused the foregoing document to be filed electronically with the United States District Court for the Northern District of California's through the Court's mandated ECF service. Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of efiling.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of October, 2015 at San Francisco, California.

*/s/ Dena C. Sharp*