[Submitting Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | **PLAINTIFFS' MOTION FOR PRODUCTION OR ALTERNATIVELY FOR PRECLUSION OF EVIDENCE AT SUMMARY JUDGMENT AND TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: November 10, 2015<br>Time: 3:00p.m.<br>Courtroom: Courtroom 2, 17th Floor<br>Judge: Hon. William H. Orrick |

REDACTED

**TO THE COURT, THE PARTIES, AND ALL COUNSEL OF RECORD**

Please take notice that on November 10, 2015 at 3:00 p.m. or as soon thereafter as the matter may be heard by the Court, at the courtroom of the Honorable William H. Orrick, Courtroom 2, 17th Floor, United States District Court, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs will and hereby do move the Court for order requiring production or alternatively precluding the presentation of evidence at summary judgment and trial.

This motion is brought on the grounds that Endo has affirmatively placed "at issue" in this case: (a) Endo's internal opinions and beliefs regarding the strength of its patent suits against Watson regarding generic Lidoderm; (b) Endo's purported reasons for settling those patent suits with Watson in May 2012; and (c) Endo's internal beliefs, intent, and reasons relating to the challenged reverse payments to Watson in connection with the settlement.  In so doing, Endo has waived its attorney-client privilege and work-product claims for documents and communications regarding these specific topics. Plaintiffs seek the production of those withheld documents, or, in the alternative, an order requiring an election of waiver of the privilege claims or preclusion of use of the relevant assertions and evidence at summary judgment or trial.

The points and authorities supporting this motion follow in the attached Memorandum.

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. RELEVANT FACTS ........ 4

A. Endo's Affirmative Assertions that It Expected to Win the Patent Case ........ 5

B. Endo's Affirmative Assertions About Its "Beliefs" and "Intent" Regarding the Payments ........ 6

III. LEGAL DISCUSSION ........ 9

A. The Privilege May Not be Used as Both a Sword and a Shield ........ 9

B. Endo Has Waived the Privilege as to Beliefs and Purposes It Has Placed at Issue ........ 13

C. In the Alternative, the Court Should Order Endo to Make a Defense Election ........ 15

IV. CONCLUSION ........ 17

i

PLAINTIFFS' MOTION FOR PRODUCTION OR ALTERNATIVELY FOR PRECLUSION OF EVIDENCE AT SUMMARY JUDGMENT AND TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
MDL DOCKET NO. 14-md-02521-WHO

## TABLE OF AUTHORITIES

**Cases**

*Adam Friedman Assocs. LLC v. MediaG3, Inc.* 2012 WL 1563942 (S.D.N.Y. May 1, 2012) ........ 12

*Apple Inc. v. Samsung Elecs. Co.* 306 F.R.D. 234 (N.D. Cal. 2015) ........ 11, 14

*Arista Records LLC v. Lime Group LLC* 2011 U.S. Dist. LEXIS 42881 (S.D.N.Y. Apr. 14, 2011) ........ 12

*Belmont Textile Mach. Co. v. Superba, S.A.* 48 F. Supp. 2d 521 (W.D.N.C. 1999) ........ 16

*Bittaker v. Woodford* 331 F.3d 715 (9th Cir. 2003) ........ 11, 17

*Bowne of New York City, Inc. v. AmBase Corp.* 150 F.R.D. 465 (S.D.N.Y. 1993) ........ 12

*Brown v. United States* 356 U.S. 148 (1958) ........ 10, 11

*Chevron Corp. v. Donziger* 2013 WL 6182744 (S.D.N.Y. Nov. 21, 2013) ........ 12

*Chevron Corp. v. Pennzoil Co.* 974 F.2d 1156 (9th Cir. 1992) ........ 11, 12, 13

*Claffey v. River Oaks Hyundai* 486 F. Supp. 2d 776 (N.D. Ill. 2007) ........ 11

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.* 259 F.3d 1186 (9th Cir. 2001) ........ 17

*Elec. Frontier Found. v. CIA* 2013 WL 5443048 (N.D. Cal. Sept. 30, 2013) ........ 8

*F.T.C. v. Actavis, Inc.* 133 S. Ct. 2223 (2013) ........ 1, 2

*Fox v. Cal. Sierra Fin. Servs.* 120 F.R.D. 520 (N.D. Cal. 1988) ........ 15

*Handgards, Inc. v. Johnson & Johnson* 413 F. Supp. 926 (N.D. Cal. 1976) ........ 16

*Hernandez v. Creative Concepts* 2013 WL 1182169 (D. Nev. Mar. 13, 2013) ........ 13

*In re Kidder Peabody Sec. Litig.* 168 F.R.D. 459 (S.D.N.Y. 1996) ........ 13

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*
2015 WL 356913 (E.D. Pa. Jan. 28, 2015) .......... 2

*King Drug Co. of Florence, Inc. v. SmithKline Beecham Corp.*
791 F.3d 388 (3d Cir. 2015) .......... 2

*King-Fisher Co. v. United States*
58 Fed. Cl. 570 (2003) .......... 13

*Mitchell v. United States*
526 U.S. 314 (1999) .......... 10, 11

*Oracle Am., Inc. v. Innovative Tech. Distribs., LLC*
2011 WL 2559825 (N.D. Cal. June 28, 2011) .......... 17

*Rambus v. Samsung Elecs. Co.*
2007 WL 3444376 (N.D. Cal. Nov. 13, 2007) .......... 13

*Regents of the Univ. of Cal. v. Micro Therapeutics, Inc.*
2007 WL 2069946 (N.D. Cal. July 13, 2007) .......... 13

*Rogers v. United States*
340 U.S. 367 (1951) .......... 10, 11

*United Food & Commercial Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma USA, Inc.*
74 F. Supp. 3d 1052 (N.D. Cal. 2014) .......... 2

*United States v. Amlani*
169 F.3d 1189 (9th Cir. 1999) .......... 11

*United States v. Bilzerian*
926 F.2d 1285 (2d Cir. 1991) .......... 11

*Volterra Semiconductor Corp. v. Primarion, Inc.*
2013 WL 1366037 (N.D. Cal. Apr. 3, 2013) .......... 11, 17

**Rules**

Fed. R. Civ. P. 26(b)(5) .......... 14

## I. INTRODUCTION

Plaintiffs move for an "at issue" privilege waiver order that requires Endo to produce discovery, including privileged communications, relevant to Endo's assertions relating to its beliefs and intent regarding the reverse payment agreement at the heart of this litigation. Alternatively, if there is any question about which assertions Endo has already placed at issue in this case, the Court should order Endo to elect now which affirmative assertions it intends to make and produce discovery relevant to those assertions. Endo disputes that its statements in discovery and in its Answers have triggered a privilege waiver, and instead takes the position that it need not make a waiver election until fact discovery in this matter has closed. But courts have long recognized that a party may not use privileged materials as both a sword to make affirmative assertions and a shield that blocks its adversary from testing those assertions. Absent the order Plaintiffs request, Endo will be free to make assertions as part of its defenses later in this litigation without affording Plaintiffs the opportunity to challenge or rebut those assertions through development of a complete evidentiary record.

In *F.T.C. v. Actavis, Inc.*, 133 S. Ct. 2223 (2013), the Supreme Court held that the antitrust laws are violated when a brand name pharmaceutical company makes a "large" payment to a generic rival in settling a patent suit to induce the generic rival to abandon its patent challenge and prevent the risk of competition. The analysis in *Actavis* focused specifically on the parties' "reason" for, or "objective" of, the reverse payment <u>at the time it was made</u>—*i.e.*, what the parties were "seeking" to achieve by the payment when it was made.[1] The Supreme Court instructed that if there is a large brand-generic payment for which there is no legitimate explanation, the payment alone is "strong evidence" from which a jury can conclude that at the time of settlement: (a) the patent holder had "serious doubts about

---

[1] *See Actavis*, 133 S. Ct. at 2236 ("An unexplained large reverse payment itself would normally suggest that the patentee has serious doubts about the patent's survival. And that fact, in turn, suggests that the payment's *objective* is to maintain supracompetitive prices . . . .") (emphasis added); *id.* ("[T]he payment (if otherwise unexplained) likely *seeks* to prevent the risk of competition.") (emphasis added); *id.* at 2237 ("Although the parties may have reasons to prefer settlements that include reverse payments, the relevant antitrust question is: What are those reasons? If the basic *reason* is *a desire* to maintain and to share patent-generated monopoly profits, then, in the absence of some other justification, the antitrust laws are likely to forbid the arrangement.") (emphasis added).

1

PLAINTIFFS' MOTION FOR PRODUCTION OR ALTERNATIVELY FOR PRECLUSION OF EVIDENCE AT SUMMARY JUDGMENT AND TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
MDL DOCKET NO. 14-md-02521-WHO

the patent survival" (*i.e.*, believed it was likely to lose the patent case); and (b) the payment was intended to induce the generic rival to abandon its patent challenge and thereby prevent the risk of generic competition. Under *Actavis,* once a plaintiff has established the existence of a "large" reverse payment, the burden shifts to the defendants to prove that the intent and purpose for the payment at the time of the settlement was not to delay competition, but was instead for a legitimate reason. The defendant bears the burdens of production and persuasion as to this affirmative defense.[2]

Plaintiffs in this case allege that in settling the Lidoderm patent case in May of 2012, Endo paid Watson with (i) $96 million dollars' worth of branded Lidoderm (called "Free Goods") and (ii) Endo's promise not to launch a competing Authorized Generic version of Lidoderm for the first 7.5 months after Watson belatedly launched its generic product (together, the "Payments"). Plaintiffs also allege that the reason for and purpose of these Payments was to delay generic competition.

In a February 2015 White Paper that Endo submitted to the FTC and has incorporated into discovery responses in this case (the "White Paper"),[3] [redacted]

---

[2] *Id.* at 2236 ("An antitrust *defendant* may show . . . that legitimate justifications are present . . . .") (emphasis added). *See also United Food & Commercial Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1065 (N.D. Cal. 2014) ("[T]he burden is on the defendant to show in the antitrust proceeding that legitimate justifications are present, thereby explaining the presence of the challenged term and showing the lawfulness of that term under the rule of reason.") (internal quotation marks omitted) (citing *Actavis*, 133 S. Ct. at 2236); *King Drug Co. of Florence, Inc. v. SmithKline Beecham Corp.*, 791 F.3d 388, 412 (3d Cir. 2015) (upon proof of a payment, "the burden then shifts to the defendant" to show that legitimate justifications are present); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, Nos. 2:06-cv-1797, 2:06-cv-1833, 2:06-cv-2768, 2:08-cv-2141, 2015 WL 356913, at *14 (E.D. Pa. Jan. 28, 2015) (holding that "Defendants, not Plaintiffs, bear the burden of explaining the payments.").

[3] *See* Declaration of Dena Sharp ("Sharp Decl."), Ex. A; *see also* Exs. D & E (Endo interrogatory responses incorporating the White Paper).

[4] Sharp Decl., Ex. A (White Paper at internal p. 2).

2

PLAINTIFFS' MOTION FOR PRODUCTION OR ALTERNATIVELY FOR PRECLUSION OF EVIDENCE AT SUMMARY JUDGMENT AND TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
MDL DOCKET NO. 14-md-02521-WHO

In other words, as part of its affirmative defense to explain the challenged Payments, Endo has made affirmative assertions in discovery and pleadings in this case that place a series of interrelated topics at issue, including: (a) its assessment of the strength of the relevant patents and its expectations concerning the outcome of the patent litigations; (b) its reasons, explanations and intentions for the Payments, and its beliefs about the impact the Payments would have on competition; (c) its beliefs about Watson's final ANDA approval and an at-risk launch by Watson; (d) its reasons or incentives, if any, for agreeing to a generic entry date before September 2013; and (e) its intention to launch an authorized generic version of Lidoderm. As shown below, controlling law provides that, by making affirmative assertions that place these topics at issue, Endo has waived any privilege protections for relevant documents or testimony.

Endo has withheld on the basis of privilege discovery related to each of these topics. Plaintiffs request an order finding that Endo has waived its privilege claims and must produce discovery as to each topic. Alternatively, if the Court has any doubt about whether (or to what extent) Endo has affirmatively placed any of these topics at issue in this case, Plaintiffs seek an order directing Endo to: (a) elect, within 10 days, whether it will affirmatively advance these assertions in this case or be precluded from making those assertions, or using evidence to support them, at summary judgment or trial; and (b) produce, within 30 days, discovery related to any topics on which it elects to make affirmative assertions.

## II.      RELEVANT FACTS

As the Court may recall, early in this case Plaintiffs asked the Court to set a deadline for Defendants to make precisely the type of election Plaintiffs now seek.[5]  The Court understandably declined to impose such a deadline at an early stage in the case and instead opted to address issues as and when they arose.[6]  Since then, Endo has alleged affirmative defenses in its Answers, issued the White Paper in the FTC proceeding, and relied on the White Paper in response to Interrogatories in this case.

Beginning in January 2015, Direct Purchaser Plaintiffs served Interrogatories that asked Endo to explain each reason for the Payments, to state the basis for its beliefs that Watson would not have launched before September 2013 or that Endo would not have launched an authorized generic product at the time that Watson entered the market.[7]  And in July 2015, Direct Purchaser Plaintiffs served additional Interrogatories that requested that Endo provide all facts that, at the time of the settlement, supported its contention that Watson's generic product would infringe Endo's patents and that the Rolf patents were not obvious in light of prior art.[8]

In response to Interrogatory No. 2, Endo claimed several justifications for the Payments, but limited its responses, claiming that the Interrogatory infringed on attorney-client privilege and it "reserve[d] the right to supplement its response at any time."[9]  And, in response to Interrogatories 3, 4 and 5, and in its Answers to the complaints, Endo affirmatively adopted and incorporated the White Paper into this case and made additional assertions in an effort to buttress its arguments that it believed that Watson would not have launched at risk before September 2013, that Endo would not have

---

[5] Dec. 18, 2014 CMC Statement (ECF No. 120) at 10.

[6] Jan. 6, 2015 Hr'g. Tr. 8:1-4.

[7] *See* Sharp Decl. Ex. D (Endo's Responses to Interrogatory Nos. 2 & 3, at pp. 4, 7).

[8] *See* Sharp Decl. Ex. E (Endo's Responses to Interrogatory Nos. 4 & 5, at pp. 6-8).

[9] *See* Sharp Decl. Ex. D (Endo's Responses to Interrogatory Nos. 2 & 3, at pp. 5-7).

launched an Authorized Generic product immediately upon Watson's market entry, and its facts and beliefs regarding the strength of the patents.[10]

Endo has thus placed its claimed privileged documents and communications at issue here, as explained below. The pertinent assertions that Endo has made are set forth in greater detail in the following two sections.

**A. Endo's Affirmative Assertions that It Expected to Win the Patent Case**

In its White Paper to the FTC,

[10] *Id*. at pp. 7-9; Sharp Decl. Ex. E (Endo's Responses to Interrogatory Nos. 4 & 5, at pp. 8-10); Endo's Answer To DPPs' Second Consol. Am. Compl. (ECF No. 141) ("Answer to DPP Complaint"), Fourth Affirmative Defense, p. 26; Endo's Answer To EPPs' Third Consol. Am. Compl. (ECF No. 215) ("Answer to EPP Complaint"), Fourth Affirmative Defense, p. 27.

[11] Sharp Decl. Ex. A (White Paper at internal p. 2) (emphasis added).

[12] *Id*. at 7 (emphasis added).

[13] *Id*. at 8 n.11 (emphasis added).

[14] *Id*. at 14 (emphasis added).

5

PLAINTIFFS' MOTION FOR PRODUCTION OR ALTERNATIVELY FOR PRECLUSION OF EVIDENCE AT SUMMARY JUDGMENT AND TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
MDL DOCKET NO. 14-md-02521-WHO

### B. Endo's Affirmative Assertions About Its "Beliefs" and "Intent" Regarding the Payments

As shown above, Endo's defense involves more than simple denials that its patents were weak. would not eliminate the significant risk that Watson might have different views and would launch prior to the resolution of the patent cases (*i.e.*, "at risk") once the 30-month stay expired in mid-July 2012. Thus,

In this regard, Endo's White Paper included the following assertions about Endo's "beliefs" and "intent" at the time it was negotiating and documenting the settlement with Watson:

*1.*

Endo has affirmatively asserted that For example:

[15] *Id*. at 32 (emphasis added).

[16] *Id*. at 2.

2.

Endo has asserted tha

.

---

[17] *Id*. at 19 (emphasis added).

[18] *Id*. at 32 (emphasis added).

[19] *Id*. at 16 (emphasis added).

[20] *Id*. at 17 (emphasis added).

[21] *Id*. at 19 (emphasis added).

7

PLAINTIFFS' MOTION FOR PRODUCTION OR ALTERNATIVELY FOR PRECLUSION OF EVIDENCE AT SUMMARY JUDGMENT AND TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

MDL DOCKET NO. 14-md-02521-WHO

3. *Endo asserts that it did not "intend" the Free Goods as payment to Watson to delay generic competition, but rather the Free Goods were given for a purportedly legitimate reason.*

Endo's assertions that the Payments were made for legitimate, procompetitive reasons and thus were not for the purpose of delaying competition, are based on its legal analysis of the timing and likelihood of Watson's ANDA approval, the viability of Endo's Citizens Petition and its explanations for the purpose of the Free Goods contract provisions. For instance, Endo has asserted:

- "[A]t the time of the settlement, the FDA had not yet approved Watson's ANDA, and *it was unclear when the FDA might do so*, given that Endo's Citizen Petition concerning Lidoderm had been pending for nearly six years"[22]

- "The Agreement *addressed Watson's concern* that Watson's ANDA would not be approved by FDA."[24]
- The reason for the Free Goods was to "enable[] Watson's wholesaler affiliate, Anda, to market Lidoderm *in competition* with Endo beginning on January 1, 2013, almost three years prior to the expiration of the '529 Patent."[25]
- The reason for the Free Goods was to "*foster[] competition by creating an independent seller* of branded Lidoderm."[26]

---

[22] Answer to DPP Complaint, Fourth Affirmative Defense, p. 26 and Answer to EPP Complaint, Fourth Affirmative Defense, p. 27 (emphasis added).

[23] Sharp Decl. Ex. A (White Paper at internal p. 19) (emphasis added).

[24] Sharp Decl. Ex. D (Endo's Responses to Interrogatory Nos. 2 & 3 at p. 6 (item 8)) (emphasis added). Of course, if Watson, Endo's counterparty and litigation opponent, made assertions to Endo about Watson's own concerns about obtaining FDA approval for its generic Lidoderm ANDA, those expressions are non-privileged and on that independent basis must be disclosed. *E.g.*, *Elec. Frontier Found. v. CIA*, No: C 09-3351 SBA, 2013 WL 5443048, at *16 (N.D. Cal. Sept. 30, 2013) (information from a third party is not privileged). For present purposes, Plaintiffs address Endo's statement of beliefs, intentions, and purposes regardless of whether they were evoked by statements by Watson.

[25] Answer to DPP Complaint, Fourth Affirmative Defense, p. 26 and Answer to EPP Complaint, Fourth Affirmative Defense, p. 27 (emphasis added).

[26] Sharp Decl. Ex. D (Endo's Responses to Interrogatory Nos. 2 & 3 at p. 6 (item 6)) (emphasis added).

8

PLAINTIFFS' MOTION FOR PRODUCTION OR ALTERNATIVELY FOR PRECLUSION OF EVIDENCE AT SUMMARY JUDGMENT AND TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
MDL DOCKET NO. 14-md-02521-WHO

After Endo put its privileged information at issue, Plaintiffs requested that Endo produce the withheld documents for which privilege has been waived.[27] Endo responded that it has not waived the privilege, and that it would not inform the Plaintiffs whether it intended to rely on privileged information (or the assertions that would necessarily put such privileged information at issue) until summary judgment or trial.[28]

## III. LEGAL DISCUSSION

Endo's affirmative assertions about the reasons for its payments to Watson waives any privilege claims as to documents and testimony regarding the subject matters that Endo thereby placed at issue so that Plaintiffs can test the veracity of the assertions that Endo made in its affirmative defense. That Endo is using privilege as a sword (*i.e.*, to defend itself, Endo is making statements about its purported reasons for its reverse payments that were the subject of privileged communications) and a shield (*i.e.*, it is blocking Plaintiffs from obtaining discovery of the privileged communications that would allow Plaintiffs to test the veracity of those reasons) is evidenced by thousands of documents withheld as privileged, a few of which are discussed below, that are likely highly probative of Endo's current assertions. Because Endo has placed these subjects firmly into issue here, Plaintiffs should be allowed an opportunity to fully develop evidence to rebut Endo's assertions through discovery.

### A. The Privilege May Not be Used as Both a Sword and a Shield

By making affirmative assertions about its beliefs and expectations about the strength of its patent suit against Watson, Endo has waived any attorney-client privilege or work-product protections as to that subject. Likewise, by making assertions as part of an affirmative defense regarding [redacted] —Endo has placed its state of

[27] *See* Sharp Decl. Ex. B (Letters from Noah Silverman, Esq. dated Sept. 1, 2015).

[28] Sharp Decl. Ex. C (Letter from Ryan Watts, Esq. dated Sept. 11, 2015).

mind at issue and waived any privilege protection for communications it had with its attorneys regarding those subjects.

As the Supreme Court has explained:

> It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details.
>
> . . .
>
> The justifications for the rule of waiver in the testimonial context are evident: A witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and diminishing the integrity of the factual inquiry. As noted in *Rogers*, a contrary rule 'would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony,' 340 U.S. at 371, 71 S. Ct. at 438. It would, as we said in *Brown*, 'make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell.'[29]

Although *Mitchell* addressed privilege in the Fifth Amendment context, the Supreme Court's reasoning and prevention of abuses of the attorney-client privilege and/or work-product doctrine applies with equal force in the civil context. As the Court noted, it would be manifestly unfair, and a distortion and disruption to the truth-finding process, if a party could "select any stopping place in the testimony" and use its various privilege protections to pick and choose what aspects of a particular subject to discuss, in a fundamentally unfair attempt to prevent discovery or questioning that would cast doubt on the trustworthiness of the statements that it does make.

In a recent decision in *Apple v. Samsung*, Judge Koh summarized the principles underlying the waiver doctrine as follows:

> The principle purpose of the doctrine of waiver is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable. ***Even where there is no disclosure, fairness requires a waiver when the privilege holder raises a claim or defense that puts the privileged communications at issue.*** The principle is often expressed in terms of preventing a party from using the privilege as both a shield and a sword . . . . In practical terms, this means that parties in litigation may not abuse the

---

[29] *Mitchell v. United States*, 526 U.S. 314, 321-22 (1999) (citing *Rogers v. United States*, 340 U.S. 367 (1951) and *Brown v. United States*, 356 U.S. 148 (1958)).

> privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claims is said to have implicitly waived the privilege.[30]

The Ninth Circuit and other courts have repeatedly acknowledged that it would be unfair to permit a party to present some testimony or otherwise make affirmative assertions about its views about a subject and then refuse to produce documents or answer questions about its communications with its lawyers on that subject, thus depriving the jury of information necessary to determine the truthfulness of the party's assertions. *See Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ("The principle is often expressed in terms of preventing a party from using the privilege as both a shield and a sword."); *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) ("[T]he privilege which protects attorney-client communications may not be used both as a sword and a shield.") (quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)).

Actual disclosure of privileged communications itself is not required to waive the privilege. *See Apple*, 306 F.R.D. at 241. The attorney-client and work-product privileges may also be waived if the privilege holder offers testimony that affirmatively places legal advice at issue. *Id.* In *Volterra Semiconductor Corp. v. Primarion, Inc.*, the court rejected defendant's argument that a privileged communication is only put "in issue" if the actual content of a particular document is specifically identified or quoted.[31] Rather, the court held that the defendant's detailed arguments about what it intended "would leave a fact finder with the distinct impression that [it] relied on advice by counsel on the matters at issue in this case."[32] *Volterra* explains that if the defendant were "allowed to create this

---

[30] *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 241 (N.D. Cal. 2015) (emphasis added) (citations omitted).

[31] *Volterra Semiconductor Corp. v. Primarion, Inc.*, No. 08-cv-05129-JCS, 2013 WL 1366037, at *2 (N.D. Cal. Apr. 3, 2013) (finding that the privilege holder "has not cited any authority for that proposition, which the Court finds to be incorrect"). *See also Mitchell*, 526 U.S. at 322 (witness's assertions, and scope of relevant cross-examination, trigger waiver and determine its scope); *Rogers*, 340 U.S. at 373 (same); *Brown*, 356 U.S. at 154-55 (same); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (defendant's testimony that he believed his actions were lawful would waive the attorney-client privilege because it "would have put his knowledge of the law and the basis for his understanding of what the law required in issue.").

[32] *Volterra*, 2013 WL 1366037 at *2 (citing *Claffey v. River Oaks Hyundai*, 486 F. Supp. 2d 776, 778 (N.D. Ill. 2007)).

11

PLAINTIFFS' MOTION FOR PRODUCTION OR ALTERNATIVELY FOR PRECLUSION OF EVIDENCE AT SUMMARY JUDGMENT AND TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
MDL DOCKET NO. 14-md-02521-WHO

impression but still maintain its attorney-client privilege, it would in effect be using the privilege as both a shield and a sword."[33] Accordingly, the court in *Volterra* held that if the defendant relied on "evidence that would tend to suggest that its procedures included consultation with counsel, it [would] be deemed to have waived its attorney-client privilege."[34] Similarly, at-issue waiver is not limited to instances where a defendant expressly states that it was relying on "advice of counsel" as a defense.[35]

Waiver is not limited to circumstances in which a defendant makes affirmative assertions about legal issues; affirmative assertions about a defendant's state of mind or intent may also trigger a waiver of privilege claims. In *United States v. Amlani*, for example, the Ninth Circuit held that the defendant waived his attorney-client privilege protections for communications regarding the reasons he had terminated his counsel:

> We have previously held, however, that "[w]here a party raises a claim which in fairness requires disclosure of the protected communication, the [attorney-client] privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). Here, Amlani's claim of disparagement requires disclosure of communications relating to the Katz substitution. Amlani has already asserted that the prosecutor's "disparaging remarks caused me to sever my attorney-client relationship with Mr. Katz.... Before those disparaging remarks, I had a high opinion of Mr. Katz, ... and I intended to hire him for ... trial." To defend against this contention, the government must have access to communications that describe events surrounding Katz's initial withdrawal from representing Amlani. ***Simply put, Amlani cannot assert that certain factors caused him to discharge his attorney and then invoke the attorney-client privilege to prevent the***

---

[33] *Id.*

[34] *Id.*

[35] *See also Chevron Corp. v. Donziger*, No. 11 Civ. 0691(LAK), 2013 WL 6182744, at *3 (S.D.N.Y. Nov. 21, 2013) ("[I]mplied waiver may be found where a party puts a claim or defense at issue that in fairness requires disclosure of privileged material, whether or not the privileged material explicitly was relied upon in making the claim or defense."); *Arista Records LLC v. Lime Group LLC*, 2011 U.S. Dist. LEXIS 42881, at *2-3 (S.D.N.Y. Apr. 14, 2011) (rejecting the argument that a party could present state of mind evidence without waiving the attorney client privilege, so long as it refrained from relying on the advice of counsel); *Adam Friedman Assocs. LLC v. MediaG3, Inc.*, No. 10 Civ. 5350(JPO), 2012 WL 1563942, at *4 (S.D.N.Y. May 1, 2012) ("[T]he privilege may be waived if the privilege holder makes factual assertions the truth of which can only be assessed by examination of the privileged communication."); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 488 (S.D.N.Y. 1993) ("[E]ven if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication.").

12

PLAINTIFFS' MOTION FOR PRODUCTION OR ALTERNATIVELY FOR PRECLUSION OF EVIDENCE AT SUMMARY JUDGMENT AND TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
MDL DOCKET NO. 14-md-02521-WHO

> ***government from examining the situation further.*** We have made it clear that "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield." *United States v. Ortland*, 109 F.3d 539, 543 (9th Cir.1997) (quoting *Chevron*, 974 F.2d at 1162).[36]

Notably, *Amlani* is not a "reliance on counsel" case in that the privilege waiver was not triggered because the party placed at issue what he believed about the law, or what legal advice he had received from his counsel. Instead, the privilege was waived because the party placed at issue his state of mind, and privileged communications were probative of those assertions. *See also Hernandez v. Creative Concepts*, No. 2:10-CV-02132-PMP, 2013 WL 1182169, at *6 (D. Nev. Mar. 13, 2013) (where state of mind or knowledge is at issue, factual assertions "the truth of which can only be assessed by examination of the privileged communications" waive the privilege) (citing *King-Fisher Co. v. United States*, 58 Fed. Cl. 570, 572 (2003) and *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996)); *Rambus v. Samsung Elecs. Co.*, Nos. C-05-02298 RMW, C-05-00334 RMW, 2007 WL 3444376, at *3-5 (N.D. Cal. Nov. 13, 2007) (Samsung waived its attorney-client and work-product privileges when it raised a defense regarding what it knew about a former employee's access and misuse of confidential information); *Regents of the Univ. of Cal. v. Micro Therapeutics, Inc*., No. C 03 05669 JW (RS), 2007 WL 2069946, at *3 (N.D. Cal. July 13, 2007) ("Courts frequently conclude that a party waives the protection of the attorney-client privilege when the party voluntarily injects into suit a question that turns on state of mind."); *id.* at *2 ("If a party merely denies an allegation it does not waive the privilege, but assertions regarding a defendant's good faith may be so inextricably intertwined with the defendant's state of mind that the privilege must give way . . . into the basis for such belief.").

**B. Endo Has Waived the Privilege as to Beliefs and Purposes It Has Placed at Issue**

That Endo relied on counsel in determining the likely outcome of the patent litigation can hardly be questioned—over 2400 documents on Endo's privilege log [redacted] [redacted].[37] Many of the settlement-related documents that Endo has withheld as privileged are

---

[36] 169 F.3d at 1195 (emphasis added) (citations omitted).

[37] Sharp Decl., Ex. F (spreadsheet list of these logged items).

likely to contain critical, relevant information that directly refutes the assertions that are at the heart of Endo's affirmative defenses. Like the assertions in *Apple*, "these arguments go beyond mere denials and are more than just related to issues raised in the litigation. They go to the merits. A party may neither disclose nor dispute contents of documents while simultaneously concealing other portions under a claim of privilege, when the truth of the party's statements can only be assessed by examination of the privileged communication."[38]

That Endo is cherry-picking the information that it will disclose—and the information it will shield behind the privilege—is illuminated by the inconsistent manner in which Endo has handled information regarding its internal settlement deliberations. [redacted]

[redacted]

As another example, in its White Paper, Endo [redacted][40] But at the very same time, Endo has withheld as privileged [redacted]

[38] *Apple Inc.*, 306 F.R.D. at 244 (internal citations omitted).

[39] Sharp Decl., Ex. A (White Paper at internal p. 17).

[40] *Id.* at 19 (emphasis in original).

14

PLAINTIFFS' MOTION FOR PRODUCTION OR ALTERNATIVELY FOR PRECLUSION OF EVIDENCE AT SUMMARY JUDGMENT AND TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
MDL DOCKET NO. 14-md-02521-WHO

[REDACTED].[41] Endo is clearly withholding still other documents on the same subject, as well.[42]

Similarly, in its White Paper, [REDACTED]. Yet, Endo has withheld virtually all documents that lay out Endo's internal discussions about the settlement strategy, its reasons for offering the Free Goods and whether Endo had a reason to give an early entry date in the settlement negotiations. Endo's privilege log identifies over 2,400 documents that relate in one way or another [REDACTED].[44] Likewise, documents that could shed light on Endo's views of [REDACTED] are shielded as well.[45]

**C. In the Alternative, the Court Should Order Endo to Make a Defense Election**

Plaintiffs maintain that Endo has already incorporated and imported its FTC White Paper and the assertions therein, and related assertions in its Answers, into this case. Yet Endo has declined to produce documents that would shed light on those assertions, and moreover states that it will not make an election until after discovery closes. At that point, however, it will be too late for Plaintiffs to take discovery, and the only remedy will be exclusion. *See, e.g.*, *Fox v. Cal. Sierra Fin. Servs.*, 120 F.R.D. 520, 530 (N.D. Cal. 1988) ("If the holder intends to consent to waiver of the attorney-client privilege at trial, such intention must be disclosed during the discovery stage and any information as to which the

---

41 For instance, withheld from production is [REDACTED]. *See* Sharp Decl., Ex. G (P_ENDO-LID-AT0009256).

42 *See* Sharp Decl., Ex. G (P_ENDO-LID-AT0014237).

43 Sharp Decl., Ex. A (White Paper at internal pp. 23-24).

44 *See* Sharp Decl., Ex. H (spreadsheet list of these logged items).

45 For example, Endo has withheld [REDACTED] *See* Sharp Decl. Ex. F (ENDO-PRIV-00010614; *see also* ENDO-PRIV-00009403). Endo also withheld an [REDACTED] *See* Sharp Decl. Ex. G (ENDO-PRIV-00022518; ENDO-PRIV-00028439).

15

PLAINTIFFS' MOTION FOR PRODUCTION OR ALTERNATIVELY FOR PRECLUSION OF EVIDENCE AT SUMMARY JUDGMENT AND TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
MDL DOCKET NO. 14-md-02521-WHO

privilege will be waived must be made available to the opposing party through discovery so as not to afford the one party an unfair advantage at trial”).[46]

If there is any question about whether Endo has waived its privilege related to some or all of the topics discussed in this brief, fairness requires a defense election during the discovery period to ensure that Plaintiffs have a full opportunity to develop the record prior to summary judgment and trial. Should the Court determine that directing a defense election is appropriate here, Plaintiffs propose that the Court should direct Endo to promptly elect whether it will: (a) assert a defense or justification that places its state of mind, intentions and/or beliefs, and thus its legal communications, conclusions or analysis at issue, and thereby waive its privilege claims, or (b) preserve its privilege claims and forfeit any such defense(s). The court in *In re Cardizem CD Antitrust Litigation*, Case No. 99-md-1978, ECF No. 573 (E.D. Mich. Jan. 9, 2002), another pay-for-delay case, was confronted with a similar defense election issue.[47] Following the Ninth Circuit’s *Almani* decision, the *Cardizem* court directed the defendant to elect—during the discovery period—whether it was going to raise the defense that it would not launch at risk:

> If Andrx chooses to assert the causation defense it raises here, it cannot, in fairness, deny Plaintiffs access to the very information they must refute in order to show that Andrx’s fear of patent liability was not the cause of its delayed market entry. *See Almani*, 169 F.3d at 1196. This Court concludes that, should Andrx choose to rely on that causation defense, it will place at issue the advice it received from its patent counsel as to the likely outcome of the HMRI/Andrx patent litigation and will thus waive its privilege.[48]

Similarly, if Endo is permitted to wait until the eve of trial or summary judgment to selectively disclose privileged documents and communications or allude to its state of mind on various issues, it

---

[46] *See also Handgards, Inc. v. Johnson & Johnson*, No. 49451 WHO, 413 F. Supp. 926, 929 (N.D. Cal. 1976) (“Since the same rules of privilege govern the scope of discovery as generally govern the admissibility of evidence at trial, a party may obtain pretrial discovery of materials allegedly subject to the attorney-client privilege . . . where the protection of the privilege will be waived at trial”); *Belmont Textile Mach. Co. v. Superba, S.A.*, No. 3:97-CV-410-P, 48 F. Supp. 2d 521, 523-24 (W.D.N.C. 1999) (giving defendant ten days to elect whether to assert defense and thereby waive attorney-client privilege).

[47] Sharp Decl., Ex. I (copy of decision).

[48] *Id*. at 6.

will be too late for Plaintiffs to use those documents or to develop rebuttal evidence. Consequently, if there is any question about whether Endo has incorporated the White Paper (and its assertions) into this case, the Court should follow the *Cardizem* court's analysis and order the election while the discovery period is still open.

An election during discovery is the better course than a motion *in limine* to exclude documents or communications, which is the only other available avenue. Courts routinely prevent attempts to use information at trial that was withheld on the grounds of privilege during discovery. *See Oracle Am., Inc. v. Innovative Tech. Distribs., LLC,* No. 11-CV-01043-LHK, 2011 WL 2559825, at *2 (N.D. Cal. June 28, 2011) (holding that the options are to disclose the documents or "to abandon the claim that gives rise to the waiver condition") (quoting *Bittaker*, 331 F.3d at 721); *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001), *cert. denied*, 534 U.S. 1127 (2002) (precluding advice of counsel defense where defendant refused to answer questions regarding the relevant communications until the "eleventh hour").[49]

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court order that:

1. Endo has waived any attorney-client, work-product and all other privilege claims for documents or testimony relating to the following topics that Endo has affirmatively placed at issue in this case, and Endo must produce all documents and communications relevant to the positions it has asserted within thirty (30) days:

   A. its assessment of the strength of the relevant patents and its expectations concerning the outcome of the patent litigations;

[49] The local patent rules are informative. The Patent Local Rules require that a party who intends to rely upon advice of counsel as part of a patent-related claim or defense for any reason must make its election to assert such a defense on a timely basis; otherwise, any advice of counsel defense can only be asserted pursuant to a stipulation by the parties. *See* Patent L.R. 3–7; *Volterra*, *2*013 WL 1366037, at *2 ("The Patent Local Rules require that a party who intends to rely upon advice of counsel as part of a patent-related claim or defense for any reason must make its election to assert such a defense on a timely basis" and that "it would be manifestly unfair to allow [the defendant] to waive the privilege at trial, having declined to assert reliance on advice of counsel and having prevented discovery into privileged matters.").

B. its reasons, explanations and intentions for the Payments, and its beliefs about the impact the Payments would have on competition;

C. its beliefs about Watson's final ANDA approval and an at-risk launch by Watson;

D. its reasons or incentives, if any, for agreeing to a generic entry date before September 2013; and

E. its intention to launch an authorized generic version of Lidoderm.

2. In the alternative, the Court should direct Endo to elect whether it will make any assertions in this case on the topics listed in Paragraph 1(A)-(E) within ten (10) days of the date of the Order. If Endo elects to make such assertions and waive its privilege, it must produce all previously-withheld documents related to the issues for which it elects to waive privilege within thirty (30) days. In addition, the Court should order that Endo is precluded from making assertions on any of the topics listed in Paragraph 1(A)-(E) for which it fails to elect to do so within ten (10) days.

DATED: October 5, 2015

Respectfully submitted,

***For the Direct Purchaser Plaintiffs:***

/s/ *Peter R. Kohn*
Peter R. Kohn
Joseph T. Lukens
**FARUQI & FARUQI LLP**
101 Greenwood Avenue
Suite 600
Jenkintown, PA 19046
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
Email: pkohn@faruqilaw.com

/s/ *David S. Nalven*
Thomas M. Sobol
David S. Nalven
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700

***For the End-Payor Plaintiffs:***

/s/ *Dena C. Sharp*
Daniel C. Girard (SBN 114826)
Dena C. Sharp (SBN 245869)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dcg@girardgibbs.com
Email: chc@girardgibbs.com

/s/ *Renae D. Steiner*
Renae D. Steiner
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: rsteiner@heinsmills.com

18

PLAINTIFFS' MOTION FOR PRODUCTION OR ALTERNATIVELY FOR PRECLUSION OF EVIDENCE AT SUMMARY JUDGMENT AND TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
MDL DOCKET NO. 14-md-02521-WHO

Email: tom@hbsslaw.com
Email: davidn@hbsslaw.com

/s/ Noah Silverman
Bruce E. Gerstein
Noah Silverman
Ephraim R. Gerstein
**GARWIN GERSTEIN & FISHER LLP**
88 Pine Street, 10th Floor
New York, NY 10005
Telephone: (212) 398-0055
Facsimile: (212) 764-6620
Email: bgerstein@garwingerstein.com
Email: nsilverman@garwingerstein.com
Email: egerstein@garwingerstein.com

*Interim Co-Lead Counsel for the proposed Direct Purchaser Class*

***For the Rite Aid Plaintiffs:***

/s/ Barry L. Refsin
Barry L. Refsin
**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
One Logan Square, 27th Floor
Philadelphia, PA 19103
Telephone: (215) 496-7031
Facsimile: (215) 568-0300
Email: brefsin@hangley.com

Monica L. Rebuck
Eric L. Bloom
**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
4400 Deer Path Road, Suite 200
Harrisburg, PA 17110
Telephone: (717) 364-1007
Facsimile: (717) 234-3982
Email: mrebuck@hangley.com

*Attorneys for Rite Aid Plaintiffs*

/s/ J. Douglas Richards
J. Douglas Richards
Sharon K. Robertson
Donna M. Evans
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 758-3042
Facsimile: (212) 838-7745
Email: drichards@cohenmilstein.com

*Interim Co-Lead Counsel for the proposed End-Payor Class*

Joseph R. Saveri
Joshua P. Davis
Andrew M. Purdy
Ryan J. McEwan
**JOSEPH SAVERI LAW FIRM, INC.**
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: rmcewan@saverilawfirm.com

*Interim Liaison Counsel for the proposed End-Payor Class Plaintiffs*

***For Plaintiff Government Employees Health Association***

/s/ Todd A. Seaver
Todd A. Seaver
**BERMAN DEVALERIO**
Joseph J. Tabacco, Jr.
Todd A. Seaver
Sarah Khorasanee McGrath
One California St., Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

19

PLAINTIFFS' MOTION FOR PRODUCTION OR ALTERNATIVELY FOR PRECLUSION OF EVIDENCE AT SUMMARY JUDGMENT AND TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
MDL DOCKET NO. 14-md-02521-WHO

***For the Walgreen Plaintiffs:***

*/s/ Anna T. Neill*
Anna T. Neill
Scott E. Perwin
Lauren C. Ravkind
**KENNY NACHWALTER P.A.**
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
Email: aneill@knpa.com

*Attorneys for Walgreen Plaintiffs*

**LOWEY DANNENBERG COHEN & HART, P.C.**
Barbara Hart
Peter D. St. Phillip
Noelle Ruggiero
One North Broadway
White Plains, New York 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035

**RAWLINGS & ASSOCIATES PLLC**
Mark D. Fisher
Robert Griffith
One Eden Way
LaGrange, KY 40031-8100
Telephone: (502) 587-1279

*Attorneys for Plaintiff Government Employees Health Association*

## ATTESTATION STATEMENT

I, Dena C. Sharp, am the ECF User whose identification and password are being used to file this motion and pursuant to Civil L.R. 5-1(i)(3) I attest under penalty of perjury that concurrence in this filing has been obtained from all counsel.

DATED: October 5, 2015

*/s/ Dena C. Sharp*
Dena C. Sharp

20

PLAINTIFFS' MOTION FOR PRODUCTION OR ALTERNATIVELY FOR PRECLUSION OF EVIDENCE AT SUMMARY JUDGMENT AND TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
MDL DOCKET NO. 14-md-02521-WHO

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2015, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to all counsel of record registered in the CM/ECF system.

I also caused a copy of the foregoing document to be served via email on counsel of record for all parties.

*/s/ Dena C. Sharp*
Dena C. Sharp

21

PLAINTIFFS' MOTION FOR PRODUCTION OR ALTERNATIVELY FOR PRECLUSION OF EVIDENCE AT SUMMARY JUDGMENT AND TRIAL AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
MDL DOCKET NO. 14-md-02521-WHO