1  David S. Elkins (SBN 148077)
   David.Elkins@squirepb.com
2  SQUIRE PATTON BOGGS (US) LLP
   600 Hansen Way
3  Palo Alto, California  94304
4  Tel:    (650) 856-6500

5  Nathan Lane III (SBN 50961)
   Nathan.Lane@squirepb.com
6  Noriyuki Shimoda (SBN 176973)
   Noriyuki.Shimoda@squirepb.com
7  Joseph A. Meckes (SBN 190279)
   Joseph.Meckes@squirepb.com
8  Rafael Langer-Osuna (SBN 300948)
   Rafael.LangerOsuna@squirepb.com
9  SQUIRE PATTON BOGGS (US) LLP
   275 Battery Street, 26th Floor
10 San Francisco, California  94111
   Tel:    (415) 954-0200
11
12 Attorneys for Defendants
13 TEIKOKU PHARMA USA, INC. and
   TEIKOKU SEIYAKU CO., LTD.
14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17 | In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
   |---|---|
18 | This document relates to: | **NOTICE OF MOTION AND MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
19 | [ALL ACTIONS] | |
20 | | |
21 | | |
22 | | [Filed concurrently with Declaration of Joseph A. Meckes; Declaration of Noriyuki Shimoda; Declaration of Robert Johnson; Declaration of Rafael Langer-Osuna; and lodged concurrently with [Proposed] Order] |
23 | | |
24 | | |
25 | | Date:      November 23, 2015 |
26 | | Time:      4:00 p.m. |
   | | Place:     Courtroom 2, 17th Fl. |
27 | | Judge:     Hon. William H. Orrick |
28

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on November 23, 2015 at 4:00 p.m. before Honorable William H. Orrick in Courtroom 2 of the above-entitled Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, defendants Teikoku Pharma USA, Inc. ("TPU") and Teikoku Seiyaku Co., Ltd. ("TSC," or, together with TPU, "Teikoku") hereby do move this Court for an order: (1) disqualifying the law firms of Girard Gibbs LLP; Faruqi & Faruqi LLP; Hagens Berman Sobol Shapiro LLP; Heins Mills & Olson, P.L.C.; Garwin Gerstein & Fisher LLP; Cohen Milstein Sellers & Toll PLLC; Hangley Aronchick Segal Pudlin & Schiller; Joseph Saveri Law Firm, Inc.; Berman DeValerio; Kenny Nachwalter P.C.; Lowey Dannenberg Cohen & Hart, P.C.; and Rawlings & Associates PLLC (together, "Plaintiffs' counsel"); and any other plaintiffs' law firm who received, considered, or used the privileged document that is the subject of this Motion from representing any Plaintiff in the above-captioned matter or in any suit relating to the settlement of *Endo Pharm. Inc. v. Watson Lab.*, 10-cv-00138-GMS (D. Del.) (the "Watson litigation"), (2) ordering Plaintiffs' counsel to identify all persons to whom they disclosed any of Teikoku's privileged documents or information contained therein; and (3) enjoining Plaintiffs' counsel from discussing the contents of any documents identified as privileged by Teikoku with or providing any information regarding such documents to any other person. This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declarations of Joseph A. Meckes; Noriyuki Shimoda; Robert Johnson; Rafael Langer-Osuna and their respective attached exhibits, the pleadings and papers on file in this action or deemed to be on file at the time this Motion is heard, other such evidence and arguments as may be presented in connection with the hearing of this Motion and all matters of which this Court may take judicial notice.

Dated:  October 14, 2015          SQUIRE PATTON BOGGS (US) LLP


By: */s/ Joseph A. Meckes*
    Joseph A. Meckes
Attorneys for Defendants
TEIKOKU PHARMA USA, INC. and
TEIKOKU SEIYAKU CO., LTD.

1

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND ........................................................................................................ 3

      A.    This Case Revolves Around the Settlement of the Watson Litigation .................. 4

      B.    The Shimoda Email Appears on its Face to be Privileged ..................................... 5

      C.    Teikoku Inadvertently Produced the Shimoda Email ............................................ 6

      D.    Plaintiffs Used the Shimoda Email to Formulate Arguments and Prepare
            Their Case .......................................................................................................... 7

III.  ARGUMENT.............................................................................................................. 9

      A.    The Shimoda Email Is Protected by the Attorney-Client Privilege, Work
            Product Doctrine and Under the Common Legal Interest Doctrine ..................... 11

            1.    The Shimoda Email is a Privileged Attorney-Client Communication...... 11

            2.    The Shimoda Email is Attorney Work Product ...................................... 12

            3.    The Shimoda Email is Protected From Disclosure by the Common
                  Interest Doctrine ................................................................................... 13

      B.    Teikoku Inadvertently Disclosed the Shimoda Email Because of Vendor
            Software Glitch Despite Undertaking Reasonable Steps To Avoid Such
            Errors ................................................................................................................ 14

      C.    Plaintiffs' Counsel Knew or Should Have Known the Shimoda Email was
            Privileged Long Before They Deliberately Chose to Study and Use It in
            Court ................................................................................................................. 16

      D.    Plaintiffs' Counsel Caused Irreparable Harm By Unethically Studying The
            Shimoda Email and Making Full Use Of It In Court Proceedings ...................... 17

      E.    Protecting Teikoku's Confidences and the Integrity of Judicial System
            Warrants Disqualification ................................................................................ 20

IV.   CONCLUSION.......................................................................................................... 21

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

i

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*CallWave Communs., LLC v. WaveMarket, Inc.*,
  No. C 14-80112 JSW (LB), 2015 U.S. Dist. LEXIS 22374 (N.D. Cal. Feb. 23,

5

  2015) ................................................................................................................ 12

6

*Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*,

7

  964 F.2d 159 (2d Cir.1992).............................................................................. 21

8

*Clark v. Superior Court*,
  196 Cal. App. 4th 37 (2011) ....................................................... 1, 18, 20, 21

9

*Datel Holdings Ltd v. Microsoft Corp.*,

10

  No. C-09-05535 EDL, 2011 U.S. Dist. LEXIS 30872 (N.D. Cal. Mar. 11,

11

  2011) ...........................................................................................................14, 15

12

*Gomez v. Vernon*,
  255 F.3d 1118 (9th Cir. 2001)......................................................................... 20

13

*Gotham City Online, LLC v. Art.com, Inc., No. C 14-00991 JSW, 2014 U.S. Dist.*

14

  *LEXIS 33680 (N.D. Cal. 2014)* ...................................................................18, 19

15

*In re Grand Jury Subpoena*,

16

  357 F.3d 900 (9th Cir. 2004) ........................................................................... 12

17

*Kintera, Inc. v. Convio, Inc.*,
  219 F.R.D. 503 (S.D. Cal. 2003)...................................................................... 12

18

*Muro v. Target Corp.*,

19

  250 F.R.D. 350 (N.D.Ill. 2007) ....................................................................... 12

20

*Pulse Eng'g, Inc. v. Mascon, Inc.*,

21

  2009 U.S. Dist. LEXIS 92971, 2009 WL 3234177 (S.D. Cal. Oct. 2, 2009)......................... 13

22

*Rico v. Mitsubishi Corp.*,
  42 Cal. 4th 807 (2007) ............................................................................. *passim*

23

*State Comp. Ins. Fund v. WPS, Inc.*,

24

  70 Cal. App. 4th 644 (1999) .........................................................................9, 10

25

*State Comp. Ins. Fund v. WPS, Inc.*,
  82 Cal. Rptr. 2d 799 (1999) ............................................................................. 16

26

*U.S. v. Bergonzi*,

27

  216 F.R.D. 487 (N.D. Cal. 2003) ..................................................................... 13

28

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

ii

*U.S. v. Chevron Texaco Corp.*,
  241 F. Supp.2d at 1069 .................................................................................................... 11

*United States v. Chen*,
  99 F.3d 1495 (9th Cir. 1996) ........................................................................................... 11

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*,
  2013 U.S. Dist. LEXIS 74833 (C.D. Cal. May 20, 2013) ...........................................10, 19, 20

*United States v. Richey*,
  632 F.3d 559 (9th Cir. 2011) ........................................................................................... 11

*United States v. Ruehle*,
  583 F.3d 600 (9th Cir. 2009) ........................................................................................... 11

*Upjohn Co. v. United States*,
  499 U.S. 383 (1980).......................................................................................................... 12

*Willnerd v. Sybase, Inc.*,
  Case No. 1:09-CV-500-BLW, 2010 U.S. Dist. LEXIS 135781 (D. Idaho,
  Dec. 22, 2010) .................................................................................................................. 12

**Other Authorities**

Federal Rule of Civil Procedure 26(b) ........................................................................3, 4, 9, 12, 17

Federal Rule of Evidence 502(b), (d) and (e).....................................................................14, 15

Civil Local Rule of the Northern District of California 11-4(a)(1) ...........................................8, 10

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs' counsel should be disqualified from representing Plaintiffs in this lawsuit because they deliberately reviewed, studied and used an obviously privileged email regarding the settlement of the litigation with Watson that Teikoku produced inadvertently in discovery.  While Plaintiffs' counsel may argue that they did not realize the document was privileged, this is nothing more than a fig leaf to excuse their conduct.  Teikoku submits that no reasonable counsel could, after even a cursory review, have concluded that this document (which was listed on Teikoku's privilege log) was anything other than privileged.  Plaintiffs' counsel, however, elected to ignore the numerous indicia of privilege because they apparently deemed it sufficiently important to their litigation position to do so.  Plaintiffs' counsel have acknowledged their awareness that Teikoku would likely consider the email privileged – after translating and studying the email, they quoted it at length in their Motion for Production or Alternatively for Preclusion of Evidence at Summary Judgment and Trial (the "Defense Election Motion"), noting that Teikoku might "seek[] to claim that [this] document[] [is] in fact privileged."

Suspecting that the email was  privileged, it was Plaintiffs' counsel's ethical obligation to Teikoku and to the Court (1) to refrain from even looking at the email any more than was essential to ascertain that it was susceptible to a claim of privilege, and (2) then to notify Teikoku immediately that Plaintiffs possessed material that appeared to be privileged. *Rico v. Mitsubishi Corp.*, 42 Cal. 4th 807, 817 (2007); *Clark v. Superior Court*, 196 Cal. App. 4th 37, 53 (2011).  On multiple occasions, Plaintiffs' counsel could have consulted with Teikoku's counsel (or the Court) before taking the next step.  Instead, they tore through one ethical red light after another:

- When they noticed that they had received a lengthy email written in Japanese from an attorney to his client that was identified in English as confidential and privileged;

- When they translated the subject line and realized the email contained information about efforts to settle with Watson, a subject area central to this litigation that Plaintiffs knew Teikoku would consider privileged;

1

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

1      • When they translated the body of the email and discovered that it contained an

2         attorney's confidential communication to his client, including obvious work

3         product;

4      • When they realized  the email contained a report of a conversation Teikoku's

5         attorney had with Endo's attorney regarding settlement with Watson – the type of

6         communication that Teikoku expressly informed Plaintiffs' counsel that Teikoku

7         considered privileged;

8      • When they obtained and "carefully studied" a certified translation of the email in

9         an effort to construct arguments to defeat the privilege apparent on the face of the

10        document; and

11     • When they decided to make full use of the document to craft and support

12        arguments in the Defense Election Motion.

13   Plaintiffs' counsel, despite all of these opportunities, however, never contacted Teikoku's counsel

14   but instead used the privileged content to support the Defense Election Motion that they filed

15   after business hours on a Friday evening.  Rather than comply with their professional obligation

16   to contact Teikoku, Plaintiffs' counsel translated the email, circulated it amongst themselves,

17   considered it, studied it and then made full use of it in preparing their case.  The email concerns

18   issues at the core of this litigation.  On these facts, the Court should find that Plaintiffs' counsel's

19   use of a facially privileged communication is highly prejudicial to Teikoku and that there is no

20   alternative other than to disqualify Plaintiffs' counsel, both to protect Teikoku's confidences and

21   to protect the integrity of the judicial process.

22          Because the email in question is privileged, and its content is particularly sensitive,

23   Teikoku cannot disclose in this Motion the contents of the email or discuss the specifics of how

24   Plaintiffs' counsel's possession or memory of it could affect further proceedings in this case.

25   Teikoku is prepared, however, to make the email itself available for *in camera* inspection by the

26   Court and to provide an explanation to the Court *in camera* of how Plaintiffs' counsel's

27   knowledge of the contents of the email might severely prejudice Teikoku and impact further

28   proceedings in this case.  Plaintiffs' attempted use of this privileged email to support their now

2

withdrawn Defense Election Motion illustrates starkly the prejudice likely to inure to Teikoku and the other defendants if Plaintiffs' counsel are permitted to continue in this case with their unexpunged memories of this privileged communication.  While lesser avenues of remediation may be preferable in other circumstances, only the remedy of disqualification is appropriate under the circumstances presented here.

## II.   **BACKGROUND**

Shortly after 6:00 p.m. on Friday, October 2, 2015, Plaintiffs filed the Defense Election Motion, which seeks to require defendant Endo Pharmaceuticals Inc. ("Endo") either to produce privileged materials or elect whether to present certain defenses on summary judgment or at trial.[1] [Langer-Osuna Decl., ¶¶16-17].   The Defense Election Motion quoted extensively from and relied upon an English-language translation of an email that Squire Patton Boggs partner Noriyuki Shimoda had written to his client Teikoku in April 2012 (the "Shimoda Email"). [*Id.*, ¶ 17]; D.I. 273 at 19-22 of 29.  Writing in Japanese, Mr. Shimoda wrote to update and advise Teikoku regarding the on-going efforts to settle patent litigation with Watson Pharmaceuticals (the "Watson litigation") – the very settlement that is at the heart of this case.[2] [Shimoda Decl., ¶¶12-15].  When Teikoku's counsel noticed that Plaintiffs' counsel had quoted the Shimoda Email in the Defense Election Motion, Teikoku immediately notified Plaintiffs that the Shimoda Email was privileged and was subject to claw back under Federal Rule of Civil Procedure 26(b)(5)(B).[3]  [Meckes Decl., ¶18].  After Teikoku asserted its claw back rights, Plaintiffs

---

[1] Plaintiffs' counsel have stated that they intend to make a similar defense election motion against Teikoku.  D.I. 272 at 6:14-15.  While Plaintiffs may be barred from citing the Shimoda Email, Teikoku is concerned that Plaintiffs' counsel will necessarily rely on the knowledge they gained from their close study of that document.

[2] Mr. Shimoda's April 11, 2012 email was inadvertently produced without redactions with the production number TEI-AT000283567. A redacted copy of the Shimoda Email is filed herewith as Shimoda Decl. Ex. A.  To the extent the Court believes (or Plaintiffs contend) that the content of the Shimoda Email must be reviewed to resolve the issues raised here, Teikoku is prepared to provide it to the Court for *in camera* review. Teikoku affirmatively does not discuss the contents of the Shimoda Email in this Motion to avoid any argument that Teikoku has waived the privilege by doing so.

[3] The Defense Election Motion cited and quoted three privileged documents inadvertently produced by Teikoku.  While Teikoku believes that Plaintiffs should have recognized that at least

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

1    submitted an unopposed motion to remove the unredacted version of the Defense Election Motion

2    and the Shimoda Email from the Court file.  *See* D.I. 275 and 282.

3    **A.     This Case Revolves Around the Settlement of the Watson Litigation**

4            This case revolves around Teikoku and Endo's May 28, 2012 settlement of the Hatch-

5    Waxman patent litigation that Teikoku and Endo had asserted against Watson in 2010.  The Court

6    summarized the present case as follows:

> In this multidistrict antitrust litigation, plaintiffs challenge in their consolidated
> complaints a settlement between Endo [], a distributor of the brand-name drug
> Lidoderm, Teikoku Seiyaku Co., its manufacturer, and Watson [], a generic drug
> manufacturer.  Plaintiffs allege that when Endo and Teikoku agreed to drop their
> ongoing patent litigation against Watson, they offered consideration of $96
> million in free product and deferred competition with Watson's generic product
> worth $170 million in exchange for Watson's agreement to delay introduction of
> its generic drug.

12    D.I. 117 at 1.  Plaintiffs alleged that the consideration received by Watson was a

13    "payment" made to Watson by Endo and Teikoku to avoid a finding of invalidity or non-

14    infringement of the patent in suit.  D.I. 121 at 22-24 of 51; D.I. 123 at 20-22 of 65; D.I.

15    208 at 23of 54; D.I. 235 at 19 of 43; D.I. 236 at 17 of 43.

16            Teikoku and Endo worked together closely in prosecuting and defending the

17    claims made in the Watson litigation.  As it was contractually entitled to do, Endo

18    appointed a single law firm, Dechert LLP, to represent both Endo and Teikoku against

19    Watson and to act as lead counsel.  [Shimoda Decl., ¶5].  Teikoku retained Squire Patton

20    Boggs (then known as Squire Sanders (US) LLP) to provide independent representation

21    and to ensure Teikoku's interests were protected.  [*Id*., ¶6].  Communications from

22    Teikoku to Dechert were channeled through or involved SPB attorneys, most often Mr.

23    Shimoda.  [*Id*., ¶8].  Similarly, Endo communicated with Dechert through members of its

24    in-house legal department, including its general counsel Caroline Manogue.  [*Id*.].

25

26    one of these other documents was privileged, the Shimoda Email was so clearly privileged on its
      face, and its use so deliberate and central to the Defense Election Motion (and Plaintiffs' apparent

27    case strategy) that its use alone justifies disqualification. Teikoku has invoked Fed. R. Civ. P.
      26(b)(5)(B) as to the other two inadvertently produced documents that were cited in the Motion as

28    well (TEI-AT000193441 and TEI-AT000073123).

4

NOTICE OF MOTION AND MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – MDL Docket No. 14-md-02521-WHO

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

1   Because Ms. Manogue was directly involved with negotiating the settlement with

2   Watson, she would often discuss with Mr. Shimoda potential settlement terms Endo was

3   considering.  [*Id*., ¶9].  As discussed in more depth below, Mr. Shimoda and Ms.

4   Manogue always considered those conversations to be confidential and covered by the

5   common interest doctrine.  [*Id*., ¶10].

6           **B.      The Shimoda Email Appears on its Face to be Privileged**

7           The Shimoda Email is the first in a two-part email thread in which Mr. Shimoda provides

8   a report and advice to his client regarding a conference he had had with Endo's general counsel

9   Caroline Manogue regarding further litigation strategy and the parties' efforts to settle the Watson

10  litigation – the very settlement on which this antitrust case is based.  [Shimoda Decl., ¶¶12-14].

11  In this communication, Mr. Shimoda also transmitted and commented on a non-privileged news

12  release regarding FDA action on a citizen petition relating to a product called Vancocin.  [*Id*.,

13  ¶15].  One of the recipients of the Shimoda Email (the head of Teikoku's legal group), then

14  forwarded it, along with the Vancocin press release, to one of his legal group colleagues who was

15  involved in the Watson litigation.  [*Id*., 16-17, Ex. A].

16          Although written in Japanese, the Shimoda Email was plainly labeled in English

17  **"Attorney-Client Communication"** and **"Confidential and Privilege."**  [Shimoda Decl., Ex.

18  A].  As shown in the email header, the Shimoda Email was plainly **"from"** Noriyuki Shimoda,

19  whom Plaintiffs admit knowing was counsel of record for Teikoku both in the Watson Litigation

20  and in this case,[4] and directed **"to"** high-level Teikoku executives, including the CEO's of both

21  Teikoku companies, company officers and the head of Teikoku's legal group.[5]  [*Id*., ¶11 and Ex.

22  ────────────────

23  [4] Plaintiffs confirmed in a meet-and-confer telephone call on October 5, 2015 that they were
    aware when they reviewed the Shimoda Email that Mr. Shimoda was counsel of record for

24  Teikoku in both cases.  [Langer-Osuna Decl., ¶21].

25  [5] Of the nine recipients of the Shimoda Email, eight of them were identified in documents
    provided to Plaintiffs as Teikoku executives involved in the "negotiation of, analysis of, or

26  decision to enter into" the settlement agreement with Watson.  [Langer-Osuna Decl., ¶20].  The
    ninth person (Daisuke Kato) was an Assistant Manager of Business Development at Teikoku

27  Pharma USA, Inc.  Had plaintiffs checked, they could have easily confirmed that he was a
    Teikoku employee with a Teikoku email address, which appears in over 1,700 produced Teikoku

28  documents.  Indeed, they could have easily identified his exact position at Teikoku.  [*Id*.].

5

NOTICE OF MOTION AND MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – MDL DOCKET NO. 14-md-02521-WHO

A; Langer-Osuna Decl., ¶20].  The **"subject"** line states in Japanese that the email is about

settlement discussions with "W" company (i.e., Watson) and goes on to state for a second time, in

English, that the email is **"Attorney-Clients Privilege."**  [Shimoda Decl., ¶ 13, Ex. A].  The

email is dated April 11, 2012 – at a time when were on-going negotiations with Watson

regarding settlement and a little over a month before the parties finally settled the Watson

litigation.  [*Id.*, ¶ 12].

On its face, the Shimoda Email is a distinctly substantive communication from attorney to

client.  It contains ***two full pages*** of substantive information relating to the settlement of the

Watson litigation written in Japanese, consisting of at least ***12 separate paragraphs.***   The

English-language translation submitted by Plaintiffs' counsel in support of the Defense Election

Motion consisted of approximately ***1,000 words.***  [Langer-Osuna Decl., ¶ 17].

### C.   Teikoku Inadvertently Produced the Shimoda Email

The Shimoda Email was inadvertently produced to Plaintiffs' counsel despite Teikoku

taking reasonable steps to ensure that such errors were not made.  The Shimoda Email was one

of over 55,000 documents reviewed over the summer of 2015 by a team of bilingual document

reviewers hired by SPB.  [Johnson Decl., ¶3; Langer-Osuna Decl., ¶3].  The contract reviewers

performed their review using a document review platform called Relativity.  [Johnson Decl.,

¶3].  This platform is widely used for e-discovery purposes and is, at a minimum, among the

most commonly utilized software products available for e-discovery review.  [*Id.*, ¶¶3, 9].

Relativity's developer, kCura, is recognized as a market leader among e-discovery software

firms.  [*Id.*].

To avoid inadvertent disclosures and production errors, Teikoku implemented a three-

tier quality control protocol.  [Langer-Osuna Decl., ¶5].  First, Teikoku engaged a team of

bilingual contract reviewers and spent several hours training them regarding the issues in this

case.  [*Id.*, ¶4],  To ensure that first-pass privilege determinations made by the contract

reviewers were correct, privilege determinations were spot checked by a more senior second

level reviewer.  [*Id.*, ¶5]. These more senior reviewers consulted with and were themselves spot

checked by senior members of Teikoku's core litigation team.  [*Id.*]. Where there were

6

NOTICE OF MOTION AND MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – MDL DOCKET NO. 14-md-02521-WHO

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

1  discrepancies in a privilege designation, such as inconsistent designations between members of

2  an email thread or the failure to apply redactions, these documents were routed for a final

3  quality control check by a senior member of Teikoku's core litigation team. [*Id.*].

4      The Shimoda Email itself was identified by one of Teikoku's contract reviewers as

5  privileged and tagged for redaction on the Relativity e-discovery platform.  [Johnson Decl., ¶5].

6  Records from Relativity show that, in fact, this reviewer applied redactions to the Shimoda

7  Email before indicating that the un-redacted, non-privileged part of the document (i.e., the

8  Vancocin press release and message headers) should be released for production.  [*Id.*].  This

9  document would have appeared to have been properly redacted to any of Teikoku's team

10  performing quality review.

11      Unfortunately, after the review was complete, there was a computer malfunction during

12  processing of the document, which resulted in the Shimoda Email being produced unredacted to

13  Plaintiffs in Teikoku's July 31, 2015 production. [*Id.*, ¶7].  There was no indication to Teikoku's

14  counsel that this had occurred and there was no further reasonable step that Teikoku's counsel

15  could have taken to ensure that the redactions had been made as indicated.  [*Id.*, ¶9]. In fact,

16  Teikoku logged the Shimoda Email as redacted in both its August 7 and September 28, 2015

17  privilege logs with the same production numbers cited by Plaintiffs' counsel in the Defense

18  Election Motion.  [*Id.*, 8; Langer-Osuna Decl., ¶9].  It was not until Plaintiffs quoted on

19  unredacted English translation of the Shimoda Email in the Defense Election Motion that

20  Teikoku realized the inadvertent production had occurred.  [Langer-Osuna Decl., ¶7; Meckes

21  Decl., ¶7; Shimoda Decl., ¶11].

22      **D.**    **Plaintiffs Used the Shimoda Email to Formulate Arguments and Prepare**
23          **Their Case**

24      It is unclear when Plaintiffs' counsel first became aware of the substance of the Shimoda

25  Email, but sometime after July 31, 2015 and before September 22, 2015, Plaintiffs' counsel

26  decided that this document was sufficiently important to obtain a certified translation.[6]  Plaintiffs'

---

[6] July 31, 2015 is the date that Teikoku's production was delivered to Plaintiffs and September
22, 2015 is the date of the certified translation that was previously submitted to the Court as part
of D.I. 271, which has now been withdrawn.  [Langer-Osuna Decl., ¶¶7, 17].

1    counsel received the certified translation of the Shimoda Email on September 22, 2015, and ten

2    days later they incorporated four full paragraphs of Mr. Shimoda's communication into their

3    Defense Election Motion.   [Langer-Osuna Decl., ¶ 17].

4           While Teikoku has no visibility into Plaintiffs' counsel's mental processes in deciding to

5    use the Shimoda Email, the evidence shows that they gave it quite a bit of thought.   For example,

6    during a meet-and-confer telephone conference, Plaintiffs' counsel David Nalven explained the

7    process that they were using to determine whether to obtain certified translations of Japanese

8    language documents produced by Teikoku.   [Meckes Decl., ¶¶13-14; Langer-Osuna Decl., ¶¶14-

9    15].   Mr. Nalven explained that Plaintiffs' counsel worked initially with an experienced translator

10   to determine which documents were of interest to Plaintiffs.   [*Id*.].   Those documents would then

11   be singled out for discussion with the translator to determine whether a formal translation should

12   be commissioned.   [*Id*.].   If counsel agreed that the document was sufficiently important, then

13   Plaintiffs' counsel would commission a certified translation. [*Id*.].

14          Here, even before any translation was commissioned, Plaintiffs' counsel would certainly

15   have recognized that the Shimoda Email had been marked "Attorney-Client Privilege" – it was,

16   after all, marked as such *twice in English.*   [Shimoda Decl., Ex. A].   Plaintiffs' counsel would also

17   have seen that this document originated from Teikoku's counsel of record and contained two full

18   pages of text.   [*Id*., ¶ 13].   Once Plaintiffs' counsel had translated the subject line, they would

19   have realized that the subject of the communication was Teikoku's and Endo's efforts to settle the

20   Watson litigation – a subject squarely within the scope of Mr. Shimoda's representation of

21   Teikoku.   Once Plaintiffs' counsel obtained an informal translation of the Shimoda Email's

22   subject matter, it would have been even more clear that this material was privileged, had been

23   produced in error, and that it went to the heart of this case.   Nonetheless, Plaintiffs proceeded to

24   obtain a certified translation and did not notify Teikoku.

25          What happened after Plaintiffs obtained the certified translation is not precisely clear

26   either, but we know that each of the interim lead counsel for Direct Purchaser Plaintiffs and the

27   End Payor Plaintiffs, counsel for GEHA and the Retailer Plaintiffs all signed the Defense Election

28   Motion.   If counsel observed their obligations under Rule 11, one can infer that drafts of the

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

8

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

1    Motion and relevant exhibits (including the Shimoda Email) were circulated, considered,

2    commented upon and/or edited by Plaintiffs' counsel before they decided affirmatively to quote

3    the Shimoda Email in the Motion and to use it to support their arguments.

4           In fact, in a meet and confer conference call on October 5, 2015, Plaintiffs' counsel

5    informed Teikoku that they had "read, reviewed, and assessed" the Shimoda Email but after

6    "carefully studying it," they had concluded that the email was not privileged. [Langer-Osuna

7    Decl., ¶21; Meckes Decl., ¶19].  Despite this determination made after "careful study," however,

8    Plaintiffs' counsel were unquestionably aware that Teikoku might consider the Shimoda Email to

9    be privileged; the Defense Election Motion stated, "If Teikoku seeks to claim that these

10   documents are in fact privileged, the parties may address those issues as contemplated under

11   Federal Rule of Civil Procedure 26(b)(5)."  D.I. 273 at 20 of 39, n. 39.  Plaintiffs' counsel later

12   confirmed, on an October 9, 2015 meet and confer teleconference, that all Plaintiffs' counsel of

13   record in this case were equally responsible for the Defense Election Motion and the decision to

14   use the Shimoda Email.[7]  [Meckes Decl., ¶20].

15          Ultimately, the Motion filed with the Court at 6:09 p.m. PDT on the evening of Friday,

16   October 2, 2015 quotes verbatim *four full paragraphs* of the certified translation of the Shimoda

17   Email.  [Langer-Osuna Decl., ¶ 17].  At no time prior to this did Plaintiffs' counsel ever contact

18   Teikoku or consult the Court to determine whether Teikoku did, in fact, consider the Shimoda

19   Email to be privileged. [Langer-Osuna Decl., ¶21; Meckes Decl., ¶21].

20   **III.   ARGUMENT**

21          In *State Comp. Ins. Fund v. WPS, Inc.,* 70 Cal. App. 4th 644, 657 (1999), the California

22   Court of Appeal held that "whenever a lawyer ascertains  that he or she may have privileged

23   attorney-client material that was inadvertently provided by another, that lawyer must notify the

24   party entitled to the privilege of that fact."  In *Rico v. Mitsubishi Motors Corp*., 42 Cal. 4th 807,

25   _____

26   [7] Teikoku requested Plaintiffs' counsel to confirm that all counsel were equally responsible to
     avoid the need for discovery or argument regarding each attorneys' role.  Plaintiffs' counsel
27   confirmed that they acted together on the Defense Election Motion and were not aware of any
     counsel who would claim their conduct to be distinguishable from the others.  [Meckes Decl.,
28   ¶20, Ex. A].

810 (Cal. 2007), the California Supreme Court unequivocally adopted the holding in *State Comp.*, ruling that an attorney practicing in California "may not read [an inadvertently produced] document any more closely than is necessary to ascertain that it is privileged.  Once it becomes apparent that the content is privileged, counsel must immediately notify opposing counsel and try to resolve the situation."

In *Rico*, the court went on to hold that an attorney who fails to conduct himself or herself in accordance with this rule, faces disqualification where, as here, he or she "mak[es] full use of the confidential document."  *Id.* at 819.  The courts presume that the use of privileged communications results in "irreparable prejudice" to the disclosing party. *See Rico,* 42 Cal. 4th at 818-820; *United States ex rel. Hartpence v. Kinetic Concepts, Inc.,* CV-08-1885-GHK (AGRx), CV-08-6403-GHK (AGRx), 2013 U.S. Dist. LEXIS 74833at *54-55 (C.D. Cal. May 20, 2013).  This rule is a "standard governing the conduct of California lawyers" and applies with full force to each of Plaintiffs' counsel by virtue of Civil Local Rule 11-4(a)(1), which mandates that attorneys permitted to practice in this Court must "[b]e familiar and comply with the standards of professional conduct required of members of the State Bar of California."  *See State Comp.*, 70 Cal. App. 4th at 657.

Here, the Shimoda Email is clearly privileged on its face and its disclosure made in error despite reasonable steps taken to ensure it was withheld from production.  Plaintiffs' counsel also knew or should have known that the Shimoda Email was produced in error, was privileged or was attorney work product, but they nonetheless made full use of it in a manner far exceeding the permissible boundaries under California law.  Because Plaintiffs' counsel's access to and use of plainly privileged information irreparably harms Teikoku, disqualification is the only remedy available to protect Teikoku's privileged information from further abuse and to ensure that these counsel do not engage in similar misconduct in the future.

NOTICE OF MOTION AND MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – MDL DOCKET NO. 14-md-02521-WHO

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

A.   **The Shimoda Email Is Protected by the Attorney-Client Privilege, Work Product Doctrine and Under the Common Legal Interest Doctrine**

1.   The Shimoda Email is a Privileged Attorney-Client Communication

The attorney-client privilege protects "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *See United States v. Richey,* 632 F.3d 559, 566 (9th Cir. 2011). A party asserting the attorney-client privilege must demonstrate the existence of an attorney-client relationship and the privileged nature of the communication. *See United States v. Ruehle,* 583 F.3d 600, 607 (9th Cir. 2009) ("The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice as well as an attorney's advice in response to such disclosures.").

Here, there is no dispute that Noriyuki Shimoda was counsel of record for Teikoku in the Watson Litigation and that the Shimoda Email was transmitted to Teikoku in confidence to discuss possible settlement of that case. Courts routinely hold that when a lawyer is hired, he is presumed to be hired for the purpose of giving legal advice in his capacity as a lawyer. *United States v. Chen,* 99 F.3d 1495, 1501 (9th Cir. 1996). This is no exception. Mr. Shimoda was hired to represent and advise Teikoku in the prosecution, defense *and* settlement of the Watson litigation. [Shimoda Decl., 4-7]. "[I]t is widely accepted that the privilege encompasses not only (qualifying) communications from the client to her attorney but also communications from the attorney to her client in the course of providing legal advice." *U.S. v. Chevron Texaco Corp.,* 241 F. Supp.2d at 1069.

Plaintiffs' counsel have informed Teikoku that they concluded after carefully studying the Shimoda Email that it was not privileged because "the email consists solely of a transmission of fact and does not include legal advice." [Meckes Decl., ¶20]. This is nonsense. As noted, Mr. Shimoda was one of the principle legal advisors to Teikoku in the Watson litigation, the role for which Teikoku specifically engaged Mr. Shimoda. The Shimoda Email provides both advice and a confidential update to Teikoku regarding Endo's and Teikoku's joint litigation and settlement strategy with Watson. [Shimoda Decl., ¶¶12-14]. Further, even if the Shimoda Email contained nothing but a factual report (which it does not), it would still be

11

privileged since it is axiomatic that the attorney-client privilege encompasses substantive

communications between attorneys and clients pursuant to a legal representation even when

those communications consist *solely* of unprivileged facts. *See Upjohn Co. v. United States*,

499 U.S. 383, 394-5 (1980) (drawing a sharp distinction between non-privileged facts and the

privileged communication of those non-privileged facts); *see also Willnerd v. Sybase, Inc.*, Case

No. 1:09-CV-500-BLW, 2010 U.S. Dist. LEXIS 135781, *9 (D. Idaho, Dec. 22, 2010) ("Even if

the privilege does not attach to the underlying fact, communications of that fact are

privileged."); *see also Muro v. Target Corp.*, 250 F.R.D. 350, n.21 (N.D.Ill. 2007)

("communications of facts are privileged even if the original facts are not.").

On its face, the Shimoda Email is privileged.  It was authored by an attorney for

consideration by Teikoku executives and members of the Teikoku legal group in connection

with advice solicited from Mr. Shimoda.  [Shimoda Decl., ¶¶12-14].  Further, Teikoku has

requested that Mr. Shimoda and SPB keep this communication confidential and has done

nothing to waive privilege.  [*Id.*, ¶19].  Any argument by Plaintiffs to the contrary is nothing

more than a pretext constructed by Plaintiffs' counsel to justify their improper conduct.

## 2. The Shimoda Email is Attorney Work Product

The attorney work product doctrine protects "documents and tangible things that are

prepared in anticipation of litigation or for trial by or for another party or its representative" and

applies with particular force where such materials disclose "the mental impressions,

conclusions, opinions, or legal theories of a party's attorney or other representative concerning

the litigation."  *See* FRCP 26(b)(3); *see also In re Grand Jury Subpoena,* 357 F.3d 900, 906 (9th

Cir. 2004); *accord CallWave Communs., LLC v. WaveMarket, Inc.*, No. C 14-80112 JSW (LB),

2015 U.S. Dist. LEXIS 22374 at *6-13 (N.D. Cal. Feb. 23, 2015) (applying work product

doctrine to common interest communications described as "involv[ing] matters discussed

between counsel for defense in on-going litigation.").  Courts have held that "[w]here the

selection, organization, and characterization of facts reveals the theories, opinions, or mental

impressions of a party or the party's representative, that material qualifies as opinion work

product."  *See, e.g.*, *Kintera, Inc. v. Convio, Inc.,* 219 F.R.D. 503, 507 (S.D. Cal. 2003).

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

Here, Mr. Shimoda carefully chose what information to disclose to Teikoku; what information to highlight and omit and what language to use to emphasize his client's understanding and appreciation of his report.  [Shimoda Decl., ¶14].  On its face, the Shimoda Email clearly reflects Mr. Shimoda's selection, organization, and characterization of facts – not to mention his mental impressions and legal opinions.  [*Id*., ¶¶7, 12-15]. Thus, it is apparent that it qualifies as attorney work product – a fact that Plaintiffs' counsel could not have objectively overlooked.

> 3.    The Shimoda Email is Protected From Disclosure by the Common Interest Doctrine

Plaintiffs may argue that the Shimoda Email is not privileged because it describes a communication from Endo's general counsel, Caroline Manogue.  The Shimoda Email, however, does not merely forward a communication from Ms. Manogue.  [*See* Shimoda Decl., ¶¶12-15].  Rather, as noted, it is Mr. Shimoda's words (indeed, in a different language), and consists, in part, of his description and characterization of what Ms. Manogue told him.  [*Id*.]. As such, it contains Mr. Shimoda's mental impressions and is within both the protection of both the work product doctrine and the attorney-client privilege.  Even if Mr. Shimoda had, however, simply forwarded a privileged communication from Ms. Manogue, the common interest doctrine would protect his communication from disclosure – a fact Teikoku repeatedly communicated to Plaintiffs' counsel here.

The common interest doctrine allows "allied lawyers and clients who are working together in prosecuting or defending a lawsuit or in certain other legal transactions [to] exchange information among themselves without the loss of privilege." *U.S. v. Bergonzi*, 216 F.R.D. 487, 496 (N.D. Cal. 2003) (citing *United States v. Mass. Inst. of Tech.,* 129 F.3d 681, 686 (2d Cir. 1999)).   The common interest doctrine applies where "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Pulse Eng'g, Inc. v. Mascon, Inc.,* 2009 U.S. Dist. LEXIS 92971, 2009 WL 3234177, at *3 (S.D. Cal. Oct. 2, 2009).

13

The common interest doctrine applies here.  Teikoku and Endo indisputably had a common interest in litigating and settling the Watson litigation.  In advising their respective clients, Endo's in-house legal team, including Caroline Manogue, and Teikoku's outside counsel at SPB, including Mr. Shimoda, would, from time to time, discuss on-going efforts to settle the Watson litigation.  [Shimoda Decl., ¶9].  Those communications were intended to further their common interest in resolving the Watson litigation informally if possible.  [*Id.*, ¶10].  Based on their mutual understanding that those communications were confidential and protected under the common interest doctrine, both Mr. Shimoda and Ms. Manogue would sometimes share their legal observations and the content of privileged communications they had had with their clients.  [*Id.*, ¶¶9-10].

Ms. Manogue's thoughts and legal conclusions about the Watson litigation and its settlement were Ms. Manogue's attorney work product.  To the extent the Shimoda Email reflects those thoughts or conclusions, they were communicated to Mr. Shimoda in confidence and were protected by the common interest doctrine from waiver.  Likewise, to the extent Ms. Manogue disclosed communications made to her by Endo personnel in her capacity as Endo's general counsel, those communications are within Endo's attorney-client privilege and disclosed to Mr. Shimoda (and by him to Teikoku) with the understanding that they were protected by the common interest doctrine.  Teikoku's inadvertent production cannot waive those privileges.

### B.   Teikoku Inadvertently Disclosed the Shimoda Email Because of Vendor Software Glitch Despite Undertaking Reasonable Steps To Avoid Such Errors

A disclosure made "by mistake or unintentionally" is inadvertent.  *Datel Holdings Ltd v. Microsoft Corp.*, No. C-09-05535 EDL, 2011 U.S. Dist. LEXIS 30872 at *7 (N.D. Cal. Mar. 11, 2011).  Here, despite implementing the three-tier quality control system to avoid inadvertent productions as described above, a software error occurred during the processing of the document images that resulted in the accidental production of the Shimoda Email without redactions.[8]

---

[8] Teikoku is not obliged to show inadvertence or reasonable steps to avoid waiver under F.R.E. 502(b) since the parties agreed in their Stipulated Order re: Discovery of Electronically Stored Information (D.I. 125) ("the ESI Order") to "opt out" of the requirements of that rule.  The ESI

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

14

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

1    In similar circumstances, the courts have held that productions of privileged documents

2    caused by a computer glitch were inadvertent.  In *Datel,* "a computer glitch" truncated an email

3    chain to remove any indication that it stemmed from an attorney's request that recipients

4    undertake an investigation.  *Id*. at *7-9.  Although the balance of the email thread was

5    privileged, reviewing attorneys mistakenly identified the thread as non-privileged and produced

6    it – repeatedly – to their opponents in litigation.  *Id*.  Nonetheless, the court ruled that this

7    production was inadvertent.  *Id*. at *9-10.

8        Here, Teikoku's counsel properly identified the Shimoda Email as privileged and made

9    every reasonable effort to ensure that that email was redacted before it was produced to

10   Plaintiffs.  [Johnson Decl., ¶¶3-9].  As noted above, despite Teikoku's three-tier privilege

11   review process, a computer error resulted in the production of an unredacted version.  [Johnson

12   Decl., ¶¶5-9; Langer-Osuna Decl., ¶¶ 3-7].  On the Relativity e-discovery platform, Teikoku's

13   counsel received every indication that the Shimoda Email had been properly redacted and there

14   were no reasonable steps Teikoku's counsel could or should have undertaken to detect the

15   subsequent computer processing error.  [Johnson Decl., ¶¶7-9].  Indeed, because the Relativity

16   system identified the Shimoda Email as redacted, it was included on Teikoku's privilege logs

17   under the same production number cited by Plaintiffs' counsel in the Defense Election Motion.

18   [Langer-Osuna Decl., ¶9].  Where, as here, forces beyond Teikoku's reasonable control resulted

19   in production, this is the essence of excusable, inadvertent production.

20

21

22

23

---

24   Order states that pursuant to Federal Rule of Evidence 502(d) and (e), disclosure of privileged
     communications or work product ("Protected Information") "does not and shall not constitute a

25   waiver or forfeiture of any claim of attorney-client privilege the disclosing party would otherwise
     be entitled to assert with respect to the Protected Information."  D.I. 125 at ¶8(b).  While Teikoku

26   therefore has no obligation to demonstrate either inadvertence or taking reasonable steps to
     prevent disclosure as required by Rule 502(b) to avoid a finding of waiver, Teikoku nonetheless

27   provides this background to avoid any suggestion that Teikoku's disclosure was somehow

28   intentional or made for tactical purposes.

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

### C.   **Plaintiffs' Counsel Knew or Should Have Known the Shimoda Email was Privileged Long Before They Deliberately Chose to Study and Use It in Court**

A lawyer has an obligation to disclose the receipt of privileged material "where it is reasonably apparent that the materials were provided or made available through inadvertence." *State Comp. Ins. Fund v. WPS, Inc.*, 82 Cal. Rptr. 2d 799, 807 (1999). "In applying the rule, courts must consider whether reasonably competent counsel, knowing the circumstances of the litigation, would have concluded that materials were privileged, how much review was reasonably necessary to draw that conclusion, and when counsel's examination should have ended." *Rico,* 42 Cal. 4th at 818. The test is an objective one. *Id.*

Here, in the circumstances of this case, any competent attorney would have realized immediately that the Shimoda Email contains privileged communications and had been inadvertently produced. As explained in depth above, the Shimoda Email gave every objective indicia of a privileged communication:

- The Shimoda Email was marked *twice* in English that it was an "Attorney-Client Communication";

- The Shimoda Email was a *lengthy* communication from Teikoku's counsel of record to recipients known to Plaintiffs' counsel to be Teikoku executives and legal group personnel;

- The "subject" line said that the Shimoda Email was about efforts to settle with Watson – a matter directly within the scope of Mr. Shimoda's representation of Teikoku;

- The Shimoda Email was reflected in Teikoku's privilege log as having been redacted;

- The content of the communication reflected Mr. Shimoda's advice, thoughts and impressions conveyed in confidence to his client, not to mention reflecting his organization and characterization of facts;

Importantly, the content of the communication reflected Mr. Shimoda's discussion with Endo general counsel Caroline Manogue about settling with Watson – *the very type* of communication

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

1    that Teikoku *repeatedly* told Plaintiffs' counsel in no uncertain terms would *not* be produced in

2    discovery.  [Meckes Decl., ¶11].

3           Concluding that the Shimoda Email was privileged and inadvertently produced was

4    objectively obvious to Plaintiffs at a glance.  The words they used when they quoted the Shimoda

5    Email in the Defense Election Motion give them away:  "If Teikoku seeks to claim that these

6    documents are in fact privileged, the parties may address those issues as contemplated under

7    Federal Rule of Civil Procedure 26(b)(5)."  D.I. 273 at 20 of 29, n. 39.  Plaintiffs' argument that

8    they could not distinguish the Shimoda Email as privileged from a vast sea of "similar"

9    documents is nothing but a weak excuse crafted to justify their improper conduct.

10          **D.      Plaintiffs' Counsel Caused Irreparable Harm By Unethically Studying The
             Shimoda Email and Making Full Use Of It In Court Proceedings**

12          When Plaintiffs' counsel realized that the Shimoda Email was likely privileged, they

13   should immediately have contacted Teikoku.   "Once it is apparent that the writing contains an

14   attorney's impressions, conclusions, opinions, legal research or theories, the reading stops and the

15   contents of the document are for all practical purposes off limits."  *Rico*, 42 Cal. 4th at 820.  Here,

16   however, Plaintiffs' counsel did not observe this simple ethical rule.  Instead, Plaintiffs' counsel

17   admit that they "read, reviewed and assessed" the Shimoda Email and, after "careful study"

18   deliberately used the information they gathered from this document to support the Defense

19   Election Motion.  [Meckes Decl., ¶19; Langer-Osuna Decl., ¶21].

20          Plaintiffs' counsel contend that they have studied the Shimoda Email and concluded that it

21   is not within the attorney client privilege or protected by the common interest doctrine because it

22   consists solely of information of a factual nature.[9]  As noted above, however, that is simply not

23   the case.  Plaintiffs' counsel's argument, however, is telling.  Plaintiffs admit to carefully parsing

24   through and studying Mr. Shimoda's confidential communication in order to develop arguments

25   to defeat the privilege – even though on its face, the Shimoda Email appears unmistakably

26   privileged.

27   _____
[9] Plaintiffs' counsel have suggested there may be other reasons but have elected not to provide
28   them.  [Meckes Decl., Ex. A].

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

1    This is *precisely* the kind of improper conduct which warrants disqualification.  *Clark v.*

2    *Superior Court*, 196 Cal. App. 4th at 53-54.  Rather than stop reading (as dictated by *Rico*),

3    Plaintiffs' counsel weighed for themselves whether an exception might apply to give them an

4    "out" to the  attorney-client  privilege apparent on the face of the document.  Plaintiffs' counsel

5    then proceeded to make "full use" of the document, including quoting it at length in the Defense

6    Election Motion, without ever taking the basic step of checking with Teikoku as to whether the

7    document had been inadvertently produced.

8    *Rico* teaches that it is just this kind of deliberate review and use of privileged materials

9    that warrants disqualification of counsel.  *Rico,* 42 Cal. 4th at 819.  In *Rico*, the California

10   Supreme Court affirmed disqualification of counsel where he had made copies of privileged

11   materials, provided them to his experts and co-counsel and then used them in deposition.  *Id.* at

12   811-813.  As here, disqualification was warranted because counsel not only failed to contact

13   counsel when he realized the materials were likely privileged, he went on to make "full use" of

14   confidential documents, which the court held was "irreversibly" prejudicial to his opponents.  *Id.*

15   at 819.

16   Courts applying *Rico* have repeatedly found that the study and subsequent use of

17   privileged material supports disqualification.  In *Clark,* for example, an attorney was disqualified

18   because he studied attorney-client communications to determine whether they were privileged

19   under the so-called "dominant purpose" test.  *Clark*, 196 Cal. App. 4th at 53.  After undertaking

20   this review, like Plaintiffs' counsel here, he went ahead and used the confidential information he

21   had gathered in the litigation.  *Id.* at 53-54.  The court held that such an "in depth examination of

22   the contents of those documents" violated counsel's obligations under *Rico.  Id.* at 54 n.8.

23   Accordingly, the court affirmed disqualification as a "proper as a prophylactic measure to prevent

24   future prejudice to the opposing party from information the attorney should not have possessed."

25   *Id.* at 55.

26   Likewise, in *Gotham City Online, LLC v. Art.com, Inc.,* No. C 14-00991 JSW, 2014 U.S.

27   Dist. LEXIS 33680 (N.D. Cal. 2014), Judge White ordered disqualification where plaintiff's

28   counsel (the law firm BraunHagey) obtained privileged documents from its client and then used

18

them to prepare a demand letter and a proffer of evidence.  BraunHagey argued that because the documents were "business related" they were not privileged and that therefore counsel was entitled to review them.  The court rejected this argument stating:

> [T]o the extent, BraunHagey argues that the documents are not in fact privileged and, thus, it was entitled to review them, ***it was not BraunHagey's role to make that determination.***  As the Ninth Circuit stated in the *Gomez* case, "the path to an ethical resolution is simple:  when in doubt ask the court."
>
> . . .
>
> "[I]t is not seriously disputed that  BraunHagey reviewed and analyzed the emails and, thus, it reviewed the documents more than was reasonably necessary to make a determination that there was a privilege issue."  *Id.*

*Gotham City Online*, 2014 U.S. Dist. LEXIS 33680 at *13 (quoting *Gomez v. Vernon,* 255 F.3d 1118, 1135 (9th Cir. 2001)) (emphasis added).

Similarly, in *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 2013 U.S. Dist. LEXIS 74833 (C.D. Cal. May 20, 2013), the court ordered disqualification where relators' counsel had reviewed privileged materials and then used them in court filings.  The court reasoned:

> Relators arguments against disqualification are not availing.  First, Relators argue that "mere exposure" to privileged communications does not warrant disqualification.  While this may be a correct proposition of law, we are not disqualifying counsel merely because they were exposed to privileged materials.  Rather, we are disqualifying Relators' counsel because of what they did and did not do after such exposure:  they quoted privileged documents in the pleadings and did not take any "reasonable remedial action," such as consulting the court about what to do about privilege issues.

*Id*. at *9-10.   The court noted that counsel's use of the privileged materials, including quoting them *verbatim* into court filings, "caused sufficient prejudice to warrant disqualification."  *Id.*

Plaintiffs' counsel's conduct here is indistinguishable from the cases in which disqualification was found to be an appropriate remedy.  Although Plaintiffs' counsel undoubtedly suspected they were dealing with a privileged communication, they admittedly considered it, studied it, translated it, disseminated it, quoted it to the Court, and used it to craft legal theories and support legal arguments.  The "receipt of privileged communications imposes a

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

duty on counsel to take some reasonable remedial action." *Gomez*, 255 F.3d at 1134. Plaintiffs'

counsel here deliberately chose to do the opposite.

**E.    Protecting Teikoku's Confidences and the Integrity of Judicial System Warrants Disqualification**

In considering whether to disqualify Plaintiffs' counsel, the Court's "paramount concern

must be to preserve public trust in the scrupulous administration of justice and the integrity of

the bar." *Clark*, 196 Cal. App. 4th at 47. The attorney-client privilege is "one of the

fundamental principles of our judicial process." *Id*. at 48. To ensure that attorney-client

communications are not chilled by the prospect of inadvertent disclosure, an attorney owes "an

obligation not only to protect his client's interests but also to respect the legitimate interests of

fellow members of the bar, the judiciary and the administration of justice." *Rico*, 42 Cal. 4th at

818. Where, as here, counsel disregard this fundamental duty in order to gain an upper hand in

litigation, disqualification is the sole remedy that can cure such misconduct.

Here, Plaintiffs' counsel not only ignored Teikoku's attorney-client privilege, they

scrutinized Teikoku's confidences under a microscope. Plaintiffs admit to having studied the

Shimoda Email, both to find a basis to overcome the privilege and to support their Defense

Election Motion, which, if successful, would strip Endo of its privileges and deprive Endo of the

right to present certain evidence at summary judgment or at trial. *See and compare* D.I. 273 and

278. And Plaintiffs have stated they intend to bring a similar motion against Teikoku. D.I. 272

at 6:14-15.The courts have held that sufficient prejudice to merit disqualification is established

simply by showing that counsel "used privileged materials" and "incorporated verbatim content

from those materials" into court filings. *Hartpence*, 2013 U.S. Dist. LEXIS 74833 at *10-11

(*citing Clark*, 196 Cal. App. 4th at 54-55); *Rico*, 42 Cal. 4th at 818-20 (noting that a similar use

of privileged material was "irreversible" and thus disqualification was the necessary remedy).

Here, the contents of the Shimoda Email went to the heart of claims asserted by

Plaintiffs as well as to the heart of Mr. Shimoda's legal representation of Teikoku, i.e., settling

the Watson litigation. Plaintiffs have already attempted to use the Shimoda Email to affect the

merits of this case and to alter how the trial in this case will unfold. How Plaintiffs' counsel

20

NOTICE OF MOTION AND MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – MDL DOCKET NO. 14-md-02521-WHO

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

1   have further misused information from the Shimoda Email is known only to them.  The Court

2   can only assume they will not forget what they learned but will instead put it to further improper

3   use.  *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 165 (2d Cir.1992).

4   (The review of privileged "documents may alert adversary counsel to evidentiary leads or give

5   insights regarding various claims and defenses [and] attorneys cannot unlearn what has been

6   disclosed to them [through such documents])."

7           As was the case in *Rico* and many of its progeny, this type of conduct warrants

8   disqualification.  Plaintiffs' counsel closely examined, disseminated and used one of Teikoku's

9   most private privileged communications knowing full well that Teikoku considered it privileged.

10  Absent disqualification, neither Teikoku nor the Court can have any confidence that Plaintiff's

11  counsel will not continue to make full use of what they gathered from their wrongdoing or repeat

12  their misconduct in the future.  This is precisely the kind of damage that the court in *Rico* held

13  was "irreversible" and precisely the circumstance where "[t]he important right to counsel of one's

14  choice must yield to ethical considerations that affect the fundamental principles of our judicial

15  process." *Clark*, 196 Cal. App. 4th at 47-48; *accord Rico*, 42 Cal. 4th at 818-20.

16          The courts have held that mere exposure to privileged information will not result in

17  disqualification of counsel.  The key question is what attorneys ***do*** in the face of such exposure.

18  Here, Plaintiffs' counsel deliberately chose to leave their ethical obligations at the door in order to

19  seize the upper hand.  It is these ***actions*** by Plaintiffs' counsel that leave this Court with no

20  alternative other than to disqualify Plaintiffs' counsel.  If Plaintiffs in this action face prejudice as

21  a result of disqualification, they have only their attorneys to blame.

22  **IV.    CONCLUSION**

23          For the foregoing reasons, Teikoku respectfully requests that this Court enter an order:

24  (1) disqualifying Plaintiffs' counsel, and any other plaintiffs' law firm who received, considered,

25  or used the Shimoda Email, from representing any plaintiff in this matter or any other dispute

26  involving Teikoku and the settlement of the Watson litigation; (2) ordering Plaintiffs' counsel to

27  identify all persons to whom they disclosed any of Teikoku's privileged documents or

28  information contained therein; and (3) enjoining Plaintiffs' counsel from discussing the contents

1   of any documents identified as privileged by Teikoku with or providing any information

2   regarding such documents to any other person.

3   Dated:  October 14, 2015                          SQUIRE PATTON BOGGS (US) LLP

4

5                                                     By: /s/ Joseph A. Meckes
                                                           Joseph A. Meckes
6
                                                    Attorneys for Defendants
7                                                   TEIKOKU PHARMA USA, INC. and
                                                    TEIKOKU SEIYAKU CO., LTD.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF – MDL DOCKET NO. 14-md-02521-WHO