UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS LOCAL 1776 & PARTICIPATING EMPLOYERS HEALTH AND WELFARE FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TEIKOKU PHARMA USA, INC., et al.,<br><br>Defendants. | Case No. 14-md-02521-WHO<br><br>**ORDER RE DISCOVERY DISPUTE CONCERNING DRAFTS OF SEC LETTER**<br><br>Re: Dkt. No. 269 |

The parties dispute whether defendant Endo Pharmaceuticals Inc. should be allowed to withhold from production ten drafts of a letter Endo submitted to the SEC's Accounting Group – Interpretations Department seeking pre-clearance of Endo's proposed accounting treatment for its payment of free goods to Watson. Dkt. No. 269. Endo submitted the draft letters for in camera review and highlighted particular portions that disclose attorney comments or input. Endo has produced the final version of its pre-clearance letter to plaintiffs; this dispute is solely about production of the drafts. Endo contends that the drafts should be withheld from production in full or in part because they are protected by the attorney-client privilege and the work product doctrine.

Having reviewed the draft letters and considered the argument the parties made during the October 6, 2015 Case Management Conference, I find that the drafts were created primarily for accounting purposes and not in anticipation of litigation. The drafts were circulated between, and the edits made by, members of Endo's business team and Endo's outside accountants at Deloitte in order to seek pre-clearance of Endo's accounting of the Watson settlement. In these circumstances – where Deloitte was engaged to provide business accounting services, not to assist counsel with specific legal matters – the attorney-client privilege cannot be invoked. *See, e.g., United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) ("What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice but only accounting service . . . or if the advice sought is the

accountant's rather than the lawyer's, no privilege exists."); *see also United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) ("If the advice sought is not legal advice, but, for example, accounting advice from an accountant, then the privilege does not exist."). According to the information before me, under the terms of its agreement with Endo, Deloitte was providing accounting services to Endo. None of the ten drafts at issue was circulated directly to counsel. Although Endo asserts that Endo's legal department "heavily vetted" the drafts, the drafts at issue do not reflect *any direct* edits or comments made by counsel.

At most, in the comments on the drafts, non-attorney individuals editing the drafts ask whether certain statements should be made or deleted based on advice from counsel. But by sharing these drafts and comments with third-party Deloitte, any privilege that might have attached has been waived. *Samuels v. Mitchell*, 155 F.R.D. 195, 199 (N.D. Cal. 1994) ("If privileged documents or communications are disclosed to accountants for a purpose other than securing legal advice, the privilege is waived."); *see also United States v. ChevronTexaco Corp*., 241 F. Supp. 2d 1065, 1074 (N.D. Cal. 2002) (where communication between in-house counsel and outside counsel was shared with client's accountant and the communication was not necessary to allow outside counsel to provide legal advice to the client, privilege was waived).[1] As a result, neither the documents nor the purported "advice from counsel" comments are exempt from disclosure under the attorney client privilege.

The drafts are also not protected from disclosure under the work product doctrine. The drafts post-date the settlement with Watson and were created specifically to allow Endo to receive advice from the SEC about its accounting of that settlement, and not in anticipation of litigation. These drafts and the pre-clearance letter were not created "because of" the prospect of litigation, therefore, and cannot be protected as work product. *See, e.g., United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011) (in applying "because of" test to documents which might have dual

---

[1] *United States v. Judson*, 322 F.2d 460, 462 (9th Cir. 1963), relied on by Endo, is inapposite. There, an attorney advised his client – who was under criminal investigation – to hire an accountant to prepare net worth statements the attorney then used in defending the client. Here, Deloitte was hired – under the scope of service agreement – to provide audit and other accounting services to Endo. Deloitte was not hired to provide assistance to Endo's legal counsel. If it had been, the analysis in this Order would have been different.

2

purpose, courts consider the totality of the circumstances and whether the document at issue "would not have been created in substantially similar form but for the prospect of litigation." (internal quotation omitted)).

The same conclusion is true for the discrete portions of the letters which Endo claims disclose the "mental impressions" of its attorneys. These "mental impressions" were also not prepared in anticipation of or during litigation. Instead, they are attempts to explain to the SEC Endo's concerns that led to the Watson settlement. Endo argues that these "mental impressions" reflect the legal analysis of its attorneys from the Watson litigation, and the mere fact that they were committed to paper after the end of that litigation does not strip them of their work product character. But this case is unlike the one relied on by Endo for that proposition. See *eSpeed, Inc. v. Bd. of Trade of City of Chicago, Inc.*, 2002 WL 827099, at *2 (S.D.N.Y. May 1, 2002) (oral attorney opinion about pending patent litigation protected as work product even though not committed to writing until after conclusion of litigation). Endo has not shown that disclosure of the identified mental impressions will jeopardize Endo's ability to defend or settle similar litigation in the future. *But see Cities Serv. Co. v. F.T.C.*, 627 F.Supp. 827, 832 (D.D.D. 1984) (litigants who "'face litigation of a commonly recurring type ... have an acute interest in keeping private the manner in which they conduct and settle recurring legal disputes.'" (quoting *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 31 (1983) (Brennan, J., concurring)).[2]

The drafts are not protected by either the attorney client privilege or the work product doctrine and must be produced to plaintiffs without redactions

**IT IS SO ORDERED**.

Dated: November 9, 2015

_____
WILLIAM H. ORRICK
United States District Judge

---

[2] Because I conclude that the work product doctrine does not apply, I need not consider the work product "adversary or conduit" non-waiver cases relied on by Endo. *See, e.g., United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010); *Skynet Elec. Co., Ltd v. Flextronics Int'l, Ltd.*, No. C 12-06317 WHA, 2013 WL 6623874, at *3 (N.D. Cal. Dec. 16, 2013); *S.E.C. v. Roberts*, 254 F.R.D. 371 (N.D. Cal. 2008).