[Submitting Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | Master File No. 14-md-02521-WHO |
| | MDL No. 2521 |
| THIS DOCUMENT RELATES TO: DIRECT PURCHASER CLASS ACTIONS | **DIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR (1) PRELIMINARY APPROVAL OF SETTLEMENT WITH ALL DEFENDANTS, (2) APPROVAL OF FORM OF NOTICE, AND (3) A SCHEDULE LEADING TO A FINAL APPROVAL HEARING** |
| | Date: April 25, 2018<br>Time: 2:00 p.m.<br>Courtroom: 2, 17th Floor<br>Before: Hon. William H. Orrick |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 25, 2018, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable William H. Orrick, United States District Judge for the Northern District of California Courtroom 2, 17th floor of the United States Courthouse in San Francisco, California, Plaintiffs American Sales Company, LLC, Droguería Betances, Inc., and Rochester Drug Co-Operative, Inc. (collectively, the "Direct Purchaser Class Plaintiffs") on behalf of themselves and the direct purchaser class previously certified by this Court, (collectively, and as defined *infra* at n. 1, the "Direct Purchaser Class" or "the Class"), will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

1. Preliminarily approving the settlement of this action in full for a total of $166 million based on the following separate settlements:

    (a) a $35 million settlement between Defendants Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. ("Teikoku") and the Direct Purchaser Class;

    (b) a $71 million settlement between Defendants Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc. and Actavis plc ("Watson") and the Direct Purchaser Class; and

    (c) a $60 million settlement between Defendant Endo Pharmaceuticals, Inc. ("Endo") and the Direct Purchaser Class.[1]

2. Directing distribution of notice of the foregoing settlements to the Class and setting a schedule for the final approval process; and

---

[1] The Class is defined as follows:  "All persons or entities in the United States, including its territories, possessions, and the Commonwealth of Puerto Rico, who purchased brand or generic Lidoderm directly from any of the Defendants at any time during the period August 23, 2012 through May 1, 2014 (the 'Class').  Excluded from the Class are Teikoku, Endo Pharmaceuticals, Inc., Watson Pharmaceuticals, Inc., and their officers, directors, management, employees, subsidiaries, or affiliates, and all federal government agencies.  Also excluded from the Class are Walgreen Co., The Kroger Co., Safeway Inc., HEB Grocery Company LP, Albertson's LLC, Rite Aid Corporation, Rite Aid Hdqtrs. Corp., and CVS Pharmacy, Inc."  *See* Declaration of David S. Nalven ("Nalven Decl.") at Exs. 1-3. The Court previously certified a direct purchaser class.  ECF No. 670.  A Rule 23(f) petition was denied by order of the Court of Appeals.  ECF No. 756.  There are no differences between the class certified and the Class as defined herein, except that the assigned direct purchases of the retailer plaintiffs listed above, who opted out of the class and pursued individually their claims arising from such assigned purchases, are not included in the Class.  The retailer plaintiffs were never direct purchasers (*see* ECF 768 ¶ 6), and so the opting out of those partial assignments did not reduce the size or composition of the Class.

3.      Approving the proposed escrow agent and escrow agreements.

The grounds for this motion are that the proposed settlements are fair, reasonable, and adequate, and that the proposed content and method of notice will provide adequate notice to the Class of the terms of the settlements.

This motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of David S. Nalven (transmitting exhibits), the Declaration of Jeffrey J. Leitzinger Related to Proposed Allocation Plan and Net Settlement Fund Allocation, all papers and records on file in this matter, and the argument of counsel.

The Court is familiar with the facts of this case and the Direct Purchaser Class Plaintiffs respectfully submit that a hearing is not necessary.  If, however, the Court wishes to hold a hearing, the Direct Purchaser Class Plaintiffs respectfully request that the hearing occur at as early a date as is convenient for the Court.

Plaintiffs have conferred with counsel for Teikoku, Watson and Endo (collectively, "Defendants"), and this motion is unopposed.

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ............................................................................ I

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.      INTRODUCTION ............................................................................................. 1

II.     ARGUMENT .................................................................................................... 3

        A.      The Proposed Settlements Easily Meet the Standards for Preliminary
                Approval ............................................................................................... 3

                1.      The Proposed Settlements Were the Product of Serious, Arm's-
                        Length Negotiations Conducted by Magistrate Judge Spero ......... 3

                2.      There Are No Obvious Deficiencies in the Proposed
                        Settlements ..................................................................................... 4

                3.      The Proposed Settlements Do Not Grant Preferential Treatment
                        to Any Class Member ..................................................................... 4

                4.      The Settlements Are Within the Range of Possible Approval ....... 6

                5.      A Hearing on Preliminary Approval is Not Required or
                        Necessary in These Circumstances. .............................................. 8

        B.      The Proposed Plan of Allocation is Fair, Reasonable, and Adequate ........ 8

        C.      The Proposed Form And Manner of Notice Should be Approved ........... 10

                1.      The Form of the Settlement Notice Satisfies Rule 23 ................. 10

                2.      The Manner of Distributing the Settlement Notice Satisfies
                        Rule 23 ......................................................................................... 11

                3.      The Court Should Not Allow Another Opt-out Opportunity ........ 13

        D.      The Court should Approve The Huntington National Bank as the
                Escrow Agent and the Escrow Agreement. ............................................ 14

        E.      The Proposed Schedule Leading up to the Fairness Hearing Is
                Appropriate. ......................................................................................... 14

III.    CONCLUSION .............................................................................................. 15

1

# TABLE OF AUTHORITIES

2
**Page(s)**

3

### CASES

4

5
*Acosta v. Frito-Lay, Inc.*,
    2018 U.S. Dist. LEXIS 16018 (N.D. Cal. Jan. 31, 2018)..................................................... 3, 4, 5, 6

6

7
*In re Aggrenox Antitrust Litig.*,
    No. 14-md-02516 (D. Conn.), ECF No. 733-1 (plan approved on Dec. 18, 2017,
    ECF No. 739).................................................................................................................. 4

8

9
*In re Asacol Antitrust Litig.*,
    No. 15-cv-12730 (D. Mass.), ECF No. 419-9 (plan approved on Dec. 7, 2017,
    ECF No. 648).................................................................................................................. 4

10

11
*In re Asacol Antitrust Litigation*,
    No. 15-cv-12730-DJC, ECF No. 648 (D. Mass. Dec. 7, 2017)......................................... 6

12

13
*Barnard v. CorePower Yoga, LLC*,
    2017 U.S. Dist. LEXIS 146745 (N.D. Cal. Sept. 11, 2017)............................................ 5

14
*Brown v. CVS Pharm. Inc.*,
    2017 U.S. Dist. LEXIS 182309 (C.D. Cal. Apr. 24, 2014).............................................. 6

15

16
*In re Citric Acid Antitrust Litig.*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001)......................................................................... 8

17

18
*Cruz v. Sky Chefs, Inc.*,
    2014 U.S. Dist. LEXIS 68560 (N.D. Cal. May 19, 2014)................................................ 3

19
*Cuzick v. Zodiac U.S. Sheet Shells, LLC*,
    2017 U.S. Dist. LEXIS 168290 (N.D. Cal. Oct. 11, 2017)............................................ 5, 6

20

21
*In re DDAVP Direct Purchaser Antitrust Litig.*,
    No. 05-cv-2237 (S.D.N.Y.), ECF No. 101 (plan approved on Nov. 28, 2011, ECF
    No. 113)....................................................................................................................... 5

22

23
*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)......................................................................................... 13

24

25
*In re Doryx Antitrust Litig. (Mylan Pharms., Inc. v. Warner Chilcott Public Ltd.)*,
    No. 12-cv-3824 (E.D. Pa.), ECF No. 452-3 (plan approved on Sept. 15, 2014, ECF
    No. 665)....................................................................................................................... 4

26

27
*Edenborough v. ADT, LLC*,
    2017 U.S. Dist. LEXIS 170896 (N.D. Cal. Oct. 16, 2017)............................................. 3

28

*Fronda v. Staffmark Holdings, Inc.*,
    2017 U.S. Dist. LEXIS 194514 (N.D. Cal. Nov. 27, 2017) .................................................. *passim*

*Hunt v. Check Recovery Sys., Inc.*,
    No. 2007 U.S. Dist. LEXIS 58800 (N.D. Cal. Jul. 25, 2007) ...................................................... 12

*In re K-Dur Antitrust Litig.*,
    No. 01-1652, ECF No. 1057 (D.N.J. Oct. 5, 2017) ....................................................... 6

*King Drug of Florence, Inc. v. Cephalon, Inc.*,
    No. 06-1797 (E.D. Pa.), ECF No. 864-17 (plan approved on Oct. 15, 2015, ECF
    No. 870) ............................................................................................................. 4, 6

*Lane v. Facebook*,
    696 F.3d 811 (9th Cir. 2012) ............................................................................. 10

*Low v. Trump Univ.*,
    881 F.3d 1111 (9th Cir. 2018) ........................................................................... 13

*Meijer, Inc. v. Abbott Labs.*,
    Case No. 07-cv-5985 (N.D. Cal. Apr. 8, 2011) (Order) ..................................... 13

*Meijer, Inc. v. Barr Pharm., Inc.*,
    No. 05-2195 (D.D.C. Dec. 18, 2006) (Order) .................................................... 13

*In re MetLife Demut. Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................ 13

*In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*,
    No. 06-cv-52 (D. Del.), ECF No. 192 (plan approved on Feb. 21, 2012, ECF No.
    194) ..................................................................................................................... 5

*In re Miralax Antitrust Litig.*,
    No. 07-cv-142 (D. Del.), ECF No. 240 (plan approved on May 31, 2012, ECF No.
    243) ..................................................................................................................... 5

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................... 7

*In re Nexium (Esomeprozale) Antitrust Litig.*,
    C.A. No. 12-md-02409 (D. Mass. June 12, 2015) (Order) ................................. 13

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................. 13

*Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................. 7

*In re Prograf Antitrust Litig.*,
   No. 11-md-2242 (D. Mass.), ECF No. 667-2 (plan approved on May 20, 2015,
   ECF No. 678)..................................................................................................................... 5

*Satchell v. Fed. Exp. Corp.*,
   2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007)............................................... 4

*In re Skelaxin Antitrust Litig.*,
   No. 12-md-2343 (E.D. Tenn.), ECF No. 788 (plan approved on Sept. 24, 2014,
   ECF No. 800)..................................................................................................................... 5

*Smith v. Am. Greetings Corp.*,
   2016 U.S. Dist. LEXIS 66247 (N.D. Cal. May 19, 2016)................................................ 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2011 U.S. Dist. LEXIS 154288 (N.D. Cal. Dec. 27, 2011).............................................. 8

*Torres v. Pick-A-Part Auto Wrecking*,
   2018 U.S. Dist. LEXIS 2446 (E.D. Cal. Jan. 5, 2018) .................................................... 4

*In re TriCor Direct Purchaser Antitrust Litig.*,
   No. 05-340 (D. Del. Jan. 8, 2009) (Order) ..................................................................... 13

*In re Tricor Direct Purchaser Antitrust Litig.*,
   No. 05-cv-340 (D. Del.), ECF No. 536-1 (plan approved on Apr. 23, 2009, ECF
   No. 543)............................................................................................................................. 5

*In re Wellbutrin XL Antitrust Litig.*,
   No. 08-2431 (E.D. Pa. Aug. 17, 2012) (Order) .............................................................. 13

*In re Wellbutrin XL Antitrust Litig.*,
   No. 08-cv-2431 (E.D. Pa.), ECF No. 481-1 (plan approved on Nov. 7, 2012, ECF
   No. 485)............................................................................................................................. 5

*Zepeda v. PayPal, Inc.*,
   2014 U.S. Dist. LEXIS 24388 (N.D. Cal. Feb. 24, 2014) ................................................ 3

## STATUTES

Class Action Fairness Act, 28 U.S.C. § 1715(d) ..................................................................... 15

Class Action Fairness Act of 2005 .......................................................................................... 14

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(e) .................................................................................................................. 3

Form of the Settlement Notice Satisfies Rule 23 ..................................................................... 10

Manner of Distributing the Settlement Notice Satisfies Rule 23 ............................................. 11

*Manual*, § 21.632 ........................................................................................................... 8

Nalven Dec. Exs. 7-9 ...................................................................................................... 14

RG/2's website at www.rg2claims.com/about.html. RG/2 ............................................ 12

Rule 23 ............................................................................................................... 10, 11, 13

Rule 23(c)(2)(b) ........................................................................................................ 11, 12

Rule 23(e)(1) ................................................................................................................... 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Following an investigation that began in 2011, Direct Purchaser Class Plaintiffs filed this antitrust class action on behalf of the certified Direct Purchaser Class on November 8, 2013, alleging that Defendants unlawfully agreed to (a) delay the launch of generic Lidoderm until September 15, 2013 and (b) delay the launch of authorized generic Lidoderm for an additional 7.5 months, until May 2014.  The Direct Purchaser Class Plaintiffs alleged that in exchange for Watson's agreement to delay the launch of its generic Lidoderm, Endo/Teikoku paid Watson with $96 million worth of free brand Lidoderm, and with a promise not to launch an authorized generic Lidoderm for 7.5 additional months after Watson's delayed generic launch.  The Direct Purchaser Class Plaintiffs alleged that but for these reverse payments, generic Lidoderm would have been launched as early as December 17, 2012 (rather than September 15, 2013), and authorized generic Lidoderm would have been launched simultaneously, substantially earlier than its actual launch date of May 2, 2014.  As a result of the unlawful reverse payments, the Direct Purchaser Class Plaintiffs alleged that the Direct Purchaser Class suffered aggregate overcharge damages of $211-300 million.  Defendants have continuously maintained that they engaged in no unlawful conduct and that their conduct did not harm the Direct Purchaser Class.

From approximately November 2013 through Fall of 2017, this litigation proceeded through discovery, class certification, and summary judgment/*Daubert* motion practice.  During this time, the Direct Purchasers attempted informal efforts to engage in settlement discussions with each Defendant, and participated in formal mediation with retired Federal District Judge Layn Phillips, all without success.  In Fall 2017, all parties began to prepare for a trial to commence on February 26, 2018, and concurrently resumed settlement discussions at the direction of the Court under the supervision of Chief Magistrate Judge Joseph C. Spero.

Shortly after a November 14, 2017 Settlement Conference conducted by Judge Spero, the Direct Purchaser Class reached a settlement with Teikoku.  The proposed settlement provides for $35,000,000 in cash to be paid to the Class, in exchange for dismissal of the litigation with prejudice

as to Teikoku only, and certain releases from the Class as to Teikoku only.  *See* Nalven Decl. Ex. 1.
This was Judge Spero's "mediator's proposal."

Shortly after a January 17, 2018 Settlement Conference conducted by Judge Spero, the Direct
Purchaser Class reached a settlement with Watson.  That proposed settlement provides for
$71,000,000 in cash to be paid to the Class, in exchange for dismissal of the litigation with prejudice
as to Watson only, and certain releases from the Class as to Watson only.  *See* Nalven Decl. Ex. 2.
This, too, was Judge Spero's mediator's proposal.

Shortly after a February 13, 2018 Settlement Conference conducted by Judge Spero, the
Direct Purchaser Class reached a settlement with Endo.  The proposed settlement provides for
$60,000,000 in cash to be paid to the Class in two installments ($40 million now, $20 million in the
first quarter of 2019), in exchange for dismissal of the litigation with prejudice as to Endo only, and
certain releases from the Class as to Endo only.  *See* Nalven Decl. Ex. 3.  This was Judge Spero's
mediator's proposal, as well.

In the aggregate, the Direct Purchaser Class has recovered $166 million.  That is between
55% and 79% of the Direct Purchaser Class's total aggregate damages.[2]

The Direct Purchaser Class Plaintiffs believe that the three settlements independently and
collectively represent an excellent result for the Direct Purchaser Class.  They are each
unquestionably financially significant, and will provide immediate cash recovery for class members.
Each was negotiated in good faith, at arm's length, by counsel experienced in pharmaceutical
antitrust matters, under the auspices of Judge Spero, after four years of hard-fought litigation and
during the time period when the parties were preparing for jury selection and trial.  The Direct
Purchaser Class Plaintiffs, on behalf of the certified Direct Purchaser Class, now seek preliminary
approval of the three proposed settlements, approval of the form and manner of notice to the Class,
and the setting of a schedule for the final approval process.

---

[2] If the jury found that Watson would have earlier entered the market with generic Lidoderm in
mid-December 2012, the Direct Purchaser Class's damages were $300 million.  If the jury found that
Watson would have earlier entered the market with generic Lidoderm at the end of March 2013, the
Direct Purchaser Class's damages were $211 million.

1

## II.     ARGUMENT

### A.     The Proposed Settlements Easily Meet the Standards for Preliminary Approval

Pursuant to Fed. R. Civ. P. 23(e), a proposed class action settlement must be approved by the Court. The first step in the process is to seek preliminary approval. *See* Manual for Complex Litigation (Fourth) § 21.632 (2015) ("Manual"); *Edenborough v. ADT, LLC*, 2017 U.S. Dist. LEXIS 170896, at *15 (N.D. Cal. Oct. 16, 2017). At the preliminary approval stage, "'a full fairness analysis is unnecessary.'" *Zepeda v. PayPal, Inc.,* 2014 U.S. Dist. LEXIS 24388, at *16 (N.D. Cal. Feb. 24, 2014) (quoting *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 665 (E.D. Cal. 2008)). Rather, at this stage, the Court makes an "initial evaluation of the fairness of the proposed settlement[.]" *Fronda v. Staffmark Holdings, Inc.,* 2017 U.S. Dist. LEXIS 194514, at *24 (N.D. Cal. Nov. 27, 2017) (internal quotation omitted). As such, "[p]reliminary approval of a settlement and notice to the proposed class is appropriate if [1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *Acosta v. Frito-Lay, Inc*., 2018 U.S. Dist. LEXIS 16018, at *22 (N.D. Cal. Jan. 31, 2018) (internal quotation omitted). *See also Cruz v. Sky Chefs, Inc.,* 2014 U.S. Dist. LEXIS 68560, at *24 (N.D. Cal. May 19, 2014) (listing same factors).

As detailed further below, the proposed settlements meet the standard for preliminary approval.

### 1.     The Proposed Settlements Were the Product of Serious, Arm's-Length Negotiations Conducted by Magistrate Judge Spero

Each proposed settlement was the result of arm's-length, non-collusive negotiations, after counsel for the Direct Purchaser Class had expended tens of thousands of hours developing and preparing their case. The Court is well aware of the intensity of each side's engagement in this case, having presided over discovery, motion practice, and other pretrial matters. The Direct Purchaser Plaintiffs' settlement negotiations with Defendants were no different. During settlement negotiations, the parties presented written and oral arguments over the merits and value of the Direct Purchaser Class's claims and Defendants' defenses, including any defendant-specific arguments

and/or defenses, all of which were fully-developed due to the stage of the litigation, which therefore enabled both sides to negotiate with sufficient information. *See Acosta*, 2018 U.S. Dist. LEXIS 16018 at *22 (parties must be able to adequately assess strengths and weaknesses of claims and defenses); *Fronda*, 2017 U.S. Dist. LEXIS 194514, at *25-26 (same). Moreover, each of the proposed settlements was negotiated with the active involvement of Judge Spero, and each was for an amount he recommended at the end of negotiations, which further supports that the parties reached the settlements in a procedurally sound manner. *See Satchell v. Fed. Exp. Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

### 2. There Are No Obvious Deficiencies in the Proposed Settlements

There are no obvious deficiencies in any of the proposed settlements. To the contrary, the settlement funds created by each of the proposed settlements provide Class members with a cash recovery that is substantial, immediate and certain, and the release granted to Defendants in each respective settlement is narrowly tailored to the allegations at issue in the litigation. *See, e.g., Torres v. Pick-A-Part Auto Wrecking*, 2018 U.S. Dist. LEXIS 2446, at *9-10 (E.D. Cal. Jan. 5, 2018) (no obvious deficiencies where class members received cash recovery and release narrowly tailored to claims).

### 3. The Proposed Settlements Do Not Grant Preferential Treatment to Any Class Member

Here, pursuant to the proposed plan of allocation described *infra* in Section II.B., each Class member's share of each settlement will be calculated in the exact same way. Specifically, as is standard in distribution plans that have been approved in delayed generic entry antitrust cases, each Class member's share of each settlement fund will be calculated on a *pro rata* basis based on that Class member's purchases.[3] As a result, all Class members are treated equally and fairly with

---

[3] This is the standard and approved method of allocation in drug antitrust cases. *See, e.g., In re Aggrenox Antitrust Litig.*, No. 14-md-02516 (D. Conn.), ECF No. 733-1 at 16-17 (*pro rata* shares of settlement fund computed on basis of class members' purchases) (plan approved on Dec. 18, 2017, ECF No. 739); *In re Asacol Antitrust Litig.*, No. 15-cv-12730 (D. Mass.), ECF No. 419-9 at 4 (same) (plan approved on Dec. 7, 2017, ECF No. 648); *King Drug of Florence, Inc. v. Cephalon, Inc.*, No. 06-1797 (E.D. Pa.), ECF No. 864-17 (same) (plan approved on Oct. 15, 2015, ECF No. 870); *In re*

1   respect to their monetary recovery.  Courts routinely hold that when class members receive their *pro*

2   *rata* share of a settlement fund, no class members can be said to be granted preferential treatment.

3   *See generally Acosta*, 2018 U.S. Dist. LEXIS 16018, at *24 (each class member entitled to claim *pro*

4   *rata* share of settlement fund based on number of workweeks worked during class period); *Fronda*,

5   2017 U.S. Dist. LEXIS 194514, at *29-30 (same).

6   　　　　Separately, although the proposed settlements allow the Direct Purchaser Plaintiffs to seek

7   the payment of a single service award for each of the three named plaintiffs in the amount of

8   $100,000 in light of the many hours each spent in deposition, document collection, and other tasks

9   on behalf of the Class, a service award request does not mean that the class representatives receive

10   preferential treatment.  Because the Court will ultimately determine whether the requested awards

11   are justified at the final approval stage, the Court may at this stage simply determine that the

12   proposed awards do not preclude preliminary approval.  *See generally Cuzick v. Zodiac U.S. Sheet*

13   *Shells, LLC*, 2017 U.S. Dist. LEXIS 168290, *15-16 (N.D. Cal. Oct. 11, 2017) (because service

14   awards are not *per se* unreasonable, court may find that no preferential treatment exists at

15   preliminary approval stage); *Barnard v. CorePower Yoga, LLC*, 2017 U.S. Dist. LEXIS 146745, *16

16   (N.D. Cal. Sept. 11, 2017) (because service awards are "fairly typical in class action cases" and are

17   discretionary, request will not preclude preliminary approval); *Acosta*, 2018 U.S. Dist. LEXIS 16018

18   at *26 (deferring on ruling on appropriateness of requested service award).

19   　　　　Nonetheless, the requested amounts themselves are squarely in line with service awards that

20   have been recently granted in other pharmaceutical antitrust cases where, as here, the class

21

22   *Doryx Antitrust Litig. (Mylan Pharms., Inc. v. Warner Chilcott Public Ltd.)*, No. 12-cv-3824 (E.D. Pa.), ECF No. 452-3 at 2 (same) (plan approved on Sept. 15, 2014, ECF No. 665); *In re Skelaxin*

23   *Antitrust Litig.*, No. 12-md-2343 (E.D. Tenn.), ECF No. 788 at 6 (same) (plan approved on Sept. 24, 2014, ECF No. 800); *In re DDAVP Direct Purchaser Antitrust Litig.*, No. 05-cv-2237 (S.D.N.Y.),

24   ECF No. 101 at 19-20 (same) (plan approved on Nov. 28, 2011, ECF No. 113); *In re Miralax Antitrust Litig.*, No. 07-cv-142 (D. Del.), ECF No. 240 at 18 (same) (plan approved on May 31,

25   2012, ECF No. 243); *In re Prograf Antitrust Litig.*, No. 11-md-2242 (D. Mass.), ECF No. 667-2 at 2 (same) (plan approved on May 20, 2015, ECF No. 678); *In re Metoprolol Succinate Direct*

26   *Purchaser Antitrust Litig.*, No. 06-cv-52 (D. Del.), ECF No. 192 at 18 (same) (plan approved on Feb. 21, 2012, ECF No. 194); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-cv-340 (D. Del.),

27   ECF No. 536-1 at 19 (same) (plan approved on Apr. 23, 2009, ECF No. 543); *In re Wellbutrin XL Antitrust Litig.*, No. 08-cv-2431 (E.D. Pa.), ECF No. 481-1 at 16 (same) (plan approved on Nov. 7,

28   2012, ECF No. 485).

representatives expended significant time in participating in the litigation, and undertook financial and reputational risk. *See, e.g., In re Asacol Antitrust Litigation*, No. 15-cv-12730-DJC, ECF No. 648 at ¶ 13 (D. Mass. Dec. 7, 2017) (awarding $100,000 to each of four class representatives); *In re K-Dur Antitrust Litig.*, No. 01-1652, ECF No. 1057 at ¶ 12 (D.N.J. Oct. 5, 2017) (awarding $100,000 to class representative); *In re Provigil Antitrust Litig.,* No. 06-1797, ECF No. 870 at ¶ 30 (E.D. Pa. Oct. 15, 2015) (awarding $100,000 to each of four class representatives).

### 4.     The Settlements Are Within the Range of Possible Approval

Courts evaluate whether a settlement is within the range of possible approval primarily by comparing the amount of the settlement to the class's potential recovery through continued litigation. *Acosta*, 2018 U.S. Dist. LEXIS 16018, at *26; *Cuzick*, 2017 U.S. Dist. LEXIS 168290, at *16.  In performing that analysis, courts take the following factors into consideration: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Fronda*, 2017 U.S. Dist. LEXIS 194514, at *34.

Here, the Class's recovery compares favorably to their potential recovery at trial in view of the above factors.  Specifically, had the litigation gone to trial, the Class had two damage theories under which their expert economist calculated overcharge damages of approximately $211 million and $300 million, respectively.  Pursuant to the proposed settlements, the Class's $166 million recovery represents approximately 55%-79% of the Class's single damages (18-26% after trebling), which are percentages that are well within (and with respect to single damages, far above) the ranges that courts have deemed to be fair and adequate.  *See, e.g., Brown v. CVS Pharm. Inc.*, 2017 U.S. Dist. LEXIS 182309, at *28-29 (C.D. Cal. Apr. 24, 2014) (recovery of 27% of class's potential damages well within range of possible approval); *id.* (noting that recoveries ranging from one-sixth to 25% of potential damages also deemed approvable).

The fairness and adequacy of the Class's recovery is further supported by consideration of the above factors.[4]  Although counsel for the Direct Purchaser Class has always been (and remains) confident in the strength of the Class's claims, there was no guarantee that a jury would have found in favor of the Class.  Compared against the risk of no recovery whatsoever after a lengthy and costly trial (and despite an already-certified class), the Class's recovery through these settlements is substantial.  *See generally Smith v. Am. Greetings Corp.,* 2016 U.S. Dist. LEXIS 66247, at *12-14 (N.D. Cal. May 19, 2016) (evaluating recovery in view of trial hurdles faced by class of plaintiffs in wage and hour litigation).  Additionally, as noted above, since the settlements occurred just before trial, the parties conducted settlement negotiations with the benefit of completed fact and expert discovery (including but not limited to dozens of depositions and expert reports), substantial motion practice (including briefing before the Ninth Circuit), numerous dispositive rulings of this Court (including the Court's summary judgment/*Daubert* order (ECF No. 900), which expressly set forth the substantive law and analytical framework applicable to the Class's claims), the Court's pretrial rulings, which shaped the evidence and arguments that could be presented at trial, and extensive trial preparation.  *See, e.g., Fronda*, 2017 U.S. Dist. LEXIS 194514, at *37 (counsel for the class had sufficient information to adequately evaluate settlement).

Further, the Class is represented by lawyers who have extensive pharmaceutical antitrust class action experience, having decades of collective experience representing classes of direct purchasers in pharmaceutical antitrust cases.  In approving proposed class settlements, "courts afford great weight . . . to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal quotation marks omitted); *see, e.g., Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to

---

[4] Because no government entity participated in negotiating any of the proposed settlements, that factor is inapplicable here.  *Fronda*, 2017 U.S. Dist. LEXIS 194514, at *38.  Moreover, the Direct Purchaser Class was years ahead of the Federal Trade Commission and state attorneys' general in investigating and bringing suit in this case, in discovering and successfully dislodging pertinent evidence sought to be shielded by assertions of privilege, and in obtaining substantial monetary relief.

produce a settlement that fairly reflects each party's expected outcome in the litigation.").  Counsel

for the Direct Purchaser Class recommend these settlements.

Finally, during settlement negotiations with each of the Defendants, counsel for the Direct

Purchaser Class actively communicated with multiple members of the Direct Purchaser Class and

received no opposition to the proposed settlements.  The class representatives also approve of and

fully support the proposed settlements.  *See* Nalven Decl. ¶ 2.

Accordingly, the amount of the Class's recovery in view of the foregoing factors is well

within the range of possible approval.

### 5.   A Hearing on Preliminary Approval is Not Required or Necessary in These Circumstances.

Preliminary approval does not require a hearing.  As explained in the *Manual*, § 21.632 at

513, "this initial evaluation can be made on the basis of information already known, supplemented as

necessary by briefs, motions, or informal presentations by parties." While Counsel for the Direct

Purchaser Class will make themselves available at the Court's convenience, given the Court's

extensive knowledge of the case, supplemented by this submission, Direct Purchase Class Plaintiffs

respectfully submit that no hearing is necessary and that the Court may grant preliminarily approval

on the papers.

### B.   The Proposed Plan of Allocation is Fair, Reasonable, and Adequate

A plan for the allocation of a class settlement fund is governed by the same legal standards as

approving the settlement: it must be "fair, reasonable and adequate."  *In re Citric Acid Antitrust

Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  Generally, an allocation plan is reasonable if it

reimburses class members based on the type and extent of their injuries.  *Id.* (citation omitted).   In

this district, a "*pro-rata* [plan] for allocation has been used in many antitrust cases."  *See In re TFT-

LCD (Flat Panel) Antitrust Litig.*, 2011 U.S. Dist. LEXIS 154288, at *9 (N.D. Cal. Dec. 27, 2011).

The proposed plan of allocation here meets this standard.  As set forth in the Direct Purchaser

Plaintiffs' [Proposed] Plan of Allocation for the Direct Purchaser Class, dated March 19, 2018

("proposed Plan of Allocation") (Nalven Decl. Ex. 4) and in the Declaration of Jeffrey J. Leitzinger,

Ph.D., Related to Proposed Allocation Plan and Net Settlement Fund Allocation, dated March 19,

2018 ("Leitzinger Decl.") (Nalven Decl. Ex. 5), Direct Purchaser Plaintiffs propose that each Class member's allocation be set *pro rata* to a weighted combined total of each Class member's actual purchases of branded Lidoderm (from Endo) from December 17, 2012 through March 16, 2015, and generic Lidoderm (from Watson and Endo's generic arm, Qualitest[5]) from September 15, 2013 (when generic Lidoderm launched) through March 16, 2015.  *See* Proposed Plan of Allocation, § 2.

The December 17, 2012 inception of the date range for brand Lidoderm purchases in the proposed Plan of Allocation is based on the parties' agreement (and the Court's ruling) that generic entry could not have occurred any earlier than December 17, 2012.  ECF No. 900 at 1 n.1.  With respect to the beginning of the date range for generic Lidoderm purchases, September 15, 2013 is the date on which Watson actually launched generic Lidoderm in the real world under the challenged Agreement, and so is the earliest date on which any Class member purchased generic Lidoderm. Proposed Plan of Allocation ¶ 2.1.  The March 16, 2015 end of the date range for brand and generic Lidoderm purchases in the proposed Plan of Allocation was chosen because, according to Dr. Leitzinger's damages analysis, March 16, 2015 is the end of the overcharge period for the Class. Leitzinger Decl. ¶ 3.

The proposed Plan of Allocation plan gives fair weight to brand Lidoderm purchases as compared with generic Lidoderm purchases.  To ensure that fairness, Dr. Leitzinger has calculated the ratio of the average classwide overcharge per unit of branded Lidoderm as compared to the average classwide overcharge per unit of generic Lidoderm, so that he can translate generic purchase volumes into overcharge-equivalent brand purchase volumes.  According to Dr. Leitzinger's calculation, the average unit overcharge on generic Lidoderm purchases is 59 percent of the average unit overcharge for brand Lidoderm purchases, and so a generic purchase unit is equivalent to .59 of a brand unit from the standpoint of overcharges and for purposes of calculating each Class member's weighted combined total of brand and generic Lidoderm under the allocation plan.  *Id.* ¶ 5.d and n.10.  In other words, the weighted combined total of each Class member's purchases is equal to: (.59*generic Lidoderm purchases) + (brand Lidoderm purchases).  *Id.*  In addition, the proposed Plan

---

[5] "Qualitest" is more formally known as Generics Bidco I, LLC d/b/a Qualitest Pharmaceuticals.

of Allocation will account for assignments by removing any purchases for which the rights to damages in this litigation have been assigned by agreement to a Class member's customer, using data provided by the Class member or its corresponding assignee. *Id.* ¶ 5.c.

This proposed Plan of Allocation is similar to other court-approved *pro rata* allocation plans in similar cases involving alleged overcharges from delayed generic competition, and can be implemented with a high degree of efficiency. *Id.* ¶¶ 4, 7. *See also supra* note 3. In addition, in Dr. Leitzinger's opinion, "this allocation method is practical and efficient inasmuch as it uses sales data for branded and generic Lidoderm already obtained from Endo, Watson, and Qualitest — the same data I used in calculating aggregate Class damages. . . . Finally, this method provides a reasonable procedure, in my opinion for distributing the Net Settlement Fund and reimbursing Claimants. It reflects the type and approximate extent of their injury and does not systematically favor recovery (relative to actual overcharges) on the part of potential Claimants who purchased brand or generic forms of Lidoderm." *Id.* at ¶ 7.

Accordingly, the proposed Plan of Allocation reimburses Class members on a *pro rata* basis, based on the extent of their injuries, and is appropriate to be communicated to the Class.

## C.     The Proposed Form And Manner of Notice Should be Approved

Pursuant to Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." The notice of settlement must fairly inform class members of the settlement and their options. *See* Manual § 21.312 (the notice must "describe clearly the options open to the class members and the deadlines for taking action"). The proposed notice program here clearly meets this standard.

### 1.     The Form of the Settlement Notice Satisfies Rule 23

Rule 23 requires notice that "generally describe[s] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard," and that proper notice "does not require an estimate of the potential value of [the] claims." *Lane v. Facebook*, 696 F.3d 811, 826 (9th Cir. 2012) (internal quotation marks omitted).

The Settlement Notice contains the elements enumerated in Rule 23(c)(2)(b).  *See* Nalven Decl. Ex. 6.  It provides clearly and concisely in plain, easily understood language a description of the Class, ¶¶ 1, 3, 5; the claims contained in the lawsuit and its procedural status, ¶ 2; the significant terms of the proposed settlements and the total amount of money that each Defendant has agreed to pay to the Class, ¶¶ 4, 6; the proposed plan of allocation, ¶¶ 7-9; the release, ¶ 10; counsel's forthcoming request for attorneys' fees in the amount of up to one-third of the settlement fund and reimbursement of expenses, and proposed incentive awards for each of the three Class representatives, ¶¶ 11-13; the rights of Class members under Rule 23, including the right to object and be heard as to the reasonableness and fairness of the proposed settlements, ¶¶ 14-18; and the contact information of Counsel for the Direct Purchaser Class for questions and the website address for obtaining a full copy of the Settlement Agreement and key pleadings, ¶ 19.

Under the circumstances, the Settlement Notice fairly describes the proposed settlement and its legal significance, thereby satisfying the notice requirements of Rule 23.

## 2.    The Manner of Distributing the Settlement Notice Satisfies Rule 23

On or about May 8, 2017, following the Court's order granting Class certification (ECF No. 670), a Court-approved (ECF No. 734) Class Certification Notice was sent by first class mail to all direct purchasers from at least one of the Defendants of brand and/or generic Lidoderm during the Class period, as those purchasers were identified in Endo's and Watson's transactional sales records. *See* ECF No. 768 ¶ 3 (administrator's declaration).  The purpose of the Class Certification Notice was to: (a) inform class members as to the existence of the Action and the nature of the claims; (b) communicate to Class members that the Class had been certified, and (c) allow an opportunity for Class members to exclude themselves from the case by June 22, 2017.  The only opt outs were the retailer plaintiffs, who had filed separate complaints in 2015 to pursue, via partial assignments, claims assigned to them by Class members.  *Id.*

The notice and program of dissemination proposed by this motion for purposes of providing the Settlement Notice is similar to the one previously approved by this Court (ECF No. 734) for the Class Certification Notice.  Plaintiffs propose to send a copy of the Settlement Notice by first class mail to each entity that purchased branded Lidoderm from Endo or generic Lidoderm from Watson

during the Class Period (August 23, 2012 through May 1, 2014), at its last known address. Given that Endo and Watson have produced their sales records in this case, including their customer contact information, and that Berdon Claims Administration LLC previously successfully mailed the Class Certification Notice to these same entities (ECF No. 768), the direct mail method will be sufficient to reach all Class Members.

Plaintiffs have retained RG/2 Claims Administration LLC to serve as claims administrator for the Class and oversee the Settlement Notice and claims administration process. RG/2 describes itself as "a boutique class action claims administration firm with a nationwide presence founded by seasoned class action practitioners and highly credentialed tax professionals." *See* RG/2's website at www.rg2claims.com/about.html. RG/2 has provided an estimate for the cost of its requested services which, based on Counsel for the Direct Purchaser Class's experience, is competitive and reasonable.[6]

For purposes of notifying a certified class of a proposed settlement, the court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Based on their recent experience and success with the mailed Class Certification Notice, and given the availability of Class member contact information from Defendants, sending the Settlement Notice by first class mail constitutes "the best notice practicable under the circumstances." *See Hunt v. Check Recovery Sys., Inc.,* No. 2007 U.S. Dist. LEXIS 58800, at *10 (N.D. Cal. Jul. 25, 2007) ("Delivery by first-class mail can satisfy the best notice practicable when there is no indication that any of the class members cannot be identified through reasonable efforts."); *see also* Manual § 21.311 at 287 ("Rule 23(c)(2)(B) requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort…When the names and addresses of most class members are known, notice by mail is usually preferred.").

---

[6] Pursuant to the proposed settlements, the expenses associated with the notice and claims administration process will be deducted from the settlement funds, as is standard practice. Plaintiffs propose sending one notice that would inform the Class of all three proposed settlements, which will result in cost-savings through the elimination of having to send three separate notices. (And three separate notices would confuse Class members, anyway; without the benefit of a single notice, Class members would not understand the relationship among three notices, whether they were cumulative or alternative, and what the differences were between three mildly-deviating notices.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**3.     The Court Should Not Allow Another Opt-out Opportunity**

The Court already allowed members of the Direct Purchaser Class an opportunity to opt out following notice; Rule 23 does not require the court to authorize a second opt-out period.  As the Ninth Circuit observed in *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615 (9th Cir. 1982), due process concerns are not implicated when foregoing a second opt-out opportunity because

> [The objector]'s  rights are protected by the mechanism provided in the rule:  approval by the district court after notice to the class and a fairness hearing at which dissenters can voice their objections, and the availability of review on appeal.  Moreover, to hold that due process requires a second opportunity to opt out after the terms of the settlement have been disclosed to the class would impede the settlement process so favored in the law.

*Id.* at 635.  *See also Low v. Trump Univ.,* 881 F.3d 1111, 1121 (9th Cir. 2018) (affirming rejection of objection to the lack of opportunity to opt out at the settlement stage because "due process requires that class members be given [only] a single opportunity to opt out"); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) ("Requiring a second opt-out period as a blanket rule would disrupt settlement proceedings because no certification would be final until after the final settlement terms had been reached"); *In re MetLife Demut. Litig.*, 689 F. Supp. 2d 297, 345 (E.D.N.Y. 2010) ("the court is not required to afford a second opportunity to opt out.").  Moreover, foregoing a settlement-stage opt-out period is consistent with common practice in other direct purchaser pharmaceutical antitrust class actions in this and other circuits.  *See Meijer, Inc. v. Abbott Labs.*, Case No. 07-cv-5985 (N.D. Cal. Apr. 8, 2011) (ECF No. 504) (Order), at 3; *In re Nexium (Esomeprozale) Antitrust Litig.*, C.A. No. 12-md-02409 (D. Mass. June 12, 2015) (Order), at 3; *In re Wellbutrin XL Antitrust Litig.*, No. 08-2431 (E.D. Pa. Aug. 17, 2012) (ECF No. 473) (Order), at 3; *In re TriCor Direct Purchaser Antitrust Litig.*, No. 05-340 (D. Del. Jan. 8, 2009) (ECF No. 529)(Order), at 2; *Meijer, Inc. v. Barr Pharm., Inc.*, No. 05-2195 (D.D.C. Dec. 18, 2006) (Order), at 2-3.  In each of these cases, no second opt-out period was afforded.

Here, too, a second opt-out period is unwarranted.  The Class members here are businesses, many of which have their own in-house or retained outside counsel, and despite being given the opportunity to opt out when they received the Class Certification Notice in May 2017, the only

entities that opted out were the retailer plaintiffs, all of which were already proceeding individually in this Court.  *See* ECF No. 768 ¶¶ 5-7.  There is thus no reason to believe that Class members would elect to opt out now, less than a year later, and upon full settlement of the litigation.

**D.      The Court should Approve The Huntington National Bank as the Escrow Agent and the Escrow Agreement.**

Direct Purchaser Class Plaintiffs, with the agreement of each of the Defendants, request that The Huntington National Bank be appointed escrow agent for the settlement funds.  The Huntington National Bank, established in 1866, is among the largest 1% of banks in the United States based on size, holds over $57 billion in assets, and includes 700 offices nationwide.  The Huntington National Bank's national settlement team has handled more than 1,000 settlements for law firms, claims administrators, and regulatory agencies.  Counsel for the Direct Purchaser Class Plaintiffs have utilized the services of The Huntington National Bank as escrow agent in multiple class action settlements previously, both securely and successfully.  Counsel for the parties and The Huntington National Bank have prepared agreed-upon escrow agreements for each settlement, *see* Nalven Dec. Exs. 7-9, for which Direct Purchaser Class Plaintiffs seek the Court's approval.

**E.      The Proposed Schedule Leading up to the Fairness Hearing Is Appropriate.**

As set forth in the Proposed Order, Plaintiffs propose the following schedule for completion of the approval process:

  a.   Within 10 days from the date of filing for preliminary approval, Defendants shall serve any notices required pursuant to the Class Action Fairness Act of 2005;

  b.   Within 15 days from the date that the Court grants preliminary approval to the proposed Settlements, notice will be disseminated to the Class via first-class mail, the same method by which the prior Class Certification Notice was sent;

  c.   Within 30 days from the date that the notice is mailed, Class members may object to any or all of the proposed settlements and/or the requested attorneys' fees, expenses and service awards;

  d.   21 days prior to the expiration of the deadline for Class members to object to any or all of the proposed settlements and/or the requested attorneys' fees, expenses and incentive awards, counsel for the Class will file their motion for attorneys' fees, reimbursement of expenses and service awards to the Class representatives;

e.   21 days after the expiration of the deadline for Class members to object to any or all of the proposed settlements and/or the requested attorneys' fees, expenses and incentive awards, counsel for the Class will file a motion for final approval of the settlements; and

f.   On a date to be set by the Court no less than 100 days following the issuance of its preliminary approval order, the Court will hold a final Fairness Hearing.

The proposed schedule comports with due process and the time periods set forth in by the Class Action Fairness Act, 28 U.S.C. § 1715(d)).

### III.   CONCLUSION

For the foregoing reasons, the Court should preliminarily approve the proposed settlements, approve the proposed manner and form of notice and approve the proposed schedule (or any other schedule satisfactory to the Court).  A proposed order is submitted herewith.

Dated: March 20, 2018

/s/ Peter Kohn
Peter Kohn
Joseph T. Lukens
**FARUQI & FARUQI LLP**
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Telephone: (215) 277-5770
pkohn@faruqilaw.com

/s/ David S. Nalven
Thomas M. Sobol
David S. Nalven
Gregory T. Arnold
**HAGENS BERMAN SOBOL
  SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
tom@hbsslaw.com
davidn@hbsslaw.com
grega@hbsslaw.com

/s/ Bruce E. Gerstein
Bruce E. Gerstein
Noah Silverman
**GARWIN GERSTEIN & FISHER LLP**
88 Pine Street, 10th Floor
New York, NY 10005
Telephone: (212) 398-0055
Facsimile: (212) 764-6620
bgerstein@garwingerstein.com
nsilverman@garwingerstein.com

*Co-Lead Counsel for the Direct Purchaser Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2018, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.

*/s/ David S. Nalven*
David S. Nalven