# EXHIBIT 1

[Submitting Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO: DIRECT PURCHASER CLASS ACTIONS | |

**SETTLEMENT AGREEMENT BETWEEN
THE DIRECT PURCHASER CLASS AND TEIKOKU SEIYAKU CO., LTD.
AND TEIKOKU PHARMA USA, INC. ONLY**

010-8566-2170/1/AMERICAS

THIS SETTLEMENT AGREEMENT ("Settlement Agreement" or the "Settlement") is made and entered into as of December 31, 2017 by and between (a) defendants Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. (together, "Teikoku") only, and no other defendant; and (b) American Sales Company, LLC ("ASC"), Drogueria Betances, Inc., and Rochester Drug Co-Operative, Inc. ("RDC") (together, "Plaintiffs"), individually and on behalf of the certified direct purchaser plaintiff class in this Action (the "Class" or the "Direct Purchaser Class," as defined in paragraph 1 below).

WHEREAS, Plaintiffs filed lawsuits alleging that Endo Pharmaceuticals, Inc. ("Endo") and Teikoku entered an agreement with Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., and Actavis, plc (collectively, "Watson" and together with Endo and Teikoku, the "Defendants") not to compete in the market for lidocaine 5% patches, *i.e.*, Lidoderm and its generic equivalents, in violation of the Sherman Act, 15 U.S.C. §§ 1 and 2, as detailed in the Direct Purchaser Plaintiffs' Second Consolidated Amended Class Action Complaint filed in this Action on December 19, 2014 [ECF No. 121] (the "Complaint"), and Plaintiffs and the Direct Purchaser Class Members incurred damages as a result;

WHEREAS, Plaintiffs' claims were transferred from various federal judicial districts and consolidated as *In re Lidoderm Antitrust Litigation,* No. 3:14-md-02521-WHO, before the United States District Court for the Northern District of California (the "Court") as a class action on behalf of a class of similarly-situated entities who purchased Lidoderm and its generic equivalents directly from any of the Defendants during from August 23, 2012 to May 1, 2014 (the "Direct Purchasers") (the "Direct Purchaser Class Action" or the "Action");

WHEREAS, Teikoku has asserted defenses to Plaintiffs' claims, and denies each and every one of Plaintiffs' allegations of unlawful or wrongful conduct, denies that any conduct challenged by Plaintiffs caused any damage whatsoever, and denies all liability of any kind;

WHEREAS, the Court certified a class of Direct Purchasers of Lidoderm and generic Lidoderm as set forth in paragraph 1 below; appointed ASC, Drogueria Betances, Inc., and

RDC as Class Representatives; and appointed the law firms Faruqi & Faruqi LLP, Garwin Gerstein & Fisher LLP, and Hagens Berman Sobol Shapiro LLP, and as Class Counsel, *see In re Lidoderm*, No. 14-md-02521-WHO (N.D. Ca. Feb 21, 2017) (Orrick, J.) [ECF No. 670];

WHEREAS, Class Counsel and counsel for Teikoku have engaged in arm's-length settlement negotiations, including under the supervision of both a private and a court-appointed mediator, and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the Settlement between Plaintiffs, both individually and on behalf of the Direct Purchaser Class, and Teikoku only;

WHEREAS, Class Counsel have concluded, after extensive fact and expert discovery, and after carefully considering the circumstances of this Action, including the claims asserted in the Complaint and Teikoku's defenses thereto, that it would be in the best interests of the Direct Purchaser Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and assure a benefit to the Direct Purchaser Class and further, that Class Counsel consider the Settlement, as to Teikoku, to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and in the best interests of the Direct Purchaser Class;

WHEREAS, Teikoku has concluded, despite their denial of all liability and their good defenses thereto, that it would be in their best interests to enter into this Settlement Agreement to avoid the uncertainties and additional costs of further litigation and to finally put to rest all claims relating to the Action;

WHEREAS, Plaintiffs and Teikoku agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Teikoku, or of the truth of any of the claims or allegations alleged in the Complaint; and

WHEREAS, this Settlement Agreement is not intended to, and does not, affect Plaintiffs' claims against any defendant other than Teikoku.

SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER CLASS AND TEIKOKU
MDL DOCKET NO. 14-md-02521-WHO

NOW THEREFORE, it is agreed by the undersigned, on behalf of Plaintiffs and the Direct Purchaser Class, on the one hand, and Teikoku on the other, that this Action and all claims of Plaintiffs and the Class be fully, finally, and forever settled, compromised, discharged, and dismissed with prejudice as to Teikoku only, without costs as to Plaintiffs, the Direct Purchaser Class or Teikoku, subject to Court approval, on the following terms and conditions:

1.    **Class Definition.** This Settlement is on behalf of a class defined as follows:

All persons or entities in the United States, including its territories, possessions, and the Commonwealth of Puerto Rico, who purchased brand or generic Lidoderm directly from any of the Defendants at any time during the period August 23, 2012 through May 1, 2014 (the "Class").  Excluded from the class are Teikoku, Endo Pharmaceuticals, Inc., Watson Pharmaceuticals, Inc., and their officers, directors, management, employees, subsidiaries, or affiliates, and all federal governmental agencies.

Also excluded from the Class are the Retailer Plaintiffs that have pursued claims in consolidated *Lidoderm Actions* separately from the Class including Walgreen Co., The Kroger Co., Safeway Inc., HEB Grocery Company LP, Albertson's LLC, Rite Aid Corporation, Rite Aid Hdqtrs. Corp., and CVS Pharmacy, Inc.

2.    **Reasonable Steps Necessary to Help Effectuate this Settlement**.  Counsel for the undersigned agree to undertake all reasonable steps necessary to help effectuate the Settlement, including undertaking all actions contemplated by and steps necessary to carry out the terms of this Settlement and to secure the prompt, complete, and final dismissal with prejudice of all claims in this Action against Teikoku.  This includes Teikoku serving notifications to appropriate federal and state officials pursuant to 28 U.S.C. § 1715.  Teikoku further agrees not to oppose confirmation of class certification, the Class's motions for preliminary or final approval of the Settlement, Class Counsel's motion for attorneys' fees and reimbursement of expenses, or to appeal the Court's ruling on any of these motions.

3.    **Motion for Preliminary Approval of the Settlement**.  Following the execution of the Settlement Agreement by all parties, Class Counsel shall prepare and file a motion for

requesting preliminary approval of the Settlement, and authorizing dissemination of notice to the

Class.  The motion for preliminary approval shall include a proposed form of order in the form

substantially as in Exhibit A hereto:

      (a)     requesting preliminary approval of the Settlement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and in the best interests of the Class;

      (b)     finding that the proposed plan of notice complies with Rule 23 and due process, and seeking approval for direct notice to the Class in the form substantially as in Exhibit B hereto;

      (c)     determining that if final approval of the Settlement is not obtained (for any reason other than class certification), the settlement is null and void and the parties will revert to their positions *ex ante* without prejudice to their claims or defenses;

      (d)     requesting a date for a fairness hearing.

After the Court preliminarily approves the Settlement, Class Counsel shall cause Class

Members to receive notice of the Settlement.

    4.    **Motion for Final Approval and Entry of Final Judgment**.  If the Court

preliminarily approves the Settlement, after notice has been disseminated to the Class, Class

Counsel shall submit a motion for final approval.   The final approval motion shall seek entry of

a final approval order:

      (a)     finding that notice given constitutes due, adequate and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

      (b)     finding the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and directing its consummation pursuant to its terms;

      (c)     finding that all Class Members shall be bound by the Settlement Agreement and all of its terms;

      (d)     finding that all Class Members shall be bound by the release set forth in paragraphs 11 and 12 of this Settlement Agreement, and shall be forever barred from asserting any claims or liabilities related to the Action or any Released Claims against any of the Releasees as defined below;

      (e)     providing for payment of reasonable attorneys' fees and reimbursement of expenses from the Settlement Fund based upon a motion seeking such fees filed sufficiently in advance of the Court-ordered deadline for Class Members to object;

4

SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER CLASS AND TEIKOKU
MDL DOCKET NO. 14-md-02521-WHO

(f)     providing for service awards from the Settlement Fund to the Class Representatives in an amount up to $100,000 each (this is in addition to the *pro rata* distribution they may receive as Class Members from the Settlement Fund);

(g)     directing that the Direct Purchaser Class Action be dismissed with prejudice as to Teikoku only and without costs;

(h)     determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal with prejudice as to Teikoku be final;

(i)     retaining exclusive jurisdiction over the Settlement, including the administration and consummation of the Settlement; and

(j)     directing that, for a period of five years, the Clerk of the Court shall maintain the record of those Class Members who have timely excluded themselves from the Direct Purchaser Class ("Opt-Outs"), if the Court so allows, and that a certified copy of such records shall be provided to Teikoku.

5.     **Finality of Settlement**.  This Settlement Agreement shall become final upon the occurrence of all of the following (the "Effective Date"):

(a)     The Settlement is not terminated pursuant to paragraph 14 below;

(b)     The Settlement is approved by the Court as required by Fed. R. Civ. P. 23(e); and

(c)     The Court enters a final approval order, entering a final judgment of dismissal with prejudice against Plaintiffs and the members of the Direct Purchaser Class who have not timely excluded themselves from the Direct Purchaser Class Action ("Class Members"), should the Court so allow, as to Teikoku only.

6.     **Settlement Payment**.  Within 30 calendar days after the latter of the entry of the preliminary approval order or receipt of wire transfer instructions from Class Counsel, Teikoku shall pay thirty five million dollars ($35,000,000.00) (the "Settlement Amount") to the designated account (the "Settlement Fund"), which shall be held in a qualified settlement escrow account (the "Escrow Account") subject to the terms and conditions of the escrow agreement annexed hereto as Exhibit C (the "Escrow Agreement"), and in accordance with the provisions of paragraphs 7, 8, and 16 below.  Teikoku shall not pay any additional amount at any time, whether for class notice costs, attorney fees or expenses, incentive awards, settlement administration costs, escrow costs, taxes due from Escrow Account, or any other cost.  After paying the Settlement Amount, Teikoku shall not be liable for any further payments under the

SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER CLASS AND TEIKOKU
MDL DOCKET NO. 14-md-02521-WHO

010-8566-2170/1/AMERICAS

Settlement Agreement. The total consideration that Teikoku will pay for this Settlement shall be the Settlement Amount only.

7. **The Settlement Fund**.

(a) Before the Court issues the final approval order, disbursements for administering the Settlement, including without limitation providing notice, receiving and processing claims, analyzing purchase and sales data, and paying taxes and fees associated with maintaining the Escrow Account ("Administration Expenses"), may be made by Class Counsel from the Settlement Fund. Approval by the Court or Teikoku shall not be required for payment of Administration Expenses for amounts of less than $100,000 in the aggregate; disbursement from the Settlement Fund above this amount may be made only with prior approval of Teikoku or the Court. If the Settlement Agreement is disapproved, terminated, or fails to become effective, previously disbursed Administrative Expenses shall not be refundable to Teikoku.

(b) At all times prior to the Effective Date, the Settlement Fund shall be invested as set forth in paragraph 3 of the Escrow Agreement, in instruments backed by the full faith and credit of the U.S. Government or fully insured by the U.S. Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the FDIC up to the guaranteed FDIC limit. After the Effective Date, the Settlement Fund shall be invested pursuant to Paragraph 3 of the Escrow Agreement as directed in writing by Class Counsel. All interest earned on the Settlement Fund shall become part of the Settlement Fund.

(c) After the Effective Date, the Settlement Fund shall be distributed in accordance with the final approval order and order on Class Counsel's motion for the payment of reasonable attorneys' fees and reimbursement of expenses from the Settlement Fund.

8. **Taxes**.

(a) Class Counsel shall be solely responsible for directing the Escrow Agent (as defined in the Escrow Agreement) to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund. Further, Class

SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER CLASS AND TEIKOKU
MDL DOCKET NO. 14-md-02521-WHO

Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Settlement Fund.  Class Counsel shall be entitled to direct the Escrow Agent to pay customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities as set forth in this paragraph, from the Escrow Account.  Teikoku shall have no responsibility to make any tax filings relating to this Settlement Agreement or the Settlement Fund, and shall have no responsibility to pay taxes on any income earned by the Settlement Fund, or to pay any taxes with respect thereto unless the Settlement is not consummated and the Settlement Fund or the Net Settlement Fund is returned to Teikoku. Other than as specifically set forth herein, Teikoku shall have no responsibility for the payment of taxes or tax expenses.  If for any reason, for any period of time, Teikoku is required to pay taxes on income earned by the Settlement Fund, the Escrow Agent shall, upon written instructions from Teikoku with notice to Class Counsel, timely pay to Teikoku sufficient monies from the Settlement Fund to enable them to pay all taxes (state, federal, or other) on income earned by the Settlement Fund.

(b)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Claim Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

(c)     The parties to this Settlement Agreement and their counsel shall treat, and shall cause the Escrow Agent to treat, the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  The parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Accounts in this manner.  In addition, the Escrow Agent and, as required, the parties, shall timely make such elections as necessary or advisable to carry out the

SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER CLASS AND TEIKOKU
MDL DOCKET NO. 14-md-02521-WHO

010-8566-2170/1/AMERICAS

provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.  All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Accounts being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

9.     **Full Satisfaction; Limitation of Interest and Liability**.  Class Members shall look solely to the Settlement Fund for satisfaction from Teikoku for any and all Released Claims as defined in paragraphs 11 and 12 below.  If the Settlement becomes final pursuant to paragraph 5 above, the Settlement Fund will fully satisfy any and all Released Claims against Teikoku. Except as provided by order of the Court, no Class Member shall have any interest in the Settlement Fund or any portion thereof.  It is expressly understood that any settlement between Teikoku and the Retailer Plaintiffs is not part of this Settlement, and any claims or payments in any settlement between Teikoku and the Retailer Plaintiffs will not in any way reduce the Settlement Amount due to the Direct Purchaser Class or members of the class pursuant to this Settlement.

10.     **Attorneys' Fees, Expenses and Costs**.

(a)     Class Counsel intend to seek, solely from the Settlement Fund, attorneys' fees of one-third of the total Settlement Fund, net of expenses (including any interest accrued thereon), the reimbursement of reasonable costs and expenses incurred in the prosecution of the Action, and service awards to the named Plaintiffs ("Fee and Expense Award").  Class Counsel shall file a motion for approval of the Fee and Expense Award after the Court has granted preliminary approval of the Settlement but sufficiently before the deadline set for filing objections.  Class

SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER CLASS AND TEIKOKU
MDL DOCKET NO. 14-md-02521-WHO

010-8566-2170/1/AMERICAS

Counsel shall be paid and reimbursed solely from the Settlement Fund for all fees and expenses. Any Fee and Expense Award shall be paid after the Effective Date.

(b)     The procedures for and the allowance or disallowance by the Court of Class Counsel's application for attorneys' fees, costs and expenses to be paid from the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from consideration of the fairness, reasonableness, and adequacy of the Settlement.  Any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order, shall not operate to modify or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement.  A modification or reversal on appeal of any amount of the Fee and Expense Award shall not be deemed a modification of the terms of this Agreement or Final Approval Order, and shall not give rise to any right of termination.

11.   **Release.**

(a)     Upon the occurrence of the Effective Date and in consideration of payment of the Settlement Amount specified in paragraph 6 above, Plaintiffs and Class Members, on behalf of themselves and their respective past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents' subsidiaries' and affiliates' past and present officers, directors, employees, agents, attorneys servants, and representatives), and their predecessors, successors, heirs, executors, administrators, and representatives (the "Releasors"), hereby release and forever discharge, and covenant not to sue Teikoku and their past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents' subsidiaries' and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators and representatives of each of the foregoing (the "Releasees") only, with respect to, in connection with, or relating to any and all past, present, or future liabilities, claims, demands, obligations, suits, injuries, damages, levies, executions, judgments, debts, charges, actions, or causes of

9

010-8566-2170/1/AMERICAS

action, at law or in equity, whether class, individual, or otherwise in nature, and whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, arising out of or relating to, as to Teikoku only, purchases of Lidoderm or 5% lidocaine patches at any time prior to the Effective Date and arising under the Sherman Act, 15 U.S.C. §§ 1 & 2, *et seq.*, or any other federal or state statute or common law relating to antitrust or unfair competition (the "Released Claims").  The Released Claims include, but are not limited to, any and all claims relating to or arising out of the facts, occurrences, transactions, or other matters alleged or asserted in this Action, or that could have been alleged or asserted in this Action against Teikoku only.  Notwithstanding the foregoing, and for avoidance of doubt:

(b)      This Release is not intended to release anyone other than the Releasees, and nothing in this Settlement Agreement dismisses or releases the claims of Plaintiffs and Class Members and their affiliates, joint ventures, stockholders, officers, directors, management, supervisory boards, insurers, general or limited partners, employees, against Endo or Watson,  or any of their past, present or future parents, subsidiaries, divisions, agents, trustees, associates, attorneys and any of their legal representatives;

(c)      This Release is not intended to be on behalf of anyone other than the Releasors, and does not affect, and is not in whole or part on behalf of, the claims of the Retailer Plaintiffs, end-payor class, or plaintiff Government Employees Health Association, who filed their own complaints in this matter; and

(d)      This Release shall have no effect on any Releasor's claim arising in the ordinary course of business between Releasors and the Releasees arising under Article 2 of the Uniform Commercial Code (pertaining to sales) or the laws of breach of contract or express warranty, the laws of negligence, product liability, implied warranty, or personal injury, or other claims unrelated to the allegations in the Action.

SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER CLASS AND TEIKOKU
MDL DOCKET NO. 14-md-02521-WHO

010-8566-2170/1/AMERICAS

12.     **Additional Release**.  In addition, each Releasor hereby expressly waives and releases, upon the Settlement Agreement becoming final, any and all provisions, rights, and/or benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542.  General Release; extent.  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code, notwithstanding that the release in Paragraph 11 is not a general release and is of claims against Teikoku only. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of Paragraph 11.  Nonetheless, upon the Effective Date each Releasor hereby expressly waives and fully, finally and forever settles and releases any known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of Paragraph 11, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

13.     **Dismissal of the Litigation as to Teikoku only**.  Upon this Settlement Agreement becoming final in accordance with paragraph 5 above, all claims asserted against Teikoku in the Direct Purchaser Class Action shall be dismissed with prejudice.  No defendant other than Teikoku is intended to be, or is, included within the scope of the release contained herein.

14.     **Effect of Disapproval**.

(a)     If based on a determination that the Settlement is not fair, reasonable or adequate, and on this basis only, the Court (i) declines to approve this Settlement Agreement; (ii) materially modifies the Agreement; (iii) does not enter the final approval order containing the elements set forth in in paragraph 4 above, (iv) enters the final approval order and appellate

SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER CLASS AND TEIKOKU
MDL DOCKET NO. 14-md-02521-WHO

review is sought, and on such review, such final approval order is not affirmed or is affirmed with material modification, then this Settlement Agreement may be terminated upon the written election of Class Counsel or Teikoku's counsel.  For the avoidance of doubt, any order of the Court or the Ninth Circuit Court of Appeals that, based on a determination that the Settlement is not fair, reasonable or adequate and that (a) narrows or does not approve the scope of the release and covenant not to sue contemplated by this Settlement, (b) purports to impose additional material obligations on Teikoku, or (c) declines to enter a final judgment that meets the requirements set forth in paragraph 4 above, except as otherwise agreed in writing by Class Counsel and Teikoku, constitutes a failure to grant final approval of this Agreement and confers on Plaintiffs and Teikoku the right to terminate the Agreement.

(b)     If the Court declines to approve the Settlement for any reason other than that the Settlement is not fair, reasonable or adequate, or if the Court or Ninth Circuit Court of Appeals decertifies the Direct Purchaser Class, Teikoku shall offer, as soon as practicable, each entity within the Direct Purchaser Class its *pro rata* share of the Settlement Amount, as defined in paragraph 6 above, net of all known assignments to the Retailer Plaintiffs identified in paragraph 1 above, in exchange for a release substantially the same as the one set out in paragraphs 11 and 12, above. Such offers may be contingent upon Teikoku receiving releases from at least ninety percent (90%) of DPP Class Members at Teikoku's option.  Class Representatives agree to accept such *pro rata* offer in exchange for a complete release of Teikoku only.

(c)     Any offer to a Direct Purchaser under paragraph 14(b) shall be subject to the condition that the Direct Purchaser submits to the jurisdiction this Court regarding the issue of its obligation to pay its *pro rata* share of Class Counsel's attorneys' fees, costs and expenses, and incentive awards. Each Direct Purchaser that chooses to accept such an offer shall be given written notice by Teikoku (the content of which is to be agreed to by Class Counsel) of Class Counsel's intent to apply for attorneys' fees, costs, expenses, and incentive awards and to seek

12

SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER CLASS AND TEIKOKU
MDL DOCKET NO. 14-md-02521-WHO

010-8566-2170/1/AMERICAS

the awards out of the escrowed funds described in paragraph 6 above.  Teikoku shall not contact or communicate with any Direct Purchaser regarding the subject matter of the litigation or the Settlement without conferring with Class Counsel.

(d)     For any offer accepted by a Direct Purchaser under Paragraph 14(a), Teikoku shall place 40% of the accepted offer into escrow to cover the Direct Purchaser's proportionate share of Class Counsel's attorneys' fees, costs and expenses, and incentive awards.  The amount of any such attorneys' fees, costs, expenses, and incentive awards to Class Counsel shall be determined by the Court.  Any amount placed into escrow that exceeds the amount of attorneys' fees, costs, expenses, and/or incentive awards awarded by the Court shall be paid out to the Direct Purchasers.

(e)     The amount of each Direct Purchaser's *pro rata* share of the Settlement Fund shall be based on analysis by Dr. Jeffrey J. Leitzinger, which will be based on the best information available to Class Counsel at the time.

15.     **Opt-outs.**  Within 10 calendar days after the Court-ordered deadline by which Class Members may opt-out, if the Court so allows, Class Counsel shall serve on counsel for Teikoku a list of all opt-outs who timely filed opt-out notices.  If the Settlement is approved by the Court and becomes final as defined in paragraph 6, and a Direct Purchaser had properly excluded itself from the Class (other than a previously identified Retailer Plaintiff), if the Court so allows, the Settlement Fund will be reduced by the amount of the *pro rata* share for that Direct Purchaser.  Nothing herein will preclude a Direct Purchaser who has sought exclusion from the Class from seeking leave to rescind its decision until such time as the Settlement becomes final pursuant to paragraph 6.  A decision by a Direct Purchaser to opt out of the Class will have no impact on the validity and enforceability of the Settlement as to the remaining Class Members. Teikoku shall not be entitled to terminate this Settlement Agreement due to Class Members opting out.

SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER CLASS AND TEIKOKU
MDL DOCKET NO. 14-md-02521-WHO

010-8566-2170/1/AMERICAS

16.      **Reimbursement of the Settlement Fund upon Termination**.  If the Class Plaintiffs or Teikoku elect to terminate this Settlement Agreement pursuant to the provisions of paragraph 14 above, the Escrow Agent shall return the Settlement Fund, net of any Administrative Expenses previously disbursed from the Settlement Fund (the "Net Settlement Fund"), to Teikoku.  Subject to paragraph 9 of the Escrow Agreement, the Escrow Agent shall disburse the Net Settlement Fund to Teikoku in accordance with this paragraph within 15 calendar days after receipt of either (i) written notice signed by Class Counsel and Teikoku's counsel stating that the Settlement has been terminated, or (ii) any order of the Court so directing.  If the Settlement Agreement is terminated pursuant to paragraph 14 above, any obligations pursuant to this Settlement Agreement other than disbursement of the Net Settlement Fund to Teikoku as set forth above shall cease immediately and the releases set forth in paragraphs 11 and 12 above shall be null and void.

17.      **Preservation of Rights**.  This Settlement Agreement, whether the Settlement becomes final or not, and any and all negotiations, documents, and discussions associated with it, shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or lack thereof, of any liability or wrongdoing by Teikoku or lack thereof, or of the truth or lack thereof of any of the claims or allegations contained in the Complaint or any other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way other than to enforce the terms of this Settlement Agreement.  The parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement.

18.      **Cooperation.** Teikoku agrees to cooperate with Class Counsel at the trial against Endo and/or Watson by making to the extent possible present and former employees available as witnesses at trial as requested by Class Counsel and by stipulating in writing with Class Counsel and/or providing certifications under Fed. R. Evid. 902(11) in advance of trial concerning the

---

14

SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER CLASS AND TEIKOKU
MDL DOCKET NO. 14-md-02521-WHO

authenticity or admissibility of documents and data produced by Teikoku, including documents produced in Japanese.

19.     **Resumption of Litigation in the Event of Termination**.  The parties agree, subject to the Court's approval, that in the event that the Settlement Agreement is not approved by the Court, or the Settlement does not become final pursuant to paragraph 6 above or if the Settlement Agreement is terminated pursuant to paragraph 14 above, litigation of the Action by Plaintiffs and the Class will resume without delay.

20.     **Binding Effect**.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the Releasors and to the Releasees.  Without limiting the generality of the foregoing, each and every covenant and agreement herein by Class Counsel shall be binding upon Plaintiffs and all Class Members, as to Teikoku only.

21.     **Integrated Agreement**.  This Settlement Agreement, together with the exhibits hereto and the documents referenced herein, contains the complete and integrated statement of every term in this Agreement, and supersedes all prior agreements or understandings, whether written or oral, between the parties with respect to the subject matter hereof.  This Settlement Agreement shall not be modified except by a writing executed by Plaintiffs and Teikoku.

22.     **Independent Settlement**.  This Settlement of the Direct Purchaser Class Action as to Teikoku is not conditioned on settlement of any other defendant or case. This Settlement is not conditioned on the disposition of the claims of the Retailer Plaintiffs, the end-payor class, or Government Employees Health Association, each of whom filed their own complaints, or the claims of Teikoku or its affiliates.

23.     **Headings**.  The headings in this Settlement Agreement are intended only for the convenience of the reader and shall not affect the interpretation of this Settlement Agreement.

24.     **No Party is the Drafter**.  None of the parties shall be considered the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that might cause any provision to be construed against the drafter hereof.

SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER CLASS AND TEIKOKU
MDL DOCKET NO. 14-md-02521-WHO

25.     **Consent to Jurisdiction**.  Each Class Member and Teikoku hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for the Northern District of California for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding or dispute relating to the release provisions herein.

26.     **Choice of Law**.  All terms of this Settlement Agreement shall be governed by and interpreted according to federal common law or, where state law must apply, California law.

27.     **Reservation of Claims**. Teikoku represents and warrants that it has assumed no contractual obligation that would, in fact or at law, in the event Plaintiffs and the Direct Purchaser Class prevailed against any other defendant on the claims made in this Action, obligate Teikoku to indemnify, pay, contribute to, be liable over to, or share in a judgment entered in favor of Plaintiffs and the Direct Purchaser Class against any other defendant. Teikoku agrees that Plaintiffs and the Direct Purchaser Class justifiably rely upon this representation and warranty and that it is material to Plaintiffs' and the Direct Purchaser Class' decision to enter into this Settlement with Teikoku.

28.     **Representations and Warranties**.  Each party represents and warrants that it has the requisite authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated herein.

29.     **Notice**.  Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing and provided by email or overnight delivery to the counsel of record for Teikoku or Class Counsel, respectively.

30.     **Execution in Counterparts**.  This Settlement Agreement may be executed in counterparts.  A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

31.     **Confidentiality**. While the fact of settlement of the Direct Purchaser Class Action has been disclosed in open court, the terms of this Settlement Agreement shall remain

1    confidential until Plaintiffs move for preliminary approval of the Settlement, unless Teikoku and

2    Class Counsel agree otherwise.  The parties further agree not to issue any press release or

3    statement to any media outlet regarding this Agreement without obtaining a prior written consent

4    from the other parties, which consent shall not be unreasonably withheld.

5           IN WITNESS WHEREOF, the parties hereto through their fully authorized

6    representatives have agreed to this Settlement Agreement as of the date first herein above

7    written.

8    *For the Direct Purchaser Plaintiffs:*                    *For Defendants Teikoku Seiyaku Co., Ltd.*
                                                              *and Teikoku Pharma USA, Inc.:*

9

10

11   _____          David S. Elkins
     Peter R. Kohn                            Joseph A. Meckes
12   Joseph T. Lukens                         Noriyuki Shimoda
     **FARUQI & FARUQI LLP**                   **SQUIRE PATTON BOGGS (US) LLP**
13   101 Greenwood Avenue                     1801 Page Mill Drive, Suite 110
     Suite 600                                Palo Alto, CA 94304
14   Jenkintown, PA 19046                     Telephone: (650) 856-6500
     Telephone: (215) 277-5770                Facsimile: (650) 843-8777
15   Facsimile: (215) 277-5771                Email: david.elkins@squirepb.com
     Email: pkohn@faruqilaw.com                       joseph.meckes@squirepb.com
16                                                    noriyuki.shimoda@squirepb.com

17
                                             *Counsel for Defendants Teikoku Pharma USA,*
18   _____          *Inc. and Teikoku Seiyaku Co., Ltd.*

19   Thomas M. Sobol
     David S. Nalven
20   Gregory A. Arnold
     **HAGENS BERMAN SOBOL SHAPIRO**
21   **LLP**
     55 Cambridge Parkway, Suite 301
22   Cambridge, MA 02142
     Telephone: (617) 482-3700
23   Email: tom@hbsslaw.com
     Email: davidn@hbsslaw.com
24

25

26

27                                        17

28   SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER CLASS AND TEIKOKU
         MDL DOCKET NO. 14-md-02521-WHO

010-8566-2170/1/AMERICAS

1  confidential until Plaintiffs move for preliminary approval of the Settlement, unless Teikoku and

2  Class Counsel agree otherwise.  The parties further agree not to issue any press release or

3  statement to any media outlet regarding this Agreement without obtaining a prior written consent

4  from the other parties, which consent shall not be unreasonably withheld.

5      IN WITNESS WHEREOF, the parties hereto through their fully authorized

6  representatives have agreed to this Settlement Agreement as of the date first herein above

7  written.

8  *For the Direct Purchaser Plaintiffs:*        *For Defendants Teikoku Seiyaku Co., Ltd.*
                                                *and Teikoku Pharma USA, Inc.:*

9

10

11  Peter R. Kohn                                David S. Elkins
                                                Joseph A. Meckes
12  Joseph T. Lukens                             Noriyuki Shimoda
    **FARUQI & FARUQI LLP**                      **SQUIRE PATTON BOGGS (US) LLP**
13  101 Greenwood Avenue                         1801 Page Mill Drive, Suite 110
    Suite 600                                    Palo Alto, CA 94304
14  Jenkintown, PA 19046                         Telephone: (650) 856-6500
    Telephone: (215) 277-5770                    Facsimile: (650) 843-8777
15  Facsimile: (215) 277-5771                    Email: david.elkins@squirepb.com
    Email: pkohn@faruqilaw.com                         joseph.meckes@squirepb.com
16                                                      noriyuki.shimoda@squirepb.com

17

18                                               *Counsel for Defendants Teikoku Pharma USA,*
    Thomas M. Sobol                              *Inc. and Teikoku Seiyaku Co., Ltd.*
19  David S. Nalven
    Gregory A. Arnold
20  **HAGENS BERMAN SOBOL SHAPIRO**
    **LLP**
21  55 Cambridge Parkway, Suite 301
    Cambridge, MA 02142
22  Telephone: (617) 482-3700
    Email: tom@hbsslaw.com
23  Email: davidn@hbsslaw.com

24

25

26

27                                    17

28  SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER CLASS AND TEIKOKU
    MDL DOCKET NO. 14-md-02521-WHO

010-8566-2170/1/AMERICAS

Bruce E. Gerstein / dsn by permission
Bruce E. Gerstein
Noah Silverman
Ephraim R. Gerstein
**GARWIN GERSTEIN & FISHER LLP**
88 Pine Street, 10th Floor
New York, NY 10005
Telephone: (212) 398-0055
Facsimile: (212) 764-6620
Email: bgerstein@garwingerstein.com
Email: nsilverman@garwingerstein.com

*Co-Lead Counsel for the*
*Direct Purchaser Class*

18

SETTLEMENT AGREEMENT BETWEEN THE DIRECT PURCHASER CLASS AND TEIKOKU
MDL DOCKET NO. 14-md-02521-WHO

# EXHIBIT A

[Submitting Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO: DIRECT PURCHASER CLASS ACTIONS | |

**[PROPOSED] ORDER GRANTING DIRECT PURCHASER CLASS PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS,
APPROVAL OF FORM AND MANNER OF NOTICE, AND
SETTING SCHEDULE FOR FINAL APPROVAL HEARING**

Upon review and consideration of the three separate Settlement Agreements between the Direct Purchaser Class and Defendant Endo Pharmaceuticals Inc. ("Endo") dated as of March 19, 2018; Defendant Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. (collectively, "Teikoku") dated as of December 31, 2017; and Defendants Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., and Actavis plc (collectively, "Watson") dated as of March 19, 2018 (the "Settlements"), Direct Purchaser Class Plaintiffs' Memorandum of Law In Support of Motion for Preliminary Approval of Proposed Settlements, Approval of the Form and Manner of Notice to the Class, and Setting Schedule and Date for a Final Approval Hearing, and exhibits thereto (including proposed notice to the class) (collectively, the "Settlement Documents"), IT IS HEREBY ORDERED that said motion is GRANTED as follows:

## Jurisdiction

1.      This Court has subject matter jurisdiction over this Direct Purchaser Class Action (the "Action") and each of the named plaintiffs, American Sales Company, LLC, Drogueria Betances, Inc., and Rochester Drug Co-Operative, Inc. (together, "Plaintiffs"), individually and on behalf of the certified direct purchaser plaintiff class in this Action, and Defendants Endo, Teikoku, and Watson (together, "Defendants").

## Previously Certified Class

2.      In light of this Court's previous order dated Feb 21, 2017 [ECF No. 670] certifying the direct purchaser class pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the exclusion notices received during the opt-out period established by the order, and the now proposed Settlements in this Action, the Class is defined as follows:

> All persons or entities in the United States, including its territories, possessions, and the Commonwealth of Puerto Rico, who purchased brand or generic Lidoderm directly from any of the Defendants at any time during the period August 23, 2012 through May 1, 2014 (the "Class"). Excluded from the Class are Endo Pharmaceuticals Inc., Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd., Actavis, Inc., Actavis plc, Watson

1

Laboratories, Inc., and their officers, directors, management, employees, subsidiaries, or affiliates, and all federal governmental entities.

Also excluded from the Class are the following Retailer Plaintiffs that pursued claims separately from the Class: Walgreen Co., The Kroger Co., Safeway Inc., HEB Grocery Company LP, Albertson's LLC, Rite Aid Corporation, Rite Aid Hdqtrs. Corp., and CVS Pharmacy, Inc.

3.      The Court also previously appointed the Plaintiffs as Class Representatives and following law firms as Class Counsel pursuant to Fed. R. Civ. P. 23(g): Faruqi & Faruqi LLP, Garwin Gerstein & Fisher LLP, and Hagens Berman Sobol Shapiro LLP.

**Preliminary Approval of the Proposed Settlements**

4.      Fed. R. Civ. P. 23(e) provides that a proposed settlement in a class action must be approved by the Court.  As a first step, plaintiffs generally seek preliminary approval of the proposed settlement.  Manual for Complex Litigation (Fourth) § 21.632 (2015).  "A preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *State of California v. eBay, Inc.*, No. 5:12–CV–05874–EJD, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014) (internal quotations omitted).  Preliminary approval is not a dispositive assessment of the fairness of the proposed settlement, but rather determines whether it falls within the "range of reasonableness." *In re High-Tech Employee Litig.*, No. 11-cv-2509, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (citation omitted).  Preliminary approval, however, establishes an "initial presumption" of fairness, such that notice may be given to the class and the class may have a "full and fair opportunity to consider the proposed [settlement] and develop a response." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *see* Manual for Complex Litigation (Fourth) § 21.631 (2015).

5.      All the relevant factors weigh in favor of preliminarily approving each of the Settlements.  First, the Settlements follow full fact and expert discovery and class certification

2

and summary judgment/*Daubert* motions decided based on extensive briefing and supporting submissions.  Consequently, the parties have access to a discovery record and rulings of the Court that permit a fully informed evaluation of the case.  Second, the Settlements are the result of arm's length negotiation among sophisticated counsel and Court-ordered mediation under the auspices of Chief Magistrate Judge Joseph C. Spero.  Third, the agreed-upon consideration to be paid by each Defendant pursuant to each Settlement Agreement, in exchange for, *inter alia*, dismissal of the litigation with prejudice by Plaintiffs and the Class as set forth in the Settlement Agreements, is within the range of reasonableness based on the circumstances.  The settlement payments consist of $35 million from Teikoku, $71 million from Watson, and $60 million (in two installments) from Endo, and collectively amount to $166 million (the Settlement Fund") for the benefit to the Class.

### **Approval of Form and Manner of Notice**

6.     The Court finds that the proposed form of notice to Class Members of the proposed Settlements (Exhibit B to each of the Settlement Agreements), and the proposed method of dissemination of notice by first class mail satisfy Fed. R. Civ. P. 23(e) and due process and are otherwise fair and reasonable, and are therefore approved.

7.     Class Counsel shall also ensure that copies of the notice and the Settlement Agreements are available to Class Members online at www.lidodermantitrustDPPsettlement.com and any other such website identified in the notice to allow Class Members to become and remain reasonably apprised of the progress of this Action.

8.     The Court finds that because prior notice of class certification, disseminated by first class mail to all Class Members on or about May 8, 2017, satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, and because the prior notice of class certification provided an opt-out period that closed June 22, 2017, there is no need for an additional opt-out period pursuant to Fed. R. Civ. P. 23(e)(4).  *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 635 (9th Cir. 1982) ("to hold that due process requires a second opportunity to opt out

after the terms of the settlement have been disclosed to the class would impede the settlement process so favored in the law"); *Low v. Trump University*, 246 F. Supp. 3d 1295, 1306 (S.D. Cal. 2017) (objector who chose not to opt-out after having received notice of class certification "cannot now belatedly argue that due process compels a further opt-out opportunity"); *Meijer, Inc. v. Abbott Labs.*, Case No. C 07-5985 CW (N.D. Cal. Apr. 8, 2011) [ECF No. 504], at 3 (because the previously served class certification notice satisfied the requirements of Rule 23(e) and due process and provided for an opt-out period that had closed, "there is no need for an additional opt-out period pursuant to Fed. R. Civ. P. 23(e)(4)").

9.    Class Counsel shall cause the notice substantially in the form attached as Exhibit B to each of the Settlement Agreements to be disseminated by _____, 2018 (15 days following the entry of this Order) via first-class mail to the last known address of each member of the Class.

10.    Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Defendants shall serve notice as required under CAFA of the Settlements within 10 days after the date Plaintiffs file the proposed Settlements with the Court.  Defendants shall contemporaneously provide Class Counsel with copies of any such notice.

### **Final Fairness Hearing**

11.    A hearing on final approval (the "Fairness Hearing") shall be held before this Court on_____, 2018 in the courtroom assigned to the Honorable William H. Orrick, U.S.D.J., at the United States District Court for the Northern District of California, United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102.  At the Fairness Hearing, the Court will consider, *inter alia*: (a) the fairness, reasonableness and adequacy of each of the Settlements; (b) the proposed plan of allocation of the Settlement Fund among Class Members; (c) the proposed claim form and process to be used for the allocation of the Settlement Fund; (d) whether the Court should approve awards of attorneys' fees and reimbursement of expenses to Class Counsel; (e) whether service awards should be awarded to the Class Representatives, and

in what amount; and (f) whether entry of a final judgment terminating this litigation should be entered.

12.     The Fairness Hearing may be rescheduled or continued; in this event, the Court will furnish all counsel with appropriate notice.  Class Counsel shall be responsible for communicating any such notice promptly to the Class by posting conspicuous notice on the website identified in the notice.

13.     Class Members who wish to (a) object with respect to any of the proposed Settlements; and/or (b) wish to appear in person at the Fairness Hearing, must first send an objection and, if intending to appear, a notice of intention to appear, along with a summary statement outlining the position to be asserted and the grounds therefore together with copies of any supporting papers or briefs to the Clerk of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102.  To be valid, any such objection and/or notice of intention to appear and summary statement must be postmarked no later than _____, 2018 (30 days from the date that the notice is mailed to each member of the Class).  Except as herein provided, no person or entity shall be entitled to contest the terms of any of the proposed Settlements.  All persons and entities who fail to file an objection and/or notice of intention to appear as well as a summary statement as provided above shall be deemed to have waived any such objections by appeal, collateral attack or otherwise and will not be heard at the Fairness Hearing.  Persons or entities who file an objection and/or notice of intention to appear with a summary statement as described above do not need to appear in order to have their objections considered.

14.     All briefs and materials in support of the final approval of the Settlements and the entry of final judgment proposed by the parties to the Settlements shall be filed with the Court by _____, 2018 (21 days after the expiration of the deadline for Class Members to object to the Settlements and/or attorneys' fees, expenses and incentive awards).

15.     All briefs and materials in support of the application for an award of attorneys' fees, reimbursement of expenses, and incentive awards for the Class Representatives shall be filed with the Court by _____, 2018 (21 days prior to the expiration of the deadline for Class Members to object to the Settlements and/or attorneys' fees, expenses and incentive awards).

16.     Pending final approval of the Settlements and the entry of final judgment, any and all proceedings in this Action (other than those incident to the settlement process) are stayed.

17.     In the event that one or more of the Settlements does not become final, then litigation of the Action with respect to any Defendant whose Settlement does not become final will resume in a reasonable manner to be approved by the Court upon joint application by the parties hereto (or application by one party if a joint application is not forthcoming) as provided for in the Settlement Agreements.

18.     In the event that one or more of the Settlements is terminated in accordance with the Settlement Agreements, the terminated Settlements and all related proceedings shall, except as expressly provided to the contrary in the Settlement Agreements, become null and void, shall have no further force and effect, and Plaintiffs shall retain full rights to assert any and all causes of action against the Defendant whose Settlement is terminated and any released party affiliated with that Defendant, and the Defendant whose Settlement is terminated shall retain any and all defenses and counterclaims thereto.  The Action with respect to the Defendant whose Settlement is terminated shall hereupon revert forthwith to its respective procedural and substantive status prior to the date of execution of the Settlement Agreements and shall proceed as if the Settlement Agreements and all other papers had not been executed by Plaintiffs and the Defendant whose Settlement was terminated.

17.     Neither this Order nor any of the Settlement Agreements nor any other Settlement-related document nor anything contained herein or therein or contemplated hereby or thereby nor any proceedings undertaken in accordance with the terms set forth in any of the

Settlement Agreements or herein or in any other Settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by any Defendant as to the validity of any claim that has been or could have been asserted against any Defendant or as to any liability by any Defendant as to any matter set forth in this Order.

**IT IS SO ORDERED.**

Dated: _____, 2018

_____
WILLIAM H. ORRICK
United States District Judge

7

# EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

# If you bought Lidoderm directly from Endo Pharmaceuticals Inc. or generic lidocaine 5% patch (generic Lidoderm) directly from Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.) between August 23, 2012 through May 1, 2014, you could get a payment from three class action settlements.

*A federal court authorized this notice.  It is not a solicitation from a lawyer.*
*You are not being sued.*

- This notice has important information if you purchased Lidoderm directly from Endo Pharmaceuticals Inc. or generic lidocaine 5% patch (generic Lidoderm) directly from Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.) from August 23, 2012 through May 1, 2014.  It provides an explanation of the proposed settlements and your rights and options in this case.

- You were previously notified on or about May 8, 2017 that the Court had certified a class action lawsuit brought by direct purchasers of brand and generic Lidoderm (lidocaine 5% patch) against Endo Pharmaceuticals Inc. ("Endo"), Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., and Actavis, plc (collectively, "Watson"), and Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. (collectively, "Teikoku"), alleging antitrust violations relating to the sale of Lidoderm.  Endo, Watson, and Teikoku are referred to collectively as "Defendants."

- The purpose of this notice is to inform you that separate settlements with each of the three defendants Endo, Teikoku, and Watson have been reached (the "Settlements") that will provide a total of $166 million ("Settlement Fund") to resolve the Class's claims against all Defendants.

- The Court has scheduled a hearing to decide upon Final Approval of the Settlements, the plan for allocating the Settlement Fund to Class Members (summarized in question 7 below), and Class Counsel's request for payment of attorneys' fees, reimbursement of costs, and award of service awards to the Class Representatives out of the Settlement Fund.  That hearing is scheduled for _____, 2018 before U.S. District Court Judge William H. Orrick in Courtroom ___ at the United States District Court for the Northern District of

1

California, 450 Golden Gate Avenue, San Francisco, CA 94102. You may appear at the Final Approval Hearing, either in person or through your attorney, to object to the proposed Settlements or otherwise be heard.  You may also object to the proposed Settlements in writing.

**YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR DO NOT ACT,
SO PLEASE READ THIS NOTICE CAREFULLY.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS CLASS ACTION LAWSUIT | |
|---|---|
| **UPON RECEIPT OF THE CLAIM FORM, PROMPTLY COMPLETE AND RETURN IT** | You do not need to do anything now to retain your right to seek a share of the Settlements. If the Court grants Final Approval of the Settlements and you are a Class Member, you will need to complete, sign, and return a Claim Form (which will be mailed to you) to obtain your *pro rata* share of the Net Settlement Fund. |
| **OBJECT TO THE SETTLEMENTS** | You may object to any or all of the Settlements. If you do so, you must (as discussed below) write to the Court about why you do not like any or all of the Settlements. |
| **GET MORE INFORMATION** | If you would like to obtain more information about the Lawsuit, you can send questions to the lawyers identified in this notice. |

### WHAT THIS NOTICE CONTAINS

This notice summarizes the proposed settlements. For the precise terms and conditions of the settlements, please see the settlement agreements available at **www.lidodermantitrustDPPsettlement.com** or by accessing the Court's docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the
Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THE SETTLEMENTS OR THE CLAIM PROCESS.**

BASIC INFORMATION................................................................... PAGE 3

    1.  Why did I get this notice?
    2.  What is this lawsuit about?
    3.  Why is this lawsuit a class action?
    4.  Why are there settlements with Endo, Teikoku, and Watson?

WHO CAN PARTICIPATE IN THE SETTLEMENTS...................................... PAGE 6

    5.  Am I part of the Class?

THE SETTLEMENTS' BENEFITS - WHAT YOU GET ................................... PAGE 6

    6.  What do the Settlements provide?
    7.  How much will my payment be?

HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM .................... PAGE 8

    8.  How can I get a payment?
    9.  When would I get my payment?
    10.  What am I giving up to get a payment?

THE LAWYERS REPRESENTING YOU ................................................... PAGE 9

    11.  Do I have a lawyer in this case?
    12.  Should I get my own lawyer?
    13.  How will the lawyers be paid?

OBJECTING TO THE SETTLEMENTS ..................................................PAGE 10

    14.  How do I tell the Court that I don't like the Settlements?

THE COURT'S FINAL FAIRNESS HEARING............................................PAGE 10

    15.  When and where will the Court decide whether to approve the Settlements?
    16.  Do I have to come to the hearing?
    17.  May I speak at the hearing?

IF YOU DO NOTHING ..................................................................PAGE 11

    18.  What happens if I do nothing at all?

GETTING MORE INFORMATION .......................................................PAGE 11

    19.  How do I get more information?

## BASIC INFORMATION

**1.  Why did I get this notice?**

You received this notice because according to available records you may have purchased Lidoderm directly from Endo or lidocaine 5% patch (generic Lidoderm) directly from Watson from August 23, 2012 through May 1, 2014 and therefore you may be a member of the Direct Purchaser Class certified by the Court.

## 2.  What is this lawsuit about?

Plaintiffs filed lawsuits alleging that Endo and Teikoku entered an agreement with Watson not to compete with respect to the sale of lidocaine 5% patches, *i.e.*, Lidoderm and its generic equivalents, in violation of the Sherman Act, 15 U.S.C. §§ 1 and 2, and that the Plaintiffs and Class Members incurred damages as a result.  Plaintiffs allege that Defendants' conduct reduced competition from less expensive generic versions of Lidoderm.  Plaintiffs further allege that they and the other members of the Class were injured by losing the opportunity to purchase less expensive, generic versions of Lidoderm.  A copy of the Direct Purchaser Plaintiffs' Second Consolidated Amended Class Action Complaint, filed December 19, 2014 (the "Complaint") is available at a website established specifically to keep Class Members informed of the status of the Settlements, www.lidodermantitrustDPPsettlement.com.

The Defendants deny all of these allegations.  The Defendants also respond that none of their conduct violated any applicable law or regulation, and deny that any Class member is entitled to damages or other relief.  The Settlements are not an admission of wrongdoing by any of the Defendants.

Following the completion of fact discovery and expert discovery, and class certification and summary judgment motions, and following extensive negotiations utilizing a private mediator and Magistrate Judge appointed as a mediator by the Court, the Class Representatives, on behalf of the class, entered into separate settlements with each of the Defendants.  The terms of each of the Settlements, which are subject to final approval by the Court, are set forth in written Settlement Agreements dated as of March 19, 2018 (Endo), December 31, 2017 (Teikoku), and March 19, 2018 (Watson) (the "Settlement Agreements").  The Settlement Agreements provide for payments by the Defendants totaling $166 million to the Class in exchange for releases of all claims against the Defendants and all Released Parties (as defined in the Settlement Agreements) related to the conduct alleged in the Complaint.  Each of the Settlement Agreements is available for review at www.lidodermantitrustDPPsettlement.com.  The Settlement Agreements contain the full text of the release for your review.

THE COURT HAS NOT DECIDED THAT ANY OF THE DEFENDANTS VIOLATED ANY LAWS.  THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF PLAINTIFFS' CLAIMS OR THE DEFENSES ASSERTED BY THE DEFENDANTS.

The class action is known as *In re Lidoderm Antitrust Litigation*, Case No. 3:14-md-02521-WHO (N.D. Cal.). Judge William H. Orrick of the United States District Court for the Northern District of California is overseeing this class action.

### 3.   Why is this lawsuit a class action?

In a class action, one or more entities called "class representatives" sue on behalf of other entities with similar claims.  In this case, the class representatives are American Sales Company, LLC ("ASC"), Drogueria Betances, Inc., and Rochester Drug Co-Operative, Inc. ("RDC").

The Class Representatives and the entities on whose behalf they have sued together constitute the "Class" or "Class Members."  They are also called the "Plaintiffs."  Their attorneys are called "Class Counsel."

The companies that have been sued are called the Defendants.  In this case, the Defendants are Endo, Watson, and Teikoku.

In a class action lawsuit, one court resolves the issues for everyone in the class.  The Court, by order dated February 21, 2017, certified a Class in this case for purposes of litigation.  A copy of the Court's order may be found at www.lidodermantitrustDPPsettlement.com.

The Court determined that this lawsuit can be a class action because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts.  Specifically, the Court found that:

- Members of the Class share common legal or factual issues relating to the claims in this case.

- The claims of the Class Representatives are typical of the claims of the rest of the Class.

- The common legal questions and facts predominate over questions affecting only individual members of the Class, and this class action will be more efficient than individual lawsuits.

- The number of Class members is so numerous that joining them all into one suit is impractical.

- The Class Representatives and the lawyers representing the Class will fairly and adequately protect the Class's interests.

### 4.   Why are there Settlements with Endo, Teikoku, and Watson?

The Court has not decided which side is correct or whether any laws were violated.  Instead, Defendants and the Class agreed to settle the case and avoid the cost and risk of trial and possible appeals.

These Settlements are the product of extensive negotiations between Plaintiffs' Counsel and counsel for each of the Defendants, with the assistance of a private mediator and a Magistrate Judge serving as a mediator, and after lengthy, hard-fought litigation.  At the time of each of the Settlements, discovery was complete, expert reports had been

exchanged and experts examined, class certification, summary judgment, and expert exclusion motions had been decided, and the parties were preparing for a trial.

After thoroughly investigating the complex factual, legal, and economic issues involved, Plaintiffs' Counsel negotiated with counsel for each of the Defendants three separate Settlement Agreements totaling payments of $166 million to resolve the claims the Plaintiffs brought against the Defendants.

As a result of the Settlements, Class Members will receive compensation without undue delay. The Class Representatives and the lawyers representing them believe that the terms of the settlements, including payments by the Defendants totaling $166 million in exchange for a release of claims against Defendants, are fair, adequate, and reasonable, and in the best interests of the Class.

## WHO CAN PARTICIPATE IN THE SETTLEMENTS

To see if you are in the Class, and if you will get money from the Settlements, you first have to determine whether you are a Class Member.

### 5.   Am I part of the Class?

You are in the Class if you are an entity in the United States that purchased brand Lidoderm directly from Endo or generic Lidoderm directly from Watson at any time during the period August 23, 2012 through May 1, 2014.  Excluded from the Class are Defendants, their officers, directors, management, employees, subsidiaries, or affiliates, and all federal governmental entities.  Also excluded from the Class for purposes of the Settlements are certain retailer plaintiffs that have pursued claims in consolidated Lidoderm Actions separately from the Class.  They are: Walgreen Co., The Kroger Co., Safeway Inc., HEB Grocery Company LP, Albertsons LLC, Rite Aid Corporation, Rite Aid Hdqtrs. Corp., and CVS Pharmacy, Inc.

If you are not sure whether you are included, you may call or write to the lawyers in this case at the telephone numbers or addresses listed in Question 11 below.

## THE SETTLEMENTS' BENEFITS —WHAT YOU GET

### 6.   What do the Settlements provide?

Payments totaling $166 million will be paid by Defendants into a Settlement Fund, which will be held in escrow pending Final Approval and distribution according to a court approved plan of allocation (the Settlement Fund will include any interest that accrues), for the benefit of the Class.  The payments consist of $35 million from Teikoku, $71 million from Watson, and $60 million from Endo.  The payment from Endo will be made in two installments: an initial payment of $40 million, and a second payment in March 2019 of $20 million (the "Second Payment").

Class Counsel will apply to the Court for an award from the Settlement Fund of attorneys' fees (of up to one-third of the Settlement Fund, net of expenses), and payment

of litigation expenses, incentive awards to the Class Representatives of up to $100,000 each for their services to the Class, a proportionate share of the interest, and the costs of administering the Settlements. The remainder (the "Net Settlement Fund") will be divided on a *pro rata* basis based on each Class Member's unit purchases of brand and generic Lidoderm made directly from Endo, Watson, and Endo's subsidiary Generics Bidco I, LLC d/b/a Qualitest, and distributed to Class Members who return valid and timely Claim Forms, subject to approval by the Court.

Class Counsel will not apply for an award of attorney fees and any remaining expenses with respect to the Second Payment by Endo until after the Second Payment is made. The remainder of the Second Payment will also be divided on a *pro rata* basis among Class Members based on their purchases.

With Court approval, the proposed plan of allocation would allocate the Net Settlement Fund based on each Class Member's *pro rata* weighted share of combined net brand and generic Lidoderm unit purchases, with brand units weighted more than generic unit purchases. More information about the proposed plan of allocation and any related Court orders will be posted at www.lidodermantitrustDPPsettlement.com.

In exchange for the payment of $166 million, Defendants will be released and discharged from all antitrust and other similar claims relating to the conduct alleged in the complaint. The full text of the release is included in the Settlement Agreements, available at www.lidodermantitrustDPPsettlement.com.

| 7.  How much will my payment be? |
| --- |

To be a member of the Class and receive a share of the Net Settlement Fund, you must have purchased brand Lidoderm directly from Endo or generic Lidoderm directly from Watson during the time period August 23, 2012 through May 1, 2014. If you qualify as a member of the Class, your payment amount will be calculated according to a Court-approved Plan of Allocation. The Court has not yet finally approved a Plan of Allocation, but more information about the proposed Plan of Allocation and any related Court orders will be posted at www.lidodermantitrustDPPsettlement.com. If the proposed Plan of Allocation is approved by the Court, your share of the Net Settlement Fund will depend on the weighted combined total amount of Lidoderm units you purchased directly from Endo from December 17, 2012 through March 16, 2015 and/or generic Lidoderm units you purchased directly from Watson or from Endo's subsidiary Generics Bidco I, LLC d/b/a Qualitest from September 15, 2013 through March 16, 2015, with brand units weighted more than generic unit purchases.

For those who qualify as members of the Class, the dates used in the proposed Plan of Allocation are based on the Plaintiffs' allegations and the Court's orders. The Plan of Allocation does not include payments for purchases beginning on August 23, 2012, the start of the class period, because, based on the parties' agreement and the Court's ruling in its summary judgment order, generic entry could not have occurred any earlier than December 17, 2012. September 15, 2013 is the date on which Watson actually launched generic Lidoderm, and so is the earliest date on which any Class member purchased

generic Lidoderm.  The Plan of Allocation provides for payments for purchases through March 16, 2015 because, according to Plaintiffs' expert, for members of the Class who continued to purchase generic Lidoderm that date is the end of the period during which the Class suffered overcharges.

Your share of the Net Settlement Fund will also depend on the number of valid claim forms that Class Members submit.  If fewer than 100% of the Class Members send in a claim form, you could get a larger *pro rata* share.

## HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM

### 8.  How can I get a payment?

If the Settlements are approved by the Court, all Class Members will receive a Claim Form to request a *pro rata* share of the Settlement Fund from the Claim.  Transactional sales data from the Defendants will be used to make the calculations.  You may be asked to verify the accuracy of the information in the Claim Form, and to sign and return the form according to the directions on the form.  The Claim form will be sent to you by the Claim Administrator in this case, RG/2 Claims Administration LLC ("RG/2").  Information concerning RG/2 may be found at www.rg2claims.com. Class Members will be given the opportunity to provide data or information to supplement or correct this information.

### 9.  When would I get my payment?

Payment is conditioned on several matters, including the Court's approval of the Settlements and upon any appeal being final (and no longer subject to any appeals to any court).  Upon satisfaction of various conditions, the Net Settlement Fund will be allocated to Class Members as soon as possible after final approval has been obtained for the Settlements.

The allocation will be on a *pro rata* basis pursuant to a Plan of Allocation that will be approved by the Court.  If there is an appeal of the Settlements' final approval, the appeal could take several years to resolve.  Any accrued interest on the Settlement Fund will be included, *pro rata*, in the amount paid to the Class Members.

The Settlement Agreements may be terminated if the Court does not approve the Settlements or materially modifies them.  If any Settlement Agreement is terminated because the Court determines that Settlement not to be fair, adequate, and reasonable, the lawsuit will proceed as if that Settlement had not been reached and the litigation may proceed against any Defendant(s) that is a party to a terminated Settlement.  The full text of the termination provisions are in the Settlement Agreements, available at www.lidodermantitrustDPPsettlement.com.

### 10.  What am I giving up to get payment?

In exchange for the payment of $166 million, Class Members are releasing and discharging Defendants from all antitrust and other similar claims relating to the conduct alleged in the complaint.  The Released Claims are described fully in the Settlement Agreements available at www.lidodermantitrustDPPsettlement.com and will also be included as part of the Claim Form to be mailed to each Class Member upon Final Approval of the Settlements by the Court.  Class Members are releasing the Released Claims regardless of whether or not they submit a Claim Form.

## THE LAWYERS REPRESENTING YOU

| 11.    Do I have a lawyer in this case? |
| --- |

The lawyers listed below have been appointed by the Court as Class Counsel. They are experienced in handling similar cases against other companies. The lawyers are:

| Peter R. Kohn | Bruce E. Gerstein | Thomas M. Sobol |
| --- | --- | --- |
| Joseph T. Lukens | Noah Silverman | David S. Nalven |
| Faruqi & Faruqi, LLP | Garwin Gerstein & Fisher | Hagens Berman Sobol Shapiro |
| 101 Greenwood Ave., | LLP | LLP |
| Suite 600 | 88 Pine Street, 10th Floor | 55 Cambridge Parkway, Suite |
| Jenkintown, PA 19046 | New York, NY 10005 | 301 |
| (215) 277-5770 | (212) 398-0055 | Cambridge, MA  02142 |
| www.faruqilaw.com | www.garwingerstein.com | (617) 482-3700 |
| | | www.hbsslaw.com |

| 12.    Should I get my own lawyer? |
| --- |

You do not need to hire your own lawyer because Class Counsel are working on your behalf.  However, if you wish to do so, you may retain your own lawyer at your own expense.

| 13.    How will the lawyers be paid? |
| --- |

If the Court approves the Settlements, Class Counsel will apply to the Court for an award of attorneys' fees (of up to one-third of the Settlement Fund net of expenses), plus expenses, including the costs of administering the Settlements. Class Counsel also will apply for service awards to the Class Representatives for their services to the Class of up to $100,000 each. If the Court grants Class Counsel's requests, these amounts would be deducted from the Settlement Fund.  You will not have to pay these fees, costs and expenses out of your own pocket.

Class Counsel's application for an award of attorneys' fees, reimbursement of expenses and incentive awards to the Class Representatives will be filed with the Court and made available for download and/or viewing on or before _____, 2018 on www.lidodermantitrustDPPsettlement.com as well as at the office of the Clerk of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102 during normal business hours.  It may also be viewed

by accessing the Court's docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov.

## OBJECTING TO THE SETTLEMENTS

You can tell the Court that you do not agree with any of the Settlements or some part of any of them, and/or the application for attorneys' fees, costs, and expenses, and/or the service awards.

| 14.   How do I tell the Court that I do not like one or more of the Settlements? |
| --- |

If you are a Class Member, you can ask the Court to deny approval by filing an objection. You may tell the Court that you object to one or more of the Settlements in their entirety or in part, and/or the application for attorneys' fees, costs, and expenses, and/or the requested service awards to the Class Representatives. You cannot ask the Court to order larger Settlements; the Court can only approve or deny the Settlements. If the Court denies approval of a Settlement, no settlement payments will be sent out related to that Settlement and the lawsuit will continue against any Defendant that is a party to such a Settlement for which approval is denied. If that is what you want to happen, you must object. If the Court rejects your objections, you will still be bound by the Settlement.

Any objection to the proposed Settlements must be in writing. You may also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney. If you or your attorney wishes to appear, you must submit a notice of your intent to appear in writing. All written objections and supporting papers and written notices of intent to appear at the Final Approval Hearing must (a) clearly identify the case name and number, *In re Lidoderm Antitrust Litigation,* Case No. 3:14-md-02521-WHO (N.D. Cal.) (Direct Purchaser Action), (b) clearly identify the Settlement(s) to which the objection pertains, (c) explain the reason for the objection, and (d) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102 or by filing them in person at any location of the United States District Court for the Northern District of California, and (e) be filed or postmarked on or before _____, 2018.

## THE COURT'S FINAL FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlements. You may attend and you may ask to speak, but you do not have to.

| 15.   When and where will the Court decide whether to approve the Settlements? |
| --- |

The Court will hold a Final Approval Hearing at ___ on _____, in Courtroom ___ at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102. At this hearing, the Court will consider whether the Settlements are fair, reasonable and adequate. If there are objections, the Court will

consider them.  After the hearing, the Court will decide whether to approve the Settlements.  We do not know how long the decision will take.

**IMPORTANT:**  The time and date of this hearing may change without additional mailed or publication notice. For updated information on the hearing, visit www.lidodermantitrustDPPsettlement.com.

| 16.   Do I have to come to the hearing? |
|---|

No.  Class Counsel will answer questions that Judge Orrick may have.  But, you are welcome to come at your own expense.  If you send an objection, you do not have to come to Court to talk about it.  So long as you mail your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it is not necessary. Moreover, attendance is not necessary to receive a *pro rata* share of the Net Settlement Fund.

| 17.   May I speak at the hearing? |
|---|

You may ask the Court for permission to speak at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney.

## IF YOU DO NOTHING

| 18.   What happens if I do nothing at all? |
|---|

If you are a Class Member and you do nothing, you will participate in the Settlements as described in this notice, if the Settlements are approved.  However, you will need to complete, sign and return the Claim Form (once it is sent to you) in order to obtain a payment.  Class Members are releasing the Released Claims regardless of whether or not they submit a Claim Form.

## GETTING MORE INFORMATION

| 19.   How do I get more information? |
|---|

If you have questions about this case or want to get additional information, you may call or write to the lawyers listed in answer to Question 11 or visit the website www.lidodermantitrustDPPsettlement.com.  This is only a summary of the Settlement and is qualified in its entirety by the terms of the actual Settlement Agreements.  A copy of the Settlement Agreements, including the releases, is on public file with the United States District Court for the Northern District of California, 450 Golden Gate Avenue,

San Francisco, CA 94102 during normal business hours and is also available for download and/or viewing on www.lidodermantitrustDPPsettlement.com.

## PLEASE DO NOT WRITE OR CALL THE COURT
## OR THE CLERK'S OFFICE FOR INFORMATION.

DATE: _____, 2018             BY THE COURT

                                          _____
                                          WILLIAM H. ORRICK
                                          United States District Judge

# EXHIBIT C

## <u>ESCROW AGREEMENT</u>

This Escrow Agreement dated December 29th, 2017, is made among Peter Kohn of Faruqi & Faruqi LLP, Thomas P. Sobol of Hagens Berman Sobol Shapiro LLP, David F. Sorensen of Berger & Montague P.C., and Bruce E. Gerstein of Garwin Gerstein & Fisher LLP ("Co-Lead Class Counsel"), as counsel for American Sales Company, LLC ("ASC"), Drogueria Betances, Inc., and Rochester Drug Co-Operative, Inc. ("RDC") (together, "Plaintiffs"), individually and on behalf of the direct purchaser class (the "Class" or the "Direct Purchaser Class"), and the undersigned counsel for Teikoku Pharma USA, Inc. ("Teikoku Pharma"), Teikoku Seiyaku Co., Ltd. ("Teikoku Seiyaku" and  together with Teikoku Pharma "Teikoku") David S. Elkins, Joseph A. Meckes, and Noriyuki Shimoda of Squire Patton Boggs (US) LLP ("Teikoku's' Counsel"), The Huntington National Bank, as escrow agent ("Escrow Agent"), and RG/2 Claims Administration, LLC as settlement administrator ("Settlement Administrator" or RG/2).

## <u>Recitals</u>

A.      Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement between the Class and Teikoku dated December 29th, 2017 ("Settlement Agreement"), entered into by, among others, Co-Lead Class Counsel on behalf of the Plaintiffs and the Class, and Teikoku's' Counsel on behalf of Teikoku.

B.      This Escrow Agreement governs the deposit, investment and disbursement of the funds that, pursuant to the Settlement Agreement, will be paid to settle only the direct purchaser class action that was consolidated with other Lidoderm antitrust lawsuits that together were captioned *In re Lidoderm Antitrust Litigation,* No. 14-2521 (the "Direct Purchaser Class Action") pending in the United States District Court for the Northern District of California (the "Court") with respect to Teikoku only.

C.      Plaintiffs and the Class on the one hand, and Teikoku on the other hand, by and through their respective counsel, have entered into the Settlement Agreement wherein they agreed, subject to the final approval of the Court, that the claims asserted by Plaintiffs and the Class against Teikoku in the Direct Purchaser Class Action be dismissed with prejudice in exchange for, *inter alia*, payment by Teikoku of the Settlement Amount, as set forth in Paragraph 6 of the Settlement Agreement.

D.      The Settlement Payment, together with any interest accrued thereon, is to be deposited into escrow and used to satisfy payments to Class Members who submit valid and timely claim forms; payments for attorneys' fees, costs and expenses awarded; any incentive awards; payments for tax liabilities; and other costs pursuant to the terms of the Settlement Agreement.

E.      In Consideration of the foregoing and the mutual covenants and considerations herein, the parties agree as follows:

## Agreement

1.      Appointment of Escrow Agent. The Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Payment upon the terms and conditions provided in this Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.  The Huntington National Bank hereby accepts such appointment.

2.      The Escrow Account. The Escrow Agent shall establish and maintain an escrow account titled as Lidoderm Direct Purchaser Antitrust Litigation Settlement Fund Account Number 1087235959 (the "Escrow Account").  Pursuant to Paragraph 6 of the Settlement Agreement, the Teikoku shall cause the Settlement Payment to be deposited into the Escrow Account within thirty (30) days of the latter of the entry of the Preliminary Approval Order pursuant to Paragraph 3 of the Settlement Agreement or receipt of wire transfer instructions from Co-Lead Class Counsel. Escrow Agent shall receive the Settlement Payment from Teikoku and deposit such funds into the Escrow Account. The Settlement Payment and all interest accrued thereon shall be referred to herein as the "Settlement Fund." The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Escrow Agent in accordance with the terms and conditions set forth in this Escrow Agreement, in the Settlement Agreement, and in orders of the Court approving the disbursement of the Settlement Fund.

3.      Investment of Settlement Fund. At all times prior to the Effective Date (as is set forth in Paragraphs 5 and 7 of the Settlement Agreement) and as directed in writing by a majority of Co-Lead Class Counsel, the Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit. After the Effective Date, the Settlement Fund shall be invested as directed in writing by a majority of Co-Lead Class Counsel: Peter Kohn of Faruqi & Faruqi LLP, 101 Greenwood Ave. #600, Jenkintown, PA 19046; David F. Sorensen, Esq. of Berger & Montague, P.C., 1622 Locust Street, Philadelphia, PA 19103; Bruce E. Gerstein, Esq. of Garwin Gerstein & Fisher, P.A., 88 Pine Street, 10th Fl.., New York, NY 10005; and Thomas P. Sobol of Hagens Berman Sobol Shapiro LLP, 55 Cambridge Parkway, Suite 301, Cambridge, MA 02142. The term of any such investment by the Escrow Agent shall not exceed 90 days. All interest earned on the Settlement Fund shall become part of the Settlement Fund. The Escrow Agent shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.

4.      Redemption. The Escrow Agent may sell or present for redemption any investment described in paragraph 3 above, whenever it is necessary to provide funds to meet any payment required under this Escrow Agreement.

010-8571-3543/1/AMERICAS

5.      Escrow Funds Subject to Jurisdiction of the Court. The Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Fund shall be distributed, pursuant to the Settlement Agreement and subject to further order(s) of the Court.

6.      Tax Treatment & Report. Provided the Court preliminarily approves the Settlement Agreement, the Settlement Administrator shall comply with all requirements applicable to the Settlement Fund as a "Qualified Settlement Fund" within the meaning of Section 1.468B-1 of the Treasury Regulations. The Settlement Administrator's obligations under this paragraph 6 include, without limitation, the following:

(a)      The Settlement Administrator will prepare a "Regulation Section 1.468B-3 Statement" pursuant to Treasury Regulation Section 1.468B-3(e) on behalf of Teikoku and provide copies to Teikoku's Counsel for review and approval.

(b)      The Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provision of this Paragraph, including the "Regulation Section 1.468B-1 Relation Back Election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and therefore to cause the appropriate filing to occur.

(c)      The Settlement Administrator will prepare and attach to the Settlement Fund's first income tax return a Regulation Section 1.468B-1 Relation Back Election pursuant to Treasury Regulation Section 1.468B-1(j) for execution by Teikoku and the Settlement Administrator. The Settlement Administrator will promptly forward a copy of the "Regulation Section 1.468B-1 Relation Back Election" to Teikoku' Counsel within 30 days after the date hereof.

(d)      The Settlement Administrator shall timely prepare and file on behalf of the Settlement Fund (i) federal tax returns in accordance with Section 1.468B-2 of the Treasury Regulations and the other provisions of the Internal Revenue Code of 1986, a s amended (the "Code") and (ii) all necessary state, local and foreign tax returns.

(e)      Notwithstanding any effort, or failure, of the Settlement Administrator and the parties to treat the Settlement Fund as a "Qualified Settlement Fund" within the meaning of Section 1.468B-1 of the Treasury regulations effective as of the date hereof, any additional tax liability, interest or penalties incurred by Teikoku resulting from income earned by the Settlement Fund (or the receipt of any payment under this paragraph 6(d)) shall be reimbursed from the Settlement Fund in the amount of such additional tax liability, interest or penalties upon Defendants' written request to the Settlement Administrator. The Escrow Agent shall withdraw from the Settlement Fund (i) at the request of the Settlement Administrator, monies to pay all the applicable federal, state, local, and foreign taxes which the Settlement Fund

3

owes or is estimated to owe, as well as related expenses, and (ii) monies to pay any reimbursements to Teikoku as described in this subparagraph (d).

7.    <u>Tax Payments of Settlement Fund</u>. All Taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreement in Paragraph 8, shall be treated as and considered to be a cost of administration of the Settlement Fund. The Settlement Administrator shall timely pay such Taxes out of the Settlement Fund, as appropriate, without prior order of the Court, as directed by a majority of Co-Lead Class Counsel. The Settlement Administrator shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law. The fees and costs of the Settlement Administrator in the preparation of any tax returns, tax reports, or the calculation of any tax payments due as set forth in Sections 6 and 7 ("Tax Expenses"), shall be paid from the Settlement Fund. Neither Teikoku nor any other Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or Tax Expenses, for preparing tax returns, tax reports, or calculation of any tax payments, or for obtaining or maintaining the tax status desired for the Settlement Fund. The Settlement Fund shall indemnify and hold Teikoku harmless for any taxes that may be deemed to be payable by Teikoku by reason of the income earned on the Settlement Fund, and Escrow Agent shall at the direction of the Settlement Administrator and/or Co-Lead Class Counsel be responsible to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts, including establishing such reserves as are necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this paragraph (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). If the Settlement Fund is returned to the Teikoku pursuant to the terms of the Settlement Agreement, Teikoku shall provide Escrow Agent with a properly completed Form W-9.

8.    <u>Disbursement Instructions.</u>

(a)    Before the Effective Date, the Escrow Agent may, upon written authorization of the undersigned counsel acting jointly, withdraw from the Settlement Fund disbursements sufficient to pay costs and expenses of notice to the Settlement Classes, costs of the Settlement Administrator, and expenses payable by the Escrow Agent on behalf of the Settlement Fund. After the Effective Date, such authorization may be granted by a majority of Co-Lead Class Counsel alone.  Co-Lead Class Counsel is authorized, after obtaining approval of Teikoku's Counsel, to appoint, and shall appoint, an administrator (and any successors) for the Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3). The Court has appointed RG/2 Claims Administration, LLC as the Settlement Administrator. Co-Lead Class Counsel shall be responsible for assuring that the Settlement Administrator qualifies as an "administrator" of the Settlement Fund within the meaning of Treasury Regulation 1.468B- 2(k)(3) and is performing its duties thereunder. Teikoku shall have no responsibility for any fees of the Settlement Administrator, nor shall Teikoku have any other liability for or on account of the performance of the Settlement Administrator.

(b)    Other than those distributions contemplated herein to pay taxes and costs of notice and administration as described in paragraph 7 and subparagraph 8(a) hereof, distributions from the Settlement fund may be made only after the Effective Date, as

4

authorized by Court order. In addition, upon the Effective Date, a majority of Co-Lead Class Counsel shall have the authority, in accordance with paragraph 11(g), to appoint a Successor Escrow Agent and direct that all funds be transferred to the Successor Escrow Agent, which Successor Escrow Agent shall not be a Defendant or an affiliate of a Defendant. Upon the Effective Date, Teikoku's interest in the Settlement Fund shall cease in its entirety.

(c)      In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Escrow Agent will seek confirmation of such instructions by telephone call back to the person or persons designated in subparagraphs (a) and (b) above only if it is reasonably necessary, and Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated. It will not be reasonably necessary to seek confirmation if Escrow Agent receives a written letter authorizing a disbursement from the law firms required in subparagraphs (a) and (b), as applicable, signed or electronically signed by one the required persons designated in subparagraphs (a) and (b). To assure accuracy of the instructions it receives, Escrow Agent may record such call backs. If Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved. The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Escrow Agent. Co-Lead Class Counsel and Teikoku' Counsel agree to notify Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed. If it is determined that the transaction was delayed or erroneously executed as a result of Escrow Agent's error, Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law. Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

9.      Termination of Settlement. In the event that the Settlement Agreement does not become effective or final or is terminated for any reason, the Escrow Agent shall, subject only to expiration of any time deposit investment(s) not to exceed ninety days, return the remaining balance of the Settlement Fund to Teikoku pursuant to Paragraph 14 of the Settlement Agreement, including all interest thereon, less any amounts disbursed or approved to be  disbursed for Class Notice, claims processing, and or any costs and expenses referred to in paragraph 10 hereof.

10.     Fees. In the event that a portion of the Settlement Fund is invested in T-Bills, Escrow Agent shall charge an annual fee of 3 basis points (0.03%) for the T-Bill purchase transactions, which shall be due at the time of purchase transactions. The purchase or sale of multiple T-Bills at one time shall constitute one transaction. There shall be no charge for T-Bill sale transactions. The Escrow Agent shall be reimbursed for all its reasonable out-of-pocket expenses, including attorneys' fees, travel expenses, telephone and facsimile transmission costs, postage (including express mail and overnight delivery charges), copying charges and the like. All fees and expenses of Escrow Agent shall be paid solely from the Settlement Fund.  All such fees and expenses shall  constitute a direct charge against the Settlement Fund. The Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment, in writing, by a majority of Co-Lead Class Counsel. Escrow Agent shall notify Co-Lead Class Counsel of any disbursement from the Settlement

010-8571-3543/1/AMERICAS

Fund to itself and shall furnish copies of all related invoices and other statements.

The Escrow Agent is authorized to, and may, disburse to itself from the Settlement Fund, from time to time, the amount of reimbursement of out-of-pocket expenses payable hereunder. The Escrow Agent shall notify the undersigned counsel of any disbursement from the Settlement Fund to itself and shall furnish the undersigned counsel copies of all related invoices and other statements. After the Effective Date, such notification need be provided only to Co-Lead Class Counsel.

11.     <u>Duties, Liabilities and Rights of Escrow Agent</u>. This Escrow Agreement sets forth all of the obligations of Escrow Agent, and no additional obligations shall be implied from the terms of this Escrow Agreement or any other agreement, instrument or document.

(a)     The Escrow Agent has been appointed in compliance with the Settlement Agreement and is subject to Orders of the Court.

(b)     The Escrow Agent is and shall be independent, provided that as parties hereto, Plaintiffs, the Class and Teikoku shall be entitled to institute actions to compel or require performance by the Escrow Agent of its obligations hereunder. The Escrow Agent hereby agrees to submit to jurisdiction and venue of the Court with respect to issues relating to the Settlement Fund for purposes of enforcement, clarification, or amendment of the provisions of this Escrow Agreement, and to comply with all directions given by the Court.

(c)     The Escrow Agent shall, upon request of any party, advise counsel for the parties of any maturities, conversion privileges, and other matters of a like manner concerning the investments held in accordance with this Escrow Agreement.

(d)     The Escrow Agent shall, upon request of any party, furnish to counsel for the parties' statements of transactions, which statements shall be certified by the Escrow Agent.

(e)     The parties reserve the right to modify this Escrow Agreement upon written agreement of all parties other than the Escrow Agent, except any modification which shall affect the duties or responsibilities of the Escrow Agent may be made only upon written agreement of all parties including the Escrow Agent.

(f)     The Escrow Agent shall treat the fact of the settlement and Settlement Agreement referred to herein, as well as all facts or other information pertaining to the Settlement Agreement, as confidential and shall not disclose or use such information in any way other than as necessary to fulfill its role as Escrow Agent.

6

(g)     The appointment of the Escrow Agent under this Escrow Agreement may be revoked at any time, and the Escrow Agent shall thereby become discharged from the obligations hereby created subsequent to the date of discharge, by notice in writing given to the Escrow Agent not less than 30 days before such removal is to take effect. Prior to the Effective Date, such notice of revocation or appointment must be given by undersigned counsel acting jointly; after the Effective Date, such notice may be given by a majority of Co-Lead Class counsel alone. Upon approval of the Court, and subject to the arrangements being made for a replacement Escrow Agent as specified in the next sentence, the Escrow Agent may terminate this Escrow Agreement by notice in writing given to the undersigned counsel not less than 30 days before such termination is to take effect, and thereby become discharged from the obligations hereby created subsequent to the date of termination. In the event that the Escrow Agent's appointment is revoked or the Escrow Agent terminates this Escrow Agreement, arrangements shall be made for a replacement Escrow Agent, who shall assume the Escrow Agent's duties hereunder as of the date and time that the replacement is to take effect. Before the Effective Date, such arrangements shall (absent written agreement otherwise by all undersigned counsel) be a national banking association with trust powers; after the Effective Date, such arrangements may be made by a majority of Co-Lead Class counsel alone.

(h)     Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by a majority of Co-Lead Class Counsel or the representatives for the Teikoku' Counsel (listed in paragraph 13), as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order. Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to do so.

(i)     Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel.

(j)     The Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

(k)     Escrow Agent is authorized to hold any Treasury bills held hereunder in its Federal Reserve account.

(l)     Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Escrow Agreement, except for liability, damage or losses arising out of its gross negligence or willful misconduct as adjudicated by a court of competent jurisdiction.

(m)     Upon distribution of all of the funds in the Escrow Account pursuant to the terms of this Escrow Agreement and any orders of the Court, Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Escrow Agreement, except as otherwise specifically provided herein.

(n)     Within 10 business days of Teikoku' depositing the Settlement Funds with the Escrow Agent, and at the end of each calendar year quarter thereafter, the Escrow Agent shall provide documentation to Teikoku' Counsel and Plaintiffs' Co-Lead Counsel showing that the Escrow Account has been established and is being maintained in the form specified, and the Settlement Funds invested as specified, in paragraph 3 above.

(o)     If the Escrow Agent is uncertain as to its duties or rights under this Escrow Agreement, or receives instructions, claims or demands from a party to the Escrow Agreement or any third party, that in its opinion, conflict with the terms of this Escrow Agreement, it may refrain from taking action in connection with the Settlement Fund with respect to which such uncertainty or conflict exists, until it is able to obtain a resolution of the issue pursuant to this Section. The Escrow Agent shall notify Co-Lead Class Counsel and Teikoku's Counsel of the duties or rights to which it is uncertain. During the period in which the issue remains unresolved, the Escrow Agent's sole obligation with respect to the portion of the Settlement Fund that is the subject of the dispute shall be to keep safely such funds and related books and records it holds under this Escrow Agreement; provided, that with respect to any portion of the Settlement Fund as to which there is no dispute, the Escrow Agent shall be bound by the terms and conditions of this Escrow Agreement.

(p)     The Escrow Agent shall be indemnified by the Settlement Fund, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, and liabilities, arising out of or based upon any act, omission, alleged act or alleged omission by the Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non- performance by the Escrow Agent of, any of the Escrow Agent's duties under this Agreement, except as a result of the Escrow Agent's bad faith, willful misconduct or gross negligence.

12.     <u>Non-Assignability by Escrow Agent</u>. Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed before the Effective Date without the written consent of Teikoku' Counsel and a majority of Co-Lead Class Counsel. After the Effective Date, such assignment or assumption shall require only the written consent of a majority of Co-Lead Class Counsel.

13.     <u>Resignation of Escrow Agent</u>. Escrow Agent may, in its sole discretion, resign and terminate its position by providing 120 days prior written notice to the parties to the Escrow Agreement herein. On the effective date of such resignation, Escrow Agent shall deliver this Escrow Agreement together with any and all related instruments or documents and all funds in the Escrow Account to the successor Escrow Agent, subject to this Escrow Agreement. If a successor Escrow Agent has not been appointed prior to the expiration of 120 days following the date of notice of such resignation, then Escrow Agent may petition the Court for the appointment of a successor Escrow

8

Agent, or other appropriate relief. Any such resulting appointment shall be binding upon all parties to this Escrow Agreement.

14. _Notices_. Copies of all notices and correspondence sent pursuant to this Escrow Agreement shall be served by mail and email upon all undersigned counsel, the Settlement Administrator and the Escrow Agent. After the Effective Date, such notices and correspondence need only be provided to Co-Lead Class Counsel. Such Notice should be addressed as follows

If to Co-Lead Class Counsel:

David F. Sorensen
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-5705

Bruce E. Gerstein
Garwin Gerstein &
Fisher LLP
88 Pine St., 10th Fl.
New York, NY 10005
(212) 398-0055

Peter Kohn
FARUQI & FARUQI, LLP
101 Greenwood Ave., Suite 600
Jenkintown, PA 19046
(215) 277-5770

Thomas P. Sobol
HAGENS BERMAN SOBOL
SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA  02142
(617) 482-3700

If to Teikoku' Counsel:

David S. Elkins
SQUIRE PATTON
BOGGS (US) LLP
1801 Page Mill Drive, Suite 110
Palo Alto, CA 94304
(650) 856-6500

Noriyuki Shimoda
Joseph A. Meckes
SQUIRE PATTON
BOGGS (US) LLP
275 Battery Street, 26th Floor
San Francisco, CA 94111
(415) 954-0200

9

If to Escrow Agent:    THE HUNTINGTON NATIONAL BANK
Attention:  Liz Lambert, Senior Vice President
1150 First Avenue, Suite 501
King of Prussia, PA  19406
Telephone: (215) 568-2382
E-mail:  liz.lambert@huntington.com

Susan Brizendine, Trust Officer
Huntington National Bank
7 Easton Oval – EA5W63
Columbus, Ohio 43219
Telephone:  (614) 331-9804
E-mail:  susan.brizendine@huntington.com

If to Settlement    RG/2 Claims Administration, LLC
Administrator:    Attn:  Michael J. Lee, Chief Operation Officer
30 S. 17th Street
Philadelphia, PA 19103

10

15.     <u>Patriot Act Warranties</u>. Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56 ), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information").  The parties to this Escrow Agreement agree that they will provide the Escrow Agent with such Identification Information as the Escrow Agent may request in order for the Escrow Agent to satisfy the requirements of the Patriot Act.

16.     <u>Entire Agreement</u>. This Escrow Agreement constitutes the entire agreement and understanding of the parties hereto in respect of the matters discussed herein. Any modification of this Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto. To the extent this Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

17.     <u>Governing Law</u>. This Escrow Agreement shall be governed by the law of the State of Ohio in all respects, without reference to choice-of-law principles. The parties hereto agree that any action relating to this Escrow Agreement, including without limitation any action in the nature of interpleader or any proceeding the Escrow Agent may commence for the appointment of a successor escrow agent, shall be subject to the jurisdiction of the Court. The parties hereto further submit to the jurisdiction of the Court in connection with any such proceedings for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

18.     <u>Termination of Escrow Account</u>. The Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Escrow Agreement.

19.     Miscellaneous Provisions.

a.     <u>Counterparts</u>. This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Escrow Agreement.

b.     <u>Further Cooperation</u>. The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Escrow Agreement in order (a) to give Escrow Agent confirmation and assurance of Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Escrow Agreement, each in such form and substance as may be acceptable to Escrow Agent.

010-8571-3543/1/AMERICAS

    c.    <u>Non-Waiver</u>. The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

*For Escrow Agent:*

_____

Liz Lambert, Senior Vice President
**THE HUNTINGTON NATIONAL BANK**
1150 First Avenue, Suite 501
King of Prussia, PA 19406

*For the Direct Purchaser Plaintiffs:*

_____

Peter R. Kohn
Joseph T. Lukens
**FARUQI & FARUQI LLP**
101 Greenwood Avenue
Suite 600
Jenkintown, PA 19046
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
Email: pkohn@faruqilaw.com

_____

Thomas M. Sobol
David S. Nalven
Gregory A. Arnold
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Email: tom@hbsslaw.com
Email: davidn@hbsslaw.com

_____

Bruce E. Gerstein
Noah Silverman

*For Defendant Teikoku:*

David S. Elkins
Joseph A. Meckes
Noriyuki Shimoda
**SQUIRE PATTON BOGGS (US) LLP**
1801 Page Mill Drive, Suite 110
Palo Alto, CA 94304
Telephone: (650) 856-6500
Facsimile: (650) 843-8777
Email: david.elkins@squirepb.com
       joseph.meckes@squirepb.com
       noriyuki.shimoda@squirepb.com

*Co-Lead Counsel for Defendant's Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd.*

12

    c.    <u>Non-Waiver</u>. The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

*For Escrow Agent:*

_____

Liz Lambert, Senior Vice President
**THE HUNTINGTON NATIONAL BANK**
1150 First Avenue, Suite 501
King of Prussia, PA 19406

*For the Direct Purchaser Plaintiffs:*

_____

Peter R. Kohn
Joseph T. Lukens
**FARUQI & FARUQI LLP**
101 Greenwood Avenue
Suite 600
Jenkintown, PA 19046
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
Email: pkohn@faruqilaw.com

_____

Thomas M. Sobol
David S. Nalven
Gregory A. Arnold
**HAGENS BERMAN SOBOL SHAPIRO LLP**
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Email: tom@hbsslaw.com
Email: davidn@hbsslaw.com

Bruce E. Gerstein / by permission

_____

Bruce E. Gerstein
Noah Silverman

*For Defendant Teikoku:*

_____

David S. Elkins
Joseph A. Meckes
Noriyuki Shimoda
**SQUIRE PATTON BOGGS (US) LLP**
1801 Page Mill Drive, Suite 110
Palo Alto, CA 94304
Telephone: (650) 856-6500
Facsimile: (650) 843-8777
Email: david.elkins@squirepb.com
      joseph.meckes@squirepb.com
      noriyuki.shimoda@squirepb.com

*Co-Lead Counsel for Defendant's Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd.*

12

Ephraim R. Gerstein
**GARWIN GERSTEIN & FISHER LLP**
88 Pine Street, 10th Floor
New York, NY 10005
Telephone: (212) 398-0055
Facsimile: (212) 764-6620
Email: bgerstein@garwingerstein.com
Email: nsilverman@garwingerstein.com

*Co-Lead Counsel for the*
*Direct Purchaser Class*

**For Settlement Administrator:**

William Wickersham, Vice President Business
Development & Client Relations
RG/2 Claims Administration, LLC
30 S. 17th Street
Philadelphia, PA  19103

13

010-8571-3543/1/AMERICAS