[Submitting Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | Master File No. 14-md-02521-WHO |
| | MDL No. 2521 |
| THIS DOCUMENT RELATES TO: END-PAYOR ACTIONS | **END-PAYOR PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS, PRELIMINARY APPROVAL OF PLAN OF ALLOCATION, AND APPROVAL OF NOTICE AND CLAIMS PLAN** |
| | Date: April 25, 2018 Time: 2:00 p.m. Courtroom: 2, 17th Floor Before: Hon. William H. Orrick |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ...................................................................... 1

I.      INTRODUCTION ..................................................................................... 1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .............................. 1

III.    THE SETTLEMENTS .................................................................................. 4

IV.     DISTRIBUTION OF NOTICE OF THE SETTLEMENTS TO THE END-PAYOR
        CLASS IS WARRANTED ............................................................................. 5

        A.      The Legal Standard ...................................................................... 5

        B.      The Court Should Preliminarily Approve the Settlements .................................. 6

V.      THE NOTICE AND CLAIMS PLAN IS ADEQUATE AND SATISFIES THE
        REQUIREMENTS OF RULE 23 AND DUE PROCESS ........................................... 10

        A.      The Proposed Manner and Forms of Notice Comply with Rule 23 ................... 10

        B.      A Second Opportunity to Opt Out of the Class Is Not Necessary .................... 12

        C.      The Proposed Claim Forms are Adequate ........................................... 13

        D.      KCC Is Well-Qualified to Serve as Notice and Claims Administrator .............. 14

VI.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE
        AND SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ....... 15

VII.    CONCLUSION ....................................................................................... 16

i

# TABLE OF CONTENTS

**Cases**

*Alvarez v. Farmers Ins. Exchange*
  2017 WL 2214585 (N.D. Cal. Jan. 18, 2017)..................................................................9

*Boyd v. Avanquest N. Am. Inc.*
  2015 WL 4396137 (N.D. Cal. July 15, 2015)..................................................................6

*Briseno v. ConAgra Foods, Inc.*
  844 F.3d 1121 (9th Cir. 2017) ....................................................................................10

*Brown v. Hain Celestial Group, Inc.*
  2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ................................................................7

*Bui v. Sprint Corp.*
  2016 WL 727163 (E.D. Cal. Feb. 24, 2016)................................................................10

*Byrne v. Santa Barbara Hospitality Servs., Inc.*
  2017 WL 5035366 (C.D. Cal. Oct. 30, 2017)..............................................................6

*Edwards v. Nat'l Milk Producers Federation*
  2017 WL 3623734 (N.D. Cal. June 26, 2017) ........................................................8, 16

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ................................................................................5, 6, 7

*In re Animation Workers Antitrust Litig.*
  2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) ..............................................................9

*In re High-Tech Empl. Antitrust Litig.*
  2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ..............................................................6

*In re High-Tech Employee Antitrust Litig.*
  2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ..............................................................8

*In re Lupron Mktg. & Sales Practices Litig.*
  228 F.R.D. 75 (D. Mass. 2005)....................................................................................11

*In re Optical Disk Drive Prods. Antitrust Litig.*
  2016 WL 7364803 (N.D. Cal. Dec. 19, 2016)............................................................14

*In re Tableware Antitrust Litig.*
  484 F.Supp.2d 1078 (N.D. Cal. 2007) ........................................................................6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
   2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ........................................................ 16

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*
   2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) ........................................................ 16

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*
   2016 WL 721680 (N.D. Cal. Jan. 28, 2016) .......................................................... 14

*In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig.*
   2016 WL 4010049 (N.D. Cal. July 26, 2016) ........................................................ 6

*Jaffe v. Morgan Stanley & Co., Inc.*
   2008 WL 346417 (N.D. Cal. Feb. 7, 2008) .......................................................... 14

*Low v. Trump University*
   881 F.3d 1111 (9th Cir. 2018) .............................................................................. 13

*Newton v. American Debt Services, Inc.*
   2016 WL 7743686 (N.D. Cal. Jan. 15, 2016) ........................................................ 9

*Officers for Justice v. Civil Serv. Comm'n*
   688 F.2d 615 (9th Cir. 1982) ................................................................................ 13

*Rieckborn v. Velti PLC*
   2015 WL 468329 (N.D. Cal. Feb. 3, 2015) .......................................................... 15

*Rodriguez v. West Publishing Corp.*
   563 F.3d 948 (9th Cir. 2009) ............................................................................. 6, 7

*Spann v. J.C. Penney Corp.*
   314 F.R.D. 312 (C.D. Cal. 2016) ......................................................................... 11

*State of California v. eBay, Inc.*
   2014 WL 4273888 (N.D. Cal. 2014) ...................................................................... 6

*Sullivan v. DB Investments, Inc.*
   667 F.3d 273 (3d Cir. 2011) .................................................................................. 5

*Torres v. Pick-A-Part Auto Wrecking*
   2018 WL 306287 (E.D. Cal. Jan. 5, 2018) ............................................................ 9

*Wellens v. Daiichi Sankyo, Inc.*
   2015 WL 10090564 (N.D. Cal. Oct. 16, 2015) ...................................................... 7

iii

**Rules**

Fed. R. Civ. P. 23(e) ............................................................................................... passim

**Statutes**

*Newberg on Class Actions* § 11.41 (4th ed. 2002) ........................................................ 6

END-PAYOR PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS, PRELIMINARY APPROVAL OF PLAN OF ALLOCATION, AND APPROVAL OF NOTICE AND CLAIMS PLAN
CASE NO. 14-MD-02521-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that the End-Payor Plaintiffs ("Plaintiffs" or "EPPs")[1] will and do hereby move the Court for entry of an Order:

(1) preliminarily approving the settlement agreements (the "Settlements") between Plaintiffs, on behalf of themselves and the End-Payor Class, and (a) defendant Endo Pharmaceuticals Inc. ("Endo"); (b) defendants Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. (together, "Teikoku"); (c) defendants Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., and Actavis plc (together, "Watson" together with Endo and Teikoku, "Defendants")[2];

(2) approving the plan for distributing notice of the Settlements to, and receiving claims from, the members of the End-Payor Class; and

(3) preliminarily approving the plan of allocation of the settlement funds among the members of the End-Payor Class.

This Motion is supported by the accompanying Memorandum of Law, the Declaration of Dena C. Sharp ("Sharp Decl.") and exhibits thereto, the Lidoderm Settlement Allocation Declaration of Dr. Hal J. Singer ("Singer Decl."), the Declaration of Carla Peak ("Peak Decl."), and the accompanying [Proposed] Order Preliminarily Approving of Settlements, Approving Notice and Claims Plan, and Approving Plan of Allocation.

---

[1] Allied Services Division Welfare Fund, City of Providence, International Union of Operating Engineers Local 49 Health and Welfare Fund, International Union of Operating Engineers Local 132 Health and Welfare Fund, Iron Workers District Council of New England Welfare Fund, NECA-IBEW Welfare Trust Fund, United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund, Welfare Plan of the International Union of Operating Engineers Locals 137, 137A, 137B, 137C, 137R, and Ottavio Gallotto.

[2] The Endo, Teikoku, and Watson settlement agreements are attached as Exhibits 1-3 respectively to the Sharp Declaration.  Unless otherwise noted, references to "Exhibits" or "Ex." refer to the exhibits to the Settlement Agreements, which—other than the Stipulated Judgments with Endo—are identical for each of the agreements, with the exception of the settlement amounts and the dates of payment.

1    Plaintiffs have conferred with counsel for Defendants, and this motion is unopposed.

2    The Court is familiar with the facts of this case and EPPs do not believe that a hearing is

3 necessary.  If, however, the Court wishes to hold a hearing, EPPs respectfully request that the

4 hearing be held at the Court's earliest convenience.

END-PAYOR PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS, PRELIMINARY APPROVAL OF PLAN OF ALLOCATION, AND APPROVAL OF NOTICE AND CLAIMS PLAN
CASE NO. 14-MD-02521-WHO

**MEMORANDUM OF LAW**

**I.     INTRODUCTION**

Shortly before trial was scheduled to begin, End-Payor Plaintiffs, on behalf of themselves and the members of the certified End-Payor Class, reached separate settlements with defendants Endo, Teikoku, and Watson.  End-Payor Plaintiffs respectfully request that the Court preliminarily approve the Settlements and the proposed Plan of Allocation and approve the plan for distributing notice of the Settlements to the End-Payor Class.

Defendants will collectively pay $104.75 million in cash—more than 40% of Plaintiffs' best-case damages estimate—to settle the claims of the End-Payor Class.  In addition to providing substantial relief to the End-Payor Class, the Settlements avoid the risk of an adverse trial verdict or a reversal on appeal.  The Settlements were negotiated by counsel experienced in antitrust class actions and the negotiations were overseen by Chief Magistrate Judge Spero.  The Settlements have no obvious deficiencies and are well within the range of final approval.

The proposed plan for distributing notice of the Settlements to the End-Payor Class is substantially like the notice plan the Court approved at class certification and will provide the best practicable notice.  Notice to third-party payors ("TPPs") will be given by direct mail and consumers will receive publication notice.  The forms that class members will submit to claim a share of the settlement payments are straightforward and easy to complete.  The proposed Plan of Allocation is reasonable and fair.  It divides the settlement between consumers and third-party payors based on each group's share of the classwide damages and, within each group, eligible claimants will be paid on a *pro rata* basis.  EPPs propose that Kurtzman Carson Consultants ("KCC")—the nationally-recognized class action administration firm that developed and successfully carried out the class certification notice plan—administer the notice, claims, and settlement fund distribution.

**II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The first end-payor complaint in this multidistrict litigation was filed on November 12, 2013.  *See United Food and Commercial Workers Local 1776 v. Teikoku Pharma USA, Inc., et al.*, 5:13-cv-05247 (N.D. Cal.).  Other complaints followed in this District and other districts.

1

The Judicial Panel on Multidistrict Litigation centralized all pending Lidoderm actions before this Court.  ECF 1.  On May 23, 2014, the Court appointed Girard Gibbs LLP, Heins Mills & Olson, P.L.C., and Cohen Milstein Sellers & Toll PLLC as Interim Co-Lead Counsel, and Joseph Saveri Law Firm, Inc. as Interim Liaison Counsel.  ECF 63.

     *Motions to Dismiss*. Following transfer of all pending Lidoderm actions to this Court, the Court consolidated the end-payor actions.  EPPs filed a consolidated amended complaint, which Defendants moved to dismiss.  ECFs 72, 95.  On November 17, 2014, the Court largely denied Defendants' motion to dismiss and upheld EPPs' claims under the laws of seventeen states.  ECF 117.

     *Discovery*. The parties began initial discovery while Defendants' motion to dismiss was pending and commenced with full discovery once the Court denied Defendants' motion. Defendants ultimately produced over 3.3 million pages of documents, with third parties producing thousands of additional pages of documents and data.  EPPs—along with the other plaintiffs—litigated numerous complex privilege issues in pursuit of their claims.  *E.g.* ECFs 227, 269, 276, 345, 359, 364, 377, 398, 399, 401, 402, and 427 (Joint Discovery Letter Briefs); ECFs 536 and 679 (at-issue waiver order and Ninth Circuit denial of petition for interlocutory review); ECFs 367 and 484 (common interest order and Ninth Circuit denial of petition for interlocutory review).  Plaintiffs deposed 32 fact witnesses, including current and former employees of Defendants as well as third parties.

     *Class Certification*. In fall 2016, EPPs moved for certification of the End-Payor Class. On February 21, 2017, the Court granted EPPs' motion and denied Defendants' *Daubert* challenges to EPPs' experts.  ECF 670.  The Court appointed Girard Gibbs, Heins Mills, and Cohen Milstein as Co-Lead Counsel for the End-Payor Class, and Saveri Law as Liaison Class Counsel.  Defendants filed a petition with the Ninth Circuit seeking interlocutory review under Federal Rule of Civil Procedure 23(f), which EPPs opposed and the Ninth Circuit denied.  ECF 756.  In summer 2017, EPPs distributed notice in accordance with the Court-approved notice plan, which used a combination of direct and publication notice to reach virtually all third-party payor class members and approximately 80% of consumer class members.  *See* Declaration of

Carla Peak Regarding Distribution of Notice to the End-Payor Class, ECF 872 ("Peak Class Notice Decl."); *see also* ECF 751 (approving EPPs' proposed method of distributing notice). Several large insurers opted out of the End-Payor Class.  No consumers opted out of the End-Payor Class.

      ***Expert Work, Summary Judgment and Trial Preparations***. The trial in this case was initially scheduled for December 2017 and later set to begin on February 23, 2018.  In preparation for trial, the parties exchanged merits expert reports on a range of topics including damages, patent issues, when generic entry would have been expected to occur absent the settlement, and Watson's manufacturing capabilities.  EPPs' damages expert calculated the maximum single damages for the End-Payor Class as $229 million (ECF 776-25 (Singer Reply Rpt.) at 40).  Defendants' expert calculated the maximum damages for the End-Payor Class as $5.6 million, assuming plaintiffs proved that the patents would not prevent generic entry. (ECF 778-5 (Bell Rpt.) at 69).

      In June 2017, after expert depositions had concluded, the parties filed motions for summary judgment and *Daubert* motions to exclude various experts from testifying at trial. Defendants sought summary judgment on all Plaintiffs' claims on the issue of causation, while Plaintiffs sought partial summary judgment on the relevant market and the "contract, combination, or conspiracy" prong of their antitrust claims.  ECFs 775, 786.  On November 3, 2017, after oral argument, the Court denied Defendants' motion, granted Plaintiffs' motions, and granted in part and denied in part the parties' *Daubert* motions.  ECF 900.  Defendants later moved unsuccessfully for reconsideration of the ruling concerning the causation standard that would apply at trial.  ECF 978.  The parties exchanged their initial proposed pretrial materials—including exhibit lists, witness lists, deposition designations, jury instructions, verdict forms—on November 6, 2017.  After protracted negotiations, in early December the parties filed their agreed-upon and disputed pretrial submissions.  ECFs 929 and 933.

      ***Settlements***. Certain of the parties participated in mediation before the Hon. Layn Phillips in May 2017 but made only limited progress.  Thereafter settlement negotiations took place under the auspices of Chief Magistrate Judge Joseph C. Spero.  EPPs reached an

agreement in principle with Teikoku following an initial settlement conference in December 2017, with Watson following a January settlement conference, and with Endo following a February settlement conference, one week before jury selection.

## III.   THE SETTLEMENTS

Defendants will collectively pay $104.75 million in cash to settle the claims of the End-Payor Class in the seventeen class states—*i.e.* the states included in the definition of the End-Payor Class.  Of the $104.75 million, Teikoku will pay $23.75 million, Watson will pay $41 million, and Endo will pay $40 million.  In exchange, Defendants will receive releases from the End-Payor Class members.  The Class members will only release their claims related to Defendants' reverse payment agreement and the releases are limited to claims in the class states. The EPPs' consolidated complaint and the separate complaint of the Government Employees Health Association (which has rejoined the End-Payor Class) will be dismissed with prejudice.

Under the terms of the proposed Settlements, Teikoku and Watson will pay their entire settlement amounts shortly after the Court grants preliminary approval.  Endo will pay its settlement amount in three installments.  It will pay $20 million shortly after the Court grants preliminary approval, another $10 million by February 15, 2019, and the final $10 million by February 15, 2020.  Endo's payment schedule was negotiated with the assistance of Magistrate Judge Spero and allows EPPs to maximize the recovery from Endo.  The agreement with Endo includes terms that protect the End-Payor Class if Endo does not make its second or third payments on time.  Endo has signed two Stipulated Judgments (attached as Exhibit H and I to the Endo Settlement Agreement), which Class Counsel will hold in escrow but may move to have entered by the Court in the event Endo fails to pay.  Endo may oppose such a motion only to the extent it has a good-faith defense based on EPPs' breach of the settlement agreement or exhibits.  *See* Endo Settlement Agreement, ¶¶ 6(c)-(d).

In connection with the Settlements, certain large insurers (referred to as "Separately Represented End-Payors" or "SREPs") that had opted out of the End-Payor Class withdrew their opt-out requests and rejoined the End-Payor Class.  *See* ECF 997 (granting stipulation withdrawing opt-out requests).  Securing the SREPs' agreement to opt back into the End-Payor

Class increased EPPs' negotiating leverage with defendants, thereby maximizing the recovery. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 310 (3d Cir. 2011) ("achieving global peace is a valid, and valuable, incentive to class action settlements").  To encourage the SREPs to rejoin the End-Payor Class, EPPs have agreed to expedite payment procedure for the SREPs, who have comprehensive data available to support their claims.  The SREPs and their ASO clients account for at least 33.5% of the purchases by third-party payors.   Sharp Decl., ¶ 9.  The SREPs (which include the self-funded clients for which they process prescription drug claims) will submit their claims before the final approval hearing in the same manner and format as all other third-party payor class members.  Once the Settlements are approved and any appeals resolved, the SREPs will receive an initial distribution of 32.5% of the portion of settlement proceeds allocated to pay TPP claims.  Ex. A1 at ¶¶ 1(g) & 2(b).

        After the remainder of the End-Payor Class has submitted claims, and the Claims Administrator has determined the allocation of the Settlement Funds among the eligible claimants, there will be a "true-up" of the SREPs' claims.  If the initial claims payment exceeded the SREPs' final allocation amount, then the SREPs will refund the difference to the Settlement Fund.  *Id.* at ¶ 4(h)(i).  If the initial claims payment is less than the SREPs' final allocation amount, then the difference will be paid to the SREPs when the rest of the End-Payor Class receives their payments.  *Id.* at ¶ 4(h)(ii).  In short, although SREPs will receive an early payment on their claims, they will ultimately receive only their *pro rata* share of the Settlement Fund and the initial payments will not delay or otherwise impact the payments to the rest of the End-Payor Class.

## IV.    DISTRIBUTION OF NOTICE OF THE SETTLEMENTS TO THE END-PAYOR CLASS IS WARRANTED

### A.    The Legal Standard

        Federal Rule of Civil Procedure 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  The district court's role in evaluating a proposed settlement "may be limited to the extent necessary to reach a reasoned judgment that the

5

agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Hanlon*, 150 F.3d at 1027).

Courts in this District have granted "preliminary approval" "if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *State of California v. eBay, Inc.*, 2014 WL 4273888, at *5 (N.D. Cal. 2014) (quoting *In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007)).  Under the revisions to Rule 23 set to take effect December 1, 2018, a court may direct notice of a proposed settlement to the class where the parties have shown "that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)." PROPOSED AMENDMENTS TO THE FEDERAL RULES OF CIVIL PROCEDURE (2017) at 11;[3] *see also Boyd v. Avanquest N. Am. Inc.*, 2015 WL 4396137, at *2 (N.D. Cal. July 15, 2015) (considering the final approval factors at preliminary approval stage).  The Settlements satisfy either test and distribution of notice to the members of the End-Payor Class is warranted.

### B.     The Court Should Preliminarily Approve the Settlements

The Settlements are entitled to "an initial presumption of fairness" because they resulted from arm's length negotiations among experienced counsel.  *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig.*, 2016 WL 4010049, at *14 (N.D. Cal. July 26, 2016) (quoting *In re High-Tech Empl. Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) and *Newberg on Class Actions* § 11.41 (4th ed. 2002)); *see also Byrne v. Santa Barbara Hospitality Servs., Inc.*, 2017 WL 5035366, at *9 (C.D. Cal. Oct. 30, 2017) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." (citation omitted)).  Class Counsel are nationally-

---

[3] *Available at* https://www.fjc.gov/sites/default/files/2017/Rules-Amendments-2018-Supreme-Court-Transmittal.pdf.

recognized antitrust litigators with experience litigating reverse payment cases and each believes that the Settlements are fair, reasonable, and in the best interests of the End-Payor Class.  Sharp Decl., ¶ 6; *see also* ECF 670 at 29 n.24 (appointing Girard Gibbs, Heins Mills, and Cohen Milstein as Class Counsel and explaining that "[t]hese firms have ably and vigorously litigated this case, and nothing has occurred to undermine my initial determination of their experience and adequacy"); ECF 46-2 (firm resumes).  In addition, the Settlements were the result of months of negotiations overseen by experienced mediators: first, retired Judge Phillips and then by Chief Magistrate Judge Spero.  "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Wellens v. Daiichi Sankyo, Inc.*, 2015 WL 10090564, at *2 (N.D. Cal. Oct. 16, 2015); *see also Brown v. Hain Celestial Group, Inc.*, 2016 WL 631880, at *6 (N.D. Cal. Feb. 17, 2016) (granting final approval of settlement "reached after an extensive mediation process, including the final mediation with Magistrate Judge Spero").

The terms of the Settlements are also likely to warrant final approval as fair, reasonable, and adequate.  In deciding whether to grant final approval, courts balance "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.  The *Hanlon* factors weigh in favor of approval.[4]

Defendants will pay a total of $104.75 million in cash to settle EPPs' claims.  The End-Payor Class will recover 46% of EPPs' most aggressive single damages estimate they would have sought at trial ($229 million).  *See Rodriguez*, 563 F.3d at 964-65 (antitrust settlement for

---

[4] Because no government entity has participated in this litigation and class members have not yet had an opportunity to respond to the Settlements, those factors are inapplicable at this stage. But, the SREPs, some of the largest class members, have rejoined the class to participate in the settlements, suggesting that this factor also weighs in favor of preliminary approval.

30% of plaintiffs' estimated damages was "fair and reasonable no matter how you slice it");
*Edwards v. Nat'l Milk Producers Federation*, 2017 WL 3623734, at *7 (N.D. Cal. June 26,
2017) (that settlement was 30% of estimated indirect purchaser damages "strongly weighs in
favor of granting final approval"); *In re High-Tech Employee Antitrust Litig.*, 2015 WL
5159441, at *4 (N.D. Cal. Sept. 2, 2015) (approving total settlements that were 14% of the class
damages estimate, and noting that "District courts in the Ninth Circuit routinely approve
settlements with much larger differences between the settlement amount and estimated
damages.").

   While the size of the Settlements reflects the strength of EPPs' case, there were
substantial risks that could have prevented the class from recovering anything had the case
proceeded to trial.  To prevail at trial, EPPs would have been required to prove not only that
Defendants entered into an unlawful pay-for-delay agreement, but also that the agreement (as
opposed to Endo's and Teikoku's patents or Watson's manufacturing problems) delayed generic
competition and that End-Payor Plaintiffs were overcharged as a result.  The same causation
issues were fatal in the *Nexium* pay-for-delay case, where the plaintiffs obtained a liability
verdict from a jury but lost on the issue of causation.  *See In re: Nexium (Esomeprazole)
Antitrust Litig.*, No. 1:12-md-02409-WGY, ECF No. 1383 (D. Mass. Dec. 5, 2014) (verdict
form).

   Moreover, this case involved numerous complex issues of law on which courts have
diverged and the Ninth Circuit has not yet spoken.  Had End-Payor Plaintiffs won at trial,
Defendants were poised to appeal numerous important decisions of the Court, including the
Court's certification of the End-Payor Class, its decision concerning the relevant market, and its
order regarding the appropriate standard for establishing causation at trial.  *See* ECF 929 at 25
(reserving appellate rights as to class certification); *id.* at 8 n.5 (same as to market definition);
ECF 948 at 2 (arguing that the Court's causation standard "would create an appellate issue that
would permeate the entirety of any liability verdict").  Settlement avoids these risks while
providing substantial relief to the End-Payor Class.  And having reached agreement with each
Defendant shortly before trial and after four years of litigation—including motions to dismiss,

8

END-PAYOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS, PRELIMINARY
APPROVAL OF PLAN OF ALLOCATION, AND APPROVAL OF NOTICE AND CLAIMS PLAN
CASE NO. 14-MD-02521-WHO

class certification, summary judgment and *Daubert* motions, completion of fact and expert discovery, and trial preparation to the point of jury selection—"the parties came to the negotiating table with adequate knowledge of the strengths and weaknesses of their positions." *Newton v. American Debt Services, Inc.*, 2016 WL 7743686, at *3 (N.D. Cal. Jan. 15, 2016).

The Settlements also satisfy the additional factors that courts in this District have traditionally used at the preliminary approval stage.   As detailed above, the Settlements are well within the range of final approval, were the result of serious, non-collusive negotiations, and have no obvious deficiencies (such as a reversion clause).   *E.g., Torres v. Pick-A-Part Auto Wrecking*, 2018 WL 306287, at *3-4 (E.D. Cal. Jan. 5, 2018) (no obvious deficiencies where class members received cash recovery and release narrowly tailored to claims).   The Settlements do not improperly provide preferential treatment to the Class Representatives or any segments of the End-Payor Class.   As explained in Section VI, each class member will receive a *pro rata* share of the settlement proceeds.   And EPPs' request for payment of $10,000 incentive awards to each of the nine Class Representatives ($90,000 total, which is .086% of total value of the Settlements) is consistent with similar service awards regularly approved in class actions.   *E.g. Alvarez v. Farmers Ins. Exchange*, 2017 WL 2214585, at *1 (N.D. Cal. Jan. 18, 2017) (approving nine $10,000 service awards that in the aggregate were 1.8% of the settlement value); *In re Animation Workers Antitrust Litig.*, 2016 WL 6663005, at *9 (N.D. Cal. Nov. 11, 2016) (approving $10,000 service awards in a case with $18.95 million settlement fund).   Nor does the proposal to provide SREPs with an initial payment of their claims improperly benefit the SREPs at the expense of the rest of the End-Payor Class.   *See In re Flonase Antitrust Litig.*, No. 2:08-cv-03301-AB (E.D. Pa.), ECF 566 (plan of allocation including initial claims payment) and ECF 606 (order approving plan of allocation).   The SREPs are large insurers (and their self-funded plans) that will receive a large portion of the settlement proceeds (*see* Sharp Decl., ¶ 9 (summarizing SREPs' share of class purchases)) and there is no reason to delay the distribution of a portion of their reasonably-estimated claim value.   And SREPs, like all End-Payor Class members, will only receive their *pro rata* share of the settlement fund once all claims have been received and adjudicated.

END-PAYOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS, PRELIMINARY
APPROVAL OF PLAN OF ALLOCATION, AND APPROVAL OF NOTICE AND CLAIMS PLAN
CASE NO. 14-MD-02521-WHO

In short, the Settlements are well within the range of final approval and should be preliminarily approved.

## V.   THE NOTICE AND CLAIMS PLAN IS ADEQUATE AND SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

### A.   The Proposed Manner and Forms of Notice Comply with Rule 23

Rule 23(e)(1) requires that notice of a class action settlement be sent "in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). "[N]either Rule 23 nor the Due Process Clause requires actual notice to each individual class member." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017). EPPs propose that notice of the Settlements be distributed to the End-Payor Class in substantially the same manner as notice of the Court's class certification order, which the Court previously concluded satisfied the requirement of Rule 23(c)(2) that notice be "the best notice that is practicable under the circumstances." ECF 751. EPPs' proposed plan for distributing notice will reach End-Payor Class members two ways.

First, the comprehensive, ten-page Long-Form Notice will be directly mailed to TPP members of the End-Payor Class and a Summary Notice emailed to 1,000 TPPs for whom KCC—EPPs' proposed notice and claims administrator—has email addresses. *See Bui v. Sprint Corp.*, No. 2:14-CV-02461-TLN-AC, 2016 WL 727163, at *9 (E.D. Cal. Feb. 24, 2016) (approving a method of notice "via first class U.S. mail or its equivalent"). KCC will utilize the same proprietary database that it used to distribute notice of the class certification order and will obtain updated mailing information for any mail returned as undeliverable. Peak Decl., ¶ 9. To extend the reach of the Notice Plan for TPPs, a Summary Notice will be published in the trade journal HR Magazine (circulation to over 285,000 persons and entities), websites SHRM.org (over 6.3 million views per month) and ThinkAdvisor.com/LifeHealth (415,000 views per month), and electronic newsletters for LifeHealth Pro Daily (83,000 subscribers) and HR Daily (290,000 subscribers). *Id.*, ¶¶ 12-14.

Second, the more than one million consumers who are members of the End-Payor Class will receive publication notice by way of a Summary Notice. *Briseno*, 844 F.3d at 1129

("Courts have routinely held that notice by publication in a periodical, on a website, or even at an appropriate physical location is sufficient to satisfy due process.").  The Summary Notice will be published in two magazines selected to increase the likelihood that it will be read by consumers who are part of the End-Payor Class:  People and Good Housekeeping.  Peak Decl., ¶¶ 22-24.  These magazines are widely circulated, especially among the population of consumers likely to have purchased brand or generic Lidoderm.  *Id*.  Additionally, the EPPs' plan includes targeted internet banner ads designed to reach both TPP and consumer members of the End-Payor Class.  KCC will generate over 155 million internet impressions over leading networks, including on Facebook, the Google Display Network, and the Yahoo! ad network.  *Id*., ¶ 29.  The banner ads will include a link to a dedicated case website, which will provide the key information regarding the Settlements and advise End-Payor Class members their options and relevant deadlines.  KCC will also maintain call center services that End-Payor Class members can use to obtain information about the case and their options.

Other courts have consistently approved similar notice plans in class actions brought by end-purchasers of pharmaceuticals.  *See In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 1:14-md-02503-DJC (D. Mass.), ECF 532 at 20-21 (motion) and ECFs 555 and 1541 (ordering approving notice plan); *In re Aggrenox Antitrust Litig.*, 3:14-md-02516-SRU (D. Ct.), ECF 748-5 (notice plan) and ECF 766 (order approving notice plan);  *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 1:12-md-2409 (D. Mass.), ECF 1526 (motion) and ECFs 1540 and 1541 (orders approving notice plan); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 84-85 (D. Mass. 2005) (approving notice plan that distributed direct mail to TPPs and publication notice to the entirety of the class).  Under EPPs' proposed plan, notice is expected to reach virtually all TPP class members and approximately 80% of consumer class members an average of 2.5 times.  Peak Decl., ¶ 32.  Courts have repeatedly found that notice plans with similar (or less extensive) reach satisfy Rule 23(c)(2)(B).  *See, e.g.*, *Nexium*, ECF 466 at 5 (notice program designed to reach 80% of end-payor purchasers); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) (approving notice plan designed to reach 75% of class members an average of 2.3 times).

The proposed Long-Form and Summary Notices (Exs. D-F) are modeled on the notices used at the class certification stage, which were in turn modeled on the Federal Judicial Center's template notice. The first page of the Long-Form Notice concisely describes the litigation and the monetary compensation provided under the Settlements and includes a chart that explains class members' options and the deadlines to submit a claim form, object, or opt out. The second page provides the complete definition of the End-Payor Class. The remainder of the Long-Form Notice provides more detailed information about the Settlements and class members' options, advises End-Payor Class members that they may appear in the litigation through their own attorney, and includes contact information for KCC and for Co-Lead Counsel.

The Summary Notices (one each for TPPs and consumers) use large, bold font to advise readers that they may be a part of the End-Payor Class and provide all necessary information: the basic claims in the litigation, the terms of the Settlements, and the deadline to submit claims and object. In addition, the Summary Notices provide the contact information for KCC and the notice website where End-Payor Class members can obtain the Long-Form Notice and additional information concerning the Settlements. The notice website will provide the complete End-Payor Class definition and exclusions and the claim forms will include questions and information that will allow each entity or individual to determine whether they are in the End-Payor Class.

Both the Long-Form Notice and Summary Notices disclose the maximum amounts of attorneys' fees, expenses, and service awards that EPPs will request. EPPs will file their motion for attorneys' fees, expenses, and service awards once the notice program is complete (or nearly complete) and at least 21 days before the deadline for class members to submit objections. The Long-Form Notice tells class members how to obtain a copy of EPPs' motion once it is filed.

### B.        A Second Opportunity to Opt Out of the Class Is Not Necessary

All members of the End-Payor Class were afforded an opportunity to opt out of the Class in connection with the notice of class certification. A second opportunity to opt out at the settlement stage is unusual and impedes settlement finality and is therefore not required. *See* Fed. R. Civ. Proc. 23(e)(4) (court "may" require second opportunity to opt out

before granting final approval); *Low v. Trump University*, 881 F.3d 1111, 1121 (9th Cir. 2018) (holding that Ninth Circuit "precedent squarely forecloses" the argument that due process requires a second opportunity to opt out and describing second opt out periods as "unusual"); *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 635 (9th Cir. 1982) ("[The objector]'s rights are protected by the mechanism provided in the rule: approval by the district court after notice to the class and a fairness hearing at which dissenters can voice their objections, and the availability of review on appeal.  Moreover, to hold that due process requires a second opportunity to opt out after the terms of the settlement have been disclosed to the class would impede the settlement process so favored in the law.").

The parties agree, subject to the Court's discretion, that no further opt-out opportunity is warranted here.  Several TPPs exercised their opt out rights at the class certification stage; no consumers opted out.  ECF 997.  Given the substantial recoveries the proposed Settlements provide, Class members' recent opportunity to opt out, and that the release of claims in the Settlements are no broader than the claims certified, there is no reason to require a further opt-out request now, upon the resolution of the litigation.  *E.g.*, *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 1:14-md-02503-DJC (D. Mass.), ECF 1526 (motion) and ECFs 1540 and 1541 (approving notice plan with no additional opt out opportunity).  If the Court requires a second opt-out opportunity, the Settlement Agreements provide that Defendants' settlement contributions will be reduced by an amount equal to the proportion of the purchases of the End-Payor Class members that opts out, if that amount exceeds certain thresholds.  And if more than a specified percentage of the End-Payor Class (the percentage trigger has been provisionally filed under seal) opts out of the Class, Defendants will have the right to terminate their respective Settlements.  The proposed Notices (Exs. D-F) assume no additional opt-out opportunity.  If the Court allows a second opt-out, EPPs will revise the notice accordingly.

### C.    The Proposed Claim Forms are Adequate

To receive a payment under the Settlements, class members must submit a claim form. The claim forms (Exs. A2 and A3) are straightforward, easy to understand, provide class

---

13

1    members with all the information they need to submit a claim, and should be approved as fair,

2    reasonable, and adequate.

3          Both the consumer and TPP claim forms require class members to provide their name,

4    contact information, and basic information concerning their Lidoderm purchases.  *See In re:*

5    *Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 721680, at *21 n.26 (N.D. Cal. Jan. 28,

6    2016) (requiring similar information).  Both forms also provide the states and timeframe in

7    which purchases must have been made to qualify for payment under the Settlements and require

8    claimants to certify, under penalty of perjury, that the information provided is accurate to the

9    best of the claimant's knowledge.  *See In re Optical Disk Drive Prods. Antitrust Litig.*, 2016

10   WL 7364803, at *15 (N.D. Cal. Dec. 19, 2016) ("courts in this district have required similar

11   attestations [in claims forms] that the information provided is accurate").  The claim forms also

12   inform class members that "failure to complete and submit a Claim Form, in the manner and

13   time specified, shall constitute a waiver of any right to obtain any share of the Settlement

14   Payment."  *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *12 (N.D. Cal. Feb. 7,

15   2008).  Both TPPs and consumers will also be able to submit claims online, if they choose to do

16   so, or by mailing their claim form to the Claims Administrator.

17         EPPs request that the Court approve the claim forms as fair, reasonable, and adequate.

18   **D.     KCC Is Well-Qualified to Serve as Notice and Claims Administrator**

19         Plaintiffs have selected KCC to distribute notice and serve as Notice and Claims

20   Administrator for the Settlement.  During the class certification phase, EPPs received proposals

21   from eight well-qualified and experienced notice and claims administrators and selected KCC to

22   serve as notice administrator at that time.  Declaration of Dena Sharp, ECF 741-1, ¶ 5.  After

23   being appointed by the Court to serve as notice administrator, KCC timely and successfully

24   implemented the Court-approved class certification notice plan and is prepared to do the same

25   with respect to distributing notice of the Settlements to the End-Payor Class.

26         KCC is also well-positioned to receive, process, and verify claims submitted by class

27   members.  KCC has served as claims administrator in numerous antitrust class actions,

28   including cases involving pharmaceutical products, such as *In re Asacol Antitrust Litigation*,

---

14

No. 1:15-cv-12730 (D. Mass.) (end-payor notice administrator and direct purchaser claims administrator); *In re: Skelaxin (Metaxalone) Antitrust Litigation*, No. 1:12-md-2343 (E.D. Tenn.) (notice and claims administrator); *In re Lithium Ion Batteries Indirect Antitrust Litigation*, No. 13-md-02420 (N.D. Cal.) (claims administrator); *In re Domestic Drywall Antitrust Litigation*, No. 2:13-md-02437 (E.D. Pa.) (claims administrator). Peak Decl., ¶ 5 (listing cases). EPPs also propose the KCC's escrow services affiliate—Computershare Trust Company, N.A., which has extensive experience holding and distributing settlement funds— serve as Escrow Agent.

EPPs therefore request that KCC be appointed as Notice and Claims Administrator and Computershare Trust Company, N.A. be appointed as Escrow Agent.

## VI.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

"Approval of a plan of allocation of settlement proceeds in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Rieckborn v. Velti PLC*, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (citation omitted). "[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id*. (citation omitted). EPPs' proposed Plan of Allocation (Ex. A) satisfies these criteria.

EPPs' economic expert—Dr. Hal Singer—determined that approximately 75% of the damages in this case were borne by TPPs (Singer Decl., ¶ 14), and EPPs thus propose that 75% of the settlement fund be allocated to the pool of TPP claimants and 25% of the settlement fund be allocated to the pool of consumer claimants. Given the size of the settlement fund in this case and the anticipated consumer claims rates, it is likely that the allocation of 25% of the settlement fund ($26.19 million, before fees, expenses and class representative awards) to consumers will be more than enough to pay consumers' average per box overcharge damages in full. *Id*. at 39. Should this occur, each consumer claimant will be capped at 100% of his or her damages and any excess amounts in the consumer pool will flow to the TPP pool. In the unlikely event that the settlement fund is large enough to pay both consumer claimants and TPP

15

claimants their damages in full, any excess will be re-allocated 75/25 among the TPPs and consumers.

Within the consumer and TPP pools, the settlement proceeds will be allocated to class members on a *pro rata* basis. *See In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 9266493, at *8 (N.D. Cal. Dec. 17, 2015) (use of *pro rata* allocation plan "has frequently been determined to be fair, adequate, and reasonable in comparable cases") (collecting cases); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *4 (N.D. Cal. Dec. 27, 2011) ("a *pro-rata* allocation has been used in many antitrust cases including in this District"). For consumers, the allocation will be determined based on the number of boxes of Lidoderm or generic Lidoderm each claimant purchased as a percentage of the total number of boxes purchased by all consumer claimants. Ex. A, ¶ 20. To facilitate the claims process, the consumer claim form requires only that consumers indicate the number of brand or generic Lidoderm prescription they filled. *See Nat'l Milk Producers*, 2017 WL 3623734, at * 2 (consumers submitted claims "without proof of purchase" and were reimbursed "depending on the level of purchases"). For TPPs, the allocation will be determined based on the amount each TPP claimant spent on Lidoderm or generic Lidoderm as a percentage of the total amount spent by all TPP claimants. Ex. A, ¶ 21.

The timing of the distributions to the End-Payor Class will depend in part on when claim processing and adjudication is complete. End-Payors Plaintiffs will determine, in turn, whether the interests of efficiency suggest deferring the first distribution to the Class until after Endo has made its second payment (in the first quarter of 2019), which will avoid the cost and confusion associated with making two distributions to the End-Payor Class within weeks or months of each other.

## VII.   CONCLUSION

For the foregoing reasons, EPPs request that the Court preliminarily approve the Settlement, approve the method for distributing notice and submitting claims, and approve the Plan of Allocation.

DATED:  March 20, 2018

Respectfully submitted,

/s/ *Dena C. Sharp*

Daniel C. Girard (SBN 114826)
Dena C. Sharp (SBN 245869)
Scott Grzenczyk (SBN 279309)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dcg@girardgibbs.com
Email: chc@girardgibbs.com
Email: smg@girardgibbs.com

/s/ *Renae D. Steiner*
Renae D. Steiner
Teresa M. Jones
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: rsteiner@heinsmills.com

/s/ *Sharon K. Robertson*
Sharon K. Robertson
Donna M. Evans
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: srobertson@cohenmilstein.com
Email: devans@cohenmilstein.com

*Co-Lead Counsel for Plaintiffs and the End-Payor Class*

Joseph R. Saveri
Joshua P. Davis
Andrew M. Purdy
Ryan J. McEwan
**JOSEPH SAVERI LAW FIRM, INC.**
555 Montgomery Street, Suite 1210
San Francisco, California 94111

17

END-PAYOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS, PRELIMINARY
APPROVAL OF PLAN OF ALLOCATION, AND APPROVAL OF NOTICE AND CLAIMS PLAN
CASE NO. 14-MD-02521-WHO

Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: rmcewan@saverilawfirm.com

*Liaison Counsel for Plaintiffs and the End-Payor Class*

18

End-Payor Plaintiffs' Motion for Preliminary Approval of Settlements, Preliminary
Approval of Plan of Allocation, and Approval of Notice and Claims Plan
Case No. 14-md-02521-WHO

**ATTESTATION**

I, Dena C. Sharp, am the ECF User whose identification and password are being used to file End-Payor Plaintiffs' Motion for Order Concerning Opt-Out Requests Pursuant to Civil L.R. 5-1(i)(3), I attest under penalty of perjury that concurrence in this filing has been obtained from all counsel.

DATED:   March 20, 2018                    /s/ *Dena C. Sharp*
                                                                  Dena C. Sharp

1

### CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2018, I electronically filed the foregoing document

using the CM/ECF system, which will send notification of such filing to all counsel of record

registered in the CM/ECF system.  I also caused a copy of the foregoing document to be served

via email on counsel of record for all parties.


/s/ *Dena C. Sharp*