# EXHIBIT 1

[Submitting Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO: ALL END-PAYOR ACTIONS | |

**SETTLEMENT AGREEMENT BETWEEN THE END-PAYOR CLASS AND ENDO PHARMACEUTICALS INC.**

Appendix A (Redacted) Filed Under Seal

THIS SETTLEMENT AGREEMENT ("Settlement Agreement" or the "Settlement") is made and entered into as of March 20, 2018, by and between (a) defendant Endo Pharmaceuticals Inc. ("Endo"); and (b) plaintiffs Allied Services Division Welfare Fund; City of Providence; International Union of Operating Engineers Local 49 Health and Welfare Fund; International Union of Operating Engineers Local 132 Health and Welfare Fund; Iron Workers District Council of New England Welfare Fund; NECA-IBEW Welfare Trust Fund; United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund; Welfare Plan of the International Union of Operating Engineers Locals 137, 137A, 137B, 137C, 137R, and Ottavio Gallotto (together, "Plaintiffs"), individually and on behalf of the certified end-payor class in this Action (the "Class" or the "End-Payor Class," as defined in paragraph 1 below).

WHEREAS, Plaintiffs filed lawsuits alleging that Endo and Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. (together, "Teikoku") entered an agreement with Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., and Actavis plc (together, "Watson" and together with Endo and Teikoku, "Defendants") not to compete in the sale of lidocaine 5% patches, *i.e.*, Lidoderm and its generic equivalents, in violation of state antitrust and consumer protection laws, and that Plaintiffs and the Class Members incurred damages as a result, as detailed in End-Payor Plaintiffs' Corrected Third Consolidated Amended Complaint, filed in this Action on June 18, 2015 (ECF No. 208) (the "Complaint");

WHEREAS, Plaintiffs' claims were transferred from various federal judicial districts and consolidated as part of *In re Lidoderm Antitrust Litigation,* No. 3:14-md-02521-WHO (the "Action"), in the United States District Court for the Northern District of California (the "Court");

WHEREAS, Endo has asserted defenses to Plaintiffs' claims, denies each and every one of Plaintiffs' allegations of unlawful or wrongful conduct, denies that any conduct challenged by Plaintiffs caused any damage whatsoever, and denies all liability of any kind;

WHEREAS, the Court certified a class of end-payors of Lidoderm and its generic equivalents as set forth in paragraph 1 below; appointed Plaintiffs as "Class Representatives;" and appointed the law firms Girard Gibbs LLP, Cohen Milstein Sellers & Toll PLLC, and Heins Mills & Olson PLC as "Class Counsel," *see In re Lidoderm*, No. 14-md-02521-WHO (N.D. Cal. Feb 21, 2017) (Orrick, J.) (ECF No. 670);

WHEREAS, Class Counsel and counsel for Endo have engaged in arm's-length settlement negotiations, including under the supervision of both a private and a court-appointed mediator, and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the Settlement between Plaintiffs, both individually and on behalf of the End-Payor Class, and Endo;

WHEREAS, Class Counsel have concluded, after extensive fact and expert discovery, and after carefully considering the circumstances of this Action, including the claims asserted in the Complaint and Endo's defenses thereto, that it would be in the best interests of the End-Payor Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and assure a benefit to the End-Payor Class and further, that Class Counsel consider the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and in the best interests of the End-Payor Class;

WHEREAS, Endo has concluded, despite its belief that it is not liable for the claims asserted and that it has good defenses thereto, that it would be in its best interests to enter into this Settlement Agreement to avoid the risks and uncertainties inherent in complex litigation and also to avoid additional costs of further litigation; and

WHEREAS, Plaintiffs and Endo agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Endo, or of the truth of any of the claims or allegations alleged in the Complaint.

NOW THEREFORE, it is agreed by the undersigned Class Counsel, on behalf of Plaintiffs and the End-Payor Class, on the one hand, and Endo on the other, that this Action and

all claims of Plaintiffs and the End-Payor Class be fully, finally, and forever settled, compromised, discharged, and dismissed with prejudice, without costs as to Plaintiffs, the End-Payor Class or Endo, subject to Court approval, on the following terms and conditions:

1. **Definitions**

a. "Administration Expenses" means costs for administering the Settlement, including without limitation providing notice, maintaining the notice website, receiving and processing claims, analyzing purchase and sales data, and paying taxes and fees associated with maintaining the Escrow Account.

b. "Claims Administrator" means the entity appointed by the Court to provide notice to the End-Payor Class, process the claims submitted by Class Members, and carry out any other duties or obligations provided for by the Settlement.

c. "Class" or "End-Payor Class" means the class certified by the Court in its February 21, 2017 Order (ECF No. 670):

(a) All persons and entities in the United States and its territories who, in Arizona, California, Florida, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, or Wisconsin ("Class States"), for consumption by themselves or their family member, or by their insureds, plan participants or beneficiaries, paid and/or provided reimbursements for some or all of the purchase price of:

  i. Branded Lidoderm for the time period August 23, 2012 through September 14, 2013; and/or

  ii. AB-rated generic Lidoderm for the time period September 15, 2013 through August 1, 2014;

-and-

(b) Third-party payors Cigna, MedImpact Healthcare Systems, Inc., Comprehensive Health Management, Inc. Part D, and Express Scripts Senior Care to the extent they provided, under their Medicare Part D plans, reimbursements for some or all of the price of branded Lidoderm purchased in Class States for the time period September 15, 2013 through August 1, 2014.

3

Excluded from the End-Payor Class are:

(a) Defendants and their officers, directors, management, employees, subsidiaries, and affiliates;

(b) Those who, after September 15, 2013, paid and/or provided reimbursements for branded Lidoderm and did not purchase or reimburse for generic Lidoderm, except third-party payors Cigna, MedImpact Healthcare Systems, Inc., Comprehensive Health Management, Inc. Part D, or Express Scripts Senior Care for their Part D insurance;

(c) Government entities, other than government-funded employee benefit plans;

(d) Fully insured health plans (*i.e.*, plans that purchased insurance that covered 100 percent of the plan's reimbursement obligations to all of its members);

(e) "Single flat co-pay" consumers who purchased Lidoderm or generic Lidoderm only via a fixed dollar co-payment that does not vary on the basis of the purchased drug's status as branded or generic (*e.g.*, $20 for both branded and generic drugs);

(f) "Flat generic co-pay" consumers who, after September 15, 2013, purchased generic Lidoderm via a fixed dollar copayment (*e.g.*, $10 for generic drugs) regardless of the co-payment applicable to branded drugs;

(g) Consumers who purchased or received Lidoderm or its AB-rated generic equivalent through a Medicaid program only;

(h) Pharmacy benefit managers;

(i) The judges in this case and members of their immediate families; and

(j) The following entities that previously excluded themselves from the End-Payor Class and have not requested to opt back in: Carter Bank & Trust; CVS Health Corporation; Darby Dental Supply, LLC; Powell's City of Books; Rite Aid Corporation; The Western Union Co.; Wisconsin Evangelical Lutheran Synod; and Wood Group Management Services, Inc.  *See* Order Regarding Opt-Outs, ECF 946 (Dec. 28, 2017).[1]

---

[1] The End-Payor Class includes the entities that previously filed opt-out requests, subsequently withdrew those requests and re-joined in the End-Payor Class.  Those entities are identified in ECF 997, which is attached hereto as Exhibit G.

d.   "Class Members" means the members of the End-Payor Class.

e.   "Effective Date" means the date on which all of the following have occurred:  (i) the Settlement is not terminated pursuant to paragraphs 15 or 16 below; (ii) the Settlement is approved by the Court as required by Fed. R. Civ. P. 23(e); (iii) the Court enters a final approval order, entering a final judgment of dismissal with prejudice against Plaintiffs and Class Members who have not timely excluded themselves from the End-Payor Class, should the Court so allow such exclusion (*see infra* paragraph 16); and (iv) the period to appeal the final approval order has expired and/or all appeals have been finally resolved.

f.   "Endo First Payment" means $20,000,000.

g.   "Endo Second Payment" means $10,000,000.

h.   "Endo Settlement Amount" means $40,000,000 (the sum of the Endo First Payment, the Endo Second Payment, and the Endo Third Payment).

i.   "Endo Third Payment" means $10,000,000.

j.   "Escrow Account" means the qualified settlement escrow account which holds the Settlement Fund.

k.   "Escrow Agreement" means the agreement annexed hereto as Exhibit B.

l.   "Fee and Expense Award" means award(s) by the Court to Class Counsel of attorneys' fees, reasonable costs and expenses incurred in the prosecution of the Action, including any interest accrued thereon, and service awards to the named Plaintiffs.

m.   "GEHA" means the Government Employees Health Association.

n.   "Released Claims" means past, present, or future liabilities, claims, demands, obligations, suits, injuries, damages, levies, executions, judgments, debts, charges, actions, or causes of action, at law or in equity, whether class, individual, or otherwise in nature, and whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, arising out of or relating

to purchases of Lidoderm or 5% lidocaine patches at any time prior to the Effective Date that, for purchases by Plaintiffs or GEHA, arise under any (i) federal statute or (ii) statute or common law and, for purchases by the Class Members (other than GEHA), arise under any (i) federal statute or (ii) statute or common law in the Class States, relating to or arising out of the facts, occurrences, transactions, or other matters alleged or asserted in this Action, or that could have been alleged or asserted in this Action against the Releasees.

o. "Releasees" means Endo and its past, present and future parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and as applicable each of their past, present, and future officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators and representatives of each of the foregoing.

p. "Releasors" means Plaintiffs, Class Members and their respective past, present and future parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and as applicable each of their past, present, and future officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and representatives of each of the foregoing.

q. "Settlement Fund" means the Endo Settlement Amount, plus any amounts paid by Teikoku and Watson pursuant to their respective separate settlements with End-Payor Plaintiffs as well as any interest accrued or income earned thereon as described below.

r. "Endo Unspent Settlement Fund" means the Endo First Payment, plus the Endo Second Payment if such payment has been made, plus the Endo Third Payment if such payment has been made, plus one-third interest accrued on the Settlement

Fund, minus one-third of any Administration Expenses previously disbursed from the Escrow Account.

2.      **Reasonable Steps Necessary to Help Effectuate this Settlement**.  The parties and their counsel agree to undertake all reasonable steps necessary to help effectuate the Settlement, including undertaking all actions contemplated by and steps necessary to carry out the terms of this Settlement and to secure the prompt, complete, and final dismissal with prejudice of all claims in this Action against Endo.  This includes Endo serving notifications to appropriate federal and state officials pursuant to 28 U.S.C. § 1715.  Endo agrees not to seek decertification of the End-Payor Class.  Endo further agrees not to oppose the End-Payor Class's motions for preliminary or final approval of the Settlement, and agrees not to appeal any Court ruling granting either of these motions.

3.      **Motion for Preliminary Approval of the Settlement**.  Following the execution of the Settlement Agreement by all parties, Class Counsel shall prepare and file a motion requesting preliminary approval of the Settlement, and authorizing dissemination of notice to the Class.  The motion for preliminary approval shall include a proposed form of order in the form substantially as in Exhibit C hereto:

(a) requesting preliminary approval of the Settlement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and finding that dissemination of notice to the End-Payor Class is warranted;

(b) finding that the proposed plan of notice complies with Rule 23 and due process, and seeking approval of short- and long-form notices in the forms substantially as in Exhibits D-F hereto;

(c) approving the Plan of Allocation, in the form substantially as in Exhibit A hereto;

(d) providing that if final approval of the Settlement is not obtained, the Settlement shall be null and void and the parties will revert to their positions *ex ante* without prejudice to their claims or defenses; and

(e) setting a date for a motion for final approval, a deadline for objections and a fairness hearing.

After the Court preliminarily approves the Settlement, Class Counsel shall cause Class Members to receive notice of the Settlement.

    4.    **Motion for Final Approval and Entry of Final Judgment**.  If the Court preliminarily approves the Settlement, Class Counsel shall submit a motion for final approval pursuant to the schedule provided for in the Preliminary Approval Order.  The final approval motion shall seek entry of a final approval order:

(a)    finding that notice given constitutes due, adequate and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

(b)    finding the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and directing consummation of the Settlement pursuant to its terms;

(c)    finding that all Class Members shall be bound by the Settlement Agreement and all of its terms;

(d)    finding that the Releasors shall be bound by the releases set forth in paragraphs 12 and 13 of this Settlement Agreement, and shall be forever barred from asserting any claims or liabilities related to the Action or any Released Claims against any of the Releasees;

(e)    directing that the Action be dismissed with prejudice and without costs in accordance with paragraph 14 below;

(f)    determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal with prejudice be final;

(g)    retaining exclusive jurisdiction over the Settlement, including the administration and consummation of the Settlement; and

(h)    directing that, for a period of five years, the Clerk of the Court shall maintain the record of the entities that have excluded themselves from the End-Payor Class (which are identified in ECF 946, as modified by ECF 997) and that a certified copy of such records shall be provided to Endo.

    5.    **Finality of Settlement**.  This Settlement Agreement shall become final upon the Effective Date.

6.   **Settlement Payments**.

(a)      Within 15 calendar days after the later of the entry of the preliminary approval order or receipt from Class Counsel of wire transfer instructions and any other information or forms required by Endo for purposes of making payments, Endo shall pay the Endo First Payment.  By February 15, 2019, Endo shall pay the Endo Second Payment.  By February 15, 2020, Endo shall pay the Endo Third Payment.

(b)      The payments provided for in subparagraph 6(a) above shall be held in the Escrow Account subject to the terms and conditions of the Escrow Agreement, and in accordance with the provisions of paragraphs 7-9, 16, and 17 below.  Endo shall not pay any additional amount at any time, whether for class notice costs, attorney fees or expenses, incentive awards, settlement administration costs, escrow costs, taxes due from Escrow Account, or any other cost.  Endo shall not be liable for any monetary payments under the Settlement Agreement other than the Endo Settlement Amount.  The total monetary consideration that Endo will pay for this Settlement shall be the Endo Settlement Amount only.  Notwithstanding anything in the foregoing, Endo shall be responsible for giving notice of this Settlement as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) and shall bear any costs associated with giving such notice.

(c)      If Endo fails to make the Endo Second Payment by the date it is due, Class Counsel may file a motion for entry of the Second Payment Stipulated Judgment, a copy of which is annexed hereto as Exhibit H, provided that any such motion shall be filed by May 21, 2019, and be supported by a sworn certification that Endo has failed to make the Endo Second Payment by the date that it is due.  If Endo fails to timely make the Endo Second Payment, the Endo Third Payment will become immediately due and the parties agree that Endo will be deemed to have also failed to make the Endo Third Payment.  The Second Payment Stipulated Judgment therefore includes judgment against Endo for the non-payment of both the Endo Second Payment and the Endo Third Payment.  The original of the Second Payment Stipulated Judgment shall be held in escrow by Class Counsel and promptly destroyed if no such motion is

filed by May 21, 2019.  Endo agrees not to contest such a motion, provided, however, that Endo may oppose such motion on or before June 4, 2019, only if it has a good faith basis to defend the non-payment of the Endo Second Payment based on a breach of the Settlement Agreement or any Exhibits thereto.

(d)     If Endo fails to make the Endo Third Payment by the date it is due, Class Counsel may file a motion for entry of the Third Payment Stipulated Judgment, a copy of which is annexed hereto as Exhibit I, provided that any such motion shall be filed by May 20, 2020 and be supported by a sworn certification that Endo has failed to make the Endo Third Payment by the date that it is due.  The original of the Third Payment Stipulated Judgment shall be held in escrow by Class Counsel and promptly destroyed if no such motion is filed by May 20, 2020. Endo agrees not to contest such a motion, provided, however, that Endo may oppose such motion on or before June 3, 2020, only if it has a good faith basis to defend the non-payment of the Endo Third Payment based on a breach of the Settlement Agreement or any Exhibits thereto.

7.     **The Settlement Fund**.

(a)     Before the Court issues the final approval order, disbursements for Administration Expenses may be made by Class Counsel from the Settlement Fund as follows.  Approval by the Court or Endo shall not be required for payment of Administration Expenses, including the taxes, professional fees and other expenses related to maintaining the Escrow Account, for amounts of less than $500,000 in the aggregate, although upon Endo's request Class Counsel will identify any such payments.  Disbursements from the Settlement Fund that would equal or exceed $500,000 in the aggregate may be made only with prior approval of Endo or the Court.  If the Settlement Agreement is disapproved, terminated, or fails to become effective, previously disbursed Administration Expenses shall not be refunded to Endo.

(b)     At all times prior to the Effective Date, the Settlement Fund shall be invested as set forth in paragraph 3 of the Escrow Agreement, in instruments backed by the full faith and credit of the U.S. Government or fully insured by the U.S. Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the FDIC up to the

10

guaranteed FDIC limit. After the Effective Date, the Settlement Fund shall be invested pursuant to paragraph 3 of the Escrow Agreement as directed in writing by Class Counsel. All interest earned on the Settlement Fund shall become part of the Settlement Fund.

8. **Disbursements.**

(a) After the Effective Date, the Settlement Fund shall be distributed in accordance with the Plan of Allocation and the Court's approval of subsequent request(s) for distribution.

9. **Taxes**.

(a) Class Counsel shall be solely responsible for directing the Escrow Agent (as defined in the Escrow Agreement) to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Escrow Account. Further, Class Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Escrow Account. Subject to paragraph 7(a) above, Class Counsel shall be entitled to direct the Escrow Agent to pay customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities as set forth in this paragraph, from the Escrow Account. Class Counsel shall notify Endo regarding any payments or expenses paid from the Escrow Account upon receipt of a request for such information from Endo. Endo shall have no responsibility to make any tax filings relating to this Settlement Agreement, the Escrow Account, or the Settlement Payments, and shall have no responsibility to pay taxes on any income earned by the Escrow Account, or to pay any taxes with respect thereto unless the Settlement is not consummated and the Endo Unspent Settlement Fund is returned to Endo. Other than as specifically set forth herein, Endo shall have no responsibility for the payment of taxes or tax expenses. If for any reason, for any period of time, Endo is required to pay taxes on income earned by the Escrow Account, the Escrow Agent shall, upon written instructions from Endo with notice to Class Counsel, timely pay to Endo sufficient monies from the Escrow Account to enable Endo to pay all taxes (state, federal, or other) on income earned by the Escrow Account.

(b)	For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be Class Counsel, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

(c)	The parties to this Settlement Agreement and their counsel shall treat, and shall cause the Escrow Agent to treat, the Escrow Account as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  The parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in this manner.  In addition, the Escrow Agent and, as required, the parties, shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.  All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

10.	**Full Satisfaction; Limitation of Interest and Liability**.  Plaintiffs and Class Members shall look solely to the Endo Settlement Amount for satisfaction for any and all Released Claims.  If the Settlement becomes final pursuant to paragraph 5 above, Endo's payment of the Endo Settlement Amount will fully satisfy any and all Released Claims.  Except as provided by order of the Court, no Class Member shall have any interest in the Endo Settlement Amount, Escrow Account, or any portion thereof.

11. **Attorneys' Fees, Expenses and Costs**.

(a)     Class Counsel intend to seek, solely from the Settlement Fund, a Fee and Expense Award.  Class Counsel shall not seek payment of attorneys' fees in an amount to exceed one-third of the Settlement Fund.  Class Counsel also intend to seek service awards for each of the Class Representatives of no more than $10,000.  Class Counsel shall file a motion for a Fee and Expense Award in accordance with the Court's preliminary approval order.  Class Counsel shall be paid and reimbursed for all fees and expenses solely from the Settlement Fund.  No portion of any Fee and Expense Award shall be released from the Settlement Fund prior to the Effective Date.  Endo is not obligated to take, does not take, and subject to the limitations in this paragraph will not take, any position with respect to the application by Class Counsel for attorneys' fees, reimbursement of expenses and costs and incentive or service awards.

(b)     The procedures for and the allowance or disallowance by the Court of Class Counsel's application for attorneys' fees, costs and expenses to be paid from the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from consideration of the fairness, reasonableness, and adequacy of the Settlement.  Any order or proceeding relating to the Fee and Expense Award, or any appeal from any such order, shall not operate to modify or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement.  A modification or reversal on appeal of any amount of the Fee and Expense Award shall not be deemed a modification of the terms of this Agreement or Final Approval Order, and shall not give rise to any right of termination.

12. **Release.**

(a)     Upon the occurrence of the Effective Date, Releasors hereby release and forever discharge, and covenant not to sue the Releasees only, with respect to, in connection with, or relating to any and all Released Claims.  Notwithstanding the foregoing, and for avoidance of doubt:

(b)     This Release is not intended to release anyone other than the Releasees;

(c)     This Release is not intended to be on behalf of anyone other than the Releasors, and does not affect the claims of, and is not in whole or part on behalf of, the direct purchaser class or the non-class direct purchaser plaintiffs, who filed their own complaints in this matter; and

(d)     This Release shall have no effect on any Releasor's claim arising in the ordinary course of business between Releasors and the Releasees arising under Article 2 of the Uniform Commercial Code (pertaining to sales) or the laws of breach of contract or express warranty, the laws of negligence, product liability, implied warranty, or personal injury, or other claims wholly unrelated to the allegations in the Action or to allegations that could have been alleged or asserted in the Action including, in particular, any claim asserted in *In re Opana ER Antitrust Litigation*, MDL No. 2580.

13.     **Additional Release**.  In addition, each Releasor hereby expressly waives and releases, upon the Effective Date, any and all provisions, rights, and/or benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542.  <u>General Release; extent</u>.  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code, notwithstanding that the release in paragraph 12 is not a general release and is of claims against Releasees only.  Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of paragraph 12.  Nonetheless, upon the Effective Date, each Releasor hereby expressly waives and fully, finally and forever settles and releases any known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of paragraph 12, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Releasor also hereby expressly waives and

14

fully, finally and forever settles, releases and discharges any and all claims it may have against the Releasees under § 17200, *et seq*., of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of the Released Claims.

14.     **Dismissal of the Litigation**.  Upon this Settlement Agreement becoming final in accordance with paragraph 5 above, all claims asserted against Endo by Plaintiffs in the Action and by GEHA in *Government Employees Health Association, Inc. v. Endo Pharmaceuticals Inc., et al.*, No. 14-2180 (N.D. Cal.), shall be dismissed with prejudice.

15.     **Effect of Disapproval**.  If based on a determination that the Settlement is not fair, reasonable or adequate, and on this basis only, the Court (i) declines to approve this Settlement Agreement; (ii) materially modifies the Agreement; (iii) does not enter the final approval order containing the elements set forth in paragraph 4 above, (iv) enters the final approval order and appellate review is sought, and on such review, such final approval order is not affirmed or is affirmed with material modification, then Class Counsel or Endo may elect to terminate this Settlement Agreement by sending written notice to the other party within 10 business days of the event allowing for termination.  For the avoidance of doubt, any order of the Court or the Ninth Circuit Court of Appeals that is based on a determination that the Settlement is not fair, reasonable or adequate and that (a) narrows or does not approve the scope of the releases and covenant not to sue contemplated by this Settlement, (b) purports to impose additional material obligations on Endo, or (c) declines to enter a final judgment that meets the requirements set forth in paragraph 4 above, except as otherwise agreed in writing by Class Counsel and Endo, constitutes a failure to grant final approval of this Agreement and confers on Class Counsel and/or Endo the right to terminate the Agreement.  A modification or reversal on appeal of the Plan of Allocation shall not be deemed a modification of the terms of this Agreement or Final Approval Order and shall not give rise to any right of termination.

16.   **Opt-Out**.

(a)    The parties recognize that a second opportunity for opting out of the Class ("Additional Opt-Out Period") is within the discretion of the Court.  However, the parties agree that such an opportunity is not necessary under the circumstances because Class Members were previously afforded adequate notice and the opportunity to opt out of the Class.

(b)    If the Court requires an Additional Opt-Out Period, any Class Member that requests exclusion from the class during the Additional Opt-Out Period (an "Additional Opt-Out"), shall certify, under penalty of perjury, the number of brand and generic Lidoderm patches (boxes of 30) the opt-out purchased or reimbursed, in whole or in part, during the relevant portions of the class period ("Quantity Purchased").  Within 10 calendar days after the Court-ordered deadline by which Class Members may opt-out during any Additional Opt-Out Period, Class Counsel shall serve on counsel for Endo a list of all persons and entities who timely filed opt-out notices during the Additional Opt-Out Period and copies of their purchase certifications.

(c)    If the Settlement is approved by the Court and becomes final as defined in paragraph 5, and the Court has required an Additional Opt-Out Period, and an End-Payor has properly excluded itself from the Class during such Additional Opt-Out Period, and the Court has allowed such exclusion ("Additional Allowed Opt-Out"), the Settlement Fund will be reduced by a percentage (the "Opt Out Percentage") equal to (1) the Quantity Purchased by the Additional Allowed Opt-Outs that are third-party payors divided by the total Quantity Purchased by all Class Members during the class period, with the result then multiplied by .753; plus (2) Quantity Purchased by the Additional Allowed Opt-Outs that are consumers divided by the total Quantity Purchased by all Class Members during the class period with the result multiplied by .247.  For purposes of this Settlement, the total Quantity Purchased by all Class Members is 4,234,542 (boxes of 30).  To illustrate, assume there was one TPP Additional Opt-Out that purchased 100,000 qualified boxes of Lidoderm and generic Lidoderm.  Step 1 of the draw down methodology would be calculated as: 100,000 divided by 4,234,542 (equal to 2.36% of the Class purchases).  Step two

would be to multiply the TPP's 2.36% share of Class purchases by .753.  Thus, assuming that the TPP opted out of the settlements, the Opt-Out Percentage would be 1.78%.

(d)     Nothing herein will preclude an End-Payor who has sought exclusion from the End-Payor Class from seeking leave to rescind its decision until such time as the Settlement becomes final pursuant to paragraph 5.  A decision by an End-Payor to opt out of the Class will have no impact on the validity and enforceability of the Settlement as to the remaining Class Members.

(e)     Should the Settlement Fund be subject to reduction pursuant to 16(c) above, the Escrow Agent shall return the amount by which the Settlement Fund is to be reduced (the "Fund Reduction Amount") to each of Endo, Teikoku, and Watson *pro rata* based on their respective total payments due under their respective settlement agreements.  The Escrow Agent shall not be required to make a Fund Reduction Amount payment to Endo if the amount to be refunded to Endo is less than $15,000.  Subject to paragraph **7** of the Escrow Agreement, the Escrow Agent shall disburse Endo's share of the Fund Reduction Amount to Endo in accordance with this paragraph within 15 calendar days after receipt of either (i) written notice signed by Class Counsel and Endo's counsel stating that the Fund Reduction Amount is to be returned to Endo (such written notice will be signed by Class Counsel within three days of receiving the written notice from Endo), or (ii) any order of the Court so directing.  If Endo has not yet made the Endo Second Payment or the Endo Third Payment, then the Endo Third Payment shall be reduced by Endo's *pro rata* share of the Fund Reduction Amount and the Escrow Agent shall not return any portion of the Fund Reduction Amount directly to Endo.

(f)     Endo shall have the option to terminate this Settlement Agreement if the Opt-Out Percentage exceeds a percentage set forth in Appendix A hereto that shall be filed under seal with Court permission.

(g)     If consumers are not included in any Additional Opt Out Period and the Court later decides that consumers should be given an additional opportunity to opt out, the parties reserve their respective rights concerning which party or parties shall pay the cost of the additional notice.

(h)     Notwithstanding anything to the contrary in the Court's Order Granting a Motion for a Set-Aside (ECF 828), in the event Endo settles with an Additional Allowed Opt-Out concerning the Released Claims, Endo shall, contemporaneously with the date that Endo makes payment pursuant to that settlement agreement, place into an interest-bearing escrow account (the "Set Aside Fund") to be established by Class Counsel an amount (the "Set Aside Fund Amount") equal to 10% of such settlement multiplied by a fraction (A) the numerator of which shall be such Additional Allowed Opt-Out's Lidoderm purchases in Class States addressed by such settlement and (B) the denominator of which shall be such Additional Allowed Opt-Out's Lidoderm purchases in the following states and territories to the extent addressed by such settlement: Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.  Class Counsel intends for this amount to cover a portion of Class Counsel attorneys' fees, costs and expenses, and anticipates filing a motion requesting that the Court award some or all of the amount in the Set Aside Fund to Class Counsel as attorneys' fees, costs and expenses.  Endo agrees that it will not take any position with respect to any motion by Class Counsel for an award of some or all of the amount in the Set Aside Fund to Class Counsel as attorneys' fees, costs, and expenses.  Endo shall inform Class Counsel of the amount of any private offers made to, and accepted by, an Additional Allowed Opt-Out within five (5) days of the acceptance of the offer by the Additional Allowed Opt-Out and shall provide the basis for the calculation of the Set Aside Fund.

(i)     Any disputes regarding the application of this paragraph 16, including calculation of the Quantity Purchased by Additional Allowed Opt-Outs, the Opt-Out Percentage, the Fund Reduction Amount, or the Set Aside Fund may be resolved by the Court, with Plaintiffs, Endo, and the opt-out(s) all having the opportunity to be heard.

17.     **Reimbursement of the Endo Unspent Settlement Fund upon Termination**.  If the Settlement Agreement is terminated pursuant to the provisions of paragraphs 15 or 16 above,

the Escrow Agent shall return to Endo the Endo Unspent Settlement Fund at the time of termination.  Subject to paragraph 8 of the Escrow Agreement, the Escrow Agent shall disburse the Endo Unspent Settlement Fund to Endo in accordance with this paragraph within 15 calendar days after receipt of either (i) written notice signed by Class Counsel and Endo's counsel stating that the Settlement has been terminated (such written notice will be signed by the non-terminating party within three days of receiving the written notice from the terminating party), or (ii) any order of the Court so directing.  If the Settlement Agreement is terminated pursuant to paragraph 15 or 16, (1) any obligations pursuant to this Settlement Agreement other than (i) disbursement of the Endo Unspent Settlement Fund to Endo as set forth above and (ii) paragraph 19 shall cease immediately and (2) the releases set forth in paragraphs 12 and 13 above shall be null and void.

18. **Preservation of Rights**.  Except as expressly provided for in the Releases in paragraphs 12-13 above, this Settlement Agreement, whether the Settlement  becomes final or not, and any and all negotiations, documents, and discussions associated with it, shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or lack thereof, of any liability or wrongdoing by Endo or lack thereof, or of the truth or lack thereof of any of the claims or allegations contained in the Complaint or any other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way other than to enforce the terms of this Settlement Agreement. The parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement.  Upon the Settlement becoming final, nothing in this paragraph shall prevent Endo from asserting any release or using this Settlement Agreement to offset any liability to any other parties not party to this MDL Docket No. 14-md-025821-WHO, including but not limited to, federal and state government agencies.

19. **Resumption of Litigation in the Event of Termination**.  The parties agree that in the event that the Settlement Agreement is not approved by the Court, or if the Settlement does not become final pursuant to paragraph 5 above, or if the Settlement Agreement is

terminated pursuant to paragraphs 15 or 16 above, litigation of the Action by Plaintiffs and the Class against Endo will resume in a reasonable manner to be approved by the Court upon a joint application by the parties, and upon full reimbursement to Endo of the Endo Unspent Settlement Fund to Endo as provided for in paragraph 17 above.

20. **Non-Assistance and Maintaining Confidentiality of Litigation Materials**. No Plaintiff shall, directly or indirectly, provide assistance, support, advice, or information to any person or entity asserting, considering asserting, or seeking to assert claims against Endo based on or related to the Released Claims or the facts, occurrences, transactions, or other matters alleged or asserted in this Action, or that could have been alleged or asserted in this Action. In the event that Plaintiffs or Class Counsel receive a subpoena or other legal process that would require disclosure of material covered by any protective order entered in the Action (the "Protective Order"), such Plaintiff or Class Counsel shall promptly notify Endo and forward a copy of such subpoena or legal process so that Endo may seek a protective order or otherwise seek to maintain the confidentiality of material covered by the Protective Order; and such Plaintiff or Class Counsel shall object to the production of such material unless and until any such motion filed by Endo is resolved. In addition, Plaintiffs and Class Counsel shall abide by the terms of the Protective Order in this Action, including with respect to the destruction of materials and the limitations on the use of any material covered by the Protective Order to this Action, unless otherwise ordered by a court of competent jurisdiction.

21. **Binding Effect**. This Settlement Agreement shall be binding upon, and inure to the benefit of, the Releasors and the Releasees. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Class Counsel shall be binding upon Plaintiffs and all Class Members.

22. **Integrated Agreement**. This Settlement Agreement, together with the exhibits hereto and the documents referenced herein, contains the complete and integrated statement of every term in this Agreement, and supersedes all prior agreements or understandings, whether

written or oral, between the parties with respect to the subject matter hereof.  This Settlement Agreement shall not be modified except by a writing executed by Plaintiffs and Endo.

23.     **Independent Settlement**.  This Settlement of the Action is not conditioned on the disposition of the claims of the direct purchaser plaintiffs, the direct purchaser class or the non-class direct purchaser plaintiffs, all of whom filed their own complaints.  This Settlement Agreement is not conditioned on the performance or disposition of any other settlement agreement between the End-Payor Class and any other Defendant.

24.     **Headings**.  The headings in this Settlement Agreement are intended only for the convenience of the reader and shall not affect the interpretation of this Settlement Agreement.

25.     **No Party is the Drafter**.  None of the parties shall be considered the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that might cause any provision to be construed against the drafter hereof.

26.     **Consent to Jurisdiction**.  Each Class Member and Endo hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for the Northern District of California for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding or dispute relating to the release provisions herein provided that this consent to jurisdiction shall not affect Endo's right or ability to assert this Settlement Agreement or the releases contained herein as a defense in an action filed in any other jurisdiction asserting Released Claims or concerning this Settlement Agreement or this Action.

27.     **Choice of Law**.  All terms of this Settlement Agreement shall be governed by and interpreted according to federal common law or, where state law must apply, California law without regard to conflicts of law principles.

28.     **Representations and Warranties**.  Each party represents and warrants that it has the requisite authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated herein.

29.     **Notice**.  Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing and provided by email or overnight delivery to the counsel set forth in the signature block below for Endo or Class Counsel, respectively, or their designees.

30.     **Execution in Counterparts**.  This Settlement Agreement may be executed in counterparts.  A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

31.     **Confidentiality**.  While the fact of settlement of the Action has been disclosed in open court, the terms of this Settlement Agreement shall remain confidential until Plaintiffs move for preliminary approval of the Settlement, unless Endo and Class Counsel agree otherwise, provided that Endo may disclose the terms of this Settlement Agreement to accountants, lenders, auditors, legal counsel, tax advisors, or in response to a request by any governmental, judicial, or regulatory authority or otherwise required by applicable law or court order and Plaintiffs may disclose the terms of the Settlement Agreement to any entity that has applied to serve as Notice and Claims Administrator or Escrow Agent, who shall abide by the terms of this paragraph.  Plaintiffs shall not issue any press release or statement to any media outlet regarding this Agreement prior to entry of the Final Approval order without obtaining a prior written consent from the other parties, which consent shall not be unreasonably withheld.  For the avoidance of doubt, statements in Class Counsel's website, court filings, statements made in connection with providing notice of the Settlement to the End-Payor Class, or responses to inquiries from media outlets do not constitute a "press release or statement to any media outlet."

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of the date first herein above written.

END-PAYOR CLASS SETTLEMENT AGREEMENT WITH ENDO
MDL DOCKET NO. 14-md-02521-WHO

*For the End-Payor Class:*

*[signature]*

Daniel C. Girard (SBN 114826)
Dena C. Sharp (SBN 245869)
Scott Grzenczyk (SBN 279309)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dcg@girardgibbs.com
Email: chc@girardgibbs.com
Email: smg@girardgibbs.com

*[signature]*

Renae D. Steiner
Teresa M. Jones
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: rsteiner@heinsmills.com

*[signature]*

Sharon K. Robertson
Donna M. Evans
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: srobertson@cohenmilstein.com
Email: devans@cohenmilstein.com

*Co-Lead Counsel for the
End-Payor Class*

Joseph R. Saveri
Joshua P. Davis

*For Defendant Endo Pharmaceuticals Inc.*

George Gordon
**DECHERT LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: (215) 994-2382
Email: george.gordon@dechert.com

Heidi K. Hubbard (admitted pro hac vice)
Stanley E. Fisher (admitted pro hac vice)
Benjamin M. Greenblum (admitted pro hac vice)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Email: hhubbard@wc.com
Email: sfisher@wc.com
Email: bgreenblum@wc.com

Daniel Asimow (State Bar No. 165661)
**ARNOLD & PORTER KAYE SCHOLER
LLP**
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
Email: Daniel.Asimow@apks.com

*Attorneys for Defendant Endo
Pharmaceuticals Inc.*

23

1

*For the End-Payor Class:*

2

*For Defendant Endo Pharmaceuticals Inc.*

3

Daniel C. Girard (SBN 114826)

George Gordon

4

Dena C. Sharp (SBN 245869)
Scott Grzenczyk (SBN 279309)

**DECHERT LLP**
Cira Centre

5

**GIRARD GIBBS LLP**

2929 Arch Street

6

601 California Street, 14th Floor
San Francisco, CA 94108

Philadelphia, PA 19104-2808
Telephone: (215) 994-2382

7

Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Email: george.gordon@dechert.com

8

Email: dcg@girardgibbs.com
Email: chc@girardgibbs.com

Heidi K. Hubbard (admitted pro hac vice)
Stanley E. Fisher (admitted pro hac vice)

9

Email: smg@girardgibbs.com

Benjamin M. Greenblum (admitted pro hac vice)

10

**WILLIAMS & CONNOLLY LLP**

11

Renae D. Steiner

725 Twelfth Street, N.W.
Washington, D.C. 20005

12

Teresa M. Jones

Telephone: (202) 434-5000
Email: hhubbard@wc.com

13

**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue

Email: sfisher@wc.com
Email: bgreenblum@wc.com

14

Minneapolis, MN 55403
Telephone: (612) 338-4605

15

Facsimile: (612) 338-4692
Email: rsteiner@heinsmills.com

Daniel Asimow (State Bar No. 165661)
**ARNOLD & PORTER KAYE SCHOLER**

16

**LLP**
Three Embarcadero Center, 10th Floor

17

San Francisco, California 94111-4024
Telephone: (415) 471-3100

18

Sharon K. Robertson

Facsimile: (415) 471-3400

19

Donna M. Evans
**COHEN MILSTEIN SELLERS &**

Email: Daniel.Asimow@apks.com

20

**TOLL PLLC**
88 Pine Street, 14th Floor

*Attorneys for Defendant Endo
Pharmaceuticals Inc.*

21

New York, New York 10005
Telephone: (212) 838-7797

22

Facsimile: (212) 838-7745
Email: srobertson@cohenmilstein.com

23

Email: devans@cohenmilstein.com

24

*Co-Lead Counsel for the*
*End-Payor Class*

25

26

Joseph R. Saveri

27

Joshua P. Davis

28

END-PAYOR CLASS SETTLEMENT AGREEMENT WITH ENDO
MDL DOCKET NO. 14-md-02521-WHO

Ryan J. McEwan
**JOSEPH SAVERI LAW FIRM, INC.**
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: rmcewan@saverilawfirm.com

*Liaison Counsel for the End-Payor
Class*

END-PAYOR CLASS SETTLEMENT AGREEMENT WITH ENDO
MDL DOCKET NO. 14-md-02521-WHO

(REDACTED)

FILED UNDER SEAL

APPENDIX A

# REDACTED FILED UNDER SEAL

**<u>Appendix A</u>**

Pursuant to paragraph 16(f), Endo shall have the option to terminate this Settlement Agreement if the Opt-Out Percentage exceeds ███ .

EXHIBIT A

[Submitting Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br>ALL END-PAYOR ACTIONS | |

**PLAN OF ALLOCATION**

On March March 20, 2018 End-Payor Plaintiffs, individually and on behalf of the End-Payor Class, entered into separate settlement agreements with (a) defendant Endo Pharmaceuticals Inc. ("Endo"); (b) defendants Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. (together, "Teikoku"); and (c) defendants Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., Actavis plc, Anda Inc., Anda Pharmaceuticals, Inc., and Valmed Pharmaceuticals, Inc. (together, "Watson" and  together with Endo and Teikoku, "Defendants") (the "Settlement Agreements" or "Settlements").

The relief provided for in the Settlement Agreements shall be distributed in accordance with this Plan of Allocation as described below.

## I.  Definitions

Except as defined below, capitalized terms in this agreement shall have the same meaning as in the Settlement Agreements.

1.  "Allocation Pool" means the Consumer Pool and the TPP Pool, defined below.

   a.  "Consumer Pool" means 24.7% of the Net Settlement Fund.  Only Eligible Consumer Claimants (defined below) shall be eligible to receive payments from the Consumer Pool.  TPPs (defined below) are not eligible to receive payments from the Consumer Pool, except as provided in paragraph 22 below.

   b.  "TPP Pool" means 75.3% of the Net Settlement Fund.  Only Eligible TPP Claimants shall be eligible to receive payments from the TPP Pool. Consumers (defined below) are not eligible to receive payments from the TPP Pool, except as provided in paragraph 22 below.

2.  "Claimant" means any person or entity submitting a Proof of Claim.

3.  "Consumer" means any Class Member who is a natural person (not a TPP), and includes living persons as well as the executors, heirs, administrators, trustees, or other authorized representatives of deceased persons.

4.  "Eligible Claimant" means any member of the End-Payor Class who submits a Qualifying Claim.

1

5.      "Eligible Consumer Claimant" means an Eligible Claimant who is a Consumer.

6.      "Eligible TPP Claimant" means an Eligible Claimant that is a TPP.

7.      "Net Settlement Fund" means the Settlement Fund less any Administration Expenses and Fee and Expense Awards.

8.      "Proof of Claim" means the document(s) a Claimant must submit to the Claims Administrator to make a claim under the Settlements.

9.      "Eligible Purchases" means:

    a.      for Consumers, the number of boxes (30 patches per box) purchased (1) in the Class States (i) for branded Lidoderm from August 23, 2012 through September 14, 2013, and (ii) for AB-rated generic Lidoderm from September 15, 2013 through August 1, 2014, and (2) for consumption by themselves or their family member; and

    b.      for TPPs, the amount paid for purchases (1) in the Class States (i) for branded Lidoderm from August 23, 2012 through September 14, 2013, and (ii) for AB-rated generic Lidoderm from September 15, 2013 through August 1, 2014, and (2) for consumption by their insureds, plan participants or beneficiaries.

10.     "Qualifying Claim" means a timely, complete, and valid Proof of Claim that is accepted by the Claims Administrator.

11.     "Settlement Fund" means the Endo Settlement Amount, the Teikoku Settlement Amount, and the Watson Settlement Amount, plus any interest accrued or income earned thereon.

12.     "TPP" means any Class Member that is an entity.

## II.     Initial Submission of Claims

13.     For Consumers, a Proof of Claim shall consist of a completed claim form in the form attached as Exhibit A2.  No additional documentation shall be required initially to submit a claim, although the Claims Administrator may ask for additional documentation as appropriate.

14.   For TPPs, a Proof of Claim shall consist of a completed claim form in the form attached as Exhibit A3, together with the supporting documentation specified in the claim form if the value of the claim exceeds $10,000.  For claims under that amount, no additional documentation shall be required initially to submit a claim, although the Claims Administrator may ask for additional documentation as appropriate.

15.   If a claim is submitted both by a Class Member and by a different Claimant on behalf of that same Class Member, the claim shall only be paid one time.  The Claims Administrator shall use names, addresses, and Employer Identification Numbers to identify potentially duplicative claims.  In such a situation, the Claims Administrator shall not authorize the claim made by the Claimant on behalf of the Class Member. Instead, the Claims Administrator shall authorize only the claim submitted by the Class Member on its own behalf and consider only that claim to be a Qualifying Claim.

## III.   Identification of Qualifying Claims; General Rules of Allocation

16.   No Claimant shall be permitted to recover from any Allocation Pool unless that Claimant submits a Qualifying Claim.

17.   If a Claimant or the persons or entities on whose behalf a Claimant is submitting a Proof of Claim is not a member of the End-Payor Class, then that Claimant or the persons or entities on whose behalf a Claimant is submitting a Proof of Claim shall not be entitled to recover from any Allocation Pool.  Consumers and TPPs who previously opted out of the End-Payor Class and have not withdrawn their opt-out requests shall not be entitled to any payments under the Settlements.

18.   Except as provided in paragraph 22 below, Qualifying Claims shall be paid only out of the Allocation Pool for which they are eligible (the Consumer Pool if the Class Member whose purchases form the basis for the Qualifying Claim is a Consumer, and the TPP Pool if the Class Member whose purchases form the basis for the Qualifying Claim is a TPP).

## IV.  Distribution of Settlement Fund

19.  Each Allocation Pool shall be distributed to Eligible Claimants in that Allocation Pool on a *pro rata* basis according to their Eligible Purchases.

20.  To determine each Eligible Consumer Claimant's *pro rata* share of the Consumer Pool, the Claims Administrator shall multiply the total value of the Consumer Pool by a fraction for which (a) the numerator is the Eligible Purchases (*i.e.* number of boxes purchased) by that Eligible Consumer Claimant, and (b) the denominator is the sum total of all Eligible Purchases (*i.e.* total number of boxes purchased) by all Eligible Consumer Claimants.

21.  To determine each Eligible TPP Claimant's *pro rata* share of the TPP Pool, the Claims Administrator shall multiply the total value of the TPP Pool by a fraction, for which (a) the numerator is the Eligible Purchases (*i.e.* amount paid) by that Eligible TPP Claimant, and (b) the denominator is the sum total of all Eligible Purchases (*i.e.* total amounts paid) by all Eligible TPP Claimants.

22.  If the distribution of the Net Settlement Fund to an Allocation Pool as set forth in paragraphs 20 and 21 would result in Eligible Claimants in that pool receiving more than their collective single damages (as calculated according to paragraph 14 of the Lidoderm Settlement Allocation Declaration of Dr. Hal J. Singer), then the amount initially allocated to that pool that is in excess of the pool's Eligible Claimants' collective single damages shall be allocated to the other pool until its Eligible Claimants have also received their single damages.  Any remaining excess shall be divided between the two pools with the TPP Pool receiving 75.3% of the excess and the Consumer Pool receiving 24.7% of the excess.

## V.  Distribution of Unspent Funds

23.  If any distributable balance remains in the Net Settlement Fund by reason of uncashed checks or otherwise one year after the distribution of the Endo Third Payment, then— subject to paragraph 22—that balance shall be redistributed on a *pro rata* basis among

1    those Eligible Claimants who have cashed their checks and who would receive at least

2    $50.00 from the redistribution, after payment of any additional costs or fees incurred in

3    administering the Net Settlement Fund for the redistribution.

4    24.    If six months after the redistribution any balance still remains in the Net Settlement Fund,

5    and Class Counsel have determined that a further redistribution would be uneconomical,

6    Class Counsel shall seek an order approving the contribution of the balance to one or

7    more non-sectarian, not-for-profit, 501(c)(3) organizations.  Any proposed recipient shall

8    be independent of Class Counsel so that Class Counsel does not derive a direct or indirect

9    benefit from the selection of such organization as the recipient of a charitable

10    contribution.  Class Counsel's motion will include a declaration detailing the means by

11    which the proposed recipient(s) were selected.

12    **VI.    Initial Claims Payment**

13    25.    Certain entities that previously opted out of the End-Payor Class (which are identified in

14    Exhibit A to ECF 997 and defined in the Initial Claims Payment Agreement as "SREPs")

15    have rejoined the End-Payor Class for purposes of the Settlement.

16    26.    Pursuant to the Initial Claims Payment Agreement (attached as Exhibit A1) SREPs shall

17    be eligible to receive an initial payment of their claims from the Settlement Fund, which

18    shall be made within 10 days after the Court has granted final approval on the condition

19    that the SREPs submit their Proofs of Claim at least 60 days prior to the final approval

20    hearing.

21    27.    The Initial Claims Payment Agreement shall only apply to, and there shall be no initial

22    claims payments other than with respect to, the first distribution of the Settlement Fund.

23    28.    As detailed more fully in the Initial Claims Payment Agreement, after the deadline for all

24    Class Members to submit Proofs of Claim and after the Claims Administrator has

25    determined the allocation of the Settlement Fund among all Eligible Claimants (including

26    the SREPs), there will be a "true-up" of the SREPs' claims.  If the initial claims payment

27    exceeded the amount allocated to the SREPs by the Claims Administrator, then the

28

5

SREPs will refund the difference to the Settlement Fund in accordance with the terms set out in the Initial Claims Payment Agreement.  If the initial claims payment is less than the amount allocated to the SREPs by the Claims Administrator, then the difference will be paid to the SREPs when the rest of the End-Payor Class receives their payments.

29.    Notwithstanding the terms of the Initial Claims Payment Agreement, in no event shall any TPP member of the End-Payor Class receive more than its pro rata share of the TPP Pool on a Eligible Purchase basis.

## VII.   Administration

30.    All determinations under this Plan of Allocation shall be made by the Claims Administrator, subject to review by Class Counsel and approval by the Court.

EXHIBIT A-1

**Initial Claims Payment Agreement for the Lidoderm Settlement**

WHEREAS, certain entities (the "Separately Represented End-Payors" or "SREPs") identified in Exhibit A to the Court's February 23, 2018, order (ECF 997) have withdrawn their requests to exclude themselves from the End-Payor Class and are proceeding as members of the End-Payor Class in connection with the Settlements;

WHEREAS, in consideration of the SREPs' withdrawal of their exclusions and joining the End-Payor Class, Plaintiffs and the SREPs agree that the SREPs shall be entitled to an initial payment of claims from the Settlement Fund (the "SREP Group Initial Claims Payments," as defined below), as described herein;

WHEREAS, this Initial Claims Payment Agreement shall only apply to, and there shall be no initial claims payments other than with respect to, the first distribution of the Settlement Fund;

WHEREAS, Plaintiffs and SREPs have determined the amount of the SREP Group Initial Claims Payment based on the expert analysis of Dr. Hal Singer and believe that the SREP Group Initial Claims Payment is reasonable in light of the proportion of recoveries typically received by SREPs in pharmaceutical antitrust cases;

WHEREAS, Plaintiffs and the SREPs intend the claims of TPP Class Members and SREP Group members to be paid on the same *pro rata* basis and have established herein a mechanism for reconciling settlement amounts allocated to the TPP Pool and the SREP Group Initial Claims Payments, to be applied once all Proofs of Claim are submitted to the Claims Administrator;

NOW THEREFORE, it is agreed by the undersigned, on behalf of Plaintiffs and the End-Payor Class, and on behalf of the SREPs, that the Settlement Fund shall be allocated and distributed, subject to the Settlement, Plan of Allocation, and Court approval, where required, as set forth herein (the "Agreement").

1) <u>Definitions</u>.

    Except as defined below, capitalized terms in this Agreement shall have the same meaning as in the Plan of Allocation and the Settlement Agreements.

    a) "Claims Deadline" means the deadline set by the Court for the submission of a claim.

    b) "Initial TPP Pool" means the TPP Pool as of the time the SREP Group Initial Claims Payment is made (*i.e.* settlements payments received plus accrued interest minus any Administration Expenses and Fee and Expense Award).

    c) "Net Initial TPP Pool" means the balance of the Initial TPP Pool after deducting the SREP Group Initial Claims Payments.

    d) "SFPs" means those self-funded healthcare plans and/or entities for which one or more SREP provides or provided prescription drug or health benefit services

through administrative services-only contracts or as a third-party administrator and on whose behalf a SREP submits a claim to the Claims Administrator.

e) "SREP Group" shall mean the SREPs and the SFPs.

f) "SREP Group Counsel" means the law firms of Lowey Dannenberg P.C. and Rawlings & Associates, PLLC.

g) "SREP Group Initial Claims Payment" shall mean an amount equal to 32.5% of the Initial TPP Pool.

h) "SREP Group Qualified Claim Percentage" means the total amount of all Eligible Purchases of the SREP Group divided by the total Eligible Purchases of all Eligible TPP Claimants, including all members of the SREP Group.  As an example, if the SREP Eligible Purchases are $10 and all Eligible Purchases of Eligible TPP Claimants (including SREPs) are $20, the SREP Qualified Claim Percentage shall be 50%.

i) "SREP Group Reversion Amount" means the SREP Group Qualified Claim Percentage multiplied by the Initial TPP Pool minus the SREP Group Initial Claims Payment, provided that the SREP Group Reversion Amount will take into account any SFP claims paid to the SREP Group that are later the subject of a separate claim by an SFP.

j) "TPP Claimant List" means a list identifying all TPP Class Members that submit a Proof of Claim.

k) "TPP Claims Summary" means a summary of the Qualifying Claims made by Eligible TPP Claimants (including SREP Group members).

l) "TPP List" means a list of the Eligible TPP Claimants that have the 100 largest aggregate Qualified Claims and the amount of such claims (the "TPP List").

2) <u>SREP Group Initial Claims Payment</u>.

a) No less than sixty days (60) prior to the final approval hearing set by the Court, each member of the SREP Group that seeks to receive a distribution from the SREP Group Initial Claims Payment shall submit its Proofs of Claim, which will be the same form as the Proof of Claim required of all TPP Class Members.

b) Within 10 business days of Effective Date of the Settlement, the SREP Group shall be paid the SREP Group Initial Claims Payment.

c) The SREP Group shall not receive an SREP Group Initial Claims Payment other than with respect to, and this Agreement shall not apply to any distribution other than, the first distribution of the Settlement Fund.

3)   <u>SREP Claim Submissions</u>.

    a)   So as not to duplicate claims, the Claims Administrator shall not consider any claims made by any Claimant (including any SREP Group member) on behalf of any TPP Class Member to be Qualified Claims if the TPP Class Member submits a claim on its own behalf.  If there are duplicative claims, then when calculating the SREP Group Qualified Claim Percentage, the Claims Administrator shall not consider the claim submitted on behalf of the SREP to be a Qualified Claim.  The Claims Administrator will, however, permit claims made on behalf of such entities where it is shown by the Claimant that such claims are not duplicative of claims by another TPP Class Member.

    b)   Representations and Warranties.  The members of the SREP Group shall warrant that any Proof of Claim, additional claim documentation, data, or other information it submits to the Claims Administrator will be true and accurate, and submitted in good faith and to the best of their ability.

    c)   Effect of Failure of a SREP Group member to submit Proof of Claim.  To verify the accuracy of claim information and to prevent duplication of claims, the Claims Administrator may reasonably request additional information from SREP Group Members as deemed appropriate by the Claims Administrator.  The calculation of the SREP Group Reversion Amount may not include claims of any SREP Group member that fails to timely submit a Proof of Claim and additional claims documentation reasonably requested by the Claims Administrator by the Claims Deadline.  Should a late-filed claim not materially delay the administration process, the Claims Administrator shall use best efforts to include such claim.

    d)   Confidentiality.  All Proof of Claims (including the identification of SFPs) or other claims documentation submitted by SREP Group members pursuant to this section shall be kept confidential and may be used or disclosed only to effectuate this Agreement, including disclosure to the Claims Administrator, the defendants, SREP Group Counsel, Class Counsel, and the Court.  Adequate steps shall be taken to protect against unlawful disclosure of confidential patient information, if any, that is included in a Proof of Claim or other claims documentation.

4)   <u>SREP Group "True Up" Reversion Amount Computation</u>.

    a)   Notice of Proposed Computation.  The Claims Administrator shall make available to SREP Group Counsel the TPP Claims Summary.  The TPP Claims Summary shall be held in confidence by SREP Group Counsel and any third-party consultant, who shall not be employed by any TPP, who agrees in writing to be bound by the same confidentiality as SREP Group Counsel.  The TPP Claims Summary shall not be provided or shared with any other person, including any member of the SREP Group or another TPP, and can be used only for the purposes of determining whether it appears that a claim is overstated or inaccurate and worthy of audit, duplication of claims, and/or whether any entity submitting a

<div align="center">3</div>

<div align="center">Initial Claims Payment Agreement for the Lidoderm Settlement</div>

Proof of Claim qualifies as an Eligible TPP Claimant.  The TPP Claims Summary shall be generated by the Claims Administrator and transmitted to SREP Group Counsel no later than thirty (30) days after the Claims Deadline.

b)      SREP Group Counsel shall have the opportunity, within twenty-one (21) days of receipt of the TPP Claims Summary, to identify in writing to Class Counsel any TPP Class Member that SREP Group Counsel believes has submitted a claim that is duplicative of a claim already asserted by another TPP Class Member or SREP Group member, that falls outside the definition of Eligible TPP Claimant as set forth herein, or that appears to be overstated or inaccurate based upon the relative size of the Eligible TPP Claimant to other claimants.

c)      At least thirty-five (35) days prior to any distribution of the TPP Pool to Eligible TPP Claimants (including SREP Group members), Class Counsel shall provide SREP Group Counsel with the proposed computation of the SREP Group Reversion Amount, including a list reflecting the Claims Administrator's determination of the amount of each SREP Group member's Eligible Purchases.

d)      The Claims Administrator's computation of the SREP Group Reversion Amount will become binding upon the SREP Group unless within ten (10) business days of receipt of the computation, SREP Group Counsel disputes the amount of the proposed SREP Group Reversion Amount payment in writing to Class Counsel.

e)      In the event of such a dispute, SREP Group Counsel may request and receive the TPP List from Class Counsel.  The TPP List shall be held in confidence by SREP Group Counsel, will be provided for attorneys' eyes only, and shall not be provided or shared with any other person, including any member of the SREP Group or another TPP.  SREP Group Counsel shall be entitled to show the list to a single third-party consultant who is not employed by any TPP, and who agrees in writing to be bound by the same confidentiality as SREP Group Counsel, solely for purposes of dispute resolution under this Paragraph.

f)      The proposed computation will then become binding upon the SREP Group within ten (10) business days of receipt of the TPP List, unless SREP Group Counsel further disputes the amount of the proposed SREP Group Reversion Amount payment in writing to Class Counsel.  Other than as provided in this Agreement, the SREP Group and SREP Group Counsel shall not be entitled to any information collected or generated by the Claims Administrator or Class Counsel, except to the extent permitted by the Court in a proceeding pursuant to the dispute procedure in paragraph 4(g).

g)      Dispute Procedure.  Class Counsel and the SREP Group shall attempt to resolve any disputes arising under this Agreement through good faith negotiations.  If the dispute cannot be resolved informally, the dispute shall be presented to the Court for adjudication.

h)   SREP Group "True Up" Reversion Amount Payment.  Within five (5) days after the later of (i) resolution of any dispute under Paragraph (g) above, (ii) processing and final determination of the total Eligible Purchases for all Eligible TPP Claimants (including SREP Group members), or (iii) the provision of appropriate instructions for the transfer of any SREP Group Reversion Amount due, the parties to this Agreement shall cause the payment of the SREP Group Reversion Amount to be made as follows:

  (i)   If the SREP Group Reversion Amount is a positive amount, then Class Counsel shall cause the Escrow Agent to pay it from the TPP Pool to the SREP Group; or

  (ii)  If the SREP Group Reversion Amount is a negative amount, then it will be paid by SREP Group Counsel on behalf of the SREP Group to the TPP Pool.  In the event SREP Group Counsel fails to pay the SREP Group Reversion Amount within the time period provided for under this section, each SREP, on behalf of itself and its SFPs, shall be jointly and severally liable for the entire SREP Group Reversion Amount, plus interest.

5)   <u>Execution in Counterparts</u>.  This Agreement may be executed in counterparts.  Emailed signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Agreement and filed with the Court.

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Agreement as of the date first herein above written.

Signed: _____           Dated: 3/20/2018
For Girard Gibbs LLP

_____           Dated: 3/20/2018
For Heins Mills & Olson PLC

_____           Dated: 3/20/2018
For Cohen Milstein Sellers & Toll PLLC

*Co-Lead Counsel for Plaintiffs and the End-Payor Class*

_____           Dated: 3/20/2018
For Lowey Dannenberg, PC

*Counsel for the Separately-Represented End-Payors*

Initial Claims Payment Agreement for the Lidoderm Settlement

EXHIBIT A-2

<table>
<tr><td>

**MUST BE POSTMARKED OR FILED ELECTRONICALLY ON OR BEFORE**
_____

</td><td>

United States District Court for the Northern District of California

_In re Lidoderm Antitrust Litigation_
Case No. 14-MD-02521-WHO

</td><td>

FOR OFFICIAL USE ONLY

*ABDCA99999*

</td></tr>
</table>

**TO QUALIFY TO RECEIVE A PAYMENT FROM THIS SETTLEMENT, YOU MUST COMPLETE AND SUBMIT THIS CLAIM FORM.**

<div style="background:black;color:white;text-align:center">**CONSUMER CLAIM FORM**</div>

## <u>YOUR CLAIM MUST BE POSTMARKED OR FILED ELECTRONICALLY ON OR BEFORE MONTH XX, 201X</u>

**Mail your claim to:**

Lidoderm End-Payor Claims Administrator
c/o KCC Class Action Services
P.O. XXX
XXXX, XX XXXXX-XXXX

**OR**

**Submit the Claim Form online:** http://www.lidodermantitrustlitigation.com/

| Section A: Claimant Identification |
|---|

The Claims Administrator will use this information for all communications regarding this Claim Form.  If this information changes, you MUST notify the Claims Administrator in writing at the address above.

Class Member Name (_i.e._ the person that paid for Lidoderm or generic Lidoderm (Lidocaine 5% patch))



Street Address



| City | State | Zip Code |
|---|---|---|
|  |  |  |

| Daytime Telephone Number | E-Mail Address* |
|---|---|
|  |  |

Complete Only If Applicable: Agent/Legal Representative Submitting this Form on Behalf of the Class Member:



Street Address



| City | State | Zip Code |
|---|---|---|
|  |  |  |

Daytime Telephone Number

E-Mail Address*

*By providing your e-mail address, you authorize the Claims Administrator to use it in providing you with information relevant to this claim.

## Section B: Should I File a Claim Form?

You must meet the following criteria to be eligible for a payment from the Proposed Settlements:

- Paid for some or all of the purchase price of (i) branded Lidoderm during the time period from August 23, 2012 through September 14, 2013, and/or (ii) AB-rated generic Lidoderm (Lidocaine 5% patch) during the time period from September 15, 2013 to August 1, 2014;

- For consumption by you or your family member; and

- In one or more of the following states: Arizona, California, Florida, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, or Wisconsin (the Class States).

Excluded from the Class and from the Proposed Settlements are:

- Any consumer who, after September 15, 2013, paid for branded Lidoderm and did not purchase generic Lidoderm;

- Any consumer who purchased Lidoderm or generic Lidoderm only via a "single flat copay," meaning that your insurance copayment was the same regardless of whether you purchased brand or generic Lidoderm (for example, if you paid a $20 co-pay for both branded and generic drugs);

- Any consumer who purchased Lidoderm and/or generic Lidoderm (Lidocaine patch 5%) only through a Medicaid program;

- Officers, directors, managers, or employees of defendants Endo Pharmaceuticals Inc. ("Endo"); Teikoku Pharma USA, Inc. or Teikoku Seiyaku Co., Ltd. (together, "Teikoku"); or Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., Actavis plc, Anda Inc., Anda Pharmaceuticals, Inc., or Valmed Pharmaceuticals, Inc. (together, "Watson"); and

- Any judge or justice assigned to hear any aspect of this lawsuit or their immediate family.

☐ By checking this box, I confirm that I have read the definition of the class and I am not excluded from participating in the Proposed Settlement.

## Section C: Purchase Information for Purchases Made Using Insurance

Provide the number of boxes (of 30 patches each) that you purchased for your own use or for the use of your family member.  **IF YOU DID NOT HAVE INSURANCE COVERAGE PLEASE FILL OUT SECTION D AND LEAVE THIS SECTION BLANK.**

Only include purchases in Arizona, California, Florida, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, or Wisconsin.

| BRAND LIDODERM BOXES (OF 30 PATCHES EACH) | NUMBER OF BOXES (OF 30 PATCHES EACH) |
|---|---|
| Provide the number of brand Lidoderm boxes (of 30 patches each) you purchased from August 23, 2012 through September 14, 2013 in the above-listed states.<br><br>By filling in any number in the box to the right, I hereby also certify that, if a generic version of Lidoderm was available at a cheaper price from August 23, 2012 to September 14, 2013, I would have purchased the generic version of Lidoderm. | |

If you had a percentage copay (for example, 20% of the prescription's cost), please fill out the below box.  **DO NOT FILL OUT THIS BOX IF YOU HAD A SET DOLLAR COPAY FOR GENERIC DRUGS (for example, $20 for generics).**

| GENERIC LIDODERM (LIDOCAINE PATCH 5%) BOXES (OF 30 PATCHES EACH) | NUMBER OF BOXES (OF 30 PATCHES EACH) |
|---|---|
| Provide the number of generic Lidoderm (Lidocaine patch 5%) boxes (of 30 patches each) you purchased from September 15, 2013 through August 1, 2014 in the above-listed states.<br><br>By filling in any number in the box to the right, I hereby also certify that I did not have a set dollar co-pay for generic drugs (for example, $20 for generics). | |

### Section D: Purchase Information for Purchases Made Without Using Insurance

Provide the number of boxes (of 30 patches each) that you purchased for your own use or for the use of your family members.  **FILL OUT THIS SECTION ONLY IF YOU MADE LIDODERM PURCHASES WITHOUT USING INSURANCE.**

Only include purchases in Arizona, California, Florida, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, or Wisconsin.

| BRAND LIDODERM BOXES (OF 30 PATCHES EACH) | NUMBER OF BOXES (OF 30 PATCHES EACH) |
|---|---|
| Provide the number of brand Lidoderm boxes (of 30 patches each) you purchased from August 23, 2012 through September 14, 2013 in the above-listed states.<br><br>By filling in any number in the box to the right, I hereby also certify that, if a generic version of Lidoderm was available at a cheaper price from August 23, 2012 to September 14, 2013, I would have purchased the generic version of Lidoderm. | |

| GENERIC LIDODERM (LIDOCAINE PATCH 5%) BOXES (OF 30 PATCHES EACH) | NUMBER OF  BOXES (OF 30 PATCHES EACH) |
|---|---|
| Provide the number of generic Lidoderm (Lidocaine patch 5%) boxes (of 30 patches each) you purchased from September 15, 2013 through August 1, 2014 in the above-listed states. | |

### Section E: Note Regarding Documentation

**You do not need to provide any documentation at this time**.  However, the Claims Administrator may ask for additional proof of payment.  Any one of the following is acceptable as proof of payment:

1) Itemized receipts, cancelled checks, or credit card statement that show a payment for brand or generic versions of Lidoderm (Lidocaine patch 5%); or
2) An EOB (explanation of benefits) from your insurer that shows you paid for brand or generic versions of Lidoderm Lidocaine patch 5%); or
3) Records from your pharmacy showing that you paid for brand or generic versions of Lidoderm (Lidocaine patch 5%).

## Section F: Certification

I have read and am familiar with the contents of this Claim Form.  I certify that the information I have set forth in this Claim Form and in any documents attached by me are true, correct and complete to the best of my knowledge. I certify that I (or the Class Member I represent) paid for the number of boxes set forth above of brand Lidoderm between August 23, 2012, and September 14, 2013, and/or generic versions of Lidoderm (Lidocaine patch 5%) between September 15, 2013, and August 1, 2014, for consumption by me or my family members in Arizona, California, Florida, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, or Wisconsin.

I further certify that I (or the Class Member I represent) did not opt out of the certified Class in this Action. Nor did I (or the Class Member I represent) purchase brand or generic versions of Lidoderm (Lidocaine patch 5%) for purposes of resale.

In addition, I have not (or the represented Class Member has not) served as officer, director, manager, or employee of defendants Endo, Teikoku or Watson; nor am I a judge or justice assigned to hear any aspect of this lawsuit or their immediate family.

To the extent I have been given authority to submit this Claim Form by a Class Member on his or her behalf, and accordingly am submitting this Claim Form in the capacity of an Authorized Agent, with authority to submit it by the Class Member identified on a separate sheet of paper submitted with this form, and to the extent I have been authorized to receive on behalf of this Class Member(s) any and all amounts that may be allocated to it from the Settlement Fund, I certify that such authority has been properly vested in me and that I will fulfill all duties I may owe the Class Member. In the event amounts from the Settlement Fund are distributed to me and a Class Member later claims that I did not have the authority to claim and/or receive such amounts on its behalf, I and/or my employer will hold the Class, counsel for the Class, Defendants, and the Claims Administrator harmless with respect to any claims made by the Class Member.

I hereby submit to the jurisdiction of the United States District Court for the Northern District of California for all purposes connected with this Claim Form, including resolution of disputes relating to this Claim Form. I acknowledge that any false information or representations contained herein may subject me to sanctions, including the possibility of criminal prosecution. I agree to supplement this Claim Form by furnishing documentary backup for the information provided herein, upon request of the Claims Administrator.

**I certify that the above information supplied by the undersigned is true and correct to the best of my knowledge and that this Claim Form was executed this _____ day of _____, 2018.**

| Signature | Print or Type Name |
|---|---|
|  |  |

Electronically file or mail the completed Claim Form postmarked on or before ==DATE==, to the following address:

<div align="center">

Lidoderm End-Payor Claims Administrator

c/o KCC Class Action Services

P.O. ==XXX==

==XX, XX XXXXX-XXXX==

</div>

Toll-Free Telephone: <u>1-866-700-0414</u>          Website: <u>http://www.lidodermantitrustlitigation.com/</u>

<div align="center">

**REMINDER CHECKLIST:**

</div>

1. Please complete and sign the above Claim Form.
2. Keep a copy of your Claim Form and supporting documentation for your records.
3. If you would also like acknowledgement of receipt of your Claim Form, please complete the form online or mail this form via Certified Mail, Return Receipt Requested.
4. If you move and/or your name changes, please send your new address and/or your new name or contact information to the Claims Administrator via the Settlement Website or U.S. Mail.

EXHIBIT A-3

<table>
<tr><td>

**MUST BE POSTMARKED OR FILED ELECTRONICALLY ON OR BEFORE**

</td><td>

United States District Court for the
Northern District of California

*In re Lidoderm Antitrust Litigation*
Case No. 14-MD-02521-WHO

</td><td>

**FOR OFFICIAL USE ONLY**

**\*ABDCA99999\***

</td></tr>
</table>

## THIRD-PARTY PAYOR CLAIM FORM

Use Blue or Black Ink Only

> *ATTENTION: THIS FORM IS ONLY TO BE FILLED OUT ON BEHALF OF A THIRD-PARTY PAYOR*
> *NOT INDIVIDUAL CONSUMERS*

**To qualify to receive a payment from this Settlement, you must complete and submit this Claim Form.**

### PART I – CLAIMANT IDENTIFICATION

| SECTION A | | SECTION B |
|---|---|---|
| COMPLETE ONLY IF YOU ARE SUBMITTING ON BEHALF OF YOUR COMPANY OR HEALTH PLAN | **OR** | COMPLETE ONLY IF YOU ARE SUBMITTING AS AN AUTHORIZED AGENT ON BEHALF OF ONE OR MORE CLASS MEMBERS. |

**Section A: Complete Only if Submitting on Behalf of Your Company or Health Plan**

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing at the address below.

Company or Health Plan Name

Contact Name

Address 1

Address 2                                                                 Floor/Suite

City                                              State                    Zip Code

Area Code - Telephone Number                      Tax Identification Number

Email Address

Page **1** of **5**

List all other names by which your company or health plan has been known and any other Federal Employer Identification Numbers ("FEINs") you have used since August 23, 2012 (use a separate sheet if necessary).

☐ Health Insurance Company/HMO   ☐ Self-Insured Employee Health Plan   ☐ Self-Insured Health & Welfare Fund

☐ Other (Explain)

## Section B: Authorized Agent Only

The Claims Administrator will use this information for all communications regarding this Claim Form.  If this information changes, you MUST notify the Claims Administrator in writing at the address above.

\* As an Authorized Agent, please check how your relationship with the Class Member(s) is best described:

☐   Third-Party Administrator

☐   Pharmacy Benefits Manager

☐   Other (Explain):

Authorized Agent's Company Name

Contact Name

Address                                                                 Floor/Suite

City                                          State          Zip Code

Area Code - Telephone Number                  Authorized Agent's Tax Identification Number

Email Address

Please list the name, address and FEIN of every Class Member (i.e., Company or Health Plan) for whom you have been duly authorized to submit this Claim Form (attach additional sheets to this Claim Form as necessary).  Alternatively, you may submit the requested list of Class Member names, addresses, and FEINs in an electronic format, such as Excel or a tab-delimited text file.  Please contact the

Claims Administrator to determine what formats are acceptable.

| CLASS MEMBER'S NAME AND (IF AVAILABLE) ADDRESS | CLASS MEMBER'S FEIN |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

## Section C: Should I File a Claim Form?

You (or the class member(s) on whose behalf you are submitting this form) must meet the following criteria to be eligible for a payment from the Proposed Settlements:

- Entity in the United States and its territories;

- Paid and/or provided reimbursements for some or all of the purchase price of (i) branded Lidoderm during the time period from August 23, 2012 through September 14, 2013, and/or (ii) AB-rated generic Lidoderm (Lidocaine 5% patch) during the time period from September 15, 2013 through August 1, 2014;

- For consumption by the insureds, plan participants or beneficiaries of you or the class member on whose behalf you are submitting this form; and

- In one or more of the following states: Arizona, California, Florida, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, or Wisconsin (the Class States).

Excluded from the Class and from the Proposed Settlements are:

- Subsidiaries and affiliates of defendants Endo Pharmaceuticals Inc. ("Endo"); Teikoku Pharma USA, Inc. or Teikoku Seiyaku Co., Ltd. (together, "Teikoku"); or Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., Actavis plc, Anda Inc., Anda Pharmaceuticals, Inc., or Valmed Pharmaceuticals, Inc. (together, "Watson");

- Fully insured health plans (i.e., a plan that purchased insurance that covered 100 percent of the plan's reimbursement obligations to all of its members);

- Government entities, other than government-funded employee benefit plans;

- Pharmacy benefit managers; and

- Entities that previously excluded themselves from the class and have not requested to opt back in.

☐ By checking this box, I confirm that I have read the definition of the class and I am not (or the Claimant on whose behalf I am submitting this form is not) excluded from participating in the Proposed Settlement.

## PART II – AMOUNT CLAIMED

Please type or print in the box below, the total amount paid or reimbursed by you—net of co-pays, deductibles, and co-insurance—for purchases of brand Lidoderm between August 23, 2012, and September 14, 2013, and/or generic versions of Lidoderm (Lidocaine patch 5%) between September 15, 2013, and August 1, 2014, by your insureds, plan participants, or beneficiaries or their family members in Arizona, California, Florida, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, or Wisconsin.

| BRAND LIDODERM OR GENERIC LIDODERM (LIDOCAINE PATCH 5%) | TOTAL AMOUNT PAID |
|---|---|
| Purchases or Reimbursements from August 23, 2012 thru September 14, 2013 in the above-listed states. | $ |

| GENERIC LIDODERM (LIDOCAINE PATCH 5%) | TOTAL AMOUNT PAID |
|---|---|
| Purchases or Reimbursements from September 15, 2013 thru August 1, 2014 in the above-listed states. | $ |

You must submit claims data and information (documentation) in support of the purchase amounts stated above if the total net claim amount is more than $10,000.  That claims documentation must include the following fields: Client FEIN, Carrier ID, Account ID, Group ID, Member ID, Date of Service, NDC, Drug Name, Product Description, Quantity, Total Paid, Member Paid, Plan Paid, Pharmacy Name and Pharmacy Location.

If your total net claim is $10,000 or less, you need not provide complete claims data with this Claim Form, but the Claims Administrator may require supporting documentation.

## PART III – CERTIFICATION

I (We) certify that the information I (we) have set forth in the above Claim Form and in any documents attached by me (us) are true, correct and complete to the best of my (our) knowledge. I (We) certify that the Class Member(s) I (we) represent paid the total amount set forth above in out-of-pocket expenditures for purchases or reimbursements—net of co-pays, deductibles, and co-insurance—for purchases of brand Lidoderm between August 23, 2012, and September 14, 2013, and/or generic versions of Lidoderm (Lidocaine patch 5%) between September 15, 2013, and August 1, 2014, for consumption by its insureds, plan participants, or beneficiaries or their family members, in Arizona, California, Florida, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, or Wisconsin.

I (We) further certify that I (we) or the Class Member(s) I (we) represent did not purchase such Lidoderm or generic Lidoderm (Lidocaine patch 5%) for purposes of resale. In addition, I (we) certify that the Class Member(s) whose payments and/or reimbursements form the basis for this claim has not been a subsidiary or affiliate of Endo, Teikoku, or Watson.  I (we) certify that the entity(ies) whose payments and/or reimbursements form the basis for this claim is not subject to any of the other exclusions identified in Section C above.

To the extent I (we) have been given authority to submit this Claim Form by a Class Member(s) on its behalf, as its Authorized Agent, I hereby certify that I have been given such authority and will distribute the claim payment to such Class Member pursuant to the terms of our Agreement.  I hereby expressly acknowledge that the Claims Administrator has the right to audit such authority or distribution of funds to the Class Member.  In the event amounts from the Settlement Fund are distributed to me (us) and a Class Member(s) later claims that I (we) did not have authority to claim and/or receive such amounts on that Class Member's behalf, I (we) and our employers, affiliates, subsidiaries and all related entities will hold the Class, counsel for the Class, Defendants, and the Claims Administrator harmless with respect to any claims made by the Class Member(s).

I (We) hereby submit to the jurisdiction of the United States District Court for the Northern District of California for all purposes

connected with the Claim Form, including resolution of disputes relating to this Claim Form. I (we) acknowledge that any false information or representations contained herein may subject me (us) to sanctions, including the possibility of criminal prosecution. I (we) agree to supplement this Claim Form by furnishing documentary backup for the information provided herein, upon request of the Claims Administrator.

**I certify that the above information supplied by the undersigned is true and correct to the best of my knowledge and that this Claim Form was executed this _____ day of _____, 2018.**

Signature

Position/Title

Print Name

Date

Electronically file the completed Claim Form, along with any supporting documentation, postmarked on or before **DATE** to:

KCC Class Action Service
P.O. XXX
XX, XX XXXXX-XXXX

Toll-Free Telephone: 1-866-700-0414        Website: http://www.lidodermantitrustlitigation.com/

**REMINDER CHECKLIST:**

1. Please complete and sign the above Claim Form. Attach or upload any documentation supporting your claim.
2. Keep a copy of your Claim Form and supporting documentation for your records.
3. If you move and/or your name changes, please send your new address and/or your new name or contact information to the Claims Administrator via the Settlement Website or U.S. Mail (the addresses are listed above).

EXHIBIT B

## ESCROW AGREEMENT

This Escrow Agreement dated March 20, 2018, is made among Cohen Milstein Sellers & Toll PLLC, Girard Gibbs LLP and Heins Mills & Olson, P.L.C. ("Class Counsel"); Computershare Trust Company, N.A., as escrow agent ("Escrow Agent"); Watson, by and through its counsel Skadden, Arps, Slate, Meagher & Flom LLP; Endo, by and through its counsel Dechert LLP; and Teikoku, by and through its counsel Squire Patton Boggs LLP.

Recitals

A.      This Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to the settlement agreements dated March 20, 2018 attached hereto as Exhibits A, B and C (the "Settlement Agreements"), entered into by, among others, Class Counsel on behalf of the End-Payor Plaintiffs, and (a) defendant Endo Pharmaceuticals Inc. ("Endo"); (b) defendants Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. (together, "Teikoku"); (c) defendants Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., Actavis plc, Anda Inc., Anda Pharmaceuticals, Inc., and Valmed Pharmaceuticals, Inc.  (together, "Watson" and together with Endo and Teikoku, "Defendants"), will be paid to settle the consolidated indirect purchaser class action that was part of *In re Lidoderm Antitrust Litigation*, 14-md-02521, pending in the Northern District of California (the "Court").

B.      Pursuant to the terms of the Settlement Agreements, the Defendants have agreed to pay or cause to be paid various amounts totaling $104.75 million (the "Settlement Amount") into an escrow account in settlement of the claims brought against the Defendants in the class action.

C.      The Settlement Amount, together with any interest accrued thereon, is to be used to satisfy payments to Class Members as approved by the Court, payments for attorneys' fees and expenses awarded by the Court, payments for tax liabilities, and other costs allowed pursuant to the terms of the Settlement Agreements.

D.      Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreements.

**Agreement**

1.      Appointment of Escrow Agent.  The Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Escrow Agreement, the Settlement Agreements and any other exhibits or schedules later annexed hereto and made a part hereof.

2.      The Escrow Account.  The Escrow Agent shall establish and maintain an escrow account titled as the Lidoderm Settlement Fund (the "Escrow Account").  Teikoku shall pay the Teikoku Settlement Amount, Watson shall pay the Watson Settlement Amount, and Endo shall pay the Endo Settlement Amount into the Escrow Account as provided in their respective Settlement Agreements.  Escrow Agent shall receive the Settlement Amount into the Escrow Account; the Settlement Amount and all interest accrued thereon shall be referred to herein as

the "Settlement Fund."  The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreements and in orders of the Court approving the disbursement of the Settlement Fund.

3.     <u>Investment of Settlement Fund</u>.  At the specific written direction of Class Counsel identified below, Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. The Escrow Agent shall reinvest the proceeds of these instruments or accounts as they mature in similar instruments or accounts at their then-current market rates.  Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Escrow Agent.  Escrow Agent will not provide any investment advice in connection with the Settlement Fund.  Escrow Agent shall be entitled to retain for its own benefit, as partial compensation or benefit for its services hereunder, any reduced bank charges or fees received, provided that Escrow Agent confirms that it will not remove or deduct any money from the Settlement Fund as a result.

4.     <u>Escrow Funds Subject to Jurisdiction of the Court</u>.  The Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Settlement Fund shall be distributed, pursuant to the Settlement Agreements and on further order(s) of the Court.

5.     <u>Tax Treatment & Report</u>.  The Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treas. Reg. §1.468B-1.  Class Counsel, Escrow Agent and, as required by law, the Defendants, shall jointly and timely take such actions as necessary or advisable to qualify the Settlement Fund as a "Qualified Settlement Fund" within the meaning of Treas. Reg. §1.468B-1 and fulfill the requirements of such Treasury Regulation, including making a "relation-back election" under Treas. Reg. §1.468B-1(j)(2), if applicable, to the earliest permitted date. If applicable, the Class Counsel will prepare the "relation-back election" pursuant to Treas. Reg. §1.468B-1(j)(2) for execution by the Defendants and the Class Counsel and attach to it the Settlement Fund's first income tax return.  For purposes of §468B of the Internal Revenue Code of 1986, as amended (the "Code"), and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be Class Counsel and Class Counsel shall take all actions to ensure that Class Counsel qualifies as such. Class Counsel shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required or advisable under Treas. Reg. §1.468B-1. Class Counsel will obtain an employer identification number for the Settlement Fund and timely prepare a "Regulation Section 1.468B-3 Statement" pursuant to Treas. Reg. §1.468B-3(e) on behalf of the Defendants and provide copies to each Defendant's counsel for review and approval.  Class Counsel shall timely and properly prepare and file any informational and other tax returns (including state, local or foreign) necessary or advisable with respect to the Settlement Fund and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

6.      <u>Tax Payments of Settlement Fund</u>.  All taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreements, shall be treated as and considered to be a cost of administration of the Settlement Fund, and the Escrow Agent shall timely pay such Taxes out of the Settlement Fund, as appropriate, without prior order of the Court, as directed by Class Counsel. Class Counsel shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law.  The Class Counsel may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due as set forth in Sections 5 and 6 of this Escrow Agreement, and the expense of such assistance shall be paid from the Settlement Fund subject to approval of the Court.  No Defendant nor their respective counsel shall have any liability or responsibility for taxes or tax expenses, for preparing (or paying for others to prepare) tax returns, tax reports, or calculation of any tax payments, or for obtaining or maintaining the tax status desired for the Settlement Fund.  The Settlement Fund shall indemnify and hold each Defendant harmless for any taxes (and any additional tax liability, interest or penalties arising therefrom) that may be deemed to be payable by such Defendant by reason of the income earned on the Settlement Fund, and Escrow Agent shall establish such reserves as are necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this Section 6. If any portion of the Settlement Fund is returned to a Defendant pursuant to the terms of a Settlement Agreement, that Defendant shall provide Escrow Agent with a properly completed IRS Form W-9.

7.      <u>Disbursement Instructions</u>

(a)      Prior to the date on which all three of the Settlement Agreements have reached their Effective Date, the Escrow Agent may disburse only such funds as are necessary to pay Notice and Administration Expenses and subject to the following authorization requirements.  Disbursements up to $500,000 in the aggregate may be authorized solely by Class Counsel.  Disbursements above this amount must be authorized by Class Counsel *and* by either (i) Defendants' counsel or (ii) an order of the Court.  Authorization of Class Counsel shall require written consent from each Class Counsel identified above.  Authorization of Defendants' counsel, to the extent required under this paragraph 7(a), shall require written consent from each Defendant's counsel identified in paragraph 13.  All funds transfer instructions and required authorizations must be in writing.

(b)      Disbursements other than those described in subparagraph (a) above, including disbursements for distribution of Class Settlement Funds, may be made only after the date as of which all three of the Settlement Agreements have achieved an Effective Date as defined in the individual Settlement Agreements and must be authorized by either (i) an order of the Court, or (ii) Class Counsel.

(c)      In the event funds transfer instructions are given, whether by facsimile, e-mail, telecopier or otherwise, Escrow Agent will obtain confirmation of such instructions by telephone call back to the person or persons required to provide authorization pursuant to subparagraphs (a) and (b) above; provided, however, that such confirmation shall not be necessary if Escrow Agent receives a written letter authorizing a disbursement from the law firms required in subparagraphs (a) and (b) above, as applicable, on their letterhead and signed

3

by one of the persons identified in paragraph 13.  To assure accuracy of the instructions it receives, Escrow Agent may record such call backs.  If Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved.  The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Escrow Agent.  Class Counsel will notify Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed.  If it is determined that the transaction was delayed or erroneously executed as a result of Escrow Agent's error, Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law.  Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

8.     <u>Termination of Settlement</u>.    If any Settlement Agreement terminates in accordance with its terms, Class Counsel and the applicable Defendant(s) shall jointly notify Escrow Agent of the termination of that Settlement Agreement.  Upon such notification, the balance of the Settlement Fund attributable to the applicable Defendant(s) shall be returned to such Defendant(s) in accordance with instruction from the Court, Class Counsel and/or such Defendant's counsel as provided for in paragraph 17 of that Defendant's Settlement Agreement.

9.     <u>Fees</u>.  The Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit D.  All fees and expenses of Escrow Agent shall be paid solely from the Settlement Fund after approval of such payment by the Court and Class Counsel.  If Escrow Agent is asked to provide additional services, such as the preparation and administration of payments to Authorized Claimants, a separate agreement and fee schedule will be entered into. Defendants shall not have any responsibility for any of the foregoing compensation or fees.

10.    <u>Duties, Liabilities and Rights of Escrow Agent</u>.  This Escrow Agreement sets forth all of the obligations of Escrow Agent, and no additional obligations shall be implied from the terms of this Escrow Agreement or any other agreement, instrument or document.

(a)    Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Class Counsel (and, where instruction, notice, certification, demand, consent or authorization from a Defendant or its counsel are required by this Agreement and/or a Defendant's Settlement Agreement, by that Defendant's counsel), without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the Court.  Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to do so.

(b)    Escrow Agent may consult with legal counsel of its selection, excluding Class Counsel and counsel for any of the Defendants, in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Escrow Agent acts in accordance with

4

the reasonable opinion and instructions of counsel.  Escrow Agent shall have the right to reimburse itself for reasonable and necessary legal fees and expenses actually incurred.  Such fees and expenses shall be paid solely from the Settlement Fund after approval by the Court and Class Counsel.

(c)     Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

(d)     The Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it except to the extent that the Escrow Agent's bad faith, willful misconduct or gross negligence was the primary cause of any loss.  Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of Section 3 of this Escrow Agreement.  The Escrow Agent will be indemnified by the Settlement Fund, and held harmless against, any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act  or alleged omission by the Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Escrow Agent of, any of the Escrow Agent's duties under this Agreement, except as a result of the Escrow Agent's bad faith, willful misconduct or gross negligence.  The Escrow Agent may execute any of its powers and perform any of its duties hereunder directly or through affiliates or agents.  Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, incidental, punitive, indirect or consequential loss or damage of any kind whatsoever.

(e)     Upon distribution of all of the funds in the Escrow Account pursuant to the terms of this Escrow Agreement and any orders of the Court, Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Escrow Agreement.

(f)     Within 10 business days of a Defendant depositing Settlement Funds with the Escrow Agent, and at the end of each calendar year quarter thereafter, the Escrow Agent shall provide documentation to Defendants' Counsel and Class Counsel showing that the Escrow Account has been established and is being maintained in the form specified, and the Settlement Funds invested as specified in paragraph 3 above.

(g)     The Escrow Agent is and shall be independent, provided that as parties hereto, Class Counsel and Defendants shall be entitled to institute actions to compel or require performance by the Escrow Agent of its obligations hereunder.  The Escrow Agent hereby agrees to submit to jurisdiction and venue of the Court with respect to issues relating to the Settlement Fund, or for purposes of enforcement, clarification, or amendment of the provisions of this Escrow Agreement, and to comply with all directions given by the Court.

(h)     The Escrow Agent shall, upon request of Class Counsel, advise counsel of any maturities, conversion privileges, and other matters of a like manner concerning the investments held in accordance with this Escrow Agreement.

5

(i)     The Escrow Agent shall, upon request of Class Counsel, furnish to counsel statements of transactions, which statements shall be certified by the Escrow Agent.

(j)     The parties to this Escrow Agreement reserve the right to modify this Escrow Agreement upon written agreement of all parties, including the Escrow Agent.

(k)     The Escrow Agent shall treat the fact of the settlement and Settlement Agreements referred to herein, as well as all facts or other information pertaining to the Settlement Agreements, as confidential and shall not disclose or use such information in any way other than as necessary to fulfill its role as Escrow Agent.

(l)     If the Escrow Agent is uncertain as to its duties or rights under this Escrow Agreement, or receives instructions, claims or demands from any other party to the Escrow Agreement or any third party, that in the Escrow Agent's opinion, conflict with the terms of this Escrow Agreement, the Escrow Agent shall refrain from taking any action in connection with the Settlement Fund with respect to which such uncertainty or conflict exists, until it is able to obtain a resolution of the issue pursuant to this subparagraph. The Escrow Agent shall notify Class Counsel of the duties or rights to which it is uncertain. During the period in which the issue remains unresolved, the Escrow Agent's sole obligation with respect to the portion of the Settlement Fund that is the subject of the dispute shall be to keep safely such funds and related books and records as it holds under this Escrow Agreement; provided, that with respect to any portion of the Settlement Fund as to which there is no dispute, the Escrow Agent shall be bound by the terms and conditions of this Escrow Agreement.

11.     Non-Assignability by Escrow Agent.    Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Class Counsel and the Defendants.

12.     Resignation of Escrow Agent.    Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Escrow Agreement herein.   On the effective date of such resignation, Escrow Agent shall deliver this Escrow Agreement together with any and all related instruments or documents and all funds in the Escrow Account to the successor Escrow Agent, subject to this Escrow Agreement.   If a successor Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Escrow Agent may petition the Court for the appointment of a successor Escrow Agent, or other appropriate relief.   Any such resulting appointment shall be binding upon all of the parties to this Escrow Agreement.

13.     Notices.    Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

6

If to Class Counsel:

Dena C. Sharp
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: chc@girardgibbs.com

Renae D. Steiner
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: rsteiner@heinsmills.com

Sharon K. Robertson
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: srobertson@cohenmilstein.com

If to Defendants' Counsel:

David S. Elkins
Joseph A. Meckes
**SQUIRE PATTON BOGGS (US) LLP**
1801 Page Mill Drive, Suite 110
Palo Alto, CA 94304
Telephone: (650) 856-6500
Facsimile: (650) 843-8777
Email: david.elkins@squirepb.com
Email: joseph.meckes@squirepb.com

*Counsel for Defendants Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd.*

George Gordon
**DECHERT LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: (215) 994-2382
Email: george.gordon@dechert.com

*Counsel for Defendant Endo Pharmaceuticals Inc.*

Karen Hoffman Lent
Sean M. Tepe
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM**
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (917) 777-3000
Email: Karen.Lent@skadden.com
Email: Sean.Tepe@skadden.com

*Counsel for Defendants Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., Actavis plc., Anda Inc., Anda Pharmaceuticals, Inc., and Valmed Pharmaceuticals, Inc.*

8

If to Escrow Agent:

**COMPUTERSHARE TRUST
COMPANY, N.A.**
8742 Lucent Boulevard, Suite 225
Highlands Ranch, CO  80129
Attention:  Charles Gauthier/ Rose Stroud
Facsimile No. (303) 262-0608
Email: corporate.trust@computershare.com

**COMPUTERSHARE TRUST
COMPANY, N.A.**
480 Washington Boulevard
Jersey City, NJ  07310
Attention:  Managing Counsel – Corporate
Trust
Facsimile No.:  (201) 680-4610

14.  <u>Patriot Act Warranties</u>.  Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information").  The parties to this Escrow Agreement agree that they will provide the Escrow Agent with such Identification Information as the Escrow Agent may request in order for the Escrow Agent to satisfy the requirements of the Patriot Act.

15.   <u>Entire Agreement</u>.  This Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto.  Any modification of this Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto.  To the extent this Escrow Agreement conflicts in any way with a Defendant's Settlement Agreement, the provisions of a particular Defendant's Settlement Agreement shall govern with respect to that Defendant; provided, however, that this Escrow Agreement shall govern to the extent of any such conflict related to the rights and obligations of the Escrow Agent.

16.   <u>Governing Law</u>.  This Escrow Agreement shall be governed by the law of the State of California in all respects, without regard to any principles of conflicts of laws.  The parties hereto submit to the jurisdiction of the Court in connection with any proceedings commenced regarding this Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Escrow Agent may commence pursuant to this Escrow Agreement for the appointment of a successor escrow agent, and all parties hereto submit to the jurisdiction of the Court for the determination of all issues in such proceedings, and irrevocably waive any objection to venue or inconvenient forum.

17.   <u>Termination of Escrow Account</u>.  The Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreements and this Escrow Agreement.

18.   <u>Miscellaneous Provisions</u>.

(a)   <u>Counterparts</u>.  This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Escrow Agreement.

(b)   <u>Further Cooperation</u>.  The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Escrow Agreement in order (a) to give Escrow Agent confirmation and assurance of Escrow Agent's rights, powers, privileges, remedies and interests under this Escrow Agreement and applicable law, (b) to better enable Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Escrow Agreement, each in such form and substance as may be acceptable to Escrow Agent.

(c)   <u>Non-Waiver</u>.  The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

19.   <u>Savings Provision</u>. Notwithstanding anything herein to the contrary, in the event that any provision of this Escrow Agreement shall at any time be considered not to be in compliance with §468B of the Code, together with any and all administrative authority and announcements thereunder, such offending portion of this Escrow Agreement shall be considered null, void, and of no effect, without any action by any court or by the Escrow Agent, or the Class Counsel. The overarching purpose of the Settlement Fund is to at all times be in compliance with §468B of the Code and all administrative authority and announcements thereunder.  The Class Counsel may request that the Escrow Agent petition the Court to amend, either in whole or in part, any administrative provision of this Escrow Agreement, which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.  In the event that this Section 19 applies to render an offending provision null, void, or of no effect, the remaining non-offending provisions of this Escrow Agreement shall not be affected thereby, and shall be valid and enforced to the fullest extent permitted by law.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

Computershare Trust Company, N.A., as Escrow Agent

By:   _____

Rose Stroud, Authorized Signer

Class Counsel

By: _____
      Sharon K. Robertson

By: _____
      Dena C. Sharp

By: _____
      Renae D. Steiner


Defendants

By: _____
      Joseph Meckes on behalf of Teikoku

By: _____
      George Gordon on behalf of Endo

By: _____
      Karen Lent on behalf of Watson

11

By: _____
       Sharon K. Robertson

By: _____
       Dena C. Sharp

By: _____
       Renae D. Steiner

Defendants

By: _____
       Joseph Meckes on behalf of Teikoku

By: _____
       George Gordon on behalf of Endo

By: _____
       Karen Lent on behalf of Watson

11

By: _____
      Sharon K. Robertson


By: _____
      Dena C. Sharp


By: _____
      Renae D. Steiner


Defendants


By: _____
      Joseph Meckes on behalf of Teikoku

By: _____
      George Gordon on behalf of Endo


By: _____
      Karen Lent on behalf of Watson

By: _____
      Sharon K. Robertson


By: _____
      Dena C. Sharp


By: _____
      Renae D. Steiner


Defendants


By: _____
      Joseph Meckes on behalf of Teikoku


By: _____
      George Gordon on behalf of Endo


By: _____
      Karen Lent on behalf of Watson

11

**Exhibit A-C**

**Settlement Agreements**

[Submitting Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO: ALL END-PAYOR ACTIONS | |

**SETTLEMENT AGREEMENT BETWEEN THE END-PAYOR CLASS AND ENDO PHARMACEUTICALS INC.**

THIS SETTLEMENT AGREEMENT ("Settlement Agreement" or the "Settlement") is made and entered into as of March 20, 2018, by and between (a) defendant Endo Pharmaceuticals Inc. ("Endo"); and (b) plaintiffs Allied Services Division Welfare Fund; City of Providence; International Union of Operating Engineers Local 49 Health and Welfare Fund; International Union of Operating Engineers Local 132 Health and Welfare Fund; Iron Workers District Council of New England Welfare Fund; NECA-IBEW Welfare Trust Fund; United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund; Welfare Plan of the International Union of Operating Engineers Locals 137, 137A, 137B, 137C, 137R, and Ottavio Gallotto (together, "Plaintiffs"), individually and on behalf of the certified end-payor class in this Action (the "Class" or the "End-Payor Class," as defined in paragraph 1 below).

WHEREAS, Plaintiffs filed lawsuits alleging that Endo and Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. (together, "Teikoku") entered an agreement with Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., and Actavis plc (together, "Watson" and together with Endo and Teikoku, "Defendants") not to compete in the sale of lidocaine 5% patches, *i.e.*, Lidoderm and its generic equivalents, in violation of state antitrust and consumer protection laws, and that Plaintiffs and the Class Members incurred damages as a result, as detailed in End-Payor Plaintiffs' Corrected Third Consolidated Amended Complaint, filed in this Action on June 18, 2015 (ECF No. 208) (the "Complaint");

WHEREAS, Plaintiffs' claims were transferred from various federal judicial districts and consolidated as part of *In re Lidoderm Antitrust Litigation,* No. 3:14-md-02521-WHO (the "Action"), in the United States District Court for the Northern District of California (the "Court");

WHEREAS, Endo has asserted defenses to Plaintiffs' claims, denies each and every one of Plaintiffs' allegations of unlawful or wrongful conduct, denies that any conduct challenged by Plaintiffs caused any damage whatsoever, and denies all liability of any kind;

WHEREAS, the Court certified a class of end-payors of Lidoderm and its generic equivalents as set forth in paragraph 1 below; appointed Plaintiffs as "Class Representatives;" and appointed the law firms Girard Gibbs LLP, Cohen Milstein Sellers & Toll PLLC, and Heins Mills & Olson PLC as "Class Counsel," *see In re Lidoderm*, No. 14-md-02521-WHO (N.D. Cal. Feb 21, 2017) (Orrick, J.) (ECF No. 670);

WHEREAS, Class Counsel and counsel for Endo have engaged in arm's-length settlement negotiations, including under the supervision of both a private and a court-appointed mediator, and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the Settlement between Plaintiffs, both individually and on behalf of the End-Payor Class, and Endo;

WHEREAS, Class Counsel have concluded, after extensive fact and expert discovery, and after carefully considering the circumstances of this Action, including the claims asserted in the Complaint and Endo's defenses thereto, that it would be in the best interests of the End-Payor Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and assure a benefit to the End-Payor Class and further, that Class Counsel consider the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and in the best interests of the End-Payor Class;

WHEREAS, Endo has concluded, despite its belief that it is not liable for the claims asserted and that it has good defenses thereto, that it would be in its best interests to enter into this Settlement Agreement to avoid the risks and uncertainties inherent in complex litigation and also to avoid additional costs of further litigation; and

WHEREAS, Plaintiffs and Endo agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Endo, or of the truth of any of the claims or allegations alleged in the Complaint.

NOW THEREFORE, it is agreed by the undersigned Class Counsel, on behalf of Plaintiffs and the End-Payor Class, on the one hand, and Endo on the other, that this Action and

all claims of Plaintiffs and the End-Payor Class be fully, finally, and forever settled, compromised, discharged, and dismissed with prejudice, without costs as to Plaintiffs, the End-Payor Class or Endo, subject to Court approval, on the following terms and conditions:

1. **Definitions**

   a. "Administration Expenses" means costs for administering the Settlement, including without limitation providing notice, maintaining the notice website, receiving and processing claims, analyzing purchase and sales data, and paying taxes and fees associated with maintaining the Escrow Account.

   b. "Claims Administrator" means the entity appointed by the Court to provide notice to the End-Payor Class, process the claims submitted by Class Members, and carry out any other duties or obligations provided for by the Settlement.

   c. "Class" or "End-Payor Class" means the class certified by the Court in its February 21, 2017 Order (ECF No. 670):

      (a) All persons and entities in the United States and its territories who, in Arizona, California, Florida, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, or Wisconsin ("Class States"), for consumption by themselves or their family member, or by their insureds, plan participants or beneficiaries, paid and/or provided reimbursements for some or all of the purchase price of:

         i. Branded Lidoderm for the time period August 23, 2012 through September 14, 2013; and/or

         ii. AB-rated generic Lidoderm for the time period September 15, 2013 through August 1, 2014;

      -and-

      (b) Third-party payors Cigna, MedImpact Healthcare Systems, Inc., Comprehensive Health Management, Inc. Part D, and Express Scripts Senior Care to the extent they provided, under their Medicare Part D plans, reimbursements for some or all of the price of branded Lidoderm purchased in Class States for the time period September 15, 2013 through August 1, 2014.

Excluded from the End-Payor Class are:

(a) Defendants and their officers, directors, management, employees, subsidiaries, and affiliates;

(b) Those who, after September 15, 2013, paid and/or provided reimbursements for branded Lidoderm and did not purchase or reimburse for generic Lidoderm, except third-party payors Cigna, MedImpact Healthcare Systems, Inc., Comprehensive Health Management, Inc. Part D, or Express Scripts Senior Care for their Part D insurance;

(c) Government entities, other than government-funded employee benefit plans;

(d) Fully insured health plans (*i.e.*, plans that purchased insurance that covered 100 percent of the plan's reimbursement obligations to all of its members);

(e) "Single flat co-pay" consumers who purchased Lidoderm or generic Lidoderm only via a fixed dollar co-payment that does not vary on the basis of the purchased drug's status as branded or generic (*e.g.*, $20 for both branded and generic drugs);

(f) "Flat generic co-pay" consumers who, after September 15, 2013, purchased generic Lidoderm via a fixed dollar copayment (*e.g.*, $10 for generic drugs) regardless of the co-payment applicable to branded drugs;

(g) Consumers who purchased or received Lidoderm or its AB-rated generic equivalent through a Medicaid program only;

(h) Pharmacy benefit managers;

(i) The judges in this case and members of their immediate families; and

(j) The following entities that previously excluded themselves from the End-Payor Class and have not requested to opt back in: Carter Bank & Trust; CVS Health Corporation; Darby Dental Supply, LLC; Powell's City of Books; Rite Aid Corporation; The Western Union Co.; Wisconsin Evangelical Lutheran Synod; and Wood Group Management Services, Inc. *See* Order Regarding Opt-Outs, ECF 946 (Dec. 28, 2017).[1]

---

[1] The End-Payor Class includes the entities that previously filed opt-out requests, subsequently withdrew those requests and re-joined in the End-Payor Class. Those entities are identified in ECF 997, which is attached hereto as Exhibit G.

d.  "Class Members" means the members of the End-Payor Class.

e.  "Effective Date" means the date on which all of the following have occurred:  (i) the Settlement is not terminated pursuant to paragraphs 15 or 16 below; (ii) the Settlement is approved by the Court as required by Fed. R. Civ. P. 23(e); (iii) the Court enters a final approval order, entering a final judgment of dismissal with prejudice against Plaintiffs and Class Members who have not timely excluded themselves from the End-Payor Class, should the Court so allow such exclusion (*see infra* paragraph 16); and (iv) the period to appeal the final approval order has expired and/or all appeals have been finally resolved.

f.  "Endo First Payment" means $20,000,000.

g.  "Endo Second Payment" means $10,000,000.

h.  "Endo Settlement Amount" means $40,000,000 (the sum of the Endo First Payment, the Endo Second Payment, and the Endo Third Payment).

i.  "Endo Third Payment" means $10,000,000.

j.  "Escrow Account" means the qualified settlement escrow account which holds the Settlement Fund.

k.  "Escrow Agreement" means the agreement annexed hereto as Exhibit B.

l.  "Fee and Expense Award" means award(s) by the Court to Class Counsel of attorneys' fees, reasonable costs and expenses incurred in the prosecution of the Action, including any interest accrued thereon, and service awards to the named Plaintiffs.

m.  "GEHA" means the Government Employees Health Association.

n.  "Released Claims" means past, present, or future liabilities, claims, demands, obligations, suits, injuries, damages, levies, executions, judgments, debts, charges, actions, or causes of action, at law or in equity, whether class, individual, or otherwise in nature, and whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, arising out of or relating

5

to purchases of Lidoderm or 5% lidocaine patches at any time prior to the Effective Date that, for purchases by Plaintiffs or GEHA, arise under any (i) federal statute or (ii) statute or common law and, for purchases by the Class Members (other than GEHA), arise under any (i) federal statute or (ii) statute or common law in the Class States, relating to or arising out of the facts, occurrences, transactions, or other matters alleged or asserted in this Action, or that could have been alleged or asserted in this Action against the Releasees.

o. "Releasees" means Endo and its past, present and future parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and as applicable each of their past, present, and future officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators and representatives of each of the foregoing.

p. "Releasors" means Plaintiffs, Class Members and their respective past, present and future parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and as applicable each of their past, present, and future officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and representatives of each of the foregoing.

q. "Settlement Fund" means the Endo Settlement Amount, plus any amounts paid by Teikoku and Watson pursuant to their respective separate settlements with End-Payor Plaintiffs as well as any interest accrued or income earned thereon as described below.

r. "Endo Unspent Settlement Fund" means the Endo First Payment, plus the Endo Second Payment if such payment has been made, plus the Endo Third Payment if such payment has been made, plus one-third interest accrued on the Settlement

Fund, minus one-third of any Administration Expenses previously disbursed from the Escrow Account.

2.      **Reasonable Steps Necessary to Help Effectuate this Settlement**.  The parties and their counsel agree to undertake all reasonable steps necessary to help effectuate the Settlement, including undertaking all actions contemplated by and steps necessary to carry out the terms of this Settlement and to secure the prompt, complete, and final dismissal with prejudice of all claims in this Action against Endo.  This includes Endo serving notifications to appropriate federal and state officials pursuant to 28 U.S.C. § 1715.  Endo agrees not to seek decertification of the End-Payor Class.  Endo further agrees not to oppose the End-Payor Class's motions for preliminary or final approval of the Settlement, and agrees not to appeal any Court ruling granting either of these motions.

3.      **Motion for Preliminary Approval of the Settlement**.  Following the execution of the Settlement Agreement by all parties, Class Counsel shall prepare and file a motion requesting preliminary approval of the Settlement, and authorizing dissemination of notice to the Class.  The motion for preliminary approval shall include a proposed form of order in the form substantially as in Exhibit C hereto:

(a) requesting preliminary approval of the Settlement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and finding that dissemination of notice to the End-Payor Class is warranted;

(b) finding that the proposed plan of notice complies with Rule 23 and due process, and seeking approval of short- and long-form notices in the forms substantially as in Exhibits D-F hereto;

(c) approving the Plan of Allocation, in the form substantially as in Exhibit A hereto;

(d) providing that if final approval of the Settlement is not obtained, the Settlement shall be null and void and the parties will revert to their positions *ex ante* without prejudice to their claims or defenses; and

(e) setting a date for a motion for final approval, a deadline for objections and a fairness hearing.

After the Court preliminarily approves the Settlement, Class Counsel shall cause Class Members to receive notice of the Settlement.

4. **Motion for Final Approval and Entry of Final Judgment**. If the Court preliminarily approves the Settlement, Class Counsel shall submit a motion for final approval pursuant to the schedule provided for in the Preliminary Approval Order. The final approval motion shall seek entry of a final approval order:

(a) finding that notice given constitutes due, adequate and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

(b) finding the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and directing consummation of the Settlement pursuant to its terms;

(c) finding that all Class Members shall be bound by the Settlement Agreement and all of its terms;

(d) finding that the Releasors shall be bound by the releases set forth in paragraphs 12 and 13 of this Settlement Agreement, and shall be forever barred from asserting any claims or liabilities related to the Action or any Released Claims against any of the Releasees;

(e) directing that the Action be dismissed with prejudice and without costs in accordance with paragraph 14 below;

(f) determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal with prejudice be final;

(g) retaining exclusive jurisdiction over the Settlement, including the administration and consummation of the Settlement; and

(h) directing that, for a period of five years, the Clerk of the Court shall maintain the record of the entities that have excluded themselves from the End-Payor Class (which are identified in ECF 946, as modified by ECF 997) and that a certified copy of such records shall be provided to Endo.

5. **Finality of Settlement**. This Settlement Agreement shall become final upon the Effective Date.

6.     **Settlement Payments**.

(a)     Within 15 calendar days after the later of the entry of the preliminary approval order or receipt from Class Counsel of wire transfer instructions and any other information or forms required by Endo for purposes of making payments, Endo shall pay the Endo First Payment.  By February 15, 2019, Endo shall pay the Endo Second Payment.  By February 15, 2020, Endo shall pay the Endo Third Payment.

(b)     The payments provided for in subparagraph 6(a) above shall be held in the Escrow Account subject to the terms and conditions of the Escrow Agreement, and in accordance with the provisions of paragraphs 7-9, 16, and 17 below.  Endo shall not pay any additional amount at any time, whether for class notice costs, attorney fees or expenses, incentive awards, settlement administration costs, escrow costs, taxes due from Escrow Account, or any other cost.  Endo shall not be liable for any monetary payments under the Settlement Agreement other than the Endo Settlement Amount.  The total monetary consideration that Endo will pay for this Settlement shall be the Endo Settlement Amount only.  Notwithstanding anything in the foregoing, Endo shall be responsible for giving notice of this Settlement as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) and shall bear any costs associated with giving such notice.

(c)     If Endo fails to make the Endo Second Payment by the date it is due, Class Counsel may file a motion for entry of the Second Payment Stipulated Judgment, a copy of which is annexed hereto as Exhibit H, provided that any such motion shall be filed by May 21, 2019, and be supported by a sworn certification that Endo has failed to make the Endo Second Payment by the date that it is due.  If Endo fails to timely make the Endo Second Payment, the Endo Third Payment will become immediately due and the parties agree that Endo will be deemed to have also failed to make the Endo Third Payment.  The Second Payment Stipulated Judgment therefore includes judgment against Endo for the non-payment of both the Endo Second Payment and the Endo Third Payment.  The original of the Second Payment Stipulated Judgment shall be held in escrow by Class Counsel and promptly destroyed if no such motion is

filed by May 21, 2019.  Endo agrees not to contest such a motion, provided, however, that Endo

may oppose such motion on or before June 4, 2019, only if it has a good faith basis to defend the

non-payment of the Endo Second Payment based on a breach of the Settlement Agreement or

any Exhibits thereto.

(d)     If Endo fails to make the Endo Third Payment by the date it is due, Class Counsel

may file a motion for entry of the Third Payment Stipulated Judgment, a copy of which is

annexed hereto as Exhibit I, provided that any such motion shall be filed by May 20, 2020 and be

supported by a sworn certification that Endo has failed to make the Endo Third Payment by the

date that it is due.  The original of the Third Payment Stipulated Judgment shall be held in

escrow by Class Counsel and promptly destroyed if no such motion is filed by May 20, 2020.

Endo agrees not to contest such a motion, provided, however, that Endo may oppose such motion

on or before June 3, 2020, only if it has a good faith basis to defend the non-payment of the Endo

Third Payment based on a breach of the Settlement Agreement or any Exhibits thereto.

7.     **The Settlement Fund**.

(a)     Before the Court issues the final approval order, disbursements for Administration

Expenses may be made by Class Counsel from the Settlement Fund as follows.  Approval by the

Court or Endo shall not be required for payment of Administration Expenses, including the taxes,

professional fees and other expenses related to maintaining the Escrow Account, for amounts of

less than $500,000 in the aggregate, although upon Endo's request Class Counsel will identify

any such payments.  Disbursements from the Settlement Fund that would equal or exceed

$500,000 in the aggregate may be made only with prior approval of Endo or the Court.  If the

Settlement Agreement is disapproved, terminated, or fails to become effective, previously

disbursed Administration Expenses shall not be refunded to Endo.

(b)     At all times prior to the Effective Date, the Settlement Fund shall be invested as

set forth in paragraph 3 of the Escrow Agreement, in instruments backed by the full faith and

credit of the U.S. Government or fully insured by the U.S. Government or an agency thereof,

including a U.S. Treasury Money Market Fund or a bank account insured by the FDIC up to the

guaranteed FDIC limit.  After the Effective Date, the Settlement Fund shall be invested pursuant to paragraph 3 of the Escrow Agreement as directed in writing by Class Counsel.  All interest earned on the Settlement Fund shall become part of the Settlement Fund.

8.     **Disbursements.**

(a)     After the Effective Date, the Settlement Fund shall be distributed in accordance with the Plan of Allocation and the Court's approval of subsequent request(s) for distribution.

9.     **Taxes**.

(a)     Class Counsel shall be solely responsible for directing the Escrow Agent (as defined in the Escrow Agreement) to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Escrow Account.  Further, Class Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Escrow Account.  Subject to paragraph 7(a) above, Class Counsel shall be entitled to direct the Escrow Agent to pay customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities as set forth in this paragraph, from the Escrow Account.  Class Counsel shall notify Endo regarding any payments or expenses paid from the Escrow Account upon receipt of a request for such information from Endo.  Endo shall have no responsibility to make any tax filings relating to this Settlement Agreement, the Escrow Account, or the Settlement Payments, and shall have no responsibility to pay taxes on any income earned by the Escrow Account, or to pay any taxes with respect thereto unless the Settlement is not consummated and the Endo Unspent Settlement Fund is returned to Endo.  Other than as specifically set forth herein, Endo shall have no responsibility for the payment of taxes or tax expenses.  If for any reason, for any period of time, Endo is required to pay taxes on income earned by the Escrow Account, the Escrow Agent shall, upon written instructions from Endo with notice to Class Counsel, timely pay to Endo sufficient monies from the Escrow Account to enable Endo to pay all taxes (state, federal, or other) on income earned by the Escrow Account.

(b)    For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be Class Counsel, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

(c)    The parties to this Settlement Agreement and their counsel shall treat, and shall cause the Escrow Agent to treat, the Escrow Account as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in this manner. In addition, the Escrow Agent and, as required, the parties, shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

10.    **Full Satisfaction; Limitation of Interest and Liability**. Plaintiffs and Class Members shall look solely to the Endo Settlement Amount for satisfaction for any and all Released Claims. If the Settlement becomes final pursuant to paragraph 5 above, Endo's payment of the Endo Settlement Amount will fully satisfy any and all Released Claims. Except as provided by order of the Court, no Class Member shall have any interest in the Endo Settlement Amount, Escrow Account, or any portion thereof.

11.    **Attorneys' Fees, Expenses and Costs**.

(a)     Class Counsel intend to seek, solely from the Settlement Fund, a Fee and Expense Award.  Class Counsel shall not seek payment of attorneys' fees in an amount to exceed one-third of the Settlement Fund.  Class Counsel also intend to seek service awards for each of the Class Representatives of no more than $10,000.  Class Counsel shall file a motion for a Fee and Expense Award in accordance with the Court's preliminary approval order.  Class Counsel shall be paid and reimbursed for all fees and expenses solely from the Settlement Fund.  No portion of any Fee and Expense Award shall be released from the Settlement Fund prior to the Effective Date.  Endo is not obligated to take, does not take, and subject to the limitations in this paragraph will not take, any position with respect to the application by Class Counsel for attorneys' fees, reimbursement of expenses and costs and incentive or service awards.

(b)     The procedures for and the allowance or disallowance by the Court of Class Counsel's application for attorneys' fees, costs and expenses to be paid from the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from consideration of the fairness, reasonableness, and adequacy of the Settlement.  Any order or proceeding relating to the Fee and Expense Award, or any appeal from any such order, shall not operate to modify or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement.  A modification or reversal on appeal of any amount of the Fee and Expense Award shall not be deemed a modification of the terms of this Agreement or Final Approval Order, and shall not give rise to any right of termination.

12.    **Release.**

(a)     Upon the occurrence of the Effective Date, Releasors hereby release and forever discharge, and covenant not to sue the Releasees only, with respect to, in connection with, or relating to any and all Released Claims.  Notwithstanding the foregoing, and for avoidance of doubt:

(b)     This Release is not intended to release anyone other than the Releasees;

13

(c)      This Release is not intended to be on behalf of anyone other than the Releasors, and does not affect the claims of, and is not in whole or part on behalf of, the direct purchaser class or the non-class direct purchaser plaintiffs, who filed their own complaints in this matter; and

(d)      This Release shall have no effect on any Releasor's claim arising in the ordinary course of business between Releasors and the Releasees arising under Article 2 of the Uniform Commercial Code (pertaining to sales) or the laws of breach of contract or express warranty, the laws of negligence, product liability, implied warranty, or personal injury, or other claims wholly unrelated to the allegations in the Action or to allegations that could have been alleged or asserted in the Action including, in particular, any claim asserted in *In re Opana ER Antitrust Litigation*, MDL No. 2580.

13.      **Additional Release**.  In addition, each Releasor hereby expressly waives and releases, upon the Effective Date, any and all provisions, rights, and/or benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542.  General Release; extent.  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code, notwithstanding that the release in paragraph 12 is not a general release and is of claims against Releasees only.  Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of paragraph 12.  Nonetheless, upon the Effective Date, each Releasor hereby expressly waives and fully, finally and forever settles and releases any known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of paragraph 12, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Releasor also hereby expressly waives and

14

fully, finally and forever settles, releases and discharges any and all claims it may have against the Releasees under § 17200, *et seq.*, of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of the Released Claims.

14. **Dismissal of the Litigation**.  Upon this Settlement Agreement becoming final in accordance with paragraph 5 above, all claims asserted against Endo by Plaintiffs in the Action and by GEHA in *Government Employees Health Association, Inc. v. Endo Pharmaceuticals Inc., et al.*, No. 14-2180 (N.D. Cal.), shall be dismissed with prejudice.

15. **Effect of Disapproval**.  If based on a determination that the Settlement is not fair, reasonable or adequate, and on this basis only, the Court (i) declines to approve this Settlement Agreement; (ii) materially modifies the Agreement; (iii) does not enter the final approval order containing the elements set forth in paragraph 4 above, (iv) enters the final approval order and appellate review is sought, and on such review, such final approval order is not affirmed or is affirmed with material modification, then Class Counsel or Endo may elect to terminate this Settlement Agreement by sending written notice to the other party within 10 business days of the event allowing for termination.  For the avoidance of doubt, any order of the Court or the Ninth Circuit Court of Appeals that is based on a determination that the Settlement is not fair, reasonable or adequate and that (a) narrows or does not approve the scope of the releases and covenant not to sue contemplated by this Settlement, (b) purports to impose additional material obligations on Endo, or (c) declines to enter a final judgment that meets the requirements set forth in paragraph 4 above, except as otherwise agreed in writing by Class Counsel and Endo, constitutes a failure to grant final approval of this Agreement and confers on Class Counsel and/or Endo the right to terminate the Agreement.  A modification or reversal on appeal of the Plan of Allocation shall not be deemed a modification of the terms of this Agreement or Final Approval Order and shall not give rise to any right of termination.

16.   **Opt-Out**.

(a)    The parties recognize that a second opportunity for opting out of the Class ("Additional Opt-Out Period") is within the discretion of the Court.  However, the parties agree that such an opportunity is not necessary under the circumstances because Class Members were previously afforded adequate notice and the opportunity to opt out of the Class.

(b)    If the Court requires an Additional Opt-Out Period, any Class Member that requests exclusion from the class during the Additional Opt-Out Period (an "Additional Opt-Out"), shall certify, under penalty of perjury, the number of brand and generic Lidoderm patches (boxes of 30) the opt-out purchased or reimbursed, in whole or in part, during the relevant portions of the class period ("Quantity Purchased").  Within 10 calendar days after the Court-ordered deadline by which Class Members may opt-out during any Additional Opt-Out Period, Class Counsel shall serve on counsel for Endo a list of all persons and entities who timely filed opt-out notices during the Additional Opt-Out Period and copies of their purchase certifications.

(c)    If the Settlement is approved by the Court and becomes final as defined in paragraph 5, and the Court has required an Additional Opt-Out Period, and an End-Payor has properly excluded itself from the Class during such Additional Opt-Out Period, and the Court has allowed such exclusion ("Additional Allowed Opt-Out"), the Settlement Fund will be reduced by a percentage (the "Opt Out Percentage") equal to (1) the Quantity Purchased by the Additional Allowed Opt-Outs that are third-party payors divided by the total Quantity Purchased by all Class Members during the class period, with the result then multiplied by .753; plus (2) Quantity Purchased by the Additional Allowed Opt-Outs that are consumers divided by the total Quantity Purchased by all Class Members during the class period with the result multiplied by .247.  For purposes of this Settlement, the total Quantity Purchased by all Class Members is 4,234,542 (boxes of 30).  To illustrate, assume there was one TPP Additional Opt-Out that purchased 100,000 qualified boxes of Lidoderm and generic Lidoderm.  Step 1 of the draw down methodology would be calculated as: 100,000 divided by 4,234,542 (equal to 2.36% of the Class purchases).  Step two

would be to multiply the TPP's 2.36% share of Class purchases by .753. Thus, assuming that the TPP opted out of the settlements, the Opt-Out Percentage would be 1.78%.

(d)      Nothing herein will preclude an End-Payor who has sought exclusion from the End-Payor Class from seeking leave to rescind its decision until such time as the Settlement becomes final pursuant to paragraph 5. A decision by an End-Payor to opt out of the Class will have no impact on the validity and enforceability of the Settlement as to the remaining Class Members.

(e)      Should the Settlement Fund be subject to reduction pursuant to 16(c) above, the Escrow Agent shall return the amount by which the Settlement Fund is to be reduced (the "Fund Reduction Amount") to each of Endo, Teikoku, and Watson *pro rata* based on their respective total payments due under their respective settlement agreements. The Escrow Agent shall not be required to make a Fund Reduction Amount payment to Endo if the amount to be refunded to Endo is less than $15,000. Subject to paragraph **7** of the Escrow Agreement, the Escrow Agent shall disburse Endo's share of the Fund Reduction Amount to Endo in accordance with this paragraph within 15 calendar days after receipt of either (i) written notice signed by Class Counsel and Endo's counsel stating that the Fund Reduction Amount is to be returned to Endo (such written notice will be signed by Class Counsel within three days of receiving the written notice from Endo), or (ii) any order of the Court so directing. If Endo has not yet made the Endo Second Payment or the Endo Third Payment, then the Endo Third Payment shall be reduced by Endo's *pro rata* share of the Fund Reduction Amount and the Escrow Agent shall not return any portion of the Fund Reduction Amount directly to Endo.

(f)      Endo shall have the option to terminate this Settlement Agreement if the Opt-Out Percentage exceeds a percentage set forth in Appendix A hereto that shall be filed under seal with Court permission.

(g)      If consumers are not included in any Additional Opt Out Period and the Court later decides that consumers should be given an additional opportunity to opt out, the parties reserve their respective rights concerning which party or parties shall pay the cost of the additional notice.

(h)     Notwithstanding anything to the contrary in the Court's Order Granting a Motion for a Set-Aside (ECF 828), in the event Endo settles with an Additional Allowed Opt-Out concerning the Released Claims, Endo shall, contemporaneously with the date that Endo makes payment pursuant to that settlement agreement, place into an interest-bearing escrow account (the "Set Aside Fund") to be established by Class Counsel an amount (the "Set Aside Fund Amount") equal to 10% of such settlement multiplied by a fraction (A) the numerator of which shall be such Additional Allowed Opt-Out's Lidoderm purchases in Class States addressed by such settlement and (B) the denominator of which shall be such Additional Allowed Opt-Out's Lidoderm purchases in the following states and territories to the extent addressed by such settlement: Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.  Class Counsel intends for this amount to cover a portion of Class Counsel attorneys' fees, costs and expenses, and anticipates filing a motion requesting that the Court award some or all of the amount in the Set Aside Fund to Class Counsel as attorneys' fees, costs and expenses.  Endo agrees that it will not take any position with respect to any motion by Class Counsel for an award of some or all of the amount in the Set Aside Fund to Class Counsel as attorneys' fees, costs, and expenses.  Endo shall inform Class Counsel of the amount of any private offers made to, and accepted by, an Additional Allowed Opt-Out within five (5) days of the acceptance of the offer by the Additional Allowed Opt-Out and shall provide the basis for the calculation of the Set Aside Fund.

(i)     Any disputes regarding the application of this paragraph 16, including calculation of the Quantity Purchased by Additional Allowed Opt-Outs, the Opt-Out Percentage, the Fund Reduction Amount, or the Set Aside Fund may be resolved by the Court, with Plaintiffs, Endo, and the opt-out(s) all having the opportunity to be heard.

17.     **Reimbursement of the Endo Unspent Settlement Fund upon Termination**.  If the Settlement Agreement is terminated pursuant to the provisions of paragraphs 15 or 16 above,

18

the Escrow Agent shall return to Endo the Endo Unspent Settlement Fund at the time of termination.  Subject to paragraph 8 of the Escrow Agreement, the Escrow Agent shall disburse the Endo Unspent Settlement Fund to Endo in accordance with this paragraph within 15 calendar days after receipt of either (i) written notice signed by Class Counsel and Endo's counsel stating that the Settlement has been terminated (such written notice will be signed by the non-terminating party within three days of receiving the written notice from the terminating party), or (ii) any order of the Court so directing.  If the Settlement Agreement is terminated pursuant to paragraph 15 or 16, (1) any obligations pursuant to this Settlement Agreement other than (i) disbursement of the Endo Unspent Settlement Fund to Endo as set forth above and (ii) paragraph 19 shall cease immediately and (2) the releases set forth in paragraphs 12 and 13 above shall be null and void.

18. **Preservation of Rights**.  Except as expressly provided for in the Releases in paragraphs 12-13 above, this Settlement Agreement, whether the Settlement  becomes final or not, and any and all negotiations, documents, and discussions associated with it, shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or lack thereof, of any liability or wrongdoing by Endo or lack thereof, or of the truth or lack thereof of any of the claims or allegations contained in the Complaint or any other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way other than to enforce the terms of this Settlement Agreement. The parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement.  Upon the Settlement becoming final, nothing in this paragraph shall prevent Endo from asserting any release or using this Settlement Agreement to offset any liability to any other parties not party to this MDL Docket No. 14-md-025821-WHO, including but not limited to, federal and state government agencies.

19.    **Resumption of Litigation in the Event of Termination**.  The parties agree that in the event that the Settlement Agreement is not approved by the Court, or if the Settlement does not become final pursuant to paragraph 5 above, or if the Settlement Agreement is

terminated pursuant to paragraphs 15 or 16 above, litigation of the Action by Plaintiffs and the Class against Endo will resume in a reasonable manner to be approved by the Court upon a joint application by the parties, and upon full reimbursement to Endo of the Endo Unspent Settlement Fund to Endo as provided for in paragraph 17 above.

20.   **Non-Assistance and Maintaining Confidentiality of Litigation Materials**.  No Plaintiff shall, directly or indirectly, provide assistance, support, advice, or information to any person or entity asserting, considering asserting, or seeking to assert claims against Endo based on or related to the Released Claims or the facts, occurrences, transactions, or other matters alleged or asserted in this Action, or that could have been alleged or asserted in this Action.  In the event that Plaintiffs or Class Counsel receive a subpoena or other legal process that would require disclosure of material covered by any protective order entered in the Action (the "Protective Order"), such Plaintiff or Class Counsel shall promptly notify Endo and forward a copy of such subpoena or legal process so that Endo may seek a protective order or otherwise seek to maintain the confidentiality of material covered by the Protective Order; and such Plaintiff or Class Counsel shall object to the production of such material unless and until any such motion filed by Endo is resolved.  In addition, Plaintiffs and Class Counsel shall abide by the terms of the Protective Order in this Action, including with respect to the destruction of materials and the limitations on the use of any material covered by the Protective Order to this Action, unless otherwise ordered by a court of competent jurisdiction.

21.   **Binding Effect**.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the Releasors and the Releasees.  Without limiting the generality of the foregoing, each and every covenant and agreement herein by Class Counsel shall be binding upon Plaintiffs and all Class Members.

22.   **Integrated Agreement**.  This Settlement Agreement, together with the exhibits hereto and the documents referenced herein, contains the complete and integrated statement of every term in this Agreement, and supersedes all prior agreements or understandings, whether

written or oral, between the parties with respect to the subject matter hereof.  This Settlement Agreement shall not be modified except by a writing executed by Plaintiffs and Endo.

23.     **Independent Settlement**.  This Settlement of the Action is not conditioned on the disposition of the claims of the direct purchaser plaintiffs, the direct purchaser class or the non-class direct purchaser plaintiffs, all of whom filed their own complaints.  This Settlement Agreement is not conditioned on the performance or disposition of any other settlement agreement between the End-Payor Class and any other Defendant.

24.     **Headings**.  The headings in this Settlement Agreement are intended only for the convenience of the reader and shall not affect the interpretation of this Settlement Agreement.

25.     **No Party is the Drafter**.  None of the parties shall be considered the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that might cause any provision to be construed against the drafter hereof.

26.     **Consent to Jurisdiction**.  Each Class Member and Endo hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for the Northern District of California for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding or dispute relating to the release provisions herein provided that this consent to jurisdiction shall not affect Endo's right or ability to assert this Settlement Agreement or the releases contained herein as a defense in an action filed in any other jurisdiction asserting Released Claims or concerning this Settlement Agreement or this Action.

27.     **Choice of Law**.  All terms of this Settlement Agreement shall be governed by and interpreted according to federal common law or, where state law must apply, California law without regard to conflicts of law principles.

28.     **Representations and Warranties**.  Each party represents and warrants that it has the requisite authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated herein.

29.     **Notice**.  Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing and provided by email or overnight delivery to the counsel set forth in the signature block below for Endo or Class Counsel, respectively, or their designees.

30.     **Execution in Counterparts**.  This Settlement Agreement may be executed in counterparts.  A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

31.     **Confidentiality**.  While the fact of settlement of the Action has been disclosed in open court, the terms of this Settlement Agreement shall remain confidential until Plaintiffs move for preliminary approval of the Settlement, unless Endo and Class Counsel agree otherwise, provided that Endo may disclose the terms of this Settlement Agreement to accountants, lenders, auditors, legal counsel, tax advisors, or in response to a request by any governmental, judicial, or regulatory authority or otherwise required by applicable law or court order and Plaintiffs may disclose the terms of the Settlement Agreement to any entity that has applied to serve as Notice and Claims Administrator or Escrow Agent, who shall abide by the terms of this paragraph.  Plaintiffs shall not issue any press release or statement to any media outlet regarding this Agreement prior to entry of the Final Approval order without obtaining a prior written consent from the other parties, which consent shall not be unreasonably withheld. For the avoidance of doubt, statements in Class Counsel's website, court filings, statements made in connection with providing notice of the Settlement to the End-Payor Class, or responses to inquiries from media outlets do not constitute a "press release or statement to any media outlet."

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of the date first herein above written.

*For the End-Payor Class:*

Daniel C. Girard (SBN 114826)
Dena C. Sharp (SBN 245869)
Scott Grzenczyk (SBN 279309)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dcg@girardgibbs.com
Email: chc@girardgibbs.com
Email: smg@girardgibbs.com

Renae D. Steiner
Teresa M. Jones
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: rsteiner@heinsmills.com

Sharon K. Robertson
Donna M. Evans
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: srobertson@cohenmilstein.com
Email: devans@cohenmilstein.com

*Co-Lead Counsel for the
End-Payor Class*

Joseph R. Saveri
Joshua P. Davis

*For Defendant Endo Pharmaceuticals Inc.*

George Gordon
**DECHERT LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: (215) 994-2382
Email: george.gordon@dechert.com

Heidi K. Hubbard (admitted pro hac vice)
Stanley E. Fisher (admitted pro hac vice)
Benjamin M. Greenblum (admitted pro hac
vice)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Email: hhubbard@wc.com
Email: sfisher@wc.com
Email: bgreenblum@wc.com

Daniel Asimow (State Bar No. 165661)
**ARNOLD & PORTER KAYE SCHOLER
LLP**
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
Email: Daniel.Asimow@apks.com

*Attorneys for Defendant Endo
Pharmaceuticals Inc.*

END-PAYOR CLASS SETTLEMENT AGREEMENT WITH ENDO
MDL DOCKET NO. 14-md-02521-WHO

**For the End-Payor Class:**

Daniel C. Girard (SBN 114826)
Dena C. Sharp (SBN 245869)
Scott Grzenczyk (SBN 279309)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dcg@girardgibbs.com
Email: chc@girardgibbs.com
Email: smg@girardgibbs.com

Renae D. Steiner
Teresa M. Jones
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: rsteiner@heinsmills.com

Sharon K. Robertson
Donna M. Evans
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: srobertson@cohenmilstein.com
Email: devans@cohenmilstein.com

*Co-Lead Counsel for the*
*End-Payor Class*

Joseph R. Saveri
Joshua P. Davis

**For Defendant Endo Pharmaceuticals Inc.**

George Gordon
**DECHERT LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: (215) 994-2382
Email: george.gordon@dechert.com

Heidi K. Hubbard (admitted pro hac vice)
Stanley E. Fisher (admitted pro hac vice)
Benjamin M. Greenblum (admitted pro hac vice)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Email: hhubbard@wc.com
Email: sfisher@wc.com
Email: bgreenblum@wc.com

Daniel Asimow (State Bar No. 165661)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
Email: Daniel.Asimow@apks.com

*Attorneys for Defendant Endo*
*Pharmaceuticals Inc.*

END-PAYOR CLASS SETTLEMENT AGREEMENT WITH ENDO
MDL DOCKET NO. 14-md-02521-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ryan J. McEwan
**JOSEPH SAVERI LAW FIRM, INC.**
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: rmcewan@saverilawfirm.com

*Liaison Counsel for the End-Payor
Class*

END-PAYOR CLASS SETTLEMENT AGREEMENT WITH ENDO
MDL DOCKET NO. 14-md-02521-WHO

[Submitting Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO: ALL END-PAYOR ACTIONS | |

**SETTLEMENT AGREEMENT BETWEEN THE END-PAYOR CLASS AND TEIKOKU SEIYAKU CO., LTD. AND TEIKOKU PHARMA USA, INC.**

THIS SETTLEMENT AGREEMENT ("Settlement Agreement" or the "Settlement") is made and entered into as of March 20, 2018, by and between (a) defendants Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. (together, "Teikoku") and (b) plaintiffs Allied Services Division Welfare Fund; City of Providence; International Union of Operating Engineers Local 49 Health and Welfare Fund; International Union of Operating Engineers Local 132 Health and Welfare Fund; Iron Workers District Council of New England Welfare Fund; NECA-IBEW Welfare Trust Fund; United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund; Welfare Plan of the International Union of Operating Engineers Locals 137, 137A, 137B, 137C, 137R, and Ottavio Gallotto (together, "Plaintiffs"), individually and on behalf of the certified end-payor class in this Action (the "Class" or the "End-Payor Class," as defined in paragraph 1 below).

WHEREAS, Plaintiffs filed lawsuits alleging that Endo Pharmaceuticals Inc. ("Endo") and Teikoku entered an agreement with Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., and Actavis plc (together, "Watson" and together with Endo and Teikoku, "Defendants") not to compete in the sale of lidocaine 5% patches, *i.e.*, Lidoderm and its generic equivalents, in violation of state antitrust and consumer protection laws, and that Plaintiffs and the Class Members incurred damages as a result, as detailed in End-Payor Plaintiffs' Corrected Third Consolidated Amended Complaint, filed in this Action on June 18, 2015 (ECF No. 208) (the "Complaint");

WHEREAS, Plaintiffs' claims were transferred from various federal judicial districts and consolidated in *In re Lidoderm Antitrust Litigation,* No. 3:14-md-02521-WHO (the "Action"), in the United States District Court for the Northern District of California (the "Court");

WHEREAS, Teikoku has asserted defenses to Plaintiffs' claims, denies each and every one of Plaintiffs' allegations of unlawful or wrongful conduct, denies that any conduct challenged by Plaintiffs caused any damage whatsoever, and denies all liability of any kind;

WHEREAS, the Court certified a class of end-payors of Lidoderm and its generic equivalents as set forth in paragraph 1 below; appointed Plaintiffs as "Class Representatives;" and appointed the law firms Girard Gibbs LLP, Cohen Milstein Sellers & Toll PLLC, and Heins Mills & Olson PLC as "Class Counsel," *see In re Lidoderm*, No. 14-md-02521-WHO (N.D. Cal. Feb 21, 2017) (Orrick, J.) (ECF No. 670);

WHEREAS, Class Counsel and counsel for Teikoku have engaged in arm's-length settlement negotiations, including under the supervision of both a private and a court-appointed mediator, and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the Settlement between Plaintiffs, both individually and on behalf of the End-Payor Class, and Teikoku;

WHEREAS, Class Counsel have concluded, after extensive fact and expert discovery, and after carefully considering the circumstances of this Action, including the claims asserted in the Complaint and Teikoku's defenses thereto, that it would be in the best interests of the End-Payor Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and assure a benefit to the End-Payor Class and further, that Class Counsel consider the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and in the best interests of the End-Payor Class;

WHEREAS, Teikoku has concluded, despite its belief that it is not liable for the claims asserted and that it has good defenses thereto, that it would be in its best interests to enter into this Settlement Agreement to avoid the risks and uncertainties inherent in complex litigation and also to avoid additional costs of further litigation; and

WHEREAS, Plaintiffs and Teikoku agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Teikoku, or of the truth of any of the claims or allegations alleged in the Complaint.

NOW THEREFORE, it is agreed by the undersigned Class Counsel, on behalf of Plaintiffs and the End-Payor Class, on the one hand, and Teikoku on the other, that this Action

and all claims of Plaintiffs and the End-Payor Class be fully, finally, and forever settled, compromised, discharged, and dismissed with prejudice, without costs as to Plaintiffs, the End-Payor Class or Teikoku, subject to Court approval, on the following terms and conditions:

1. **Definitions**

    a. "Administration Expenses" means costs for administering the Settlement, including without limitation providing notice, maintaining the notice website, receiving and processing claims, analyzing purchase and sales data, and paying taxes and fees associated with maintaining the Escrow Account.

    b. "Claims Administrator" means the entity appointed by the Court to provide notice to the End-Payor Class, process the claims submitted by Class Members, and carry out any other duties or obligations provided for by the Settlement.

    c. "Class" or "End-Payor Class" means the class certified by the Court in its February 21, 2017 Order (ECF No. 670):

        (a) All persons and entities in the United States and its territories who, in Arizona, California, Florida, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, or Wisconsin ("Class States"), for consumption by themselves or their family member, or by their insureds, plan participants or beneficiaries, paid and/or provided reimbursements for some or all of the purchase price of:

            i. Branded Lidoderm for the time period August 23, 2012 through September 14, 2013; and/or

            ii. AB-rated generic Lidoderm for the time period September 15, 2013 through August 1, 2014;

        -and-

        (b) Third-party payors Cigna, MedImpact Healthcare Systems, Inc., Comprehensive Health Management, Inc. Part D, and Express Scripts Senior Care to the extent they provided, under their Medicare Part D plans, reimbursements for some or all of the price of branded Lidoderm purchased in Class States for the time period September 15, 2013 through August 1, 2014.

Excluded from the End-Payor Class are:

(a) Defendants and their officers, directors, management, employees, subsidiaries, and affiliates;

(b) Those who, after September 15, 2013, paid and/or provided reimbursements for branded Lidoderm and did not purchase or reimburse for generic Lidoderm, except third-party payors Cigna, MedImpact Healthcare Systems, Inc., Comprehensive Health Management, Inc. Part D, or Express Scripts Senior Care for their Part D insurance;

(c) Government entities, other than government-funded employee benefit plans;

(d) Fully insured health plans (*i.e.*, plans that purchased insurance that covered 100 percent of the plan's reimbursement obligations to all of its members);

(e) "Single flat co-pay" consumers who purchased Lidoderm or generic Lidoderm only via a fixed dollar co-payment that does not vary on the basis of the purchased drug's status as branded or generic (*e.g.*, $20 for both branded and generic drugs);

(f) "Flat generic co-pay" consumers who, after September 15, 2013, purchased generic Lidoderm via a fixed dollar copayment (*e.g.* $10 for generic drugs) regardless of the co-payment applicable to branded drugs;

(g) Consumers who purchased or received Lidoderm or its AB-rated generic equivalent through a Medicaid program only;

(h) Pharmacy benefit managers;

(i) The judges in this case and members of their immediate families; and

(j) The following entities that previously excluded themselves from the End-Payor Class and have not requested to opt back in: Carter Bank & Trust; CVS Health Corporation; Darby Dental Supply, LLC; Powell's City of Books; Rite Aid Corporation; The Western Union Co.; Wisconsin Evangelical Lutheran Synod; and Wood Group Management Services, Inc. *See* Order Regarding Opt-Outs, ECF 946 (Dec. 28, 2017).[1]

---

[1] The End-Payor Class includes the entities that previously filed opt-out requests, subsequently withdrew those requests and re-joined in the End-Payor Class. Those entities are identified in ECF 997, which is attached hereto as Exhibit G.

4

d.  "Class Members" means the members of the End-Payor Class.

e.  "Effective Date" means the date on which all of the following have occurred:  (i) the Settlement is not terminated pursuant to paragraphs 15 or 16 below; (ii) the Settlement is approved by the Court as required by Fed. R. Civ. P. 23(e); (iii) the Court enters a final approval order, entering a final judgment of dismissal with prejudice against Plaintiffs and Class Members who have not timely excluded themselves from the End-Payor Class, should the Court so allow such exclusion (*see infra* paragraph 16), and (iv) the period to appeal the final approval order has expired and/or all appeals have been finally resolved.

f.  "Escrow Account" means the qualified settlement escrow account which holds the Settlement Fund.

g.  "Escrow Agreement" means the agreement annexed hereto as Exhibit B.

h.  "Fee and Expense Award" means award(s) by the Court to Class Counsel of attorneys' fees, reasonable costs and expenses incurred in the prosecution of the Action, including any interest accrued thereon, and service awards to the named Plaintiffs.

i.  "GEHA" means the Government Employees Health Association.

j.  "Released Claims" means past, present, or future liabilities, claims, demands, obligations, suits, injuries, damages, levies, executions, judgments, debts, charges, actions, or causes of action, at law or in equity, whether class, individual, or otherwise in nature, and whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, arising out of or relating to purchases of Lidoderm or 5% lidocaine patches at any time prior to the Effective Date that, for purchases by Plaintiffs or GEHA, arise under any (i) federal statute or (ii) statute or common law and, for purchases by the Class Members (other than GEHA), arise under any (i) federal statute or (ii) statute or common law in the Class States, relating to or arising out of the facts,

occurrences, transactions, or other matters alleged or asserted in this Action, or that could have been alleged or asserted in this Action against the Releasees.

k. "Releasees" means Teikoku and its past, present and future parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and as applicable each of their past, present, and future officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators and representatives of each of the foregoing.

l. "Releasors" means Plaintiffs, Class Members and their respective past, present and future parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and as applicable each of their past, present, and future officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and representatives of each of the foregoing.

m. "Settlement Fund" means the Teikoku Settlement Amount, plus any amounts paid by Endo and Watson pursuant to their respective separate settlements with End-Payor Plaintiffs as well as any interest accrued or income earned thereon as described below.

n. "Teikoku Settlement Amount" means $23,750,000 .

o.  "Teikoku Unspent Settlement Fund" means the Teikoku Settlement Amount plus one third interest accrued on the Settlement Fund minus one third of any Administration Expenses previously disbursed from the Escrow Account.

2. **Reasonable Steps Necessary to Help Effectuate this Settlement**.  The parties and their counsel agree to undertake all reasonable steps necessary to help effectuate the Settlement, including undertaking all actions contemplated by and steps necessary to carry out the terms of this Settlement and to secure the prompt, complete, and final dismissal with prejudice of all claims in this Action against Teikoku.  This includes Teikoku serving

notifications to appropriate federal and state officials pursuant to 28 U.S.C. § 1715. Teikoku agrees not to seek decertification of the End-Payor Class. Teikoku further agrees not to oppose the End-Payor Class's motions for preliminary or final approval of the Settlement, and agrees not to appeal any Court ruling denying either of these motions.

3. **Motion for Preliminary Approval of the Settlement**. Following the execution of the Settlement Agreement by all parties, Class Counsel shall prepare and file a motion requesting preliminary approval of the Settlement, and authorizing dissemination of notice to the Class. The motion for preliminary approval shall include a proposed form of order in the form substantially as in Exhibit C hereto:

(a) requesting preliminary approval of the Settlement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and that finding dissemination of notice to the End-Payor Class is warranted;

(b) finding that the proposed plan of notice complies with Rule 23 and due process, and seeking approval of short- and long-form notices in the forms substantially as in Exhibits D-F hereto;

(c) approving the Plan of Allocation, in the form substantially as in Exhibit A hereto;

(d) providing that if final approval of the Settlement is not obtained, the Settlement shall be null and void and the parties will revert to their positions *ex ante* without prejudice to their claims or defenses; and

(e) setting a date for a motion for final approval, a deadline for objections and a fairness hearing.

After the Court preliminarily approves the Settlement, Class Counsel shall cause Class Members to receive notice of the Settlement.

4. **Motion for Final Approval and Entry of Final Judgment**. If the Court preliminarily approves the Settlement, Class Counsel shall submit a motion for final approval pursuant to the schedule provided for in the Preliminary Approval Order. The final approval motion shall seek entry of a final approval order:

(a) finding that notice given constitutes due, adequate and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

7

(b)    finding the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and directing consummation of the Settlement pursuant to its terms;

(c)    finding that all Class Members shall be bound by the Settlement Agreement and all of its terms;

(d)    finding that the Releasors shall be bound by the releases set forth in paragraphs 12 and 13 of this Settlement Agreement, and shall be forever barred from asserting any claims or liabilities related to the Action or any Released Claims against any of the Releasees;

(e)    directing that the Action be dismissed with prejudice and without costs in accordance with paragraph 14 below;

(f)    determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal with prejudice be final;

(g)    retaining exclusive jurisdiction over the Settlement, including the administration and consummation of the Settlement; and

(h)    directing that, for a period of five years, the Clerk of the Court shall maintain the record of the entities that have excluded themselves from the End-Payor Class (which are identified in ECF 946, as modified by ECF 997) and that a certified copy of such records shall be provided to Teikoku.

5.    **Finality of Settlement**.  This Settlement Agreement shall become final upon the Effective Date.

6.    **Settlement Payments**.

(a)    Within 20 business days after the later of the entry of the preliminary approval order or receipt from Class Counsel of wire transfer instructions and any other information or forms required by Teikoku for purposes of making payments, Teikoku shall pay the Teikoku Settlement Amount.

(b)    The payments provided for in subparagraph 6(a) above shall be held in the Escrow Account subject to the terms and conditions of the Escrow Agreement, and in accordance with the provisions of paragraphs 7-9, 16, and 17 below.  Teikoku shall not pay any additional amount at any time, whether for class notice costs, attorney fees or expenses, incentive awards, settlement administration costs, escrow costs, taxes due from Escrow Account, or any other cost.  Teikoku shall not be liable for any monetary payments under the Settlement

Agreement other than the Teikoku Settlement Amount.  The total monetary consideration that

Teikoku will pay for this Settlement shall be the Teikoku Settlement Amount only.

Notwithstanding anything in the foregoing, Teikoku shall be responsible for giving notice of this

Settlement as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) and shall

bear any costs associated with giving such notice.

7.     **The Settlement Fund**.

(a)     Before the Court issues the final approval order, disbursements for Administration

Expenses may be made by Class Counsel from the Settlement Fund as follows.  Approval by the

Court or Teikoku shall not be required for payment of Administration Expenses, including the

taxes, professional fees and other expenses related to maintaining the Escrow Account, for

amounts of less than $500,000 in the aggregate, although upon Teikoku's request Class Counsel

will identify any such payments.  Disbursements from the Settlement Fund that would equal or

exceed $500,000 in the aggregate may be made only with prior approval of Teikoku or the Court.

If the Settlement Agreement is disapproved, terminated, or fails to become effective, previously

disbursed Administration Expenses shall not be refunded to Teikoku.

(b)     At all times prior to the Effective Date, the Settlement Fund shall be invested as

set forth in paragraph 3 of the Escrow Agreement, in instruments backed by the full faith and

credit of the U.S. Government or fully insured by the U.S. Government or an agency thereof,

including a U.S. Treasury Money Market Fund or a bank account insured by the FDIC up to the

guaranteed FDIC limit.  After the Effective Date, the Settlement Fund shall be invested pursuant

to paragraph 3 of the Escrow Agreement as directed in writing by Class Counsel.  All interest

earned on the Settlement Fund shall become part of the Settlement Fund.

8.     **Disbursements.**

(a)     After the Effective Date, the Settlement Fund shall be distributed in accordance

with the Plan of Allocation and the Court's approval of subsequent request(s) for distribution.

9. **Taxes**.

(a)     Class Counsel shall be solely responsible for directing the Escrow Agent (as defined in the Escrow Agreement) to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Escrow Account.  Further, Class Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Escrow Account.  Subject to paragraph 7(a) above, Class Counsel shall be entitled to direct the Escrow Agent to pay customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities as set forth in this paragraph, from the Escrow Account.  Class Counsel shall notify Teikoku regarding any payments or expenses paid from the Escrow Account upon receipt of a request for such information from Teikoku.  Teikoku shall have no responsibility to make any tax filings relating to this Settlement Agreement, the Escrow Account, or the Settlement Payments, and shall have no responsibility to pay taxes on any income earned by the Escrow Account, or to pay any taxes with respect thereto unless the Settlement is not consummated and the Teikoku Unspent Settlement Fund is returned to Teikoku.  Other than as specifically set forth herein, Teikoku shall have no responsibility for the payment of taxes or tax expenses.  If for any reason, for any period of time, Teikoku is required to pay taxes on income earned by the Escrow Account, the Escrow Agent shall, upon written instructions from Teikoku with notice to Class Counsel, timely pay to Teikoku sufficient monies from the Escrow Account to enable Teikoku to pay all taxes (state, federal, or other) on income earned by the Escrow Account.

(b)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be Class Counsel, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

(c)     The parties to this Settlement Agreement and their counsel shall treat, and shall cause the Escrow Agent to treat, the Escrow Account as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  The parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in this manner.  In addition, the Escrow Agent and, as required, the parties, shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.  All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

10.     **Full Satisfaction; Limitation of Interest and Liability**.  Plaintiffs and Class Members shall look solely to the Teikoku Settlement Amount for satisfaction from Teikoku for any and all Released Claims.  If the Settlement becomes final pursuant to paragraph 5 above, Teikoku's payment of the Teikoku Settlement Amount will fully satisfy any and all Released Claims against Teikoku.  Except as provided by order of the Court, no Class Member shall have any interest in the Teikoku Settlement Amount, Escrow Account, or any portion thereof.

11.     **Attorneys' Fees, Expenses and Costs**.

(a)     Class Counsel intend to seek, solely from the Settlement Fund, a Fee and Expense Award.  Class Counsel shall not seek payment of attorneys' fees in an amount to exceed one-third of the Settlement Fund.  Class Counsel also intend to seek service awards for each of the Class Representatives of no more than $10,000.  Class Counsel shall file a motion for a Fee and Expense Award in accordance with the Court's preliminary approval order.  Class Counsel shall be paid and reimbursed for all fees and expenses solely from the Settlement Fund.  No portion of any Fee and Expense Award shall be released from the Settlement Fund prior to the Effective

Date.  Teikoku is not obligated to take, does not take, and subject to the limitations in this paragraph will not take, any position with respect to the application by Class Counsel for attorneys' fees, reimbursement of expenses and costs and incentive or service awards.

(b)     The procedures for and the allowance or disallowance by the Court of Class Counsel's application for attorneys' fees, costs and expenses to be paid from the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from consideration of the fairness, reasonableness, and adequacy of the Settlement.  Any order or proceeding relating to the Fee and Expense Award, or any appeal from any such order, shall not operate to modify or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement.  A modification or reversal on appeal of any amount of the Fee and Expense Award shall not be deemed a modification of the terms of this Agreement or Final Approval Order, and shall not give rise to any right of termination.

12.     **Release.**

(a)     Upon the occurrence of the Effective Date, Releasors hereby release and forever discharge, and covenant not to sue the Releasees only, with respect to, in connection with, or relating to any and all Released Claims.  Notwithstanding the foregoing, and for avoidance of doubt:

(b)     This Release is not intended to release anyone other than the Releasees;

(c)     This Release is not intended to be on behalf of anyone other than the Releasors, and does not affect the claims of, and is not in whole or part on behalf of, the direct purchaser class or the non-class direct purchaser plaintiffs, who filed their own complaints in this matter; and

(d)     This Release shall have no effect on any Releasor's claim arising in the ordinary course of business between Releasors and the Releasees arising under Article 2 of the Uniform Commercial Code (pertaining to sales) or the laws of breach of contract or express warranty, the laws of negligence, product liability, implied warranty, or personal injury, or other claims wholly

unrelated to the allegations in the Action or to allegations that could have been alleged or

asserted in the Action.

13.    **Additional Release**.  In addition, each Releasor hereby expressly waives and

releases, upon the Effective Date, any and all provisions, rights, and/or benefits conferred by §

1542 of the California Civil Code, which reads:

> Section 1542.  <u>General Release; extent</u>.  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States, or principle of common law, which is

similar, comparable or equivalent to § 1542 of the California Civil Code, notwithstanding that

the release in paragraph 12 is not a general release and is of claims against Releasees only.  Each

Releasor may hereafter discover facts other than or different from those which he, she, or it

knows or believes to be true with respect to the claims that are the subject matter of paragraph

12.  Nonetheless, upon the Effective Date, each Releasor hereby expressly waives and fully,

finally and forever settles and releases any known or unknown, foreseen or unforeseen,

suspected or unsuspected, contingent or non-contingent claim that is the subject matter of

paragraph 12, whether or not concealed or hidden, without regard to the subsequent discovery or

existence of such different or additional facts.  Each Releasor also hereby expressly waives and

fully, finally and forever settles, releases and discharges any and all claims it may have against

the Releasees under § 17200, *et seq*., of the California Business and Professions Code or any

similar comparable or equivalent provision of the law of any other state or territory of the

United States or other jurisdiction, which claims are expressly incorporated into the definition of

the Released Claims.

14.    **Dismissal of the Litigation**.  Upon this Settlement Agreement becoming final in

accordance with paragraph 5 above, all claims asserted against Teikoku by Plaintiffs in the

Action and by GEHA in *Government Employees Health Association, Inc. v. Endo*

*Pharmaceuticals Inc., et al.*, No. 14-2180 (N.D. Cal.) shall be dismissed with prejudice.

15.     **Effect of Disapproval**.  If based on a determination that the Settlement is not fair, reasonable or adequate, and on this basis only, the Court (i) declines to approve this Settlement Agreement; (ii) materially modifies the Agreement; (iii) does not enter the final approval order containing the elements set forth in paragraph 4 above, (iv) enters the final approval order and appellate review is sought, and on such review, such final approval order is not affirmed or is affirmed with material modification, then Class Counsel or Teikoku may elect to terminate this Settlement Agreement by sending written notice to the other party within 10 business days of the event allowing for termination.  For the avoidance of doubt, any order of the Court or the Ninth Circuit Court of Appeals that is based on a determination that the Settlement is not fair, reasonable or adequate and that (a) narrows or does not approve the scope of the release and covenant not to sue contemplated by this Settlement, (b) purports to impose additional material obligations on Teikoku, or (c) declines to enter a final judgment that meets the requirements set forth in paragraph 4 above, except as otherwise agreed in writing by Class Counsel and Teikoku, constitutes a failure to grant final approval of this Agreement and confers on Class Counsel and/or Teikoku the right to terminate the Agreement.  A modification or reversal on appeal of the Plan of Allocation shall not be deemed a modification of the terms of this Agreement or Final Approval Order and shall not give rise to any right of termination

16.     **Opt-Out**.

(a)     The parties recognize that a second opportunity for opting out of the Class ("Additional Opt-Out Period") is within the discretion of the Court.  However, the parties agree that such an opportunity is not necessary under the circumstances because Class Members were previously afforded adequate notice and the opportunity to opt out of the Class.

(b)     If the Court requires an Additional Opt-Out Period, any Class Member that requests exclusion from the class during the Additional Opt-Out Period (an "Additional Opt-Out"), shall certify, under penalty of perjury, the number of brand and generic Lidoderm patches (boxes of 30) the opt-out purchased or reimbursed, in whole or in part, during the relevant portions of the class period ("Quantity Purchased").  Within 10 calendar days after the Court-ordered deadline by

which Class Members may opt-out during any Additional Opt-Out Period, Class Counsel shall serve on counsel for Teikoku a list of all persons and entities who timely filed opt-out notices during the Additional Opt-Out Period and copies of their purchase certifications.

(c)     If the Settlement is approved by the Court and becomes final as defined in paragraph 5, and the Court has required an Additional Opt-Out Period, and an End-Payor has properly excluded itself from the Class during such Additional Opt-Out Period, and the Court has allowed such exclusion ("Additional Allowed Opt-Out"), the Settlement Fund will be reduced by a percentage (the "Opt Out Percentage") equal to (1) the Quantity Purchased by the Additional Allowed Opt-Outs that are third-party payors, multiplied by .753, then divided by the total Quantity Purchased by all Class Members during the class period, plus (2) Quantity Purchased by the Additional Allowed Opt-Outs that are consumers, multiplied by .247, then divided by the total Quantity Purchased by all Class Members during the class period.  For purposes of this Settlement, the Quantity Purchased by all Class Members during the class period is 4,234,542 (boxes of 30). To illustrate, assume there was one TPP Additional Opt-Out that purchased 100,000 qualified boxes of Lidoderm and generic Lidoderm.  Step 1 of the draw down methodology would be calculated as: 100,000 divided by 4,234,542 (equal to 2.36% of the Class purchases).  Step two would be to multiply the TPP's 2.36% share of Class purchases by .753.  Thus, assuming that the TPP opted out of the settlements, the Opt-Out Percentage would be 1.78%.

(d)     Nothing herein will preclude an End-Payor who has sought exclusion from the End-Payor Class from seeking leave to rescind its decision until such time as the Settlement becomes final pursuant to paragraph 5.  A decision by an End-Payor to opt out of the Class will have no impact on the validity and enforceability of the Settlement as to the remaining Class Members.

(e)     Should the Settlement Fund be subject to reduction pursuant to 16(c) above, the Escrow Agent shall return the amount by which the Settlement Fund is to be reduced (the "Fund Reduction Amount") to each of Endo, Teikoku, and Watson *pro rata* based on their respective total payments due under their respective settlement agreements.  The Escrow Agent shall not be required to make a Fund Reduction Amount payment to Teikoku if the amount to be refunded to

15

Teikoku is less than $5,000.  Subject to paragraph 7 of the Escrow Agreement, the Escrow Agent shall disburse Teikoku's share of the Fund Reduction Amount to Teikoku in accordance with this paragraph within 15 calendar days after receipt of either (i) written notice signed by Class Counsel and Teikoku's counsel stating that the Fund Reduction Amount is to be returned to Teikoku (such written notice will be signed by Class Counsel within three days of receiving the written notice from Teikoku), or (ii) any order of the Court so directing.

(f)     Teikoku shall have the option to terminate this Settlement Agreement if the Opt-Out Percentage exceeds a percentage set forth in Appendix A hereto that shall be filed under seal with Court permission.

(g)     If consumers are not included in any Additional Opt Out Period and the Court later decides that consumers should be given an additional opportunity to opt out, the parties reserve their respective rights concerning which party or parties shall pay the cost of the additional notice.

(h)     Notwithstanding anything to the contrary in the Court's Order Granting a Motion for a Set-Aside (ECF 828), in the event Teikoku settles with an Additional Allowed Opt-Out concerning the Released Claims, Teikoku shall, contemporaneously with the date that Teikoku makes payment pursuant to that settlement agreement, place into an interest-bearing escrow account (the "Set Aside Fund") to be established by Class Counsel an amount (the "Set Aside Fund Amount") equal to 10% of such settlement multiplied by a fraction (A) the numerator of which shall be such Additional Allowed Opt-Out's Lidoderm purchases in Class States addressed by such settlement and (B) the denominator of which shall be such Additional Allowed Opt-Out's Lidoderm purchases in the following states and territories to the extent addressed by such settlement: Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.  Class Counsel intends for this amount to cover a portion of Class Counsel attorneys' fees, costs and expenses, and anticipates filing a motion requesting that the Court award some or all of the amount

in the Set Aside Fund to Class Counsel as attorneys' fees, costs and expenses.  Teikoku agrees that it will not take any position with respect to any motion by Class Counsel for an award of some or all of the amount in the Set Aside Fund to Class Counsel as attorneys' fees, costs, and expenses.  Teikoku shall inform Class Counsel of the amount of any private offers made to, and accepted by, an Additional Allowed Opt-Out within five (5) days of the acceptance of the offer by the Additional Allowed Opt-Out and shall provide the basis for the calculation of the Set Aside Fund.

(i)     Any disputes regarding the application of this paragraph 16, including calculation of the Quantity Purchased by Additional Allowed Opt-Outs, the Opt-Out Percentage, or the Fund Reduction Amount or the Set Aside Fund may be resolved by the Court, with Plaintiffs, Teikoku, and the opt-out(s) all having the opportunity to be heard.

17.     **Reimbursement of the Teikoku Unspent Settlement Funds upon Termination**.  If the Settlement Agreement is terminated pursuant to the provisions of paragraph 15 or 16 above, the Escrow Agent shall return to Teikoku the Teikoku Unspent Settlement Fund at the time of termination.  Subject to paragraph 8 of the Escrow Agreement, the Escrow Agent shall disburse the Teikoku Unspent Settlement Fund to Teikoku in accordance with this paragraph within 15 calendar days after receipt of either (i) written notice signed by Class Counsel and Teikoku's counsel stating that the Settlement has been terminated (such written notice will be signed by the non-terminating party within three days of receiving the written notice from the terminating party), or (ii) any order of the Court so directing.  If the Settlement Agreement is terminated pursuant to paragraph 15 or 16, (1) any obligations pursuant to this Settlement Agreement other than (i) disbursement of the Teikoku Unspent Settlement Fund to Teikoku as set forth above and (ii) paragraph 19 shall cease immediately and (2) the releases set forth in paragraphs 12 and 13 above shall be null and void.

18. **Preservation of Rights**.  Except as expressly provided for in the Releases in paragraphs 12 and 13 above, this Settlement Agreement, whether the Settlement  becomes final or not, and any and all negotiations, documents, and discussions associated with it, shall be

without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or lack thereof, of any liability or wrongdoing by Teikoku or lack thereof, or of the truth or lack thereof of any of the claims or allegations contained in the Complaint or any other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way other than to enforce the terms of this Settlement Agreement.  The parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement.  Upon the Settlement becoming final, nothing in this paragraph shall prevent Teikoku from asserting any release or using this Settlement Agreement to offset any liability to any other parties not party to this MDL Docket No. 14-md-025821-WHO, including but not limited to, federal and state government agencies.

19.    **Resumption of Litigation in the Event of Termination**.  The parties agree that in the event that the Settlement Agreement is not approved by the Court, or the Settlement does not become final pursuant to paragraph 5 above or if the Settlement Agreement is terminated pursuant to paragraph 15  above, litigation of the Action by Plaintiffs and the Class against Teikoku will resume in a reasonable manner to be approved by the Court upon a joint application by the parties, and upon full reimbursement of the Teikoku Unspent Settlement Fund to Teikoku as provided for in paragraph 17 above.

20.  **Non-Assistance and Maintaining Confidentiality of Litigation Materials**.  No Plaintiff shall, directly or indirectly, provide assistance, support, advice, or information to any person or entity asserting, considering asserting, or seeking to assert claims against Teikoku based on or related to the Released Claims or the facts, occurrences, transactions, or other matters alleged or asserted in this Action, or that could have been alleged or asserted in this Action.  In the event that Plaintiffs or Class Counsel receive a subpoena or other legal process that would require disclosure of material covered by any protective order in the Action (the "Protective Order"), such Plaintiff or Class Counsel shall promptly notify Teikoku and forward a copy of such subpoena or legal process so that Teikoku may seek a protective order or otherwise seek to maintain the confidentiality of material covered by the Protective Order; and such

Plaintiff or Class Counsel shall object to the production of such material unless and until any such motion filed by Teikoku is resolved.  In addition, Plaintiffs and Class Counsel shall abide by the terms of the Protective Order in this Action, including with respect to the destruction of materials and the limitations on the use of any material covered by the Protective Order to this Action, unless otherwise ordered by a court of competent jurisdiction.

21.    **Binding Effect**.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the Releasors and the Releasees.  Without limiting the generality of the foregoing, each and every covenant and agreement herein by Class Counsel shall be binding upon Plaintiffs and all Class Members.

22.    **Integrated Agreement**.  This Settlement Agreement, together with the exhibits hereto and the documents referenced herein, contains the complete and integrated statement of every term in this Agreement, and supersedes all prior agreements or understandings, whether written or oral, between the parties with respect to the subject matter hereof.  This Settlement Agreement shall not be modified except by a writing executed by Plaintiffs and Teikoku.

23.    **Independent Settlement**.  This Settlement of the Action is not conditioned on the disposition of the claims of the direct purchaser plaintiffs, the direct purchaser class or the non-class direct purchaser plaintiffs, all of whom filed their own complaints.  This Settlement Agreement is not conditioned on the performance or disposition of any other settlement agreement between the End-Payor Class and any other Defendant.

24.    **Headings**.  The headings in this Settlement Agreement are intended only for the convenience of the reader and shall not affect the interpretation of this Settlement Agreement.

25.    **No Party is the Drafter**.  None of the parties shall be considered the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of construction that might cause any provision to be construed against the drafter hereof.

26.    **Consent to Jurisdiction**.  Each Class Member and Teikoku hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for the Northern District of California for any suit, action, proceeding or dispute arising out of or relating to this

19

Settlement Agreement or the applicability of this Settlement Agreement, including, without

limitation, any suit, action, proceeding or dispute relating to the release provisions herein

provided that this consent to jurisdiction shall not affect Teikoku's right or ability to assert this

Settlement Agreement or the Release contained herein as a defense in an action filed in any other

jurisdiction asserting Released Claims or concerning this Settlement Agreement or this Action.

27. **Choice of Law**. All terms of this Settlement Agreement shall be governed by and

interpreted according to federal common law or, where state law must apply, California law

without conflicts of law principles.

28. **Representations and Warranties**. Each party represents and warrants that it has

the requisite authority to execute, deliver, and perform this Settlement Agreement and to

consummate the transactions contemplated herein.

29. **Notice**. Where this Agreement requires either party to provide notice or any other

communication or document to the other, such notice shall be in writing and provided by email

or overnight delivery to the counsel set forth in the signature block below for Teikoku or Class

Counsel, respectively, or their designees.

30. **Execution in Counterparts**. This Settlement Agreement may be executed in

counterparts. A facsimile or .pdf signature shall be deemed an original signature for purposes of

executing this Settlement Agreement.

31. **Confidentiality**. While the fact of settlement of the Action has been disclosed in

open court, the terms of this Settlement Agreement shall remain confidential until Plaintiffs

move for preliminary approval of the Settlement, unless Teikoku and Class Counsel agree

otherwise, provided that Teikoku may disclose the terms of this Settlement Agreement to

accountants, lenders, auditors, legal counsel, tax advisors, or in response to a request by any

governmental, judicial, or regulatory authority or otherwise required by applicable law or court

order and Plaintiffs may disclose the terms of the Settlement Agreement to any entity that has

applied to serve as Notice and Claims Administrator or Escrow Agent, who shall abide by the

terms of this paragraph. Plaintiffs shall not issue any press release or statement to any media

outlet regarding this Agreement prior to entry of the Final Approval order without obtaining a prior written consent from the other parties, which consent shall not be unreasonably withheld. For the avoidance of doubt, statements in Class Counsel's website, court filings, statements made in connection with providing notice of the Settlement to the End-Payor Class, or responses to inquiries from media outlets do not constitute a "press release or statement to any media outlet."

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of the date first herein above written.

*For the End-Payor Class:*

Daniel C. Girard (SBN 114826)
Dena C. Sharp (SBN 245869)
Scott Grzenczyk (SBN 279309)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dcg@girardgibbs.com
Email: chc@girardgibbs.com
Email: smg@girardgibbs.com

Renae D. Steiner
Teresa M. Jones
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: rsteiner@heinsmills.com

Sharon K. Robertson
Donna M. Evans
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: srobertson@cohenmilstein.com
Email: devans@cohenmilstein.com

*Co-Lead Counsel for the
End-Payor Class*

*For Defendants Teikoku Seiyaku Co., Ltd.
and Teikoku Pharma USA, Inc.:*

David S. Elkins
Joseph A. Meckes
Noriyuki Shimoda
**SQUIRE PATTON BOGGS (US) LLP**
1801 Page Mill Drive, Suite 110
Palo Alto, CA 94304
Telephone: (650) 856-6500
Facsimile: (650) 843-8777
Email: david.elkins@squirepb.com
Email: joseph.meckes@squirepb.com
Email: noriyuki.shimoda@squirepb.com

*Counsel for Defendants Teikoku Pharma
USA, Inc. and Teikoku Seiyaku Co., Ltd.*

Joseph R. Saveri
Joshua P. Davis
Ryan J. McEwan
**JOSEPH SAVERI LAW FIRM, INC.**
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: rmcewan@saverilawfirm.com

*Liaison Counsel for the End-Payor
Class*

END-PAYOR CLASS SETTLEMENT AGREEMENT WITH TEIKOKU
MDL DOCKET NO. 14-md-02521-WHO

[Submitting Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO: ALL END-PAYOR ACTIONS | |

**SETTLEMENT AGREEMENT BETWEEN THE END-PAYOR CLASS AND ACTAVIS, INC. (F/K/A WATSON PHARMACEUTICALS, INC.); WATSON LABORATORIES, INC.; AND ACTAVIS PLC**

THIS SETTLEMENT AGREEMENT ("Settlement Agreement" or the "Settlement") is made and entered into as of March 20, 2018, by and between (a) defendants Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., Actavis plc, Anda Inc., Anda Pharmaceuticals, Inc., and Valmed Pharmaceuticals, Inc. (together, "Watson") and (b) plaintiffs Allied Services Division Welfare Fund; City of Providence; International Union of Operating Engineers Local 49 Health and Welfare Fund; International Union of Operating Engineers Local 132 Health and Welfare Fund; Iron Workers District Council of New England Welfare Fund; NECA-IBEW Welfare Trust Fund; United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund; Welfare Plan of the International Union of Operating Engineers Locals 137, 137A, 137B, 137C, 137R, and Ottavio Gallotto (together, "Plaintiffs"), individually and on behalf of the certified end-payor class in this Action (the "Class" or the "End-Payor Class," as defined in paragraph 1 below).

WHEREAS, Plaintiffs filed lawsuits alleging that Endo Pharmaceuticals Inc. ("Endo") and Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. (together, "Teikoku" and together with Endo and Watson, "Defendants") entered an agreement with Watson not to compete in the sale of lidocaine 5% patches, *i.e.*, Lidoderm and its generic equivalents, in violation of state antitrust and consumer protection laws, and that Plaintiffs and the Class Members incurred damages as a result, as detailed in End-Payor Plaintiffs' Corrected Third Consolidated Amended Complaint, filed in this Action on June 18, 2015 (ECF No. 208) (the "Complaint");

WHEREAS, Plaintiffs' claims were transferred from various federal judicial districts and consolidated in *In re Lidoderm Antitrust Litigation,* No. 3:14-md-02521-WHO (the "Action"), in the United States District Court for the Northern District of California (the "Court");

WHEREAS, Watson has asserted defenses to Plaintiffs' claims, denies each and every one of Plaintiffs' allegations of unlawful or wrongful conduct, denies that any conduct challenged by Plaintiffs caused any damage whatsoever, and denies all liability of any kind;

WHEREAS, the Court certified a class of end-payors of Lidoderm and its generic equivalents as set forth in paragraph 1 below; appointed Plaintiffs as "Class Representatives;" and appointed the law firms Girard Gibbs LLP, Cohen Milstein Sellers & Toll PLLC, and Heins Mills & Olson PLC as "Class Counsel," *see In re Lidoderm*, No. 14-md-02521-WHO (N.D. Cal. Feb 21, 2017) (Orrick, J.) (ECF No. 670);

WHEREAS, Class Counsel and counsel for Watson have engaged in arm's-length settlement negotiations, including under the supervision of a court-appointed mediator, and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the Settlement between Plaintiffs, both individually and on behalf of the End-Payor Class, and Watson;

WHEREAS, Class Counsel have concluded, after extensive fact and expert discovery, and after carefully considering the circumstances of this Action, including the claims asserted in the Complaint and Watson's defenses thereto, that it would be in the best interests of the End-Payor Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and assure a benefit to the End-Payor Class and further, that Class Counsel consider the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and in the best interests of the End-Payor Class;

WHEREAS, Watson has concluded, despite its belief that it is not liable for the claims asserted and that it has good defenses thereto, that it would be in its best interests to enter into this Settlement Agreement to avoid the risks and uncertainties inherent in complex litigation and also to avoid additional costs of further litigation; and

WHEREAS, Plaintiffs and Watson agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Watson, or of the truth of any of the claims or allegations alleged in the Complaint.

NOW THEREFORE, it is agreed by the undersigned Class Counsel, on behalf of Plaintiffs and the End-Payor Class, on the one hand, and Watson on the other, that this Action

2

and all claims of Plaintiffs and the End-Payor Class be fully, finally, and forever settled, compromised, discharged, and dismissed with prejudice, without costs as to Plaintiffs, the End-Payor Class or Watson, subject to Court approval, on the following terms and conditions:

1. **Definitions**

    a. "Administration Expenses" means costs for administering the Settlement, including without limitation providing notice, maintaining the notice website, receiving and processing claims, analyzing purchase and sales data, and paying taxes and fees associated with maintaining the Escrow Account.

    b. "Claims Administrator" means the entity appointed by the Court to provide notice to the End-Payor Class, process the claims submitted by Class Members, and carry out any other duties or obligations provided for by the Settlement.

    c. "Class" or "End-Payor Class" means the class certified by the Court in its February 21, 2017 Order (ECF No. 670):

    (a) All persons and entities in the United States and its territories who, in Arizona, California, Florida, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, or Wisconsin ("Class States"), for consumption by themselves or their family member, or by their insureds, plan participants or beneficiaries, paid and/or provided reimbursements for some or all of the purchase price of:

        i. Branded Lidoderm for the time period August 23, 2012 through September 14, 2013; and/or

        ii. AB-rated generic Lidoderm for the time period September 15, 2013 through August 1, 2014;

    -and-

    (b) Third-party payors Cigna, MedImpact Healthcare Systems, Inc., Comprehensive Health Management, Inc. Part D, and Express Scripts Senior Care to the extent they provided, under their Medicare Part D plans, reimbursements for some or all of the price of branded Lidoderm purchased in Class States for the time period September 15, 2013 through August 1, 2014.

Excluded from the End-Payor Class are:

(a) Defendants and their officers, directors, management, employees, subsidiaries, and affiliates;

(b) Those who, after September 15, 2013, paid and/or provided reimbursements for branded Lidoderm and did not purchase or reimburse for generic Lidoderm, except third-party payors Cigna, MedImpact Healthcare Systems, Inc., Comprehensive Health Management, Inc. Part D, or Express Scripts Senior Care for their Part D insurance;

(c) Government entities, other than government-funded employee benefit plans;

(d) Fully insured health plans (*i.e.*, plans that purchased insurance that covered 100 percent of the plan's reimbursement obligations to all of its members);

(e) "Single flat co-pay" consumers who purchased Lidoderm or generic Lidoderm only via a fixed dollar co-payment that does not vary on the basis of the purchased drug's status as branded or generic (*e.g.*, $20 for both branded and generic drugs);

(f) "Flat generic co-pay" consumers who, after September 15, 2013, purchased generic Lidoderm via a fixed dollar copayment (*e.g.* $10 for generic drugs) regardless of the co-payment applicable to branded drugs;

(g) Consumers who purchased or received Lidoderm or its AB-rated generic equivalent through a Medicaid program only;

(h) Pharmacy benefit managers;

(i) The judges in this case and members of their immediate families; and

(j) The following entities that previously excluded themselves from the End-Payor Class and have not requested to opt back in: Carter Bank & Trust; CVS Health Corporation; Darby Dental Supply, LLC; Powell's City of Books; Rite Aid Corporation; The Western Union Co.; Wisconsin Evangelical Lutheran Synod; and Wood Group Management Services, Inc. *See* Order Regarding Opt-Outs, ECF 946 (Dec. 28, 2017).[1]

---

[1] The End-Payor Class includes the entities that previously filed opt-out requests, subsequently withdrew those requests and re-joined in the End-Payor Class. Those entities are identified in ECF 997, which is attached hereto as Exhibit G.

d.  "Class Members" means the members of the End-Payor Class.

e.  "Effective Date" means the date on which all of the following have occurred:  (i) the Settlement is not terminated pursuant to paragraphs 15 or 16 below; (ii) the Settlement is approved by the Court as required by Fed. R. Civ. P. 23(e); (iii) the Court enters a final approval order, entering a final judgment of dismissal with prejudice against Plaintiffs and Class Members who have not timely excluded themselves from the End-Payor Class, should the Court so allow such exclusion (*see infra* paragraph 16), and (iv) the period to appeal the final approval order has expired and/or all appeals have been finally resolved.

f.  "Escrow Account" means the qualified settlement escrow account which holds the Settlement Fund.

g.  "Escrow Agreement" means the agreement annexed hereto as Exhibit B.

h.  "Fee and Expense Award" means award(s) by the Court to Class Counsel of attorneys' fees, reasonable costs and expenses incurred in the prosecution of the Action, including any interest accrued thereon, and service awards to the named Plaintiffs.

i.  "GEHA" means the Government Employees Health Association.

j.  "Released Claims" means past, present, or future liabilities, claims, demands, obligations, suits, injuries, damages, levies, executions, judgments, debts, charges, actions, or causes of action, at law or in equity, whether class, individual, or otherwise in nature, and whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, arising out of or relating to purchases of Lidoderm or 5% lidocaine patches at any time prior to the Effective Date that, for purchases by Plaintiffs or GEHA, arise under any (i) federal statute or (ii) statute or common law and, for purchases by the Class Members (other than GEHA), arise under any (i) federal statute or (ii) statute or common law in the Class States, relating to or arising out of the facts,

occurrences, transactions, or other matters alleged or asserted in this Action, or that could have been alleged or asserted in this Action against the Releasees.

k. "Releasees" means Watson and its past, present and future parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives, and the predecessors, successors, heirs, executors, administrators and representatives of each of the foregoing.

l. "Releasors" means Plaintiffs, Class Members and their respective past, present and future parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives, and their predecessors, successors, heirs, executors, administrators, and representatives.

m. "Settlement Fund" means the Watson Settlement Amount, plus any amounts paid by Endo and Teikoku pursuant to their respective separate settlements with End-Payor Plaintiffs as well as any interest accrued or income earned thereon as described below.

n. "Watson Settlement Amount" means $41,000,000.

o. "Watson Unspent Settlement Fund" means the Watson Settlement Amount plus one-third interest accrued on the Settlement Fund, minus one-third of any Administration Expenses previously disbursed from the Escrow Account.

2. **Reasonable Steps Necessary to Help Effectuate this Settlement**. The parties and their counsel agree to undertake all reasonable steps necessary to help effectuate the Settlement, including undertaking all actions contemplated by and steps necessary to carry out the terms of this Settlement and to secure the prompt, complete, and final dismissal with prejudice of all claims in this Action against Watson. This includes Watson serving notifications to appropriate federal and state officials pursuant to 28 U.S.C. § 1715. Watson agrees not to seek decertification of the End-Payor Class. Watson further agrees not to oppose the End-Payor Class's motions for preliminary or final approval of the Settlement, and agrees not to appeal any Court ruling granting either of these motions.

3.     **Motion for Preliminary Approval of the Settlement**.  Following the execution of the Settlement Agreement by all parties, Class Counsel shall prepare and file a motion requesting preliminary approval of the Settlement, and authorizing dissemination of notice to the Class.  The motion for preliminary approval shall include a proposed form of order in the form substantially as in Exhibit C hereto:

(a) requesting preliminary approval of the Settlement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and finding that dissemination of notice to the End-Payor Class is warranted;

(b) finding that the proposed plan of notice complies with Rule 23 and due process, and seeking approval of short- and long-form notices in the forms substantially as in Exhibits D-F hereto;

(c) approving the Plan of Allocation, in the form substantially as in Exhibit A hereto;

(d) providing that if final approval of the Settlement is not obtained, the Settlement shall be null and void and the parties will revert to their positions *ex ante* without prejudice to their claims or defenses; and

(e) setting a date for a motion for final approval, a deadline for objections and a fairness hearing.

After the Court preliminarily approves the Settlement, Class Counsel shall cause Class Members to receive notice of the Settlement.

4.     **Motion for Final Approval and Entry of Final Judgment**.  If the Court preliminarily approves the Settlement, Class Counsel shall submit a motion for final approval pursuant to the schedule provided for in the Preliminary Approval Order.  The final approval motion shall seek entry of a final approval order:

(a) finding that notice given constitutes due, adequate and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

(b) finding the Settlement to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and directing consummation of the Settlement pursuant to its terms;

(c) finding that all Class Members shall be bound by the Settlement Agreement and all of its terms;

(d)      finding that the Releasors shall be bound by the releases set forth in paragraphs 12 and 13 of this Settlement Agreement, and shall be forever barred from asserting any claims or liabilities related to the Action or any Released Claims against any of the Releasees;

(e)      directing that the Action be dismissed with prejudice and without costs in accordance with paragraph 14 below;

(f)      determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal with prejudice be final;

(g)      retaining exclusive jurisdiction over the Settlement, including the administration and consummation of the Settlement; and

(h)      directing that, for a period of five years, the Clerk of the Court shall maintain the record of the entities that have excluded themselves from the End-Payor Class (which are identified in ECF 946, as modified by ECF 997) and that a certified copy of such records shall be provided to Watson.

5.      **Finality of Settlement**.  This Settlement Agreement shall become final upon the Effective Date.

6.      **Settlement Payments**.

(a)      Within 15 calendar days after the later of the entry of the preliminary approval order or receipt from Class Counsel of wire transfer instructions and any other information or forms required by Watson for purposes of making payments, Watson shall pay the Watson Settlement Amount.

(b)      The payments provided for in subparagraph 6(a) above shall be held in the Escrow Account subject to the terms and conditions of the Escrow Agreement, and in accordance with the provisions of paragraphs 7-9, 16, and 17 below.  Watson shall not pay any additional amount at any time, whether for class notice costs, attorney fees or expenses, incentive awards, settlement administration costs, escrow costs, taxes due from Escrow Account, or any other cost.  Watson shall not be liable for any monetary payments under the Settlement Agreement other than the Watson Settlement Amount.  The total monetary consideration that Watson will pay for this Settlement shall be the Watson Settlement Amount only. Notwithstanding anything in the foregoing, Watson shall be responsible for giving notice of this

8

Settlement as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) and shall bear any costs associated with giving such notice.

7. **The Settlement Fund**.

(a)   Before the Court issues the final approval order, disbursements for Administration Expenses may be made by Class Counsel from the Settlement Fund.  Approval by the Court or Watson shall not be required for payment of Administration Expenses, including the taxes, professional fees and other expenses related to maintaining the Escrow Account, for amounts of less than $500,000 in the aggregate, although upon Watson's request Class Counsel will identify any such payments.  Disbursements from the Settlement Fund that would equal or exceed $500,000 in the aggregate may be made only with prior approval of Watson or the Court.  If the Settlement Agreement is disapproved, terminated, or fails to become effective, previously disbursed Administration Expenses shall not be refunded to Watson.

(b)   At all times prior to the Effective Date, the Settlement Fund shall be invested as set forth in paragraph 3 of the Escrow Agreement, in instruments backed by the full faith and credit of the U.S. Government or fully insured by the U.S. Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the FDIC up to the guaranteed FDIC limit.  After the Effective Date, the Settlement Fund shall be invested pursuant to paragraph 3 of the Escrow Agreement as directed in writing by Class Counsel.  All interest earned on the Settlement Fund shall become part of the Settlement Fund.

8. **Disbursements.**

(a)   After the Effective Date, the Settlement Fund shall be distributed in accordance with the Plan of Allocation and the Court's approval of subsequent request(s) for distribution.

9. **Taxes**.

(a)   Class Counsel shall be solely responsible for directing the Escrow Agent (as defined in the Escrow Agreement) to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Escrow Account.  Further, Class Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments,

9

including interest and penalties due, on income earned by the Escrow Account.  Subject to

paragraph 7(a) above, Class Counsel shall be entitled to direct the Escrow Agent to pay

customary and reasonable tax expenses, including professional fees and expenses incurred in

connection with carrying out the Escrow Agent's or tax preparer's responsibilities as set forth in

this paragraph, from the Escrow Account.  Class Counsel shall notify Watson regarding any

payments or expenses paid from the Escrow Account upon receipt of a request for such

information from Watson.  Watson shall have no responsibility to make any tax filings relating to

this Settlement Agreement, the Escrow Account, or the Settlement Payments, and shall have no

responsibility to pay taxes on any income earned by the Escrow Account, or to pay any taxes

with respect thereto unless the Settlement is not consummated and the Watson Unspent

Settlement Fund is returned to Watson.  Other than as specifically set forth herein, Watson shall

have no responsibility for the payment of taxes or tax expenses.  If for any reason, for any period

of time, Watson is required to pay taxes on income earned by the Escrow Account, the Escrow

Agent shall, upon written instructions from Watson with notice to Class Counsel, timely pay to

Watson sufficient monies from the Escrow Account to enable Watson to pay all taxes (state,

federal, or other) on income earned by the Escrow Account.

(b)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended,

and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be

Class Counsel, who shall timely and properly file or cause to be filed on a timely basis, all tax

returns necessary or advisable with respect to the Escrow Account (including without limitation

all income tax returns, all informational returns, and all returns described in Treas. Reg. §

1.468B-2(1)).

(c)     The parties to this Settlement Agreement and their counsel shall treat, and shall

cause the Escrow Agent to treat, the Escrow Account as being at all times a "qualified settlement

fund" within the meaning of Treas. Reg. § 1.468B-1.  The parties, their counsel, and the Escrow

Agent agree that they will not ask the Court to take any action inconsistent with the treatment of

the Escrow Account in this manner.  In addition, the Escrow Agent and, as required, the parties,

shall timely make such elections as necessary or advisable to carry out the provisions of this

paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back

to the earliest permitted date.  Such elections shall be made in compliance with the procedures

and requirements contained in such regulations.  It shall be the responsibility of the Escrow

Agent to timely and properly prepare and deliver the necessary documentation for signature by

all necessary parties and thereafter to cause the appropriate filing to occur.  All provisions of this

Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow

Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

10.     **Full Satisfaction; Limitation of Interest and Liability**.  Plaintiffs and Class

Members shall look solely to the Watson Settlement Amount for satisfaction from Watson for

any and all Released Claims.  If the Settlement becomes final pursuant to paragraph 5 above,

Watson's payment of the Watson Settlement Amount will fully satisfy any and all Released

Claims against Watson.  Except as provided by order of the Court, no Class Member shall have

any interest in the Watson Settlement Amount, Escrow Account, or any portion thereof.

11.     **Attorneys' Fees, Expenses and Costs**.

(a)     Class Counsel intend to seek, solely from the Settlement Fund, a Fee and Expense

Award.  Class Counsel shall not seek payment of attorneys' fees in an amount to exceed one-

third of the Settlement Fund.  Class Counsel also intend to seek service awards for each of the

Class Representatives of no more than $10,000.  Class Counsel shall file a motion for a Fee and

Expense Award in accordance with the Court's preliminary approval order.  Class Counsel shall

be paid and reimbursed for all fees and expenses solely from the Settlement Fund.  No portion of

any Fee and Expense Award shall be released from the Settlement Fund prior to the Effective

Date.  Watson is not obligated to take, does not take, and subject to the limitations in this

paragraph will not take, any position with respect to the application by Class Counsel for

attorneys' fees, reimbursement of expenses and costs and incentive or service awards.

(b)     The procedures for and the allowance or disallowance by the Court of Class

Counsel's application for attorneys' fees, costs and expenses to be paid from the Settlement Fund

are not part of this Agreement, and are to be considered by the Court separately from consideration of the fairness, reasonableness, and adequacy of the Settlement.  Any order or proceeding relating to the Fee and Expense Award, or any appeal from any such order, shall not operate to modify or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement.  A modification or reversal on appeal of any amount of the Fee and Expense Award shall not be deemed a modification of the terms of this Agreement or Final Approval Order, and shall not give rise to any right of termination.

12.     **Release.**

(a)     Upon the occurrence of the Effective Date, Releasors hereby release and forever discharge, and covenant not to sue the Releasees only, with respect to, in connection with, or relating to any and all Released Claims.  Notwithstanding the foregoing, and for avoidance of doubt:

(b)     This Release is not intended to release anyone other than the Releasees;

(c)     This Release is not intended to be on behalf of anyone other than the Releasors, and does not affect the claims of, and is not in whole or part on behalf of, the direct purchaser class or the non-class direct purchaser plaintiffs, who filed their own complaints in this matter; and

(d)     This Release shall have no effect on any Releasor's claim arising in the ordinary course of business between Releasors and the Releasees arising under Article 2 of the Uniform Commercial Code (pertaining to sales) or the laws of breach of contract or express warranty, the laws of negligence, product liability, implied warranty, or personal injury, or other claims wholly unrelated to the allegations in the Action or to allegations that could have been alleged or asserted in the Action.

13.     **Additional Release**.  In addition, each Releasor hereby expressly waives and releases, upon the Effective Date, any and all provisions, rights, and/or benefits conferred by § 1542 of the California Civil Code, which reads:

Section 1542.  General Release; extent.  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code, notwithstanding that the release in paragraph 12 is not a general release and is of claims against Releasees only.  Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of paragraph 12.  Nonetheless, upon the Effective Date, each Releasor hereby expressly waives and fully, finally and forever settles and releases any known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of paragraph 12, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Releasor also hereby expressly waives and fully, finally and forever settles, releases and discharges any and all claims it may have against the Releasees under § 17200, *et seq.*, of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of the Released Claims.

14.     **Dismissal of the Litigation**.  Upon this Settlement Agreement becoming final in accordance with paragraph 5 above, all claims asserted against Watson by Plaintiffs in the Action and by GEHA in *Government Employees Health Association, Inc. v. Endo Pharmaceuticals Inc., et al.*, No. 14-2180 (N.D. Cal.) shall be dismissed with prejudice.

15.     **Effect of Disapproval**.  If based on a determination that the Settlement is not fair, reasonable or adequate, and on this basis only, the Court (i) declines to approve this Settlement Agreement; (ii) materially modifies the Agreement; (iii) does not enter the final approval order containing the elements set forth in paragraph 4 above, (iv) enters the final approval order and appellate review is sought, and on such review, such final approval order is

not affirmed or is affirmed with material modification, then this Settlement Agreement may be terminated upon the written election of Class Counsel or Watson's counsel, within 10 business days of the event allowing for termination.  For the avoidance of doubt, any order of the Court or the Ninth Circuit Court of Appeals that is based on a determination that the Settlement is not fair, reasonable or adequate and that (a) narrows or does not approve the scope of the release and covenant not to sue contemplated by this Settlement, (b) purports to impose additional material obligations on Watson, or (c) declines to enter a final judgment that meets the requirements set forth in paragraph 4 above, except as otherwise agreed in writing by Class Counsel and Watson, constitutes a failure to grant final approval of this Agreement and confers on Class Counsel and/or Watson the right to terminate the Agreement.  A modification or reversal on appeal of the Plan of Allocation shall not be deemed a modification of the terms of this Agreement or Final Approval Order and shall not give rise to any right of termination

16.  **Opt-Out**.

(a)  The parties recognize that a second opportunity for opting out of the Class ("Additional Opt-Out Period") is within the Court's discretion.  However, the parties agree that such an opportunity is not necessary under the circumstances because Class Members were previously afforded adequate notice and the opportunity to opt out of the Class.

(b)  If the Court requires an Additional Opt-Out Period, any Class Member that requests exclusion from the class during the Additional Opt-Out Period (an "Additional Opt-Out"), shall certify, under penalty of perjury, the number of brand and generic Lidoderm patches (boxes of 30) the opt-out purchased or reimbursed, in whole or in part, during the relevant portions of the class period ("Quantity Purchased").  Within 10 calendar days after the Court-ordered deadline by which Class Members may opt-out during any Additional Opt-Out Period, Class Counsel shall serve on counsel for Watson a list of all Additional Allowed Opt-Outs (defined below) who timely filed opt-out notices and copies of their purchase certifications.

(c)  If the Settlement is approved by the Court and becomes final as defined in paragraph 5, and the Court has required an Additional Opt-Out Period, and an End-Payor has

14

properly excluded itself from the Class during such Additional Opt-Out Period, and the Court has allowed such exclusion ("Additional Allowed Opt-Out"), the Settlement Fund will be reduced by a percentage (the "Opt Out Percentage") equal to (1) the Quantity Purchased by the Additional Allowed Opt-Outs that are third-party payors divided by the total Quantity Purchased by all Class Members during the class period, with the result then multiplied by .753, plus (2) Quantity Purchased by the Additional Allowed Opt-Outs that are consumers divided by the total Quantity Purchased by all Class Members during the class period with the result multiplied by .247.  For purposes of this Settlement, the total Quantity Purchased by all Class Members is 4,234,542 (boxes of 30).  To illustrate, assume there was one TPP Additional Opt-Out that purchased 100,000 qualified boxes of Lidoderm and generic Lidoderm. Step 1 of the draw down methodology would be calculated as: 100,000 divided by 4,234,542 (equal to 2.36% of the Class purchases). Step two would be to multiply the TPP's 2.36% share of Class purchases by .753. Thus, assuming that the TPP opted out of all three settlements, the Opt-Out Percentage would be 1.78%.

(d)     Nothing herein will preclude an End-Payor who has sought exclusion from the End-Payor Class from seeking leave to rescind its decision until such time as the Settlement becomes final pursuant to paragraph 5.  A decision by an End-Payor to opt out of the Class will have no impact on the validity and enforceability of the Settlement as to the remaining Class Members.

(e)     Should the Settlement Fund be subject to reduction pursuant to 16(c) above, the Escrow Agent shall return the amount by which the Settlement Fund is to be reduced (the "Fund Reduction Amount") to each of Endo, Teikoku, and Watson *pro rata* based on their respective total payments due under their respective settlement agreements.  The Escrow Agent shall not be required to make a Fund Reduction Amount payment to Watson if the amount to be refunded to Watson is less than $15,000.  Subject to paragraph 7 of the Escrow Agreement, the Escrow Agent shall disburse Watson's share of the Fund Reduction Amount to Watson in accordance with this paragraph within 15 calendar days after receipt of either (i) written notice signed by

Class Counsel and Watson's counsel stating that the Fund Reduction Amount is to be returned to Watson (such written notice will be signed by Class Counsel within three days of receiving the written notice from Watson), or (ii) any order of the Court so directing.

(f)     Watson shall have the option to terminate this Settlement Agreement if the Opt-Out Percentage exceeds a percentage set forth in Appendix A hereto that shall be filed under seal with Court permission.

(g)     If consumers are not included in any Additional Opt Out Period and the Court later decides that consumers should be given an additional opportunity to opt out, the parties reserve their respective rights concerning which party or parties shall pay the cost of the additional notice.

(h)     Notwithstanding anything to the contrary in the Court's Order Granting a Motion for a Set-Aside (ECF 828), in the event Watson settles with an Additional Allowed Opt-Out concerning the Released Claims, Watson shall, contemporaneously with the date that Watson makes payment pursuant to that settlement agreement, place into an interest-bearing escrow account (the "Set Aside Fund") to be established by Class Counsel an amount (the "Set Aside Fund Amount") equal to 10% of such settlement multiplied by a fraction (A) the numerator of which shall be such Additional Allowed Opt-Out's Lidoderm purchases in Class States addressed by such settlement and (B) the denominator of which shall be such Additional Allowed Opt-Out's Lidoderm purchases in the following states and territories to the extent addressed by such settlement: Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. Class Counsel intends for this amount to cover a portion of Class Counsel attorneys' fees, costs and expenses, and anticipates filing a motion requesting that the Court award some or all of the amount in the Set Aside Fund to Class Counsel as attorneys' fees, costs and expenses. Watson agrees that it will not take any position with respect to any motion

by Class Counsel for an award of some or all of the amount in the Set Aside Fund to Class Counsel as attorneys' fees, costs, and expenses.  Watson shall inform Class Counsel of the amount of any private offers made to, and accepted by, an Additional Allowed Opt-Out within five (5) days of the acceptance of the offer by the Additional Allowed Opt-Out and shall provide the basis for the calculation of the Set Aside Fund.

(i)     Any disputes regarding the application of this paragraph 16, including calculation of the Quantity Purchased by Additional Allowed Opt-Outs, the Opt-Out Percentage, the Fund Reduction Amount, or the Set Aside Fund may be resolved by the Court, with Plaintiffs, Watson, and the opt-out(s) all having the opportunity to be heard.

17.     **Reimbursement of the Settlement Funds upon Termination**.  If the Settlement Agreement is terminated pursuant to the provisions of paragraphs 15 or 16 above, the Escrow Agent shall return to Watson the Watson Unspent Settlement Fund at the time of termination. Subject to paragraph 8 of the Escrow Agreement, the Escrow Agent shall disburse the Watson Unspent Settlement Fund to Watson in accordance with this paragraph within 15 calendar days after receipt of either (i) written notice signed by Class Counsel and Watson's counsel stating that the Settlement has been terminated (such written notice will be signed by the non-terminating party within three days of receiving the written notice from the terminating party), or (ii) any order of the Court so directing.  If the Settlement Agreement is terminated pursuant to paragraph 15 or 16, (1) any obligations pursuant to this Settlement Agreement other than disbursement of the Watson Unspent Settlement Fund to Watson as set forth above  shall cease immediately and (2) the releases set forth in paragraphs 12 and 13 above shall be null and void.

18. **Preservation of Rights**.  Except as expressly provided for in the Releases in paragraphs 12 and 13 above, this Settlement Agreement, whether the Settlement  becomes final or not, and any and all negotiations, documents, and discussions associated with it, shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or lack thereof, of any liability or wrongdoing by Watson or lack thereof, or of the truth or lack thereof of any of the claims or allegations

17

contained in the Complaint or any other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way other than to enforce the terms of this Settlement Agreement.  The parties expressly reserve all of their rights if the Settlement does not become final in accordance with the terms of this Settlement Agreement.  Upon the Settlement becoming final, nothing in this paragraph shall prevent Watson from asserting any release or using this Settlement Agreement to offset any liability to any other parties, including but not limited to, federal and state government agencies.

19.     **Resumption of Litigation in the Event of Termination**.  The parties agree that in the event that the Settlement Agreement is not approved by the Court, or the Settlement does not become final pursuant to paragraph 5 above or if the Settlement Agreement is terminated pursuant to paragraphs 15 or 16 above, litigation of the Action by Plaintiffs and the Class against Watson will resume in a reasonable manner to be approved by the Court upon a joint application by the parties, and upon full reimbursement to Watson of the Watson Unspent Settlement Fund as provided for in paragraph 17 above.

20.  **Non-Assistance and Maintaining Confidentiality of Litigation Materials**.  No Plaintiff shall, directly or indirectly, provide assistance, support, advice, or information to any person or entity asserting, considering asserting, or seeking to assert claims against Watson based on or related to the Released Claims or the facts, occurrences, transactions, or other matters alleged or asserted in this Action, or that could have been alleged or asserted in this Action.  In the event that Plaintiffs or Class Counsel receive a subpoena or other legal process that would require disclosure of material covered by the Protective Order, such Plaintiff or Class Counsel shall promptly notify Watson and forward a copy of such subpoena or legal process so that Watson may seek a protective order or otherwise seek to maintain the confidentiality of material covered by the Protective Order; and shall object to the production of such material unless and until any such motion filed by Watson is resolved.  In addition, Plaintiffs and Class Counsel shall abide by the terms of the Protective Order in this Action, including with respect to

the destruction of materials and the limitations on the use of any material covered by the

Protective Order to this Action, unless otherwise ordered by a court of competent jurisdiction.

21.    **Binding Effect**.  This Settlement Agreement shall be binding upon, and inure to

the benefit of, the Releasors and the Releasees.  Without limiting the generality of the foregoing,

each and every covenant and agreement herein by Class Counsel shall be binding upon Plaintiffs

and all Class Members.

22.    **Integrated Agreement**.  This Settlement Agreement, together with the exhibits

hereto and the documents referenced herein, contains the complete and integrated statement of

every term in this Agreement, and supersedes all prior agreements or understandings, whether

written or oral, between the parties with respect to the subject matter hereof.  This Settlement

Agreement shall not be modified except by a writing executed by Plaintiffs and Watson.

23.    **Independent Settlement**.  This Settlement of the Action is not conditioned on the

disposition of the claims of the direct purchaser plaintiffs, the direct purchaser class or the non-

class direct purchaser plaintiffs, all of whom filed their own complaints.  This Settlement

Agreement is not conditioned on the performance or disposition of any other settlement

agreement between the End-Payor Class and any other Defendant.

24.    **Headings**.  The headings in this Settlement Agreement are intended only for the

convenience of the reader and shall not affect the interpretation of this Settlement Agreement.

25.    **No Party is the Drafter**.  None of the parties shall be considered the drafter of

this Settlement Agreement or any provision hereof for the purpose of any statute, case law or

rule of construction that might cause any provision to be construed against the drafter hereof.

26.    **Consent to Jurisdiction**.  Each Class Member and Watson hereby irrevocably

submits to the exclusive jurisdiction of the United States District Court for the Northern District

of California for any suit, action, proceeding or dispute arising out of or relating to this

Settlement Agreement or the applicability of this Settlement Agreement, including, without

limitation, any suit, action, proceeding or dispute relating to the release provisions herein

provided that this consent to jurisdiction shall not affect Watson's right or ability to assert this

Settlement Agreement or the Release contained herein as a defense in an action filed in any other jurisdiction asserting Released Claims or concerning this Settlement Agreement or this Action.

27.     **Choice of Law**.  All terms of this Settlement Agreement shall be governed by and interpreted according to federal common law or, where state law must apply, California law without conflicts of law principles.

28.     **Representations and Warranties**.  Each party represents and warrants that it has the requisite authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated herein.

29.     **Notice**.  Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing and provided by email or overnight delivery to the counsel set forth in the signature block below for Watson or Class Counsel, respectively, or their designees.

30.     **Execution in Counterparts**.  This Settlement Agreement may be executed in counterparts.  A facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

31.     **Confidentiality**.  While the fact of settlement of the Action has been disclosed in open court, the terms of this Settlement Agreement shall remain confidential until Plaintiffs move for preliminary approval of the Settlement, unless Watson and Class Counsel agree otherwise, provided that Watson may disclose the terms of this Settlement Agreement to accountants, lenders, auditors, legal counsel, tax advisors, or in response to a request by any governmental, judicial, or regulatory authority or otherwise required by applicable law or court order and Plaintiffs may disclose the terms of the Settlement Agreement to any entity that has applied to serve as Notice and Claims Administrator or Escrow Agent, who shall abide by the terms of this paragraph.  Plaintiffs shall not issue any press release or statement to any media outlet regarding this Agreement prior to entry of the Final Approval order without obtaining a prior written consent from the other parties, which consent shall not be unreasonably withheld. For the avoidance of doubt, statements in Class Counsel's website, court filings, statements made

in connection with providing notice of the Settlement to the End-Payor Class, or responses to inquiries from media outlets do not constitute a "press release or statement to any media outlet."

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of the date first herein above written.

END-PAYOR CLASS SETTLEMENT AGREEMENT WITH WATSON
MDL DOCKET NO. 14-md-02521-WHO

1

*For the End-Payor Class:*

2

3

Daniel C. Girard (SBN 114826)

4

Dena C. Sharp (SBN 245869)
Scott Grzenczyk (SBN 279309)

5

**GIRARD GIBBS LLP**

6

601 California Street, 14th Floor
San Francisco, CA 94108

7

Telephone: (415) 981-4800
Facsimile: (415) 981-4846

8

Email: dcg@girardgibbs.com

9

Email: chc@girardgibbs.com
Email: smg@girardgibbs.com

10

11

12

Renae D. Steiner

13

Teresa M. Jones
**HEINS MILLS & OLSON, P.L.C.**

14

310 Clifton Avenue
Minneapolis, MN 55403

15

Telephone: (612) 338-4605
Facsimile: (612) 338-4692

16

Email: rsteiner@heinsmills.com

17

18

Sharon K. Robertson

19

Donna M. Evans
**COHEN MILSTEIN SELLERS &**

20

**TOLL PLLC**
88 Pine Street, 14th Floor

21

New York, New York 10005

22

Telephone: (212) 838-7797
Facsimile: (212) 838-7745

23

Email: srobertson@cohenmilstein.com
Email: devans@cohenmilstein.com

24

25

*Co-Lead Counsel for the
End-Payor Class*

26

27

Joseph R. Saveri

28

*For Defendants Actavis, Inc. (f/k/a Watson
Pharmaceuticals, Inc.), Watson Laboratories,
Inc., Actavis plc., Anda Inc., Anda
Pharmaceuticals, Inc., and Valmed
Pharmaceuticals, Inc.*

Karen Hoffman Lent (admitted pro hac vice)
**SKADDEN, ARPS, SLATE, MEAGHER
& FLOM**
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (917) 777-3000
Email: Karen.Lent@skadden.com

Steven C. Sunshine (admitted pro hac vice)
Sean M. Tepe (admitted pro hac vice)
**SKADDEN, ARPS, SLATE, MEAGHER
& FLOM**
1440 New York Ave. NW
Washington DC, 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: Steve.Sunshine@skadden.com
Email: Sean.Tepe@skadden.com

*Attorneys for Defendants Actavis, Inc. (f/k/a
Watson Pharmaceuticals, Inc.), Watson
Laboratories, Inc., Actavis plc., Anda Inc.,
Anda Pharmaceuticals, Inc., and Valmed
Pharmaceuticals, Inc.*

22

Joshua P. Davis
Ryan J. McEwan
**JOSEPH SAVERI LAW FIRM, INC.**
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone:   (415) 500-6800
Facsimile:   (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: rmcewan@saverilawfirm.com

*Liaison Counsel for the End-Payor Class*

END-PAYOR CLASS SETTLEMENT AGREEMENT WITH WATSON
MDL DOCKET NO. 14-md-02521-WHO

**Exhibit D**

**Fees of Escrow Agent**

**Acceptance Fee:**                                                           **Waived**

The Acceptance Fee includes the review of the Escrow Agreement, acceptance of the role as Escrow Agent, establishment of Escrow Account(s), and receipt of funds.

**Annual Administration Fee:**                                               **Waived**

The Annual Administration Fee includes the performance of administrative duties associated with the Escrow Account including daily account management, generation of account statements to appropriate parties, and disbursement of funds in accordance with the Escrow Agreement.  Administration Fees are payable annually in advance without proration for partial years.

**Out of Pocket Expenses:**                                                  **Waived**

Out of pocket expenses include postage, courier, overnight mail, wire transfer, and travel fees.

13

EXHIBIT C

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO: END-PAYOR PLAINTIFF ACTIONS | **[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENTS, APPROVING NOTICE AND CLAIMS PLAN, AND APPROVING PLAN OF ALLOCATION** |

On March 20, 2018, End-Payor Plaintiffs, on behalf of themselves and the End-Payor Class, entered into separate settlement agreements with (a) defendant Endo Pharmaceuticals Inc. ("Endo"); (b) defendants Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. (together, "Teikoku"); (c) defendants Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., Actavis plc, Anda Inc., Anda Pharmaceuticals, Inc., and Valmed Pharmaceuticals, Inc. (together, "Watson" and together with Endo and Teikoku, "Defendants") (the "Settlement Agreements" or "Settlements").  The Court has considered End-Payor Plaintiffs' Motion for Preliminary Approval of Settlements, Approval of Notice and Claims Plan, and Approval of Plan of Allocation, including all arguments and briefing presented and any opposition thereto.  The Court finds that the Settlements warrant preliminary approval and that notice of the Settlements should be distributed to the End-Payor Class.

The Court **GRANTS** the Motion and **ORDERS** as follows:

1.     Terms capitalized in this Order and not otherwise defined herein have the same meanings as those used in the Settlement Agreements and exhibits thereto.

## I.     Previously Certified Class

2.     In light of this Court's previous order dated February 21, 2017 (ECF 670) certifying the End-Payor Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the exclusion notices received during the opt-out period established by the order, and the now proposed Settlements, the Class is defined as follows:

> (a) All persons and entities in the United States and its territories who, in Arizona, California, Florida, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, or Wisconsin ("Class States"), for consumption by themselves or their family member, or by their insureds, plan participants or beneficiaries, paid and/or provided reimbursements for some or all of the purchase price of:
>
> > i.   Branded Lidoderm for the time period August 23, 2012 through September 14, 2013; and/or
> >
> > ii.  AB-rated generic Lidoderm for the time period September 15, 2013 through August 1, 2014;
>
> -and-

1

[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENTS, APPROVING NOTICE AND CLAIMS PLAN, AND APPROVING PLAN OF ALLOCATION
MDL DOCKET NO. 14-md-02521-WHO

(b) Third-party payors Cigna, MedImpact Healthcare Systems, Inc., Comprehensive Health Management, Inc. Part D, and Express Scripts Senior Care to the extent they provided, under their Medicare Part D plans, reimbursements for some or all of the price of branded Lidoderm purchased in Class States for the time period September 15, 2013 through August 1, 2014.

Excluded from the End-Payor Class are:

(a) Defendants and their officers, directors, management, employees, subsidiaries, and affiliates;

(b) Those who, after September 15, 2013, paid and/or provided reimbursements for branded Lidoderm and did not purchase or reimburse for generic Lidoderm, except third-party payors Cigna, MedImpact Healthcare Systems, Inc., Comprehensive Health Management, Inc. Part D, or Express Scripts Senior Care for their Part D insurance;

(c) Government entities, other than government-funded employee benefit plans;

(d) Fully insured health plans (*i.e.*, plans that purchased insurance that covered 100 percent of the plan's reimbursement obligations to all of its members);

(e) "Single flat co-pay" consumers who purchased Lidoderm or generic Lidoderm only via a fixed dollar co-payment that does not vary on the basis of the purchased drug's status as branded or generic (*e.g.*, $20 for both branded and generic drugs);

(f) "Flat generic co-pay" consumers who, after September 15, 2013, purchased generic Lidoderm via a fixed dollar copayment (*e.g.* $10 for generic drugs) regardless of the co-payment applicable to branded drugs;

(g) Consumers who purchased or received Lidoderm or its AB-rated generic equivalent through a Medicaid program only;

(h) Pharmacy benefit managers; and

(i) The judges in this case and members of their immediate families.

3.   The following entities are excluded from the End-Payor Class, as they previously excluded themselves from the Class and have not sought to opt back in: Carter Bank & Trust; CVS Health Corporation; Darby Dental Supply, LLC; Powell's City of Books; Rite Aid

Corporation; The Western Union Co.; Wisconsin Evangelical Lutheran Synod; and Wood

Group Management Services, Inc.  *See* Order Regarding Opt-Outs, ECF 946 (Dec. 28, 2017)[1].

## II.     Preliminary Approval

4.     This Court has jurisdiction over this action and each of the parties to the Settlements.

5.     The Court finds that the proposed Settlements, which were arrived at by Court-ordered mediation under the auspices of Chief Magistrate Judge Joseph C. Spero and arm's-length negotiations by experienced counsel after over four years of litigation, will likely warrant final approval as fair, reasonable, and adequate and that notice of the Settlements should be sent to the End-Payor Class.

6.     The Court will make a final determination concerning the fairness, reasonableness, and adequacy of the Settlements after further consideration at a final approval hearing.

7.     Pending final approval of the Settlement and the entry of final judgment, any and all proceedings (other than those incidental to the settlement process) against Defendants in the Action and *Government Employees Health Association, Inc. v. Endo Pharmaceuticals Inc., et al.*, No. 14-2180 (N.D. Cal.) are stayed.

8.     The Settlement Fund shall be maintained as a "qualified settlement fund" consistent with the terms of the Settlements.  The Court appoints Computershare Trust Co., N.A., as Escrow Agent.

9.     Neither the contents of this Order nor the Settlement Agreement nor any other Settlement-related document or related proceedings shall constitute, be construed as or be deemed to be evidence of or an admission or concession by any Defendant as to the validity of any claim that has been or could have been asserted against a Defendant or as to any liability by a Defendant to the End-Payor Class.

## III.    Notice and Claims Plan

10.     The Court finds that the plan for distributing notice of the Settlements to the End-Payor Class satisfies the requirements of Fed. R. Civ. P. 23(e)(1) and due process and is a reasonable manner of distributing notice to class members who would be bound by the Settlements.

---

[1] The End-Payor Class includes the entities that previously filed opt-out requests, subsequently withdrew those requests and re-joined in the End-Payor Class.  Those entities are identified in ECF 997.

[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENTS, APPROVING NOTICE
AND CLAIMS PLAN, AND APPROVING PLAN OF ALLOCATION
MDL DOCKET NO. 14-md-02521-WHO

11. The Court appoints Kurtzman Carson Consultants ("KCC") as Notice and Claims Administrator.

12. The Court approves the Long-Form Notice and Short Form Notices attached as Exhibits D-F to the Settlement Agreements. The Notices apprise the End-Payor Class of the essential terms of the Settlements, their legal rights and options, the steps class members must take to object to the Settlements and submit claims, information concerning Class Counsel's request for payment of attorneys' fees, expenses, and service awards, and all relevant deadlines.

13. The Court approves the claim forms as fair, reasonable, and adequate.

14. End-Payor Plaintiffs and KCC shall adhere to the following schedule:

    a.    Within 21 days of this Order: activation of website and toll-free number.

    b.    Within 30 days of this Order: complete mailing of Long-Form Notice to third-party payors.

    c.    Within 35 days of this Order: initiate publication notice.

    d.    Within 90 days of this Order: complete publication notice.

    e.    Within 90 days of this Order: Class Counsel shall submit a motion for the payment of attorneys' fees, reimbursement of expenses, and service awards to the Class Representatives. Copies of the motion shall be made available on the settlement website.

15. Members of the End-Payor Class shall adhere to the following deadlines, which shall be included in Long-Form and Short-Form Notices and available on the settlement website:

    a.    Within 115 days of this Order: postmark date for members of the End-Payor Class to submit objections to the Settlements. Any objection must be in writing and comply with the requirements set forth in the Notices.

    b.    Within 150 days of this Order: postmark date for members of the End-Payor Class to submit claims and any required supporting material.

    c.    The Court finds that no further opportunity to opt-out is required under Rule 23(e)(4).

4

16.     Defendants shall provide notice of the Settlements as required by 28 U.S.C. § 1715.

**IV.    Plan of Allocation**

17.     The Court finds that the Plan of Allocation is fair, reasonable, and adequate.

18.     Although certain large insurers (which are identified in ECF 997) that had previously opted out of the End-Payor Class and have decided to return to the End-Payor Class will receive an initial portion of their claims payment before other claimants, the insurers will only receive their *pro rata* share of the settlement proceeds and their initial payment will not delay the distribution of settlement funds to other class members.

**V.     Final Approval**

19.     End-Payor Plaintiffs shall file a Motion for Final Approval within 130 days of this Order.  The motion shall include (1) a declaration from KCC confirming that KCC distributed notice in accordance with the Notice and Claims Plan and this Order and (2) copies of all objections received by KCC.

20.     Any oppositions to End-Payor Plaintiffs' Motion for Final Approval or Motion for Attorneys' Fees, Expenses, and Service Awards shall be filed within 144 days of this Order.

21.     Any replies in support End-Payor Plaintiffs' Motion for Final Approval or Motion for Attorneys' Fees, Expenses, and Service Awards shall be filed within 151 days of this Order.

22.     The Court shall hold a fairness hearing on _____, 2018.

**IT IS SO ORDERED.**

DATED: _____     _____
                                    THE HONORABLE WILLIAM H. ORRICK
                                    United States District Court Judge

[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENTS, APPROVING NOTICE
AND CLAIMS PLAN, AND APPROVING PLAN OF ALLOCATION
MDL DOCKET NO. 14-md-02521-WHO

EXHIBIT D

LEGAL NOTICE

If you purchased or paid for Lidoderm or its generic equivalent (lidocaine patch 5%), you could get a payment from class action settlements totaling $104.75 million.

1-855-298-0603

www.lidodermantitrustlitigation.com

You may be affected by settlements in a class action lawsuit against Endo Pharmaceuticals Inc., Teikoku Pharma USA, Inc., Teikoku Seiyaku Co., Ltd., Actavis, Inc., Watson Laboratories, Inc., Actavis plc, Anda Inc., Anda Pharmaceuticals, Inc., and Valmed Pharmaceuticals, Inc. (together "Defendants"). The lawsuit is brought by consumers and third-party payors of branded and generic Lidoderm ("End-Payors") who allege that Defendants violated state laws by entering into an agreement to delay the availability of generic versions of Lidoderm. Defendants deny any wrongdoing and the Court has not found that Defendants violated any law.

### WHAT ARE THE SETTLEMENT BENEFITS?

The Settlements will provide a total of **$104.75 million,** before payment of attorneys' fees and expenses, to pay the claims of eligible persons and entities that purchased and/or paid for the costs of brand name or generic Lidoderm (lidocaine patch 5%).

### ARE YOU ELIGIBLE FOR A PAYMENT?

As a consumer, you may be in the End-Payor Class and eligible for a settlement payment if (a) you paid for some or all of the purchase price of (i) branded Lidoderm between August 23, 2012 through September 14, 2013; and/or (ii) generic Lidoderm between September 15, 2013 through August 1, 2014; and (b) the purchases were made in AZ, CA, FL, KS, MA, ME, MN, NC, ND, NH, NM, NY, NV, SD, TN, WI, and/or WV for consumption by you or your family member. More information about the End-Payor Class and who is excluded is available at www.lidodermantitrustlitigation.com.

### SUBMITTING A CLAIM

To receive a payment under the Settlements, you must submit a claim. Claim forms are available at www.lidodermantitrustlitigation.com and

from the Lidoderm End-Payor Notice Administrator at the address below.  The deadline to submit a claim is: DATE, 2018.

### YOUR OTHER RIGHTS AND OPTIONS

**DO NOTHING:** If you do nothing, you will not get a payment, and your claim will be released.

**OBJECT TO THE SETTLEMENTS:** You may write to the Court about why you don't like the Settlements.  The deadline to object is: DATE, 2018.

### WANT MORE INFORMATION?

Go to the website, call toll-free, or write to Lidoderm End-Payor Notice Administrator, P.O. Box XXXXX, City, ST XXXXX-XXXX, for more information regarding the Settlements, End-Payor Class membership, your rights and options, and attorneys' fees and expenses.

The Court will hold a hearing in this case (*In re Lidoderm Antitrust Litig.*, MDL No. 2521) on DATE, **2018** to consider whether to approve the Settlements and End-Payor Plaintiffs' request for payment of attorneys' fees of no more than one-third of the Settlements, no more than $5,000,000 in costs and expenses, and $10,000 service awards to each of the nine named End-Payor Plaintiffs.

EXHIBIT E

Legal Notice

If you purchased or paid for Lidoderm or its generic equivalent (lidocaine patch 5%), you could get a payment from class action settlements totaling $104.75 million.

1-855-298-0603
www.lidodermantitrustlitigation.com

You may be affected by settlements in a class action lawsuit against Endo Pharmaceuticals Inc., Teikoku Pharma USA, Inc., Teikoku Seiyaku Co., Ltd., Actavis, Inc., Watson Laboratories, Inc., Actavis plc, Anda Inc., Anda Pharmaceuticals, Inc., and Valmed Pharmaceuticals, Inc. (together "Defendants").  The lawsuit is brought by consumers and third-party payors of branded and generic Lidoderm ("End-Payors") who allege that Defendants violated state laws by entering into an agreement to delay the availability of generic versions of Lidoderm. Defendants deny any wrongdoing and the Court has not found that Defendants violated any law.

## WHAT ARE THE SETTLEMENT BENEFITS?

The Settlements will provide a total of **$104.75 million,** before payment of attorneys' fees and expenses, to pay the claims of eligible persons and entities that purchased and/or paid for the costs of brand name or generic Lidoderm (lidocaine patch 5%).

## ARE YOU ELIGIBLE FOR A PAYMENT?

As a third-party payor, you may be in the End-Payor Class and eligible for a settlement payment if (a) you paid and/or provided reimbursements for some or all of the purchase price of (i) branded Lidoderm between August 23, 2012 through September 14, 2013; and/or (ii) generic Lidoderm between September 15, 2013 through August 1, 2014; and (b) the purchases were made in AZ, CA, FL, KS, MA, ME, MN, NC, ND, NH, NM, NY, NV, SD, TN, WI, and/or WV for consumption by your insureds, plan participants or beneficiaries.  More information about the End-Payor Class and who is excluded is available at www.lidodermantitrustlitigation.com.

### SUBMITTING A CLAIM

To receive a payment under the Settlements, you must submit a claim. Claim forms are available at www.lidodermantitrustlitigation.com and from the Lidoderm End-Payor Notice Administrator at the address below.  The deadline to submit a claim is: DATE, 2018.

### YOUR OTHER RIGHTS AND OPTIONS

**DO NOTHING:** If you do nothing you will not get a payment, and your claim will be released.

**OBJECT TO THE SETTLEMENTS:** You may write to the Court about why you don't like the Settlements.  The deadline to object is: DATE, 2018.

### WANT MORE INFORMATION?

Go to the website, call toll-free, or write to Lidoderm End-Payor Notice Administrator, P.O. Box XXXXX, City, ST XXXXX-XXXX-3229, for more information regarding the Settlements, End-Payor Class membership, your rights and options, and attorneys' fees and expenses.

The Court will hold a hearing in this case (*In re Lidoderm Antitrust Litig.*, MDL No. 2521) on **DATE, 2018** to consider whether to approve the Settlements and End-Payor Plaintiffs' request for payment of attorneys' fees of no more than one-third of the Settlements, no more than $5,000,000 in costs and expenses, and $10,000 service awards to each of the nine named End-Payor Plaintiffs.

EXHIBIT F

KCC Class Action Service
PO Box 43491
Providence, RI 02490-3491

# LDD

## «Barcode»

Postal Service: Please do not mark barcode
Claim#: LDD-«Claim8» - «CkDig»
«First1» «Last1»
«Addr2»
«Addr1»
«City», «St»  «Zip»

<div align="center">

UNDERLINE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

</div>

**If you purchased or paid for brand name or generic Lidoderm (lidocaine patch 5%), you could get a payment from class action settlements.**

*A federal court authorized this notice.  It is not a solicitation from a lawyer.*

- Three settlements in a lawsuit will provide up to $104.75 million to pay the claims of certain persons and entities that purchased and/or paid for the costs of brand name Lidoderm or its generic equivalent (5% lidocaine patch), as well as attorneys' fees and expenses.

- The settlements resolve a class action lawsuit (the "Lawsuit") against Endo Pharmaceuticals Inc. ("Endo"); Teikoku Pharma USA, Inc., Teikoku Seiyaku Co., Ltd. (together "Teikoku"); Actavis, Inc., Watson Laboratories, Inc., Actavis plc,  Anda Inc., Anda Pharmaceuticals, Inc., and Valmed Pharmaceuticals, Inc. (together "Watson" and with Endo and Teikoku "Defendants") alleging that, as part of a 2012 settlement of patent infringement litigation, Endo and Teikoku unlawfully paid Watson to delay the launch of a generic Lidoderm product.

- Defendants deny these allegations and any wrongdoing.  Defendants assert that their patent litigation settlement was a procompetitive and lawful compromise of patent infringement litigation.  The Court has not found that Defendants violated any law or issued any ruling on the merits of plaintiffs' claims.

- **Your legal rights are affected whether you act or don't act.  Read this notice carefully**.

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **SUBMIT A CLAIM** | You may submit a claim to receive a payment under the Settlements.  This Notice provides instructions for how to submit a claim.<br><br>**The deadline to submit a claim is: DATE, 2018.** |
| **DO NOTHING** | If you do nothing, you will get no payments under the Settlements. |
| **OBJECT** | You may write to the Court about why you don't like the Settlements.<br><br>**The deadline to submit an objection is: DATE, 2018.** |

**These rights and options—and the deadlines to exercise them—are explained in this notice.**

<div align="center">

1

If you have questions or want more information, you can:
Visit www.lidodermantitrustlitigation.com
Call (866) 700-0414, E-mail Info@lidodermantitrustlitigation.com

</div>

The Court previously decided that the Lawsuit can proceed as a class action on behalf of an "End-Payor Class," or a group of people and entities that may include you.  Only members of the End-Payor Class are eligible to receive payments under the Settlements.  Subject to the exclusions listed below, the End-Payor Class includes all persons and entities in the United States and its territories who:

1. Paid and/or provided reimbursements for some or all of the purchase price of:

    a. Branded Lidoderm for the time period August 23, 2012 through September 14, 2013; and/or

    b. AB-rated generic Lidoderm for the time period September 15, 2013 through August 1, 2014;

2. In Arizona, California, Florida, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, or Wisconsin ("Class States"); AND

3. For consumption by themselves or their family member, or by their insureds, plan participants or beneficiaries.

If not already included in the above categories, the End-Payor Class also includes third-party payors Cigna, MedImpact Healthcare Systems, Inc., Comprehensive Health Management, Inc. Part D, and Express Scripts Senior Care to the extent they provided, under their Medicare Part D plans, reimbursements for some or all of the price of branded Lidoderm purchased in Class States for the time period September 15, 2013 through August 1, 2014.

The End-Payor Class **does not include**: (a) Defendants and their officers, directors, management, employees, subsidiaries, and affiliates; (b) those who, after September 15, 2013, paid and/or provided reimbursements for branded Lidoderm and did not purchase or reimburse for generic Lidoderm, except third-party payors Cigna, MedImpact Healthcare Systems, Inc., Comprehensive Health Management, Inc. Part D, or Express Scripts Senior Care for their Part D insurance; (c) government entities, other than government-funded employee benefit plans; (d) fully insured health plans (*i.e.*, plans that purchased insurance that covered 100 percent of the plan's reimbursement obligations to all of its members); (e) "single flat co-pay" consumers who purchased Lidoderm or generic Lidoderm only via a fixed dollar co-payment that does not vary on the basis of the purchased drug's status as branded or generic (*e.g.*, $20 for both branded and generic drugs); (f) "flat generic co-pay" consumers who, after September 15, 2013, purchased generic Lidoderm via a fixed dollar copayment (*e.g.*, $10 for generic drugs) regardless of the co-payment applicable to branded drugs; (g) consumers who purchased or received Lidoderm or its AB-rated generic equivalent through a Medicaid program only; (h) pharmacy benefit managers; (i) the judges in this case and members of their immediate families; and (j) certain entities that previously excluded themselves from the End-Payor Class and have not requested to opt back in.

If you have questions or want more information, you can:
Visit www.lidodermantitrustlitigation.com
Call (866) 700-0414, E-mail Info@lidodermantitrustlitigation.com

| WHAT THIS NOTICE CONTAINS |
|---|

**Basic Information** ............................................................................................ **4**

   1.  Why did I get this notice? .................................................................. 4

   2.  What is this Lawsuit about? ................................................................ 4

   3.  Why is this Lawsuit a class action? ................................................... 4

   4.  Why are there Settlements? ................................................................ 5

**Who is in the Settlements** ............................................................................... **5**

   5.  I am an individual who purchased or paid for Lidoderm.  How do I know if I am a member of the End-Payor Class? .............................. 5

   6.  I am a third-party payor who purchased or paid for Lidoderm.  How do I know if I am a member of the End-Payor Class? ........................................... 6

   7.  I'm still not sure if I am included. ..................................................... 6

**The Settlement Benefits—What Do You Get?** ............................................ **7**

   8.  What do the Settlements provide? ..................................................... 7

   9.  How much will my payment be? ........................................................ 7

**How You Get a Payment—Submitting a Claim Form** ................................ **7**

  10.  How can I get a payment? .................................................................. 7

  11.  When would I get my payment? ......................................................... 7

**The Lawyers Representing You** ....................................................................... **7**

  12.  Do I have a lawyer in the case? ......................................................... 7

  13.  Should I get my own lawyer? ............................................................. 8

  14.  How will the lawyers be paid? ........................................................... 8

**Objecting to the Settlements** .......................................................................... **8**

  15.  Can I tell the Court if I don't like one or more of the Settlements? ........................... 8

**The Court's Fairness Hearing** ........................................................................ **9**

  16.  When and where will the Court decide whether to approve the Settlements? ........... 9

  17.  Do I need to come to the hearing? ..................................................... 9

  18.  May I speak at the hearing? ............................................................... 9

**If You Do Nothing** ............................................................................................ **9**

  19.  What happens if I do nothing at all? .................................................. 9

**Getting More Information** ............................................................................... **10**

  20.  How do I get more information? ........................................................ 10

If you have questions or want more information, you can:
Visit www.lidodermantitrustlitigation.com
Call (866) 700-0414, E-mail Info@lidodermantitrustlitigation.com

## BASIC INFORMATION

### 1.   Why did I get this notice?

You received this notice because you may have purchased or paid for branded or generic Lidoderm (lidocaine patch 5%) between August 23, 2012 and August 1, 2014.   If so, you have a right to know about three, separate proposed settlements of the Lawsuit (the "Settlements"), and about all of your options, before the Court decides whether to approve the Settlements.   If the Court approves the Settlements, after objections and any appeals are resolved, an administrator appointed by the Court will make payments to the members of the End-Payor Class in accordance with the Settlements.

This notice explains the Lawsuit, the End-Payor Class, the Settlements, what benefits are available under the Settlements, who is eligible for them, and how to get them.   **You should read this entire notice carefully**.

### 2.   What is this Lawsuit about?

This Lawsuit is about the prescription drug Lidoderm and in particular whether Defendants entered into an anticompetitive agreement to delay the availability of generic versions of Lidoderm.   The plaintiffs in the lawsuit—consumers and third-party payors of branded and generic Lidoderm (the "End-Payor Plaintiffs")—allege that, as part of settlement of a patent infringement lawsuit that Endo and Teikoku brought against Watson, Endo and Teikoku agreed to pay Watson to refrain from selling generic Lidoderm from August 2012 until September 2013 (the "Patent Settlement").   End-Payor Plaintiffs contend that the Patent Settlement was anticompetitive and violated state laws in the Class States.   End-Payor Plaintiffs allege that as a result of the Patent Settlement they paid more for branded and generic Lidoderm than they otherwise would have.   A copy of the operative End-Payor Plaintiffs' Corrected Third Consolidated Amended Complaint is available at www.lidodermantitrustlitigation.com.

Defendants deny End-Payor Plaintiffs' allegations, deny that any member of the End-Payor Class is entitled to damages or other relief, and deny that their conduct violated any applicable law or regulation. Defendants also deny that End-Payor Plaintiffs have sustained any injury or damages as a result of the alleged conduct.   The Settlements are not an admission of wrongdoing by any Defendant.

THE COURT HAS NOT DECIDED WHETHER ANY DEFENDANT VIOLATED ANY LAWS. THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF END-PAYOR PLAINTIFFS' CLAIMS AGAINST ANY DEFENDANT, OR THE DEFENSES ASSERTED BY ANY DEFENDANT.

The Lawsuit is known as *In re Lidoderm Antitrust Litigation*, No. 14-md-2521-WHO (N.D. Cal.).   Judge William H. Orrick of the United States District Court for the Northern District of California (the "Court") is overseeing the Lawsuit.

### 3.   Why is this Lawsuit a class action?

In a class action, the plaintiffs in the lawsuit—in this case, the End-Payor Plaintiffs—are called "Class Representatives" and sue on behalf of other people who have similar claims, which in this case is the End-Payor Class.   In this case, the Class Representatives are Allied Services Division Welfare Fund, City of Providence, International Union of Operating Engineers Local 49 Health and Welfare Fund, International Union of Operating Engineers Local 132 Health and Welfare Fund, Iron Workers District Council of New England Welfare Fund, NECA-IBEW Welfare Trust Fund, United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund, Welfare Plan of the International Union of Operating Engineers Locals 137, 137A, 137B, 137C, 137R, and Ottavio Gallotto.

If you have questions or want more information, you can:
Visit www.lidodermantitrustlitigation.com
Call (866) 700-0414, E-mail Info@lidodermantitrustlitigation.com

In a class action lawsuit, one court resolves the issues for everyone in the class. U.S. District Judge William H. Orrick III is in charge of this class action. You may have previously received a notice that the Court decided that this case can proceed as a Class Action.

**4.   Why are there Settlements?**

There was no trial. The Court did not decide in favor of End-Payor Plaintiffs or Defendants. Instead, End-Payor Plaintiffs and Defendants agreed to the Settlements. That way, both sides avoid the cost and risk of a trial. As a result of the Settlement, members of the End-Payor Class will be guaranteed compensation without undue delay. The Class Representatives and their attorneys think the Settlements are best for all members of the End-Payor Class.

## WHO IS IN THE SETTLEMENTS

To see if you are entitled to get money from the Settlements, you first have to determine if you are a member of the End-Payor Class.

**5.   I am an individual who purchased or paid for Lidoderm.  How do I know if I am a member of the End-Payor Class?**

As a **Consumer**, you may be a member of the End-Payor Class if:

- You are a person in the United States and its territories who, in Arizona, California, Florida, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, or Wisconsin, and for consumption by yourself or your family member, paid for some or all of the purchase price of:
    - Branded Lidoderm for the time period August 23, 2012 through September 14, 2013; and/or
    - AB-rated generic Lidoderm for the time period September 15, 2013 through August 1, 2014.

- As a Consumer, you are *NOT* a member of the End-Payor Class if:
    - You are an officer, director, manager, or employee of one of the Defendants;
    - After September 15, 2013, you paid for branded Lidoderm and did not purchase generic Lidoderm;
    - You purchased Lidoderm or generic Lidoderm only via a "single flat co-pay," *i.e.* a fixed dollar co-payment that does not vary on the basis of the purchased drug's status as branded or generic (*e.g.*, $20 for both branded and generic drugs);
    - You purchased generic Lidoderm after September 15, 2013 via a "flat generic co-pay," *i.e.* a fixed dollar copayment (*e.g.*, $10 for generic drugs) regardless of the co-payment applicable to branded drugs;
    - You purchased or received Lidoderm or its AB-rated generic equivalent through a Medicaid program only; or
    - You are one of the judges in this case or a member of their immediate families.

If you have questions or want more information, you can:
Visit www.lidodermantitrustlitigation.com
Call (866) 700-0414, E-mail Info@lidodermantitrustlitigation.com

**6.  I am a third-party payor who purchased or paid for Lidoderm.  How do I know if I am a member of the End-Payor Class?**

Third-party payors may also be in the End-Payor Class.  Third-party payors are entities—such as health and welfare plans or insurance companies—that provide payment or reimbursement from their own funds for some or all of the cost of prescription drug purchases made by their members, employees, insureds, participants, or beneficiaries.

As a **Third-Party Payor**, you may be a member of the End-Payor Class if:

- You are an entity in the United States and its territories who, in Arizona, California, Florida, Kansas, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, or Wisconsin, and for consumption by your insureds, plan participants or beneficiaries, paid and/or provided reimbursements for some or all of the purchase price of:
    - o Branded Lidoderm for the time period August 23, 2012 through September 14, 2013; and/or
    - o AB-rated generic Lidoderm for the time period September 15, 2013 through August 1, 2014.

- If not already included in the above categories, the End-Payor Class also includes third-party payors Cigna, MedImpact Healthcare Systems, Inc., Comprehensive Health Management, Inc. Part D, and Express Scripts Senior Care to the extent they provided, under their Medicare Part D plans, reimbursements for some or all of the price of branded Lidoderm purchased in Class States for the time period September 15, 2013 through August 1, 2014.

- As a Third-Party Payor, you are *NOT* a member of the End-Payor Class if:
    - o You are one of the Defendants or one of their officers, directors, management, employees, subsidiaries, or affiliates;
    - o After September 15, 2013, you paid and/or provided reimbursements for branded Lidoderm and did not purchase or reimburse for generic Lidoderm, except third-party payors Cigna, MedImpact Healthcare Systems, Inc., Comprehensive Health Management, Inc. Part D, or Express Scripts Senior Care for their Part D insurance;
    - o You are a government entity, other than a government-funded employee benefit plan;
    - o You are a fully insured health plan (*i.e.*, a plan that purchased insurance that covered 100 percent of the plan's reimbursement obligations to all of its members);
    - o You are a pharmacy benefit manager;
    - o You are one of the judges in this case or a member of their immediate families; or
    - o You previously excluded yourself from the End-Payor Class and have not requested to opt back in.

**7.  I'm still not sure if I am included.**

If you are still not sure whether you are included, you can ask for help.  You can visit www.lidodermantitrustlitigation.com or call (866) 700-0414 for more information.  Or you can fill out and return the claim form described in Question 10 to see if you qualify.

If you have questions or want more information, you can:
Visit www.lidodermantitrustlitigation.com
Call (866) 700-0414, E-mail Info@lidodermantitrustlitigation.com

## THE SETTLEMENT BENEFITS—WHAT DO YOU GET?

| 8.   What do the Settlements provide? |
| --- |

Defendants have agreed to pay a total of $104.75 into a Settlement Fund, which will be held in escrow pending the court's Final Approval and distribution, to settle the End-Payor Plaintiffs' claims.  Of that amount, Endo will pay $40 million, Teikoku will pay $23.75 million, and Watson will pay $41 million.  After payment of certain attorney fees and expenses, the amount remaining in the Settlement Fund will be divided among all End-Payor Class members who send in a valid claim form.

Endo will pay $20 million, Watson will pay $41 million and Teikoku will pay $23.75 million into the Settlement Fund shortly after the Court grants preliminary approval of the Settlements.  Endo will make additional payments into the Settlement Fund of $10 million by February 15, 2019, and $10 million by February 15, 2020.

| 9.   How much will my payment be? |
| --- |

Your share of the Settlement Fund will depend on the number and amount of valid claims that End-Payor Class members send in and the number of prescriptions or amount of brand or generic Lidoderm that you paid for.

## HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

| 10. How can I get a payment? |
| --- |

To qualify for a payment, you must send in a claim form.  A claim form is attached to this Notice.  You may also get a claim form at www.lidodermantitrustlitigation.com.  Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and submit the claim form on the website or mail it postmarked no later than DATE, 2018.

Electronically submitted claims forms allow for faster claims processing.  Please fill out the form on the website if you are able to.  **Third-Party Payors MUST submit their claims electronically**.

| 11. When would I get my payment? |
| --- |

The Court will hold a hearing on DATE, 2018, to decide whether to approve the Settlements.  If Judge Orrick approves the Settlements, there may be appeals.  The outcome of any appeal is always uncertain, and resolving them can take time, perhaps more than a year.

If the Court approves the Settlements and there are no appeals, or the appeals are rejected, it will take some time for the Claims Administrator to determine how much each End-Payor Class member that submits a valid claim is owed and to make the payments.  Please be patient.  Certain third-party payors may receive faster payment of their claims, but the amount they receive will be determined in the same manner as for other third party payors.

Eligible claimants may receive their payments in multiple parts as Endo makes additional payments into the Settlement Fund.

## THE LAWYERS REPRESENTING YOU

| 12. Do I have a lawyer in the case? |
| --- |

The Court has appointed the below law firms to serve as Co-Lead Counsel for the End-Payor Class and to represent the members of the End-Payor Class. Co-Lead Counsel are experienced in handling similar cases against other companies. The contact information for Co-Lead Counsel is:

7
If you have questions or want more information, you can:
Visit www.lidodermantitrustlitigation.com
Call (866) 700-0414, E-mail Info@lidodermantitrustlitigation.com

Dena C. Sharp
**GIRARD GIBBS LLP**
601 California Street, 14th Fl.
San Francisco, CA 94108
Telephone: (415) 981-4800

Renae D. Steiner
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605

Sharon K. Robertson
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Fl.
New York, New York 10005
Telephone: (212) 838-7797

## 13. Should I get my own lawyer?

You do not need to hire your own lawyer because Co-Lead Counsel are working on your behalf. However, if you wish to do so, you may retain your own lawyer at your own expense.

## 14. How will the lawyers be paid?

Co-Lead Counsel will ask the Court to approve a payment of up to one-third of the Settlement Fund to them and other attorneys for the End-Payor Class for attorneys' fees. The fees would pay the attorneys for investigating the facts, litigating the case, and negotiating the Settlements. Co-Lead Counsel will also request the reimbursement of expenses the attorneys have advanced on behalf of the End-Payor Class, including the costs of administering the settlement, in an amount not to exceed $5,000,000. Co-Lead Counsel also intend to seek service awards for each of the nine Class Representatives of no more than $10,000 each. The Court may award less than these amounts, but these are the maximum amounts Co-Lead Counsel will request.

Any Court-approved fees, expenses, and service awards will be deducted from the Settlement Fund. Members of the End-Payor Class will not otherwise have to pay any attorneys' fees or expenses in connection with the Lawsuit or the Settlements.

Co-Lead Counsel will file their motion for the payments of fees, expenses, and service awards by DATE, 2018. The motion will be available at www.lidodermantitrustlitigation.com or you can call the Notice Administrator toll-free at 1-866-700-0414 or by email at info@lidodermantitrustlitigation.com to obtain a copy. You can object to Co-Lead Counsel's motion by following the same steps explained in Question 15 with respect to objecting to one or more of the settlements.

## OBJECTING TO THE SETTLEMENTS

You can tell the Court that you don't agree with the Settlements or some part of them.

## 15. Can I tell the Court if I don't like one or more of the Settlements?

If you're a member of the End-Payor Class, you can ask the Court to deny approval of one or more of the Settlements by filing an objection. You can't ask the Court to order larger settlements; the Court can only approve or deny the Settlements. If the Court denies approval of a Settlement, no settlement payments will be sent out related to that Settlement and the Lawsuit will continue against any Defendant(s) that are a party to the Settlement for which approval is denied. If that is what you want to happen, then you must object. If the Court rejects your objections, you will still be bound by the Settlement.

You may object to one or more of the Settlements in writing. All written objections must (a) include your name, address, telephone number, and your signature, (b) clearly identify the Settlement(s) to which the objection pertains, (c) explain the reason(s) for your objection, (d) clearly identify the case name and number (*In re Lidoderm Antitrust Litig.*, Case Number 14-md-2521) and (e) be mailed to:

8
If you have questions or want more information, you can:
Visit www.lidodermantitrustlitigation.com
Call (866) 700-0414, E-mail Info@lidodermantitrustlitigation.com

Clerk of Court
United States District Court for the Northern District of California
450 Golden Gate Avenue, 17th floor
San Francisco, CA 94012

**Your objection <u>must</u> be postmarked no later than <mark>DATE</mark>, 2018.**

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlements.  You may attend and you may ask to speak, but you don't have to.

### 16. When and where will the Court decide whether to approve the Settlements?

The Court will hold a Fairness Hearing at <mark>TIME</mark> on <mark>DATE</mark>, in Courtroom 2, United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California, 94102.  At this hearing the Court will consider whether the Settlements are fair, reasonable, and adequate.  If there are objections, the Court will consider them.  Judge Orrick will listen to people who have asked to speak at the hearing.  The Court may also decide how much to pay to Co-Lead Counsel.  After the hearing, the Court will decide whether to approve the Settlements.  We do not know how long these decisions will take.  The date of the Fairness Hearing may change without further notice and, if you are interested in attending, you should check the settlement website or the court website to confirm that the date has not changed.

### 17. Do I need to come to the hearing?

No.  Co-Lead Counsel will answer questions Judge Orrick may have.  But you are welcome to come at your own expense.  If you send an objection, you don't need to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

### 18. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must send a letter to the Court at the address in Question 15 saying that it is your "Notice of Intention to Appear with respect to the End Payor Class Action Settlement in *In re: Lidoderm Antitrust Litigation*."  Be sure to include your name, address, telephone number, and your signature.  Your Notice of Intention to Appear must be postmarked no later than <mark>[21 days prior to fairness hearing]</mark>.

## IF YOU DO NOTHING

### 19. What happens if I do nothing at all?

Unless you submit a claim form, you'll get no money from the Settlements.

If you are a part of the End-Payor Class, you are not able to start a lawsuit, continue with a lawsuit, or be a part of any other lawsuit against Defendants about the claims released in these Settlements.  Class Members are releasing the Released Claims regardless of whether or not they submit a claim form.

If you have questions or want more information, you can:
Visit www.lidodermantitrustlitigation.com
Call (866) 700-0414, E-mail Info@lidodermantitrustlitigation.com

## GETTING MORE INFORMATION

| 20. How do I get more information? |
| --- |

This notice contains a summary of the proposed Settlements.

Additional information about the Lawsuit and Settlements is available at www.lidodermantitrustlitigation.com or by calling the Notice Administrator toll-free at 1-866-700-0414 or by email at info@lidodermantitrustlitigation.com.

For the precise terms and conditions of the Settlements, please see the settlement agreements available at www.lidodermantitrustlitigation.com.  You may also obtain a copy of the settlement agreements by contacting Co-Lead Counsel at the addresses in Question 12, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the Office of the Clerk of Court, United States District Court for the Northern District of California, 450 Golden Gate Avenue, 17th floor, San Francisco, CA 94012 between 9:00am and 4:00pm, Monday through Friday, excluding Court holidays.

If you have questions or want more information, you can:
Visit www.lidodermantitrustlitigation.com
Call (866) 700-0414, E-mail Info@lidodermantitrustlitigation.com

EXHIBIT G

[Submitting Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | Master File No. 14-md-02521-WHO |
| | MDL No. 2521 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | **STIPULATION AND ORDER VACATING TRIAL DATES AND SETTING SCHEDULE FOR FILING OF PRELIMINARY APPROVAL MOTIONS** |

The Court has set jury selection in this matter for February 23, 2018, with trial to begin on February 26, 2018.  The parties have previously notified the Court of proposed settlements reached separately with the Teikoku defendants and the Watson defendants.  In light of the settlements, the Court excused Teikoku and Watson from participation in the upcoming trial.  Following a settlement conference with Chief Magistrate Judge Spero on February 13, 2018, all Plaintiffs have now settled with Endo, the last remaining defendant.

In light of the Endo settlements, Plaintiffs and Endo jointly request that the Court vacate the pending trial dates.  Direct Purchaser Plaintiffs and End-Payor Plaintiffs anticipate filing motions for preliminary approval of their respective settlements with Teikoku, Watson, and Endo by March 9, 2018.

For purposes of the End-Payor Plaintiffs' settlements, certain entities listed in Exhibit A that previously opted out of the End-Payor Class ("Separately Represented End-Payors" or "SREPs") have agreed to withdraw their opt out requests and proceed as members of the End-Payor Class.  End-Payor Plaintiffs and the SREPs therefore request that, for the purposes of settlement, the Court amend its December 28, 2017, Order Regarding Opt-Outs (ECF 946) to exclude the SREPs from the list of entities that are not part of the End-Payor Class.  Counsel for the defendants do not oppose the request for the SREPs to be permitted to opt back into the End-Payor Class.

Therefore, IT IS HEREBY STIPULATED AND AGREED by the parties, through their respective counsel of record and subject to Court approval, as follows:

1.  All pending trial dates are vacated;

2.  The SREPs' opt-out requests are withdrawn and the SREPs shall proceed as members of the End-Payor Class; and

3.  Direct Purchaser Plaintiffs and End-Payor Plaintiffs shall file motions for preliminary approval of their settlements with Teikoku, Watson, and Endo by March 9, 2018.

1    DATED: February 21, 2018                Respectfully submitted,

2    *For the Direct Purchaser Plaintiffs:*    *For the End-Payor Plaintiffs:*

3    /s/ Peter R. Kohn                         /s/ Dena C. Sharp

4    Peter R. Kohn                             Daniel C. Girard (SBN 114826)
     Joseph T. Lukens                          Dena C. Sharp (SBN 245869)
5    **FARUQI & FARUQI LLP**                   **GIRARD GIBBS LLP**
     101 Greenwood Avenue, Suite 600           601 California Street, 14th Floor
6    Jenkintown, PA 19046                      San Francisco, CA 94108
     Telephone: (215) 277-5770                 Telephone: (415) 981-4800
7    Facsimile: (215) 277-5771                 Facsimile: (415) 981-4846
     Email: pkohn@faruqilaw.com                Email: dcg@girardgibbs.com
8                                              Email: chc@girardgibbs.com

9    /s/ David S. Nalven
                                               /s/ Sharon K. Robertson
10   Thomas M. Sobol                           Sharon K. Robertson
     David S. Nalven                           Donna M. Evans
11   Gregory T. Arnold                         Robert A. Braun
     **HAGENS BERMAN SOBOL SHAPIRO**           **COHEN MILSTEIN SELLERS & TOLL**
12   **LLP**                                   **PLLC**
     55 Cambridge Parkway, Suite 301           88 Pine Street, 14th Floor
13   Cambridge, MA 02142                       New York, New York 10005
14   Telephone: (617) 482-3700                 Telephone: (212) 838-7797
     Email: tom@hbsslaw.com                    Facsimile: (212) 838-7745
15   Email: davidn@hbsslaw.com                 Email: srobertson@cohenmilstein.com
     Email: grega@hbsslaw.com                  Email: devans@cohenmilstein.com
16                                             Email: rbraun@cohenmilstein.com

17   /s/ Noah Silverman
     Bruce E. Gerstein                         /s/ Renae D. Steiner
18   Noah Silverman                            Renae D. Steiner
19   Ephraim R. Gerstein                       **HEINS MILLS & OLSON, P.L.C.**
     **GARWIN GERSTEIN & FISHER LLP**          310 Clifton Avenue
20   88 Pine Street, 10th Floor                Minneapolis, MN 55403
     New York, NY 10005                        Telephone: (612) 338-4605
21   Telephone: (212) 398-0055                 Facsimile: (612) 338-4692
22   Facsimile: (212) 764-6620                 Email: rsteiner@heinsmills.com
     Email: bgerstein@garwingerstein.com
23   Email: nsilverman@garwingerstein.com      *Co-Lead Counsel for the End-Payor Class*
24   Email: egerstein@garwingerstein.com

25                                             Joseph R. Saveri
     *Co-Lead Counsel for the*                 Joshua P. Davis
26   *Direct Purchaser Class*                  Ryan J. McEwan
                                               **JOSEPH SAVERI LAW FIRM, INC.**
27                                             601 California Street, Suite 1000

28                               2

*For Plaintiff Government Employees Health Association:*

/s/ Todd A. Seaver
Joseph J. Tabacco, Jr.
Todd A. Seaver
Sarah Khorasanee McGrath
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382

**LOWEY DANNENBERG COHEN & HART, P.C.**
Barbara Hart
Peter D. St. Phillip
Noelle Ruggiero
One North Broadway
White Plains, New York 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035

**RAWLINGS & ASSOCIATES PLLC**
Mark D. Fisher
Robert Griffith
One Eden Way
LaGrange, KY 40031-8100
Telephone: (502) 587-1279

*Attorneys for Plaintiff Government Employees Health Association*

*For Defendants Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd.*

/s/ Joseph A. Meckes
Noriyuki Shimoda (State Bar No. 176973)
Joseph A. Meckes (State Bar No. 190279)
Rafael Langer-Osuna (State Bar No. 300948)
**SQUIRE PATTON BOGGS (US) LLP**
275 Battery Street, 26th Floor
San Francisco, California 94111

San Francisco, California 94111

Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: rmcewan@saverilawfirm.com

*Liaison Counsel for the End-Payor Class*

*For Defendant Endo Pharmaceuticals, Inc.*

/s/ Heidi K. Hubbard
Heidi K. Hubbard (admitted pro hac vice)
Stanley E. Fisher (admitted pro hac vice)
Benjamin M. Greenblum (admitted pro hac vice)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
hhubbard@wc.com
sfisher@wc.com
bgreenblum@wc.com

Daniel Asimow (State Bar No. 165661)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
Daniel.Asimow@apks.com

*Attorneys for Defendant Endo Pharmaceuticals Inc.*

*For Defendants Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., Actavis plc., Anda Inc., Anda Pharmaceuticals, Inc., and Valmed Pharmaceuticals, Inc.*

/s/ Karen Hoffman Lent
Karen Hoffman Lent (admitted pro hac vice)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM**
Four Times Square

3

| | |
|---|---|
| Telephone: (415) 954-0200 | New York, New York 10036 |
| Facsimile: (415) 393-9887 | Telephone: (212) 735-3000 |
| Noriyuki.Shimoda@squiresanders.com | Facsimile: (917) 777-3000 |
| Joseph.Meckes@squiresanders.com | Karen.Lent@skadden.com |
| Rafael.Langerosuna@squirepb.com | |

*/s/ David S. Elkins*
David S. Elkins (State Bar No. 148077)
**SQUIRE PATTON BOGGS (US) LLP**
1801 Page Mill Road, Suite 110
Palo Alto, CA 94304
Telephone: (650)-856-6500
Facsimile: (650) 843-8777
David.Elkins@squirepb.com

Steven C. Sunshine (admitted pro hac vice)
Sean M. Tepe (admitted pro hac vice)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM**
1440 New York Ave. NW
Washington DC, 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Steve.Sunshine@skadden.com
Sean.Tepe@skadden.com

*Attorneys for Defendants Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd.*

*Attorneys for Defendants Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., Actavis plc., Anda Inc., Anda Pharmaceuticals, Inc., and Valmed Pharmaceuticals, Inc.*

## ATTESTATION

I, Dena C. Sharp, am the ECF User whose identification and password are being used to file this Stipulation and [Proposed] Order Vacating Trial Dates and Setting Schedule for Filing Preliminary Approval Motions. I attest under penalty of perjury that concurrence in this filing has been obtained from all counsel.

DATED: February 21, 2018

*/s/ Dena C. Sharp*
Dena Sharp

## ORDER

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED: February 23, 2018

William H. Orrick
United States District Judge

4

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2018, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.

/s/ *Dena C. Sharp*
Dena C. Sharp

STIPULATION AND [PROPOSED] ORDER VACATING TRIAL DATES AND SETTING SCHEDULE FOR FILING OF
PRELIMINARY APPROVAL MOTIONS
CASE NO. 14-MD-02521-WHO

1

**Exhibit A**

1.  Aetna Health Insurance Company
    a.  Aetna US Healthcare Corp
    b.  Aetna Better Health Inc. (CT)
    c.  Aetna Better Health Inc. (PA)
    d.  Aetna Better Health Inc. (IL)
    e.  Aetna Pharmacy Management
    f.  Aetna Student Health
    g.  Aetna Life Insurance Co.
    h.  Aetna Health Insurance Co of NY
    i.  Aetna Health of CA
    j.  Aetna Health Inc. (A FL Corp)
    k.  Aetna Health Inc. (A ME Corp)
    l.  Aetna Health Inc. (A MI Corp)
    m.  Aetna Health and Life Insurance Co.
    n.  Aetna Dental of CA
    o.  Aetna Dental Inc. (A NJ Corp)
    p.  Aetna Dental Inc. (A TX Corp)
    q.  Aetna Health Inc. (A NJ Corp)
    r.  Aetna Health Inc. (A NY Corp)
    s.  Aetna Health Inc. (A CT Corp)
    t.  Aetna Health Inc. (A PA Corp)
    u.  Aetna Health Inc. (A GA Corp)
    v.  Aetna Health Inc. (A TX Corp)
2.  Anthem Blue Cross Life and Health Insurance Company
    a.  Amerigroup Florida Inc.
    b.  Amerigroup Kansas, Inc.
    c.  Amerigroup Louisiana, Inc.
    d.  Amerigroup Maryland, Inc.
    e.  Amerigroup Nevada, Inc.
    f.  Amerigroup New Jersey, Inc.
    g.  Amerigroup Community Care of New Mexico, Inc.
    h.  Amerigroup New York, LLC
    i.  Amerigroup Tennessee, Inc.
    j.  Amerigroup Texas, Inc.
    k.  Amerigroup Washington, Inc.
    l.  Anthem Health Plans, Inc.
    m.  Anthem Health Plans of Kentucky, Inc.
    n.  Anthem Health Plans of Maine, Inc.
    o.  Anthem Health Plans of New Hampshire, Inc.
    p.  Anthem Health Plans of Virginia, Inc.
    q.  Anthem Insurance Companies Inc.
    r.  AMGP Georgia Managed Care Company
    s.  Blue Cross and Blue Shield of Georgia Inc.
    t.  Blue Cross Blue Shield of Wisconsin

6

u.  Blue Cross of California Partnership Plan, Inc.
v.  Blue Cross of California
w.  CareMore Health Plan
x.  Community Insurance Company
y.  CompCare Health Services Insurance Corporation
z.  Empire HealthChoice HMO, Inc.
aa. Empire HealthChoice Assurance
bb. Healthkeepers, Inc.
cc. Healthy Alliance Life Insurance Company
dd. HMO Colorado Inc.
ee. HMO Missouri, Inc.
ff.  Rocky Mountain Hospital and Medical Service Inc.
gg. Matthew Thronton Health Plan Inc.
hh. WellPoint Partnership Plan LLC
ii.  UniCare Health Plan of Kansas Inc.
jj.  UniCare Health Plan of West Virginia Inc.
kk. UniCare Life & Health Insurance Company
ll.  CareMore Health Plan of Arizona Inc.

3. AvMed Inc.
4. Blue Cross and Blue Shield of Kansas City
5. BlueCross BlueShield of Tennessee, Inc.
6. CareFirst BlueChoice Inc.
   a.  CAREFIRST OF MARYLAND INC
   b.  CAREFIRST BLUECROSS BLUESHIELD
   c.  GROUP HOSPITAL & MEDICAL SVCS
7. Cigna Health and Life Insurance Company
   a.  Cigna Behavioral Care
   b.  Cigna Dental Health Plan AZ Inc.
   c.  Cigna Dental Health Plan of CA Inc.
   d.  Cigna Dental Health Plan of DE Inc.
   e.  Cigna Dental Health Plan of FL Inc.
   f.  Cigna Dental Health Plan of KS Inc.
   g.  Cigna Dental Health of KY Inc.
   h.  Cigna Dental Health of MD Inc.
   i.  Cigna Dental Health of NC Inc.
   j.  Cigna Dental Health of OH Inc.
   k.  Cigna Dental Health of PA Inc.
   l.  Cigna Dental Health of TX Inc.
   m.  Cigna Dental Health of NJ Inc.
   n.  Cigna Dental Health of CO Inc.
   o.  Cigna Life Ins Co of New York
   p.  Cigna Health & Life Ins. Co.
   q.  Cigna Worldwide Insurance Co.
   r.  Cigna Dental Health of MO Inc.
   s.  Cigna Dental Health of VA Inc.

7

t.   CIGNA HEALTH & LIFE INS CO
u.   CIGNA HEALTHCARE MID-ATL INC
v.   CIGNA HEALTHCARE OF AZ INC
w.   CIGNA HEALTHCARE OF CA INC
x.   CIGNA HEALTHCARE OF CO INC
y.   CIGNA HEALTHCARE OF CT INC
z.   CIGNA HEALTHCARE OF FL INC
aa.  CIGNA HEALTHCARE OF GA INC
bb.  CIGNA HEALTHCARE OF IL INC
cc.  CIGNA HEALTHCARE OF IN INC
dd.  CIGNA HEALTHCARE OF ME INC
ee.  CIGNA HEALTHCARE OF NC INC
ff.  CIGNA HEALTHCARE OF NH INC
gg.  CIGNA HEALTHCARE OF NJ INC
hh.  CIGNA HEALTHCARE OF NY INC
ii.  CIGNA HEALTHCARE OF SC INC
jj.  CIGNA HEALTHCARE OF ST LOU INC
kk.  CIGNA HEALTHCARE OF TN INC
ll.  CIGNA HEALTHCARE OF TX INC

8.  Government Employees Health Association Inc.
9.  Group Health Cooperative
    a.   GROUP HEALTH COOPERATIVE OF SOUTH CENTRAL WI
10. Harvard Pilgrim Health Care
    a.   HARVARD PILGRIM HLTH CARE OF NE
    b.   HPHC INSURANCE COMPANY INC
11. Health Net Inc.
    a.   Health Net of New Jersey Inc.
    b.   Health Net Life Insurance Co
    c.   Health Net of California, Inc.
    d.   Health Net of Connecticut Inc.
    e.   Health Net of New York, Inc.
    f.   Health Net of Arizona, Inc.
    g.   Health Net Health Plan of OR
12. Humana Inc.
    a.   Humana Insurance Company of Kentucky
    b.   Humana Health Plan of CA Inc.
13. KPS Health Plan
14. Medical Mutual of Ohio
15. MVP Health Care Inc.
    a.   MVP HEALTH INS CO OF NH INC
    b.   MVP HEALTH INSURANCE COMPANY
    c.   MVP HEALTH PLAN
    d.   MVP HEALTH PLAN OF NH INC
    e.   MVP HEALTH SERVICES CORP
    f.   MVP SELECT CARE INC

8

16. Premera Blue Cross
17. Priority Health
      a.   PRIORITY HEALTH CHOICE INC
      b.   PRIORITY HEALTH INSURANCE CO
18. Tufts Associated HMO Inc.
      a.   TUFTS INSURANCE CO
      b.   TUFTS MEDICAL CENTER

EXHIBIT H

[Submitting Counsel on Signature Page]

**<span style="color:red">To be Filed Only Under the Conditions in Paragraph 6(c) of the Settlement Agreement Between Endo Pharmaceuticals Inc. and the End-Payor Class in *In re Lidoderm Antitrust Litigation*</span>**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br>ALL END-PAYOR ACTIONS | |

**SECOND PAYMENT STIPULATED JUDGMENT**

1    IT IS HEREBY STIPULATED by and between the End-Payor Plaintiffs, on behalf of

2  themselves and the End-Payor Class, and defendant Endo Pharmaceuticals Inc. ("Endo"), pursuant

3  to the terms of their March 20, 2018 Settlement Agreement, that judgment shall be entered in favor

4  of the End-Payor Class and against Endo for the non-payment of the Endo Second Payment (of

5  $10,000,000) and the Endo Third Payment (of $10,000,000).  Accordingly, judgment is entered in

6  favor of the End-Payor Class and against Endo in the amount of $20,000,000.

7

8  IT IS SO STIPULATED.

9

10  Respectfully submitted,

11  *For the End-Payor Plaintiffs and*
    *End-Payor Class:*

12

13  _____
    Daniel C. Girard (SBN 114826)

14  Dena C. Sharp (SBN 245869)
    Scott Grzenczyk (SBN 279309)

15  **GIRARD GIBBS LLP**
    601 California Street, 14th Floor

16  San Francisco, CA 94108
    Telephone: (415) 981-4800

17  Facsimile: (415) 981-4846
    Email: dcg@girardgibbs.com

18  Email: chc@girardgibbs.com

19  Email: smg@girardgibbs.com

20

21  _____
    Renae D. Steiner

22  **HEINS MILLS & OLSON, P.L.C.**
    310 Clifton Avenue

23  Minneapolis, MN 55403
    Telephone: (612) 338-4605

24  Facsimile: (612) 338-4692
    Email: rsteiner@heinsmills.com

25

26

27

28

*For Defendant Endo Pharmaceuticals Inc.*

_____
George Gordon
**DECHERT LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: (215) 994-2382
Email: george.gordon@dechert.com

Heidi K. Hubbard (admitted pro hac vice)
Stanley E. Fisher (admitted pro hac vice)
Benjamin M. Greenblum (admitted pro hac vice)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Email: hhubbard@wc.com
Email: sfisher@wc.com
Email: bgreenblum@wc.com

SECOND PAYMENT STIPULATED JUDGMENT
MDL DOCKET NO. 14-md-02521-WHO

IT IS HEREBY STIPULATED by and between the End-Payor Plaintiffs, on behalf of themselves and the End-Payor Class, and defendant Endo Pharmaceuticals Inc. ("Endo"), pursuant to the terms of their March 20, 2018 Settlement Agreement, that judgment shall be entered in favor of the End-Payor Class and against Endo for the non-payment of the Endo Second Payment (of $10,000,000) and the Endo Third Payment (of $10,000,000).  Accordingly, judgment is entered in favor of the End-Payor Class and against Endo in the amount of $20,000,000.

IT IS SO STIPULATED.

Respectfully submitted,

*For the End-Payor Plaintiffs and
End-Payor Class:*

*For Defendant Endo Pharmaceuticals Inc.*

_____
Daniel C. Girard (SBN 114826)
Dena C. Sharp (SBN 245869)
Scott Grzenczyk (SBN 279309)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dcg@girardgibbs.com
Email: chc@girardgibbs.com
Email: smg@girardgibbs.com

_____
Renae D. Steiner
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: rsteiner@heinsmills.com

_____
George Gordon
**DECHERT LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: (215) 994-2382
Email: george.gordon@dechert.com

Heidi K. Hubbard (admitted pro hac vice)
Stanley E. Fisher (admitted pro hac vice)
Benjamin M. Greenblum (admitted pro hac vice)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Email: hhubbard@wc.com
Email: sfisher@wc.com
Email: bgreenblum@wc.com

1        IT IS HEREBY STIPULATED by and between the End-Payor Plaintiffs, on behalf of

2   themselves and the End-Payor Class, and defendant Endo Pharmaceuticals Inc. ("Endo"), pursuant

3   to the terms of their March 20, 2018 Settlement Agreement, that judgment shall be entered in favor

4   of the End-Payor Class and against Endo for the non-payment of the Endo Second Payment (of

5   $10,000,000) and the Endo Third Payment (of $10,000,000). Accordingly, judgment is entered in

6   favor of the End-Payor Class and against Endo in the amount of $20,000,000.

7

8   IT IS SO STIPULATED.

9

10  Respectfully submitted,

11  **For the End-Payor Plaintiffs and**
    **End-Payor Class:**

12

13  _____
    Daniel C. Girard (SBN 114826)

14  Dena C. Sharp (SBN 245869)
    Scott Grzenczyk (SBN 279309)

15  **GIRARD GIBBS LLP**
    601 California Street, 14th Floor

16  San Francisco, CA 94108
    Telephone: (415) 981-4800

17  Facsimile: (415) 981-4846

18  Email: dcg@girardgibbs.com
    Email: chc@girardgibbs.com

19  Email: smg@girardgibbs.com

20

21  _____
    Renae D. Steiner

22  **HEINS MILLS & OLSON, P.L.C.**
    310 Clifton Avenue

23  Minneapolis, MN 55403
    Telephone: (612) 338-4605

24  Facsimile: (612) 338-4692
    Email: rsteiner@heinsmills.com

25

26

27

28

**For Defendant Endo Pharmaceuticals Inc.**

George Gordon
**DECHERT LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: (215) 994-2382
Email: george.gordon@dechert.com

Heidi K. Hubbard (admitted pro hac vice)
Stanley E. Fisher (admitted pro hac vice)
Benjamin M. Greenblum (admitted pro hac vice)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Email: hhubbard@wc.com
Email: sfisher@wc.com
Email: bgreenblum@wc.com

1

1

Sharon K. Robertson

2 Donna M. Evans

3 **COHEN MILSTEIN SELLERS & TOLL PLLC**

4 88 Pine Street, 14th Floor
New York, New York 10005

5 Telephone: (212) 758-3042
Facsimile: (212) 838-7745

6 Email: srobertson@cohenmilstein.com

7 Email: devans@cohenmilstein.com

8 *Co-Lead Counsel for the
End-Payor Class*

9

Daniel Asimow (State Bar No. 165661)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
Email: Daniel.Asimow@apks.com

*Attorneys for Defendant Endo
Pharmaceuticals Inc.*

10

11

12                                   **ORDER**

13          **PURSUANT TO STIPULATION, IT IS SO ORDERED.**

14

15 DATED: _____

16                                        _____
                                          William H. Orrick
                                          United States District Judge

17

18

19

20

21

22

23

24

25

26

27                                       2

28                        SECOND PAYMENT STIPULATED JUDGMENT
                          MDL DOCKET NO. 14-md-02521-WHO

EXHIBIT I

[Submitting Counsel on Signature Page]

**To be Filed Only Under the Conditions in Paragraph 6(d) of the Settlement Agreement Between Endo Pharmaceuticals Inc. and the End-Payor Class in *In re Lidoderm Antitrust Litigation***

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br>ALL END-PAYOR ACTIONS | |

**THIRD PAYMENT STIPULATED JUDGMENT**

IT IS HEREBY STIPULATED by and between the End-Payor Plaintiffs, on behalf of themselves and the End-Payor Class, and defendant Endo Pharmaceuticals Inc. ("Endo"), pursuant to the terms of their March 20, 2018 Settlement Agreement, that judgment for the non-payment of the Endo Third Payment be entered in favor of the End Payor Class and against Endo in the amount of $10,000,000.

IT IS SO STIPULATED.


Respectfully submitted,

*For the End-Payor Plaintiffs and End-Payor Class:*

_____
Daniel C. Girard (SBN 114826)
Dena C. Sharp (SBN 245869)
Scott Grzenczyk (SBN 279309)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dcg@girardgibbs.com
Email: chc@girardgibbs.com
Email: smg@girardgibbs.com


_____
Renae D. Steiner
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: rsteiner@heinsmills.com

*For Defendant Endo Pharmaceuticals Inc.*

_____
George Gordon
**DECHERT LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: (215) 994-2382
Email: george.gordon@dechert.com

Heidi K. Hubbard (admitted pro hac vice)
Stanley E. Fisher (admitted pro hac vice)
Benjamin M. Greenblum (admitted pro hac vice)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Email: hhubbard@wc.com
Email: sfisher@wc.com
Email: bgreenblum@wc.com

Daniel Asimow (State Bar No. 165661)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400

1

THIRD PAYMENT STIPULATED JUDGMENT
MDL DOCKET NO. 14-md-02521-WHO

1    IT IS HEREBY STIPULATED by and between the End-Payor Plaintiffs, on behalf of

2  themselves and the End-Payor Class, and defendant Endo Pharmaceuticals Inc. ("Endo"), pursuant

3  to the terms of their March 20, 2018 Settlement Agreement, that judgment for the non-payment of

4  the Endo Third Payment be entered in favor of the End Payor Class and against Endo in the amount

5  of $10,000,000.

6  IT IS SO STIPULATED.

7

8  Respectfully submitted,

9  ***For the End-Payor Plaintiffs and***
   ***End-Payor Class:***

10

11  _____

12  Daniel C. Girard (SBN 114826)
    Dena C. Sharp (SBN 245869)
    Scott Grzenczyk (SBN 279309)

13  **GIRARD GIBBS LLP**

14  601 California Street, 14th Floor
    San Francisco, CA 94108

15  Telephone: (415) 981-4800
    Facsimile: (415) 981-4846

16  Email: dcg@girardgibbs.com
    Email: chc@girardgibbs.com

17  Email: smg@girardgibbs.com

18

19  _____

    Renae D. Steiner

20  **HEINS MILLS & OLSON, P.L.C.**

21  310 Clifton Avenue
    Minneapolis, MN 55403

22  Telephone: (612) 338-4605
    Facsimile: (612) 338-4692

23  Email: rsteiner@heinsmills.com

24

25

26

27

28

***For Defendant Endo Pharmaceuticals Inc.***

_____

George Gordon
**DECHERT LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: (215) 994-2382
Email: george.gordon@dechert.com

Heidi K. Hubbard (admitted pro hac vice)
Stanley E. Fisher (admitted pro hac vice)
Benjamin M. Greenblum (admitted pro hac vice)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Email: hhubbard@wc.com
Email: sfisher@wc.com
Email: bgreenblum@wc.com

Daniel Asimow (State Bar No. 165661)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400

1

1    IT IS HEREBY STIPULATED by and between the End-Payor Plaintiffs, on behalf of

2  themselves and the End-Payor Class, and defendant Endo Pharmaceuticals Inc. ("Endo"), pursuant

3  to the terms of their March 20, 2018 Settlement Agreement, that judgment for the non-payment of

4  the Endo Third Payment be entered in favor of the End Payor Class and against Endo in the amount

5  of $10,000,000.

6  IT IS SO STIPULATED.

7

8  Respectfully submitted,

9  **For the End-Payor Plaintiffs and**
   **End-Payor Class:**

10

11  _____

12  Daniel C. Girard (SBN 114826)
    Dena C. Sharp (SBN 245869)
    Scott Grzenczyk (SBN 279309)

13  **GIRARD GIBBS LLP**
    601 California Street, 14th Floor

14  San Francisco, CA 94108
    Telephone: (415) 981-4800

15  Facsimile: (415) 981-4846
    Email: dcg@girardgibbs.com

16  Email: chc@girardgibbs.com
    Email: smg@girardgibbs.com

17

18

19  _____

20  Renae D. Steiner
    **HEINS MILLS & OLSON, P.L.C.**

21  310 Clifton Avenue
    Minneapolis, MN 55403

22  Telephone: (612) 338-4605
    Facsimile: (612) 338-4692

23  Email: rsteiner@heinsmills.com

24

25

26

27

28

**For Defendant Endo Pharmaceuticals Inc.**

_____

George Gordon
**DECHERT LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: (215) 994-2382
Email: george.gordon@dechert.com

Heidi K. Hubbard (admitted pro hac vice)
Stanley E. Fisher (admitted pro hac vice)
Benjamin M. Greenblum (admitted pro hac
vice)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Email: hhubbard@wc.com
Email: sfisher@wc.com
Email: bgreenblum@wc.com

Daniel Asimow (State Bar No. 165661)
**ARNOLD & PORTER KAYE SCHOLER**
**LLP**
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400

1

THIRD PAYMENT STIPULATED JUDGMENT
MDL DOCKET NO. 14-md-02521-WHO

1   _Sharon K. Robertson_
    Sharon K. Robertson
2   Donna M. Evans
    **COHEN MILSTEIN SELLERS &**
3   **TOLL PLLC**
    88 Pine Street, 14th Floor
4   New York, New York 10005
    Telephone: (212) 758-3042
5   Facsimile: (212) 838-7745
    Email: srobertson@cohenmilstein.com
6   Email: devans@cohenmilstein.com

7
    _Co-Lead Counsel for the_
8   _End-Payor Class_

Email: Daniel.Asimow@apks.com

_Attorneys for Defendant Endo_
_Pharmaceuticals Inc._

9

10

11                              **ORDER**

12          **PURSUANT TO STIPULATION, IT IS SO ORDERED.**

13

14   DATED: _____          _____

15                                   William H. Orrick
                                     United States District Judge
16

17

18

19

20

21

22

23

24

25

26

27                                        2
                        THIRD PAYMENT STIPULATED JUDGMENT
28                       MDL DOCKET NO. 14-md-02521-WHO