[Submitting Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | Case No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br><br>DIRECT PURCHASER ACTIONS | **DIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT WITH ALL DEFENDANTS**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:　　　　September 12, 2018<br>Time:　　　　2:00 p.m.<br>Courtroom:　2, 17th Floor<br><br>The Honorable William H. Orrick |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 3

I.      SUMMARY OF THE SETTLEMENT ............................................................ 4

II.     NOTICE TO THE CLASS AND RESPONSE.................................................. 4

III.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ............................. 6

        A.      Standards for Approval of a Class Action Settlement ............................................. 6

                1.      The Strength of Plaintiffs' Case................................................. 7

                2.      The Settlement is Preferable to the Risk, Expense, and Complexity of
                        Continued Litigation ................................................................ 8

                3.      The Risk of Maintaining Class Action Status Through Trial ................... 9

                4.      The Amount Offered in Settlement........................................... 10

                5.      The Extent of Discovery Completed and the Stage of Proceedings ......... 10

                6.      The Experience and Views of Counsel...................................... 11

                7.      The Presence of a Government Participant................................. 11

                8.      Reaction of Class Members ..................................................... 12

                9.      The Settlement is the Result of Arm's-Length Negotiations................... 13

                10.     The Role of the Plaintiffs in the Settlement Process............................. 13

IV.     NOTICE SATISFIED THE PRELIMINARY ORDER AND APPLICABLE LAW ...... 13

V.      THE PLAN OF ALLOCATION IS REASONABLE, FAIR AND EQUITABLE ......... 15

        A.      Standard for Approval........................................................... 15

        B.      The Proposed Plan of Allocation ......................................... 16

CONCLUSION............................................................................................................. 17

DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF PROPOSED SETTLEMENT WITH ALL DEFENDANTS
*In re Lidoderm Antitrust Litig.*, No. 14-2521-WHO

1

2

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

3

*In re Aggrenox Antitrust Litig.*,
   No. 14-md-02516 (D. Conn.) ................................................................16

4

5

*In re Asacol Antitrust Litig.*,
   No. 15-cv-12730 (D. Mass.) ................................................................16

6

7

*In re Auto. Refinishing Paint Antitrust Litig.*,
   617 F. Supp. 2d 336 (E.D. Pa. 2007) ..................................................16

8

*Bayat v. Bank of the W.*,
   No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ................9, 10

9

10

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ....................................................7, 10

11

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...........................................................13

12

13

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ....................................................12

14

15

*In re Capacitors Antitrust Litig.*,
   No. 14-cv-03264-JD, 2017 WL 9613950 (N.D. Cal. June 27, 2017) ....................10

16

17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   MDL No. 1917, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) .................................12

18

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ..................................................8

19

20

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .........................................................15

21

*Dukes v. Wal-Mart Stores, Inc.*,
   603 F.3d 571 (9th Cir. 2010) ...........................................................9

22

23

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05-cv- 10240, 2007 WL 2230177 (S.D.N.Y July 27, 2007)............................15

24

25

*FTC v. Actavis, Inc.*,
   570 U.S. 136 (2013)......................................................................7

26

*Garner v. State Farm Mut. Auto Ins. Co.*,
   No. 08-cv-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010).................... *passim*

27

28

ii

*Glass v. UBS Fin. Servs., Inc.*,
  No. C-06 -4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)................................................6, 8

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................................13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...............................................................................6

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. Jan. 23, 2017) ......................................15

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007).....................................................................14

*King Drug of Florence, Inc. v. Cephalon, Inc.*,
  No. 06-1797 (E.D. Pa.) ........................................................................................16

*Knight v. Red Door Salons, Inc.*,
  No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .............................................10

*Larsen v. Trader Joe's Co.*,
  No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ..............................12

*In re Linerboard Antitrust Litig.*,
  No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ................................................8

*Marshall v. Holiday Magic, Inc.*,
  550 F.2d 1173 (9th Cir. 1977) ...............................................................................12

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................................12

*Meijer, Inc. v. Abbott Lab.*,
  No. 07-5985-CW (N.D. Cal. Aug. 11, 2011)................................................................16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ..............................................................................9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004).........................................................................9, 10

*In re NCAA Grant-In-Aid Cap Antitrust Litig.*,
  No. 14-md-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ...................................10

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ...........................................................................6, 8, 10

iii

DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF PROPOSED SETTLEMENT WITH ALL DEFENDANTS
*In re Lidoderm Antitrust Litig.*, No. 14-2521-WHO

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...................................................................11

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MD-1952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ..........................16

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ...........................................................................10

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ........................7, 13

*In re Quintas Sec. Litig.*,
   No. C-00-4263 VRW, 2006 WL 3507936 (N.D. Cal. Dec. 5, 2006) ....................15

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ......................................................................10, 11, 12

*Satchell v. Fed. Exp. Corp.*,
   No. C03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007).........................13

*In re Superior Beverage/Glass Container Consol. Pretrial*,
   133 F.R.D. 119 (N.D. Ill. 1990)...............................................................................9

*In re Tableware Antitrust Litig.*,
   No. C-04-3514, 2007 WL 4219394 (N.D. Cal. Nov. 28, 2007) ...........................11

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008).....................................................................15

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ....................................................................................6

*Wren v. RGIS Inventory Specialists*,
   No. C-06-05778, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011).................................8

**Statutes**

28 U.S.C. § 1715(b) ....................................................................................................11

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that at 2:00 pm on September 12, 2018, Counsel for the Direct Purchaser Class Plaintiffs (hereinafter "DPPs") will and hereby do move before the Honorable William H. Orrick, United States District Judge, at the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, Courtroom 2, 17th Floor, San Francisco, California, pursuant to Federal Rules of Civil Procedure 23(e) and (h) and 54(d) for an Order:

1.   Finally approving in all respects each of the three Settlements between Direct Purchaser Class and Teikoku, Watson, and Endo;

2.   Approving the Plan of Allocation of Settlement Proceeds as proposed by Class Counsel; and

3.   Dismissing all claims in the above-captioned action against the Defendants with prejudice, and without costs.

This Motion is based upon the accompanying Memorandum of Points and Authorities, the Declaration of Co-Lead Counsel Peter Kohn in Support of DPPs' Motion for Final Approval filed herewith, the Declaration of Tina Chiango, the proposed Order submitted herewith, all pleadings and/or other papers filed in this action, and upon such argument as may be presented to the Court at the hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Direct Purchaser Class Representatives Rochester Drug Co-Operative, Inc., American Sales Company, LLC, and Droguería Betances, Inc. ("Plaintiffs" or "DPPs") on behalf of themselves and the certified class (the "Class") and through their counsel ("Class Counsel") respectfully submit this memorandum in support of their motion for final approval of the

1

DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF PROPOSED SETTLEMENT WITH ALL DEFENDANTS
*In re Lidoderm Antitrust Litig.,* No. 14-2521-WHO

proposed Settlements with Defendants.[1]  The Settlements were filed with DPPs' Motion for

Preliminary Approval on March 20, 2018 [ECF Nos. 1004-2, 1004-3, 1004-4] and were

preliminarily approved by the Court in its Amended Order dated May 3, 2018 [ECF No. 1018]

("Preliminary Approval Order").[2]

 From November 2013 through late 2017, DPPs prosecuted this action through motion to

dismiss practice, discovery, class certification, and summary judgment and *Daubert* motion

practice.  In late 2017, as the parties were preparing for the February 2018 trial, they undertook

mediation at the direction of the Court under the supervision of Chief Magistrate Judge Joseph C.

Spero.  *See* ECF No. 881.  As a result of the multiple in-person meditation sessions and follow-

up communications conducted by Judge Spero, DPPs reached Settlements with each of the three

Defendants based on Judge Spero's "mediator's proposals."  The Settlement Agreements provide

for dismissal of the litigation with prejudice and releases by the Class in exchange for payment to

the Class totaling $166 million, to be paid by each Defendant as follows:

| Defendant | Settlement Amount |
|---|---|
| Endo | $60 million |
| Watson | $71 million |
| Teikoku | $35 million |

*See* ECF No. 1004.

 Plaintiffs respectfully submit that the Settlement is fair, reasonable, and in the best

interests of the Class.  *First*, the total Settlement amount of $166 million is 55% to 79% of the

Direct Purchaser Class's total aggregate damages, among the highest drug or device antitrust

class action recoveries as a percentage of actual damages on record.  *See* Declaration of Peter

Kohn in Support of Direct Purchaser Plaintiffs' Motion for Reimbursement of Costs and

Attorneys' Fees ¶ 1 [ECF No. 1024] (hereinafter "Kohn Decl.").  *Second*, the Settlement has

---

[1] The Defendants are Endo Pharmaceuticals, Inc. ("Endo"), Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc. and Actavis plc (together, "Watson"), and Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. ("Teikoku").

[2] Defined terms used in this memorandum of law have the same meaning as in the Settlement Agreements.  *See* ECF Nos. 1004-2, 1004-3, 1004-4.

1   received widespread support from the Class.  Representatives of the three court-appointed Class

2   representatives have submitted declarations in support of the Settlement.  *See* Declarations of

3   Juan C. Hernandez, Antoinette M. Coakley, and Joseph E. Brennan [ECF Nos. 1023-1, 1023-2,

4   and 1025].  Further, the three largest pharmaceutical wholesalers in the country — who stand to

5   receive the largest share of the recovery — have submitted letters to the Court supporting final

6   approval of the Settlement and the award of the requested attorneys' fees.  *See* Declaration of

7   Peter Kohn in Support of DPPs' Motion for Final Approval at Exs. A-C (hereinafter "Kohn FA

8   Decl.") (filed herewith).  *Third*, as the Court knows, there are no objections.  *See* Declaration of

9   Tina Chiango (hereinafter "Chiango Decl.").  For these reasons and others set forth below,

10  Plaintiffs respectfully submit that the Settlement merits final approval.

11      Plaintiffs also respectfully submit that the Amended Settlement Notice and Letter (the

12  "Notice") provided to Class members in this action (Chiango Decl. Exs. A & B) satisfy both the

13  Preliminary Approval Order and all applicable law, and that the previously-filed Plan of

14  Allocation of proceeds to Class members [ECF 1004-5] is reasonable, fair and equitable.

15                          **FACTUAL BACKGROUND**

16      Following an investigation that began in 2011, DPPs commenced this action in

17  November 2013 on behalf of a class of purchasers of Lidoderm directly from Endo or generic

18  lidocaine 5% patch (generic Lidoderm) directly from Watson.  The DPPs' complaint alleged that

19  Defendants unlawfully agreed to (a) delay the launch of generic Lidoderm until September 15,

20  2013 and (b) delay the launch of authorized generic Lidoderm for an additional 7.5 months.

21  DPPs alleged that in exchange for Watson's agreement to delay the launch of its generic

22  Lidoderm, Endo/Teikoku paid Watson with $96 million in free brand Lidoderm, and also

23  promised not to launch a competing authorized generic Lidoderm for 7.5 additional months after

24  Watson's delayed generic launch.  DPPs alleged that, but for these reverse payments, generic

25  Lidoderm would have been launched as early as December 17, 2012 (rather than September 15,

26  2013), and authorized generic Lidoderm would have been launched simultaneously, substantially

27

28
                                    3

earlier than its actual launch date of May 2, 2014.  DPPs alleged that the Class suffered

aggregate overcharge damages of $211-300 million.  Defendants have continually maintained

that they engaged in no unlawful conduct and that their conduct did not harm the Class.

## I.   SUMMARY OF THE SETTLEMENT

The Settlement provides for payments totaling $166 million into a settlement fund for the

Class (the "Settlement Fund") based on the following separate settlements:

> (a)   a $60 million settlement with Endo dated March 19, 2018 consisting of a first payment of $40 million and a second payment of $20 million, to be paid in the first quarter of 2019 [ECF 1004-4];

> (b)   a $71 million settlement with Watson dated March 19, 2018 [ECF 1004-3]; and

> (c)   a $35 million settlement with Teikoku dated December 31, 2017 [ECF 1004-2].

All Settlement amounts except for Endo's payment due in the first quarter of 2019 have already

been deposited by Defendants into escrow accounts held by The Huntington National Bank, the

parties' escrow agent.  Additionally, each Settlement Agreement allowed Class Counsel to

request an attorneys' fee of up to one third of the Settlement Fund and reimbursement of

reasonable expenses incurred in the prosecution of the lawsuit.  Despite the one-third provision,

Class Counsel has requested a fee of 27.5% of the Settlement amount net of expenses.  *See*

DPPs' Motion for Attorney Fees and Reimbursement of Costs, and its accompanying Kohn

Declaration, both of which were timely filed on June 11, 2019 [ECF Nos. 1023-25].  The

Settlement Agreements also provide for incentive awards for each of the three Class

representatives in the amount of $100,000 each.  In exchange, DPPs and all Class Members will

release their claims against each Defendant relating to the conduct alleged in DPPs' complaint

when the Settlements become final.

## II.   NOTICE TO THE CLASS AND RESPONSE

Complying with the Preliminary Approval Order [ECF No. 1018], Plaintiffs, through

their claims administrator RG/2 Claims Administration LLC ("RG/2"), took the usual steps in

direct purchaser pharmaceutical antitrust class settlements of causing the Court-approved form of

4

DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF PROPOSED SETTLEMENT WITH ALL DEFENDANTS
*In re Lidoderm Antitrust Litig.*, No. 14-2521-WHO

1    Notice [ECF 1018 ¶ 6] to be mailed by first class mail, postage prepaid, to all Class members.

2    *See* Chiango Decl. ¶ 5.  The Notice was also posted on a website created by RG/2.  *Id*. at ¶ 7.

3    The Notice described the terms of each Settlement Agreement, explained the claims and defenses

4    in the lawsuit, summarized the Plan of Allocation of the Settlement proceeds to Class members,

5    provided instructions for Class members to object to any part of the Settlement, provided

6    detailed information about the final Settlement approval hearing, and provided contact

7    information for the Claims Administrator and Class Counsel.  *See id*. at Ex. A.

8        At the preliminary approval hearing on April 24, 2018, to further aid each Class

9    member's evaluation of the proposed settlement, the Court directed Class Counsel to take the

10   additional, novel step of providing each class member with an estimate of its projected recovery

11   from the Settlement Fund, and the basis for the estimate.  *See* Direct Purchaser Plaintiffs'

12   Unopposed Notice of Filing of Amended Settlement Notice Documents, dated May 3, 2018 at 3

13   [ECF No. 1017].  Accordingly, in addition to the Notice, Class Counsel caused to be sent to each

14   Class member a two-page letter summarizing the Settlement terms and each Class member's

15   projected recovery, stating the Claim Administrator's preliminary determination of the Class

16   member's (1) purchases of brand and generic Lidoderm patches in units; (2) its share of the

17   Settlement Fund as a percentage of the total Class recovery based on the Class member's unit

18   purchase volumes and the proposed plan of allocation; and (3) its projected recovery amount.

19   The letter also described how each of these elements was calculated.  Chiango Decl. Ex. B.  The

20   letter further disclosed Class Counsel's estimated litigation expenses, the claim administration

21   expenses, the requested service awards, and maximum amount of attorneys' fees (up to 33 1/3%

22   of the Settlement Fund net of expenses) that DPP counsel would seek from the Settlement Fund.

23   *Id*.

24       The time for filing objections to the Settlement has passed and no Class member has

25   objected, *see* Chiango Decl. ¶ 9, and the Class representatives, as well as the three Class

26

27

28

DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF PROPOSED SETTLEMENT WITH ALL DEFENDANTS
*In re Lidoderm Antitrust Litig.*, No. 14-2521-WHO

1    members with the largest purchase volume, have all affirmatively supported the Settlement.

2    Kohn FA Decl. Exs. A-C.

3    **III.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE**

4    In this Circuit "voluntary conciliation and settlement are the preferred means of dispute

5    resolution." *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th

6    Cir. 1982) (citations omitted).  The "overriding public interest in settling and quieting litigation"

7    is "particularly true in class action suits[.]" *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950

8    (9th Cir. 1976).  "[T]he decision to approve or reject a settlement is committed to the sound

9    discretion of the trial judge because he is 'exposed to the litigants, and their strategies, positions

10   and proof.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (quoting *Officers*

11   *for Justice,* 688 F.2d at 626).  In exercising such discretion, courts should give "proper deference

12   to the private consensual decision of the parties" because:

13          [T]he court's intrusion upon what is otherwise a private consensual agreement
             negotiated between the parties to a lawsuit must be limited to the extent necessary
14          to reach a reasoned judgment that the agreement is not the product of fraud or
             overreaching by, or collusion between, the negotiating parties, and that the
15          settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

16   *Id.* at 1027 (citation omitted).  The Court may approve a class action settlement "'only after a

17   hearing and on finding that the settlement . . . is fair, reasonable, and adequate.'" *Glass v. UBS*

18   *Fin. Servs., Inc.,* No. C-06 -4068, 2007 WL 221862, at *3 (N.D. Cal. Jan. 26, 2007) (citing Fed.

19   R. Civ. P. 23(e)(1)(C)).

20          "Where a settlement is the product of arms-length negotiations conducted by capable and

21   experienced counsel, the court begins its analysis with a presumption that the settlement is fair

22   and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, No. 08-cv-1365, 2010 WL 1687832,

23   at *13 (N.D. Cal. Apr. 22, 2010) (citing 4 *Newberg on Class Actions*, § 11.41).

24          **A.    Standards for Approval of a Class Action Settlement**

25          In assessing whether a settlement is fair, adequate and reasonable, courts in the Ninth

26   Circuit consider:

27          [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely

28
                                                      6
      ---

1
2
3

> duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of class members to the proposed settlement.

4   *Garner*, 2010 WL 1687832, at *8-9 (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963

5   (9th Cir. 2009), and *Hanlon*, 150 F.3d at 1026).  Some courts have added "(9) the procedure by

6   which the settlement was arrived at (citing *Manual for Complex Litigation (Fourth)*, § 21.6

7   (2004)), and (10) the role taken by the lead plaintiff in that process[.]"  *In re Portal Software,*

8   *Inc. Sec. Litig.*, No. C-03-5138, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007).

9   Courts recognize that "'[n]ot all of these factors will apply to every class action

10  settlement. Under certain circumstances, one factor alone may prove determinative.'"  *Garner*,

11  2010 WL 1687832, at *9 (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D.

12  523, 525-26 (C.D. Cal. 2004)).  Here, evaluating the Settlement against these factors

13  demonstrates that the Settlement merits final approval by the Court.

14  ### 1.   The Strength of Plaintiffs' Case

15  To prevail, Plaintiffs must demonstrate that Endo and Teikoku made large reverse

16  payments (free goods and a no-AG promise) in exchange for Watson's agreement to delay

17  generic competition in violation of *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013).  In assessing the

18  strength of a plaintiff's case, "there is no 'particular formula by which th[e] outcome must be

19  tested.'"  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015) (quoting

20  *Rodriguez*, 563 F.3d at 965).  "Rather, the Court's assessment of the likelihood of success is

21  'nothing more than an amalgam of delicate balancing, gross approximations and rough justice."

22  *Id*. (quoting *Rodriguez*, 563 F.3d at 965).

23  Plaintiffs believe that they assembled the evidence necessary to prove their claims at trial.

24  Nonetheless, Plaintiffs recognize that Defendants were prepared to mount a vigorous defense.

25  Throughout the litigation, the Defendants' skilled counsel challenged Plaintiffs with efforts to

26  dismiss the case, disqualify counsel, defeat class certification, and shield damaging evidence

27
28

7

under claims of privilege.  When weighing the substantial relief the Settlement provides to the

Class against the appreciable risks presented, the Settlement is fair, adequate, and reasonable.

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers.

*See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Moreover, courts in this district "may presume that through negotiation, the Parties,

counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's

likelihood of recovery."  *Garner*, 2010 WL 1687832, at *9.  Here, at the direction of Judge

Spero, the parties prepared extensive settlement conference memoranda, attended multiple

settlement conferences, and participated in follow-up communications.  When the parties

reached an impasse, Judge Spero made a "mediator's recommendation" which Class Counsel

and each Defendant ultimately accepted.  Kohn Decl. ¶¶ 97-101 [ECF 1024].  Judge Spero's

close supervision of the parties' mediation and recommendation of settlement terms further

shows that the Settlement is fair, adequate and reasonable.  *See Wren v. RGIS Inventory

Specialists,* No. C-06-05778, 2011 WL 1230826, at *14 (N.D. Cal. Apr. 1, 2011) (granting final

approval where "parties reached the agreement after intensive negotiations led by an experienced

mediator.").

### 2.   The Settlement is Preferable to the Risk, Expense, and Complexity of Continued Litigation

Fairness analysis also looks to the case's complexity, expense, and likely duration.  *See

Officers for Justice,* 688 F.2d at 625; *Glass*, 2007 WL 221862, at *4 (quoting *In re Mego Fin.

Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000)).  Antitrust cases typically present significant

risks.  *See, e.g.*, *In re Linerboard Antitrust Litig.,* No. MDL 1261, 2004 WL 1221350, at *10

(E.D. Pa. June 2, 2004) ("'[a]n antitrust class action is arguably the most complex action to

prosecute . . . . [t]he legal and factual issues involved are always numerous and uncertain in

outcome.'") (quoting *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337

(N.D. Ga. 2000)).  "The history of antitrust litigation is replete with cases in which antitrust

plaintiffs succeeded at trial on liability, but recovered no damages, or negligible damages, at trial

DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF PROPOSED SETTLEMENT WITH ALL DEFENDANTS
*In re Lidoderm Antitrust Litig.,* No. 14-2521-WHO

1  or on appeal." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y.

2  1998).  "The 'best' case can be lost and the 'worst' case can be won, and juries may find liability

3  but no damages.  None of these risks should be underestimated."  *In re Superior Beverage/Glass*

4  *Container Consol. Pretrial*, 133 F.R.D. 119, 127 (N.D. Ill. 1990).

5      DPPs recognize that, despite their confidence, a case of this complexity necessarily

6  presents foreseen and unforeseen challenges.  For example, Defendants developed substantial

7  causation arguments, that Watson did not have the manufacturing capacity to enter the market

8  earlier with a less-expensive version of generic Lidoderm, and would not have done so at risk;

9  and that in the absence of the reverse payment agreement, Endo's long-pending FDA petition

10 would have also prevented an earlier Watson generic launch.  And absent the Settlement, DPPs

11 would have had to obtain a jury verdict (and defend that verdict and this Court's many rulings on

12 an inevitable appeal).  *See Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at

13 *4 (N.D. Cal. Apr. 15, 2015) ("[R]egardless of who prevails on the merits of [a contested issue],

14 the losing party would likely appeal, thus significantly prolonging this litigation and increasing

15 its expense and complexity.").  Accordingly, while Class Counsel was well-prepared for trial,

16 comparing "immediate recovery by way of the compromise to the mere possibility of relief in the

17 future, after protracted and expensive litigation," certainly supports final approval of the

18 Settlements.  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526.

19              **3.      The Risk of Maintaining Class Action Status Through Trial**

20      The Court certified the class in this case.  ECF No. 670.  However, "[e]ven after a

21 certification order is entered, the judge remains free to modify it in light of subsequent

22 developments."  *See Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 579 (9th Cir. 2010) (citing

23 *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982), *rev'd on other grounds*, 564 U.S. 338

24 (2011)).  Although Class Counsel were confident that the Court's certification order would stand,

25 as with any contested motion, it is possible that the Class could be decertified on appeal

26 following final judgment.  Settlement assures a classwide recovery.

27

28

### 4. The Amount Offered in Settlement

The amount of the proposed settlement, "is generally considered the most important[.]" *Bayat*, 2015 WL 1744342, at *4. But there is no "formula by which [the settlement] must be tested." *Rodriguez*, 563 F.3d at 965. *See also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624. Thus, "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 527 (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)). *See also Bellinghausen*, 306 F.R.D. at 256 (approving settlement representing between 9% and 27% of potential recovery).

Here, the Settlement amount of $166 million is between 55% and 79% of DPPs' total aggregate damages.[3] This is the third highest drug or device antitrust class action recovery on record in terms of percentage of total damages. Kohn Decl. ¶ 1 [ECF No. 1024]. "Far lesser results (with 20% of recovery of damages or less) have justified [approval]." *In re NCAA Grant-In-Aid Cap Antitrust Litig.*, No. 14-md-2541-CW, 2017 WL 6040065, at *3 (N.D. Cal. Dec. 6, 2017). Moreover, once the proposed Settlement is finally approved, Class members can obtain their *pro rata* shares quickly and with little administrative burden. *See In re Capacitors Antitrust Litig.*, No. 14-cv-03264-JD, 2017 WL 9613950, at *4 (N.D. Cal. June 27, 2017) ("There is a real value to Class members of receiving a cash distribution from the Settlements in the near term."). Thus, the Settlement, for Class members, represents a substantial, swift, and certain recovery.

### 5. The Extent of Discovery Completed and the Stage of Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *See Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *4

---

[3] If the jury found that Watson would have entered the market in mid-December 2012, DPPs' damages were $300 million. If the jury found that Watson would have entered the market in late March 2013, DPPs' damages were $211 million. Kohn Decl. ¶¶ 1 & n.1, 102 [ECF No. 1024].

10

DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF PROPOSED SETTLEMENT WITH ALL DEFENDANTS
*In re Lidoderm Antitrust Litig.*, No. 14-2521-WHO

(N.D. Cal. Feb. 2, 2009).  By the time the parties entered into mediation, they had completed

substantial discovery including the production and review of millions of pages of documents and

taking dozens of fact and expert depositions, briefed and argued many motions and prepared for

trial.  Kohn Decl. ¶¶ 1, 71-75 [ECF No. 1024].  "As a result, the true value of the class's claims

[in this case] was well-known to the parties and the mediator."  *See In re Tableware Antitrust*

*Litig.*, No. C-04-3514, 2007 WL 4219394, at *3 (N.D. Cal. Nov. 28, 2007) (citing *In re Warner*

*Comm. Sec. Litig.,* 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986));

*see also Rodriguez*, 563 F.3d at 967 ("Extensive discovery had been conducted," giving plaintiff

"a good grasp on the merits of [her] case before settlement talks began.").  Counsel's taking this

case all the way to the eve of trial supports final approval.

### 6.    The Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of

reasonableness."  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal.

2007) (internal quotation marks and citation omitted).  After reviewing their credentials [ECF

No. 54], the Court previously appointed Faruqi & Faruqi LLP, Garwin Gerstein & Fisher, LLP,

and Hagens Berman Sobol Shapiro LLP as Interim Co-Lead Counsel for the Direct Purchaser

Class.  ECF No. 60; ECF No. 670 at 15 n.14, 26.[4]  These firms have extensive experience in

cases alleging suppression of generic drug competition, and, as the Court saw first-hand,

effectively prosecuted this case.  Class Counsel agreed to the Settlements only after engaging in

extensive discovery, use of experts, and extensive preparations for trial.  This factor weighs in

favor of final approval.

### 7.    The Presence of a Government Participant

The Class Action Fairness Act requires notice of a settlement be given to the Department

of Justice and affected states with time to comment prior to final approval of the settlement.  *See*

28 U.S.C. § 1715(b).  CAFA presumes that once put on notice, state or federal officials will raise

---

[4] *See also* www.faruqilaw.com; http://garwingerstein.com; www.hbsslaw.com.

DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF PROPOSED SETTLEMENT WITH ALL DEFENDANTS
*In re Lidoderm Antitrust Litig.,* No. 14-2521-WHO

1    any concerns that they may have during the normal course of the class action settlement

2    procedures.  *Garner*, 2010 WL 1687832, at *14.  Here, the Department of Justice and all

3    attorneys general of affected states received CAFA notices of the Settlements from each of the

4    Defendants. The time for response has passed and no government participant has raised any

5    concern.  This fact supports final approval of the settlement. *See In re Cathode Ray Tube (CRT)*

6    *Antitrust Litig.* ("*CRT I*"), MDL No. 1917, 2016 WL 721680, at *19 (N.D. Cal. Jan. 28, 2016).

7         In addition, as the Court knows, the Federal Trade Commission and the State of

8    California, who filed their own cases following the commencement of the DPP action, have

9    monitored these proceedings and have raised no concerns about the Settlements.

10            **8.     Reaction of Class Members**

11         Courts also consider the reaction of the class.  *See Larsen v. Trader Joe's Co.,* No. 11-cv-

12    05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014).  The response from the Class

13    to the Settlement has been uniformly positive.  As the Court knows (since in the Notice of

14    Settlement it is the listed addressee for any objections), not one Class member has objected to the

15    Settlement, or to DPPs' application for reimbursement of costs, attorneys' fees, or incentive

16    awards.  *See also* Chiango Decl. ¶ 9.  This is an exceptionally strong indication of the fairness of

17    the Settlement.  *See, e.g., In re Mego*, 213 F.3d at 459 (approving settlement with one objection

18    from a class of 5,400 members); *Rodriguez,* 563 F.3d at 967 ("The court had discretion to find a

19    favorable reaction to the settlement among class members given that, of 376,301 putative class

20    members to whom notice of the settlement had been sent, 52,000 submitted claims forms and

21    only fifty-four submitted objections."); *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178

22    (9th Cir. 1977) (approving settlement where one percent of the class objected); *Boyd v. Bechtel*

23    *Corp*., 485 F. Supp. 610, 624 (N.D. Cal. 1979) (objections from only 16% of class was held

24    "persuasive" of settlement's adequacy).

25         Moreover, the three largest pharmaceutical wholesalers in the country have submitted

26    letters to the Court supporting final approval of the Settlement and the award of attorneys' fees.

27

28

DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF PROPOSED SETTLEMENT WITH ALL DEFENDANTS
*In re Lidoderm Antitrust Litig.,* No. 14-2521-WHO

*See* Kohn FA Decl. at Exs. A-C.  This further confirms that the Settlement is in the best interests of the Class.

### 9.   The Settlement is the Result of Arm's-Length Negotiations

Courts should also review class action settlements for conflicts of interest.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  Where the "settlement is the result of arm's length negotiations conducted by experienced counsel after adequate discovery and the settlement provokes only minimal objections, then it is entitled to '[a] strong initial presumption of fairness.'"  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004); *In re Portal Software*, 2007 WL 4171201, at *4 ("The arms-length, contentious negotiations that culminated in the settlement agreement indicate that the settlement was reached in a procedurally sound manner").  Moreover, the participation of Judge Spero, and his recommendation of the settlement amounts, further supports that the parties reached the settlements in a procedurally sound manner.  *See Satchell v. Fed. Exp. Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

### 10.   The Role of the Plaintiffs in the Settlement Process

Plaintiffs are pharmaceutical wholesalers and retailers who have participated extensively in the prosecution of this action. *See* Declarations of Juan C. Hernandez, Antoinette M. Coakley, and Joseph E. Brennan [ECF Nos. 1023-1, 1023-2, and 1025].  All Class representatives were involved in the mediation process and were planning to attend the trial and/or offer testimony.  *Id*.  The three largest absent class members were also kept abreast of the litigation and support this settlement.  *See* Kohn FA Decl., Exs. A-C.  Thus, this factor also weighs in favor of final approval.

## IV.   NOTICE SATISFIED THE PRELIMINARY ORDER AND APPLICABLE LAW

Rule 23(c)(2)(B) requires that notice the Settlement must be served on all Class members who can be identified through reasonable efforts.  The Ninth Circuit has summarized this Court's

procedural duty regarding notice to Class members as follows:

> The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice; the notice must indicate that a dissident can object to the settlement and to the definition of the class; each objection must be made a part of the record; those members raising substantial objections must be afforded an opportunity to be heard with the assistance of privately retained counsel if so desired, and a reasoned response by the court on the record; and objections without substance and which are frivolous require only a statement on the record of the reasons for so considering the objection.

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007) (quoting *Officers for Justice*, 688 F.2d at 624).

The Notice, previously approved by the Court [ECF No. 1018 ¶¶ 6-7] is similar to that approved in *Immune Response*. In that case, the notice provided: "a description of the nature of the action and the issues involved in the litigation"; contained "a concise and clear statement of the definition of the Class that has been certified"; provided a "procedure by which an individual may request an appearance at the Settlement Hearing"; discussed "the binding effect of the class judgment on Class members"; and "called for all objections to be postmarked and mailed no later than [a certain date]." *In re Immune Response,* 497 F. Supp. 2d at 1170. The Notice here similarly describes the nature of the litigation and the issues involved, *see* Chiango Decl. at Ex. A, ¶ 2; provides a clear statement defining the Class, *id*. at ¶ 5; sets forth a procedure for requesting appearance before the Court, *id*. at ¶¶ 14, 17; provides an explanation of the binding effect of the Settlement on Class members, *id*. at ¶¶ 6, 10; and provides a date certain for all objections, *id*. at ¶ 14. This is sufficient to satisfy Rule 23. *In re Immune Response*, 497 F. Supp. 2d at 1171 (approving notice as "adequate and sufficient to inform class members of their rights"); *see also Garner*, 2010 WL 1687832, at *16 (approving notice that was mailed pursuant to a preliminary approval order where the notice advised of the class definition, the history of the litigation, the binding effect of the judgment, the right to object and the date and time of the fairness hearing).

1    DPPs have retained RG/2 to serve as claims administrator for the Class and oversee the

2  Settlement Notice and claims administration process.  RG/2 reports that all Class members were

3  mailed the Settlement Notice, and for the three (3) that were returned, delivery by the best

4  practicable alternative means was attempted and ultimately achieved.  Chiango Decl. ¶¶ 5-6.

5  Accordingly, the form and manner of Notice provided to Class members satisfies both the

6  Preliminary Approval Order and Rule 23.

7  **V.   THE PLAN OF ALLOCATION IS REASONABLE, FAIR AND EQUITABLE**

8      **A.   Standard for Approval**

9        Approval of a plan to allocate settlement proceeds is governed by the same standard for

10  approving the Settlement as a whole: the plan must be fair, reasonable and adequate.  *Class*

11  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992).  "A plan of allocation that

12  reimburses class members based on the extent of their injuries is generally reasonable."  *In re*

13  *Quintas Sec. Litig.*, No. C-00-4263 VRW, 2006 WL 3507936, at *4 (N.D. Cal. Dec. 5, 2006)

14  (quoting *In re Oracle Sec. Litig.*, No. 90-cv-0931, 1994 WL 502054, at *1 (N.D. Cal. June 18,

15  1994)).  Courts have also held that "'[w]hen formulated by competent and experienced counsel,'

16  a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'"  *In*

17  *re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) (quoting *Global Crossing*,

18  225 F.R.D. at 462).  *See also In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL

19  1594403, at *11 (C.D. Cal. Jan. 23, 2017).[5]  "A plan of allocation need not be perfect."  *In re*

20  *EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv- 10240, 2007 WL 2230177, at *11

21  (S.D.N.Y July 27, 2007) (citing *In re Oracle*, 1994 WL 502054, at *1).

22

23  [5] Courts also consider the class' reaction to a plan of allocation.  *In re Heritage Bond Litig.*, 2005
WL 1594403, at *11 ("[t]he fact that there has been no objection to this plan of allocation favors

24  approval of the Settlement."); *In re EVCI*, 2007 WL 2230177, at *11 (approving plan where no
class member objected); *In re Telik*, 576 F. Supp. 2d at 581 (approving, over one objection, plan

25  that drew appropriate distinctions).  As the Court best knows, there have been no objections to
the Plan of Allocation.  *See also* Chiango Decl. ¶ 9.  This is especially meaningful here because,

26  as a result of the Court-ordered changes to the Notice, each Class member was informed of its

27  proposed share of the total Net Settlement Fund.  *Id.* at Ex. B.

28

1    **B.      The Proposed Plan of Allocation**

2          As set forth more fully in the DPPs' Motion for Preliminary Approval [ECF No. 1004 at

3    Part II.B], the proposed Plan of Allocation [ECF No. 1004-5] is based on discovery produced by

4    Defendants and others, and consultation with Class Counsel's expert economist Dr. Jeffrey J.

5    Leitzinger.  The Plan allocates the Net Settlement Fund based on each Class member's *pro rata*

6    weighted share of combined brand and generic Lidoderm unit purchases made directly from the

7    three pharmaceutical companies that sold brand and generic Lidoderm: (a) Endo, which sold

8    brand Lidoderm, (b) Watson, which sold generic Lidoderm, and (c) Endo's subsidiary Generics

9    Bidco I, LLC d/b/a Qualitest ("Qualitest"), which sold authorized generic Lidoderm.  *See* Nalven

10   and Leitzinger Declarations [ECF Nos. 1004-1 and 1004-6].

11         This type of plan of allocation is common in direct purchaser antitrust actions seeking

12   recovery of overcharges.  *See, e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d

13   336, 345 (E.D. Pa. 2007) (approving allocation plan where the proceeds were distributed *pro*

14   *rata* based upon the amount of their purchases of automotive refinishing paint); *In re Packaged*

15   *Ice Antitrust Litig.*, No. 08-MD-1952, 2011 WL 717519, at *12 (E.D. Mich. Feb. 22, 2011)

16   (granting final approval where class counsel anticipated that settlement funds would be

17   distributed among the class members *pro-rata*, based on their purchases of packaged ice).

18   Moreover, the method of allocation proposed here is similar to that approved in many prior

19   similar cases brought by direct purchasers to recover overcharges arising from impaired generic

20   competition.  *See Meijer, Inc. v. Abbott Lab.,* No. 07-5985-CW (N.D. Cal. Aug. 11, 2011)

21   (Wilken, J.), ECF No. 514 at ¶ 8 ("The Claims Administrator will distribute the Settlement

22   Funds to the Class on a *pro rata* basis in the manner described in the Plan of Allocation.").  *See*

23   *also In re Aggrenox Antitrust Litig.,* No. 14-md-02516 (D. Conn.), ECF No. 733-1 at 16-17 (*pro*

24   *rata* shares of settlement fund based on class members' purchases) (plan approved on Dec. 18,

25   2017, ECF No. 739); *In re Asacol Antitrust Litig.*, No. 15-cv-12730 (D. Mass.), ECF No. 419-9

26   at 4 (same) (plan approved on Dec. 7, 2017, ECF No. 648); *King Drug of Florence, Inc. v.*

27

28

DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF PROPOSED SETTLEMENT WITH ALL DEFENDANTS
*In re Lidoderm Antitrust Litig.,* No. 14-2521-WHO

1  *Cephalon, Inc.,* No. 06-1797 (E.D. Pa.), ECF No. 864-17 (same) (plan approved on Oct. 15,

2  2015, ECF No. 870).

3           After the Claims Administrator reviews all submitted claims and works with Dr.

4  Leitzinger to determine the amount each Claimant is entitled to receive from the Net Settlement

5  Fund, the Claims Administrator will prepare a final report for the Court's review and approval.

6  *See* ECF No. 1004-5, ¶¶ 4-5.  The report will explain the tasks and methodologies employed by

7  the Claims Administrator in processing the claims and administering the Plan of Allocation.  *Id*.

8  It will also contain a list of Class members or other Claimants (if any) who filed Claim Forms

9  that were rejected and the reasons for such rejections, as well as a list of any Class members'

10 challenges to the distribution amounts that were rejected and the reasons.  *Id*.  Finally, the final

11 report will contain an accounting of the expenses associated with the Plan of Allocation and

12 claims administration process, including bills from Dr. Leitzinger and RG/2, any taxes that are

13 due and owing, and any other fees or expenses associated with the settlement allocation process.

14 Upon Court approval of the final report and affidavit of the Claims Administrator, the Claims

15 Administrator, in consultation with Class Counsel, shall issue a check payable to each Claimant

16 who submitted a valid claim in the amount approved by the Court.

17                                   **CONCLUSION**

18           For the reasons set forth above, Plaintiffs respectfully request that the Court grant final

19 approval of the Settlement and direct the Settlement Administrator to finally administer the

20 Settlement.  A proposed order granting final approval is submitted herewith.

21

22

23

24

25

26

27

28

DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF PROPOSED SETTLEMENT WITH ALL DEFENDANTS
*In re Lidoderm Antitrust Litig.,* No. 14-2521-WHO

1   Dated: July 20, 2018                    Respectfully submitted,

2                                           By: */s/ Peter R. Kohn*

3                                           **FARUQI & FARUQI, LLP**

4                                           Peter R. Kohn
                                            Joseph T. Lukens
5                                           101 Greenwood Ave., Suite 600
                                            Jenkintown, PA 19046
6                                           Tel.: (215) 277-5770
                                            Fax: (215) 277-5771
7                                           Email: pkohn@faruqilaw.com

8

9                                           By: */s/ David S. Nalven*
                                            **HAGENS BERMAN SOBOL**
10                                          **SHAPIRO LLP**
                                            Thomas M. Sobol
11                                          David S. Nalven
                                            Gregory A. Arnold
12                                          55 Cambridge Parkway, Suite 301
                                            Cambridge, MA 02142
13                                          Tel.: (617) 482-3700
                                            Email: tom@hbsslaw.com
14                                          Email: davidn@hbsslaw.com
15

16
                                            By: */s/ Bruce E. Gerstein*
17                                          **GARWIN GERSTEIN & FISHER LLP**
                                            Bruce E. Gerstein
18                                          Noah Silverman
                                            88 Pine Street, Floor 10
19                                          New York, NY 10005
                                            Tel.: (212) 398-0055
20                                          Fax: (212) 764-6620
                                            Email: bgerstein@garwingerstein.com
21                                          Email: nsilverman@garwingerstein.com
22

23                                          *Co-Lead Counsel for the Direct*
                                            *Purchaser Class*
24

25

26

27
                                                    18
28  ─────────────────────────────────────────────────────────
    DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL
    OF PROPOSED SETTLEMENT WITH ALL DEFENDANTS
    *In re Lidoderm Antitrust Litig.*, No. 14-2521-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2018, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.

By: */s/ Peter R. Kohn*
Peter R. Kohn

DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF PROPOSED SETTLEMENT WITH ALL DEFENDANTS
*In re Lidoderm Antitrust Litig.*, No. 14-2521-WHO