[Submitting Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | Master File No. 14-md-02521-WHO |
| | MDL No. 2521 |
| THIS DOCUMENT RELATES TO: END-PAYOR ACTIONS | **END-PAYOR PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION AND AUTHORIZATION TO PAY NOTICE AND ADMINISTRATIVE EXPENSES** |
| | Date: September 12, 2018<br>Time: 2:00 p.m.<br>Courtroom: 2, 17th Floor<br>Before: Hon. William H. Orrick |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..................................................................................... 1

I.      INTRODUCTION ........................................................................................................ 2

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................. 3

III.    THE SETTLEMENTS .................................................................................................. 5

IV.     THE SETTLEMENTS WARRANT FINAL APPROVAL ........................................... 6

        A.      The Legal Standard ........................................................................................ 6

        B.      The Court Should Grant Final Approval ........................................................ 7

V.      THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE
        AND SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ....... 12

VI.     THE COURT SHOULD AUTHORIZE THE PAYMENT OF NOTICE AND
        ADMINSTRATION COSTS ...................................................................................... 13

VII.    CONCLUSION .......................................................................................................... 14

# TABLE OF CONTENTS

**Cases**

*Alvarez v. Farmers Ins. Exchange*
2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) ....................................................................... 11

*Brown v. Hain Celestial Group, Inc.*
2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ......................................................................... 8

*Byrne v. Santa Barbara Hospitality Servs., Inc.*
2017 WL 5035366 (C.D. Cal. Oct. 30, 2017) ....................................................................... 7

*Churchill Vill., L.L.C. v. Gen. Elec.*
361 F.3d 566 (9th Cir. 2004) ............................................................................................... 7

*Edwards v. Nat'l Milk Producers Federation*
2017 WL 3623734 (N.D. Cal. June 26, 2017) ................................................................. 8, 13

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) .......................................................................................... 6, 7

*In re Animation Workers Antitrust Litig.*
2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) ..................................................................... 11

*In re Bluetooth Headset Products Liab. Litig.*
654 F.3d 935 (9th Cir. 2011) ............................................................................................... 7

*In re High-Tech Empl. Antitrust Litig.*
2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ....................................................................... 7

*In re High-Tech Empl. Antitrust Litig.*
2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ....................................................................... 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ..................................................................... 12

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*
2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) ..................................................................... 12

*In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig.*
2016 WL 4010049 (N.D. Cal. July 26, 2016) ....................................................................... 7

*Knapp v. Art.com, Inc.*
283 F. Supp. 3d 823 (N.D. Cal. 2017) ................................................................................. 7

*Newton v. American Debt Services, Inc.*
2016 WL 7743686 (N.D. Cal. Jan. 15, 2016) ..................................................................... 10

ii

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*
  688 F.2d 615 (9th Cir. 1982) ............................................................................. 7

*Rieckborn v. Velti PLC*
  2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ........................................................ 12

*Rodriguez v. West Publishing Corp.*
  563 F.3d 948 (9th Cir. 2009) ........................................................................ 7, 8

*Torrisi v. Tucson Elec. Power Co.*
  8 F.3d 1370 (9th Cir. 1993) .............................................................................. 7

*Wellens v. Daiichi Sankyo, Inc.*
  2015 WL 10090564 (N.D. Cal. Oct. 16, 2015) ................................................... 8

**Rules**

Fed. R. Civ. P. 23 ...................................................................................... 6, 10

**Statutes**

28 U.S.C. § 1715(b) ....................................................................................... 5

**Other Authorities**

*Newberg on Class Actions* § 11.41 (4th ed. 2002) ............................................... 7

## NOTICE OF MOTION AND MOTION

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that the End-Payor Plaintiffs ("Plaintiffs" or "EPPs")[1] will and do hereby move the Court for entry of an Order:

(1) granting final approval of the settlement agreements (the "Settlements") between Plaintiffs, on behalf of themselves and the End-Payor Class, and (a) defendant Endo Pharmaceuticals Inc. ("Endo"); (b) defendants Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. (together, "Teikoku"); (c) defendants Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., and Actavis plc (together, "Watson"; together with Endo and Teikoku, "Defendants")[2];

(2) granting final approval of the plan of allocation of the settlement funds among the members of the End-Payor Class; and

(3) authorizing the payment from the Settlement Fund of up to $725,000 for settlement notice and administration expenses.

This Motion is supported by the accompanying Memorandum of Law, the Joint Declaration of End-Payor Plaintiff Co-Lead Counsel and exhibits thereto; the declarations of Co-Lead and Liaison counsel, as well as the declarations of additional non-lead firms describing the work performed in the litigation; the Lidoderm Settlement Allocation Declaration of Dr. Hal

---

[1] Allied Services Division Welfare Fund, City of Providence, International Union of Operating Engineers Local 49 Health and Welfare Fund, International Union of Operating Engineers Local 132 Health and Welfare Fund, Iron Workers District Council of New England Welfare Fund, NECA-IBEW Welfare Trust Fund, United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund, Welfare Plan of the International Union of Operating Engineers Locals 137, 137A, 137B, 137C, 137R, and Ottavio Gallotto.

[2] The Endo, Teikoku, and Watson settlement agreements are attached as Exhibits 1-3 respectively to the March 20, 2018, Declaration of Dena C. Sharp (ECF 1005-1). Unless otherwise noted, references to "Exhibits" or "Ex." refer to the exhibits to the Settlement Agreements, which—other than the Stipulated Judgments with Endo—are identical for each of the agreements, with the exception of the settlement amounts and the dates of payment.

J. Singer ("Singer Decl.") (ECF 1005-6); and EPPs' [Proposed] Final Order and Judgment, also attached.

Plaintiffs have conferred with counsel for Defendants, and Defendants do not oppose the motion.

**MEMORANDUM OF LAW**

**I.      INTRODUCTION**

End-Payor Plaintiffs (EPPs), on behalf of themselves and the members of the certified End-Payor Class, have reached separate settlements with defendants Endo, Teikoku, and Watson that together total $104.75 million. The Court preliminarily approved the settlements on May 1, 2018, and notice of the settlements was provided to members of the End-Payor Class. EPPs now respectfully request that the Court grant final approval of the settlements and the proposed Plan of Allocation.

Pursuant to the settlements, Defendants will collectively pay more than 45% of Plaintiffs' highest damages estimate to settle the claims of the End-Payor Class—a result that has been unmatched by end-payors in any federal "pay-for-delay" case in at least the past decade. The parties litigated the case vigorously for more than four years, and reached the final settlement only a week before jury selection. The parties thus knew the strengths and weaknesses of their respective cases. Through the settlements, EPPs avoid the risk of an adverse trial verdict or a reversal on appeal. The settlements were negotiated by counsel experienced in antitrust class actions and the negotiations were overseen by Chief Magistrate Judge Spero. The Settlements are fair, reasonable, and adequate and have no obvious deficiencies, and should be approved.

The proposed Plan of Allocation is also reasonable and fair, and likewise has no obvious deficiencies. It divides the settlement between consumers and third-party payors based on each group's share of classwide damages and, within each group, eligible claimants will be paid on a *pro rata* basis. The Court-appointed settlement administrator Kurtzman Carson Consultants ("KCC")—a nationally-recognized class action administration firm—has provided notice of the

2

END-PAYOR PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF
ALLOCATION AND AUTHORIZATION OF NOTICE AND ADMINISTRATIVE EXPENSES
CASE NO. 14-MD-02521-WHO

settlements to the End-Payor class and will administer claims in accordance with the Plan of Allocation.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

As set forth below and more fully in the accompanying Joint Declaration of End-Payor Plaintiff Co-Lead Counsel, the parties actively litigated this case for more than four years, and only settled when they had fully prepared the case for trial and were about to begin jury selection.

The first end-payor complaint in this multidistrict litigation was filed on November 12, 2013. *See United Food and Commercial Workers Local 1776 v. Teikoku Pharma USA, Inc., et al.*, 5:13-cv-05247 (N.D. Cal.). Other complaints followed in this District and other districts. The Judicial Panel on Multidistrict Litigation centralized all pending Lidoderm actions before this Court. ECF 1. On May 23, 2014, the Court appointed Girard Gibbs LLP, Heins Mills & Olson, P.L.C., and Cohen Milstein Sellers & Toll PLLC as Interim Co-Lead Counsel, and Joseph Saveri Law Firm, Inc. as Interim Liaison Counsel. ECF 63.

*Motions to Dismiss*. Following transfer of all pending Lidoderm actions to this Court, the Court consolidated the end-payor actions. EPPs filed a consolidated amended complaint, which Defendants moved to dismiss. ECFs 72, 95. On November 17, 2014, the Court largely denied Defendants' motion to dismiss and upheld EPPs' claims under the laws of seventeen states. ECF 117.

*Discovery*. The parties began discovery while Defendants' motion to dismiss was pending. Joint Decl., ¶¶ 18, 19, 22. Defendants ultimately produced over 3.3 million pages of documents, with third parties producing thousands of additional pages of documents and data. *Id.*, ¶ 28. EPPs—along with the other plaintiffs—litigated and prevailed on numerous complex privilege issues in pursuit of their claims. *E.g.*, ECFs 227, 269, 276, 345, 359, 364, 377, 398, 399, 401, 402, and 427 (Joint Discovery Letter Briefs); ECFs 536 and 679 (at-issue waiver order and Ninth Circuit denial of petition for interlocutory review); ECFs 367 and 484 (common interest order and Ninth Circuit denial of petition for interlocutory review). Plaintiffs deposed

1   32 fact witnesses, including current and former employees of Defendants and third parties. Joint
2   Decl., ¶ 27.

3        **Class Certification**. In June 2016, EPPs moved for certification of the End-Payor Class.
4   ECF 524. On February 21, 2017, the Court granted EPPs' motion and denied Defendants'
5   *Daubert* challenges to EPPs' experts. ECF 670. Defendants filed a petition with the Ninth
6   Circuit seeking interlocutory review under Federal Rule of Civil Procedure 23(f), which EPPs
7   opposed and the Ninth Circuit denied. ECF 756. Several large insurers opted out of the End-
8   Payor Class. Joint Decl., ¶ 54. No consumers opted out of the End-Payor Class. *Id*.

9        **Expert Work, Summary Judgment and Trial Preparations**. The trial in this case was
10   ultimately set to begin on February 23, 2018. In preparation for trial, the parties exchanged
11   merits expert reports on a range of topics including damages, patent issues, when generic entry
12   would have been expected to occur absent the settlement, and Watson's manufacturing
13   capabilities. *Id*., ¶ 57. EPPs' damages expert calculated the maximum single damages for the
14   End-Payor Class as $229 million. ECF 776-25 (Singer Reply Rpt.) at 40. Defendants' expert
15   calculated the maximum damages for the End-Payor Class as $5.6 million, assuming plaintiffs
16   proved that the patents would not prevent generic entry. ECF 778-5 (Bell Rpt.) at 69.

17        In June 2017, after expert depositions had concluded, the parties filed motions for
18   summary judgment and *Daubert* motions to exclude various experts from testifying at trial.
19   Defendants sought summary judgment on all Plaintiffs' claims on the issue of causation, while
20   Plaintiffs sought partial summary judgment on the relevant market and the "contract,
21   combination, or conspiracy" prong of their antitrust claims. ECFs 775, 786. On November 3,
22   2017, after oral argument, the Court denied Defendants' motion, granted Plaintiffs' motions,
23   and granted in part and denied in part the parties' *Daubert* motions. ECF 900. Defendants later
24   moved unsuccessfully for reconsideration of the ruling concerning the causation standard that
25   would apply at trial. ECF 978.

26        The parties exchanged their initial proposed pretrial materials—including exhibit lists,
27   witness lists, deposition designations, jury instructions, and verdict forms—on November 6,
28

2017. Joint Decl., ¶ 74. After protracted negotiations, in early December the parties filed their agreed-upon and disputed pretrial submissions. ECFs 929 and 933.

In the months leading up to the February 23, 2018, jury selection, EPP Co-Lead Counsel dedicated themselves to preparing for trial. Joint Decl., ¶ 79. Each of the EPP Co-Lead Counsel planned to play an active role on the Plaintiffs' joint trial team. *Id.*, ¶ 81. EPPs worked with counsel for other Plaintiffs to develop a draft outline of their case-in-chief, designate portions of fact witness depositions for use at trial, and identify documents to be used as exhibits. *Id.*, ¶ 80-82.

*Settlements*. Certain of the parties participated in mediation before the Hon. Layn Phillips in May 2017 but made only limited progress. Joint Decl., ¶ 84. Thereafter settlement negotiations took place under the auspices of Chief Magistrate Judge Joseph C. Spero. *Id.* EPPs reached an agreement in principle with Teikoku following an initial settlement conference in December 2017, with Watson after a January settlement conference, and with Endo after a February settlement conference, one week before jury selection. *Id.*

EPPs submitted the settlements for preliminary approval on March 20, 2018. ECF 1005. The Court heard oral argument, EPPs submitted modest revisions to certain of the settlement-related documents, and the Court granted preliminary approval on May 1, 2018. ECFs 1014, 1016. Since that time, EPPs have worked with KCC to implement the Court-approved notice plan which has included direct mail notice to third-party payors and publication notice designed to reach 80% of the consumer members of the class an average of 2.5 times. Declaration of Carla Peak, ECF 1005-5, at 11. KCC has begun to process the claims it has received. On March 30, 2018, Defendants served notice on federal and state officials as required by the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715(b). Joint Decl., ¶ 87.

## III.    THE SETTLEMENTS

Defendants collectively agreed to pay $104.75 million in cash to settle the claims of the End-Payor Class in the seventeen class states—*i.e.*, the states included in the definition of the End-Payor Class. Of the $104.75 million, Teikoku' contribution is $23.75 million, Watson's is $41 million, and Endo's is $40 million. In exchange, upon final approval Defendants will

receive releases from the End-Payor Class members. The release is narrowly tailored to the claims in this case. Class members will only release their claims related to Defendants' reverse payment agreement and the releases are limited to claims in the class states. The EPPs' consolidated complaint and the separate complaint of the Government Employees Health Association (which has rejoined the End-Payor Class) will be dismissed with prejudice.

Under the terms of the proposed Settlements, Teikoku and Watson paid their entire settlement amounts shortly after the Court granted preliminary approval. Joint Decl., ¶ 86. Endo will pay its settlement amount in three installments. It paid $20 million shortly after the Court granted preliminary approval (*id.*), and will pay another $10 million by February 15, 2019 and the final $10 million by February 15, 2020. Endo's payment schedule was negotiated with the assistance of Magistrate Judge Spero and allows EPPs to maximize the recovery from Endo. The agreement with Endo includes terms that protect the End-Payor Class if Endo does not make its second or third payments on time. Endo has signed two Stipulated Judgments (attached as Exhibits H and I to the Endo Settlement Agreement), which class counsel will hold in escrow but may move to have entered by the Court in the event Endo fails to pay. Endo may oppose such a motion only to the extent it has a good-faith defense based on EPPs' breach of the settlement agreement or exhibits. *See* Endo Settlement Agreement, ¶¶ 6(c)-(d).

## IV.   THE SETTLEMENTS WARRANT FINAL APPROVAL

### A.   The Legal Standard

Federal Rule of Civil Procedure 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The revisions to Rule 23 set to take effect December 1, 2018, will codify the "fair, reasonable, and adequate" standard. PROPOSED AMENDMENTS TO THE FEDERAL RULES OF CIVIL PROCEDURE (2017) ("Rule 23 Amendment") at 11.[3] The district court's role in evaluating a proposed settlement "must be limited to the extent necessary to reach

---

[3] *Available at* https://www.fjc.gov/sites/default/files/2017/Rules-Amendments-2018-Supreme-Court-Transmittal.pdf.

a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Hanlon*, 150 F.3d at 1027). "[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation[.]" *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

The factors that a district court considers to determine whether a settlement meets the "fair, reasonable, and adequate" standard include: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting same). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). "In certain cases, one factor alone may prove determinative in finding sufficient grounds for approval." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 830 (N.D. Cal. 2017).

The Settlements satisfy each of the above factors; are fair, reasonable, and adequate; and should be approved.

**B.     The Court Should Grant Final Approval**

The Settlements are entitled to "an initial presumption of fairness" because they resulted from arm's length negotiations among experienced counsel. *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig.*, 2016 WL 4010049, at *14 (N.D. Cal. July 26, 2016) (quoting *In re High-Tech Empl. Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) and *Newberg on Class Actions* § 11.41 (4th ed. 2002)); *see also Byrne v. Santa Barbara Hospitality Servs., Inc.*, 2017 WL 5035366, at *9 (C.D. Cal. Oct. 30, 2017)

7

1  ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted

2  with the facts of the underlying litigation.") (citation omitted). Class Counsel, who are

3  nationally-recognized antitrust litigators with experience litigating reverse payment cases,

4  believe that the Settlements are fair, reasonable, and in the best interests of the End-Payor Class.

5  Joint Decl., ¶¶ 3-4; *see also* ECF 670 at 29 n.24 (appointing Girard Gibbs, Heins Mills, and

6  Cohen Milstein as Class Counsel and explaining that "[t]hese firms have ably and vigorously

7  litigated this case, and nothing has occurred to undermine my initial determination of their

8  experience and adequacy"); ECF 46-2 (firm resumes). In addition, the Settlements were the

9  result of months of negotiations overseen by experienced mediators: first, retired Judge Phillips

10  and then by Chief Magistrate Judge Spero. Joint Decl., ¶ 84. "The assistance of an experienced

11  mediator in the settlement process confirms that the settlement is non-collusive." *Wellens v.*

12  *Daiichi Sankyo, Inc.*, 2015 WL 10090564, at *2 (N.D. Cal. Oct. 16, 2015); *see also Brown v.*

13  *Hain Celestial Group, Inc.*, 2016 WL 631880, at *6 (N.D. Cal. Feb. 17, 2016) (granting final

14  approval of settlement "reached after an extensive mediation process, including the final

15  mediation with Magistrate Judge Spero").

16       Defendants will pay a total of $104.75 million in cash to settle EPPs' claims. The End-

17  Payor Class will recover 46% of the most favorable single damages estimate EPPs were

18  prepared to seek at trial ($229 million). *See Rodriguez*, 563 F.3d at 964-65 (antitrust settlement

19  for 30% of plaintiffs' estimated damages was "fair and reasonable no matter how you slice it");

20  *Edwards v. Nat'l Milk Producers Federation*, 2017 WL 3623734, at *7 (N.D. Cal. June 26,

21  2017) (that settlement was 30% of estimated indirect purchaser damages "strongly weighs in

22  favor of granting final approval"); *In re High-Tech Empl. Antitrust Litig.*, 2015 WL 5159441, at

23  *4 (N.D. Cal. Sept. 2, 2015) (approving total settlements that were 14% of the class damages

24  estimate, and noting that "District courts in the Ninth Circuit routinely approve settlements with

25  much larger differences between the settlement amount and estimated damages.").

26       Class counsel have identified no other pay-for-delay case brought on behalf of end-

27  payors in federal court since 2005 that has settled for over $100 million (Joint Decl., ¶ 4):

28

| CASE (District and Settlement Year) | EPP (~MM) |
|---|---|
| *Lidoderm (N.D. Cal. 2018)* | *$104.75* |
| | |
| *Aggrenox* (D. Conn. 2018) | $54 |
| *Solodyn* (D. Mass. 2018) | $45 |
| *Skelaxin* (E.D. Tenn. 2015) | $9 |
| *DDAVP* (S.D.N.Y 2013) | $5 |
| *Flonase* (E.D. Pa. 2013) | $35 |
| *Toprol XL* (D. Del. 2012) | $11 |
| *Wellbutrin SR* (E.D. Pa 2011) | $22 |
| *Tricor* (D. Del. 2009) | $66 |
| *Ovcon* (D.D.C. 2009) | $13 |
| *Terazosin* (S.D. Fla. 2005) | $31[4] |
| *Relafen* (D. Mass. 2005) | $75[5] |
| *Remeron* (D.N.J. 2005) | $36 |
| *Paxil* (E.D. Pa. 2005) | $65 |

While the size of the Settlements reflects the strength of EPPs' case, there were substantial risks that could have prevented the class from recovering anything had the case proceeded to trial. To prevail at trial, EPPs would have had to prove not only that Defendants entered into an unlawful pay-for-delay agreement, but also that the agreement (as opposed to Endo's and Teikoku's patents or Watson's manufacturing problems) delayed generic competition and that End-Payor Plaintiffs were overcharged as a result. The same causation issues were fatal in the *Nexium* pay-for-delay case, where the plaintiffs obtained a liability verdict from a jury but lost on the issue of causation. *See In re: Nexium (Esomeprazole) Antitrust Litig.*, No. 1:12-md-02409-WGY, ECF No. 1383 (D. Mass. Dec. 5, 2014) (verdict form).

Moreover, this case involved numerous complex issues of law on which courts have diverged and the Ninth Circuit has not yet spoken. Had End-Payor Plaintiffs won at trial, Defendants were poised to appeal numerous important decisions of the Court, including the

---

[4] Of this amount, $2 million was set aside to pay for the fees, costs, and claims of the state plaintiffs.

[5] This amount includes an $8 million payment to a large non-class group of third-party purchasers.

Court's certification of the End-Payor Class, its decision concerning the relevant market, and its order regarding the appropriate standard for establishing causation at trial. *See* ECF 929 at 25 (reserving appellate rights as to class certification); *id.* at 8 n.5 (same as to market definition); ECF 948 at 2 (arguing that the Court's causation standard "would create an appellate issue that would permeate the entirety of any liability verdict"). Settlement avoids these risks while providing substantial relief to the End-Payor Class. And having reached agreement with each Defendant shortly before trial and after four years of litigation—including motions to dismiss, class certification, summary judgment and *Daubert* motions, completion of fact and expert discovery, and trial preparation to the point of jury selection—"the parties came to the negotiating table with adequate knowledge of the strengths and weaknesses of their positions." *Newton v. American Debt Services, Inc.*, 2016 WL 7743686, at *3 (N.D. Cal. Jan. 15, 2016).

With respect to the reaction of class members, as of July 27, 2018, 18,921 consumer class members and 159 third-party payor class members have submitted claims. Joint Decl., ¶ 86. Class members can continue to submit claims through October 1, 2018. EPPs will provide the Court with updated claims rate information on September 4. To date no class member has objected to the Settlements (*id.*). The deadline to object is August 21, 2018. If any objections are received, EPPs will file their replies on September 4, 2018.[6]

The Settlements also satisfy the factors set forth in the Rule 23 Amendments: that (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the costs, risks, and delay of trial and appeal, (4) the effectiveness of any proposed method of distributing relief to the class, (5) the terms of any award of attorney's fees; and (6) the proposal treats class members equally. With respect to the first three factors, as detailed above, the Settlements were the result of serious, non-collusive negotiations among experienced counsel and avoided costs and risky continue litigation. As explained below, the Plan of Allocation is based on the expert analysis EPPs' economic expert

---

[6] At that time EPPs will also submit a declaration from KCC verifying that the court-approved Notice Plan was carried out and provide information concerning undeliverable mail.

Dr. Hal Singer, treats class members fairly, and is fair and reasonable. As for the fifth factor, the settlements only provide that class counsel may seek an attorneys' fee award up to one-third of the settlement but reserve to this Court the ultimate decision on class counsel's award of attorneys' fees. *See* Settlement Agreements, ¶ 11.

Lastly, the Settlements do not improperly provide preferential treatment to the Class Representatives or any segments of the End-Payor Class. As explained in Section V, each class member will receive a *pro rata* share of the settlement proceeds. And EPPs' request for payment of $10,000 incentive awards to each of the nine Class Representatives ($90,000 total, which is .086% of total value of the Settlements) is consistent with similar service awards regularly approved in class actions. *E.g. Alvarez v. Farmers Ins. Exchange*, 2017 WL 2214585, at *1 (N.D. Cal. Jan. 18, 2017) (approving nine $10,000 service awards that in the aggregate were 1.8% of the settlement value); *In re Animation Workers Antitrust Litig.*, 2016 WL 6663005, at *9 (N.D. Cal. Nov. 11, 2016) (approving $10,000 service awards in a case with $18.95 million settlement fund). Nor does the proposal to provide the Separately Represented End-Payors (or "SREPs," the large insurers that had opted out of the class and then rejoined the class for purposes of settlement) with an initial payment of their claims improperly benefit the SREPs at the expense of the rest of the End-Payor Class. *See In re Flonase Antitrust Litig.*, No. 2:08-cv-03301-AB (E.D. Pa.), ECF 566 (plan of allocation including initial claims payment) and ECF 606 (order approving plan of allocation). The SREPs are large insurers (and their self-funded plans) who will receive a substantial share of the settlement proceeds (*see* Sharp Declaration, ECF 1005-1, ¶ 9 (summarizing SREPs' share of class purchases)) and there is no reason to delay the distribution of a portion of their estimated claim. And SREPs, like all End-Payor Class members, will only receive their *pro rata* share of the settlement fund once all claims have been received and adjudicated.

In short, the Settlements should be approved.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.      THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

"Approval of a plan of allocation of settlement proceeds in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Rieckborn v. Velti PLC*, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (citation omitted). "[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.* (citation omitted). EPPs' proposed Plan of Allocation (filed as Ex. A to each settlement agreement) satisfies these criteria.

Dr. Singer determined that approximately 75% of the damages in this case were borne by TPPs (Singer Decl., ¶ 14), and EPPs thus propose that 75% of the settlement fund be allocated to the pool of TPP claimants and 25% of the settlement fund be allocated to the pool of consumer claimants. Given the size of the settlement fund in this case and the anticipated consumer claim rates, class counsel expect the allocation of 25% of the settlement fund ($26.19 million, before fees, expenses and class representative awards) to consumers will be more than enough to pay consumers' average per box overcharge damages in full. *Id.* at 39. Should this occur, each consumer claimant will be capped at 100% of his or her damages and any excess amounts in the consumer pool will flow to the TPP pool. In the unlikely event that the settlement fund is large enough to pay both consumer claimants and TPP claimants their damages in full, any excess will be re-allocated 75/25 among the TPPs and consumers.

Within the consumer and TPP pools, the settlement proceeds will be allocated to class members on a *pro rata* basis. *See In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 9266493, at *8 (N.D. Cal. Dec. 17, 2015) (use of *pro rata* allocation plan "has frequently been determined to be fair, adequate, and reasonable in comparable cases") (collecting cases); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *4 (N.D. Cal. Dec. 27, 2011) ("a *pro-rata* allocation has been used in many antitrust cases including in this District"). For consumers, the allocation will be determined based on the number of boxes of Lidoderm or generic Lidoderm each claimant purchased as a percentage of the total number of boxes

12

END-PAYOR PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF
ALLOCATION AND AUTHORIZATION OF NOTICE AND ADMINISTRATIVE EXPENSES
CASE NO. 14-MD-02521-WHO

purchased by all consumer claimants. Ex. A, ¶ 20. To facilitate the claims process, the consumer claim form requires only that consumers indicate the number of brand or generic Lidoderm prescriptions they filled. *See Nat'l Milk Producers*, 2017 WL 3623734, at *2 (consumers submitted claims "without proof of purchase" and were reimbursed "depending on the level of purchases"). For TPPs, the allocation will be determined based on the amount each TPP claimant spent on Lidoderm or generic Lidoderm as a percentage of the total amount spent by all TPP claimants. Ex. A, ¶ 21.

## VI.  THE COURT SHOULD AUTHORIZE THE PAYMENT OF NOTICE AND ADMINSTRATION COSTS

KCC has estimated that the costs for distributing notice of the settlements, processing claims, and making the first distribution of settlement funds to claimants (which are separate from costs to distribute notice of the Court's liability purposes class certification order) will be $601,062. *Id.*, ¶ 111. KCC further estimates that the cost for making the second distribution of settlement funds in March 2020 will be $83,956. *Id.* The final amounts will, however, depend on several factors that will not be known until the process of distributing claims is complete, namely the total number of claims processed, how many claims are submitted electronically instead of via hard copy, and the scope and type of supporting documentation class members submit. *Id.* The invoice for the settlement notice and administration costs is attached as Exhibit B to Co-Lead Counsel's Joint Declaration. (The $385,000 of costs incurred in connection with distribution of notice of the Court's class certification order, by contrast, is included in class counsel's request for reimbursement of costs, as set forth in the accompanying briefing and Co-Lead Counsel's Joint Declaration at paragraph 110.)

Class counsel therefore also requests that the Court authorize the payment from the Settlement Fund of up to $725,000 for settlement notice and administration expenses. Class counsel will, however, only withdraw from the Settlement Fund the amounts necessary to pay KCC's actual settlement notice and administration costs once they are known and will not deduct administration costs related to the second distribution until Endo makes its third payment in February 2020. In the unlikely event that settlement notice and administration costs exceed

13

END-PAYOR PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS AND PLAN OF ALLOCATION AND AUTHORIZATION OF NOTICE AND ADMINISTRATIVE EXPENSES
CASE NO. 14-MD-02521-WHO

$725,000, EPPs will submit a request to the Court to authorize payment of the additional amount.

## VII.    CONCLUSION

For the foregoing reasons, EPPs request that the Court grant final approval of the Settlements and the Plan of Allocation, and authorize the payment from the Settlement Fund of up to $725,000 for settlement notice and administration expenses.

DATED: July 31, 2018                          Respectfully submitted,

/s/ *Dena C. Sharp*

Daniel C. Girard (SBN 114826)
Dena C. Sharp (SBN 245869)
Scott Grzenczyk (SBN 279309)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dcg@girardgibbs.com
Email: chc@girardgibbs.com
Email: smg@girardgibbs.com

/s/ *Renae D. Steiner*
Renae D. Steiner
Teresa M. Jones
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: rsteiner@heinsmills.com

/s/ *Sharon K. Robertson*
Sharon K. Robertson
Donna M. Evans
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: srobertson@cohenmilstein.com

14

Email: devans@cohenmilstein.com

*Co-Lead Counsel for Plaintiffs and the End-Payor Class*

Joseph R. Saveri
Joshua P. Davis
Andrew M. Purdy
Ryan J. McEwan
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: rmcewan@saverilawfirm.com

*Liaison Counsel for Plaintiffs and the End-Payor Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION**

I, Dena C. Sharp, am the ECF User whose identification and password are being used to file End-Payor Plaintiffs' Motion for Final Approval of Settlements and Plan of Allocation and Authorization of Notice and Administrative Expenses. Pursuant to Civil L.R. 5-1(i)(3), I attest under penalty of perjury that concurrence in this filing has been obtained from all counsel.

DATED:  July 31, 2018                                  /s/ *Dena C. Sharp*
                                                                     Dena C. Sharp

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2018, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system. I also caused a copy of the foregoing document to be served via email on counsel of record for all parties.

/s/ *Dena C. Sharp*