[Submitting Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | Master File No. 14-md-02521-WHO |
| | MDL No. 2521 |
| THIS DOCUMENT RELATES TO: END-PAYOR ACTIONS | **COMPENDIUM OF END-PAYOR CLASS COUNSEL DECLARATIONS** |

In connection with End-Payor Class Counsel's Motion for an Award of Attorneys' Fees, Expenses, and Service Awards, each class counsel firm has submitted a declaration in support of the motion. In addition to the Joint Declaration of Co-Lead Counsel submitted in connection with today's filings, the individual firm declarations are attached as exhibits hereto as follows:

1.  Cohen Milstein Sellers & Toll PLLC (Co-Lead Counsel);

2.  Girard Gibbs LLP (Co-Lead Counsel);

3.  Heins Mills & Olson, P.L.C. (Co-Lead Counsel);

4.  Joseph Saveri Law Firm, Inc. (Liaison Counsel);

5.  Hilliard & Shadowen LLP (Executive Committee Member);

6.  Miller Law LLC (Executive Committee Member);

7.  Motley Rice LLC (Executive Committee Member);

8.  Robbins Geller Rudman & Dowd LLP (Executive Committee Member);

9.  Cohen, Placitella & Roth, P.C.;

10. Freed Kenner London & Millen LLC;

11. Glancy Prongay & Murry LLP;

12. Hach Rose Schirripa & Cheverie LLP;

13. Kohn, Swift & Graf, P.C.;

14. Krause, Kalfayan, Benink & Slavens, LLP;

15. Labaton Sucharow LLP;

16. Law Offices of Robert W. Sink;

17. Lockridge Grindal Nauen P.L.L.P.;

18. Meredith & Narine;

19. Pomerantz LLP;

20. Shepherd, Finkelman, Miller & Shah, LLP;

21. Spector Roseman & Kodroff, P.C.;

22. Weinstein Kitchenoff & Asher LLC; and

23. Wexler Wallace LLP

DATED: July 31, 2018

Respectfully submitted,

/s/ *Dena C. Sharp*

Daniel C. Girard (SBN 114826)
Dena C. Sharp (SBN 245869)
Scott Grzenczyk (SBN 279309)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: dcg@girardgibbs.com
Email: chc@girardgibbs.com
Email: smg@girardgibbs.com

/s/ *Renae D. Steiner*
Renae D. Steiner
Teresa M. Jones
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: rsteiner@heinsmills.com

/s/ *Sharon K. Robertson*
Sharon K. Robertson
Donna M. Evans
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: srobertson@cohenmilstein.com
Email: devans@cohenmilstein.com

*Co-Lead Counsel for Plaintiffs and the End-Payor Class*

Joseph R. Saveri
Joshua P. Davis
Andrew M. Purdy
Ryan J. McEwan
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, California 94108

2

Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: rmcewan@saverilawfirm.com

*Liaison Counsel for Plaintiffs and the End-
Payor Class*

COMPENDIUM OF END-PAYOR CLASS COUNSEL DECLARATIONS
CASE NO. 14-MD-02521-WHO

1

## **ATTESTATION**

2        I, Dena C. Sharp, am the ECF User whose identification and password are being used

3   to file this Compendium of End-Payor Class Counsel Declarations. Pursuant to Civil L.R. 5-

4   1(i)(3), I attest under penalty of perjury that concurrence in this filing has been obtained from

5   all counsel.

6

7   DATED:  July 31, 2018                    /s/ *Dena C. Sharp*
                                          Dena C. Sharp
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPENDIUM OF END-PAYOR CLASS COUNSEL DECLARATIONS
CASE NO. 14-MD-02521-WHO

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on July 31, 2018, I electronically filed the foregoing document

3   using the CM/ECF system, which will send notification of such filing to all counsel of record

4   registered in the CM/ECF system.

5

6                                                                    /s/ *Dena C. Sharp*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

Sharon K. Robertson
Donna M. Evans
Robert A. Braun
**COHEN MILSTEIN SELLERS & TOLL
PLLC**
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: srobertson@cohenmilstein.com
Email: devans@cohenmilstein.com
Email: rbraun@cohenmilstein.com

*Co-Lead Counsel for Plaintiffs and the End-Payor Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **DECLARATION OF SHARON K. ROBERTSON IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

I, Sharon K. Robertson, hereby declare:

1.      I am a partner at Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein") and counsel for Plaintiff Welfare Plan of the International Union of Operation Engineers Locals 137, 137A, 137B, 137C, 137R.  I serve as Co-Lead counsel for the End-Payor Class ("EPPs") in this matter, and submit this declaration in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards.  I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

## I.      FIRM BACKGROUND

2.      Cohen Milstein, a nearly 100-lawyer firm based in Washington, D.C. with offices in six other cities, has been recognized as one of the nation's leading plaintiffs' class action firms for almost fifty years.  The Trial Lawyer has named Cohen Milstein as one of "America's 25 Most Influential Law Firms"; the firm has been ranked by Legal 500 as a "Leading Plaintiff Class Action Antitrust Firm" for the past ten years; and the National Law Journal selected Cohen Milstein as Elite Trial Lawyers.  Law360 has also repeatedly named Cohen Milstein one of the "Most Feared Plaintiffs Firms."  The firm has a passionate commitment to securing excellent results for its clients, a commitment that includes not only major class action litigation, but also a strong commitment to pro bono work and work on international human rights matters.

3.      Cohen Milstein's antitrust practice group is recognized for its experience in complex litigation challenging price-fixing, market allocation, and other anticompetitive behavior, with expertise spanning numerous industries, including agriculture, automotive parts, chemicals, financial services, health care, high tech, media and entertainment, pharmaceuticals, and many others.  Cohen Milstein has recovered billions of dollars in damages for injured plaintiffs, including as lead or co-lead class counsel in the following recent matters: *In re Urethane Antitrust Litigation* (recovering a total of $974 million in settlements, including following a jury verdict in the class's favor); *In re Electronic Books Antitrust Litigation* (recovering $560 million); *In re Domestic Drywall Antitrust Litigation* (recovering $190 million); and *Nitsch v. Dreamworks Animation SKG, Inc.* (recovering $168.5 million).

4.      Cohen Milstein has consistently been at the forefront of cutting-edge pharmaceutical and pay-for-delay antitrust litigation, which I spearhead on behalf of the firm.  The firm is currently serving

1

DECLARATION OF SHARON K. ROBERTSON IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

as Co-Lead Counsel to the proposed End-Payor Class in *In re Lipitor Antitrust Litigation* and *In re Loestrin Antitrust Litigation*.  Cohen Milstein also served as Co-Lead Counsel to the End-Payor Class in *In re Nexium Antitrust Litigation*, the first pay-for-delay antitrust case to be tried through verdict following the Supreme Court's landmark decision in *FTC v. Actavis*.  In addition, Cohen Milstein plays a significant role in coordinating discovery in a number of other pay-for-delay cases, including *In re Niaspan Antitrust Litigation* and *In re ACTOS Antitrust Litigation*.  The firm likewise played an important role in Plaintiffs' discovery efforts in *In re Solodyn Antitrust Litigation* and served as a member of the executive committee in *In re Aggrenox Antitrust Litigation*, both of which recently concluded.  The firm represents direct purchaser plaintiffs in a number of pharmaceutical antitrust cases, including *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, *In re Intuniv Antitrust Litigation* (D. Mass.) and *In re Ranbaxy Fraud Antitrust Litigation* (D. Mass.).  For its efforts, in 2017, 2014, and 2013, Law 360 named Cohen Milstein a "Competition Group of the Year"—among the only plaintiff-side firms ever to receive this honor.

## II.    OVERVIEW OF WORK PERFORMED BY COHEN MILSTEIN

### A.    Work Performed for the Benefit of the End-Payor Class

5.    Cohen Milstein was appointed as Interim Co-Lead Counsel for the End-Payor Class on May 23, 2014 (ECF 63), and as Co-Lead Counsel on February 21, 2017 in connection with the Court's certification of the End-Payor Class (ECF 670).

6.    Co-Lead Counsel worked cooperatively and sought to avoid duplication and to maximize efficiency by delegating tasks among themselves.  While Ms. Steiner, Ms. Sharp and I worked closely with the Direct Purchaser Plaintiffs ("DPPs") to coordinate and manage the case and our discovery efforts generally, Cohen Milstein, for example, was primarily responsible for: Plaintiffs discovery of Endo; EPP class representative discovery (including written and document discovery and preparing for and defending many of the class representatives' depositions); third-party discovery, including from pharmacy-benefits managers ("PBMs"); expert discovery, relating to both class certification and merits issues; preparing for and taking multiple fact depositions and several expert depositions; and drafting, in whole or in part, various briefs throughout the litigation.  The approach Cohen Milstein crafted to addressing ascertainability through third party discovery was groundbreaking

1   and has since been replicated in subsequent pay-for-delay cases.  Similarly, our involvement in

2   identifying Endo's "pre-clearance" letters and briefing the "*Kovel*" issues relating to it allowed

3   Plaintiffs to dislodge key documents containing critical admissions that were utilized heavily in

4   depositions and briefing.

5        7.     The firm took a lead role in trial preparations as well.  I was slated to conduct the

6   examination or cross-examination of several key trial witnesses.  In addition, I served as one of the primary

7   liaisons between Plaintiffs and Defendants, including leading and coordinating among the parties with

8   respect to the contours and deadlines for exchanging deposition designations and exhibits, both before and

9   during trial.  In addition, I coordinated, along with DPPs, Plaintiffs' work in designating deposition

10  transcripts and identifying and objecting to exhibits and led virtually all of the parties' meet and confer

11  discussions.  Donna Evans, Of Counsel at the firm, was also integrally involved in drafting portions of the

12  pretrial brief, *voir dire* questionnaire, witness examinations, and designating deposition testimony that

13  would be used at trial.

14       8.     In short, Cohen Milstein was involved in all important aspects of the litigation, directing

15  and providing its expertise and experience, which contributed to the successful settlement and

16  resolution of this matter.

17       **B.**     **Lodestar Summary**

18       9.     In accordance with the Court's direction and Liaison Counsel's June 4, 2014 letter

19  concerning time and expense reporting, Cohen Milstein's attorneys and staff kept contemporaneous

20  records of the time they spent on this litigation.  Co-Lead Counsel agreed to conduct a peer review of one

21  another's detailed time entries, as well as the entries of non-lead firms.  My office and other Co-Lead

22  Counsel have reviewed my firm's daily time records and exercised billing judgment to eliminate

23  inefficiency and duplication. My firm is prepared to submit its time records for *in camera* review if

24  requested by the Court.

25       10.     The total number of hours spent by Cohen Milstein prosecuting this litigation through July

26  10, 2018 is 13,594.0, with a corresponding lodestar of $6,772,990.00.  The lodestar does not include any

27  time spent on proceedings before the Judicial Panel on Multidistrict Litigation or related to the

28  appointment of class counsel.  Below is a summary of the individuals who worked on this matter for

Cohen Milstein, their roles (Partner, Associate, Paralegal, etc.), the total number of hours they worked,

their historic hourly billing rates, and their total lodestar.

| Timekeeper | Role | Year | Hours | Rate | Lodestar |
|---|---|---|---|---|---|
| Richards, J. Douglas | Partner | 2016 | 7.0 | $885 | $6,195.00 |
| | Partner | 2015 | 100.8 | $855 | $86,184.00 |
| | Partner | 2014 | 52.9 | $835 | $44,171.50 |
| Evans, Donna | Of Counsel | 2018 | 121.8 | $805 | $98,049.00 |
| | Of Counsel | 2017 | 945.9 | $775 | $733,072.50 |
| | Of Counsel | 2016 | 1,289.5 | $745 | $960,677.50 |
| | Of Counsel | 2015 | 613.7 | $710 | $435,727.00 |
| | Document Review | | 10.5 | $350 | $3,675.00 |
| Robertson, Sharon | Partner | 2018 | 253.4 | $645 | $163,443.00 |
| | Partner | 2017 | 1,087.1 | $615 | $668,566.50 |
| | Partner | 2016 | 1,376.3 | $575 | $791,372.50 |
| | Partner | 2015 | 1,280.0 | $540 | $691,200.00 |
| | Associate | 2014 | 217.3 | $510 | $110,823.00 |
| Levy, Scott | Special Counsel | 2016 | 259.1 | $580 | $150,278.00 |
| Braun, Robert | Associate | 2018 | 112.0 | $530 | $59,360.00 |
| | Associate | 2017 | 80.80 | $490 | $39,592.00 |
| Hafiz, Hiba | Associate | 2015 | 83.9 | $440 | $36,916.00 |
| | Associate | 2014 | 35.3 | $415 | $14,649.50 |
| | Document Review | | 83.6 | $350 | $29,260.00 |
| Ruan, Matthew, W. | Contract Attorney | 2014 | 12.5 | $500 | $6,250.00 |
| Gutierrez, Alicia | Discovery Counsel | 2017 | 0.8 | $475 | $380.00 |
| | Document Review | | 598.6 | $350 | $209,510.00 |
| Gentile, Meghan | Staff Attorney | 2015 | 1.0 | $355 | $355.00 |
| | Staff Attorney | 2014 | 154.8 | $345 | $53,406.00 |
| Fort, Olga | Contract Attorney | | 1,587.5 | $350 | $555,625.00 |
| Adkins, Jay | Contract Attorney | | 2,547.0 | $250 | $636,750.00 |
| Abetti, Jonathan | Paralegal | 2018 | 24.70 | $300 | $7,410.00 |
| | Paralegal | 2017 | 158.1 | $290 | $45,849.00 |
| | Paralegal | 2016 | 156.0 | $280 | $43,680.00 |
| | Paralegal | 2015 | 180.3 | $260 | $46,878.00 |
| Lee, Jihoon | Paralegal | 2016 | 10.0 | $280 | $2,800.00 |
| | Paralegal | 2015 | 6.5 | $270 | $1,755.00 |
| McBride, Michael | Paralegal | 2015 | 10.3 | $270 | $2,781.00 |
| | Paralegal | 2014 | 22.7 | $260 | $5,902.00 |
| Brotstein, Carol | Paralegal | 2016 | 1.5 | $270 | $405.00 |
| Szemanski, Ali | Paralegal | 2016 | 58.8 | $270 | $15,876.00 |

DECLARATION OF SHARON K. ROBERTSON IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

| Sanchez, Jeannette | Paralegal | 2015 | 18.0 | $270 | $4,860.00 |
|---|---|---|---|---|---|
| Campbell, Maya | Paralegal | 2018 | 7.0 | $290 | $2,030.00 |
| | Paralegal | 2017 | 11.0 | $280 | $3,080.00 |
| Mogck, Edward | Paralegal | 2015 | 3.0 | $260 | $780.00 |
| Noronha, Alex | Paralegal | 2016 | 5.3 | $270 | $1,431.00 |
| Jay Clayton | Paralegal | 2017 | 1.8 | $280 | $504.00 |
| | Paralegal | 2016 | 0.3 | $270 | $81.00 |
| Twigg, Andrew | Paralegal | 2014 | 5.6 | $250 | $1,400.00 |
| **TOTAL** | | | **13,594.0** | | **$6,772,990.00** |

### C.   Staffing and Tasks Performed on This Matter

11.    Cohen Milstein staffed this matter with attorneys and staff who performed tasks based on their skills, expertise, and experience.  A majority of the firm's hours were billed by me and Donna Evans (and more than three-fourths were billed by the two of us and two attorneys who were assisting us with document review and deposition preparation, Olga Fort and Jay Adkins).  I was responsible for overall case management and discovery relating to Endo, End-Payor Plaintiffs, third parties, and certain experts and was prepared to examine several key witnesses at trial.  Ms. Evans assisted with several aspects of discovery, including the preparation and negotiation of monthly status conference statements, conducting the depositions of several key fact and expert witnesses, and performing extensive research and drafting briefs on complex legal issues that required senior experience.  Other attorneys and professionals at our firm performed work commensurate with their skills and experience, as assigned by me and Ms. Evans.  More detailed information about the roles and contributions of each attorney (including each's law school graduation year) and staff member is set forth below:

12.    **Sharon K. Robertson (graduation year 2006):** I am a Partner at Cohen Milstein and a member of its antitrust practice group.  I was responsible for managing all aspects of the firm's efforts in the case and worked closely with Ms. Steiner and Ms. Sharp on the overall strategy and prosecution of the litigation on behalf of EPPs.

13.    Throughout the litigation I played a central role in the management of the case on behalf of all Plaintiffs.  I frequently liaised between EPPs and DPPs, between Plaintiffs and Defendants, and between Co-Lead Counsel for the EPP Class and counsel representing the individual class representatives.  After the Court appointed Cohen Milstein as Co-Lead Counsel, I coordinated with numerous counsel representing the individual class representatives in creating, collecting, and

5

analyzing client questionnaires designed to facilitate Co-Lead Counsel's identification of appropriate class representatives. I also oversaw the collection and review of data necessary to verify, among other things, each Plaintiff's state of purchase and worked closely with Co-Lead Counsel to integrate this information into the Amended Complaint. In addition, I drafted various portions of the Amended Complaint and motion to dismiss opposition.

14.     Cohen Milstein also took the lead in managing all phases of discovery for close to a dozen EPP class representatives, which required the investment of considerable time and effort, including to coordinate with the numerous counsel representing the individual class representatives. I led these efforts. In particular, I drafted and/or oversaw the drafting of Plaintiffs' original and amended responses and objections to Defendants' document requests and interrogatories, as well as the class representatives' initial disclosures. I led all of the meet and confers relating to discovery of End-Payor Plaintiffs and drafted numerous letters to Defendants memorializing our positions and disputes with respect to the same. Following the meet and confer process, I oversaw the collection, review, and production of documents on behalf of all of the named plaintiffs. In addition, I coordinated the class representatives' deposition defense, including preparing extensive materials for counsel representing each of the individual named plaintiffs in order to assist in the preparation of their clients for deposition. I also personally prepared several named plaintiffs and defended their depositions, including, Welfare Plan of the International Union of Operating Engineers Locals 137, 137A, 137B, 137C, 137R (Rita Kostik), NECA-IBEW Welfare Trust Fund (Todd Thacker), and United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund (Regina Reardon), and attended, telephonically, the preparation session and deposition of International Union of Operating Engineers Local 49 Health and Welfare Fund ("Local 49").

15.     Throughout the case our firm took primary responsibility for pursuing discovery from Endo, which I oversaw. I was extensively involved, along with DPPs and Retailers, in meet and confers regarding Endo's production of documents. In particular, Endo argued that its production should be limited to the custodians and documents that it produced in relation to the FTC's parallel investigation. I worked closely with counsel for DPPs in securing "hit reports" for search terms and identifying additional custodians in order to persuade Endo to expand the contours of its production.

1    Based in part on my efforts, we were able to reach agreement with Endo on additional search terms and

2    custodians. Moreover, during discovery, I prepared for and took the depositions of several key

3    witnesses, including Alan Levin and Arjan Singh. I also drafted deposition questions and selected

4    some of the exhibits for, and attended on behalf of EPPs, the depositions of fact witnesses Andrew

5    Boyer, Paul Bisaro, Caroline Manogue (who was deposed twice), and Jason Reckner.

6          16.    I took the lead on behalf of EPPs with respect to third-party discovery as well. At the

7    time Plaintiffs filed this case, end-payors were facing a series of decisions denying class certification,

8    based primarily on ascertainability grounds. I led EPPs' efforts to craft a novel strategy to address this

9    issue, subpoenaing several of the largest PBMs, including Express Scripts, CVS-Caremark, Prime, and

10   Optum. Through a series of separate meet and confers that spanned several months, I was able to

11   obtain declarations and data from each of the PBMs that were ultimately used by our experts in support

12   of our successful motion for class certification. The declarations confirmed what EPPs believed to be

13   the case—class members can be identified through data maintained by PBMs, and PBMs do not pay or

14   reimburse for pharmaceutical products. In addition, one of the PBMs, Optum, provided data that

15   Plaintiffs' damages expert, Hal Singer, utilized to demonstrate that his model conservatively estimated

16   damages, given his assumption that rebates, which he reduced his damages figures by, were passed

17   through at a rate of 100%, even though the data obtained from Optum demonstrated that the pass-

18   through rate was closer to 98%. Similarly, Plaintiffs' PBM expert, W. Paul DeBree, utilized the

19   declarations obtained from the PBMs to buttress his opinion that the class is ascertainable and that

20   PBMs were properly excluded from the same. This approach has become the gold standard and has

21   been adopted in other pharmaceutical antitrust cases to address ascertainability.

22         17.    I also played a key role in expert-related work at both the class certification and merits

23   stages. I worked with EPP expert W. Paul Debree in preparing his report and for his deposition, which

24   I personally defended. I prepared for and took the deposition of Defendants' expert Dr. Robert

25   Navarro, who had opined regarding several key issues pertaining to class certification. I also

26   contributed extensively to Defendants' *Daubert* motion seeking to exclude Mr. Debree's opinions, and

27   to EPPs' *Daubert* motion seeking to exclude the opinions of Dr. Navarro and Mr. Fritz. I worked

28   closely with counsel for DPPs, Peter Kohn and Noah Silverman, in drafting the (successful) opposition

1   to Defendants' *Daubert* motion seeking to exclude the expert opinions of Prof. Einer Elhauge.  Prof.

2   Elhauge was a crucial witness, who opined among other things that Endo's reverse payments delayed

3   Watson's introduction of generic Lidoderm, regarding the timing of generic entry but for the reverse

4   payments, and that there were no procompetitive justifications for the reverse payments.

5           18.     I played a significant role in briefing several other key issues including, in addition to

6   those referenced above, opposing Defendants' motion to dismiss and Defendants' disqualification

7   motion, opposing two separate motions from Defendants seeking to compel the production of premium

8   documents, motion practice relating to deposing Endo's former Chief Financial Officer, Alan Levin,

9   and EPPs' briefs in support of class certification (including sections addressing ascertainability and

10  impact).  In addition to my drafting responsibilities, I participated in multiple hearings, and was

11  prepared to argue several motions, and did argue Plaintiffs' successful motion *in limine* to exclude self-

12  serving portions of the FTC-investigational hearing transcripts.

13          19.     As Plaintiffs prepared to go to trial, I worked closely with my Co-Lead Counsel, as well

14  as counsel for DPPs, to develop and refine an order of proof.  Ms. Steiner, Ms. Sharp, and I divided

15  responsibility for live fact and expert witnesses at trial with counsel for DPPs.  As trial drew closer, the

16  core trial team had in-person and weekly (sometimes more frequent) telephone meetings to determine

17  the key evidentiary themes, the order of proof, and cross-examination strategy.  Among other roles, I

18  was preparing to directly examine named End-Payor Plaintiff Glen Johnson and Plaintiff expert Luis

19  Molina and to cross-examine Endo witnesses Alan Levin and Arjan Singh.  In addition to preparing for

20  live witness examinations, I served as one of the primary liaisons between Plaintiffs and Defendants,

21  including leading and coordinating among the parties with respect to the contours and deadlines for

22  exchanging deposition designations and exhibits, both before and during trial.  In addition, I coordinated,

23  along with DPPs, Plaintiffs' work in designating deposition transcripts and identifying and objecting to

24  exhibits and led virtually all of the parties' meet and confer discussions.  I was also responsible for

25  designating multiple deposition transcripts for use at trial, a time-consuming exercise that implicated

26  key tactical decisions about our presentation at trial.

27          20.     Throughout the case, I attended and actively participated in multiple settlement meetings

28  and mediations with Defendants—a process that ultimately bore fruit.  In conjunction with Ms. Steiner,

Ms. Sharp, and Mr. Girard, I objectively evaluated the merits of the case, the potential weakness, and the likelihood of success at trial to develop reasonable settlement demands and strategies for the negotiations, and assisted in drafting several settlement and mediation statements and other submissions. We successfully negotiated both with counsel for Defendants and with Lowey Dannenberg, counsel for the "Separately Represented End Payors" (SREPs) that opted out of the class and later opted back in.

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 581.3 | $324,459.00 |
| Court Appearances and Preparation | 294.6 | $168,301.50 |
| Initial Complaint | 7.4 | $3,774.00 |
| Amended Complaints | 42.1 | $21,711.00 |
| Motions to Dismiss | 64.1 | $32,787.00 |
| Discovery of Defendants: Written Discovery | 70.7 | $39,128.50 |
| Document Review (including preparation of deposition kits) | 22.5 | $12,213.00 |
| Depositions of Defendants (including preparation) | 355.6 | $203,735.50 |
| Discovery of End-Payor Plaintiffs | 691.9 | $379,718.00 |
| Discovery of Non-Parties | 88.0 | $49,888.50 |
| Discovery - Other (ESI, privilege protocol, expert discovery stipulation) | 9.4 | $5,039.50 |
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 324.0 | $178,218.50 |
| Appeals (other than Rule 23(f) Petition) | 4.4 | $2,590.00 |
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 507.6 | $292,304.50 |
| Motion Practice (Miscellaneous) | 66.8 | $40,433.50 |
| Merits Expert Reports | 51.9 | $30,760.00 |
| Summary Judgment and Dauberts | 270.4 | $166,130.00 |
| Trial Preparation | 583.2 | $363,072.00 |
| Settlement | 178.2 | $111,141.00 |
| **Totals:** | **4,214.1** | **$2,425,405.00** |

21.    **Donna M. Evans (1989)**:  Ms. Evans is Of Counsel at Cohen Milstein.  She was involved in all aspects of the *Lidoderm* litigation and served as a senior member of EPPs providing substantive and strategic input.  Ms. Evans has nearly 30 years of legal experience; has served as trial counsel on many large complex litigation matters; and has specific pharmaceutical and biomedical experience including representation of defendants, direct purchaser plaintiffs, end-payor plaintiffs, prescription drug manufacturers, biomedical device companies and inventors, private medical

9

DECLARATION OF SHARON K. ROBERTSON IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

1   consulting services, and global pharmaceutical companies in antitrust, IP, and other civil disputes.  Ms.

2   Evans participated in the *In re Nexium* trial before the Hon. William G. Young in the U.S. District

3   Court for the District of Massachusetts.

4       22.    Throughout the litigation, Ms. Evans was active in the discovery process.  Ms. Evans'

5   work on this case began when she was associated with the law firm of Hagens Berman where she

6   negotiated during the preliminary stages of this case, on behalf of DPPs, initial discovery issues,

7   including search terms, discovery protocols, and document custodians and handled document

8   production disputes.  She was heavily involved in briefing and assisting in preparing counsel for

9   argument in relation to Plaintiffs' successful "*Kovel*" discovery motion seeking the production of pre-

10   clearance letters authored by Deloitte.

11       23.    Ms. Evans joined Cohen Milstein in September 2015.  She drafted, researched, and/or

12   contributed comments to a substantial number of the legal briefs on behalf of EPPs and all Plaintiffs.

13   She was, for example, the primary drafter of Plaintiffs' *Daubert* motion concerning John Fritz at both

14   class certification and summary judgment.  Ms. Evans drafted significant portions of Plaintiffs'

15   opposition to Defendants' *Daubert* motion concerning Einar Elhauge, as well as provided substantive

16   input—research, record fact review, and drafting comments—for Plaintiffs' *Daubert* motion

17   concerning Robert Navarro and Plaintiffs' opposition to Defendants' *Daubert* motion concerning Paul

18   Debree.  Ms. Evans also provided research for, and revisions to Plaintiffs' responses to Defendants'

19   Writ of Mandamus petitions, EPPs' brief in support of their motion for class certification, Plaintiffs'

20   opposition to Defendants' motion to disqualify Plaintiffs' counsel, and Plaintiffs' long notice form.

21   Throughout the case, Ms. Evans performed extensive research on complex legal issues that needed

22   senior experience both substantively and strategically.

23       24.    Ms. Evans had substantial responsibilities during fact discovery.  She served as the lead

24   Plaintiffs' counsel in conducting the deposition of Defendants' witness Roberto Cuca, the first witness

25   to be deposed in this case.  Ms. Evans also conducted portions of the depositions of fact witnesses

26   Andrew Gesek, David Holveck, Brian Lortie, Matthew Riviello and Danial Rudio.  In addition, she

27   drafted questions and portions of outlines and selected some of the exhibits for, and attended on behalf

28   of EPPs, the depositions of Defendants' fact witnesses Guy Donatiello and Vince Orlando.  Ms. Evans

10

DECLARATION OF SHARON K. ROBERTSON IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

1   also participated in the preparation and defense of the depositions of EPP Iron Workers District

2   Counsel of New England Welfare Fund designee, Veronica Dyer, and City of Providence designee,

3   Margaret Wingate.

4       25.     Ms. Evans was also active in expert discovery.  She was the lead Plaintiffs' counsel

5   conducting the "damages" deposition of Defendants' expert Gregory Bell.  She assisted in preparing

6   deposition questions and selecting deposition exhibits for Defendants' experts Christopher Gilligan,

7   Robert Frank, and John Fritz, and attended the Gilligan, Frank, and Fritz depositions on behalf of EPPs.

8   In addition, Ms. Evans contributed her experience with patents by reviewing and editing expert reports

9   of Kenneth Miller, Kishore Shah, and Martin Adelman.  She also analyzed the reports of Defendants'

10  experts Majella Lane, and Robert Frank in order to assist with rebuttal to those reports.

11      26.     Additionally, Ms. Evans provided support leading up to trial.  She drafted a substantial

12  portion of the Pretrial Memorandum, including Plaintiffs' Statement of the Action (Substance of the

13  Action and Relief Sought), Plaintiffs' Statement of the Factual Basis for the Action (Joint Stipulated

14  Facts, Plaintiffs' Statement of Disputed Factual Issues and Procedural Stipulations), and Trial

15  Alternatives and Options.  In preparation for trial, Ms. Evans also handled deposition designations for

16  many of Defendant Endo's trial witnesses and assisted in drafting witness examinations.  Ms. Evans

17  also performed extensive research and prepared *voir dire* questions.

18      27.     Logistically, Ms. Evans served for a portion of the litigation as the primary drafter of the

19  monthly Case Management Conference Agenda for Plaintiffs, and coordinated the parties' joint

20  submission.

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 199.9 | $149,280.50 |
| Court Appearances and Preparation | 154.4 | $114,410.00 |
| Discovery of Defendants: Written Discovery | 13.0 | $9,685.00 |
| Document Review (including preparation of deposition kits) | 10.5 | $3,675.00 |
| Depositions of Defendants (including preparation) | 664.1 | $488,944.50 |
| Discovery of End-Payor Plaintiffs | 123.1 | $90,943.00 |
| Discovery of Non-Parties | 80.6 | $59,028.50 |
| Discovery - Other (ESI, privilege protocol, expert discovery stipulation) | 92.6 | $68,892.00 |

DECLARATION OF SHARON K. ROBERTSON IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

| | Hours | Lodestar |
|---|---|---|
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 324.2 | $233,691.00 |
| Appeals (other than Rule 23(f) Petition) | 8.7 | $6,559.50 |
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 263.4 | $196,509.00 |
| Motion Practice (Miscellaneous) | 96.7 | $72,486.50 |
| Merits Expert Reports | 124.7 | $95,685.50 |
| Summary Judgment and Dauberts | 449.0 | $347,916.50 |
| Trial Preparation | 366.6 | $285,822.00 |
| Settlement | 9.9 | $7,672.50 |
| **Totals:** | **2981.4** | **$2,231,201.00** |

28. **J. Douglas Richards (1981)**: Mr. Richards is a Partner at Cohen Milstein and the former co-chair of its antitrust practice group. Mr. Richards assisted in guiding EPPs' litigation strategy, including by reviewing and revising EPPs' brief opposing Defendants' motion to dismiss and conferring regarding EPPs' strategies for Defendants' depositions and for opposing Defendants' disqualification motion.

29. Mr. Richard's experience was especially valuable, as he has been appointed co-lead counsel in numerous large antitrust class actions and has argued dozens of appeals, including several that have helped shape the landscape of antitrust law, including *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) before both the Second Circuit and the United States Supreme Court, and Second Circuit cases like *In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370 (2d Cir. 2005), *cert. denied*, 127 S. Ct. 3001 (2007), and *Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir. 2002). Mr. Richards also served as Deputy General Counsel of the Commodity Futures Trading Commission ("CFTC") from 1997 to 2000. He obtained a law degree from Harvard Law School in 1981.

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 68.7 | $58,345.50 |
| Amended Complaints | 10.5 | $8,817.50 |
| Motions to Dismiss | 16.5 | $13,807.50 |
| Depositions of Defendants (including preparation) | 46.5 | $39,772.50 |
| Discovery - Other (ESI, privilege protocol, expert discovery stipulation) | 0.5 | $417.50 |
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 18.0 | $15,390.00 |
| **Totals:** | **160.7** | **$136,550.50** |

30.     **Robert A. Braun (2011)**: Mr. Braun is an associate in Cohen Milstein's antitrust practice group.  He provided extensive assistance in the lead-up to trial, including by assisting in the drafting of *voir dire* questions and other pretrial materials, assisting with pre-trial deposition designations for several witnesses, and working with Ms. Robertson in drafting trial examinations for EPP expert Luis Molina and former Endo employee Alan Levin.  Mr. Braun also developed and executed EPPs' strategy for addressing the death of class representative Letizia Gallotto on the eve of trial, helping to preserve EPPs' claims on behalf of Massachusetts purchasers.

31.     Mr. Braun has been recognized by Super Lawyers as a Rising Star in the areas of Antitrust Litigation and Class Action/Mass Torts.  Prior to joining Cohen Milstein, Mr. Braun served as a law clerk for Hon. Carolyn Dineen King of the U.S. Court of Appeals for the Fifth Circuit, and for Hon. Lee H. Rosenthal of the U.S. District Court for the Southern District of Texas.  He earned his J.D. from Yale Law School in 2011 and a B.A. from Princeton University, where he graduated *summa cum laude*.

| Category | Hours | Lodestar |
|---|---|---|
| Court Appearances and Preparation | 2.5 | $1,325.00 |
| Motion Practice (Miscellaneous) | 30.3 | $16,019.00 |
| Summary Judgment and Dauberts | 1.1 | $539.00 |
| Trial Preparation | 158.6 | $80,910.00 |
| Settlement | 0.3 | $159.00 |
| **Totals:** | **192.8** | **$98,952.00** |

32.     **Matthew W. Ruan (2003):** At the time that he assisted with this litigation, Mr. Ruan was a contract attorney in Cohen Milstein's antitrust practice group, where he is now Special Counsel.  Mr. Ruan, who has extensive experience with antitrust litigative, provided valuable research used for Cohen Milstein's original complaint.  Mr. Ruan earned a J.D. from University of Michigan Law School in 2003.

| Category | Hours | Lodestar |
|---|---|---|
| Initial Complaint | 12.5 | $6,250.00 |
| **Totals:** | **12.5** | **$6,250.00** |

33.     **Hiba Hafiz (2010):** Ms. Hafiz is a former associate at Cohen Milstein.  She is experienced in litigating pay-for-delay cases and participated in the *In re Nexium* trial before the Hon. William G. Young in the U.S. District Court for the District of Massachusetts.  Ms. Hafiz played a key role in managing discovery from the class representatives early in the case, including by drafting

DECLARATION OF SHARON K. ROBERTSON IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

responses and objections to Defendants' interrogatories and requests for production, and managing the production of the class representatives' documents and data.  Ms. Hafiz also assisted with research for and the drafting of EPPs' Consolidated Amended Complaint and in drafting and editing EPPs' opposition to Defendants' motion to dismiss.  In addition, Ms. Hafiz assisted in managing the review of Defendants' document productions.

34.     Ms. Hafiz earned a law degree from Columbia University School of Law in 2010, and a Ph.D. in Comparative Literature from Yale University in 2007.  Following law school, she clerked for Hon. Juan Torruella of the U.S. Court of Appeals for the First Circuit and Hon. Jose L. Linares of the U.S. District Court for the District of New Jersey.  Ms. Hafiz is currently an Assistant Professor at Boston College Law School, where her research interests include antitrust and labor law.

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 20.6 | $8,263.00 |
| Amended Complaints | 12.3 | $5,104.50 |
| Motions to Dismiss | 17.2 | $7,138.00 |
| Discovery of Defendants: Written Discovery | 2.5 | $1,100.00 |
| Document Review (including preparation of deposition kits) | 35.7 | $12,495.00 |
| Depositions of Defendants (including preparation) | 0.3 | $132.00 |
| Discovery of End-Payor Plaintiffs | 114.2 | $46,593.00 |
| **Totals:** | **202.8** | **$80,825.50** |

35.     **Scott Levy (2005):** Mr. Levy is a former Special Counsel at Cohen Milstein.  Mr. Levy was the lead questioner in the fact deposition of Joseph Dos Santos, represented the End-Payor Class at the depositions of Steven Cooper and Brian Anderson, and assisted Ms. Evans in preparing for the fact deposition of David Holveck.  In addition, Mr. Levy drafted responses to Defendants' second set of document requests, researched and drafted correspondence challenging the privilege designations of certain documents from Arjan Singh's files, and performed other significant case research.  Mr. Levy obtained a J.D. from Fordham University School of Law in 2005.

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 49.8 | $28,884.00 |
| Discovery of Defendants: Written Discovery | 7.0 | $4,060.00 |
| Depositions of Defendants (including preparation) | 146.5 | $84,970.00 |
| Discovery of End-Payor Plaintiffs | 6.0 | $3,480.00 |

| | | |
|---|---|---|
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 49.8 | $28,884.00 |
| **Totals:** | **259.1** | **$150,278.00** |

36.     **Jay Adkins (2011):** Mr. Adkins is a former contract attorney who played a central role in reviewing Defendants' document productions and summarizing key documents that he located.  Mr. Adkins also assisted in collecting and analyzing documents in preparation for the fact depositions of Andrew Gesek and Jason Reckner, among others, and for Ms. Robertson's deposition of Defendants' expert Prof. Robert Navarro.  In addition to these duties, Mr. Adkins performed significant research into the case law governing attorney disqualification and privilege log requirements that was used in Plaintiffs' briefing on these issues, and reviewed, drafted, and edited portions of the class representatives' interrogatory responses, including in response to Defendants' contention interrogatories.  Mr. Adkins earned a law degree from New York University School of Law in 2011.

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 4.6 | $1,150.00 |
| Document Review (including preparation of deposition kits) | 2152.0 | $538,000.00 |
| Depositions of Defendants (including preparation) | 61 | $15,250.00 |
| Discovery of End-Payor Plaintiffs | 79.7 | $19,925.00 |
| Discovery - Other (ESI, privilege protocol, expert discovery stipulation) | 18.6 | $4,650.00 |
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 192.5 | $48,125.00 |
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 38.6 | $9,650.00 |
| **Totals:** | **2547.0** | **$636,750.00** |

37.     **Olga Fort (2004):** Ms. Fort was a contract attorney who played a central role in reviewing Defendants' document productions (primarily Endo) and summarizing key documents that she located.  Ms. Fort also assisted in collecting and analyzing documents in preparation for fact depositions, including for the depositions of Alan Levin and Caroline Manogue.  Ms. Fort earned a law degree from Fordham University School of Law in 2004.

| Category | Hours | Lodestar |
|---|---|---|
| Document Review (including preparation of deposition kits) | 1,587.5 | $555,625.00 |

15

| | Totals: | 1,587.5 | $555,625.00 |
|---|---|---|---|

38.     **Meghan Gentile (2008):** Ms. Gentile was a staff attorney at Cohen Milstein, who primarily reviewed Defendants' document productions. She obtained a J.D. from Georgetown University Law Center in 2008.

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 5.4 | $1,873.00 |
| Document Review (including preparation of deposition kits) | 150.4 | $51,888.00 |
| Totals: | 155.8 | $53,761.00 |

39.     **Alicia Gutiérrez (2002):** Ms. Gutiérrez is Discovery Counsel at Cohen Milstein, who primarily reviewed Defendants' document productions and drafted summaries of key documents. Ms. Gutiérrez also assisted Ms. Robertson in preparing EPPs' mediation statement.  She earned a law degree from Stanford Law School in 2002.

| Category | Hours | Lodestar |
|---|---|---|
| Document Review (including preparation of deposition kits) | 598.6 | $209,510.00 |
| Settlement | 0.8 | $380.00 |
| Totals: | 599.4 | $209,890.00 |

40.     **Paralegals – Jonathan Abetti, Jihoon Li, Michael McBride, Carol Brotstein, Ali Szemanski, Jeannette Sanchez, Maya Campbell, Edward Mogck, Alex Noronha, Jay Clayton, and Andrew Twigg** are or were paralegals working at Cohen Milstein at various points in the litigation and primarily assisted with reviewing documents and preparing attorneys for depositions and for trial.

41.     Mr. Abetti was the primary Cohen Milstein paralegal assigned to this case.  He played a significant role in organizing and preparing for production the class representatives' responsive documents and written discovery responses, and in assisting Ms. Robertson, Ms. Evans, and other members of the litigation team in defending the class representatives' depositions.  He further assisted Ms. Robertson and Ms. Evans in preparing for the fact depositions of Alan Levin, Roberto Cuca, Andrew Gesek, Brian Lortie, David Holveck, Matt Riviello, Daniel Rudio, and Arjan Singh, among others.  Mr. Abetti also reviewed, edited, and cite-checked multiple letters and briefs, including the *Daubert* opposition briefs of Plaintiffs' expert Prof. Einer Elhauge and the *Daubert* briefs seeking to exclude the opinions of Defendants' experts Mr. John Fritz, and Dr. Robert Navarro.  In addition, Mr.

Abetti assisted the trial team's preparations, including by organizing deposition designations and objections and by collecting and arranging potential exhibits for the trial witnesses that Ms. Robertson was preparing to examine.

42.     Ali Szemanski assisted in organizing and preparing for production the class representatives' documents and written discovery responses.  She also assisted counsel in preparing for the fact depositions of Alan Levin and Arjan Singh, among others.

43.     Jihoon Li assisted counsel in preparing to defend the deposition of class representative Local 49 and in preparing for several fact depositions, including Brian Anderson, Arjan Singh, and Alan Levin.

44.     Jeanette Sanchez similarly assisted counsel in preparing for the fact deposition of Roberto Cuca.

45.     Andrew Twigg performed research and other assistance for counsel in preparation for the filing of the Consolidated Amended Complaint.

46.     Michael McBride and Edward Mogck assisted counsel with Plaintiffs' discovery, including by organizing and preparing for production the class representatives' responsive documents.

47.     Maya Campbell and Jay Clayton assisted counsel by reviewing, editing, and cite-checking briefs.

48.     Carol Brotstein assisted counsel in preparing for depositions.

### Jonathan Abetti

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 14.6 | $4,065.00 |
| Court Appearances and Preparation | 3.5 | $1,050.00 |
| Document Review (including preparation of deposition kits) | 7.0 | $1,820.00 |
| Depositions of Defendants (including preparation) | 61.6 | $16,596.00 |
| Discovery of End-Payor Plaintiffs | 199.1 | $53,252.00 |
| Discovery of Non-Parties | 0.5 | $140.00 |
| Discovery - Other (ESI, privilege protocol, expert discovery stipulation) | 7.5 | $2,100.00 |
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 10.0 | $2,780.00 |
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 55.3 | $15,494.00 |

| Category | Hours | Lodestar |
|---|---|---|
| Motion Practice (Miscellaneous) | 4.9 | $1,339.00 |
| Merits Expert Reports | 5.0 | $1,500.00 |
| Summary Judgment and Dauberts | 53.8 | $15,602.00 |
| Trial Preparation | 96.3 | $28,079.00 |
| **Totals:** | **519.1** | **$143,817.00** |

### Jihoon Lee

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 2.0 | $540.00 |
| Document Review (including preparation of deposition kits) | 14.0 | $3,880.00 |
| Motion Practice (Miscellaneous) | 0.5 | $135.00 |
| **Totals:** | **16.5** | **$4,555.00** |

### Michael McBride

| Category | Hours | Lodestar |
|---|---|---|
| Discovery of End-Payor Plaintiffs | 33.0 | $8,683.00 |
| **Totals:** | **33.0** | **$8,683.00** |

### Carol Brotstein

| Category | Hours | Lodestar |
|---|---|---|
| Depositions of Defendants (including preparation) | 1.5 | $405.00 |
| **Totals:** | **1.5** | **$405.00** |

### Ali Szemanski

| Category | Hours | Lodestar |
|---|---|---|
| Discovery of Defendants: Written Discovery | 1.3 | $351.00 |
| Depositions of Defendants (including preparation) | 26.7 | $7,209.00 |
| Discovery of End-Payor Plaintiffs | 29.0 | $7,830.00 |
| Motion Practice (Miscellaneous) | 1.8 | $486.00 |
| **Totals:** | **58.8** | **$15,876.00** |

### Jeannette Sanchez

| Category | Hours | Lodestar |
|---|---|---|
| Depositions of Defendants (including preparation) | 15.5 | $4,185.00 |
| Discovery of End-Payor Plaintiffs | 2.5 | $675.00 |
| **Totals:** | **18.0** | **$4,860.00** |

### Maya Campbell

| Category | Hours | Lodestar |
|---|---|---|
| Motion Practice (Miscellaneous) | 18.0 | $5,110.00 |
| **Totals:** | **18.0** | **$5,110.00** |

### Edward Mogck

| Category | Hours | Lodestar |
|---|---|---|
| Discovery of End-Payor Plaintiffs | 3.0 | $780.00 |

18

| | Totals: | 3.0 | $780.00 |
|---|---|---|---|

### Alex Noronha

| Category | Hours | Lodestar |
|---|---|---|
| Document Review (including preparation of deposition kits) | 0.5 | $135.00 |
| Discovery of End-Payor Plaintiffs | 1.3 | $351.00 |
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 3.5 | $945.00 |
| Totals: | 5.3 | $1,431.00 |

### Jay Clayton

| Category | Hours | Lodestar |
|---|---|---|
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 1.8 | $504.00 |
| Merits Expert Reports | 0.3 | $81.00 |
| Totals: | 2.1 | $585.00 |

### Andrew Twigg

| Category | Hours | Lodestar |
|---|---|---|
| Amended Complaints | 5.6 | $1,400.00 |
| Totals: | 5.6 | $1,400.00 |

## III.    HOURLY RATES

49.    Other than work that was subject to a case-wide rate cap, the historical hourly rates submitted by Cohen Milstein in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

50.    Cohen Milstein's hourly rates, including the rates for the specific timekeepers that worked on this matter, have been approved in the following matters:

- *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*, 1:14-md-2503-DJC (D. Mass.), Order Awarding Attorneys' Fees, ECF No. 1159-2 (July 19, 2018) (awarding the requested attorneys' fees after finding that "the lodestar cross-check suggests that the request for attorneys' fees is reasonable"); Decl. of Sharon K. Robertson, ECF No. 1176 (May 30, 2018) (reflecting Cohen Milstein hourly rates of $885-$620 for partners— including $645 for Sharon Robertson—$440 for associate Hiba Hafiz, and $290-$250 for paralegals);

- *In re Domestic Drywall Antitrust Litig.*, 2:13-md-02437 (E.D. Pa.), Mem. Order, ECF No. 767 (July 17, 2018) (approving fees and finding that "the rates claimed are well within the range of rates charged by counsel in this district in complex cases"); Ex. A. to Decl. of David A. Young, ECF No. 713-3 (Apr. 9, 2018) (reflecting Cohen Milstein

hourly rates of $970-$515 for partners, $530-$325 for associates, and $290-$240 for paralegals and staff);

- *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (finding that the hourly rates of Cohen Milstein's antitrust practice group were "fair and reasonable," including attorney rates of $275 to $750, rates for senior attorneys of $870 to $1,200, and paralegal rates up to $290);

- *In Re Broadcom Corp. Stockholder Litig.*, No. 15-cv-00979-JVS-PJWx (C.D. Cal. Feb. 27, 2017) (finding "that the [Cohen Milstein's] attorneys are experienced and successful litigators" and that "other courts have recently approved the firm's proposed rates," and concluding that the 2017 "rates are also reasonable for the market"); Decl. of Joshua A. Devore, ECF No. 115 (reflecting Cohen Milstein hourly rates of $945-$685 for partners, $530 for associates, and $280 for paralegals); and

- *In Re: Cast Iron Soil Pipe and Fittings Antitrust Litig.*, No. 1:14-md-2508-HSMCHS, Order Granting Direct Purchaser Plaintiffs' Motion for an Award of Attorney's Fees ECF No. 503 (E.D. Tenn. May 26, 2017) (granting attorneys' fees of one-third of the settlement fund after considering "the value of [counsel's] services on an hourly basis"); Decl. of Kit A. Pierson, ECF No. ECF No. 492-4, Ex. 2 (reflecting Cohen Milstein hourly rates of $900-$480 for partners, $530-$375 for associates, and $280-$260 for paralegals).

51.     Time spent performing document review has been capped at $350 per hour or the actual billable rate, whichever is lower, regardless of the reviewing attorney's typical billing rate.

## IV.     LITIGATION EXPENSES

52.     Below is an itemized list of the unreimbursed expenses Cohen Milstein incurred during the prosecution of this litigation.  These expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
|---|---|
| Courts Fees (filing, etc.) | $279.00 |
| Computer Research (Lexis, Westlaw, PACER, etc.) | $9,483.34 |
| Photocopies – In-House | $113.40 |
| Photocopies – Outside | $2445.04 |
| Postage, Courier, Messenger | $3,427.40 |
| Telephone / Facsimile | $1,334.09 |
| Transcripts (hearings, depositions, etc.) | $2,047.56 |
| Travel (airfare, ground transportation) | $23,615.58 |
| Travel (meals and lodging) | $19,433.29 |
| **Total:** | **$62,178.70** |
| **Contributions to the Litigation Fund:** | **$620,000.00** |

20

53.     The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead.

54.     The firm's travel expenses were largely for Ms. Robertson and Ms. Evans to travel to fact and expert witness depositions, and for Ms. Robertson to travel to attend hearings.

55.     Cohen Milstein does not intend to seek payment for work, lodestar, or expenses related to this litigation from the Settlement Fund other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 31st day of July 2018, at New York, New York.

*/s/ Sharon K. Robertson*
Sharon K. Robertson

EXHIBIT 2

1   Daniel C. Girard (SBN 114826)
2   Dena C. Sharp (SBN 245869)
    Scott Grzenczyk (SBN 279309)
3   **GIRARD GIBBS LLP**
    601 California Street, 14th Floor
4   San Francisco, CA 94108
    Telephone: (415) 981-4800
5   Facsimile: (415) 981-4846
6   Email: dcg@girardgibbs.com
    Email: chc@girardgibbs.com
7   Email: smg@girardgibbs.com

8

9

10

11

12                    **UNITED STATES DISTRICT COURT**

13                   **NORTHERN DISTRICT OF CALIFORNIA**

14   | In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
15   | --- | --- |

16   THIS DOCUMENT RELATES TO:

17   ALL END-PAYOR ACTIONS

**DECLARATION OF DENA C. SHARP
IN SUPPORT OF END-PAYOR CLASS
COUNSEL'S MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND
SERVICE AWARDS**

18

19

20

21

22

23

24

25

26

27

28

I, Dena C. Sharp, hereby declare:

1. I am partner at Girard Gibbs LLP, counsel for plaintiff International Union of Operating Engineers Local 132 Health and Welfare Fund. I serve as Co-Lead Counsel for the End-Payor Class in this matter and submit this declaration in support of End-Payor Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

## I.    FIRM BACKGROUND

2. Girard Gibbs LLP has more than 30 attorneys, a full team of non-lawyer professionals, and a longstanding record of success in complex, multidistrict class actions. Founded in 1995, Girard Gibbs is distinguished as a Tier 1 law firm for class action litigation in the "Best Law Firms" lists, an annual survey published in U.S. News & World Report. The National Law Journal has named Girard Gibbs to its "Elite Trial Lawyers List" and "Plaintiffs' Hot List," which recognize top plaintiffs' firms for recent high-profile victories.

3. Girard Gibbs has served in leadership capacities in several major antitrust matters, including as liaison counsel for direct purchasers in the landmark *In re TFT-LCD (Flat Panel) Antitrust Litigation*. The firm currently serves as co-lead counsel in the *In re Restasis Antitrust Litigation,* on the End-Payer Plaintiffs' Steering Committee in the *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, and on the executive committee in *In re Niaspan Antitrust Litigation*. The firm also served on the executive committees in two recently resolved antitrust cases, *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation* and *In re Aggrenox Antitrust Litigation*.

## II.    OVERVIEW OF WORK PERFORMED BY GIRARD GIBBS

### A.    Work Performed by the Firm for the Benefit of the End-Payor Class

4. The Court appointed Girard Gibbs as Interim Co-Lead Counsel for the End-Payor Class on May 23, 2014 (ECF 63), and as Co-Lead Counsel on February 21, 2017 in connection with the Court's certification of the End-Payor Class (ECF 670).

5. Girard Gibbs was active in all major aspects of the litigation. For example, I served as the spokesperson for all Plaintiffs at the Court's monthly status conferences and frequently argued motions on behalf of EPPs and all Plaintiffs. Girard Gibbs was also responsible for overall case

1

DECLARATION OF DENA C. SHARP IN SUPPORT OF END-PAYOR CLASS COUNSEL'S MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

management and coordination of DPPs' and EPPs' discovery efforts. The firm was active in all aspects of discovery, and was primarily responsible for Plaintiffs' discovery of Teikoku—including the review of Japanese language documents—and litigating the many related privilege disputes. Defendants moved for mandamus relief from the Ninth Circuit on two of the Court's privilege rulings, and Girard Gibbs prepared the responses on behalf of all Plaintiffs.

6.       Our firm also prepared key legal briefs on behalf of EPPs and all Plaintiffs, including taking the lead on Plaintiffs' opposition to Defendants' disqualification motion, EPPs' class certification motion and reply, Plaintiffs' opposition to Defendants' summary judgment motion on causation issues, EPPs' motion for entry of a set-aside order, Plaintiffs' trial structure brief, EPPs' settlement agreements, and EPPs' motions for preliminary and final approval. These motions raised complex factual and legal issues—many of which were matters of first impression in this Circuit—and required considerable consultation and collaboration with Ms. Steiner and Ms. Robertson, as well as co-counsel for the DPPs and retailer plaintiffs.

7.       The firm also played a central role in Plaintiffs' trial preparations. As a member of Plaintiffs' joint trial team, I had spent extensive time planning for trial and was prepared to take the lead on jury selection, to deliver opening and closing statements, and to conduct the examinations of several key witnesses at trial. Scott Grzenczyk—a senior associate at the firm—prepared Plaintiffs' pretrial exchanges, including jury instructions and disputed legal issues, and supporting legal arguments. He led Plaintiffs' meet and confer efforts with Defendants regarding the parties' pretrial exchanges and was responsible for revising Plaintiffs' pretrial submissions in light of intervening Court rulings.

8.       Overall, the firm played a central role in most of the key victories that led to EPPs' unprecedented settlement and the successful resolution of this case for all Plaintiffs.

**B.       Lodestar Summary**

9.       In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, Girard Gibbs's attorneys and staff kept contemporaneous records of the time they spent on this litigation. Co-Lead Counsel agreed to conduct a peer review of one another's detailed time entries, as well as the entries of non-lead firms. My office and other Co-Lead

Counsel have reviewed my firm's daily time records and exercised billing judgment to eliminate inefficiency and duplication. My firm is prepared to submit our time records for *in camera* review if requested by the Court.

      10.     From inception through July 10, 2018, our firm spent a total of 12,146.2 hours prosecuting this litigation, with a corresponding lodestar of $6,237,297.00. The lodestar does not include any time spent on proceedings before the Judicial Panel on Multidistrict Litigation or related to the appointment of class counsel. Below is a summary of the individuals who worked on this matter for Girard Gibbs, their roles (Partner, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Later in this declaration we detail the specific work performed by each individual.

| Attorney | Role | Total Hours | Billing Rate | Lodestar |
|---|---|---|---|---|
| Daniel C. Girard | Partner | 62.4 | $845.00 | $52,728.00 |
| | Partner | 13.2 | $875.00 | $11,550.00 |
| | Partner | 163.7 | $900.00 | $147,330.00 |
| | Partner | 34.3 | $925.00 | $31,727.50 |
| Dena C. Sharp | Partner | 847.2 | $565.00 | $478,668.00 |
| | Partner | 1387.1 | $620.00 | $860,002.00 |
| | Partner | 1826.7 | $665.00 | $1,214,755.50 |
| | Partner | 238.7 | $695.00 | $165,896.50 |
| Jordan Elias | Partner | 63.2 | $615.00 | $38,868.00 |
| | Partner | 172.0 | $695.00 | $119,540.00 |
| Scott M. Grzenczyk | Associate | 33.6 | $350.00 | $11,760.00 |
| | Associate | 778.9 | $385.00 | $299,876.50 |
| | Associate | 1002.7 | $470.00 | $471,269.00 |
| | Associate | 1917.9 | $525.00 | $1,006,897.50 |
| | Associate | 294.3 | $575.00 | $169,222.50 |
| Angelica M. Ornelas | Associate | 87.4 | $510.00 | $44,574.00 |
| Christopher Hikida | Associate | 267.5 | $425.00 | $113,687.50 |
| Emily H. Jenks | Associate | 784.3 | $400.00 | $313,720.00 |
| Michael C. Marchese | Associate | 10.4 | $350.00 | $3,640.00 |
| | Associate | 6.3 | $400.00 | $2,520.00 |
| Lesley Tepper | Associate | 5.8 | $350.00 | $2,030.00 |
| | Associate | 253.2 | $395.00 | $100,014.00 |
| Valerie Li | Associate | 719.3 | $350.00 | $251,755.00 |
| | Associate | 138.4 | $390.00 | $53,976.00 |
| Alynia Phillips | Associate | 25.5 | $390.00 | $9,945.00 |
| Jesse Gossett | Associate | 197.6 | $350.00 | $69,160.00 |
| Siobhan Innes-Gawn | Associate | 91.3 | $350.00 | $31,955.00 |
| Linh Vuong | Associate | 86.2 | $350.00 | $30,170.00 |
| Jacques Baritot | Associate | 13.3 | $350.00 | $4,655.00 |
| Sarah Norman | Litigation Assistant | 71.3 | $275.00 | $19,607.50 |
| Miriam Arghavani | Litigation Assistant | 15.9 | $190.00 | $3,021.00 |
| | Litigation Assistant | 12.6 | $225.00 | $2,835.00 |
| Jessica Cook | Litigation Assistant | 38.1 | $200.00 | $7,620.00 |
| Marjorie Gullick | Litigation Assistant | 291.0 | $190.00 | $55,290.00 |
| Navneet Mattu | Litigation Assistant | 194.9 | $190.00 | $37,031.00 |
| | Totals: | 12,146.2 | | $6,237,297.00 |

**C.      Staffing and Tasks Performed in This Matter**

11.      Girard Gibbs staffed this matter with attorneys and staff who performed tasks based on their skills, expertise, and experience. More than two-thirds of the firm's hours were billed by me and senior associate Scott Grzenczyk. I was responsible for overall case management and numerous oral arguments before the Court, and was prepared to take the lead in jury selection, present opening and closing statements, and examine several witnesses at trial. Mr. Grzenczyk oversaw several aspects of discovery and prepared initial drafts of many briefs filed by Plaintiffs. Other attorneys and professionals at our firm performed work commensurate with their skills and experience, as assigned by Ms. Sharp and Mr. Grzenczyk. More detailed information about the roles and contributions of each attorney (including their dates of law school graduation) and staff member is set forth below:

12.      **Dena C. Sharp (graduation year 2006)**: I am a partner at the firm, was responsible for all aspects of the firm's involvement in the case, and worked closely with Ms. Steiner and Ms. Robertson on the overall conduct of the litigation on behalf of EPPs.

13.      Throughout the litigation I played a central role in the management of the litigation on behalf of all Plaintiffs. I frequently liaised between EPPs and DPPs, and between Plaintiffs and Defendants. I also served as the primary spokesperson for all Plaintiffs at case management conferences. In this role I routinely edited and negotiated key documents like case management conference statements and took an active role in the negotiation of stipulated orders governing the conduct of case, including (early in the case) the parties' agreed protective order and ESI protocol. After the Court appointed Girard Gibbs as Co-Lead Counsel, I worked with co-counsel to prepare the EPPs' amended complaint and strategized with DPPs and EPPs on Plaintiffs' response to Defendants' motions to dismiss.

14.      Girard Gibbs was primarily responsible for drafting numerous key briefs on behalf of EPPs and Plaintiffs. While Mr. Grzenczyk frequently prepared initial drafts of briefs, he and I worked cooperatively on overall argument strategy to revise and finalize the briefs. I was the primary author of several briefs, including the briefing in support of key privilege motions. In addition to my drafting responsibilities, I argued many of the critical motions in the case, including Defendants' motion for summary judgment, Defendants' motion to disqualify Plaintiffs' counsel, the EPP-specific aspects of

Defendants' motion to dismiss, and EPPs' motion for preliminary approval. I also frequently argued privilege disputes on behalf of all Plaintiffs. Preparations on these motions required meetings and consultation with co-counsel and developing (and maintaining) intimate familiarity with the underlying cases and factual record.

15.     During discovery I actively participated in Plaintiffs' meet and confer efforts and our firm took primary responsibility for pursuing discovery from Teikoku, which I oversaw. In particular, I took the deposition of key Teikoku witnesses, including Paul Mori, Michael Speitz, Noriyuki Shimoda, and Francisco Bejar. Many of the most probative documents produced in the litigation—such as the "February 2 email" that spawned a lengthy privilege battle and mandamus petition to the Ninth Circuit—were produced by Teikoku. Mr. Mori and Mr. Speitz had wide-ranging areas of responsibility within Teikoku and, along with Mr. Shimoda, played active roles in conferring with Endo about the settlement agreement at the heart of the case. The preparation for those depositions needed to be equally comprehensive. In addition, the deposition of Mr. Shimoda, our opposing counsel in this case and Teikoku's outside counsel in the patent litigation that resulted in the alleged reverse payment agreement, posed unique challenges relating to attorney-client and work product protections, and required careful planning. Many of the Teikoku documents were also at the center of the parties' privilege disputes and at-issue waiver motions, and careful consideration was given to those issues during preparation.

16.     Discovery of all Defendants—and Teikoku in particular—raised complex and novel privilege issues, such as Plaintiffs' successful at-issue waiver dispute and numerous motions concerning the application of the common interest privilege to communications between Endo and Teikoku. I played a leading role in litigating privilege issues on behalf of all Plaintiffs. I wrote numerous letter briefs and motions, and presented argument on privilege issues to the Court. Disputes over two documents—one of which was the February 2 email—eventually led to Teikoku filing a motion for disqualification (which the Court denied). I took the lead, in close coordination with the DPPs, Ms. Steiner and Mr. Grzenczyk, in preparing the initial draft of Plaintiffs' opposition to the disqualification motion and Plaintiffs' cross-motion challenging Teikoku efforts to claw back the two documents in question. Unsurprisingly, given the stakes for our clients, the End-Payor Class, and the

6

1   progress of the litigation, litigating these issues took substantial time and resources, including the hiring

2   of an ethics expert to opine on the propriety of the disqualification motion.

3   17.   Shortly after the close of fact discovery in spring 2016, EPPs moved for class

4   certification. Under my supervision and in close consultation with co-counsel, attorneys at my firm,

5   including my partner Jordan Elias (who has extensive experience briefing class certification in antitrust

6   cases), prepared the motion for class certification. I was the primary author of portions of the legal

7   argument, and did extensive work shaping the entire brief in accordance with Co-Lead Counsel's

8   carefully developed, agreed strategy and input. Relatedly, Mr. Grzenczyk and I coordinated with and

9   assisted Ms. Steiner and Ms. Robertson in their firms' work with Plaintiffs' experts and preparation of

10   *Daubert* motions to exclude the testimony from Defendants' experts. I also worked extensively on

11   Plaintiffs' reply brief, which was primarily drafted by Mr. Grzenczyk with substantial input from Ms.

12   Steiner, Ms. Robertson, and Joshua Davis from the Joseph Saveri Law Firm (who ultimately argued the

13   motion). After the Court certified the End-Payor Class, I worked with Mr. Grzenczyk on the briefing,

14   strategy, and preparation for oral argument related to distribution of notice to the class and a motion to

15   establish a "set aside" contribution from any class member that opted out of the class and subsequently

16   resolved their claim based on work performed by EPP class counsel. The Court granted the set-aside

17   motion, which was only the second of its type ever in an antitrust case and has already served as a

18   template for similar motions in other antitrust cases.

19   18.   In the summer of 2017, I was heavily involved in preparing Plaintiff's opposition to

20   Defendants' motion for summary judgment and several *Daubert* motions. I conferred frequently with

21   counsel from DPPs, EPPs, and retailer plaintiffs regarding the strategy for Plaintiffs' opposition and the

22   overall structure of the brief. I worked closely with Mr. Grzenczyk and Peter Kohn of the DPPs to

23   develop a comprehensive outline of the arguments and with Mr. Grzenczyk to prepare the initial draft

24   of the brief. I reviewed and revised drafts that incorporated comments and analysis from our highly

25   experienced co-counsel. One issue that Plaintiffs discussed extensively was the application of the

26   California Supreme Court's holding in *In re Cipro Cases I & II*.

27   19.   As Plaintiffs prepared to go to trial, I worked closely with my Co-Lead Counsel, as well

28   as counsel for the DPPs, to develop and refine an order of proof. Ms. Steiner, Ms. Robertson, and I all

7

were slated to spend a substantial amount of trial time "on our feet," having divided responsibility for fact and expert witnesses at trial with counsel for the DPPs. As trial drew closer, the core trial team had in-person and weekly (sometimes more frequent) telephone meetings to determine the key evidentiary themes and issues, the order of proof, and cross-examination strategy. I planned take the lead in jury selection, to deliver opening and closing statements, and to examine several witnesses at trial. Along with counsel for the DPPs, I was responsible for ensuring that the negotiations and terms of the settlement agreement in question were adequately conveyed to the jury. In addition to preparing for live witness examinations, I was responsible for designating portions of the depositions of several witnesses (largely Teikoku employees and individuals involved in the settlement negotiations in the patent suit) and adjudicating the proposed designations of other deposition testimony for use at trial, a time-consuming exercise that implicated tactical decisions about our presentation at trial. In the weeks before trial I worked closely with the core trial team to develop a streamlined trial presentation. I also worked closely with Mr. Grzenczyk and EPPs' jury consultant to prepare scripts for jury theme testing that took place before trial.

20.     While the trial team prepared for trial, my partner Daniel Girard took the lead on settlement negotiations in close consultation with Ms. Steiner, Ms. Robertson, and me, and we were all active members of the settlement negotiation team. Along with Mr. Girard, we evaluated the merits of the case, the potential weaknesses, and the likelihood of success at trial to develop settlement demands and strategies for the negotiations. We negotiated with both counsel for Defendants and with Lowey Dannenberg, counsel for the "Separately Represented End Payors" (SREPs) that opted out of the class and later opted back in. I worked with Mr. Grzenczyk to prepare mediation and settlement conference submissions.

21.     The work I performed breaks down as follows:

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 279.1 | $164,580.50 |
| Court Appearances and Preparation | 529.1 | $332,061.50 |
| Initial Complaint | 5.5 | $3,107.50 |
| Amended Complaints | 93.2 | $52,658.00 |
| Motions to Dismiss | 94.2 | $53,223.00 |
| Discovery of Defendants: Written Discovery | 298.8 | $172,978.00 |

8

| Category | Hours | Lodestar |
|---|---|---|
| Document Review (including preparation of deposition kits) | 0.2 | $113.00 |
| Depositions of Defendants (including preparation) | 428.2 | $265,597.50 |
| Discovery of End-Payor Plaintiffs | 10.6 | $6,060.50 |
| Discovery of Non-Parties | 0.2 | $124.00 |
| Discovery - Other (ESI, privilege protocol, expert discovery stipulation) | 56.5 | $31,922.50 |
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 572.3 | $354,503.50 |
| Appeals (other than Rule 23(f) Petition) | 26.6 | $16,703.50 |
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 325.1 | $209,759.00 |
| Motion Practice (Miscellaneous) | 149.7 | $98,318.00 |
| Merits Expert Reports | 74.1 | $49,276.50 |
| Summary Judgment and Dauberts | 273.3 | $181,744.50 |
| Trial Preparation | 847.4 | $567,103.00 |
| Settlement | 235.6 | $159,488.00 |
| **Totals:** | **4299.7** | **$2,719,322.00** |

22. **Scott Grzenczyk (2011)**: Mr. Grzenczyk is a senior associate at the firm who was involved in all aspects of the litigation and served as the primary senior associate for the EPPs.

23. Throughout the litigation, one of Mr. Grzenczyk's primary responsibilities was drafting legal briefs on behalf of EPPs and all Plaintiffs. He was, for example, the primary drafter of (1) EPPs' reply in support of the motion for class certification, and the detailed fact section of the opening brief, (2) Plaintiffs' opposition to Defendants' motion for summary judgment on causation issues, (3) Plaintiffs' responses to both of Defendants' Ninth Circuit mandamus petitions (including Defendants' motion to stay); (4) EPPs' motion for approval of their plan to send notice of the Court's class certification decision to the End-Payor Class, (5) EPPs' motion for a set-aside order, (6) Plaintiffs' trial structure brief; (7) EPPs' mediation briefs and settlement conference statements; and (8) EPPs' settlement agreements and motions for preliminary and final approval of their settlements. Briefs drafted on behalf of all Plaintiffs required significant consultation with co-counsel and the incorporation of the perspectives of a diverse and experienced set of lawyers from the various plaintiff groups. Mr. Grzenczyk also contributed heavily to Plaintiffs' opposition to Defendants' omnibus motion to dismiss, Plaintiffs' opposition to Defendants' motion to disqualify, Plaintiffs' *Daubert* motions to exclude the opinions of Dr. Ulrike Schaede and Professor Michael Moffit, Plaintiffs'

9

1  motions *in limine*, and provided drafting assistance to numerous other motions throughout the case. He

2  also managed the logistical aspects of these motions on behalf of all Plaintiffs: preparing the filings,

3  sending notice to third-parties whose documents were cited in the motions, and preparing

4  administrative motions to seal.

5    24. Drafting EPPs' motion for class certification was a particularly challenging and time-

6  consuming task. District courts in a series of recent cases had denied certification to end-payor classes,

7  and Defendants in this case sought to take full advantage of those decisions. As many of the issues

8  raised in the motion were matters of first impression in the Ninth Circuit, Mr. Grzenczyk researched

9  pharmaceutical and indirect purchaser class certification decisions from across the country. In addition,

10  end-payor certification motions are highly complex and require analysis and argument related to,

11  among other things, tranches of allegedly uninjured class members, ascertainability, aggregate damages

12  modeling, and the relevance of insurance premiums to class certification. While co-counsel primarily

13  worked on several of these issues (Ms. Steiner, for example, worked with EPPs' economic expert and

14  Ms. Robertson with the pharmaceutical industry expert), Mr. Grzenczyk coordinated EPPs' overall

15  strategy for replying to Defendants' opposition. Mr. Grzenczyk also assisted Joshua Davis of the

16  Joseph Saveri Law Firm with preparation for oral argument. After the Court certified the End-Payor

17  Class, Mr. Grzenczyk obtained proposals from nationally recognized class action administration firms,

18  analyzed the proposals, and served as the point person with KCC, the firm EPPs' selected (and the

19  Court subsequently appointed) as their notice administrator.

20    25. Mr. Grzenczyk was also active in all phases of discovery. He played a central role in the

21  meet and confer process regarding Defendants' responses to Plaintiffs' discovery requests, including

22  analysis and negotiation of search terms and custodians for each Defendant. Mr. Grzenczyk provided

23  legal and factual research support for numerous privilege motions. He drafted portions of Plaintiffs'

24  opposition to Defendants' disqualification motion and, along with co-counsel, assembled the factual

25  record necessary to rebut Teikoku's arguments.

26    26. Mr. Grzenczyk drafted Plaintiffs' oppositions to Defendants' petitions to the Ninth

27  Circuit for mandamus review of two key privilege rulings—concerning a February 2 email produced by

28  Teikoku and at-issue waiver. He was also the primary drafter of EPPs' responses to Defendants'

contention interrogatories, a task that required thorough review of documentary evidence and deposition transcripts to identify the key evidence in support of Plaintiffs' claims and in opposition to Defendants' arguments.

27.    Another one of Mr. Grzenczyk's primary roles throughout the litigation was to coordinate EPPs' document review efforts. In that role he (1) created and implemented a document review strategy, (2) conducted a "quick look" review of Defendants' production to determine their general content, (3) allocated the document review among the designated reviewers, (4) tracked the progress of review generally and of specific projects, (5) analyzed the sufficiency of the productions and Defendants' responses to Plaintiffs' document requests, (6) participated in weekly conference calls with the review team to discuss progress and key issues, (7) conferred with reviewers on key substantive issues uncovered during the review, and (8) conferred with Defendants, co-counsel, and EPPs' economic expert regarding the production of transactional data. He also reviewed weekly memos prepared by document reviewers, assisted in the incorporation of the reviewer's findings into a comprehensive case overview memorandum, and prepared memoranda and summaries of documents concerning key issue for use in legal briefs and depositions. As a senior associate, Mr. Grzenczyk generally did not conduct document review himself.

28.    During the course of discovery Teikoku issued numerous clawback demands covering hundreds of documents. Mr. Grzenczyk was in charge of tracking these requests and ensuring that clawed back documents—and all work product referencing them—were sequestered or deleted. His in-depth knowledge of the types of documents that Teikoku clawed back and the privilege logs Teikoku provided proved useful in several discovery disputes.

29.    Mr. Grzenczyk was also in charge of the firm's efforts to respond to Defendants' discovery on behalf of plaintiff Local 132. He worked with Local 132 and co-counsel to collect and produce documents, respond to interrogatories and questions regarding Local 132's production, prepared Local 132 for deposition, and defended the deposition in Huntington, West Virginia. Mr. Grzenczyk also assisted in the preparation and defense of other EPPs.

30.    In the lead-up to trial, Mr. Grzenczyk was the EPP representative at the depositions of several of the parties' expert witnesses, including Professor Einer Elhauge, Dr. Dennis Carlton, and

Nick Fleischer. Before the depositions he worked with co-counsel to develop deposition outlines and strategy.

31.    After summary judgment and *Daubert* briefing was complete, Mr. Grzenczyk led Plaintiffs' efforts to prepare pretrial submissions. One of Mr. Grzenczyk's primary responsibilities in that role was the preparation of Plaintiffs' joint proposed jury instructions. Preparing the instructions required painstaking review of ABA and Ninth Circuit model instructions, instructions given in other cases, and the law regarding all of the key issues the parties would address at trial. The instructions went through several iterations and Mr. Grzenczyk worked closely with co-counsel to prepare the final versions. He also drafted other pretrial disclosures (such as Plaintiffs' proposed verdict form, disputed legal issues, and statement of undisputed facts), reviewed and analyzed Defendants' submissions, and conducted the meet and confers with Defendants on behalf of all Plaintiffs. Mr. Grzenczyk continued to update the jury instructions and other disclosures as the parties approached trial and the Court issued substantive rulings.

32.    Mr. Grzenczyk also attended numerous hearings at which he provided logistical and research support (by, for example, providing counsel presenting argument with citations to briefs and the record during hearings). He also successfully argued Plaintiffs' motion to exclude the testimony of Dr. Ulrike Schaede (and responded to Teikoku's subsequent unsuccessful sur-reply) and was prepared to present argument on numerous other occasions had the Court wished to address those issues, such as Plaintiff's pretrial submissions.

33.    The work Mr. Grzenczyk performed breaks down as follows:

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 105.0 | $46,557.00 |
| Court Appearances and Preparation | 182.8 | $94,133.00 |
| Initial Complaint | 12.9 | $4,966.50 |
| Amended Complaints | 79.6 | $30,646.00 |
| Motions to Dismiss | 98.0 | $37,730.00 |
| Discovery of Defendants: Written Discovery | 615.9 | $254,086.50 |
| Document Review (including preparation of deposition kits) | 22.3 | $10,034.00 |
| Depositions of Defendants (including preparation) | 58.4 | $25,218.00 |
| Discovery of End-Payor Plaintiffs | 232.3 | $104,029.50 |
| Discovery of Non-Parties | 10.5 | $4,935.00 |

| Category | Hours | Lodestar |
|---|---|---|
| Discovery - Other (ESI, privilege protocol, expert discovery stipulation) | 4.2 | $1,617.00 |
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 313.7 | $145,648.50 |
| Appeals (other than Rule 23(f) Petition) | 86.0 | $43,643.00 |
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 657.2 | $328,890.00 |
| Motion Practice (Miscellaneous) | 132.6 | $69,554.50 |
| Merits Expert Reports | 129.9 | $68,197.50 |
| Summary Judgment and Dauberts | 347.3 | $182,332.50 |
| Trial Preparation | 655.9 | $350,447.50 |
| Settlement | 282.9 | $156,359.50 |
| **Totals:** | **4027.4** | **$1,959,025.50** |

34.     **Daniel C. Girard (1984)**: Daniel Girard is the firm's founder and managing partner. He has over 30 years of legal experience and has led many complex and challenging cases. Chief Justice William H. Rehnquist appointed Mr. Girard to serve on the United States Judicial Conference's Advisory Committee on Civil Rules from 2004-2010; and Chief Justice John G. Roberts appointed Mr. Girard to his current post on the Standing Committee on Rules of Practice and Procedure.

35.     At the outset of the litigation (prior to the selection of interim lead counsel), Mr. Girard worked with Ms. Sharp and counsel in other end-payor cases to coordinate the plaintiffs' efforts at the initial case management conference. Throughout the litigation he provided input into key strategic decisions, including on Plaintiff's opposition to Defendants' motion to dismiss, privilege motions, class certification, and on matters pertaining to settlement.

36.     The majority of Mr. Girard's time in this case was spent negotiating the EPP settlements with counsel for each of the Defendants. In that role he communicated frequently with Co-Lead Counsel and with the parties' selected mediator (the Hon. Layn R. Phillips) and later with the Court-appointed mediator (Chief Magistrate Judge Joseph C. Spero) regarding the progress of settlement negotiations. Mr. Girard attended each mediation and settlement conference. Mr. Girard also negotiated extensively with the Separately Represented End-Payors (the large insurance companies that opted out and then rejoined the class for purposes of settlement) on agreement for them to opt back into the End-Payor Class and participate in settlement negotiations. Once the parties reached agreement in principle, Mr. Girard worked on preparing term sheets to memorialize the key terms of the settlements.

37.   The work Mr. Girard performed breaks down as follows:

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 46.3 | $39,570.50 |
| Court Appearances and Preparation | 23.2 | $19,991.00 |
| Initial Complaint | 0.4 | $338.00 |
| Amended Complaints | 4.8 | $4,056.00 |
| Motions to Dismiss | 4.0 | $3,380.00 |
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 6.1 | $5,347.50 |
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 7.7 | $6,870.00 |
| Motion Practice (Miscellaneous) | 2.3 | $2,070.00 |
| Summary Judgment and Dauberts | 0.3 | $270.00 |
| Trial Preparation | 12.6 | $11,507.50 |
| Settlement | 165.9 | $149,935.00 |
| **Totals:** | **273.6** | **$243,335.50** |

38.   **Jordan Elias (2003)**: Jordan Elias is a partner in the firm with experience in multiple pharmaceutical antitrust cases, including *In re Flonase Antitrust Litigation*, *In re Cipro Cases I & II*, and *In re Lidoderm Antitrust Litigation*. He has also authored briefs in numerous precedent-setting appeals. In this litigation Mr. Elias provided assisted in formulating the strategy for and drafting EPPs' class certification motion and reply. He was also the primary author of EPPs' response to Defendants' Rule 23(f) petition to appeal the Court's order certifying the End-Payor Class. He assisted in the drafting of Plaintiffs' opposition to Defendants' motion for summary judgment and *Daubert* motions directed at Professor Michael Moffit and Dr. Ulrike Shaede, among others.

39.   The work Mr. Elias performed breaks down as follows:

| Category | Hours | Lodestar |
|---|---|---|
| Court Appearances and Preparation | 3.6 | $2,502.00 |
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 0.6 | $369.00 |
| Appeals (other than Rule 23(f) Petition) | 1.3 | $799.50 |
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 115.7 | $75,507.50 |
| Motion Practice (Miscellaneous) | 30.6 | $21,267.00 |
| Summary Judgment and Dauberts | 83.4 | $57,963.00 |
| **Totals:** | **235.2** | **$158,408.00** |

40.     **Lesley Tepper (2010)**: Lesley Tepper was an associate with the firm during the early stages of the litigation. Ms. Tepper was heavily involved in EPPs' early discovery efforts. She drafted requests for the production of documents, conducted research in support of EPPs' early meet and confers with Defendants, coordinated the selection of a document review platform, identified the NDC codes applicable to EPPs' purchases, worked with co-counsel to develop a preliminary document review plan and oversee the indexing of Defendants' initial productions, monitored the status of EPPs' initial review, and reviewed documents herself.

41.     Ms. Tepper also performed a variety of additional tasks, including research in support of EPPs' amended complaint, assisting Mr. Girard and Ms. Sharp in preparing for the initial case management conference, and drafting pleadings (such as case management statements and stipulations). She also worked with co-counsel to develop a system for the collection of purchase data and worked directly with Local 132 to collect and produce their data and other documents.

42.     The work Ms. Tepper performed breaks down as follows:

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 118.9 | $46,965.50 |
| Court Appearances and Preparation | 14.8 | $5,846.00 |
| Amended Complaints | 17.9 | $7,070.50 |
| Motions to Dismiss | 12.4 | $4,898.00 |
| Discovery of Defendants: Written Discovery | 47.7 | $18,724.50 |
| Document Review (including preparation of deposition kits) | 19.1 | $7,423.00 |
| Discovery of End-Payor Plaintiffs | 22.6 | $8,904.50 |
| Discovery - Other (ESI, privilege protocol, expert discovery stipulation) | 5.6 | $2,212.00 |
| **Totals:** | **259.0** | **$102,044.00** |

43.     **Valerie Li (2014)**: Valerie Li was a junior associate at the firm who specialized in complex antitrust litigation. Ms. Li primarily conducted legal research, prepared initial drafts of privilege motions, cite-checked briefs, and assisted with privilege-related discovery issues.

44.     In support of EPPs' class certification motion, Ms. Li researched ascertainability standards in the Ninth Circuit and around the country, whether differences existed among the antitrust laws of various states, the use of aggregate damages in antitrust cases, and the need to exclude uninjured class members. During discovery Ms. Li worked closely with Ms. Sharp to review and

analyze Defendants' privilege logs and conduct legal research in support of several of Plaintiffs'

privilege challenges, including those related to citizen petition documents and Defendants' assertions of

the common interest privilege. She prepared numerous memoranda on various privilege issues that

counsel relied during their meet and confers with Defendants. She also researched various privilege and

ethical issues related to Defendants' motion to disqualify and Plaintiff's cross-motion challenging

Teikoku's attempt to claw back the documents at issue. Based on her legal and factual research, Ms. Li

drafted several meet and confer letters and drafts of letter briefs filed with the Court.

45.    The work Ms. Li performed breaks down as follows:

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 10.9 | $4,215.00 |
| Court Appearances and Preparation | 15.5 | $5,425.00 |
| Amended Complaints | 10.8 | $3,780.00 |
| Motions to Dismiss | 8.2 | $2,870.00 |
| Discovery of Defendants: Written Discovery | 76.2 | $26,670.00 |
| Depositions of Defendants (including preparation) | 17.0 | $5,950.00 |
| Discovery of End-Payor Plaintiffs | 1.0 | $350.00 |
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 447.6 | $156,660.00 |
| Appeals (other than Rule 23(f) Petition) | 8.7 | $3,393.00 |
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 254.6 | $93,610.00 |
| Summary Judgment and Dauberts | 0.2 | $78.00 |
| Settlement | 7.0 | $2,730.00 |
| **Totals:** | **857.7** | **$305,731.00** |

46.    **Emily Jenks (2011)**: Emily Jenks is an associate at the firm with substantial experience

managing large discovery projects in complex civil litigation. She is fluent in Japanese and reviewed

and translated Japanese language documents produced by Teikoku on behalf of all Plaintiffs. Given her

expertise and fluency in the Japanese language, Ms. Jenks' hourly rate in this case is capped at $400,

reflecting a modest upward departure from other document reviewers, whose rates were capped at $350

per hour. Many of the key documents uncovered in the case were reviewed, translated, and analyzed by

Ms. Jenks, and Plaintiffs' prosecution of the case would have been more expensive and less successful

without her involvement. She assisted counsel from all plaintiff groups with deposition preparation (to

the extent those preparations involved Japanese language documents) and was particularly active

assisting Ms. Sharp in preparing for the deposition of Teikoku employees (many of whom communicated in Japanese). She also attended the deposition of Paul Mori with Ms. Sharp, where she served as a check-translator.

47.     The work Ms. Jenks performed breaks down as follows:

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 0.3 | $120.00 |
| Court Appearances and Preparation | 7.5 | $3,000.00 |
| Document Review (including preparation of deposition kits) | 626.3 | $250,520.00 |
| Depositions of Defendants (including preparation) | 144.7 | $57,880.00 |
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 5.5 | $2,200.00 |
| Totals: | 784.3 | $313,720.00 |

48.     **Angelica Ornelas (2011)**: Ms. Ornelas is a senior associate at the firm. She prepared for and took the deposition of one of Defendants' pharmaceutical market experts, Mr. John Fritz. She assisted in briefing EPPs' motion to exclude Mr. Fritz's opinion and prepared a motion to seal. In total she spent 87.4 hours with a lodestar of $44,574 on class certification related matters.

49.     **Junior Associates - Christopher Hikida (2013), Siobhan Innes-Gawn (2013), Alynia Phillips (2017), Michael Marchese (2015), Jacques Baritot (2013)**: A small group of junior associates with the firm also assisted Ms. Sharp and Mr. Grzencyzk with legal research and other discrete tasks.

50.     Mr. Hikida conducted legal research on the following issues: (1) structures of antitrust trials in the Ninth Circuit and decisions addressing duplicative damages, (2) the availability of multiple damages and prejudgment interest under state law, (3) joint and several liability under state law, (4) the availability of Section 2 claims that overlap with Section 1 claims, (5) jury instructions adopted in antitrust cases in this District and (6) the defensibility of Plaintiffs' "alternative settlement" causation theory. He also cite-checked Plaintiffs' trial structure brief, motions *in limine*, and opposition to Defendants' motion for summary judgment. The work Mr. Hikida performed breaks down as follows:

| Category | Hours | Lodestar |
|---|---|---|
| Motion Practice (Miscellaneous) | 66.2 | $28,135.00 |
| Summary Judgment and Dauberts | 75.9 | $32,257.50 |

| Category | Hours | Lodestar |
|---|---|---|
| Trial Preparation | 110.4 | $46,920.00 |
| Settlement | 15.0 | $6,375.00 |
| **Totals:** | **267.5** | **$113,687.50** |

51.     Ms. Innes-Gawn researched (1) the types of notices approved in similar cases and antitrust cases in the Ninth Circuit, specifically the use of publication notice, (2) ascertainability standards in the Ninth Circuit, (3) the utilization of set-asides in common benefit cases, and (4) Judge Orrick's pretrial orders in other cases. She authored the initial draft of EPPs' motion to approve their class notice plan and cite-checked other briefs. The work Ms. Innes-Gawn performed breaks down as follows:

| Category | Hours | Lodestar |
|---|---|---|
| Court Appearances and Preparation | 2.0 | $700.00 |
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 38.9 | $13,615.00 |
| Motion Practice (Miscellaneous) | 23.9 | $8,365.00 |
| Summary Judgment and Dauberts | 5.1 | $1,785.00 |
| Trial Preparation | 21.4 | $7,490.00 |
| **Totals:** | **91.3** | **$31,955.00** |

52.     Ms. Phillips researched (1) the availability of a superseding cause defense and (2) the admissibility of pleadings in Defendants' patent litigation in support of Plaintiffs' opposition to Defendants' motion for summary judgment and worked directly with Ms. Sharp on preparing aspects of Ms. Sharp's oral argument on these issues. She spent 24.3 hours on these tasks and another 1.2 hours reviewing the Court's substantive orders in the *Korean Ramen* litigation in anticipation of a settlement conference.

53.     Mr. Marchese researched issues related to the authenticity and admissibility at trial and prepared a motion to seal. Of this work, 6.5 hours was spent in support of EPPs' motion for preliminary hours and 10.2 hours for trial preparation.

54.     Mr. Baritot assisted Mr. Grzenczyk with early case management activities such as preparing notices and disclosures required by local rules. All of Mr. Baritot's time was billed to case management activities.

55.     **Document Reviewers - Jesse Gosset (2014) and Linh Vuong (2012)**: Jesse Gossett and Linh Vuong were junior associates at the firm who primarily assisted in the review of documents

produced by Teikoku. Mr. Gossett spent a total of 165.5 hours on document review. He also spent 32.1 hours preparing research memoranda concerning the legal standards for evaluating relevant product markets, which Ms. Sharp and Mr. Grzenczyk used in guiding EPPs' discovery efforts. Ms. Vuong spent 79.1 hours reviewing documents and 7.1 hours conducting legal research in support of Plaintiffs' opposition to Defendants' motion to dismiss and assisting Ms. Sharp with preparation for the hearing.

56. **Litigation Assistants and Summer Associates - Marjorie Gullick, Navneet Mattu, Miriam Arghavani, Sarah Norman, and Jessica Cook**: Marjorie Gullick, Navneet Mattu, Miriam Arghavani, Sarah Norman, and Jessica Cook served as litigation assistants with the firm at various points in the litigation and primarily assisted with reviewing documents and preparing attorneys for depositions.

57. Ms. Gullick worked with Ms. Sharp and Mr. Grzenczyk to identify and organize documents by subject matter for use in various briefs, depositions, and meet and confers. She worked directly with Ms. Sharp on the preparation of deposition kits of Mr. Speitz and Mr. Mori, and also assisted in the preparation of documents and exhibits for filing with the Court. Ms. Gullick also reviewed Teikoku's clawback logs, assisted in the sequestration and destruction of relevant documents, and checked factual and record citations in briefs and other pleadings.

| Marjorie Gullick | | |
|---|---|---|
| **Category** | **Hours** | **Lodestar** |
| Litigation Strategy and Case Management (including attorney meetings) | 8.2 | $1,558.00 |
| Court Appearances and Preparation | 3.0 | $570.00 |
| Discovery of Defendants: Written Discovery | 41.9 | $7,961.00 |
| Document Review (including preparation of deposition kits) | 59.9 | $11,381.00 |
| Depositions of Defendants (including preparation) | 160.1 | $30,419.00 |
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 15.4 | $2,926.00 |
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 2.5 | $475.00 |
| **Totals:** | **291.0** | **$55,290.00** |

58.     Ms. Mattu reviewed documents produced by Teikoku, indexed and logged Defendants' priority productions, created timelines of settlement drafts and negotiations, reviewed and analyzed privilege logs at Ms. Sharp's direction, and summarized various contracts and agreements between Endo and Teikoku.

**Navneet Mattu**

| Category | Hours | Lodestar |
|---|---|---|
| Discovery of Defendants: Written Discovery | 4.2 | $798.00 |
| Document Review (including preparation of deposition kits) | 188.9 | $35,891.00 |
| Trial Preparation | 1.8 | $342.00 |
| **Totals:** | **194.9** | **$37,031.00** |

59.     Ms. Arghavani assisted Ms. Sharp and Mr. Grzenczyk in compiling documents for use in EPPs' class certification motion and annotated documents for use in drafting and responding to expert reports.

**Miriam Arghavani**

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 10.4 | $2,109.00 |
| Appeals (other than Rule 23(f) Petition) | 3.5 | $787.50 |
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 9.8 | $1,879.50 |
| Motion Practice (Miscellaneous) | | |
| Merits Expert Reports | 3.4 | $765.00 |
| Settlement | 1.4 | $315.00 |
| **Totals:** | **28.5** | **$5,856.00** |

60.     Ms. Norman, a summer associate, reviewed and analyzed Defendants' privilege logs and conducted legal research under Ms. Sharp's supervision in support of Plaintiffs' privilege motions. She billed 6.2 hours to litigation strategy and 65.1 hours to discovery of Defendants.

61.     Ms. Cook assisted Ms. Sharp with the identification of exhibits and designation of deposition testimony for trial. All of Ms. Cook's time was devoted to trial preparation.

## III.   HOURLY RATES

62.     The historical hourly rates submitted by Girard Gibbs in this matter (other than capped hourly rates for document review, discussed further below) are the firm's usual and customary rates that

were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

63.     Girard Gibbs's usual hourly rates, including rates for specific timekeepers that worked on this matter, have been approved in numerous matters, including in recent years the following:

- *Larson v. John Hancock Life Insurance Company (U.S.A.)*: Partners ($550-$900); Associates ($340-$525); Litigation Assistant ($140). No. RG16813803, May 8, 2018 Order at 13 (order finding hourly rates reasonable); Apr. 17, 2018 Declaration of Norman E. Siegel at 13 (motion listing billing rates for Girard Gibbs attorneys).

- *In re Yahoo Mail Litigation*: Partners ($545-$875); Associates ($350-$460); Senior Counsel ($525). No. 13-cv-04980, 2016 WL 4474612, at *9 (N.D. Cal. Aug 25, 2016) (order approving Girard Gibbs' rates); ECF 201 (Aug. 17, 2016) (statement listing billing rates for Girard Gibbs attorneys).

- *Corona v. Sony Pictures Entertainment*: Partners ($545-$845); Associates ($350-$385); Litigation Assistant ($185). No. 14-cv-09600-RGK-E, ECF 166 at 2 (C.D. Cal. Apr. 12, 2016) (order finding rates reasonable); *id.*, ECF 159-2 (Feb. 17, 2016) (chart with Girard Gibbs' hourly rates).

- *In re High Tech Employee Antitrust Litigation*: Partners ($565-$845); Associates ($350-$385); Paralegals ($190). No. 11-cv-02509, 2015 WL 5158730, at *9 (N.D. Cal. Sept 2, 2015) (order approving Girard Gibbs' billing rates); ECF 1069 (May 7, 2015) (Girard Declaration with Girard Gibbs' hourly billing rates).

- *Skold v. Intel Corp.*: Partners ($545-$845); Associates ($300-$440). No. 1:15-cv-039231 ECF 589 (Santa Clara County Superior Court Jan. 29, 2015) (order approving negotiated fee based on lodestar).

- *In re Lehman Brothers Securities and Erisa Litigation*: Partners ($545-$845); Associates ($300-$480). No. 1:08-cv-05523-LAK-GWG, ECF 563 (S.D.N.Y. Apr. 1, 2014) (order approving requested fee); No. 1:09-md-2017-LAK, ECF 1322 (Nov. 5, 2013) (Girard Declaration stating hourly rate ranges).

64.     The firm's customary rates are what the firm charges for our services in non-contingent matters. The firm's fee-paying clients have paid the following rates in recent years in non-contingent matters:

- Matter #1 (2016)[1]: $875 for Mr. Girard, $615 for Mr. Elias, and $400 for a junior associate.

- Matter #2 (2015): $845 for Mr. Girard and $385 for a junior associate

- Matter #3 (2014): $845 for Mr. Girard and $650 and $545 for other partners

---

[1] The firm's work in these matters and the identity of the client is confidential.

65.     Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorney's typical billing rate. The lone exception is the hourly rate for Japanese language document review, which was capped at $400 per hour.

## IV.     LITIGATION EXPENSES

66.     Below is an itemized list of the unreimbursed expenses Girard Gibbs incurred during the prosecution of this litigation. Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
|---|---|
| Computer Research (Lexis, Westlaw, PACER, etc.) | $42,642.82 |
| Consultants | $17,350.00 |
| Courts Fees (filing, etc.) | $1,237.00 |
| Document Production | n/a |
| Photocopies – In-House | $30,741.65 |
| Photocopies – Outside | n/a |
| Postage, Courier, Messenger | $6,757.14 |
| Service of Process | $3,826.55 |
| Telephone / Facsimile | $3,429.80 |
| Transcripts (hearings, depositions, etc.) | $1,131.56 |
| Travel (airfare, ground transportation) | $8,948.26 |
| Travel (meals and lodging) | $7,845.17 |
| Trial Exhibits | $281.99 |
| **Total:** | **$ 124,191.94** |
| **Contributions to the Litigation Fund:** | **$ 620,000.00** |

67.     The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead. Girard Gibbs incurred substantial legal research costs in its role as the primary drafter of many briefs submitted on behalf of EPPs and all Plaintiffs. For the same reason—and because Ms. Sharp argued numerous motions and took several

depositions (all of which required the use of hard copy documents)—the firm spent a significant amount of money on in-house copying and printing.

68.    The firm's travel expenses were largely for Ms. Sharp and Mr. Grzenczyk to travel to fact and expert witness depositions. And while Ms. Sharp is located in San Francisco, Mr. Grzenczyk was located in Chicago during the latter part of the case and traveled to San Francisco for hearings on key motions (including those on which he presented or was prepared to present argument). Mr. Grzenczyk did not bill travel to San Francisco for case management conferences or other matters where his attendance was not essential.

69.    The consultant fee was largely for EPPs' jury consultant, which Girard Gibbs advanced and did not bill to the litigation fund.

70.    Girard Gibbs also incurred expenses (filing fees, service of process, messenger, etc.) in its role as local counsel for many of the initial complaints filed in this District prior to the appointment of class counsel and the establishment of a litigation fund.

Girard Gibbs does not intend to seek payment for work, lodestar, or expenses related to this litigation through final approval from the Settlement Fund other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 31st day of July 2018, at San Francisco, California.

/s/ Dena C. Sharp
Dena C. Sharp

EXHIBIT 3

Renae D. Steiner *(admitted pro hac vice)*
Teresa M. Jones
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605
Facsimile: (612) 338-4692
Email: rsteiner@heinsmills.com
Email: tjones@heinsmills.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br><br>ALL END-PAYOR ACTIONS | **DECLARATION OF RENAE D. STEINER IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

1  I, Renae D. Steiner, hereby declare:

2        1.     I am an officer at Heins Mills & Olson, PLC ("Heins Mills") counsel for plaintiff

3  Greater Metropolitan Hotel Employers – Employees Health and Welfare Fund; Minnesota Cement

4  Masons Health & Welfare Fund; and Roofers Local 96 Health and Welfare Fund ("Plaintiffs"). I serve

5  as Co-Lead Counsel for the End-Payor Class in this matter. This declaration is submitted in support of

6  End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have

7  personal knowledge of the facts below and, if called upon to do so, could and would testify

8  competently thereto.

9  **I.    FIRM BACKGROUND**

10        1.     Heins Mills has many decades of experience in complex litigation and has successfully

11  handled hundreds of class actions, primarily in a leadership role, including cases tried to verdict in

12  actions alleging antitrust violations in industries as diverse as telephone services surcharges, high-

13  pressure laminates and NCAA Division I rules restrictions.  We have served as lead or co-lead counsel

14  in dozens of cases representing plaintiff classes alleging price fixing, vertical trade restraints,

15  monopolization and other anticompetitive conduct in various markets such as automotive filters,

16  concrete, aftermarket automotive sheet metal, infant formulas, hunting gear, global airline ticketing

17  systems, ocean shipping, prescription drugs, paper products, polyester staple fiber, small engines, high-

18  pressure laminates, food additives, financial products, travel agency air travel commissions and cable

19  television systems.  We have recovered for classes in cases where we were lead counsel collectively

20  over $3 billion in settlements or judgments.

21        2.     In addition to serving as lead counsel in this matter, I have served as lead counsel in *In*

22  *re Aggrenox Antitrust Litig.* ($54 million settlement), am currently co-lead counsel in *In re Lipitor*

23  *Antitrust Litig.* and an Executive Committee member for the six-firm leadership group in *In re Restasis*

24  *Antirust Litig.*

25  **II.    OVERVIEW OF WORK PERFORMED BY HEINS MILLS**

26       **A.    Work Performed for the Benefit of the End-Payor Class**

27        1.     Heins Mills was appointed as Interim Co-Lead Counsel for the End-Payor Class on May

28  24, 2014 (ECF No. 63), and as Co-Lead Counsel on February 21, 2017 in connection with the Court's

1

DECLARATION OF RENAE D. STEINER IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

certification of the End-Payor Class (ECF No. 670). We prosecuted this litigation solely on a contingent-fee basis and for more than four years have been at risk that we would not receive any compensation for prosecuting claims against the Defendants. While Heins Mills devoted its time and resources to this matter, it has foregone the option of other opportunities for which it may have been compensated.

2.      Working cooperatively, Co-Lead Counsel sought to avoid duplication and to maximize efficiency by delegating tasks among themselves. Heins Mills was, for example, responsible for discovery related to defendant Watson while Cohen Milstein and Girard Gibbs were responsible for Endo and Teikoku, respectively. We also lead affirmative and defensive work associated with economists and manufacturing experts, while our colleagues handled other experts and other litigation matters. Details follow:

**Motion to Dismiss and Amended Complaints:** Other EPP counsel took the laboring oar on the consolidated amended complaint and the motion to dismiss. (I was preparing for and in trial on another antitrust case.) However, our firm did assist in drafting segments of the first motion to dismiss opposition, and for the subsequent motions related to Massachusetts and Utah consumer standing, we took the lead.

**Defendant Discovery and Depositions:** Heins Mills had the primary responsibility for discovery against Watson. The negotiations with Watson regarding their document production was labor-intensive and EPPs fully participated. Watson took the position that their FTC production and custodians should form the four corners of their private litigation production. Based on our review of their CID production (conducted by Dylan McFarland), as well as our internal investigation (conducted by Teresa Jones), we coordinated with DPPs to propose a list of custodians and search terms appropriate for this litigation. I participated in multiple meet and confers, where we came to agreement on the search terms and initial custodians. We insisted that additional custodians that we identified, but Watson contended were not necessary, should be held in abeyance. We later learned that the documents for two former employees who surfaced as potential key witnesses —Patricia Kitchen, the at-risk launch project manager and Joseph dosSantos, a financial director who accounted for the pay-for-delay settlement—had not

2

DECLARATION OF RENAE D. STEINER IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

been preserved and were not duplicated in other searches.  Our reservation of rights as to these custodians allowed us to later obtain key documents from other Watson sources.

I lead the negotiations for EPPS with Watson on challenges to the completeness of their production and its privilege assertions.  For example, I negotiated the privilege challenges to the "dosSantos" memo, which detailed management discussions about Watson's perceived weakness of the Endo patent and the willingness of Watson to launch at-risk, and the Stewart "boatloads" memo to the executive committee, stating months before the earliest launch that Watson was ready and able to make "boatloads of patches."  In the first instance, negotiations with Watson's counsel to un-redacted the dosSantos memo obviated the need for a joint statement.  In the second, Watson's counsel resisted the production of the un-redacted Stewart memo, which required joint statement briefing, the court's review *in camera* and oral argument.  Both these documents were considered key trial exhibits; the dosSantos memo so much so that Defendants preemptively moved *in limine* to have the document rejected as a trial exhibit.

Together with members from the DPP team, I conducted the Watson manufacturing, regulatory, financial/forecasting depositions.  We coordinated our efforts with DPP counsel very efficiently: in each instance, the person tapped to be the lead questioner circulated her or his outline and proposed exhibits.  The other team member added their questions and documents to the outline.  For some depositions, we had telephone calls to discuss strategy.  The process led to what I consider to be excellent trial depositions and positioned us to use them either affirmatively or to impeach live witnesses as necessary.

Additional affirmative discovery lead by my firm were the sets of Requests to Admit served on Watson related to at-risk launches and Endo and Teikoku related to authorized generic launches.  Given employee turnover and changes in management in pharma companies and the general passage of time, no fact witness was likely to be able to testify about the Defendants complete history of at-risk or authorized generic launches.  Teresa Jones took the laboring oar in developing, from produced and public sources, the companies' histories on these topics and devising a list of launches.  With the assistance of the Retailers counsel, we served

1    dozens of admission requests, the answers to which were used in fact witness depositions, by

2    our experts and were prepared to be used at trial.

3    **Third Party Discovery:** With regard to EPP-specific third parties, my firm conducted a number

4    of the meet and confers, and together with Ms. Robertson, we resolved the production issues for

5    the various PBMs without the need for motion practice. This discovery was used in class and

6    merits expert reports and to counter the Defendants' assertion of an insurance-premiums-based

7    "pass on" defense to impact and damages.

8    **Document Review:**      Teresa Jones was our lead document reviewer, among other

9    assignments. Teresa has extensive antitrust experience, dating back to her work on the

10   *Microsoft* end-payor litigation, where she was part of the trial team for the Iowa and Minnesota

11   cases. Teresa coordinated, with Scott Grzenczyk, the reviewer calls, which initially were held

12   weekly. Teresa coordinated batch assignments and helped structure the search terms by which

13   team members would collect and search documents.  During the busy, initial stages of

14   document production and review, another associate from my firm, Maureen Sandey, also was a

15   member of the document review team.

16          The important points from each document reviewers' weekly memo were consolidated

17   into a "meta" memorandum drafted by my partner, Dylan McFarland. This synthesis of the key

18   evidence complied weekly for each relevant topic was used throughout the litigation as a guide

19   to the key issues and documents in the case. This evidence bible, which served as the basis for

20   our contention interrogatory responses, allowed us to focus the document review to fill in key

21   holes in our knowledge and serve as a touchstone to the timeline of key events and evidence

22   that could be brought to bear for summary judgment and trial.

23   **Discovery of End-Payor Plaintiffs:** Regarding discovery served on Plaintiffs, my firm's work

24   was primarily in drafting the responses to the contention interrogatories. My internal team,

25   including Teresa Jones and myself, marshalled the most compelling evidence we had gathered

26   in support of Plaintiffs' claims—including testimony from Defendants' fact witnesses—to

27   include in their responses. Our final work product was a thirty-six-page response. During the

28   drafting, I worked with the DPP lead drafter to coordinate our responses to common questions;

1    DPPs relied extensively on our work product in their responses, and we likewise relied heavily
2    on their responses to the patent-based questions, given their team's experienced patent lawyers.
3    **Motion Practice:**  Other work performed by the firm included acting as the point for EPP's at-
4    issue waiver briefing and strategy, and managing the privilege and production challenges
5    related to Watson.  The timing and strategy related to challenging privilege on at-issue topics
6    was a very important issue.  In strategy sessions, the DPPs and EPPs discussed the proper way
7    to frame the issue. Our teams worked cooperatively to frame the early motion to allow us to
8    renew it if the court needed more specific factual information to decide this complex issue.
9    Other motions related to privilege and scope-of-production issues related to Watson were lead
10   by my firm.  I negotiated the meet and confers, briefed and argued several motions related to
11   privilege and production issues, on the timing of contention discovery responses, and on
12   *Dauberts* related to Dr. Singer, Dr. Miller and Mr. Murthy.

13          After Teikoku moved to disqualify counsel for using documents it produced and which
14   were included in Plaintiffs' at-issue waiver motion, I worked extensively to present the evidence
15   to show that no prejudice to Teikoku or Endo had occurred, because many other documents
16   produced by Teikoku or Endo (and for which no privilege was claimed) already had disclosed
17   to Plaintiffs' counsel the facts contained in the contested documents.  This time was well spent,
18   as it came before most depositions, and allowed lead counsel to focus on the key documents and
19   evidentiary issues to explore in upcoming depositions.

20   **Class Certification:**  As in all indirect purchaser cases, class certification is a key moment in
21   the case.   We divided the key responsibilities amongst lead and liaison counsel—briefing, class
22   member ascertainability, industry structure issues and economic issues.  I was primarily
23   responsible for working with the economist, Dr. Singer, on the market power and classwide
24   impact issues.

25          Dr. Singer conducted cross-elasticity studies and built two models showing classwide
26   injury and damages.  To conduct his analysis, Dr. Singer relied on the evidence that we
27   compiled at his direction from the three Defendants, from third-parties and from public industry
28   sources.  Because of the two payor structure in end-payor transactions, we needed to show

1   impact to each payor, to understand the different rebate structures utilized by Endo in the

2   commercial and Part D insurance markets, and further, government reimbursement schemes.

3   We also understood that Endo would suggest that in the but-for world, they would have acted

4   differently—for example, taking large brand price increases which would increase the but-for

5   generic price—as an argument to lower our predicted damages.

6          Dr. Singer's report posited as its primary model a damages study base on a "forecasting"

7   approach, under which Defendants internal forecasting and planning documents are used to

8   determine the prices at which brand and generic Lidoderm would have been sold absent

9   Defendants pay-for-delay agreement. Dr. Singer chose forecasting as his primary model because

10  of the indicia that the real-world prices upon entry were tainted by order of entry issues created

11  by the pay-for-delay agreement.  To prepare the forecasting model, I assisted Dr. Singer's

12  careful review and incorporation of Defendants' forecasts and other documents discussing the

13  economic impact of generic entry.  Lead Counsel fully understood that a backcasting model,

14  which Dr. Singer offered as an alternative, would be preferred by Defendants, as it yielded

15  lower damages.  But, as advocates for our clients and the proposed class, we fully supported Dr.

16  Singer's well-reasoned and amply-supported opinion that forecasting was the most accurate

17  depiction of the but-for world.

18         Defendants moved to exclude Dr. Singer's forecasting and but-for price opinion, arguing

19  both brand and generic prices were too low and that the use of a "forecasting" model was

20  inappropriate because a more traditional "backcasting" model (in which real world generic

21  prices are used to model the but-for entry price) is preferable.  I drafted the opposition to

22  Defendants' *Daubert* motion and worked with Dr. Singer to prepare a rebuttal report and a sur-

23  reply declaration after Defendants submitted an unauthorized reply report from their economic

24  expert.  After three depositions of Dr. Singer and full *Daubert* briefing, the court denied

25  Defendants' *Daubert* challenge (at class and at merits), allowing us to be able to present to the

26  jury for their consideration a damages model that was 47% higher than the Defendants-preferred

27  backcasting model.

28

6

1         I also took the depositions of Dr. Hughes, Defendants' proffered economist. Dr.

2  Hughes' initial report was 73 pages and included 13 exhibits of his analysis. In addition to the

3  materials Teresa Jones compiled for me, I worked with Dr. Singer and his staff to test Dr.

4  Hughes' contentions that only 1 percent of the end-payor transactions in the real world were

5  higher than in his but-for world.

6         Ms. Sharp and Josh Davis (from liaison Joe Saveri Law Firm) took primary

7  responsibility for class briefing; as support for that effort I provided the expert report details as

8  well as helped with the evidentiary segments. I also assisted Ms. Robertson with her work with

9  Mr. DeBree, the PBM and insurance industry expert liaison counsel and on the PBM

10  declarations used as support by both Mr. DeBree and Dr. Singer.

11         Josh Davis lead the class certification hearing arguments; I was responsible for

12  addressing the predominance issues related to the economic modeling. Again, as in other class

13  certification tasks, we worked efficiently and effectively to obtain the best possible results for

14  our class.

15         I believe that our work in Lidoderm was not only beneficial to the Lidoderm class, but

16  has become the model for EPP counsel in subsequent pay-for-delay litigation. The work we did

17  to develop, in particular, the evidentiary record for PBM rebating and class member

18  ascertainability has now become standard operating procedure.

19  **Merits Reports:**   My firm had substantial responsibility for merits expert reports, defending

20  our experts at deposition and examining Defendants' experts. I again worked with Dr. Singer as

21  he modeled damages for the EPP certified class, and later, as he determined the scope of the

22  opt-out class members' purchases to deduct them from class damages. Defendants turned to a

23  new expert, Dr. Bell, for their merits damages report. I worked with Caitlin Coslett from the

24  DPP team on the deposition of Dr. Bell's common segments (such as market power) and

25  examined Dr. Bell on his EPP damages estimates. Based on our examination, Dr. Bell

26  substantially revised his critique of Dr. Singer's damages model, such that his reductions to

27  EPPs' damages were reduced by nearly one-third.

28

1    In addition, I assisted Andrew Kelly of the DPP team on his work with Mr. Molina on

2 his at-risk launch expert opinions, and on his work with Dr. Miller on his at-risk launch and

3 manufacturing capability opinions, as well as assisting Neill Clark on his work with Mr. Molina

4 on authorized generic entry.  I conducted the examination of Defendants' at-risk launch expert,

5 Mr. Murthy and Defendants' manufacturing expert, Dr. Cossart.

6    EPPs took the lead on drafting a motion to strike two post-discovery period declarations

7 submitted by Watson employees in support of Dr. Cossart's report.  The motion was jointly

8 drafted by Mr. Kelly and me, and I argued the motion.  After the court allowed additional

9 discovery and depositions of these two declarants, Mr. Kelly and I meet and conferred with

10 Watson counsel, oversaw the review of thousands of pages of newly-produced documents (some

11 of which were very favorable to Plaintiffs' manufacturing theory and subsequently relied on by

12 our experts) and Mr. Kelly and I conducted back-to-back depositions of these two declarants, all

13 in a very compressed time frame.  After the depositions, Mr. Kelly and I assisted Dr. Miller in

14 his analysis of the new evidence as part of his rebuttal report to Dr. Cossart's opinions and

15 critiques.

16 **Opt Out and Set Aside Proceedings:** Several large insurers opted out of the class. These

17 insurers also attempted to opt out self-funded health and welfare plans for whom the insurers

18 provide administrative services. I lead our meet and confers with the opt-outs counsel, and, with

19 others from our group, including Ms. Sharp and Ryan McEwan (liaison counsel), drafted a

20 motion asking the Court to reject the insurers' attempt to opt out their self-funded plan clients,

21 arguing that the attempted mass opt-outs raised significant due process and practical concerns. I

22 argued the motion; the Court granted EPPs' motion to preclude the insurers from opting out

23 their self-funded plans. After resolution of the motion, these insurers joined in the global

24 resolution efforts and ultimately rejoined the class.

25    With respect to potential opt-outs, themselves, EPPs moved for a "set aside" order,

26 which provides that a portion of any recovery obtained by the insurers (or any other opt out)

27 would be sequestered and subject to a motion for payment to class counsel in recognition of the

28 work performed by class counsel for all end-payors, including any opt-outs. EPPs briefed and

8

DECLARATION OF RENAE D. STEINER IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

argued the motion, which presented a matter of first impression in the Ninth Circuit. Before this Court granted EPPs' motion, a set-aside order had been entered in only one other antitrust case. I was actively involved in the conceptualization of a set-aside motion and briefing on this issue.

**Summary Judgment and Daubert:**   Scott Grzenczyk and I worked extensively with Peter Kohn and Caitlin Coslett on the market power summary judgment motion, and the work of our expert, Dr. Singer, on cross-elasticities was cited by the court in its order granting Plaintiffs' motion. I was also primarily responsible for drafting *Daubert* motions concerning Defendants' expert Mr. Murthy and I worked with Andrew Kelly from the DPP team in opposing Defendants' *Daubert* motion to exclude the opinions of Dr. Miller and Mr. Molina.

**Trial Preparation:** The trial team was comprised of Dena Sharp, Sharon Robertson and me for EPPs and four counsel for DPPs. The trial team had in-person (primarily before or after court hearings) and telephone meetings and extensive email exchanges to determine the key evidentiary themes, the order of proof, and cross-examination strategy.   That work informed the contours of our consultations with Chopra Koonan, a jury consultant. I assisted in the work with Chopra Koonan on the development of the themes to test with mock juries and helped with the development of scripts and talking points to use with them.

My trial assignments were first to handle the presentation of Plaintiffs' lead economist, Dr. Singer, who would lay out for the jury the history of Hatch-Waxman, the chain of distribution, the *Actavis* test and Plaintiffs' theory of the but-for world regarding entry dates and pricing. I was also tasked with presenting the testimony of Plaintiffs' shared manufacturing expert, Dr. Miller. On cross-examination, I was slated to cross three fact witnesses and Mr. Murthy, Defendants' at-risk and authorized generic entry expert. My firm was also responsible for the deposition designations of other Watson witnesses that would appear by deposition testimony.  In addition, I worked with Ms. Sharp on drafts of her opening statement and provided comment to Peter Kohn on his portion of the opening statement. Because we settled in the shadow of trial, most of the trial prep work was completed, including examinations and their slides and demonstratives, impeachment materials for adverse witnesses, trial exhibits and their supporting evidentiary memos.

1      **Settlement:**  Because of my work with experts, I believe I provided valuation assistance to the

2      lead settlement negotiator, Dan Girard, in working toward resolution of this matter.  I

3      participated in the mediation sessions and other negotiations with Defendants and worked

4      extensively with Defendants and the separately-represented class members on the settlement

5      papers, particularly the mechanisms for opt-out and quick pay calculations.

6             As part of the settlements, Dr. Singer was tasked with allocation of the settlement

7      monies into separate consumer and third-party payor (insurer) pools. I assisted Dr. Singer with

8      his analysis and subsequent Declaration.

9         **B.**    **Lodestar Summary**

10      3.      In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter

11    concerning time and expense reporting, Heins Mills attorneys and staff kept contemporaneous records of

12    the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work

13    performed by Heins Mills was delivered to the other Co-Lead Counsel for their review. My office and

14    other Co-Lead Counsel have reviewed my firm's daily detailed time records and exercised billing

15    judgment to eliminate inefficiency and duplication. My firm is prepared to submit our time records for *in*

16    *camera* review if requested by the Court. The total number of hours spent by Heins Mills prosecuting this

17    litigation through July 10, 2018 is 12,270.70, with a corresponding lodestar of $6,367,266.00. The

18    lodestar does not include any time spent on proceedings before the Judicial Panel on Multidistrict

19    Litigation, related to the appointment of class counsel, and for time spent on the fee briefing and

20    supporting papers. Below is a summary of the individuals who worked on this matter for Heins Mills,

21    their roles (Partner, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their

22    historic hourly billing rates, and their total lodestar, in order of hours billed.

23

24

25

26

27

28

| Attorney | Role | Total Hours | Billing Rate | Lodestar |
|---|---|---|---|---|
| Renae D. Steiner | Partner | 36.50 | $575 | $20,987.50 |
| | Partner | 3,873.00 | $650 | $2,517,450.00 |
| | Partner | 1,585.30 | $700 | $1,109,710.00 |
| Teresa M. Jones | Associate | 1,523.20 | $400 | $609,280.00 |
| | Associate | 787.00 | $450 | $354,150.00 |
| | Associate | 1,433.70 | $350 (document review) | $501,795.00 |
| Maureen E. Sandey | Associate | 1,186.30 | $350 (document review) | $415,205.00 |
| Dylan J. McFarland | Partner | 988.80 | $600 | $593,280.00 |
| Sarah L. Maurer | Paralegal | 261.20 | $150 | $39,180.00 |
| | Paralegal | 148.60 | $175 | $26,005.00 |
| Ian F. McFarland | Associate | 170.00 | $365 | $62,050.00 |
| | Associate | 76.00 | $375 | $28,500.00 |
| David Woodward | Partner | 46.90 | $665 | $31,188.50 |
| | Partner | 4.80 | $700 | $3,360.00 |
| Irene M. Kovarik | Paralegal | 6.80 | $200 | $1,360.00 |
| | Paralegal | 39.20 | $225 | $8,820.00 |
| Vincent J. Esades | Partner | 37.40 | $575 | $21,505.00 |
| | Partner | 1.90 | $650 | $1,235.00 |
| | Partner | 0.20 | $700 | $140.00 |
| Cole S. Woodward | Associate | 25.90 | $350 | $9,065.00 |
| James M. Sweeney | Law Clerk | 24.00 | $250 | $6,000.00 |
| James W. Anderson | Partner | 14.00 | $500 | $7,000.00 |
| | Totals: | 12,270.70 | $518.90 (blended rate) | $6,367,266.00 |

## C.    Staffing and Tasks Performed on This Matter

1.      Heins Mills staffed this matter with attorneys and staff who performed tasks based on their skills, expertise, and experience.

2.      My work, and the work of Teresa Jones, Maureen Sandey and Dylan McFarland are described in more detail in the preceding paragraphs, and summarized below:

**Renae Steiner (bar admittance 1991):** Plaintiffs' class and merits experts—reports, depositions, and opposition to *Dauberts* and motions *in limine*; defendant discovery and depositions; privilege and production motion practice; Defendants' experts' *Dauberts* and depositions; and trial team.

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 491.50 | $321,785.00 |
| Court Appearances and Preparation | 133.30 | $88,655.00 |

11

| | | |
|---|---|---|
| Initial Complaint | 4.70 | $2,702.50 |
| Amended Complaints | 27.40 | $17,742.50 |
| Motions to Dismiss | 74.00 | $46,472.50 |
| Discovery of Defendants: Written Discovery | 124.50 | $81,010.00 |
| Depositions of Defendants (including depositions and preparation) | 511.40 | $332,465.00 |
| Discovery of End-Payor Plaintiffs | 85.70 | $55,682.50 |
| Discovery of Non-Parties | 67.30 | $43,765.00 |
| Discovery - Other (ESI, privilege protocol, expert discovery stipulation) | 340.90 | $221,737.50 |
| Privilege Motion Practice (including Defendants' Disqualification Motion, privilege analysis, meet and confers, joint statements) | 419.40 | $272,660.00 |
| Appeals (other than Rule 23(f) Petition) | .40 | $260.00 |
| Class Certification (including Rule 23(f) Petition, related Expert Work, and Distribution of Class Notice) | 607.00 | $394,680.00 |
| Motion Practice (Miscellaneous) | 91.50 | $59,550.00 |
| Merits Expert Reports (includes three Singer reports that overlap class and merits issues) | 1,032.20 | $682,200.00 |
| Summary Judgment and *Dauberts* | 372.60 | $253,930.00 |
| Trial Preparation | 691.50 | $483,710.00 |
| Settlement | 419.50 | $289,140.00 |
| *(blended hourly rate of $664)*                **Totals:** | **5,494.80** | **$3,648,147.50** |

DECLARATION OF RENAE D. STEINER IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

**Teresa Jones (1996):**  Document review and deposition kits; assistance in gathering evidence for the use of experts; assistance with trial preparation (deposition designations, trial exhibit list).

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 70.00 | $28,000.00 |
| Discovery of Defendants: Written Discovery | 8.90 | $3,560.00 |
| Document Review (including preparation of deposition kits) | 1,433.70 | $501,795.00 |
| Depositions of Defendants (including preparation) | 332.50 | $133,000.00 |
| Discovery of End-Payor Plaintiffs | 94.50 | $37,800.00 |
| Discovery of Non-Parties | 35.90 | $14,360.00 |
| Discovery - Other (ESI, privilege protocol, expert discovery stipulation) | 453.60 | $181,440.00 |
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 172.10 | $68,840.00 |
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 177.50 | $71,000.00 |
| Motion Practice (Miscellaneous) | 6.40 | $2,560.00 |
| Merits Expert Reports | 169.50 | $68,500.00 |
| Summary Judgment and Dauberts | 3.50 | $1,480.00 |
| Trial Preparation (exhibits, deposition designations) | 770.70 | $346,815.00 |
| Settlement | 15.10 | $6,075.00 |
| *(blended hourly rate: $391)*                               **Totals:** | **3,743.90** | **$1,465,225.00** |


**Maureen Sandey (2011):**  Document review.

| Category | Hours | Lodestar |
|---|---|---|
| Document Review (including preparation of deposition kits) | 1,186.30 | $415,205.00 |
| *(hourly rate: $350)*                                        **Totals:** | **1,186.30** | **$415.205.00** |

**Dylan McFarland (1980):**  Analysis of document review weekly summaries and analysis of CID request responses.

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | .80 | $480.00 |
| Amended Complaints | 1.50 | $900.00 |
| Depositions of Defendants (including preparation) | 193.00 | $115,800.00 |
| Discovery - Other (document review meta memo) | 640.10 | $384,060.00 |
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 21.70 | $13,020.00 |
| Settlement | 131.70 | $79,020.00 |
| *(hourly rate: $600)*                          **Totals:** | **988.80** | **$593,280.00** |

3.      In addition, others from Heins Mills who worked on this matter include:

**Sarah Maurer and Irene Kovarik:**  Sarah was the primary paralegal assigned to this case. She assisted my firm in deposition preparation, in the filing of joint letter briefs and motions, and in preparation for trial.  Sarah worked in the trial prep context on the exhibit list, as well as in the development of demonstratives and summary exhibits as well as preparing my trial binders and impeachment materials. She billed around 400 hours to this case. Irene served as her backup during vacations and busy periods.  Irene billed less than 50 hours to this case.

**David Woodward (1975) and Vince Esades (1994)**:  Both Messrs. Woodward and Esades had minor roles in this litigation at the beginning of the case.  Because I was preparing for the *O'Bannon (NCAA)* trial at the time this case was beginning, my partners stepped in on early organizational, pretrial and complaint-drafting tasks.  Both billed around 50 hours to this litigation.

**James Anderson (2004):**  James is a partner who works on pay-for-delay litigation in our firm. James assisted in one task: the negotiations with a particular third-party PBM for its data, given his familiarity with that entity and its counsel.  He billed 14 hours to this case.

**Ian McFarland (2011), Cole Woodward (2013) and James Sweeney (2017):**  Ian McFarland is a junior associate and performed research functions for me for privilege joint statements, on discovery motions and as we moved through *Daubert* motions.  He billed around 250 hours to

14

this case on those tasks.  Cole Woodward and James Sweeney, as junior associate and law clerk, helped cite check and finalize briefs and did limited, discrete research tasks that did not involve particularized knowledge of this case.  Both billed around 25 hours to this litigation.

4.    By task, Heins Mills' time is summarized below.

| Category | Hours | Lodestar |
|---|---|---|
| Litigation Strategy and Case Management (including attorney meetings) | 591.00 | $364,460.50 |
| Court Appearances and Preparation | 154.80 | $99,532.50 |
| Initial Complaint (capped at 20 hours) | 19.70 | $11,012.00 |
| Amended Complaints | 64.00 | $38,749.50 |
| Motions to Dismiss | 100.30 | $50,902.50 |
| Discovery of Defendants: Written Discovery | 185.30 | $103,096.50 |
| Document Review (including preparation of deposition kits) | 2,620.00 | $917,000.00 |
| Depositions of Defendants (including preparation) | 1,077.00 | $587,280.00 |
| Discovery of End-Payor Plaintiffs | 264.50 | $117,843.50 |
| Discovery of Non-Parties | 125.50 | $64,545.00 |
| Discovery - Other (ESI, privilege protocol, expert discovery stipulation and meta memo) | 1,537.10 | $815,351.50 |
| Privilege Motion Practice (including Defendants' Disqualification Motion) | 686.80 | $378,995.00 |
| Appeals (other than Rule 23(f) Petition) | 0.40 | $260.00 |
| Class Certification (including Rule 23(f) Petition), Related Expert Work, and Distribution of Class Notice | 807.00 | $470,590.00 |
| Motion Practice (Miscellaneous) | 116.80 | $66,400.00 |
| Merits Expert Reports (including depositions) | 1,290.70 | $770,920.00 |
| Summary Judgment and *Dauberts* | 427.90 | $266,352.50 |
| Trial Preparation | 1,565.60 | $851,212.50 |
| Settlement | 636.30 | $392,762.50 |
| *(blended hourly rate: $519)*                              **Totals:** | **12,270.70** | **$6,367,266.00** |

## III.    HOURLY RATES

4.    Other than work that was subject to a case-wide rate cap, the historical hourly rates submitted by Heins Mills in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

5.      Heins Mills' hourly rates, including the rates for the specific timekeepers that worked on this matter, have been approved in the following matters in this district and in a recent pay-for-delay settlement:

- *O'Bannon v. NCAA*, Case No. C-09-3329 (N.D. Cal.)
- *In re Capacitors Antitrust Litig.,* Case No. 14-cv-03264 (N.D. Cal.)
- *In re Lithium Batteries Antitrust Litig.,* Case No. 13-md-02420 (N.D. Cal.)
- *In re Aggrenox Antitrust Litig.,* No. 3:14-md-2516(SRU)(D. Ct.) (July 19, 2018 hearing transcript; approving fee request at the same Heins Mills' rates, stating "I think that the result here was quite good for a reasonable rate. I think a reasonable client would have paid these rates to obtain the outcome.")

6.      Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorney's typical billing rate.

## IV.    LITIGATION EXPENSES

7.      Below is an itemized list of the unreimbursed expenses Heins Mills incurred during the prosecution of this litigation. Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
|---|---|
| Court Fees (filing, etc.) | $444.00 |
| Computer Research (Lexis, Westlaw, PACER, etc.) | $20,621.95 |
| Document Production | $0.00 |
| Photocopies – In-House | $32,471.75 |
| Photocopies – Outside (Trial Exhibits) | $1,870.07 |
| Postage, Courier, Messenger | $467.77 |
| Service of Process | $0.00 |
| Telephone / Facsimile | $737.27 |
| Transcripts (hearings, depositions, etc.) | $0.00 |
| Travel (airfare, ground transportation) | $26,034.93 |

16

| Travel (meals and lodging) | $17,936.73 |
|---|---|
| **Total Carried Expenses:** | **$100,584.47** |
| **Contributions to the Litigation Fund:** | **$620,000.00** |
| **Total Expenses:** | **$720,584.47** |

8.     The expenses listed above—including computer research and telephone charges—were incurred specifically for this case and do not include any costs for general firm overhead.

9.     Heins Mills does not intend to seek payment for work, lodestar, or expenses related to this litigation from the Settlement Fund other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 31st day of July, 2018, at Minneapolis, Minnesota.

*Renae D Steiner*

Renae D. Steiner

EXHIBIT 4

Joseph R. Saveri (State Bar No. 130064)
Joshua P. Davis (State Bar No. 193254)
Ryan J. McEwan (State Bar No. 285595)
Kyla J. Gibboney (State Bar No. 301441)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:  jsaveri@saverilawfirm.com
        jdavis@saverilawfirm.com
        rmcewan@saverilawfirm.com
        kgibboney@saverilawfirm.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

MDL Docket No. 14-md-02521-WHO

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

I, Joseph R. Saveri, declare and state as follows:

1.     I am the founder of the Joseph Saveri Law Firm ("JSLF"), counsel for the End-Payor Class. My firm represents Local 17 Hospitality Benefit Fund and Steven Roller, and is Liaison Counsel for the End-Payor Plaintiffs. This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.     JSLF specializes in antitrust law and complex civil and class action litigation throughout the United States and globally. Since its founding in 2012, JSLF has prosecuted numerous cases on behalf of individuals and businesses against anticompetitive practices, and has won record and precedent-setting victories in some of the most significant and complex antitrust cases in the country. Representative matters include challenges to price-fixing, monopolization, illegal reverse payments, and no-poaching agreements in diverse industries ranging from pharmaceuticals to sports leagues.

# I.     OVERVIEW

## A.     Work Performed for the Benefit of the End-Payor Class

3.     JSLF has participated in the prosecution of this litigation on behalf of the End-Payor Class since its inception. In its May 23, 2014 Order, the Court appointed JSLF to serve as Liaison Counsel for the End-Payor Plaintiffs. ECF No. 63. As Liaison Counsel, my firm and I performed the duties set forth by the Court, including but not limited to: receiving orders and notices from the Court on behalf of all End-Payor Plaintiffs, preparing and transmitting copies of such orders and notices, and maintaining complete files with copies of all documents served upon End-Payor Plaintiffs. *See id.* at ¶ 3. At the direction of Co-Lead Counsel, my firm also oversaw time-keeping and expense procedures on behalf of all End-Payor Plaintiffs' counsel. In accordance with this duty, my firm and I established time-keeping and expense practices and protocols, maintained and audited monthly time and expense records from all End-Payor Plaintiffs' counsel, and reported to Co-Lead Counsel. *See id.* at ¶ 6. In addition, JSLF performed work on substantive matters in the litigation, including, but not limited to: (1) investigating the facts giving rise to the legal claims in this matter; (2) drafting pleadings, including researching causes of action and drafting portions of End-Payors' consolidated amended complaint; (3) analyzing and organizing documents produced by parties and non-parties during discovery; (4) staffing

and supervising a document review team; (5) researching and drafting discovery dispute letters; (6) preparing for fact witness depositions; (7) motion practice on various issues; (8) class certification, including motion practice before this Court and appellate practice in the Ninth Circuit Court of Appeals, engaging and working with professional economists to analyze economic data and create a report in support of class certification, and preparing for and presenting oral argument to the Court; (9) expert discovery, including deposing one of Defendants' expert witnesses; (10) drafting briefs in support of End-Payors' *Daubert* motions; (11) trial preparation, including drafting *in limine* motions and jury instructions, preparing examination of fact and expert witnesses, and organizing office space for the trial team; (12) settlement negotiations, including participating in alternative dispute resolution and mediation before Magistrate Judge Spero; and (13) preparing papers in connection with class action settlements with Defendants. My office, in particular our Chief of Staff and Office Manager, spent time establishing a joint trial office in San Francisco, shared with trial counsel for the Direct Purchaser Plaintiffs in preparation for the trial in this matter.

**B.    Lodestar Summary**

4.    On June 4, 2014, at Co-Lead Counsel's direction, I wrote a letter setting forth time and expense reporting practices and procedures outlined in the Court's Initial Case Management Order (ECF No. 2) and May 23, 2014 Order Appointing Interim Co-Lead Counsel for the End-Payor Class (ECF No. 63). Consistent with that letter, JSLF attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by JSLF was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

5.    JSLF spent a total of 4091 hours prosecuting this litigation through July 10, 2018, with a corresponding lodestar of $1,994,244.50. The lodestar does not include the substantial time spent on

MDL Docket No. 14-md-02521-WHO

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

6.     The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|---|---|---|---|---|
| Joseph Saveri | Partner | 11.5 | $900.00 | $10,350.00 |
| Joseph Saveri | Partner | 62.9 | $945.00 | $59,440.50 |
| Joseph Saveri | Partner | 13.0 | $960.00 | $12,480.00 |
| Joseph Saveri | Partner | 5.8 | $980.00 | $5,684.00 |
| Joseph Saveri | Partner | 78.6 | $995.00 | $78,207.00 |
| Joseph Saveri | Partner | 8.4 | $1000.00 | $8,400.00 |
| Joshua Davis | Of Counsel | 483.6 | $800.00 | $386,880.00 |
| Joshua Davis | Of Counsel | 45.3 | $850.00 | $38,505.00 |
| Joshua Davis | Of Counsel | 0.7 | $875.00 | $612.50 |
| Kyla Gibboney | Associate | 1,112.4 | $350.00 | $389,340.00 |
| Kyla Gibboney | Associate | 395.9 | $450.00 | $178,155.00 |
| Kyla Gibboney | Associate | 71.1 | $465.00 | $33,061.50 |
| Kyla Gibboney | Associate | 123.9 | $475.00 | $58,852.50 |
| Ryan McEwan | Associate | 245.1 | $350.00 | $85,785.00 |
| Ryan McEwan | Associate | 8.1 | $450.00 | $3,645.00 |
| Ryan McEwan | Associate | 161.5 | $470.00 | $75,905.00 |
| Ryan McEwan | Associate | 190.7 | $490.00 | $93,443.00 |
| Ryan McEwan | Associate | 90.6 | $500.00 | $45,300.00 |
| Ryan McEwan | Associate | 328.5 | $550.00 | $180,675.00 |
| Ryan McEwan | Associate | 29.5 | $575.00 | $16,962.50 |
| Andrew Purdy | Associate | 84.1 | $550.00 | $46,255.00 |
| Matthew Weiler | Associate | 16.4 | $600.00 | $9,840.00 |
| Elissa Buchanan | Associate | 16.2 | $350.00 | $5,670.00 |
| V Chai Oliver Prentice | Associate | 6.0 | $400.00 | $2,400.00 |
| Jonathan Fu | Paralegal | 5.9 | $315.00 | $1,858.50 |
| Jonathan Fu | Paralegal | 210.7 | $330.00 | $69,531.00 |
| Jonathan Fu | Paralegal | 63.4 | $340.00 | $21,556.00 |
| Prem Lall | Paralegal | 39.3 | $315.00 | $12,379.50 |
| Prem Lall | Paralegal | 7.5 | $340.00 | $2,550.00 |
| Chelsea Forthuber | Paralegal | 4.6 | $195.00 | $897.00 |
| Chelsea Forthuber | Paralegal | 9.6 | $275.00 | $2,640.00 |
| Daniel VanDeMortel | Paralegal | 2.6 | $340.00 | $884.00 |
| Benjamin Lang | Paralegal | 1.8 | $340.00 | $612.00 |
| Benjamin Lang | Paralegal | 0.1 | $350.00 | $35.00 |

MDL Docket No. 14-md-02521-WHO

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

| Ellen Taverner | Chief of Staff | 5.0 | $400.00 | $2,000.00 |
| Reed McCalmon | Analyst | 72.5 | $350.00 | $25,375.00 |
| Reed McCalmon | Analyst | 37.4 | $375.00 | $14,025.00 |
| Madison Badertscher | Analyst | 13.0 | $340.00 | $4,420.00 |
| Madison Badertscher | Analyst | 24.0 | $350.00 | $8,400.00 |
| Madison Badertscher | Analyst | 0.6 | $375.00 | $225.00 |
| Douglas Clevenger | Office Manager | 3.2 | $315.00 | $1008.00 |

**C.     Staffing and Tasks Performed on This Matter**

7.     JSLF staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

8.     Joseph R. Saveri: conducting the initial prefiling investigation; reviewing and revising End-Payors' consolidated amended complaint, including the claims brought under the laws of the various *Illinois Brick* repealer states and managing and supervising other attorneys and staff in connection with that task; briefing dispositive motions, including Defendants' motion to dismiss and motion to disqualify lead counsel; as Liaison Counsel, establishing time and expense reporting protocol pursuant to the Court's April 9, 2014 Initial Case Management Order (ECF No. 2), and May 23, 2014 Order Appointing Interim Co-Lead Counsel for the End-Payor Class (ECF No. 63); corresponding and communicating with co-counsel regarding time and expense submissions, managing and supervising staff in connection with this task, managing time audits, and reviewing and providing lodestar reports to Co-Lead Counsel; supervising and managing document review team and fact discovery; engaging and retaining expert economists, and developing expert reports in support of class certification and merits; analyzing defense expert reports and developing strategy regarding *Daubert* motions and summary judgment; engaging in settlement discussions and mediation proceedings before Magistrate Judge Spero.

9.     Joshua P. Davis: conducting prefiling investigation and drafting complaint; developing strategy for and briefing dispositive motions, including End-Payor Plaintiffs' opposition to Defendants' motion to dismiss; researching ethical issues in connection with Defendants' motion to disqualify lead counsel, and advising and developing expert report opposing disqualification; engaging and retaining expert economists, and developing expert reports in support of class certification and merits; class

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

certification, including developing strategy for, and researching and drafting briefs in support of End-Payors' motion for class certification, preparing for and presenting oral argument before this Court in support of the motion, and appellate practice in the Ninth Circuit Court of Appeals, including appellate briefing defending class certification pursuant to Federal Rule of Civil Procedure 23(f).

10.     Kyla J. Gibboney: analyzing and reviewing documents produced by parties and non-parties and creating document review memoranda; preparing for and attending fact witness depositions; researching and drafting letter briefs regarding discovery disputes; class certification, including researching and drafting briefs in support of End-Payors' motion for class certification, and appellate briefing defending class certification pursuant to Federal Rule of Civil Procedure 23(f); preparing for trial, including drafting *in limine* motions, designating deposition transcripts and exhibits, preparing for fact and expert witness examination, and conducting research regarding evidence admissibility.

11.     Ryan J. McEwan: conducting prefiling investigation; researching claims for and drafting End-Payors' consolidated amended complaint; briefing dispositive motions, including End-Payor Plaintiffs' opposition to Defendants' motion to dismiss; overseeing document review team and preparing for fact witness depositions; researching and drafting letter briefs regarding discovery disputes; researching and drafting End-Payors' motion for class certification; preparing for and taking the deposition of defense expert; drafting successful *Daubert* motion to exclude expert testimony; trial preparation, including preparing documents for and attending jury testing groups, drafting *in limine* motions, and attending pretrial conference, and coordinating accommodations for trial team; attending court-mandated case management conferences, and hearings.

12.     Andrew Purdy: conducting pretrial investigation and drafting End-Payors' Consolidated Amended Complaint; briefing opposition to Defendants' motion to dismiss; engaging in case management and strategy; and establishing time keeping and reporting procedures.

13.     Matthew S. Weiler: analyzing and developing economic expert reports and strategy.

14.     Elissa Buchanan: legal research for *in limine* and *Daubert* motions.

15.     V Chai Oliver Prentice: legal research for jury instructions.

16.     Jonathan Fu: providing administrative support to End-Payor firms' time and expense submissions, reviewing reports and corresponding and communicating with End-Payor firms regarding submissions.

17.     Prem Lall: prefiling factual investigation; managing case filings and notices; drafting and filing notices of appearance and other administrative filings with the Court.

18.     Chelsea Forthuber: providing administrative support to End-Payor firms' time and expense submissions, reviewing reports and corresponding and communicating with End-Payor firms regarding submissions.

19.     Dan VanDeMortel: research regarding evidence admissibility in preparation for trial.

20.     Benjamin Lang: preparing exhibits for expert deposition; managing case calendar.

21.     Ellen Taverner: establishing and organizing trial office shared with Direct Purchaser Plaintiffs.

22.     Reed McCalmon: managing and auditing End-Payor firms' time and expense submissions; auditing time and expense submissions, coordinating with End-Payor firms regarding time and expense reports; reporting of time and expenses to End-Payor Class counsel including Co-Lead Counsel.

23.     Madison Badertscher: reviewing End-Payor firms' time and expense submissions and preparing reports and conducting audits of time and expense submissions.

24.     Douglas J. Clevenger: providing administrative support to End-Payor firms' time and expense submissions, reviewing reports and corresponding and communicating with End-Payor firms regarding submissions.

25.     Below is an itemization of time spent by the above-referenced individuals on specific tasks:

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| Joseph R. Saveri | Complaint Drafting and Filing | 20 | $18,996.72 |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | 97.8 | $96,295.00 |
| | Miscellaneous | 62.4 | $59,269.78 |
| | | | |
| Joshua P. Davis | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | 451.0 | $363,007.50 |
| | Miscellaneous | 78.6 | $62,990.00 |
| | | | |
| Kyla J. Gibboney | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | 1,032.5 | $361,375.00 |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | 596.1 | $270,611.50 |
| | Miscellaneous | 74.7 | $27,422.50 |
| | | | |
| Ryan J. McEwan | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | 231.0 | $80,850.00 |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | 727.5 | $375,713.50 |
| | Miscellaneous | 95.5 | $45,152.00 |

7

| | | | |
|---|---|---|---|
| Andrew Purdy | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | 44.1 | $24,255.00 |
| | Miscellaneous | 40.0 | $22,000.00 |
| Matthew Weiler | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | 14.1 | $8,460.00 |
| | Miscellaneous | 2.3 | $1,380.00 |
| Elissa Buchanan | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | 16.2 | $5,670.00 |
| | Miscellaneous | | |
| V Chai Oliver Prentice | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | 6.0 | $2,400.00 |
| | Miscellaneous | | |

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

| Paralegal | Tasks | Hours | Lodestar |
|---|---|---|---|
| Jonathan Fu | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | 42.0 | $14,028.50 |
| | Miscellaneous | 238.0 | $78,917.00 |
| | | | |
| Prem Lall | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | 15.3 | $5,007.00 |
| | Miscellaneous | 31.5 | $9,922.50 |
| | | | |
| Chelsea Forthuber | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | 0.5 | $97.50 |
| | Miscellaneous | 13.7 | $3,439.50 |
| | | | |
| Daniel VanDeMortel | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | 0.6 | $204.00 |
| | Miscellaneous | 2.0 | $680.00 |

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

| | | | |
|---|---|---|---|
| Benjamin Lang | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | 1.4 | $477.00 |
| | Miscellaneous | 0.5 | $170.00 |
| **Other Staff** | **Tasks** | **Hours** | **Lodestar** |
| Ellen Taverner | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | 5.0 | $2,000.00 |
| | Miscellaneous | | |
| | | | |
| Reed McCalmon | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | 32.0 | $11,875.00 |
| | Miscellaneous | 77.9 | $27,525.00 |
| | | | |
| Madison Badertscher | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | 37.6 | $13,045.00 |

DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

| | | | |
|---|---|---|---|
| Douglas Clevenger | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | 3.2 | $1,008.00 |

## II.    HOURLY RATES

26.    Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by JSLF in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

27.    JSLF's hourly rates, including the rates for the specific timekeepers that worked on this matter are those charged and paid for by the firm's hourly clients. In addition, they have been approved in the following matters:

- *In re Capacitors Antitrust Litigation*, Case No. 3:14-cv-03264-JD (N.D. Cal.): Joseph R. Saveri, Joshua P. Davis, Andrew Purdy, Kyla J. Gibboney, Ryan McEwan, Matthew Weiler, Douglas Clevenger, Chelsea Forthuber, Jonathan Fu, Prem Lall, Benjamin Lang.

- *In re Titanium Dioxide Antitrust Litigation*, Case No. 1:10-cv-00318-RDB (D. Md.): Joseph R. Saveri, Joshua P. Davis, Ryan McEwan, Douglas Clevenger, Prem Lall.

- *In re High Tech Employee Antitrust Litigation*, Case No. 4:11-cv-02509-LHK (N.D. Cal.): Joshua P. Davis, Ryan McEwan, Prem Lall

- *In re Cipro Cases I & II*, JCCP Case No. 4154 and 4220 (San Diego Sup. Ct.): Joseph R. Saveri, Joshua P. Davis, Ryan McEwan, Kyla J. Gibboney, Matthew S. Weiler, Chelsea Forthuber, Jonathan Fu, Prem Lall, Benjamin Lang.

28.    Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorneys typical billing rate.

## III.    LITIGATION EXPENSES

29.    Below is an itemized list of the unreimbursed expenses JSLF incurred during the prosecution of this litigation while performing work assigned by Co-Lead Counsel. Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
|---|---|
| Court Fees (filing, etc.) | $800.00 |
| Computer Research (Lexis, Westlaw, PACER, etc.) | $67,180.39 |
| Photocopies – In-House | $4,443.20 |
| Photocopies – Outside (no more than $0.30) | |
| Postage, Courier, Messenger | $643.51 |
| Research (reference materials for expert deposition preparation) | $295.78 |
| Service of Process | $25.00 |
| Translation of Complaint for Service on Japanese Defendant | $1783.25 |
| Transcripts (hearings, depositions, etc.) | $138.85 |
| Travel (airfare, ground transportation) | $1,136.54 |
| Travel (meals and lodging) | $1,265.69 |
| **Total:** | **$77,712.21** |
| **Contributions to Litigation Fund:** | **$250,000.00** |

30.    The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead.  Travel expenses were incurred in connection with the travel to expert depositions. JSLF will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this Declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 31th day of July 2018, at St. Helena, California.

By:      _/s/  Joseph R. Saveri_
         Joseph R. Saveri

EXHIBIT 5

1   Steve D. Shadowen
2   Hilliard & Shadowen LLP
    2407 S. Congress Ave, Ste E 122
3   855-344-3298
    Steve@hilliardshadowenlaw.com
4
5
6
7
8
9
10
11
12               **UNITED STATES DISTRICT COURT**
13              **NORTHERN DISTRICT OF CALIFORNIA**
14
15   In re LIDODERM ANTITRUST LITIGATION          MDL Docket No. 14-md-02521-WHO
16                                                **DECLARATION OF STEVE**
     THIS DOCUMENT RELATES TO:                    **SHADOWEN IN SUPPORT OF END-**
                                                  **PAYOR PLAINTIFF CLASS**
17   ALL ACTIONS                                  **COUNSEL'S MOTION FOR**
                                                  **ATTORNEYS' FEES, EXPENSES, AND**
18                                                **SERVICE AWARDS**
19
20
21
22
23
24
25
26
27
28

I, Steve Shadowen, hereby declare:

1.   I am partner at Hilliard Shadowen LLP, counsel for plaintiff United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund and a member of the Executive Committee for the End-Payor Plaintiffs. This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.   Hilliard Shadowen LLP frequently represents plaintiffs in antitrust class actions against pharmaceutical companies.  The firm is a pioneer in attacking anticompetitive pay-for-delay deals such as the one at issue here.  We are Lead Counsel in a number of pending actions across the country and recently conducted a trial in the *In re Solodyn Antitrust Litigation* matter in the District of Massachusetts.

## I.   OVERVIEW

### A.   Work Performed for the Benefit of the End-Payor Class

3.   Hilliard Shadowen LLP has participated in the prosecution of this litigation on behalf of the End-Payor Class. The work performed by the firm at the direction of Co-Lead Counsel included researching and drafting an initial complaint, reviewing and coding documents, and legal research for class certification.

### B.   Lodestar Summary

4.   In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, Hilliard Shadowen LLP 's attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by Hilliard Shadowen LLP was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment

to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

5.      The total number of hours spent by Hilliard Shadowen LLP prosecuting this litigation through July 10, 2018 is 882.8, with a corresponding lodestar of $362,700.00. The lodestar does not include any time spent on proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

6.      The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|---|---|---|---|---|
| Steve Shadowen | Partner | 9.5 | $850 | $8075.00 |
| Steve Shadowen | Partner | 6.5 | $800 | $5200.00 |
| Elizabeth Arthur | Partner | 149.8 | $650 | $97,370.00 |
| Elizabeth Arthur | Partner | 585 | $350 | $204,750.00 |
| Anne Fornecker | Associate | 14 | $500 | $7,000.00 |
| Bryce Duke | Associate | 34.8 | $450 | $15,280 |
| Sean Nation | Associate | 17.6 | $550 | $9,680.00 |
| Daniel Gonzalez | Associate | 1.2 | $350 | $420.00 |
| Rob George | Associate | 15.7 | $550 | $8635.00 |
| Daniela Ritchie | Paralegal | 13.7 | $200 | $2,740.00 |
| Justin Vatter | Paralegal | 0.5 | $200 | $100.00 |
| Octavio Sanchez | Case Assistant | 34.5 | $100 | $3,450.00 |

**C.      Staffing and Tasks Performed on This Matter**

7.      Hilliard Shadowen LLP staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

8.      Steve Shadowen, Georgetown Law:  Draft and edit the complaint; serve on the executive committee; prepare and attend hearing on disqualification.

9.      Elizabeth Arthur, University of Florida School of Law: Review and code documents; Conduct witness depositions; Motion practice regarding discovery disputes.

10.      Anne Fornecker, Brooklyn Law: Draft and edit the complaint.

11.     Bryce Duke, Baylor Law: Pre-complaint factual research; legal research.

12.     Sean Nation, NYU Law: Legal research for class certification; draft and revise portion of the class certification motion.

13.     Daniel Gonzalez, University of Texas School of Law: Research for the complaint.

14.     Rob George, Baylor Law: Legal research for class certification.

15.     No contract Attorneys were engaged by Hilliard Shadowen to perform work on this matter.

16.     Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|----------|-------|-------|----------|
| Steve Shadowen | Complaint Drafting and Filing | 5 | $4,000 |
|  | Document Review & Deposition Kits |  |  |
|  | Discovery of End-Payor Plaintiffs | 11 | $9,275 |
|  | Client Updates |  |  |
|  | Specific Tasks Assigned by Lead Counsel |  |  |
|  | Miscellaneous |  |  |
|  |  |  |  |
| Elizabeth Arthur | Complaint Drafting and Filing |  |  |
|  | Document Review & Deposition Kits | 585 | $204,750.00 |
|  | Discovery of End-Payor Plaintiffs |  |  |
|  | Client Updates |  |  |
|  | Legal Research, Motion Practice, and Court Hearings | 149.8 | $97,370 |
|  | Miscellaneous |  |  |
|  |  |  |  |
| Anne Fornecker | Complaint Drafting and Filing | 14 | $7,000 |
|  | Document Review & Deposition Kits |  |  |
|  | Discovery of End-Payor Plaintiffs |  |  |
|  | Client Updates |  |  |

| | Specific Tasks Assigned by Lead Counsel | | |
|---|---|---|---|
| | | | |
| | Miscellaneous | | |
| | | | |
| Bruce Duke | Complaint Drafting and Filing | 3.5 | $1,225.00 |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Legal Research | 31.3 | $14,055.00 |
| | Miscellaneous | | |
| | | | |
| Sean Nation | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Legal Research | $17.6 | 9680.00 |
| | Miscellaneous | | |
| | | | |
| Daniel Gonzalez | Complaint Drafting and Filing | 1.2 | $420.00 |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | | |
| | | | |
| Rob George | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Legal Research | 15.7 | $8635.00 |

4

| | Miscellaneous | | |
|---|---|---|---|

## II. HOURLY RATES

17.    Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by Hilliard Shadowen LLP in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

18.    Hilliard Shadowen LLP's hourly rates, including the rates for the specific timekeepers that worked on this matter, have been approved in the following recent matters:

- *In re Solodyn Antitrust Litigation*
- *In re Aggrenox Antitrust Litigation*
- *In re Asacol Antitrust Litigation*
- *In re Doryx Antitrust Litigation*

19.    Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorneys typical billing rate.

## III. LITIGATION EXPENSES

20.    Below is an itemized list of the unreimbursed expenses Hilliard Shadowen LLP incurred during the prosecution of this litigation while performing work assigned by Co-Lead Counsel. Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
|---|---|
| Courts Fees (filing, etc.) | $25.00 |
| Computer Research (Lexis, Westlaw, PACER, etc.) | $2291.15 |
| Document Production | |
| Photocopies – In-House | |
| Photocopies – Outside (no more than $0.30) | |
| Postage, Courier, Messenger | $56.61 |
| Service of Process | |
| Telephone / Facsimile | $60.15 |
| Transcripts (hearings, depositions, etc.) | |

| Travel (airfare, ground transportation) | $1751.27 |
|---|---|
| Travel (meals and lodging) | $1898.04 |
| **Total:** | |
| **Contributions to the Litigation Fund:** | **$10,000** |

21.    The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead.

22.    Hilliard Shadowen LLP will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 20th day of July 2018, at Austin, Texas.

*/s/Steve Shadowen*
Steve Shadowen

EXHIBIT 6

Lori A. Fanning
Miller Law LLC
115 South LaSalle Street. Suite 2910
Chicago, IL 60603
(312) 332-3400
LFanning@MillerLawLLC.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **DECLARATION OF LORI A. FANNING IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

I, Lori A. Fanning, hereby declare:

1.      I am an attorney at Miller Law LLC ("Miller Law"), counsel for plaintiff Painters District Council No. 30 Health & Welfare Fund and which is a member of the Executive Committee for the End-Payor Plaintiffs. This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. As the primary attorney at Miller Law who was responsible to prosecute the claims for the End-Payor class, I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.      Miller Law has over 30 years of class action, antitrust, and complex civil litigation experience.  Miller Law attorneys have been sole lead, co-lead, and members of the executive committee on a litany of antitrust matters in various business sectors, including pharmaceutical antitrust actions.  A few of those notable actions are *In re Polyurethane Antitrust Litigation,* MDL 2196 (N.D. Oh.)($151,250,000 settlement for the End Payor class); *In re Flonase Antitrust Litigation,* 08-cv-3301 (E.D. Pa.)($48 million settlement for the End Payor class); *In re Aggrenox Antitrust Litigation,* MDL 2516 (D. Ct.)($54 million settlement for the End Payor class); *In re Solodyn Antitrust Litigation,* MDL 2503 (D. Mass.).  Additionally, Miller Law is currently prosecuting numerous pharmaceutical antitrust litigation and has co-lead positions, for example, in *In re Niaspan Antitrust Litigation,* MDL 2460 (E.D. Pa.)*, In re Loestrin Antitrust Litigation,* MDL 2472 (D. RI) and *In re: Suboxone Antitrust Litigation,* MDL 2445 (E.D. Pa.).

I.      **OVERVIEW**

        A.      **Work Performed for the Benefit of the End-Payor Class**

3.      Miller Law has participated in the prosecution of this litigation on behalf of the End-Payor Class. The work performed by the firm at the direction of Co-Lead Counsel included legal research and analysis, document and expert report review, identification of deposition witnesses, comments on draft protective and scheduling orders, appear for status hearing, conferring with client, analyze and assess client's data and document production, analyzing and editing pleadings such as complaints, and major motions.

**B.     Lodestar Summary**

4.      In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, Miller Law's attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by Miller Law was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

5.      The total number of hours spent by Miller Law prosecuting this litigation through July 10, 2018 is 1,111.0, with a corresponding lodestar of $423,476.50. The lodestar does not include any time spent on proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

6.      The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|---|---|---|---|---|
| Marvin A. Miller | Attorney | 14.40 | $815 | $ 11,736.00 |
| Lori A. Fanning | Attorney | 97.50 | $600 | $ 58,500.00 |
|  |  | 11.70 | $675 | $  7,897.50 |
| Matthew Van Tine | Attorney | .80 | $685 | $    548.00 |
| Kate E. Boychuck | Attorney | 1.20 | $400 | $    480.00 |
| Stacy Bond | Staff Contract | 3.50 | $450 | $  1,575.00 |
|  | Attorney | 973.00 | $350 | $340,550.00 |
| Anne Jewell | Paralegal | 7.40 | $250 | $  1,860.00 |
| Jorge Ramirez | Paralegal | 1.50 | $220 | 330.00 |

**C.     Staffing and Tasks Performed on This Matter**

7.      Miller Law staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

DECLARATION OF LORI A. FANNING IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S MOTION
FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

8.      Marvin A. Miller, Attorney: confer with client, analyze client data and document production, analyze and comment on proposed scheduling and protective orders and major motions and responses.

9.      Lori A. Fanning, Attorney: confer with client, analyze client data and document production, investigate facts for preparing complaint, legal research and analysis of state claims, draft complaint, analyze and comment on proposed scheduling and protective orders and major motions and responses.

10.     Matthew E. Van Tine, Attorney, conferred on disqualification motion.

11.     Kate Boychuck, Attorney, Legal research and analysis.

12.     Stacy Bond, Staff Contract Attorney, Mr. Bond analyzed and summarized expert reports, analyzed patents and patent expert reports, and was a member of the document review issue team.

13.     Anne Jewell, Paralegal, Appearances, pro hac vice applications, summons, and waiver of service of summons.

14.     Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| Marvin A. Miller | Complaint Drafting and analysis | 6.60 | $5,379.00 |
| | Client Updates | 1.40 | $1,141.00 |
| | Miscellaneous (communications with defense counsel, motion re: disqualification, motion to dismiss) | 6.40 | $5,216.00 |
| | | | |
| Lori A. Fanning | Complaint Drafting and legal and factual research and analysis, confer with | 15.00 | $ 9,000.00 |
| | Discovery of End-Payor Plaintiffs | 4.20 | $ 2,520.00 |
| | Client Updates | .40 | $ 240.00 |
| | Specific Tasks Assigned by Lead Counsel such as analysis and comment on patent litigation, draft protective order, travel to and attend case | 89.60 | $54,637.50 |

3

| | management conference, identify staffing for document review, confer with colleagues on case strategy, analyze case management order, protective order, analysis of major motion papers and expert reports. | | |
|---|---|---|---|
| Matthew E. Van Tine | Consulted regarding defendants' disqualification of lead counsel motion. | .80 | $ 548.00 |
| Kate Boychuck | Legal research and analysis | 1.20 | $ 480.00 |
| Stacy Bond | Document and expert report review & identification of potential deponents | 976.50 | $342,125.00 |

## II.   HOURLY RATES

15.   Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by Miller Law in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

16.   Recently, Miller Law's hourly rates, including the rates for each of these specific timekeepers that worked on this matter, were submitted to courts as a cross-check review for the award of percentage-of-the-fund fees in the following matters:

- *In re Aggrenox Antitrust Litigation,* MDL 2516 (D. Ct.)
- *In re Solodyn Antitrust Litigation,* MDL 2503 (D. Mass.)
- *In re Flonase Antitrust Litigation,* 08-cv-3301 (E.D. Pa.)
- *In re Polyurethane Antitrust Litigation,* MDL 2196 (N.D. Oh.)

17.   Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorneys typical billing rate.

## III.   LITIGATION EXPENSES

18.   Below is an itemized list of the unreimbursed expenses Miller Law incurred during the prosecution of this litigation while performing work assigned by Co-Lead Counsel. Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

4

| Category | Amount Incurred |
|---|---|
| Courts Fees (filing, etc.) | 178.40 |
| Computer Research (Lexis, Westlaw, PACER, etc.) | 56.02 |
| Document Production | |
| Photocopies – In-House | 640.50 |
| Photocopies – Outside (no more than $0.30) | |
| Postage, Courier, Messenger | 7.19 |
| Service of Process | |
| Telephone / Facsimile | |
| Transcripts (hearings, depositions, etc.) | |
| Travel (airfare, ground transportation) | 1,792.85 |
| Travel (meals and lodging) | |
| **Total:** | **2,674.96** |
| **Contributions to the Litigation Fund:** | **60,000.00** |

19.    The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead.  Travel expenses were incurred in connection with counsel's attendance at the initial hearing.

Miller Law will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 23rd day of July 2018, at Chicago, IL.


_/s/ Lori A. Fanning_____
Lori A. Fanning

EXHIBIT 7

1
2
3
4

Michael M. Buchman
**MOTLEY RICE LLC**
600 Third Avenue, Suite 2101
New York, NY 10016
Telephone: (212) 577-0050
Email: mbuchman@motleyrice.com

5
6
7
8
9
10
11
12
13
14

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

15
16
17
18
19
20
21

| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
|---|---|
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **DECLARATION OF MICHAEL M. BUCHMAN IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

22
23
24
25
26
27
28

I, Michael M. Buchman hereby declare:

1.      I am member at Motley Rice LLC ("Motley Rice"), counsel for End-Payor Plaintiffs (EPPs).  My firm represents The City of Providence, Rhode Island, and is a member of the Executive Committee for the EPPs. This Declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

## I.      OVERVIEW

### A.      Work Performed for the Benefit of the End-Payor Class

2.      Motley Rice has participated in the prosecution of this litigation on behalf of the EPPs. The work performed by the firm at the direction of Co-Lead Counsel included development and drafting of the complaint, facilitation of EPP discovery and document production, defending our client's deposition, reviewing defendants' documents, attending a hearing and strategy meeting with co-counsel.

### B.      Lodestar Summary

3.      In accordance with the Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, Motley Rice's attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by Motley Rice was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

4.      The total number of hours spent by Motley Rice prosecuting this litigation through July 10, 2018 is 1,813.8 with a corresponding lodestar of $795,609.50. The lodestar does not include any time spent on proceedings before the Judicial Panel on Multidistrict Litigation or related to the appointment of class counsel.

5.      The following summary chart identifies the individuals who worked on this matter, their titles (Member, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they

worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|----------|-------|-------|-------|----------|
| Buchman, Michael | Member | 12.0 | $350 | $4,200.00 |
| Buchman, Michael | Member | 43.2 | $775 | $33,480.00 |
| Buchman, Michael | Member | 6.0 | $825 | $4,950.00 |
| Buchman, Michael | Member | 106.7 | $875 | $93,362.50 |
| Buchman, Michael | Member | 87.6 | $900 | $78,840.00 |
| Buchman, Michael | Member | 6.7 | $925 | $6,197.50 |
| Buchman, Michael | Member | 0.6 | $950 | $570.00 |
| Camputaro, Elizabeth | Contract Atty | 4.8 | $375 | $1,800 |
| Clemente, Robert | Contract Atty | 499.8 | $350 | $174,930.00 |
| Clemente, Robert | Contract Atty | 25.3 | $495 | $12,523.50 |
| Durba, Erin | Associate | 1.0 | $675 | $675.00 |
| Hassanali, Sabrina | Contract Atty | 7.7 | $395 | $3,041.50 |
| Hollman, Daniel | Associate | 10.3 | $495 | $5,098.50 |
| Ioannou, John | Associate | 581.9 | $350 | $203,665.00 |
| Ioannou, John | Associate | 15.2 | $625 | $9,500.00 |
| Ioannou, John | Associate | 40.3 | $675 | $27,202.50 |
| Issacson, Daniel | Paralegal | 3.4 | $200 | $680.00 |
| Jackson-Bailey, Julie | Contract Atty | 5.1 | $365 | $1,861.50 |
| Korenblit, Lotan | Paralegal | 3.8 | $225 | $855.00 |
| McLaughlin, Lora | Paralegal | 1.0 | $250 | $250.00 |
| Naraine, Nicole | Paralegal | 1.0 | $250 | $250.00 |
| Narwold, Bill | Member | 2.6 | $900 | $2,340.00 |
| Narwold, Bill | Member | 0.3 | $925 | $277.50 |
| Narwold, Bill | Member | 0.5 | $975 | $487.50 |
| Narwold, Bill | Member | 0.6 | $995 | $597 |
| Narwold, Bill | Member | 2.1 | $1,025 | $2,152.50 |
| Narwold, Bill | Member | 0.6 | $1,050 | $630.00 |
| Oliver, Meghan | Associate | 8.8 | $550 | $4,840.00 |
| Sosa, Jennifer | Contract Atty | 3.5 | $480 | $1,680.00 |
| Straus, Alex | Associate | 29.3 | $350 | $10,255.00 |
| Straus, Alex | Associate | 26.3 | $450 | $11,835.00 |
| Weisswasser, Susan | Contract Atty | 275.5 | $350 | $96,425.00 |
| Zolnoski, Michelle | Associate | 0.3 | $525 | $157.50 |

### C.   Staffing and Tasks Performed on This Matter

6.      Motley Rice staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

a. **Michael Buchman (Member)**: Drafting complaint; facilitating document production; coordinating document review; preparing witness and defending client deposition; drafting pleadings; attending a hearing; and meetings with co-counsel.

b. **Elizabeth Camputaro (Contract Attorney)**: factual and legal research.

c. **Robert Clemente (Contract Attorney):** document review.

d. **Erin Durba (Associate):** drafting pleadings.

e. **Sabrina Hassalani (Contract Attorney):** factual and legal research.

f. **Daniel Hollman (Associate):** document review and production of client documents.

g. **John Ioannou (Associate):** Drafting complaint; facilitating document production; document review; preparing for depositions; and drafting pleadings.

h. **Daniel Isaacson (Paralegal):** case administration.

i. **Julie Jackson-Bailey (Contract Attorney):** factual and legal research.

j. **Lotain Korenblit (Paralegal):** case administration.

k. **Lora McLaughlin (Paralegal):** case administration.

l. **Nicole Naraine (Paralegal):** case administration.

m. **Bill Narwold (Member):** strategy and oversight.

n. **Megan Oliver (Associate):** drafting the complaint.

o. **Jennifer Sosa (Contract Attorney):** factual and legal research and document review.

p. **Alex Straus (Associate):** facilitating document production and coordinating document review.

q. **Susan Weisswasser (Contract Attorney):** document review.

r. **Michelle Zolnoski (Associate):** discovery and client coordination.

7. Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| Buchman, Michael | Complaint Drafting and Filing | 7.6 | $6,090.00 |
| | Document Review & Deposition Kits | 12.0 | $4,200 |
| | Discovery of End-Payor Plaintiffs | 180.6 | $159,037.50 |

| | | | |
|---|---|---|---|
| | Client Updates | 4.7 | $4,160.00 |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Court Appearances | 16.0 | $12,400.00 |
| | Experts | 3.8 | $3,295.00 |
| | Peadings | 5.0 | $4,425.00 |
| | Settlement | 3.4 | $3,160.00 |
| | Miscellaneous | 29.7 | $24,832.50 |
| Camputaro, Elizabeth | Miscellaneous | 4.8 | $1,800.00 |
| Clemente, Robert | Document Review & Deposition Kits | 525.1 | $187,453.50 |
| Durba, Erin | Specific Tasks Assigned by Lead Counsel (Pleadings) | 1.0 | $675.00 |
| Hassalani, Sabrina | Miscellaneous | 7.7 | $3041.50 |
| Hollman, Daniel | Discovery of End-Payor Plaintiffs | 10.3 | $5098.5 |
| Ioannou, John | Complaint Drafting and Filing | 7.0 | $4,375.00 |
| | Document Review & Deposition Kits | 581.6 | $203,560.00 |
| | Discovery of End-Payor Plaintiffs | 44.7 | $29,870.00 |
| | Client Updates | 0.3 | $187.50 |
| | Specific Tasks Assigned by Lead Counsel (Pleadings) | 3.5 | $2,187.50 |
| | Miscellaneous | 0.3 | $187.50 |
| Isaacson, Daniel | Miscellaneous | 3.4 | $680.00 |
| Jackson-Bailey, Julie | Miscellaneous | 5.1 | $1,861.50 |
| Korenblit, Lotan | Miscellaneous | 3.8 | $855.00 |
| McLaughlin, Lora | Miscellaneous | 1 | $250.00 |
| Naraine, Nicole | Discovery of End-Payor Plaintiffs | 1 | $250.00 |
| Narwold, Bill | Complaint Drafting and Filing | 0.3 | $277.50 |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Pleadings | 0.5 | $512.50 |
| | Settlement | 0.9 | $937.50 |
| | Miscellaneous | 5.0 | $4,757.00 |
| Oliver, Mehgan | Complaint Drafting and Filing | 8.8 | $4,840.00 |

4

DECLARATION OF MICHAEL M. BUCHMAN IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

| Sosa, Jennifer | Miscellaneous | 3.5 | $1,680.00 |
| Straus. Alex | Document Review & Deposition Kits | 29.3 | $10,255.00 |
| | Discovery of End-Payor Plaintiffs | 1.0 | $450.00 |
| | Miscellaneous | 25.3 | $11,385.00 |
| Weisswasser, Susan | Document Review & Deposition Kits | 275.5 | $96,425.00 |
| Zolnoski, Michelle | Discovery of End-Payor Plaintiffs | 0.3 | $157.50 |

## II.   HOURLY RATES

8.   Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by Motley Rice in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

9.   Motley Rice's hourly rates, including the rates for the specific timekeepers that worked on this matter, have been approved in the following matters: *In re Solodyn Antitrust Litig.*, MDL No. 2503, 14-md-2503-DJC (D. Mass); *In re Aggrenox Antitrust Litig.*, MDL No. 2516, 3:14-md-2516 (D. Conn); *Laumann v. Nat'l Hockey League,* 12-cv-1817 (S.D.N.Y.); *Garber v. Office of the Commisioner of Baseball,* 12-cv-3704 (S.D.N.Y.).

10.   Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorneys typical billing rate.

## III.   LITIGATION EXPENSES

11.   Below is an itemized list of the unreimbursed expenses Motley Rice incurred during the prosecution of this litigation while performing work assigned by Co-Lead Counsel. Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
| --- | --- |
| Courts Fees (filing, etc.) | $650.00 |
| Computer Research (Lexis, Westlaw, PACER, etc.) | $1,066.50 |
| Document Production | $1,011.42 |
| Photocopies – In-House | $278.76 |

| | |
|---|---|
| Photocopies – Outside (no more than $0.30) | $293.23 |
| Postage, Courier, Messenger | $250.80 |
| Service of Process | |
| Telephone / Facsimile | $4.90 |
| Transcripts (hearings, depositions, etc.) | |
| Travel | $4,154.00 |
| **Total:** | **$7,710.36** |
| **Contributions to the Litigation Fund:** | **$85,000.00** |
| **Grand Total** | **$92,710.36** |

12. The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead. Travel expenses were incurred in connection with attendance at a hearing, meetings with co-counsel, and the deposition of The City of Providence, Rhode Island.

Motley Rice will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 27th day of July, 2018, at New York, New York.

*/s/ Michael M. Buchman*
MICHAEL M. BUCHMAN

EXHIBIT 8

1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  PATRICK J. COUGHLIN (111070)
   DAVID W. MITCHELL (199706)
3  BRIAN O. O'MARA (229737)
   LONNIE A. BROWNE (293171)
4  655 West Broadway, Suite 1900
   San Diego, CA 92101
5  Telephone: 619/231-1058
   619/231-7423 (fax)
6  patc@rgrdlaw.com
   davidm@rgrdlaw.com
7  bomara@rgrdlaw.com
   lonnieb@rgrdlaw.com
8
   Attorneys for Plaintiffs
9
                     UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
   In re LIDODERM ANTITRUST          )   MDL Docket No. 14-md-02521-WHO
12 LITIGATION                        )
                                      )   CLASS ACTION
13 _____    )
   This Document Relates To:         )
14                                    )   DECLARATION OF BRIAN O. O'MARA
       ALL ACTIONS.                   )   FILED ON BEHALF OF ROBBINS GELLER
15                                    )   RUDMAN & DOWD LLP IN SUPPORT OF
   _____    )   END-PAYOR PLAINTIFF CLASS
16                                        COUNSEL'S MOTION FOR ATTORNEYS'
                                          FEES, EXPENSES/CHARGES, AND
17                                        SERVICE AWARDS
18
19
20
21
22
23
24
25
26
27
28

1452036_2

1    I, BRIAN O. O'MARA, hereby declare:

2    1.    I am a partner at Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or the

3    "Firm"), counsel for plaintiff NECA-IBEW Welfare Trust Fund ("NECA"). The Firm represents

4    NECA and is a member of the Executive Committee for the End-Payor Plaintiffs. This declaration

5    is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees,

6    Expenses/Charges ("expenses"), and Service Awards. I have personal knowledge of the facts

7    below and, if called upon to do so, could and would testify competently thereto.

8    2.    With almost 200 attorneys practicing in 10 offices across the country, Robbins

9    Geller is the nation's largest plaintiffs' law firm actively engaged in complex class action litigation.

10   Robbins Geller's antitrust practice focuses on representing businesses and individuals who have

11   been the victims of price-fixing, unlawful monopolization, market allocation, tying and other anti-

12   competitive conduct. The Firm has litigated many of the largest federal and state antitrust cases in

13   the United States, including the largest antitrust class action settlement without a government

14   investigation.

     I.    OVERVIEW

15        A.    Work Performed for the Benefit of the End-Payor Class

16   3.    Robbins Geller has participated in the prosecution of this litigation on behalf of the

17   End-Payor Class. The work performed by the Firm at the direction of Co-Lead Counsel included: (a)

18   investigating the claims and drafting pleadings; (b) evaluating NECA's potential exposure and

19   claims; (c) collecting, maintaining, reviewing, and producing client documents and data for

20   discovery purposes; (d) supporting and counseling NECA in complying with its discovery

21   obligations and otherwise fulfilling its duties as a named plaintiff and class representative; (e)

22   evaluating the parties' discovery requests and responses and reviewing voluminous documents

23   produced, including thousands of defendant-produced documents; (f) assisting in the preparation for

24   merits depositions, in particular the depositions or potential depositions of John Spigiel and

25   Matthew Brady; (g) assisting in NECA's deposition preparation, preparing to defend and defending

26   NECA's deposition; (h) assisting plaintiffs' expert in preparing for the class certification motion,

27   preparing NECA for meeting and meeting with plaintiffs' class certification expert in preparation

28

1452036_2

DECL OF BRIAN O'MARA IN SUPPORT OF END-PAYOR CLASS COUNSEL'S
MTN FOR FEES, EXPENSES AND AWARDS - MDL Docket No. 14-md-02521-WHO    - 1 -

1  for motion for class certification; and (i) communications and meetings among the parties and

2  counsel.

3      **B.   Lodestar Summary**

4      4.      In accordance with the Court's direction and Liaison Counsel's June 4, 2014 letter

5  concerning time and expense reporting, Robbins Geller's attorneys and staff kept contemporaneous

6  records of the time they spent on this litigation.  A report that reflects the contemporaneous time entries

7  for the work performed by Robbins Geller was delivered to Co-Lead Counsel for their review.  Co-

8  Lead Counsel and my office have reviewed my Firm's daily time records to ensure compliance with

9  the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and

10  duplication.  Co-Lead Counsel are authorized to submit my Firm's time records for *in camera* review

11  if requested by the Court.

12      5.      The total number of hours spent by Robbins Geller prosecuting this litigation through

13  July 10, 2018 is 1,043.90, with a corresponding lodestar of $429,844.50.  The lodestar does not

14  include any time spent on proceedings before the judicial panel on multidistrict litigation or related

15  solely to the appointment of class counsel.

16      6.      The following summary chart identifies the individuals who worked on this matter,

17  their titles (Partner, Associate, Staff Attorney, Paralegal, and Litigation Support), the total number

18  of hours they worked, their historic hourly billing rates, and their total lodestar.  Additional detail

19  concerning the work performed by each of these individuals is set forth below.

| *NAME* | *TITLE* | *YEAR* | *HOURS* | *RATE* | *LODESTAR* |
|---|---|---|---|---|---|
| Mitchell, David | (P) | 2014 | 8.50 | 680 | 5,780.00 |
| | | 2015 | 6.75 | 710 | 4,792.50 |
| | | 2017 | 5.20 | 760 | 3,952.00 |
| | | 2018 | 0.40 | 835 | 334.00 |
| **TOTAL** | | | **20.85** | | **14,858.50** |

1452036_2

DECL OF BRIAN O'MARA IN SUPPORT OF END-PAYOR CLASS COUNSEL'S
MTN FOR FEES, EXPENSES AND AWARDS - MDL Docket No. 14-md-02521-WHO        - 2 -

| NAME | TITLE | YEAR | HOURS | RATE | LODESTAR |
|------|-------|------|-------|------|----------|
| O'Mara, Brian | (P) | 2013 | 5.05 | 610 | 3,080.50 |
| | | 2014 | 10.40 | 640 | 6,656.00 |
| | | 2015 | 54.30 | 670 | 36,381.00 |
| | | 2016 | 70.80 | 695 | 49,206.00 |
| | | 2017 | 2.80 | 715 | 2,002.00 |
| | | 2018 | 1.45 | 790 | 1,145.50 |
| | | DR | 4.75 | 350 | 1,662.50 |
| **TOTAL** | | | **149.55** | | **100,133.50** |
| Browne, Lonnie | (A) | 2014 | 21.80 | 350 | 7,630.00 |
| | | 2015 | 50.65 | 400 | 20,260.00 |
| | | 2016 | 86.95 | 425 | 36,953.75 |
| | | 2017 | 6.25 | 460 | 2,875.00 |
| | | 2018 | 3.30 | 475 | 1,567.50 |
| | | DR | 25.80 | 350 | 9,030.00 |
| **TOTAL** | | | **194.75** | | **78,316.25** |
| Serra, Vincent | (A) | 2014 | 7.75 | 495 | 3,836.25 |
| **TOTAL** | | | **7.75** | | **3,836.25** |
| Petix, Andrew | (SA) | 2015 | 630.55 | 350 | 220,692.50 |
| | | 2016 | 0.70 | 350 | 245.00 |
| **TOTAL** | | | **631.25** | | **220,937.50** |
| Guyer, Nicole | (LS) | 2015 | 11.25 | 290 | 3,262.50 |
| **TOTAL** | | | **11.25** | | **3,262.50** |
| Keita, C. Oumar | (LS) | 2015 | 1.00 | 290 | 290.00 |
| **TOTAL** | | | **1.00** | | **290.00** |
| Milliron, Christine | (LS) | 2015 | 3.75 | 345 | 1,293.75 |
| **TOTAL** | | | **3.75** | | **1,293.75** |
| Bacci, Melissa | (PL) | 2014 | 1.00 | 295 | 295.00 |
| **TOTAL** | | | **1.00** | | **295.00** |
| Kopko, Christina | (PL) | 2016 | 6.00 | 295 | 1,770.00 |
| **TOTAL** | | | **6.00** | | **1,770.00** |
| Mix, Lisa | (PL) | 2015 | 12.00 | 295 | 3,540.00 |
| | | 2016 | 0.50 | 295 | 147.50 |
| **TOTAL** | | | **12.50** | | **3,687.50** |
| Nielsen, Lee A. | (PL) | 2016 | 0.50 | 295 | 147.50 |
| **TOTAL** | | | **0.50** | | **147.50** |
| Patel, Sonal | (PL) | 2015 | 3.00 | 265 | 795.00 |
| **TOTAL** | | | **3.00** | | **795.00** |

1452036_2

DECL OF BRIAN O'MARA IN SUPPORT OF END-PAYOR CLASS COUNSEL'S
MTN FOR FEES, EXPENSES AND AWARDS - MDL Docket No. 14-md-02521-WHO      - 3 -

| NAME | TITLE | YEAR | HOURS | RATE | LODESTAR |
|------|-------|------|-------|------|----------|
| Williams, Susan | (PL) | 2016 | 0.75 | 295 | 221.25 |
| **TOTAL** | | | **0.75** | | **221.25** |
| **GRAND TOTAL** | | | **1,043.90** | | **$429,844.50** |

(P) Partner
(A) Associate
(SA) Staff Attorney
(LS) Litigation Support
(PL) Paralegal

DR = Document Review

**C.      Staffing and Tasks Performed on This Matter**

7.      Robbins Geller staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience.  The individuals who worked on this matter and general descriptions of the tasks they performed are provided below.

8.      Partner David W. Mitchell managed all aspects of the work performed by Robbins Geller attorneys and staff, counseling NECA and keeping it apprised of important developments throughout the course of the litigation.  Among other things, Mr. Mitchell analyzed court filings (both draft and final forms of such filings), assessed NECA's discovery obligations, and communicated and conferred with counsel about such matters in prosecuting the litigation and advising NECA.

9.      Partner Brian O. O'Mara managed all aspects of the work performed by Robbins Geller attorneys and staff, counseling NECA and keeping it apprised of important developments throughout the course of the litigation.  Among other things, Mr. O'Mara investigated the claims at issue in the case, analyzed NECA's exposure, and drafted the initial complaint.  Mr. O'Mara supported and counseled NECA in fulfilling its discovery obligations, including in collecting, reviewing, and producing documents and data on behalf of NECA.  Mr. O'Mara also helped prepare NECA for its deposition and then defended NECA at its deposition.

10.      Associate Lonnie A. Browne assisted Partners David W. Mitchell and Brian O. O'Mara throughout the course of the litigation, from initial case investigation and complaint drafting through discovery and settlement.  Mr. Browne also assisted NECA in satisfying its discovery obligations, producing documents and preparing for its deposition.

1452036_2

DECL OF BRIAN O'MARA IN SUPPORT OF END-PAYOR CLASS COUNSEL'S
MTN FOR FEES, EXPENSES AND AWARDS - MDL Docket No. 14-md-02521-WHO      - 4 -

11.     Associate Vincent M. Serra investigated the claims, drafted initial pleadings, and evaluated NECA's exposure and claims.

12.     Staff Attorney Andrew Petix reviewed and analyzed voluminous defendant document productions and assisted in the preparation of merits depositions.  Mr. Petix also assisted in reviewing and analyzing NECA's documents in fulfillment of its discovery obligations.

13.     Paralegals Melissa Bacci, Christina Kopko, Lisa Mix, Lee Nielsen, Sonal Patel, and Susan Williams provided general litigation support and case organization.  They proofed various documents and assisted in preparing, organizing and tracking NECA's document and data productions.  Robbins Geller paralegals assisted in various other discovery-related activities as well.

14.     Litigation Support professionals Nicole Guyer, C. Oumar Keita, and Christine Milliron assisted in managing the collection, maintenance, review, and production of NECA's documents and data.  They performed a variety of tasks in this regard, including liaising with NECA support personnel in collecting and loading NECA's documents and data and structuring the database for the most efficient review of these documents and data.

15.     Additional detail about the background of the attorneys and support staff whose time is included herein can be found at the attached Exhibit A.  A more detailed description of the Firm and its accomplishments can be found at https://www.rgrdlaw.com/assets/htmldocuments/resume/Firm_Resume.pdf.

16.     Below is an itemization of time spent by the above-referenced individuals on specific tasks.  While time spent may logically be characterized as falling into one or more of the below tasks, for the purposes of the below itemization, time spent has only been allocated to one discreet task.

| NAME | TASK | HOURS | LODESTAR |
|------|------|-------|----------|
| Mitchell, David (P) | Complaint Drafting | - | - |
| | Document Review & Deposition Kits | 3.00 | 2,130.00 |
| | Discovery of End-Payor Plaintiffs | 4.00 | 2,795.00 |
| | Client Updates | 9.60 | 6,933.50 |
| | Add'l Tasks Assigned by Lead Counsel | - | - |
| | Miscellaneous | 4.25 | 3,000.00 |
| **TOTAL** | | **20.85** | **$14,858.50** |

1452036_2

DECL OF BRIAN O'MARA IN SUPPORT OF END-PAYOR CLASS COUNSEL'S
MTN FOR FEES, EXPENSES AND AWARDS - MDL Docket No. 14-md-02521-WHO        - 5 -

| NAME | TASK | HOURS | LODESTAR |
|---|---|---:|---:|
| O'Mara, Brian (P) | Complaint Drafting | 7.35 | 4,552.50 |
| | Document Review & Deposition Kits | 0.35 | 234.50 |
| | Discovery of End-Payor Plaintiffs | 124.00 | 83,052.00 |
| | Client Updates | 1.95 | 1,401.75 |
| | Add'l Tasks Assigned by Lead Counsel[1] | 3.25 | 2,258.75 |
| | Miscellaneous | 12.65 | 8,634.00 |
| **TOTAL** | | **149.55** | **$100,133.50** |
| Browne, Lonnie (A) | Complaint Drafting | 4.75 | 1,662.50 |
| | Document Review & Deposition Kits | 1.90 | 695.00 |
| | Discovery of End-Payor Plaintiffs | 143.60 | 58,188.75 |
| | Client Updates | 18.80 | 8,016.75 |
| | Add'l Tasks Assigned by Lead Counsel | - | - |
| | Miscellaneous | 25.70 | 9,753.25 |
| **TOTAL** | | **194.75** | **$78,316.25** |
| Serra, Vincent (A) | Complaint Drafting | 7.75 | 3,836.25 |
| | Document Review & Deposition Kits | - | - |
| | Discovery of End-Payor Plaintiffs | - | - |
| | Client Updates | - | - |
| | Add'l Tasks Assigned by Lead Counsel | - | - |
| | Miscellaneous | - | - |
| **TOTAL** | | **7.75** | **$3,836.25** |
| Petix, Andrew (SA) | Complaint Drafting | - | - |
| | Document Review & Deposition Kits | 616.75 | 215,862.50 |
| | Discovery of End-Payor Plaintiffs | 0.70 | 245.00 |
| | Client Updates | - | - |
| | Add'l Tasks Assigned by Lead Counsel[2] | 13.80 | 4,830.00 |
| | Miscellaneous | - | - |
| **TOTAL** | | **631.25** | **$220,937.50** |

[1]   Additional tasks included preparing for and meeting with plaintiffs' class certification expert and preparing client to meet with plaintiffs' class certification expert in preparation for filing of motion for class certification.

[2]   Additional tasks included reviewing and analyzing defendants' privilege logs, assisting lead counsel in assessing and potentially challenging certain of defendants' privilege log entries.

1452036_2

DECL OF BRIAN O'MARA IN SUPPORT OF END-PAYOR CLASS COUNSEL'S
MTN FOR FEES, EXPENSES AND AWARDS - MDL Docket No. 14-md-02521-WHO     - 6 -

| NAME | TASK | HOURS | LODESTAR |
|------|------|-------|----------|
| Guyer, Nicole (LS) | Complaint Drafting | - | - |
| | Document Review & Deposition Kits | - | - |
| | Discovery of End-Payor Plaintiffs | 11.25 | 3,262.50 |
| | Client Updates | - | - |
| | Add'l Tasks Assigned by Lead Counsel | - | - |
| | Miscellaneous | - | - |
| **TOTAL** | | **11.25** | **$3,262.50** |
| Keita, C. Oumar (LS) | Complaint Drafting | - | - |
| | Document Review & Deposition Kits | - | - |
| | Discovery of End-Payor Plaintiffs | 1.00 | 290.00 |
| | Client Updates | - | - |
| | Add'l Tasks Assigned by Lead Counsel | - | - |
| | Miscellaneous | - | - |
| **TOTAL** | | **1.00** | **$290.00** |
| Milliron, Christine (LS) | Complaint Drafting | - | - |
| | Document Review & Deposition Kits | - | - |
| | Discovery of End-Payor Plaintiffs | 3.75 | 1,293.75 |
| | Client Updates | - | - |
| | Add'l Tasks Assigned by Lead Counsel | - | - |
| | Miscellaneous | - | - |
| **TOTAL** | | **3.75** | **$1,293.75** |
| Bacci, Melissa (PL) | Complaint Drafting | 1.00 | 295.00 |
| | Document Review & Deposition Kits | - | - |
| | Discovery of End-Payor Plaintiffs | - | - |
| | Client Updates | - | - |
| | Add'l Tasks Assigned by Lead Counsel | - | - |
| | Miscellaneous | - | - |
| **TOTAL** | | **1.00** | **$295.00** |
| Kopko, Christina (PL) | Complaint Drafting | - | - |
| | Document Review & Deposition Kits | - | - |
| | Discovery of End-Payor Plaintiffs | 6.00 | 1,770.00 |
| | Client Updates | - | - |
| | Add'l Tasks Assigned by Lead Counsel | - | - |
| | Miscellaneous | - | - |
| **TOTAL** | | **6.00** | **$1,770.00** |

1452036_2

DECL OF BRIAN O'MARA IN SUPPORT OF END-PAYOR CLASS COUNSEL'S
MTN FOR FEES, EXPENSES AND AWARDS - MDL Docket No. 14-md-02521-WHO         - 7 -

| NAME | TASK | HOURS | LODESTAR |
|---|---|---|---|
| Mix, Lisa (PL) | Complaint Drafting | - | - |
| | Document Review & Deposition Kits | - | - |
| | Discovery of End-Payor Plaintiffs | 12.50 | 3,687.50 |
| | Client Updates | - | - |
| | Add'l Tasks Assigned by Lead Counsel | - | - |
| | Miscellaneous | - | - |
| **TOTAL** | | **12.50** | **$3,687.50** |
| Nielsen, Lee A.  (PL) | Complaint Drafting | - | - |
| | Document Review & Deposition Kits | - | - |
| | Discovery of End-Payor Plaintiffs | 0.50 | 147.50 |
| | Client Updates | - | - |
| | Add'l Tasks Assigned by Lead Counsel | - | - |
| | Miscellaneous | - | - |
| **TOTAL** | | **0.50** | **$147.50** |
| Patel, Sonal (PL) | Complaint Drafting | - | - |
| | Document Review & Deposition Kits | - | - |
| | Discovery of End-Payor Plaintiffs | 3.00 | 795.00 |
| | Client Updates | - | - |
| | Add'l Tasks Assigned by Lead Counsel | - | - |
| | Miscellaneous | - | - |
| **TOTAL** | | **3.00** | **$795.00** |
| Williams, Susan (PL) | Complaint Drafting | - | - |
| | Document Review & Deposition Kits | - | - |
| | Discovery of End-Payor Plaintiffs | 0.75 | 221.25 |
| | Client Updates | - | - |
| | Add'l Tasks Assigned by Lead Counsel | - | - |
| | Miscellaneous | - | - |
| **TOTAL** | | **0.75** | **$221.25** |
| *GRAND TOTAL* | | *1,043.90* | *$429,844.50* |

(P) Partner            (LS) Litigation Support

(A) Associate          (PL) Paralegal

(SA) Staff Attorney

## II.    HOURLY RATES

17.    Other than work subject to a case-wide rate cap, the historical hourly rates submitted by Robbins Geller in this matter are the Firm's usual and customary rates charged by the Firm in similar matters.

1452036_2

DECL OF BRIAN O'MARA IN SUPPORT OF END-PAYOR CLASS COUNSEL'S
MTN FOR FEES, EXPENSES AND AWARDS - MDL Docket No. 14-md-02521-WHO      - 8 -

18.     Robbins Geller's hourly rates have been accepted in other complex or class action litigation, subject to subsequent annual increases.  Some recent examples include:

- *In re Ply Gem Holdings, Inc. Sec. Litig.*, No. 1:14-cv-03577, ECF No. 126 (S.D.N.Y. July 3, 2018);

- *KBC Asset Management NV v. 3D Systems Corp., et al.*, No. 0:15-cv-02393, ECF No. 190 (D.S.C. June 25, 2018);

- *Shankar v. Imperva, Inc., et al.*, No. 4:14-cv-01680, ECF No. 164 (N.D. Cal. Jan. 31, 2018); and

- *Marcus v. J.C. Penney Co., Inc.*, No. 6:13-cv-00736, ECF No. 180 (E.D. Tex. Jan. 5, 2018).

19.     Robbins Geller's hourly rates have been accepted in other antitrust litigation as well, including *Dahl v. Bain Capital Partners, LLC*, No. 1:07-cv-12388, ECF No. 1095 (D. Mass. Feb. 2, 2015).

20.     Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorney's typical billing rate.

## III.     LITIGATION EXPENSES

21.     The Firm seeks an award of $108,185.86 in expenses in connection with the prosecution of the litigation.  Those expenses, summarized below, are reflected in the Firm's books and records that are regularly maintained in the ordinary course of the Firm's business and are based on the receipts and data maintained by the Firm.

| CATEGORY | | AMOUNT |
|---|---|---|
| Filing, Witness and Other Fees | | $        689.75 |
| Transportation, Hotels & Meals | | 14,154.51 |
| Postage | | 350.99 |
| Messenger, Overnight Delivery | | 129.74 |
| Photocopies | | 5,833.45 |
| Outside | $ 5,197.50 | |
| In-House Black and White (4,193 copies at $0.15 per page) | 628.95 | |
| In-House Color (14 copies at $0.50 per page) | 7.00 | |
| Online Legal and Financial Research | | 2,027.42 |
| Litigation Fund Contribution | | 85,000.00 |
| **TOTAL** | | **$ 108,185.86** |

1452036_2

DECL OF BRIAN O'MARA IN SUPPORT OF END-PAYOR CLASS COUNSEL'S
MTN FOR FEES, EXPENSES AND AWARDS - MDL Docket No. 14-md-02521-WHO        - 9 -

22.     The expenses listed above, including computer research, were specifically for this case and do not include any costs for general firm overhead.  All outside photocopies were paid for in connection with collecting and processing NECA's documents and data in fulfillment of its discovery obligations.  Similarly, travel expenses (Transportation, Hotels & Meals) were primarily in connection with fulfilling NECA's discovery obligation, both in counseling NECA on the document and data collection, review, and production process and preparing for and defending NECA's deposition.

23.     Robbins Geller will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 19th day of July, 2018, at San Diego, California.

_____
BRIAN O. O'MARA

DECL OF BRIAN O'MARA IN SUPPORT OF END-PAYOR CLASS COUNSEL'S
MTN FOR FEES, EXPENSES AND AWARDS - MDL Docket No. 14-md-02521-WHO      - 10 -

# EXHIBIT A

**ROBBINS GELLER RUDMAN & DOWD LLP**

**ATTORNEY AND STAFF QUALIFICATIONS**

**David W. Mitchell**
**Partner**

David Mitchell is a partner in the Firm's San Diego office and focuses his practice on securities fraud, antitrust and derivative litigation. He leads the Firm's antitrust benchmark litigations as well as the Firm's pay-for-delay actions. He has served as lead or co-lead counsel in numerous cases and has helped achieve substantial settlements for shareholders. His most notable cases include *Dahl v. Bain Capital Partners, LLC*, obtaining more than $590 million for shareholders, and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig*. Additionally, Mitchell served as class counsel in the ISDAfix Benchmark action against 14 major banks and broker ICAP plc, obtaining more than $500 million for plaintiffs (pending final approval). Currently, Mitchell serves as court-appointed counsel in *In re Aluminum Warehousing Antitrust Litig*.

Prior to joining the Firm, he served as an Assistant United States Attorney in the Southern District of California and prosecuted cases involving narcotics trafficking, bank robbery, murder-for-hire, alien smuggling, and terrorism. Mitchell has tried nearly 20 cases to verdict before federal criminal juries and made numerous appellate arguments before the Ninth Circuit Court of Appeals.

**Education:**
B.A., University of Richmond, 1995; J.D., University of San Diego School of Law, 1998

**Honors/Awards:**
Member, Enright Inn of Court; Best Lawyer in America, *Best Lawyers*®, 2018; Super Lawyer, 2016-2018; Antitrust Trailblazer, *The National Law Journal*, 2015; "Best of the Bar," *San Diego Business Journal*, 2014

**Brian O. O'Mara**
**Partner**

Brian O'Mara is a partner in the Firm's San Diego office. His practice focuses on complex securities and antitrust litigation. Since 2003, O'Mara has served as lead or co-lead counsel in numerous shareholder and antitrust actions, including: *Bennett v. Sprint Nextel Corp*. (D. Kan.) ($131 million recovery); *In re CIT Grp. Inc. Sec. Litig.* (S.D.N.Y.) ($75 million recovery); *In re MGM Mirage Sec. Litig.* (D. Nev.) ($75 million recovery); *C.D.T.S. No. 1 v. UBS AG* (S.D.N.Y.); *In re Aluminum Warehousing Antitrust Litig.* (S.D.N.Y.); and *Alaska Elec. Pension Fund v. Bank of Am. Corp.* (S.D.N.Y.). Most recently, O'Mara served as class counsel in the ISDAfix Benchmark action against 14 major banks and broker ICAP plc, obtaining more than $500 million for plaintiffs (pending final approval).

O'Mara has been responsible for a number of significant rulings, including: *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44 (S.D.N.Y. 2016); *Bennett v. Sprint*

*Nextel Corp.*, 298 F.R.D. 498 (D. Kan. 2014); *In re MGM Mirage Sec. Litig.*, 2013 U.S. Dist. LEXIS 139356 (D. Nev. 2013*)*; *In re Constar Int'l, Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 16966 (E.D. Pa. 2008), *aff'd*, 585 F.3d 774 (3d Cir. 2009); *In re Direct Gen. Corp. Sec. Litig.*, 2006 U.S. Dist. LEXIS 56128 (M.D. Tenn. 2006); and *In re Dura Pharm., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005 (S.D. Cal. 2006). Prior to joining the Firm, he served as law clerk to the Honorable Jerome M. Polaha of the Second Judicial District Court of the State of Nevada.

**Education:**
B.A., University of Kansas, 1997; J.D., DePaul University, College of Law, 2002

**Honors/Awards:**
Super Lawyer, 2016-2018; CALI Excellence Award in Securities Regulation, DePaul University, College of Law

**Lonnie A. Browne**
**Associate**

Lonnie Browne is an associate in the Firm's San Diego office, where his practice focuses on complex antitrust and securities litigation. Most recently, he served as class counsel in the ISDAfix Benchmark action against 14 major banks and broker ICAP plc, obtaining more than $500 million for plaintiffs (pending final approval). He earned his Bachelor of Arts degree in History from Stanford University. After teaching and coaching at Damien High School in La Verne, California, Browne attended the University of San Diego School of Law, receiving his Juris Doctor degree. During law school, Browne served as comments editor on the *San Diego International Law Journal* and as a teaching assistant for Professor Alastair J. Agcaoili. He also earned a Community Service Grant from the School of Law to work with San Diego's Employee Rights Center and advocate for members of the United Domestic Workers of America. In addition, Browne worked at the Law Offices of Robert Vaage and served as a judicial extern for the Honorable William McCurine, Jr. of the United States District Court for the Southern District of California.

**Education:**
B.A., Stanford University, 2008; J.D., University of San Diego School of Law, 2013

**Vincent Serra**
**Associate**

Vincent Serra is an associate in the Firm's Melville office and focuses his practice on complex antitrust, consumer, employment and securities litigation. His efforts have contributed to the recovery of billions of dollars on behalf of aggrieved plaintiffs and class members. Serra has contributed to several significant antitrust recoveries, including *In re Currency Conversion Fee Antitrust Litig.* ($336 million recovery) and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.* Serra was also a member of the team of attorneys who recently secured a $590.5 million settlement on behalf of investors in *Dahl v. Bain Capital Partners, LLC*, an antitrust action against some of the world's largest and most powerful private equity firms alleging collusive practices in multi-billion dollar leveraged buyouts.

**Education:**
B.A., University of Delaware, 2001; J.D., California Western School of Law, 2005

**Honors/Awards:**
Wiley W. Manuel Award for Pro Bono Legal Services, State Bar of California

**Andrew Petix**
**Staff Attorney**

Andrew Petix is a staff attorney in the Firm's San Diego office, where his practice focuses on antitrust and securities litigation.  He earned his Bachelor of Arts degree in Political Science with a Minor in Law & Society from University of California San Diego (UCSD).  After working in the real estate field in San Diego, Petix attended the University of San Diego School of Law, receiving his Juris Doctor degree.  In law school, Petix served as a teaching assistant for Professor Wendy Garewal.  In addition, Petix interned  at the Law Firm of Taylor | Anderson, as well as the Law Firm of Paul S. Murray.

**Education:**
B.A., University of California San Diego, 2003; J.D., University of San Diego School of Law, 2012

**Lee Nielsen**
**Paralegal**

Lee Nielsen is the head paralegal in the Firm's San Diego office, where she has provided paralegal support for over 27 years.  Nielsen is responsible for providing paralegal support at the case inception stage and has worked on notable cases such as *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.).  Nielsen earned a Bachelor of Arts degree in Anthropology from San Diego State University and obtained an ABA-approved Lawyer's Assistant Program Certificate from University of San Diego.

**Christina Kopko**
**Paralegal**

Christina Kopko is a paralegal in the Firm's San Diego office, where she has provided paralegal support for over 14 years.  Kopko has served as a paralegal on several notable cases, including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-md-1720 (E.D.N.Y.).  Kopko earned a Bachelor of Arts degree in Political Science from University of California, Irvine and obtained an ABA-approved Paralegal Certificate from University of California, San Diego, Extension.

**Melissa Bacci**
**Paralegal**

Melissa Bacci is a paralegal in the Firm's San Diego office, where she has provided paralegal support for over 10 years.  Bacci has served as a paralegal on several notable cases, including the *Trump University* class actions (S.D. Cal.) and *In re Morning Song Bird Food Litig.*, No. 3:12-cv-01592 (S.D. Cal.).  Bacci earned a Bachelor of Arts degree in Sociology from the University

of California, San Diego, and obtained an ABA-approved Paralegal Certificate from University of San Diego.

**Sonal Patel**
**Paralegal**

Sonal Patel was a paralegal in the Firm's San Diego office, where she provided paralegal support for over 8 years. Patel earned a Bachelor of Arts degree in Criminology, Law and Society from the University of California, Irvine and obtained an ABA-approved Paralegal Certificate from University of California, San Diego, Extension.

**Susan Williams**
**Paralegal**

Susan Williams is a paralegal in the Firm's San Diego office, where she has provided paralegal support for over 20 years. Williams has served as a paralegal in over 75 securities fraud cases, including those brought in the Northern District of California. Notable cases which Williams supported include *Alaska Elec. Pension Fund v. CitiGroup, Inc.* (*In re WorldCom Sec. Litig.*), No. 03 Civ. 8269 (S.D.N.Y.), and *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.). Williams received her Bachelor of Science degree in Business Administration with an emphasis on Marketing from San Diego State University and earned an ABA-approved Lawyer's Assistant Program Certificate with Honors from University of San Diego.

**Lisa Mix**
**Paralegal**

Lisa Mix is a paralegal in the Firm's San Diego office, where she has provided paralegal support for 13 years. Mix has served as a paralegal on several notable cases, including *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.), and the *Trump University* class actions (S.D. Cal.). Mix earned a Bachelor of Arts degree in Sociology from University of San Diego and obtained an ABA-approved Paralegal Certificate from University of San Diego.

**Christine Milliron**
**Litigation Support**

Christine Milliron has been with the Firm since May 2004. Education/Qualifications: BA, Business Administration, Management Information Systems, Washington State University, May 2001; Relativity Certified Administrator (received certification September 2011 and has been kept current); Steering Committee for Relativity User Group – San Diego Chapter (2016 to Current); Panelist speaker on law firm best practices for court reporting (January 2018); attendance at many ESI sessions (San Diego ESI Forum, Legal Tech New York, Relativity User Group Quarterly session, ESI webinars, Relativity educational content, etc.); member of Women in eDiscovery; member of the Firm's eDiscovery Practice Group; member of the Firm's Data Privacy Group.

**Nicole Guyer**
**Litigation Support**

Nicole Guyer was employed by the Firm from June 2013 through June 2017. Education/Qualifications: BA, Political Science, San Diego State University, December 2008; MA, Political Science, San Diego State University, May 2012; Paralegal Certificate, Attorney Attestation, April 2013; Relativity Certified Administrator, October 2014; Relativity Review Specialist, December 2014.

**C. Oumar Keita**
**Litigation Support**

C. Oumar Keita has been with the Firm since April 2013. Education/Qualifications: BA, Multimedia, University of Advancing Technology, 2004; Harvester Certification, May 2018.

EXHIBIT 9

1
2
3
4
5

Michael Coren
Cohen, Placitella & Roth, P.C.
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
215-567-3500
mcoren@cprlaw.com

6
7
8

9        **UNITED STATES DISTRICT COURT**

10       **NORTHERN DISTRICT OF CALIFORNIA**

11

12   In re LIDODERM ANTITRUST LITIGATION

13

14   THIS DOCUMENT RELATES TO:

15   ALL ACTIONS

16
17
18
19
20
21
22
23
24
25
26
27
28

MDL Docket No. 14-md-02521-WHO

**DECLARATION OF MICHAEL
COREN IN SUPPORT OF END-
PAYOR PLAINTIFF CLASS
COUNSEL'S MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND
SERVICE AWARDS**

I, Michael Coren, hereby declare:

1.      I am a member of Cohen, Placitella & Roth, P.C. ("CPR"), counsel for plaintiffs Teamsters Union Local 115 Health & Welfare Fund, International Association of Fire Fighters Local 22 Health & Welfare Fund and Philadelphia Federation of Teachers Health & Welfare Fund. This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.      CPR has over four decades of experience in class actions and other aggregate and mass tort litigation. It has been appointed class counsel in numerous cases and appointed to serve on MDL and State and bankruptcy court equivalent steering/executive committees. Over the years CPR has achieved numerous multi-million-dollar recoveries in complex class action litigation cases involving securities fraud, shareholder derivative, antitrust, consumer, medical device and pharmaceutical products liability cases.

## I.      OVERVIEW

### A.      Work Performed for the Benefit of the End-Payor Class

3.      CPR has participated in the prosecution of this litigation on behalf of the End-Payor Class. The work performed by the firm at the direction of Co-Lead Counsel included drafting, reviewing, editing, finalizing and filing initial complaints on behalf of clients, reviewing and editing final ESI and protective order, reviewing and editing case management statement, obtaining and reviewing clients' data for lead counsel and communicating with clients.

### B.      Lodestar Summary

4.      In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, CPR's attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by CPR was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

DECLARATION OF MICHAEL COREN IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

5. The total number of hours spent by CPR prosecuting this litigation through July 10, 2018 is 72.1, with a corresponding lodestar of $49,012.50. The lodestar does not include any time spent on proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

6. The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|----------|-------|-------|-------|----------|
| Michael Coren | Partner | 2.3 | 825.00 | 1,897.5 |
| Jacob A. Goldberg | Partner | 69.8 | 675.00 | 47,115.00 |

**C.    Staffing and Tasks Performed on This Matter**

7. CPR staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

      a. **Michael Coren**, (Cleveland State University, Cleveland-Marshall College of Law, J.D. 1979), a partner at CPR, has represented clients in a number of multi-million class action cases in state and federal courts nationwide. In this case, Mr. Coren reviewed, edited, and finalized initial complaints on behalf of class members.

      b. **Jacob A. Goldberg**, (Temple University School of Law, J.D. 1992), represents clients in complex litigation and class actions nationwide. In this case, Mr. Goldberg drafted, reviewed, edited, and filed initial complaints, obtained and reviewed clients' data and frequently communicated with clients regarding the litigation.

8. Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|----------|-------|-------|----------|
| Michael Coren | Complaint Drafting and Filing | 2.3 | 1,897.5 |

2

| | | | |
|---|---|---|---|
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | | |
| | | | |
| Jacob A. Goldberg | Complaint Drafting and Filing | 20 | 13,500.00 |
| | Document Review & Deposition Kits | 1.3 | 877.50 |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | 11.5 | 7,762.50 |
| | Specific Tasks Assigned by Lead Counsel, including reviewing and completing client questionnaires and communications with clients regarding information and data required for questionnaires | 14.1 | 9,517.50 |
| | Miscellaneous | 22.9 | 15,457.50 |

## II. HOURLY RATES

9.     Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by CPR in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

10.     CPR's hourly rates, including the rates for the specific timekeepers that worked on this matter, have been approved in the following matters:

- *In re: Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, MDL no. 1203, (E.D. Pa.);

- *In re: Evergreen Ultra Short Opportunities Fund SEC Litigation*, no. 1:08-CV-11064-NMG, (D. Mass.);

- *Sanchez-Knutson v. Ford Motor Company*, Case No. 0:14-cv-61344, (S.D. Fla.).

Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorneys typical billing rate.

**III. LITIGATION EXPENSES**

11.      Below is an itemized list of the unreimbursed expenses CPR incurred during the prosecution of this litigation while performing work assigned by Co-Lead Counsel. Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
| --- | --- |
| Courts Fees (filing, etc.) | $400.00 |
| Computer Research (Lexis, Westlaw, PACER, etc.) | |
| Document Production | |
| Photocopies – In-House | |
| Photocopies – Outside (no more than $0.30) | $349.01 |
| Postage, Courier, Messenger | |
| Service of Process | |
| Telephone / Facsimile | |
| Transcripts (hearings, depositions, etc.) | |
| Travel (airfare, ground transportation) | |
| Travel (meals and lodging) | |
| **Total:** | **$749.01** |
| **Contributions to the Litigation Fund:** | |

12.      The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead.

CPR will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20 day of July 2018, at Philadelphia, Pennsylvania.


*/s/ Michael Coren*
MICHAEL COREN

EXHIBIT 10

1   William H. London
    Freed Kanner London & Millen LLC
2   2201 Waukegan Road, Suite 130
    Bannockburn, IL  60015
3   (224) 632-4500
    blondon@fklmlaw.com
4

5

6

7

8

9

10

11

12
                    **UNITED STATES DISTRICT COURT**
13
                    **NORTHERN DISTRICT OF CALIFORNIA**
14

15   | In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |

16   THIS DOCUMENT RELATES TO:          **DECLARATION OF WILLIAM H.
                                        LONDON IN SUPPORT OF END-
17                                      PAYOR PLAINTIFF CLASS
                                        COUNSEL'S MOTION FOR
18   ALL ACTIONS                        ATTORNEYS' FEES, EXPENSES, AND
                                        SERVICE AWARDS**
19

20

21

22

23

24

25

26

27

28

I, WILLIAM H. LONDON, hereby declare:

1.      I am a partner at Freed Kanner London & Millen LLC ("FKLM"), counsel for plaintiff United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund. This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.      FKLM has one of the country's most prominent and respected class action practices. FKLM partners have successfully prosecuted class action cases with a focus on antitrust matters for more than 30 years.

## I.      OVERVIEW

### A.      Work Performed for the Benefit of the End-Payor Class

3.      FKLM has participated in the prosecution of this litigation on behalf of the End-Payor Class. The work performed by the firm at the direction of Co-Lead Counsel included the review and analysis of documents produced by the Defendants.

### B.      Lodestar Summary

4.      In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, FKLM's attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by FKLM was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

5.      The total number of hours spent by FKLM prosecuting this litigation through July 10, 2018 is 667.5, with a corresponding lodestar of $235,117.00. The lodestar does not include any time spent on proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

6.      The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they

1

worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|---|---|---|---|---|
| William H. London | Partner | .3 | $350 | $105.00 |
| William H. London | Partner | 2.7 | $660 | $1,782.00 |
| William H. London | Partner | .3 | $680 | $204.00 |
| William H. London | Partner | .8 | $690 | $552.00 |
| William H. London | Partner | .2 | $745 | $149.00 |
| William H. London | Partner | .5 | $760 | $380.00 |
| Gary Saposnik | Of Counsel | 662.7 | $350 | $231,945.00 |
| Total | | 667.5 | | $235,117.00 |

## C.   Staffing and Tasks Performed on This Matter

7.      FKLM staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

8.      William H. London, the Partner from FKLM who oversaw FKLM's participation in the case, including the supervision of FKLM's participation in the document review project, is a 1987 graduate from IIT Chicago-Kent College of Law. Mr. London has been involved in class action litigation since 1990.

9.      Gary Saposnik is a contract attorney who has worked extensively on numerous document review projects in class action cases over the past five years.  He is a 1982 graduate of Loyola Law School-Los Angeles.  At the direction of Lead Counsel, Mr. Saposnik analyze and code documents produced by the Defendants.

10.      Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| William H. London | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | 1.0 | $622.00 |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | | |

2

| | Miscellaneous | 3.8 | $2,550.00 |
|---|---|---|---|
| | | | |
| Gary Saposnik | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | 662.7 | $231,945.00 |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | | |

## II.    HOURLY RATES

11.    Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by FKLM in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

12.    FKLM's hourly rates, including the rates for the specific timekeepers that worked on this matter, have been approved in the following matters:

- William H. London's hourly rates have been approved by the courts in numerous cases, including, but not limited to:  *In re Static Random Access Memory (SRAM) Antitrust*, MDL No. 1819 (N.D. Cal.); *In re:  Optical Disk Drive Antitrust Litigation*, MDL No. 2143 (N.D. Cal.); *In re Occupant Safety Systems*, No. 12-MD-02311 (E.D. Mich.).

- Gary Saposnik's hourly rate has been capped at $350 per hour in accordance with the guidelines set by Lead Counsel.

13.    Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorneys typical billing rate.

## III.    LITIGATION EXPENSES

14.    Below is an itemized list of the unreimbursed expenses FKLM's incurred during the prosecution of this litigation while performing work assigned by Co-Lead Counsel. Those expenses are

3

reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
|---|---|
| Courts Fees (filing, etc.) | |
| Computer Research (Lexis, Westlaw, PACER, etc.) | |
| Document Production | |
| Photocopies – In-House | |
| Photocopies – Outside (no more than $0.30) | $3.20 |
| Postage, Courier, Messenger | $27.58 |
| Service of Process | |
| Telephone / Facsimile | |
| Transcripts (hearings, depositions, etc.) | |
| Travel (airfare, ground transportation) | |
| Travel (meals and lodging) | |
| **Total:** | **$30.78** |
| **Contributions to the Litigation Fund:** | **$35,000.00** |

15.     The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead.

FKLM will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 18th day of July 2018, at Bannockburn, Illinois.

William H. London

WILLIAM H. LONDON

EXHIBIT 11

Lee Albert
GLANCY PRONGAY & MURRAY LLP
230 Park Avenue
Suite 530
New York, NY 10169
Tel: (212) 682-5340
Email: lalbert@glancylaw.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **DECLARATION OF LEE ALBERT IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

1    I, Lee Albert, hereby declare:

2         1.      I am a partner at Glancy Prongay & Murray LLP counsel for plaintiff Plumbers &

3 Pipefitters Local 178 Health & Welfare Trust Fund. This declaration is submitted in support of End-

4 Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have

5 personal knowledge of the facts below and, if called upon to do so, could and would testify

6 competently thereto.

7         2.      Glancy Prongay & Murray LLP has represented businesses, investors, and consumers

8 for nearly 25 years. With offices in New York City, Los Angeles, and Berkeley, the firm has

9 successfully prosecuted class action cases and complex litigation in federal and state courts throughout

10 the country.

11 **I.**      **OVERVIEW**

12      **A.**      **Work Performed for the Benefit of the End-Payor Class**

13         3.      Glancy Prongay & Murray LLP has participated in the prosecution of this litigation on

14 behalf of the End-Payor Class. The work performed by the firm at the direction of Co-Lead Counsel

15 included investigation and preparing initial complaint; calls with client; calls with co-counsel; review

16 client's purchase data, and prepare information concerning client for lead counsel.

17      **B.**      **Lodestar Summary**

18         4.      In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter

19 concerning time and expense reporting, Glancy Prongay & Murray's attorneys and staff kept

20 contemporaneous records of the time they spent on this litigation. A report that reflects the

21 contemporaneous time entries for the work performed by Glancy Prongay & Murray LLP was delivered to

22 Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time

23 records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment

24 to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time

25 records for *in camera* review if requested by the Court.

26         5.      The total number of hours spent by Glancy Prongay & Murray LLP prosecuting this

27 litigation through July 10, 2018 is 31, with a corresponding lodestar of $22,317.50. The lodestar does not

28

DECLARATION OF LEE ALBERT IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

include any time spent on proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

6.     The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|---|---|---|---|---|
| Brian P. Murray | Partner | 1.5 | $795 | $1,192.50 |
| Lee Albert | Partner | 26 | $725 | $18,850.00 |
| Gregory B. Linkh | Partner | 3.5 | $650 | $2,275.00 |

**C.     Staffing and Tasks Performed on This Matter**

7.     Glancy Prongay & Murray staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

8.     Brian P. Murray: Complaint Drafting and Filing.

9.     Lee Albert: Complaint Drafting; communications with client; review client data.

10.    Gregory B. Linkh: Investigation and complaint drafting.

11.    Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| Brian P. Murray | Complaint review and Filing | 1.5 | $1,192.50 |
| | | | |
| Lee Albert | Complaint Drafting | 12.4 | $8,990.00 |
| | Client Updates | 4.6 | $3,335.00 |
| | Miscellaneous | 9.0 | $6,525.00 |
| | | | |
| Gregory B. Linkh | Complaint Drafting | 3.5 | 2,275.00 |

**II.     HOURLY RATES**

12.    Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by Glancy Prongay & Murray LLP in this matter are the firm's usual and customary rates that

2

1  were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the
2  firm's non-contingent matters.

3       13.    Glancy Prongay & Murray's hourly rates, including the rates for the specific
4  timekeepers that worked on this matter, have been approved in the following matters:

5       Brian P. Murray: *Robb v. Fitbit Inc.* (16-00151 N.D. Cal.); *Sullivan v. Barclays PLC* (13-cv-
6  02811 SDNY).

7       Lee Albert: *Kleen Products v. Packaging Corp. of America* (10-5711 N.D. Ill.); *In Re*
8  *Automotive Wire Harness Systems Antitrust Litigation* (12-2311 E.D. Mich.);  *In re Solodyn Antitrust*
9  *Litig.* (14-2503 D. Mass.); ; *In re Lithium Ion Batteries Antitrust Litig.* (13-2420 N.D. Cal.), *In re*
10 *Aggrenox* Antitrust Litig. (14-2516  D. Conn.**).**

11      Gregory Linkh: *In re Solodyn Antitrust Litig.* (14-2503 D. Mass.);  *In re Aggrenox Antitrust*
12 *Litig.* (14-2516  D. Conn.**).**

13      14.    Time spent performing document review has been capped at $350 per hour or actual
14 billable rate, whichever is lower, regardless of the reviewing attorneys typical billing rate.

15 **III.    LITIGATION EXPENSES**

16      15.    Below is an itemized list of the unreimbursed expenses Glancy Prongay & Murray LLP
17 incurred during the prosecution of this litigation while performing work assigned by Co-Lead Counsel.
18 Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary
19 course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
|---|---|
| Courts Fees (filing, etc.) | $735.00 |
| Computer Research (Lexis, Westlaw, PACER, etc.) | $122.70 |
| Document Production | |
| Photocopies – In-House | |
| Photocopies – Outside (no more than $0.30) | |
| Postage, Courier, Messenger | |
| Service of Process | $28.24 |
| Telephone / Facsimile | |
| Transcripts (hearings, depositions, etc.) | |

| Travel (airfare, ground transportation) | |
| Travel (meals and lodging) | |
| Total: | $885.94 |
| **Contributions to the Litigation Fund:** | |

16.     The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead.

Glancy Prongay & Murray LLP will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 24th day of July 2018, at New York, New York.

_____

Lee Albert

EXHIBIT 12

Frank R. Schirripa, Esq.
**HACH ROSE SCHIRRIPA & CHEVERIE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: (212) 213-8311
fschirripa@hrsclaw.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **DECLARATION OF FRANK R. SCHIRRIPA IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

I, FRANK R. SCHIRRIPA, hereby declare:

1.      I am a partner at Hach Rose Schirripa & Cheverie LLP ("HRS&C"), counsel for plaintiff the Welfare Plan of the International Union of Operating Engineers Locals 137, 137A, 137B, 137C, 137R ("IUOE Local 137"). My firm represents IUOE Local 137 as a certified class representative. This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.      HRS&C has extensive experience representing health and welfare funds in antitrust class action litigation, and specifically have previously represented numerous third-party payors and consumers in a large number of complex healthcare matters, including similar generic suppression cases.  HRSC's attorneys have litigated complex and class action litigation in federal and state courts throughout the United States in the areas of antitrust, securities fraud, corporate governance and consumer class

# I.      OVERVIEW

### A.      Work Performed for the Benefit of the End-Payor Class

3.      HRS&C has participated in the prosecution of this litigation on behalf of the End-Payor Class. The work performed by the firm at the direction of Co-Lead Counsel included investigating and drafting an initial complaint and the consolidated amended complaint; extensive plaintiff discovery, including written disclosures and interrogatory responses; collection and review of plaintiffs' and non-parties' documents in response to Defendants' request for production; preparation and representation of end-payor plaintiff IUOE Local 137 at its deposition; extensive review and analysis of Defendants' document productions and responses to interrogatories; and drafting litigation memoranda to update and apprise IUOE Local 137 of case developments in preparation for trial.

DECLARATION OF FRANK R. SCHIRRIPA IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

**B.     Lodestar Summary**

4.      In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, HRS&C's attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by HRS&C was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

5.      The total number of hours spent by HRS&C prosecuting this litigation through July 10, 2018 is 1,592.0, with a corresponding lodestar of $605,232.50. The lodestar does not include any time spent on proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

6.      The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|---|---|---|---|---|
| Gregory S. Hach | Partner | 0.5 | $725.00 | $362.50 |
| Frank R. Schirripa | Partner | 73.5 | $695.00 | $51,082.50 |
|  |  | 31.5 | $650.00 | $20,475.00 |
| David R. Cheverie | Partner | 40.8 | $550.00 | $22,412.50 |
|  |  | 36.5 | $450.00 | $16,425.00 |
|  |  | 16.5 | $425.00 | $7,012.50 |
| John A. Blyth | Associate | 2.0 | $350.00 | $700.00 |
| Seth M. Pavsner | Associate | 1390.80 | $350.00 | $486,762.50 |

**C.     Staffing and Tasks Performed on This Matter**

7.      HRS&C staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

a.  **Gregory S. Hach**: class certification and end-payor representative state coverage.

    b.  **Frank R. Schirripa**: oversight and management of HRSC attorneys working on this matter; investigation and drafting initial complaint; plaintiff discovery, including preparing for and defending IUOE Local 137 deposition.

    c.  **David R**. **Cheverie**: plaintiff's document collection and discovery responses; class certification and end-payor representative state coverage.

    d.  **John A. Blyth**: plaintiff and non-party document collection and discovery.

    e.  **Seth M. Pavsner**: document review.

8.    Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| Gregory S. Hach | Complaint Drafting and Filing | - | |
| | Document Review & Deposition Kits | - | |
| | Discovery of End-Payor Plaintiffs | - | |
| | Client Updates | - | |
| | Specific Tasks Assigned by Lead Counsel – additional named plaintiffs | 0.5 | $362.50 |
| | Miscellaneous | - | |
| | | | |
| Frank R. Schirripa | Complaint Drafting and Filing | 24.3 | $15,907.50 |
| | Document Review & Deposition Kits | 0.8 | $556.00 |
| | Discovery of End-Payor Plaintiffs | 72.0 | $49,752.00 |
| | Client Updates | 5.9 | $3,974.50 |
| | Specific Tasks Assigned by Lead Counsel – | - | |
| | Miscellaneous | 2.0 | $1,367.5 |
| | | | |
| David R. Cheverie | Complaint Drafting and Filing | 7.8 | $3,315.00 |
| | Document Review & Deposition Kits | - | |
| | Discovery of End-Payor Plaintiffs | 84.4 | $41,545.00 |
| | Client Updates | - | |

| | Specific Tasks Assigned by Lead Counsel – Work with Expert Hal Singer | 1.8 | $990.00 |
|---|---|---|---|
| | Miscellaneous | - | |
| | | | |
| John A. Blyth | Complaint Drafting and Filing | - | |
| | Document Review & Deposition Kits | - | |
| | Discovery of End-Payor Plaintiffs | 2.0 | $700.00 |
| | Client Updates | - | |
| | Specific Tasks Assigned by Lead Counsel | - | |
| | Miscellaneous | - | |
| | | | |
| Seth M. Pavsner | Complaint Drafting and Filing | - | |
| | Document Review & Deposition Kits | 1,390.8 | $486,762.50 |
| | Discovery of End-Payor Plaintiffs | - | |
| | Client Updates | - | |
| | Specific Tasks Assigned by Lead Counsel | - | |
| | Miscellaneous | - | |

## I.   HOURLY RATES

9.     Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by HRS&C in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

10.     HRS&C's hourly rates, including the rates for the specific timekeepers that worked on this matter, have been approved in the following matters:

- *Torczyner, et al. v. Staples Inc.*, No. 16-cv-2965 (JM) (S.D. Cal.)

    o   Frank R. Schirripa -- $695.00

    o   John A. Blyth -- $350.00

    o   Seth Pavsner -- $375.00

- *In re Salix Pharmaceuticals, Ltd.*, No. 14-cv-8925 (KMW) (S.D.N.Y.)

- o   Frank R. Schirripa -- $695.00
- o   David R. Cheverie -- $550.00
- *In re Bank of New York Forex Litigation*, No. 12-md-2335 (LAK) (S.D.N.Y.)
  - o   Gregory S. Hach -- $725.00
  - o   Frank R. Schirripa -- $650.00
  - o   John A. Blyth -- $325.00
  - o   Seth Pavsner -- $375.00.

11.     Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorneys typical billing rate.

HRS&C will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 20th day of July 2018, at New York, New York.

*/s/ Frank R. Schirripa*
Frank R. Schirripa

EXHIBIT 13

1  William E. Hoese
   KOHN, SWIFT & GRAF, P.C.
2  1600 Market Street
   Suite 2500
3  Philadelphia, PA 19103
   (215) 238-1700
4  whoese@kohnswift.com

5

6                  UNITED STATES DISTRICT COURT

7                NORTHERN DISTRICT OF CALIFORNIA

8
   In re LIDODERM ANTITRUST LITIGATION        MDL Docket No. 14-md-02521-WHO
9
                                              **DECLARATION OF WILLIAM E.**
10 THIS DOCUMENT RELATES TO:                  **HOESE IN SUPPORT OF END-PAYOR**
                                              **PLAINTIFF CLASS COUNSEL'S**
11 ALL ACTIONS                                **MOTION FOR ATTORNEYS' FEES,**
                                              **EXPENSES, AND SERVICE AWARDS**
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

William E. Hoese hereby declares:

1.      I am a shareholder of Kohn, Swift & Graf, P.C., counsel for plaintiff Irene Kampanis. This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.      Kohn, Swift & Graf, P.C. is a well-established class action firm with a specialty in antitrust litigation.  It has had lead roles in numerous antitrust cases since its founding in 1969.

## I.      OVERVIEW

### A.      Work Performed for the Benefit of the End-Payor Class

3.      Kohn, Swift & Graf, P.C. has participated in the prosecution of this litigation on behalf of the End-Payor Class. The work performed by the firm included researching the legal and factual aspects of the case; editing complaints; and working with co-counsel regarding client discovery.

### B.      Lodestar Summary

4.      In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, Kohn, Swift & Graf, P.C.'s attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by Kohn, Swift & Graf, P.C. was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

5.      The total number of hours spent by Kohn, Swift & Graf, P.C. prosecuting this litigation through July 10, 2018 is 23.40 with a corresponding lodestar of $14,868.00. The lodestar does not include any time spent on proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

6.      The following summary chart identifies the individuals who worked on this matter, their title (Shareholder, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they

worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|---|---|---|---|---|
| William E. Hoese | Shareholder | 23.40 | $635 - $650 | $14,868.00 |
| | | | | |

### C.      Staffing and Tasks Performed on This Matter

7.      Kohn, Swift & Graf, P.C. staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

8.      William E. Hoese - The work performed by the firm included researching the legal and factual aspects of the case; editing complaints; and working with co-counsel regarding client discovery.

9.      Below is an itemization of time spent by the above-referenced individual on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| William E. Hoese | Complaint Drafting and Filing | 2.0 | $ 1,270.00 |
| | Discovery of End-Payor Plaintiffs | 1.3 | $    831.50 |
| | Miscellaneous – case factual and legal research; conference statement; motion to dismiss opinion. | 20.10 | $12,766.50 |
| | | 23.4 | $14,868.00 |

## II.    HOURLY RATES

10.     Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by Kohn, Swift & Graf, P.C. in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

11.     Kohn, Swift & Graf, P.C's hourly rates have been approved in the following matter:

In *Thomas Sobiech v. U.S. Gas & Electric, Inc., et al.*, No. 2:14-cv-04464-GAM (E.D. Pa. Nov. 8, 2017), the Court awarded Kohn, Swift & Graf, P.C. attorneys' fees based on a lodestar analysis.

Most recently in *In re Automotive Parts Antitrust Litigation (In re: Small Bearings Cases),* Case No. 2:17-cv-04201-MOB-MKM (E.D. Mich. March 12, 2018), the Court conducted a lodestar cross-check when awarding attorneys' fees 30% of the settlement funds that included Kohn, Swift & Graf, P.C.'s lodestar.  William E. Hoese's hours and lodestar were included.

12.    Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorneys typical billing rate.

### III.    LITIGATION EXPENSES

13.    Below is an itemized list of the unreimbursed expenses Kohn, Swift & Graf, P.C. incurred during the prosecution of this litigation. Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
|---|---|
| Computer Research (Lexis, Westlaw, PACER, etc.) | $181.86 |
| Photocopies – In-House | $62.00 |
| Telephone / Facsimile | $8.47 |
| **Total:** | **$252.33** |

14.    The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead.

Kohn, Swift & Graf, P.C. will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 27th day of July 2018, at Philadelphia, Pennsylvania.

*William E. Hoese*

William E. Hoese

EXHIBIT 14

1  Ralph B. Kalfayan (State Bar No. 133464)
   *rkalfayan@kkbs-law.com*
2  KRAUSE, KALFAYAN, BENINK & SLAVENS
   550 West C Street, Suite 530
3  San Diego, California 92101
   Telephone: (619) 232-0331
4  Facsimile: (619) 232-4019

5  Attorneys for Plaintiff, Steven Roller

6

7

8                UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
|---|---|
| THIS DOCUMENT RELATES TO: | **DECLARATION OF RALPH B. KALFAYAN IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |
| ALL ACTIONS | |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, Ralph B. Kalfayan, hereby declare:

1.      I am a partner at Krause, Kalfayan, Benink & Slavens, LLP ("KKBS"), Counsel for plaintiff Steven Roller ("Plaintiff").  My firm represents Steven Roller ("Roller") and is a member firm for the End-Payor Plaintiffs.  This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.      Krause, Kalfayan, Benink & Slavens, LLP  has served as counsel to Steven Roller ("Roller") throughout the course of this litigation and has substantial experience in complex civil litigation and/or antitrust class action cases and a substantial reputation as a class action firm at the forefront of multi-million dollar cases obtaining numerous significant settlements and judgments for its clients.

# I.      OVERVIEW

## A.      Work Performed for the Benefit of the End-Payor Class

3.      Krause, Kalfayan, Benink & Slavens, LLP has participated in the prosecution of this litigation on behalf of the End-Payor Class. The work performed by the firm at the direction of Co-Lead Counsel, included but was not limited to:  KKBS marshalled declarations and extensive discovery from its client, Steven Roller, prepared for and defended Mr. Roller's deposition, produced documents and diligently and thoroughly communicated with its client.

## B.      Lodestar Summary

4.      In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, Krause, Kalfayan, Benink & Slavens, LLP's attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by Krause, Kalfayan, Benink & Slavens, LLP was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

5.      The total number of hours spent by Krause, Kalfayan, Benink & Slavens, LLP

DECLARATION OF RALPH B. KALFAYAN IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

prosecuting this litigation through July 10, 2018 is 170.35, with a corresponding lodestar of $71,697.50. The lodestar does not include any time spent on proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

6.     The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|----------|-------|-------|-------|----------|
| Ralph B. Kalfayan | Partner | 66.5 | $500.00 | $33,250.00 |
| Ralph B. Kalfayan | Partner | 16.4 | $600.00 | $ 9,840.00 |
| Amanda Friedman | Associate | 51.4 | $300.00 | $15,420.00 |
| Lynne Brennan | Associate | 7.3 | $500.00 | $ 3,650.00 |
| Phillip Stephan | Associate | 25.25 | $350.00 | $ 8,837.50 |
| Ian Krupar | Law Clerk | 3.5 | $200.00 | $    700.00 |
| **Total Hours & Lodestar** | | **170.35** | | **$71,697.50** |

## C.     Staffing and Tasks Performed on This Matter

7.     Krause, Kalfayan, Benink & Slavens, LLP staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

8.     Ralph B. Kalfayan, Partner, licensed in 1988 with 30 years of experience, worked primarily on communications with client, deposition, discovery, and overall case strategy.

9.     Lynne Brennan, Senior Associate attorney, licensed in 1990 with 28 years of experience, worked primarily on discovery, communications with client and overall case strategy.

10.     Amanda Friedman, Associate attorney, licensed in 2013 with 5 years of experience, worked primarily on drafting of complaint, discovery, and special tasks assigned by lead counsel.

11.     Phillip Stephan, Associate attorney, licensed 2013 with 5 years of experience, worked primarily on document review, discovery and client deposition.

12.     Ian Krupar, Law Clerk, worked primarily on discovery.

13.     Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| Ralph B. Kalfayan | Complaint Drafting and Filing | 3.20 | $500.00 |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | 10.90 | $500.00 |
| | Client Updates | 20.30 | $500.00 |
| | Specific Tasks Assigned by Lead Counsel: Case Management | 27.10 | $500.00 |
| | Specific Tasks Assigned by Lead Counsel: Stipulation for Extension | 1.00 | $500.00 |
| | Specific Tasks Assigned by Lead Counsel: Client Information | 1.70 | $500.00 |
| | Miscellaneous | 3.30 | $500.00 |
| Ralph B. Kalfayan | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | 15.40 | $600.00 |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | 1.00 | $600.00 |
| Amanda Friedman | Complaint Drafting and Filing | 16.50 | $300.00 |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | .50 | $300.00 |
| | Client Updates | 11.50 | $300.00 |
| | Specific Tasks Assigned by Lead Counsel: Stipulation for Extension | .90 | $300.00 |
| | Specific Tasks Assigned by Lead Counsel: Notice of Appearance | 2.90 | $300.00 |
| | Specific Tasks Assigned by Lead Counsel: Client Information | 1.30 | $300.00 |
| | Specific Tasks Assigned by Lead Counsel: Case Management | 2.70 | $300.00 |
| | Specific Tasks Assigned by Lead Counsel: New Jersey Service | 2.00 | $300.00 |
| | Specific Tasks Assigned by Lead Counsel: Research Issues | 2.10 | $300.00 |

DECLARATION OF RALPH B. KALFAYAN IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

| | | | |
|---|---|---|---|
| | Miscellaneous | 11.00 | $300.00 |
| Lynne Brennan | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | 3.10 | $500.00 |
| | Client Updates | .70 | $500.00 |
| | Specific Tasks Assigned by Lead Counsel: Case Management | .20 | $500.00 |
| | Specific Tasks Assigned by Lead Counsel: Amended Complaint & Motion to Dismiss | 3.30 | $500.00 |
| | Miscellaneous | | $500.00 |
| Phillip Stephan | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | 16.75 | $350.00 |
| | Discovery of End-Payor Plaintiffs | 6.50 | $350.00 |
| | Client Updates | 2.00 | $350.00 |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | | |
| Ian Krupar | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | 3.50 | $200.00 |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | | |

## II.   HOURLY RATES

14.     Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by Krause, Kalfayan, Benink & Slavens, LLP in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

15.     Krause, Kalfayan, Benink & Slavens, LLP's hourly rates, including the rates for the specific timekeepers that worked on this matter, have been approved in the following matter:

4

| Superior Court of California, County of San Diego | Time Keeper | Approved Time |
|---|---|---|
| | Ralph B. Kalfayan, Partner | $500.00 |
| | Ralph B. Kalfayan, Partner | $600.00 |
| *Coordination Proceedings:* | Amanda Friedman, Associate | $325.00 |
| *Cipro Cases I and II* | Lynne Brennan, Associate | $600.00 |
| | Phillip Stephan, Associate | $350.00 |
| Case #JCCP 4154 & JCCP 4220 | Ian Krupar, Law Clerk | $200.00 |

16.     Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorneys typical billing rate.

## III.    LITIGATION EXPENSES

17.     Below is an itemized list of the unreimbursed expenses Krause, Kalfayan, Benink & Slavens, LLP incurred during the prosecution of this litigation while performing work assigned by Co-Lead Counsel. Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
|---|---|
| Courts Fees (filing, etc.) | |
| Computer Research (Lexis, Westlaw, PACER, etc.) | $372.87 |
| Document Production | |
| Photocopies – In-House | $75.90 |
| Photocopies – Outside (no more than $0.30) | |
| Postage, Courier, Messenger | |
| Service of Process | $125.00 |
| Telephone / Facsimile | $57.02 |
| Transcripts (hearings, depositions, etc.) | |

| Translation of Complaint for Service of Process | $1783.25 |
|---|---|
| Travel (airfare, ground transportation) | $614.15 |
| Travel (meals and lodging) | $299.98 |
| **Total:** | **$3,328.17** |
| **Contributions to the Litigation Fund:** | |

18.     The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead.  Travel expenses were incurred in connection with counsel's defense of Mr. Roller's deposition and attendance at court conference.

Krause, Kalfayan, Benink & Slavens, LLP will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 20th day of July 2018, at San Diego, California.

Ralph B. Kalfayan

EXHIBIT 15

GREGORY S. ASCIOLLA, ESQ.
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Phone: 212 907 0700
Email: gasciolla@labaton.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **DECLARATION OF GREGORY S. ASCIOLLA IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

I, GREGORY S. ASCIOLLA, hereby declare:

1. I am a partner at Labaton Sucharow LLP ("Labaton Sucharow"), counsel for plaintiffs Iron Workers District Council of New England Welfare Fund ("Iron Workers") and Ottavio Gallotto, as the personal representative of the estate of Letizia Gallotto ("Gallotto").This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2. Labaton Sucharow is a highly regarding class action firm, having recovered more than $12 billion for investors and consumers. Labaton Sucharow has a well-earned reputation for successfully investigating and litigating complex antitrust class actions. We have led the charge in some of the most significant private antitrust litigation in recent years. We have also been at the forefront in antitrust cases involving complex financial instruments and commodities manipulation, as well as cases of anticompetitive conduct in the healthcare industry, including pay-for-delay cases.

## I. OVERVIEW

### A. Work Performed for the Benefit of the End-Payor Class

3. Labaton Sucharow has participated in the prosecution of this litigation on behalf of the End-Payor Class. The work performed by the firm at the direction of Co-Lead Counsel included managing and responding to Defendants' discovery requests on behalf of our clients, including the production of responsive documents, responding to interrogatories, and defending depositions.

### B. Lodestar Summary

4. In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, Labaton Sucharow's attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by Labaton Sucharow was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

5.      The total number of hours spent by Labaton Sucharow prosecuting this litigation through July 10, 2018 is 519.3, with a corresponding lodestar of $313,413.00. The lodestar does not include any time spent on proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

6.      The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|----------|-------|-------|-------|----------|
| Gregory Asciolla | Partner | 6.4 | $900.00 | $5,760.00 |
| Gregory Asciolla | Partner | 28.2 | $875.00 | $24,675.00 |
| Gregory Asciolla | Partner | 49.2 | $825.00 | $40,590.00 |
| Gregory Asciolla | Partner | 24.8 | $775.00 | $19,220.00 |
| Domenico Minerva | Of Counsel | 24.7 | $750.00 | $18,525.00 |
| Karin Garvey | Of Counsel | 103.1 | $775.00 | $79,902.50 |
| Matthew Perez | Associate | 3.3 | $525.00 | $1,732.50 |
| Matthew Perez | Associate | 68.1 | $500.00 | $34,050.00 |
| Matthew Perez | Associate | 46.2 | $475.00 | $21,945.00 |
| Matthew Perez | Associate | 22.4 | $460.00 | $10,304.00 |
| Matthew Perez | Associate | 14.4 | $440.00 | $6,336.00 |
| Matthew Perez | Associate | 21.4 | $350.00 | $7,490.00 |
| Rudi Julius | Associate | 72.2 | $440.00 | $31,768.00 |
| Matthew Molloy | Paralegal | 9.4 | $325.00 | $3,055.00 |
| Matthew Molloy | Paralegal | 3.3 | $310.00 | $1,023.00 |
| Stacy Redman | Paralegal | 10.4 | $325.00 | $3,380.00 |
| Stacy Redman | Paralegal | 11.7 | $310.00 | $3,627.00 |
| Stacy Redman | Paralegal | 0.1 | $300.00 | $30.00 |

**C.      Staffing and Tasks Performed on This Matter**

7.      Labaton Sucharow staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

a.      **Gregory Asciolla**: Mr. Asciolla, a 1993 graduate of Catholic University of America Law School and Co-Chair of the Antitrust Practice Group at Labaton Sucharow, represents clients in complex class actions throughout the United

2

States, with an emphasis in antitrust litigation. Mr. Asciolla was primarily responsible for managing the overall litigation on behalf of the Firm.  He was the main contact with the Firm's two clients (and class representatives).  He also was involved in discovery related to the Firm's clients, including initial disclosures; document collection, review and production; interrogatories; and deposition.  Mr. Asciolla oversaw the substitution of one of its clients in the case who passed away as well.

b. **Karin Garvey**: Ms. Garvey, a 1997 graduate of Northwestern University Law School and Of Counsel at Labaton Sucharow, represents clients in complex class actions throughout the United States, with an emphasis in antitrust litigation. Ms. Garvey was responsible for the Iron Workers' Rule 30(b)(6) deposition.  In connection with that, she reviewed the Iron Workers' documents, prepared the Iron Workers representative for the deposition, and defended the deposition.  In addition, Ms. Garvey managed the drafting of discovery responses from Iron Workers and Gallotto as well as oversaw the Labaton Sucharow associates working on the *Lidoderm* litigation.

c. **Domenico Minerva**: Mr. Minerva, a 2006 graduate of Tulane University Law School and Of Counsel at Labaton Sucharow, represents clients in complex class actions throughout the United States, with an emphasis in securities and antitrust litigation. Prior to joining Labaton Sucharow, he was affiliated with the firm of Morgan & Morgan and served as counsel to class representative International Union of Operating Engineers Local 132 Health and Welfare Fund ("IOUE Local 132"). When he joined Labaton Sucharow in 2016, he continued representing IOUE Local 132. While at Labaton Sucharow, he helped prepare IUOE Local 132's designee and defended the Rule 30(b)(6) deposition.

d. **Matthew Perez**: Mr. Perez, a 2010 graduate of Cardozo Law School and Associate at Labaton Sucharow, represents clients in complex class actions throughout the United States, with an emphasis in antitrust litigation. Mr. Perez

was responsible for researching the claims at issue and drafting the Iron Workers complaint. He worked with Gallotto, Iron Workers, and Express Scripts—Iron Workers' pharmacy benefit manager—to collect documents and answer interrogatories in response to Defendants' discovery requests. Mr. Perez provided input to lead counsel and revised meet and confer letters regarding Gallotto's and Iron Workers' discovery responses.  He reviewed Gallotto's and Iron Workers' documents in advance of production. He also helped prepare Iron Worker's Rule 30(b)(6) designee prepare for her deposition. Mr. Perez also assisted in the substitution of former named plaintiff Letizia Gallotto with her son, as personal representative of her estate.

e. **Rudi Julius**: Ms. Julius, a 2013 graduate of Cornell University Law School and a former associate at Labaton Sucharow, represented clients in complex class actions throughout the United States, with an emphasis in antitrust litigation. Ms. Julius was responsible for working with Gallotto to answer interrogatories.

f. **Stacy Redman**: Ms. Redman, a 1994 graduate of John Jay College of Criminal Justice and Senior Paralegal at Labaton Sucharow, was responsible for assisting in the redacting of documents for Iron Workers and Gallotto and preparing them for production.

g. **Matthew Molloy**: Mr. Molloy, a 2010 graduate of Queens College of the City University of New York and former paralegal at Labaton Sucharow, was responsible for assisting in the redacting of documents for Iron Workers and Gallotto and preparing them for production.

8.    Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| Gregory Asciolla | Complaint Drafting and Filing | 13.0 | $10,100.00 |

4

| | | | |
|---|---|---|---|
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | 71.2 | $59,632.50 |
| | Client Updates | 20.5 | $17,185.00 |
| | Specific Tasks Assigned by Lead Counsel | 3.9 | $ 3,327.50 |
| | Miscellaneous | | |
| | | | |
| Karin Garvey | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | 103.1 | $79,902.50 |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | | |
| | | | |
| Domenico Minerva | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | 24.7 | $18,525.00 |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | | |
| | | | |
| Matthew Perez | Complaint Drafting and Filing | 35.4 | $16,032.00 |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | 134.6 | $62,955.00 |
| | Client Updates | 5.8 | $ 2,870.50 |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | | |
| | | | |
| Rudi Julius | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |

|  |  |  |  |
|---|---|---|---|
|  | Discovery of End-Payor Plaintiffs | 72.2 | $31,768.00 |
|  | Client Updates |  |  |
|  | Specific Tasks Assigned by Lead Counsel |  |  |
|  | Miscellaneous |  |  |
|  |  |  |  |
| Matthew Molloy | Complaint Drafting and Filing |  |  |
|  | Document Review & Deposition Kits |  |  |
|  | Discovery of End-Payor Plaintiffs | 12.7 | $ 4,078.00 |
|  | Client Updates |  |  |
|  | Specific Tasks Assigned by Lead Counsel |  |  |
|  | Miscellaneous |  |  |
|  |  |  |  |
| Stacy Redman | Complaint Drafting and Filing | 2.3 | $   716.50 |
|  | Document Review & Deposition Kits |  |  |
|  | Discovery of End-Payor Plaintiffs | 19.4 | $ 6,158.00 |
|  | Client Updates | .5 | $   162.50 |
|  | Specific Tasks Assigned by Lead Counsel |  |  |
|  | Miscellaneous |  |  |

## II.    HOURLY RATES

9.    Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by Labaton Sucharow in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

10.    Labaton Sucharow's hourly rates, including the rates for the specific timekeepers that worked on this matter, have been approved in the following matters:

- IN RE: AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION, MDL NO. 1775, E.D.N.Y.:   Gregory Asciolla; Matthew Perez; Rudi Julius, Stacy Redman and Matthew Molloy.

6

- IN RE: CAPACITORS ANTITRUST LITIGATION, MASTER FILE NO. 3:14-cv-03264-JD, N.D. CA.: Gregory Asciolla, Karin Garvey, Matthew Perez, Rudi Julius and Stacy Redman.

11.    Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorneys typical billing rate.

## III.    LITIGATION EXPENSES

12.    Below is an itemized list of the unreimbursed expenses Labaton Sucharow incurred during the prosecution of this litigation while performing work assigned by Co-Lead Counsel. Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
|---|---|
| Courts Fees (filing, etc.) | $ 5,699.96 |
| Computer Research (Lexis, Westlaw, PACER, etc.) | $    466.01 |
| Photocopies – In-House | $ 1,462.60 |
| Postage, Courier, Messenger | $      78.56 |
| Telephone / Facsimile | $      36.33 |
| Travel (airfare, ground transportation) | $ 5,201.75 |
| Travel (meals and lodging) | $ 1,517.95 |
| **Total:** | **$14,463.16** |

13.    The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead.  Travel expenses were incurred in connection with counsel's preparation and defense of Iron Workers's deposition, meetings with co-counsel and meetings with clients.

Labaton Sucharow will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 20th day of July, 2018, at  New York, New York.

GREGORY S. ASCIOLLA

DECLARATION OF GREGORY S. ASCIOLLA IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

EXHIBIT 16

**LAW OFFICES OF ROBERT W. SINK**
**Robert Sink, Esquire**
**Attorney I.D. No.: 73201**
**1800 J.F.K. Boulevard, 14th Floor**
**Philadelphia, PA 19103**
**Tel:    215-995-1000**
**Email: rsink@sinklawoffices.com**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **DECLARATION OF ROBERT SINK IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

I, Robert Sink, hereby declare:

1.     I am a partner/principal at the Law Offices of Robert W. Sink, counsel for Plaintiffs. My firm represented Plaintiff, Irene Kampanis. This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.     I am the principal of the Law Offices of Robert W. Sink.  I have over twenty-three years of experience litigating class actions and complex cases. I have litigated numerous other class action cases in federal and state courts, including the pharmaceutical anti-trust class actions of *Cohen v. Warner Chilcott*, 522 F.Supp. 2d 105 (D.D.C. 2007) where I served as lead counsel and *Vista v. Cephalon, Inc.*, No. 2:06-cv-01833-MSG (E.D.Pa. filed 2006) where I serve on the executive committee.

I.     **OVERVIEW**

   A.     **Work Performed for the Benefit of the End-Payor Class**

3.     Law Offices of Robert W. Sink has participated in the prosecution of this litigation on behalf of the End-Payor Class. The work performed by the firm included conducting legal research and drafting a complaint, sending notice to the New York Attorney General, and, at the direction of Co-Lead Counsel, preparing responses to interrogatories and requests for production of documents on behalf of Named Plaintiff, Irene Kampanis, tracking progress of the litigation and updating Ms. Kampanis, and performing specific tasks assigned by Co-Lead Counsel.

   B.     **Lodestar Summary**

4.     In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, Law Offices of Robert W. Sink's attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by Law Offices of Robert W. Sink was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

DECLARATION OF ROBERT SINK IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

5.      The total number of hours spent by Law Offices of Robert W. Sink prosecuting this litigation through July 10, 2018 is 45.1, with a corresponding lodestar of $31,268. The lodestar does not include any time spent on proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

6.      The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|----------|-------|-------|-------|----------|
| Robert Sink, Esq. | Partner | 43.4 | $695 | $30,163 |
| Robert Gibson, Esq. | Of Counsel | 1.7 | $650 | $1,105 |

**C.      Staffing and Tasks Performed on This Matter**

7.      Law Offices of Robert W. Sink staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

8.      Robert Sink, Esq.:  Over 23 years' experience handling class action and complex litigation cases, including pharmaceutical anti-trust class actions.  Work performed included conducting legal research and drafting a complaint, sending notice to the New York Attorney General, preparing responses to interrogatories and requests for production of documents on behalf of Named Plaintiff, Irene Kampanis, tracking progress of the litigation and updating Ms. Kampanis, conducting specific tasks assigned by Co-Lead Counsel.

9.      Robert Gibson, Esq.:  Over 22 years' experience handling class action and complex litigation cases, including pharmaceutical anti-trust class actions.  Work performed included assisting in drafting complaint, monitoring litigation/communicating with co-counsel regarding client updates.

10.      Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|----------|-------|-------|----------|
| Robert Sink, Esq. | Complaint Drafting and Filing | 3.9 | |
| | Document Review & Deposition Kits | | |

| | Discovery of End-Payor Plaintiffs | 32.7 | |
|---|---|---|---|
| | Client Updates | 4.3 | |
| | Specific Tasks Assigned by Lead Counsel (Investigation re: potential additional class representative; stipulation) | 1.4 | |
| | Miscellaneous | 1.1 | |
| | | | |
| Robert Gibson, Esq. | Complaint Drafting and Filing | 0.6 | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | 1.1 | |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | | |

## II.    HOURLY RATES

11.    Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by Law Offices of Robert W. Sink in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

12.    Law Offices of Robert W. Sink's hourly rates, including the rates for the specific timekeepers that worked on this matter, have been approved in the following matters:

- Robert Sink:  $826/hr., *Mijangos v. Marquez Brothers International, Inc., et al.*, Superior Court of California, County of Santa Clara, Case No. 2014-1-CV-269726 (1/17/2017 Order).

13.    Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorneys typical billing rate.

## III.    LITIGATION EXPENSES

14.    Below is an itemized list of the unreimbursed expenses Law Offices of Robert W. Sink incurred during the prosecution of this litigation while performing work assigned by Co-Lead Counsel.

Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
|---|---|
| Courts Fees (filing, etc.) | $400 |
| Computer Research (Lexis, Westlaw, PACER, etc.) | |
| Document Production | |
| Photocopies – In-House | |
| Photocopies – Outside (no more than $0.30) | |
| Postage, Courier, Messenger | |
| Service of Process | |
| Telephone / Facsimile | |
| Transcripts (hearings, depositions, etc.) | |
| Travel (airfare, ground transportation) | |
| Travel (meals and lodging) | |
| **Total:** | **$400** |
| **Contributions to the Litigation Fund:** | |

15.    The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead.

Law Offices of Robert W. Sink will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 19th day of July 2018, at Philadelphia, Pennsylvania.

_____
ROBERT SINK

DECLARATION OF ROBERT SINK IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

EXHIBIT 17

1  Heidi M. Silton
   LOCKRIDGE GRINDAL NAUEN P.L.L.P.
2  100 Washington Avenue South, Suite 2200
   Minneapolis, MN 55401
3  (612) 339-6900
   hmsilton@locklaw.com
4

5

6

7

8

9

10

11

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14

15 | In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO

16 | —————————————————————————— | **DECLARATION OF HEIDI M.**
                                          **SILTON IN SUPPORT OF END-**
17 | THIS DOCUMENT RELATES TO:          | **PAYOR PLAINTIFF CLASS**
                                          **COUNSEL'S MOTION FOR**
18 | ALL ACTIONS                        | **ATTORNEYS' FEES, EXPENSES, AND**
                                          **SERVICE AWARDS**
19

20

21

22

23

24

25

26

27

28

I, Heidi M. Silton, hereby declare:

1.     I am a partner at Lockridge Grindal Nauen P.L.L.P. ("LGN"), counsel for plaintiff International Union of Operating Engineers Local 49 Health and Welfare Fund ("Local 49").  This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.     LGN is a premier antitrust litigation firm in the Midwest and nationally. For nearly 40 years our antitrust team has prosecuted national and global cartels on behalf of businesses injured by anticompetitive conduct. We have obtained billions in settlements and verdicts for our clients and classes. Our clients include local and Midwest businesses that have been injured by domestic or global cartels.

### A.     Work Performed for the Benefit of the End-Payor Class

1.     LGN has participated in the prosecution of this litigation on behalf of the End-Payor Class. The work performed by the firm at the direction of Co-Lead Counsel included factual investigations into the pharmaceutical drug industry and other pay-for-delay related actions, as well as work on discovery matters, preparation for and defense of our client in deposition, preservation and production of plaintiff's discovery, work on various pleadings, and preparation of our client for live trial testimony.

### B.     Lodestar Summary

2.     In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, LGN's attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by LGN was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

3.     The total number of hours spent by LGN prosecuting this litigation through July 10, 2018 is 406.70, with a corresponding lodestar of $251,043.50. The lodestar does not include any time spent on

---

1

proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

4.      The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|---|---|---|---|---|
| Richard A. Lockridge (2014) | Partner | 4.40 | $775.00 | $3,410.00 |
| Richard A. Lockridge (2015) | Partner | 1.00 | $825.00 | $825.00 |
| Richard A. Lockridge (2017) | Partner | 0.20 | $900.00 | $180.00 |
| Richard A. Lockridge (2018) | Partner | 0.20 | $925.00 | $185.00 |
| Karen Hanson Riebel (2014) | Partner | 22.20 | $690.00 | $15,318.00 |
| Karen Hanson Riebel (2015) | Partner | 24.90 | $740.00 | $18,426.00 |
| Karen Hanson Riebel (2016-17) | Partner | 2.00 | $780.00 | $1,560.00 |
| Karen Hanson Riebel (2018) | Partner | 2.40 | $805.00 | $1,932.00 |
| Heidi M. Silton (2014) | Partner | 15.50 | $675.00 | $10,462.50 |
| Heidi M. Silton (2015) | Partner | 101.90 | $725.00 | $73,877.50 |
| Heidi M. Silton (2016-17) | Partner | 61.70 | $750.00 | $46,275.00 |
| Heidi M. Silton (2018) | Partner | 15.10 | $775.00 | $11,702.50 |
| Kristen G. Marttila (2014) | Associate | 6.30 | $450.00 | $2,835.00 |
| Kristen G. Marttila (2016) | Associate | 1.50 | $525.00 | $787.50 |
| Devona L. Wells (doc review) | Associate | 2.40 | $350.00 | $840.00 |
| Devona L. Wells (2015) | Associate | 29.80 | $450.00 | $13,410.00 |
| Devona L. Wells (2016-17) | Associate | 55.60 | $475.00 | $26,410.00 |
| Devona L. Wells (2018) | Associate | 33.00 | $500.00 | $16,500.00 |
| Arielle S. Wagner | Associate | 3.20 | $450.00 | $1,440.00 |
| Derek C. Waller | Law Clerk | 2.00 | $175.00 | $350.00 |
| Heather N. Potteiger (2014-16) | Paralegal | 20.90 | $200.00 | $4,180.00 |
| Heather N. Potteiger (2018) | Paralegal | 0.50 | $275.00 | $137.50 |
|  |  | 406.70 |  | $251,043.50 |

C.      **Staffing and Tasks Performed on This Matter**

5.      LGN staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

6.      Richard A. Lockridge: general litigation oversight;

7.     Karen Hanson Riebel: conducted investigations into and revising of complaint and further amendments; participation in discovery for plaintiff; contact with plaintiff and lead counsel on various issues throughout litigation;

8.     Heidi M. Silton: participated in discovery requests and responses, worked with client related to discovery requests and responses and in deposition preparation, provided client with progress updates related to litigation and oversaw trial preparation related to client;

9.     Kristen G. Marttila: drafted complaint and conducted further legal research;

10.    Devona L. Wells: participated in discovery such as document review and production, discovery requests and responses, reviewed documents for deposition of plaintiff and 30(b)(6) witness, reviewed documents for trial preparation, and participated in conferences with lead counsel, and worked extensively with plaintiff during discovery and litigation described above;

11.    Arielle S. Wagner: provided updates on litigation progress to plaintiff;

12.    Derek C. Waller: conducted legal research for trial preparation; and

13.    Heather N. Potteiger: organized and assisted in discovery and deposition preparation.

14.    Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| Richard A. Lockridge | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | 5.80 | $4,600.00 |
| | | | |

| Karen Hanson Riebel | Complaint Drafting and Filing | 14.30 | $9,902.00 |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | 33.20 | $24,226.00 |
| | Client Updates (add'l time in discovery) | | |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | 4.00 | 3,108.00 |
| | | | |
| Heidi M. Silton | Complaint Drafting and Filing | 8.60 | $5,805.00 |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | 145.70 | $106,750.00 |
| | Client Updates (add'l time in discovery) | 4.50 | $3,300.00 |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | 35.40 | $26,462.50 |
| | | | |
| Kristen G. Marttila | Complaint Drafting and Filing | 6.30 | $2,835.00 |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | 1.50 | $787.50 |
| | | | |
| Devona L. Wells | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | 2.40 | $840.00 |
| | Discovery of End-Payor Plaintiffs | 80.30 | $37,415.00 |
| | Client Updates (add'l time in discovery) | 2.60 | $1,262.50 |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | 35.50 | $17,642.50 |
| | | | |

DECLARATION OF HEIDI M. SILTON IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

| Arielle S. Wagner | Complaint Drafting and Filing | | |
|---|---|---|---|
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | 3.20 | $1,440.00 |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | | |
| Derek C. Waller | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | 2.00 | $350.00 |
| Heather N. Potteiger | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | 18.80 | $3,760.00 |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | 2.60 | $557.50 |

## I.   HOURLY RATES

15.     Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by LGN in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

16.     LGN's lodestar requests have been approved in the following matters:

- *Greater Chautauqua Federal Credit Union, et al. v. Kmart Corporation, et al.*, No. 15-02228 (N.D. Ill.), Order Granting Attorney Fees, June 16, 2017 (awarded "reasonable costs and expenses incurred in the prosecution and settlement of this litigation");

5

DECLARATION OF HEIDI M. SILTON IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

1   • *Precision Associates, Inc., et al. v. Panalpina World Transport (Holding) Ltd., et al.*,

2   (Freight Forwarders Antitrust Litigation), Civil No. 1:08-cv-00042 (E.D.N.Y.), Amended

3   Order Granting Co-Lead Counsel's Petition for a Third Award of Attorneys' Fees and

4   Reimbursement of Expenses, ECF No. 1396, November 7, 2016 ("The amount of

5   attorneys' fees requested is fair and reasonable under the percentage-of-the-fund method,

6   which is confirmed by a lodestar 'cross-check'"); and Memorandum and Order (granting

7   petition for second award of attorneys' fees and reimbursement of expenses), ECF No.

8   1330, November 10, 2015 ("the requested attorneys' fees are fair and reasonable, and

9   satisfy the *Goldberger* factors");

10  • *In re Optical Disk Drive Antitrust Litigation*, Civil No. 3:10-md-02143 (N.D. Cal.), Order

11  Granting Direct Purchaser Plaintiffs' Second Motion for An Award of Attorneys' Fees,

12  Reimbursement of Expenses, and Class Representative Incentive Awards, ECF No. 1851,

13  April 14, 2016; and Order Granting Direct Purchaser Plaintiffs' Motion for An Award of

14  Attorneys' Fees, Reimbursement of Expenses, and Class Representative Incentive

15  Awards, ECF No. 1658, July 23, 2015 ("The Court finds . . . requested fee award . . .is

16  fair and reasonable under the percentage-of-the-recovery method [and] . . .finds that the

17  requested fee award comports with the applicable law and is justified by the

18  circumstances of this case");

19  • *In re Potash Antitrust Litigation (II)*, Civil No. 1:08-cv-06910 (N.D. Ill.), Order granting

20  Direct Purchaser Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses,

21  and Class Representative Incentive Awards, ECF No. 589, June 12, 2013 ("The amount

22  of attorneys' fees requested is fair and reasonable under the percentage-of-the-fund

23  method, which is confirmed by a lodestar 'cross-check'");

24  • *In re Packaged Ice Antitrust Litigation*, Civil No. 2:08-md-01952 (E.D. Mich.), Opinion

25  and Order (1) Granting Direct Purchaser Plaintiffs' Motion for Final Approval of

26  Proposed Settlement with Reddy Ice Holdings, Inc. and Reddy Ice Corporation and (2)

27  Granting Direct Purchaser Plaintiffs' Counsel's Motion for Award of Attorneys' Fees,

28  Reimbursement of Litigation Costs and Expenses, and Incentive Awards to the Class

6

Representatives, ECF No. 476, November 13, 2012 and Opinion and Order (1) Granting
Direct Purchaser Plaintiffs' Motion For Final Approval of Proposed Settlement With
Arctic Glacier Income Fund, Arctic Glacier, Inc., and Arctic Glacier International, Inc.;
(2) Granting Direct Purchaser Plaintiffs' Motion for Approval of Proposed Plan of
Distribution of Funds Received in Settlements with Home City Ice Company, Arctic
Glacier Income Fund, Arctic Glacier, Inc., and Arctic Glacier International,  Inc.; and (3)
Granting In Part Direct Purchaser Plaintiffs' Counsel's Motion for an Award of
Attorneys' Fees and Reimbursement of Litigation Costs and Expenses, ECF No. 406,
December 13, 2011 ("the requested award . . . appears to be a fairly well-accepted ratio in
cases of this type and generally in complex class actions"); and

- *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Civil No. 3:07-md-01827 (N.D. Cal.),
  Amended Order Granting Direct Purchaser Class Plaintiffs' Motion for Attorneys' Fees,
  Reimbursement of Expenses, and Incentive Awards, ECF No. 4436, December 27, 2011
  ("The amount of attorneys' fees requested is fair and reasonable under the 'percentage-
  of-the-fund' method. This is confirmed by a lodestar "cross-check," which reveals a fair
  and reasonable lodestar"); and Corrected Order Granting Direct Purchaser Class
  Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive
  Awards, ECF No. 7504, January 14, 2013.

17.     Time spent performing document review has been capped at $350 per hour or actual
billable rate, whichever is lower, regardless of the reviewing attorney's typical billing rate.

## II.     LITIGATION EXPENSES

18.     Below is an itemized list of the unreimbursed expenses LGN incurred during the
prosecution of this litigation while performing work assigned by Co-Lead Counsel. Those expenses are
reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's
business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
|---|---|
| Courts Fees (filing, etc.) | $735.00 |
| Computer Research (Lexis, Westlaw, PACER, etc.) | $316.00 |

7

| Category | Amount Incurred |
|---|---|
| Document Production | |
| Photocopies – In-House | $297.60 |
| Photocopies – Outside (no more than $0.30) | |
| Postage, Courier, Messenger | $57.95 |
| Service of Process | |
| Telephone / Facsimile | $0.81 |
| Transcripts (hearings, depositions, etc.) | |
| Travel (airfare, ground transportation) | $29.26 |
| Travel (meals and lodging) | $120.22 |
| **Total:** | **$1,556.84** |
| **Contributions to the Litigation Fund:** | **$25,000.00** |

19.     The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead.  LGN will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 12th day of July, 2018, at Minneapolis, Minnesota.

s/Heidi M. Silton
Heidi M. Silton

EXHIBIT 18

1  Krishna B. Narine, Esquire
   LAULETTA BIRNBAUM
2  100 S. Broad Street, Suite 905
   Philadelphia, PA 19110
3  Telephone: 215-644-3942
   Facsimile: 856-232-1601
4  knarine@lauletta.com

5

6

7

8

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12  | In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |

13

    THIS DOCUMENT RELATES TO:          **DECLARATION OF KRISHNA**
14                                     **NARINE IN SUPPORT OF END-**
                                       **PAYOR PLAINTIFF CLASS**
15  ALL ACTIONS                        **COUNSEL'S MOTION FOR**
                                       **ATTORNEYS' FEES, EXPENSES, AND**
16                                     **SERVICE AWARDS**

17

18

19

20

21

22

23

24

25

26

27

28

I, Krishna Narine, hereby declare:

1.      I am a partner at Lauletta Birnbaum, and was previously a partner at Meredith & Narine, counsel for plaintiff. My firm represents International Association of Fire Fighters Local 22 Health & Welfare Fund and is a member of the Executive Committee for the End-Payor Plaintiffs. This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.      I have been liaison counsel and one of four co-lead counsel of the indirect purchaser action in In Re: Processed Egg Products Antitrust Litigation, C.A. No. 08-2002, MDL No. 2002 (E.D.Pa.).  In addition, I have defended a class action brought under the Telephone Consumer Protection Act as well as represented plaintiffs in numerous antirust and consumer protection cases in state and federal courts throughout the country, including *In re Nasdaq Market-Makers Antitrust Litigation,* MDL No. 1023 (S.D.N.Y.) (settlement of $1.125 billion*) and In re Brand Name Prescription Drugs Antitrust Litigation,* C.A. No. 94C897 and MDL No. 997 (N.D. Ill.) (settlement of $750 million).

### A.      Work Performed for the Benefit of the End-Payor Class

3.      Meredith & Narine has participated in the prosecution of this litigation on behalf of the End-Payor Class. The work performed by the firm at the direction of Co-Lead Counsel included drafting and filing pleadings, briefs & pre-trial motions.

### B.      Lodestar Summary

1.      In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, Meredith & Narine's attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by Meredith & Narine was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

1

2.      The total number of hours spent by Meredith & Narine prosecuting this litigation through July 10, 2018 is 6, with a corresponding lodestar of $3,900.00 The lodestar does not include any time spent on proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

3.      The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|---|---|---|---|---|
| Krishna Narine | Partner | 6 | $650.00 | $3,900.00 |

**C.      Staffing and Tasks Performed on This Matter**

4.      Meredith & Narine staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

5.      Krishna Narine: drafting and filing pleadings, briefs & pre-trial motions.

6.      Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| Krishna Narine | Complaint and pre-trial motion drafting and filing | 6 | $3,900.00 |

**I.      HOURLY RATES**

7.      Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by Meredith & Narine in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

8.      Meredith & Narine's hourly rates, including the rates for the specific timekeepers that worked on this matter, have been approved in the following matters: *Pulley et al. v. JPMorgan Chase Bank, N.A. et al.* - Case No.: 0:12-cv-60936 (S.D.Fla.*); In re Municipal Derivatives Antitrust Litigation*, MDL No. 1950, Master Docket No. 08-02516 (JCF) (S.D.N.Y.)

2

9.      Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorneys typical billing rate.

Meredith & Narine will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 27th day of July, 2018, at Philadelphia, Pennsylvania.

Krishna Narine

DECLARATION OF KRISHNA NARINE IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S MOTION
FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

EXHIBIT 19

Jeremy A. Lieberman
**POMERANTZ LLP**
600 Third Avenue, 20th Fl.
New York, NY 10016
212-661-1100
Jalieberman@pomlaw.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **DECLARATION OF JEREMY A. LIEBERMAN IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

I, JEREMY A. LIEBERMAN, hereby declare:

1.     I am a partner at POMERANTZ LLP, counsel for plaintiff Fraternal Order of Police, Fort Lauderdale Lodge #31, Insurance Trust Fund. My firm represents Fraternal Order of Police, Fort Lauderdale Lodge 31, Insurance Trust Fund. This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.     Pomerantz LLP is one of the nation's foremost specialists in corporate, securities, antitrust and ERISA class litigation, having recovered billions of dollars for the Firm's business and individual clients and the classes that they represent. Time and again, Pomerantz has protected our free-market system from anticompetitive conduct, such as price fixing, monopolization, exclusive territorial division, pernicious pharmaceutical conduct, and false advertising. Pomerantz's advocacy has spanned across diverse product markets, exhibiting the Antitrust and Consumer Group's versatility to prosecute class actions on any terrain.

## I.     OVERVIEW

### A.     Work Performed for the Benefit of the End-Payor Class

1.     POMERANTZ has participated in the prosecution of this litigation on behalf of the End-Payor Class. The work performed by the firm at the direction of Co-Lead Counsel included: researched causes of action and prepared complaint; participated in review of documents and worked with causation team, reviewed documents and prepared deposition preparation kits; prepared memos to co-lead counsel based upon review of documents; prepared class representative for deposition; defended class representative's deposition; performed valuation assignment; and researched issues and drafted section of Plaintiffs' reply to opposition to class certification.

### B.     Lodestar Summary

2.     In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, POMERANTZ's attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by POMERANTZ was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead

1

Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

3.      The total number of hours spent by POMERANTZ prosecuting this litigation through July is 481.35, with a corresponding lodestar of $249,141.50. The lodestar does not include any time spent on proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

4.      The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|---|---|---|---|---|
| Jayne A. Goldstein | Partner | 4.6 | 735 | $3,381.00 |
| Jayne A. Goldstein | Partner | 7.9 | 770 | $6,083.00 |
| Jayne A. Goldstein | Partner | 24.6 | 805 | $19,803.00 |
| Jayne A. Goldstein | Partner | 86.65 | 820 | $71,053.00 |
| Adam G. Kurtz | Associate | 256.9 | 350 | $89,915.00 |
| Adam G. Kurtz | Associate | 2 | 645 | $1,290.00 |
| Adam G. Kurtz | Associate | 67.1 | 675 | $45,292.50 |
| Perry Gattegno | Associate | 31.6 | 390 | $12,324.00 |
| **TOTAL:** | | **481.35** | | **$249,141.50** |

**C.      Staffing and Tasks Performed on This Matter**

5.      POMERANTZ staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

6.      Jayne A. Goldstein; researched causes of action and prepared complaint; prepared class representative for deposition; defended class representative's deposition; performed valuation assignment; and researched issues and drafted section of Plaintiffs' reply to opposition to class certification.

7.      Adam G. Kurtz; Document review and Deposition prep kits; Research and develop a timeline to support theory of causation.

8.      Perry Gattegno; assist attorney with preparing for and defending depositions.

9.      Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| JAYNE A. GOLDSTEIN | Complaint Drafting and Filing | 7.3 | $5,460.00 |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | 84.65 | $68,944.00 |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel – Class Certification | 28.6 | $23,452.00 |
| | Miscellaneous | 3.2 | $2,464.00 |
| | | | |
| ADAM G. KURTZ | Complaint Drafting and Filing | 2 | $1,290.00 |
| | Document Review & Deposition Kits | 256.9 | $89,915.00 |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel- Research and develop a timeline to support theory of causation | 67.1 | $45,292.50 |
| | Miscellaneous | | |
| PERRY GATEGNO | Discovery of End-Payor Plaintiffs | 30.3 | $11,817.00 |
| | Specific Tasks Assigned by Lead Counsel – Class Certification | 1.3 | $507.00 |
| **TOTALS:** | | **481.35** | **$249,141.50** |

## II.      HOURLY RATES

10.     Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by POMERANTZ in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

11.     POMERANTZ's hourly rates, including the rates for the specific timekeepers that worked on this matter, have been approved in the following matters:

- *In re Aggrenox Antitrust Litigation;* Jayne A. Goldstein; Adam G. Kurtz.

3

- *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*; Jayne A. Goldstein, Adam G. Kurtz, Perry Gattegno.
- *Garber v. Office of the Commissioner of Baseball;* Adam G. Kurtz.
- *In re Ductile Iron Pipe Fitting Indirect Purchaser Antitrust Litigation*; Jayne A. Goldstein; Adam G. Kurtz, Perry Gattegno.
- *Leiner v. Johnson & Johnson Consumer Companies, Inc.*; Jayne A. Goldstein, Perry Gattegno.

12.     Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorney's typical billing rate.

## III.    LITIGATION EXPENSES

13.     Below is an itemized list of the unreimbursed expenses POMERANTZ incurred during the prosecution of this litigation while performing work assigned by Co-Lead Counsel. Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
|---|---|
| Courts Fees (filing, etc.) | $305.00 |
| Computer Research (Lexis, Westlaw, PACER, etc.) | $104.88 |
| Document Production | |
| Photocopies – In-House | |
| Photocopies – Outside (no more than $0.30) | |
| Postage, Courier, Messenger | $22.05 |
| Service of Process | |
| Telephone / Facsimile | |
| Transcripts (hearings, depositions, etc.) | |
| Travel (airfare, ground transportation) | $1,385.23 |
| Travel (meals and lodging) | $60.02 |
| **Total:** | **$1,877.18** |
| **Contributions to the Litigation Fund:** | **$25,000** |
| **GRAND TOTAL:** | **$26,877.18** |

DECLARATION OF JEREMY A. LIEBERMAN IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

1    14.    The expenses listed above—including computer research—were incurred specifically for

2  this case and do not include any costs for general firm overhead.  Travel expenses were incurred in

3  connection with preparation of witness and defending plaintiff deposition.

4    15.    POMERANTZ will not seek payment for work, lodestar, or expenses related to this

5  litigation other than those set forth in this declaration.

6    I declare under penalty of perjury under the laws of the United States of America that the foregoing

7  is true and correct.

8    Executed this 19th day of July, 2018, at New York, New York.

9

10

11    _____

12    Jeremy A. Lieberman

EXHIBIT 20

Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 E. State Street
Media, PA
Telephone: 610/891-9880
Email:  nfinkelman@sfmslaw.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **DECLARATION OF NATALIE FINKELMAN BENNETT IN SUPPORT OF END-PAYOR PLAINTIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

I, Natalie Finkelman Bennett, hereby declare:

1.      I am a partner at Shepherd, Finkelman, Miller & Shah, LLP ("SFMS"), counsel for plaintiff United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund ("UFCW"). This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.      SFMS and its attorneys have played an active role in these antitrust cases since the early 2000s, when generic-suppression cases had their genesis. Lawyers from the firm, including those working on the captioned matter, served as interim co-lead counsel for EPPs in *In re Androgel II Antitrust Litig.* (N.D. Ga.), the companion case to the seminal pay-for-delay decision in *F.T.C. v. Actavis, Inc.*, 133 S. Ct. 2223 (2013), as well as co-lead counsel in *In re Nexium (Esomeprazole) Antitrust Litig.* (D. Mass.).[1]

## I.      OVERVIEW

### A.      Work Performed for the Benefit of the End-Payor Class

3.      SFMS has participated in the prosecution of this litigation on behalf of the End-Payor Class and has devoted efforts and resources on behalf of members of the Class in connection with litigating this action, from time of the filing of the first complaint filed in this Court on November 12, 2013, on behalf of End-Payor Plaintiffs, through July 10, 2018, the date through which an award of attorneys' fees and reimbursement of expenses are being sought. The work performed by the firm at the direction of Co-Lead Counsel included, *inter alia*, the following activities: researching factual and patent history, legal

---

[1] SFMS lawyers also serve as interim co-lead counsel in *In re Actos End Payor Antitrust Litig.* (S.D.N.Y.) and on the executive committees of "pay for delay" cases, including *In re Lipitor Antitrust Litig.* (D. N.J.), *In re Loestrin Antitrust Litig.* (D. Conn.), *In re Solodyn Antitrust Litig.* (D. Mass.); *In re Niaspan Antitrust Litig.* (E.D. Pa.); *In re Suboxone Antitrust Litig.*, (E.D. Pa.) and *In re Aggrenox Antitrust Litig.*, (D. Conn.). Members of the firm also serve on the Indirect Purchaser Plaintiffs' Steering Committee in *In re: Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.). A few examples of the firm's active involvement in non-pharmaceutical antitrust cases representing direct and indirect purchasers include: *In re: Static Random Access Memory (SRAM) Antitrust Litigation*, M:07-cv-01819 (N.D.Cal.) (co-lead counsel); *In Re OSB Antitrust Litig.* (E.D. Pa.) (discovery team); and *In re Baby Products Antitrust Litig.* (E.D. Pa.) (discovery team and allocation counsel). *See also* www.sfmslaw.com.

DECLARATION OF NATALIE FINKELMAN BENNETT IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS
COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

1   research regarding state-related claims, drafting and filing the initial class action complaint which was

2   filed by then-local counsel, Girard Gibbs LLP; participating in discovery including numerous meetings

3   with client, searching for and reviewing documents, ESI, email and transactional data of UFCW,

4   providing Rule 26 materials; responding to written discovery requests, responding to multiple

5   additional requests for information and meet and confer communications; preparing documents for

6   production, preparing and providing a representative for deposition and working with the representative

7   on follow-up issues; communications with lead counsel regarding case progress developments;

8   regularly communicating with client about the litigation and responding to client questions.

9          **B.**    **Lodestar Summary**

10       4.    In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter

11   concerning time and expense reporting, SFMS's attorneys and staff kept contemporaneous records of the

12   time they spent on this litigation. A report that reflects the contemporaneous time entries for the work

13   performed by SFMS was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office

14   have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead

15   Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are

16   authorized to submit my firm's time records for *in camera* review if requested by the Court.

17       5.    The total number of hours spent by SFMS prosecuting this litigation through July 10, 2018

18   is 461.30, with a corresponding lodestar of $220,631.00. The lodestar does not include, *inter alia*, any

19   time spent on proceedings before the judicial panel on multidistrict litigation or related to the

20   appointment of class counsel.

21       6.    The following summary chart identifies the individuals who worked on this matter, their

22   titles (Partner, Associate, Paralegal), the total number of hours they worked, their historic hourly billing

23   rates during the various years, and their total lodestar. Additional detail concerning the types of work

24   performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|---|---|---|---|---|
| Natalie Finkelman Bennett  (Cap) | Partner | 40.00 | $350.00 | $14,000.00 |
| Natalie Finkelman Bennett  (2013) | Partner | 10.50 | $650.00 | $6,825.00 |
| Natalie Finkelman Bennett  (2014) | Partner | 15.20 | $700.00 | $10,640.00 |
| Natalie Finkelman Bennett  (2015-16) | Partner | 117.40 | $725.00 | $85,115.00 |

2

| | | | | |
|---|---|---|---|---|
| Natalie Finkelman Bennett  (2017) | Partner | 5.80 | $750.00 | $4,350.00 |
| Jayne Goldstein            (2017) | Partner | 1.00 | $775.00 | $775.00 |
| Nathan Zipperian          (2013) | Partner | .70 | $575.00 | $402.50 |
| Scott Johnson              (Cap) | Associate | 151.90 | $350.00 | $53,165.00 |
| Scott Johnson              (2015) | Associate | 15.20 | $500.00 | $7,600.00 |
| Karen Leser Grenon        (Cap) | Associate | 50.30 | $350.00 | $17,255.00 |
| Karen Leser Grenon        (2014) | Associate | 36.70 | $475.00 | $17,432.50 |
| Jillian Boyce | Paralegal | 9.30 | $185.00 | $1,720.50 |
| Betsy Ferling-Hitriz | Paralegal | .40 | $185.00 | $74.00 |
| Christine Mon | Paralegal | 2.10 | $185.00 | $388.50 |
| Sue Moss | Paralegal | 4.80 | $185.00 | $888.00 |
| **TOTAL** | | **461.30** | | **$220,631.00** |

## C.    Staffing and Tasks Performed on This Matter

7.      SFMS staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

a.  **Natalie Finkelman Bennett, J.D. 1989**: performed work researching factual and legal issues and filing initial complaint, performing all facets of searching for and reviewing, analyzing and producing client documents, client discovery responses, and providing information about client documents, meeting with and preparing client for deposition and follow-up activities, researching and providing responses to lead counsel questions about client documents, and communications with lead counsel regarding case status and client information and updates.

b.  **Jayne Goldstein, J.D. 1986**: performed work regarding communications with lead counsel regarding case status and client information and updates.

c.  **Nathan Zipperian, J.D. 1998**: performed work with the client regarding the initial filing of the complaint.

d.  **Scott Johnson, J.D. 1997**: performing all facets of meeting and communicating with client and staff regarding documents and data, searching for and reviewing, analyzing and producing client documents and data, client discovery responses, providing information about client documents, meeting with and preparing client

3

for deposition and follow up activities, researching and providing responses to lead counsel questions about client documents.

e. **Karen Leser Grenon, J.D. 2001**: performing all facets of meeting and communicating with client and staff regarding documents and data, searching for and reviewing, analyzing and producing client documents and data, client discovery responses, providing information about client documents, researching and providing responses to lead counsel questions about client documents, and assisting with complaint research and filing.

f. **Jillian Boyce, Paralegal with more than 6 years of experience**: assisted in searching for and producing client documents and information.

g. **Betsy Ferling-Hitriz, Paralegal with more than 20 years of experience**: assisted with the complaint.

h. **Christine Mon, Paralegal with more than 20 years of experience**: assisted in searching for and producing client documents and information and with communications with client.

i. **Sue Moss, Paralegal with more than 20 years of experience**: assisted with the complaint, searching for and producing client documents and information, and with communications with client.

8. Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| Natalie Finkelman Bennett | Complaint Drafting and Filing | 15.00 | $10,090.00 |
| | Discovery of End-Payor Plaintiffs | 149.90 | $93,387.50 |
| | Client Updates | 17.00 | $12,322.50 |
| | Miscellaneous | 7.00 | $5,130.00 |
| | | | |
| Jayne Goldstein | Miscellaneous | 1.00 | $775.00 |
| | | | |

4

| Nathan Zipperian | Client Updates | .70 | $402.50 |
|---|---|---|---|
| Scott Johnson | Discovery of End-Payor Plaintiffs | 167.10 | $60,765.00 |
| Karen Leser Grenon | Complaint Drafting and Filing | 1.50 | $712.50 |
| | Discovery of End-Payor Plaintiffs | 84.00 | $33,262.50 |
| | Client Updates | 1.50 | $712.50 |
| Jillian Boyce | Discovery of End-Payor Plaintiffs | 9.30 | $1,720.50 |
| Betsy Ferling-Hitriz | Complaint Drafting and Filing | .40 | $74.00 |
| Christine Mon | Discovery of End-Payor Plaintiffs | 1.90 | $351.50 |
| | Client Update | .20 | $37.00 |
| Sue Moss | Complaint Drafting and Filing | 2.60 | $481.00 |
| | Discovery of End-Payor Plaintiffs | .80 | $148.00 |
| | Client Updates | .60 | $111.00 |
| | Miscellaneous | .80 | $148.00 |
| **TOTAL** | | **461.30** | **$220,631.00** |

## II.   HOURLY RATES

9.    Time spent performing document review, including review of client documents and data for production, has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorneys' typical billing rate.

10.    Other than work which was subject to the case-wide rate cap, the historical hourly rates submitted by SFMS in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.  The hourly rates range from $185 for certain paralegal work up to $775 for experienced senior litigation counsel.  Based on my knowledge and experience, the hourly rates charged by SFMS are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise.

SFMS's hourly rates, including the rates for the specific timekeepers that worked on this matter, have been routinely approved by courts in California and throughout the United States. *See, e.g., Corson v. Toyota Motor Sales U.S.A., Inc.*, Case No. 1:12-cv-8499-JGB (C.D. Ca. 2016) [Dkt. 107]; *In re Aggrenox Antitrust Litig.*, No. 3:14-cv-02516 (SRU) (D.Conn. 2018) [Dkt 821]; *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*, No. 1:14-md-2503-DJC (D. Mass. 2018) [Dkt 1176]; *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation*, MDL No. 2540 (D.N.J.) [Dkt 54]; *Q+Food v. Mitsubishi Fuso Truck of America, Inc.* (D.N.J.), 3:14-cv-06046 [Dkt 70]; *In re: Ford Motor Co. Spark Plug and 3-Valve Engine Products Liability Litigation*, Case No. 1:12-md-02316-BYP (N.D. Oh. 2016) [Dkt. 122]; *Allison Gay v. Tom's of Maine, Inc.*, Case No. 0:14-cv-60604-KMM (S.D. Fl. 2016) [Dkt. 43]; *Trewin v. Church and Dwight, Inc.*, Case No. 3:12-cv-01475-MAS-DEA (D.N.J. 2015) [Dkt. 68]; *Golden Star, Inc. v. Mass Mut. Life Ins. Co.*, Case No. 3:11-30235-MGM (D. Mass. 2015) [Dtk. 55]; *Butler National Corp. v. The Union Central Life Insurance Co.*, Case No. 1-1:12-cv-00177-SJD-KLL (S.D. Oh. 2014) [Dkt. 55]; *In re Whirlpool Corp. Front Loading Washer Products Liability Litigation*, Case No. 1:08-WP-65000 (N.D. Oh. 2016) [Dkt. 656]; and *Henderson v. Volvo Cars of North America, LLC*, 2013 WL 1192479 (D.N.J. March 22, 2013).

## III.   LITIGATION EXPENSES

11.     Below is an itemized list of the unreimbursed expenses SFMS incurred during the prosecution of this litigation while performing work assigned by Co-Lead Counsel. Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
|---|---|
| Courts Fees (filing, etc.) | $305.00 |
| Computer Research (Lexis, Westlaw, PACER, etc.) | $564.52 |
| Photocopies – In-House | $111.75 |
| Photocopies – Outside (no more than $0.30) | $12.64 |
| Postage, Courier, Messenger | $129.62 |
| Service of Process | 0 |
| Telephone / Facsimile | 0 |
| Transcripts (hearings, depositions, etc.) | 0 |

DECLARATION OF NATALIE FINKELMAN BENNETT IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS
COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

| | |
|---|---:|
| Travel (airfare, ground transportation) | 0 |
| Travel (meals and lodging) | 0 |
| **Litigation expenses:** | **$1,123.53** |
| **Contributions to the Litigation Fund:** | **$25,000.00** |
| **TOTAL:** | **$26,123.53** |

12.     The individual expenses listed above—including court fees, photocopying and computer research—were incurred specifically for this case and do not include any costs for general firm overhead.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 20th day of July 2018, at Media, Pennsylvania.

Natalie Finkelman Bennett

DECLARATION OF NATALIE FINKELMAN BENNETT IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS
COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

EXHIBIT 21

1   John A. Macoretta, Esquire
    SPECTOR ROSEMAN & KODROFF, P.C.
2   1818 Market Street, Suite 2500
    Philadelphia, PA 19103
3   (215) 496-0300
    Jmacoretta@srkattorneys.com
4

5

6

7

8

9

10

11

12                      **UNITED STATES DISTRICT COURT**

13                    **NORTHERN DISTRICT OF CALIFORNIA**

14

15   In re LIDODERM ANTITRUST LITIGATION          MDL Docket No. 14-md-02521-WHO

16                                                 **DECLARATION OF JOHN A.**
                                                   **MACORETTA IN SUPPORT OF END-**
17   THIS DOCUMENT RELATES TO:                     **PAYOR PLAINTIFF CLASS**
                                                   **COUNSEL'S MOTION FOR**
18   ALL ACTIONS                                   **ATTORNEYS' FEES, EXPENSES, AND**
                                                   **SERVICE AWARDS**
19

20

21

22

23

24

25

26

27

28

I, John A. Macoretta, hereby declare:

1.     I am a partner at Spector Roseman & Kodroff, P.C., counsel for plaintiff, Twin City Iron Workers Health & Welfare Fund. This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.     My firm has been primarily representing Plaintiffs in class actions securities, antitrust and consumer fraud cases for over 30 years.  We have served as co-lead or supporting counsel in numerous drug overcharge cases for over 15 years.

## I.     OVERVIEW

### A.     Work Performed for the Benefit of the End-Payor Class

3.     Spector Roseman & Kodroff, P.C. has participated in the prosecution of this litigation on behalf of the End-Payor Class. The work performed by the Spector Roseman & Kodroff, P.C. at the direction of Co-Lead Counsel included investigating and developing the claims, drafting a Complaint and coordinating with our clients.

### B.     Lodestar Summary

4.     In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, Spector Roseman & Kodroff  P.C.'s attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by Spector Roseman & Kodroff, P.C. was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my Spector Roseman & Kodroff, P.C.'s daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my Spector Roseman & Kodroff, P.C.'s time records for *in camera* review if requested by the Court.

5.     The total number of hours spent by Spector Roseman & Kodroff, P.C. prosecuting this litigation through July 10, 2018 is 57.75, with a corresponding lodestar of $31,015.00. The lodestar does not include any time spent on proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

6.      The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|---|---|---|---|---|
| William Caldes | Partner | 11.75 | $645 | $7578.75 |
| William Caldes | Partner | 1.75 | $675 | $1181.25 |
| William Caldes | Partner | 4.0 | $695 | $2780.00 |
| William Caldes | Partner | 1.75 | $730 | $1277.50 |
| John Macoretta | Partner | 6.75 | $645 | $4353.75 |
| Diana Zinser | Associate | 4.5 | $400 | $1800.00 |
| Diana Zinser | Associate | 1.5 | $410 | $615.00 |
| Diana Zinser | Associate | 1.0 | $430 | $430.00 |
| Eugene Spector | Partner | .25 | $775 | $193.75 |
| Jeffrey Kodroff | Partner | 12.25 | $730 | $8942.50 |
| Gerri DeMarshall | Paralegal | .25 | $250 | $62.50 |
| Nicole Noronha | Paralegal | 12.0 | $150 | $1800.00 |
| | | | | |
| **Totals** | | **57.75** | | **$31,015.00** |
| | | | | |

### C.   Staffing and Tasks Performed on This Matter

7.      Spector Roseman & Kodroff, P.C. staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

8.      **William Caldes**: Draft Complaint and contact with co-lead re: same.  Discuss case, Complaint and ESI issues with client. Review relevant case filings.  Talk with client re: client questions. Several conferences with co-lead to discuss client and case status. Conference with co-lead re: document review and review status.

9.      **John Macoretta**: Evaluating the case, discussing the claims with the client and drafting a Complaint.

10.     **Diana Zinser**: Prepared case status Memoranda for client; Reviewed class Certification Opinion

11.     **Eugene Spector**: Teleconference call re: case organization

2

12. **Jeffrey Kodroff**: Research re: Complaints

13. **Gerri M. De Marshall**: Client Updates

14. **Nicole Noronha**: Research and draft Complaint

15. Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| William Caldes | Complaint Drafting and Filing | 4.5 | $2,902.50 |
| | Document Review & Deposition Kits | .75 | $506.25 |
| | Discovery of End-Payor Plaintiffs | 2.5 | $1,612.50 |
| | Client Updates | 7.5 | $5,175.00 |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | 4 | $2,621.25 |

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| John Macoretta | Complaint Drafting and Filing | 6.25 | $4031.25 |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | 0.5 | $322.50 |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | | |

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| Diana Zinser | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | 6.0 | $2,415 |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | 1.0 | $430 |

DECLARATION OF JOHN A. MACORETTA IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

| **Eugene Spector** | Complaint Drafting and Filing | | |
| --- | --- | --- | --- |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | .25 | $193.75 |

| **Attorney** | **Tasks** | **Hours** | **Lodestar** |
| --- | --- | --- | --- |
| **Jeffrey Kodroff** | Complaint Drafting and Filing | 8.75 | $6387.50 |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | .5 | $365.00 |
| | Client Updates | 3.0 | $2190.00 |
| | Specific Tasks Assigned by Lead Counsel | | |
| | Miscellaneous | | |

| **Attorney** | **Tasks** | **Hours** | **Lodestar** |
| --- | --- | --- | --- |
| **Gerri M. De Marshall** | Complaint Drafting and Filing | | |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |
| | Specific Tasks Assigned by Lead Counsel | .25 | $62.50 |
| | Miscellaneous | | |

| **Attorney** | **Tasks** | **Hours** | **Lodestar** |
| --- | --- | --- | --- |
| **Nicole Noronha** | Complaint Drafting and Filing | 12 | $1,800.00 |
| | Document Review & Deposition Kits | | |
| | Discovery of End-Payor Plaintiffs | | |
| | Client Updates | | |

DECLARATION OF JOHN A. MACORETTA IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

| | Specific Tasks Assigned by Lead Counsel | | |
| --- | --- | --- | --- |
| | Miscellaneous | | |

## II.    HOURLY RATES

16.    Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by Spector Roseman & Kodroff, P.C. in this matter are Spector Roseman & Kodroff, P.C.'s usual and customary rates that were charged by Spector Roseman & Kodroff in similar matters in which Spector Roseman & Kodroff is paid on a contingent basis, as well as Spector Roseman & Kodroff, P.C.'s non-contingent matters.

17.    Spector Roseman & Kodroff, P.C.'s hourly rates, including the rates for the specific timekeepers that worked on this matter, have been approved in the following matters:

- *In re; Aggrenox Antitrust Litigation* No. 3:14 MD2516(D.Conn July 19, 2018) Approved Timekeepers: Jeffrey Kodroff, John Macoretta, William Caldes, Diana Zinser, Gerri DeMarshall, Nicole Noronha
- *In re: Domestic Drywall Antitrust Litigation* No. 13-MD-2437(E.D.Pa. July 17, 2018) Approved Timekeepers: Eugene Spector, William Caldes, Diana Zinser, Gerri DeMarshall, Nicole Noronha

18.    Time spent performing document review has been capped at $350 per hour or actual billable rate, whichever is lower, regardless of the reviewing attorneys typical billing rate.

## III.    LITIGATION EXPENSES

19.    Below is an itemized list of the unreimbursed expenses Spector Roseman & Kodroff, P.C. incurred during the prosecution of this litigation while performing work assigned by Co-Lead Counsel. Those expenses are reflected in Spector Roseman & Kodroff, P.C.'s books and records that are regularly maintained in the ordinary course of Spector Roseman & Kodroff, P.C.'s business and are based on the receipts and data maintained by Spector Roseman & Kodroff, P.C.

| Category | Amount Incurred |
|---|---|
| Courts Fees (filing, etc.) | $800.00 |
| Computer Research (Lexis, Westlaw, PACER, etc.) | $91.80 |
| Document Production | |
| Photocopies – In-House | $165.75 |
| Photocopies – Outside (no more than $0.30) | |
| Postage, Courier, Messenger | $14.00 |
| Service of Process | $1365.00 |
| Telephone / Facsimile | $1.74 |
| Transcripts (hearings, depositions, etc.) | |
| Travel (airfare, ground transportation) | $255.87 |
| Travel (meals and lodging) | |
| **Total:** | **$2694.16** |
| **Contributions to the Litigation Fund:** | -0- |

20.     The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general Spector Roseman & Kodroff, P.C. overhead.

Spector Roseman & Kodroff, P.C. will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 20th day of July 2018, at Philadelphia, PA.

_____
JOHN A. MACORETTA

EXHIBIT 22

Robert S. Kitchenoff
WEINSTEIN KITCHENOFF & ASHER LLC
100 S. Broad Street, Suite 705
Philadelphia, PA  19110-1061
(215) 545-7200
kitchenoff@wka-law.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **DECLARATION OF ROBERT S. KITCHENOFF IN SUPPORT OF END-PAYOR PLAIN-TIFF CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

I, Robert S. Kitchenoff, hereby declare:

1.      I am member of Weinstein Kitchenoff & Asher LLC ("WKA"), counsel for plaintiff Teamsters Union Local 115 Health & Welfare Fund. This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.      Weinstein Kitchenoff & Asher LLC ("WKA") is a pre-eminent national law firm whose attorneys have served in leadership positions in the most influential, innovative, and successful antitrust and commercial class and multi-party actions of the past 25 years. The Firm is currently serving as co-lead counsel in *In re LIBOR-Based Financial Instruments Antitrust Litigation* (Bondholder Action) and *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litigation*, and has served as co-lead counsel in, among others, *Cox v. Shell Oil Company* ($1.1B settlement)*; In re Imprelis Herbicide Marketing, Sales Practices, and Products Liability Litigation* ($575MM settlement); *Kaufman v. Motorola*;  *In re Copper Antitrust Litigation* (multi-party case, settlement amt. confidential); and *Gilman v. Independence Blue Cross*.

# I.      OVERVIEW

## A.      Work Performed for the Benefit of the End-Payor Class

3.      WKA participated in the prosecution of this litigation on behalf of the End-Payor Class. The work performed by the firm included the preparation of pleadings.

## B.      Lodestar Summary

4.      In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, WKA's attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by WKA was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

5. The total number of hours spent by WKA prosecuting this litigation through July 10, 2018 is 20.00, with a corresponding lodestar of $9,035.00. The lodestar does not include any time spent on proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

6. The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|----------|-------|-------|-------|----------|
| Mindee J. Reuben | Partner | 4.90 | $650.00 | $3,185.00 |
| Edward Skipton | Associate | 15.60 | $375.00 | $5,850.00 |

## C. Staffing and Tasks Performed on This Matter

7. WKA staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

8. Mindee J. Reuben: Ms. Reuben, admitted to the bar in 1993, researched, edited, and finalized for filing the Complaint filed on behalf of plaintiff Teamsters Union Local 115 Health & Welfare Fund.

9. Edward Skipton: Mr. Skipton, admitted to the bar in 2011, researched and drafted the Complaint on behalf of plaintiff Teamsters Union Local 115 Health & Welfare Fund.

10. Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|----------|-------|-------|----------|
| Mindee J. Reuben | Complaint Drafting and Filing | 4.90 | $3,185.00 |
| Edward Skipton | Complaint Drafting and Filing | 15.60 | $5,850.00 |

## II. HOURLY RATES

11. Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by WKA in this matter are the firm's usual and customary rates that were charged by the firm

2

in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

## III.   LITIGATION EXPENSES

12.   Below is an itemized list of the unreimbursed expenses WKA incurred during the prosecution of this litigation while performing work assigned by Co-Lead Counsel. Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
|---|---|
| Courts Fees (filing, etc.) | |
| Computer Research (Lexis, Westlaw, PACER, etc.) | $130.49 |
| Document Production | |
| Photocopies – In-House | $220.60 |
| Photocopies – Outside (no more than $0.30) | |
| Postage, Courier, Messenger | $12.49 |
| Service of Process | |
| Telephone / Facsimile | $3.24 |
| Transcripts (hearings, depositions, etc.) | |
| Travel (airfare, ground transportation) | |
| Travel (meals and lodging) | |
| **Total:** | $366.82 |
| **Contributions to the Litigation Fund:** | |

13.   The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead. WKA will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I declare under penalty of perjury under the laws of the United States of America that the forego-ing is true and correct. Executed this 18th day of July, 2018, at Philadelphia, Pennsylvania.

_____
Robert S. Kitchenoff

DECLARATION OF ROBERT S. KITCHENOFF IN SUPPORT OF END-PAYOR PLAINTIFFS
CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO

EXHIBIT 23

1    Kenneth A. Wexler
     WEXLER WALLACE LLP
2    55 West Monroe Street
     Suite 3300
3    Chicago, IL 60603
     Tel: (312) 346-2222
4    kaw@wexlerwallace.com

5

6

7

8

9

10

11

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15

16   In re LIDODERM ANTITRUST LITIGATION        MDL Docket No. 14-md-02521-WHO

17                                              **DECLARATION OF KENNETH A.**
     THIS DOCUMENT RELATES TO:                  **WEXLER IN SUPPORT OF END-**
18                                              **PAYOR PLAINTIFF CLASS**
     ALL ACTIONS                                **COUNSEL'S MOTION FOR**
19                                              **ATTORNEYS' FEES, EXPENSES, AND**
                                                **SERVICE AWARDS**
20

21

22

23

24

25

26

27

28

I, Kenneth A. Wexler, hereby declare:

1.      I am a partner at Wexler Wallace LLP, counsel for plaintiff Welfare Plan of The International Union of Operation Engineers Locals 137, 137A, 137B, 137C, 137R. This declaration is submitted in support of End-Payor Plaintiff Class Counsel's Motion for Attorneys' Fees, Expenses, and Service Awards. I have personal knowledge of the facts below and, if called upon to do so, could and would testify competently thereto.

2.      Wexler Wallace is recognized nationally as a leading firm in complex class action and multidistrict litigation and has been at the forefront of the fight against unscrupulous corporate conduct since its inception in 2000. Wexler Wallace attorneys have held and hold leadership positions in significant cases across the country, and they remain in the vanguard of legal development as it relates to antitrust litigation.

## I.      OVERVIEW

### A.      Work Performed for the Benefit of the End-Payor Class

3.      Wexler Wallace LLP has participated in the prosecution of this litigation on behalf of the End-Payor Class. The work performed by the firm at the direction of Co-Lead Counsel included substantial work on PBM third-party discovery and support for class certification experts and briefing.

### B.      Lodestar Summary

4.      In accordance with Court's direction and Liaison Counsel's June 4, 2014 letter concerning time and expense reporting, Wexler Wallace LLP's attorneys and staff kept contemporaneous records of the time they spent on this litigation. A report that reflects the contemporaneous time entries for the work performed by Wexler Wallace LLP was delivered to Co-Lead Counsel for their review. Co-Lead Counsel and my office have reviewed my firm's daily time records to ensure compliance with the rules set forth by Co-Lead Counsel and exercised billing judgment to eliminate inefficiency and duplication. Co-Lead Counsel are authorized to submit my firm's time records for *in camera* review if requested by the Court.

5.      The total number of hours spent by Wexler Wallace LLP prosecuting this litigation through July 10, 2018 is 161.10 with a corresponding lodestar of $68,929.50 . The lodestar does not

include any time spent on proceedings before the judicial panel on multidistrict litigation or related to the appointment of class counsel.

6.    The following summary chart identifies the individuals who worked on this matter, their titles (Partner, Of Counsel, Associate, Paralegal, Litigation Staff), the total number of hours they worked, their historic hourly billing rates, and their total lodestar. Additional detail concerning the work performed by each of these individuals is set forth below.

| Attorney | Title | Hours | Rates | Lodestar |
|---|---|---|---|---|
| Kenneth A. Wexler | Partner | 1.1 | $ 750.00 | $ 825.00 |
| Kenneth A. Wexler | Partner | 2.3 | $ 725.00 | $ 1,667.50 |
| Bethany R. Turke | Partner | 0.6 | $ 550.00 | $ 330.00 |
| Justin N. Boley | Partner | 77.9 | $ 475.00 | $ 37,002.50 |
| Justin N. Boley | Partner | 43.5 | $ 450.00 | $ 19,575.00 |
| Tyler J. Story | Associate | 0.6 | $ 350.00 | $ 210.00 |
| Adam Prom | Associate | 0.8 | $ 340.00 | $ 272.00 |
| Ashtin Otto | Paralegal | 18.1 | $ 275.00 | $ 4,977.50 |
| Ashtin Otto | Paralegal | 11.9 | $ 250.00 | $ 2,975.00 |
| Evangeline Rose Campo | Paralegal | 0.8 | $ 275.00 | $ 220.00 |
| Amy C. Sayre | Paralegal | 3.5 | $ 250.00 | $ 875.00 |
| **Grand Total** | | **161.10** | | **$ 68,929.50** |

## C.    Staffing and Tasks Performed on This Matter

7.    Wexler Wallace LLP staffed this matter with attorneys and professionals who performed tasks based on their skills, expertise, and experience. The individuals who worked on this matter and the tasks they performed are described below:

8.    **Kenneth A. Wexler, Bethany R. Turke, Justin N. Boley, Tyler J. Story, Adam Prom:** tasked with assisting discovery targeting PBM third-parties, briefing and researching issues related to rebates and premium discovery, expert retention and management for ascertainability and class certification, and support for class certification briefing itself.

9.    **Ashtin Otto, Evangeline Rose Campo, Amy Sayre:** tasked with research and logistical support for attorney tasks above.

10.     Below is an itemization of time spent by the above-referenced individuals on specific tasks:

| Attorney | Tasks | Hours | Lodestar |
|---|---|---|---|
| Kenneth A. Wexler | Specific Tasks Assigned by Lead Counsel *[Class Certification Support]* | 0.8 | $600.00 |
| | Specific Tasks Assigned by Lead Counsel *[Third-Party Discovery]* | 2.5 | $1,820.00 |
| | Miscellaneous *[Case Management & Planning]* | 0.1 | $72.50 |
| Bethany R. Turke | Specific Tasks Assigned by Lead Counsel *[Class Certification Support]* | 0.2 | $110.00 |
| | Specific Tasks Assigned by Lead Counsel *[Third-Party Discovery]* | 0.3 | $165.00 |
| | Miscellaneous *[Case Management & Planning]* | 0.1 | $55.00 |
| Justin N. Boley | Specific Tasks Assigned by Lead Counsel *[Class Certification Support]* | 76.9 | $36,162.50 |
| | Specific Tasks Assigned by Lead Counsel *[Third-Party Discovery]* | 38.5 | $17,575.00 |
| | Specific Tasks Assigned by Lead Counsel *[Motion to dismiss briefing]* | 5.5 | $2,612.50 |
| | Miscellaneous *[Case Management & Planning]* | 0.5 | $227.50 |
| Tyler J. Story | Specific Tasks Assigned by Lead Counsel *[Class Certification Support]* | 0.6 | $210.00 |
| Adam Prom | Specific Tasks Assigned by Lead Counsel *[Class Certification Support]* | 0.8 | $272.00 |
| Ashtin Otto | Specific Tasks Assigned by Lead Counsel *[Class Certification Support]* | 10.8 | $2,962.50 |
| | Specific Tasks Assigned by Lead Counsel *[Third-Party Discovery]* | 19.2 | $4,990.00 |

3

| Evangeline Rose Campo | Specific Tasks Assigned by Lead Counsel *[Class Certification Support]* | 0.6 | $165.00 |
| | Specific Tasks Assigned by Lead Counsel *[Third-Party Discovery]* | 0.1 | $27.50 |
| | Miscellaneous *[Case Management & Planning]* | 0.1 | $27.50 |
| | | | |
| Amy Sayre | Specific Tasks Assigned by Lead Counsel *[Third-Party Discovery]* | 3.5 | $875.00 |

## II.   HOURLY RATES

11.   Other than work which was subject to a case-wide rate cap, the historical hourly rates submitted by Wexler Wallace LLP in this matter are the firm's usual and customary rates that were charged by the firm in similar matters in which the firm is paid on a contingent basis, as well as the firm's noncontingent matters.

12.   Wexler Wallace LLP's hourly rates, including the rates for the specific timekeepers that worked on this matter, have been approved in multiple cases, including the following examples:

- *In re Wellbutrin XL Antitrust Litig.*, 2:08-cv-02433, ECF No. 473 (E.D. Pa. July 22, 2013).

- *In re Skelaxin (Metaxalone) Antitrust Litig.*, 1:12-md-02343, ECF No. 910 (E.D. Tenn. Oct. 30, 2015).

## III.   LITIGATION EXPENSES

13.   Below is an itemized list of the unreimbursed expenses Wexler Wallace LLP incurred during the prosecution of this litigation while performing work assigned by Co-Lead Counsel. Those expenses are reflected in the firm's books and records that are regularly maintained in the ordinary course of the firm's business and are based on the receipts and data maintained by the firm.

| Category | Amount Incurred |
| --- | --- |
| Courts Fees (filing, etc.) | $305.00 |
| Computer Research (Lexis, Westlaw, PACER, etc.) | $312.91 |

| | |
|---|---|
| Postage, Courier, Messenger | $105.42 |
| Telephone / Facsimile | $27.96 |
| Travel (airfare, ground transportation) | $741.21 |
| Travel (meals and lodging) | $772.66 |
| **Total:** | **$2,265.16** |
| **Contributions to the Litigation Fund:** | **$15,000.00** |

14.     The expenses listed above—including computer research—were incurred specifically for this case and do not include any costs for general firm overhead.

Wexler Wallace LLP will not seek payment for work, lodestar, or expenses related to this litigation other than those set forth in this declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 20th day of July 2018, at Chicago, Illinois.

Kenneth A. Wexler

DECLARATION OF KENNETH A. WEXLER IN SUPPORT OF END-PAYOR PLAINTIFFS CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
MDL DOCKET NO. 14-md-02521-WHO