[Submitting Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | Master File No. 14-md-02521-WHO |
| | MDL No. 2521 |
| THIS DOCUMENT RELATES TO: DIRECT PURCHASER ACTIONS | **SUPPLEMENTAL DECLARATION OF CO-LEAD COUNSEL PETER KOHN IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR REIMBURSEMENT OF COSTS AND ATTORNEYS' FEES** |
| | The Honorable William H. Orrick |

Peter Kohn, subject to the penalties of perjury provided by 18 U.S.C. § 1746, does hereby declare as follows:

1. I am a partner in the law firm Faruqi & Faruqi LLP, attorneys for Plaintiff Rochester Drug Co-Operative, Inc. and co-lead Counsel for the Direct Purchaser Class in the above-captioned case. I submit this supplemental declaration in further support of Direct Purchaser Plaintiffs' Motion for Reimbursement of Costs and Attorneys' Fees [ECF Nos. 1023 & 1024].

2. Specifically, I address in this supplemental declaration the questions asked by the Court during the hearing on final settlement approval on September 12, 2018. Those questions appear in the Amended Civil Minutes [ECF No. 1044]. They also appear on pages 9 through 11 of the transcript of proceedings [ECF No. 1046, at 9:6-11:6].

3. **Travel expenses.** I have investigated the approximately $115,000 difference between the endpayor amount in travel expenses (approximately $152,000) and the direct purchaser amount (approximately $267,000). I found the following. First, the lawyers at Girard Gibbs did not have to travel to San Francisco for arguments and court conferences. That certainly accounts for the $20,000 difference between Girard Gibbs and both of the other co-leads for the endpayors. None of the direct purchaser firms is San Francisco-based. Second, there were significant deposition-related travel differences between the direct purchasers and the endpayors. First, for certain experts handled mainly by the direct purchasers, endpayor counsel did not attend deposition preparation sessions and/or the deposition in person (hence, no travel was required of the endpayors). This included Professor Adelman (our patent law expert), Dr. Shah (our technical validity expert), Professor Elhauge (our reverse-payment economics expert), Mr. Molina (our authorized generics expert), Mr. Read (our FDA expert), Dr. Lane (defendants' technical invalidity expert), and Mr. Schwartz (defendants' patent law expert). Second, for certain fact and expert depositions where the direct purchasers took the lead, more than one direct purchaser lawyer was usually present to assist. This occurred where the defense witness was also designated under Rule 30(b)(6) for a topic in which a second questioner had special expertise, and also occurred for several other fact and expert witnesses where the direct purchasers served as lead questioner, and the lead questioner was assisted by a teammate. At some such depositions, the endpayor

Supp'l Decl. of Peter Kohn ISO Direct Purchaser
Plaintiffs' Motion for Reimbursement of Costs and
Attorneys' Fees
Case No. 3:14-md-02521-WHO

1

lawyer did not attend in person, which widened the gap in travel expenditures still more.  Third, both for initial interviews prior to retention and for trial preparation of some experts, direct purchaser lawyers traveled alone to the witness's remote location.  This included Professor Adelman, Mr. Molina, and Mr. Read.  I have also personally investigated transaction-level travel expenditure data from each of the direct purchaser firms with any significant travel expenditures.  I find no outsized hotel, airfare, meal, or other expenses.

Finally, I note that direct purchasers' fee application sought an attorney fee of 27.5% calculated as a percentage of the settlement amount *after* the deduction of litigation expenses.  The consequence of this approach is that, although direct purchasers incurred travel expenses of approximately $267,000, over $73,000 of that amount was effectively absorbed by direct purchaser counsel (compared with if direct purchasers' fee had been calculated on the settlement before deduction of litigation expenses), resulting in an effective travel expense cost to the direct purchaser class of less than $194,000, shrinking the difference in travel costs to be reimbursed from the two settlement funds.

4. **Contract lawyers.**  I have looked at the difference in rates between the contract lawyers for the endpayors and the contract lawyers for the direct purchasers.  The endpayors' contract lawyers reported rates between $350/hour and $495/hour (*e.g.*, ECF No. 1032 at p. 106 of 234), but the endpayors capped contract lawyer rates at $350/hour.  *See* ECF No. 1030 at 13.  The direct purchasers' contract lawyers reported very similar rates, which are as follows (in ascending order of rate):

| Name | Firm | Rate | Source | Total Lodestar |
|---|---|---|---|---|
| Daniel Listwa | Berger & Montague, P.C. | $300 | ECF 1024-2, p. 2 | $121,170.00 |
| James DiMaggio | Berger & Montague, P.C. | 345 | ECF 1024-4, p. 2 | 16,905.00 |
| Jason Harrington | Smith Segura & Raphael LLP | 350 | ECF 1024-7, p. 3 | 6,965.00 |
| Michael Martin | Smith Segura & Raphael LLP | 375 | ECF 1024-7, p. 3 | 23,962.50 |
| Joseph Klein | Berger & Montague, P.C. | 425 | ECF 1024-2, p. 2 | 784,550.00 |
| Nikos Valance | Berger & Montague, P.C. | 435 | ECF 1024-2, p. 3 | 26,100.00 |
| Betty Owens | Smith Segura & Raphael LLP | 475 | ECF 1024-7, p. 3 | 29,402.50 |
| Gerald Rutledge | Garwin Gerstein & Fisher LLP | 490 | ECF 1024-2, p. 2 | 513,019.00 |
| Alfred Yates | Garwin Gerstein & Fisher LLP | 590 | ECF 1024-2, p. 2 | 97,261.50 |

5. These direct purchaser contract lawyer rates are nearly identical to the rates charged by the endpayor contract lawyers, but the direct purchasers did not cap rates of their contract lawyers.

Supp'l Decl. of Peter Kohn ISO Direct Purchaser
Plaintiffs' Motion for Reimbursement of Costs and
Attorneys' Fees
Case No. 3:14-md-02521-WHO

2

Direct purchaser contract lawyers billed a total of $1.6 million, or 3.7% of the total lodestar for direct purchaser counsel in this case. If capped at $350/hour, that total would come down $344,080.50 to $1.3 million, or 3.0% of total lodestar, a minimal difference that would yield a multiplier of 1.06 (up from 1.05).

6. The rates of these lawyers billed at over $350/hour is justified without any caps, based on the experience of these lawyers and their expertise in antitrust document review:

   a. <u>Betty Owens</u> ($475/hr.) is an attorney who performed 61.9 hours of work on the Lidoderm case. Smith Segura & Raphael LLP has used Ms. Owens for part-time legal services since 2005. She is an honors graduate of the University of Texas School of Law, has practiced law since the late 1980s, and is a former partner at Vinson & Elkins in Houston. She has performed contract work for the firm in dozens of cases (mostly antitrust) over the past thirteen years. Her rate is justified, if not conservative.

   b. <u>Michael Martin</u> ($375/hr.) is a former associate of Smith Segura & Raphael LLP, who performed 63.9 hours of work on the Lidoderm case. He probably should have been labelled a "Former Associate" rather than a contract lawyer. Mr. Martin has been licensed to practice law since 2012 and was a senior paralegal in Cleary Gottlieb's antitrust litigation group in Washington D.C. prior to that. He relocated to Dallas in 2017, but continued to perform part-time work for the firm on a contract basis. As a 6-year lawyer, his rate is justified.

   c. <u>Gerald Rutledge</u> ($490/hr.) is an attorney who performed over 1,000 hours of work on the Lidoderm case. Garwin Gerstein & Fisher has used Mr. Rutledge in a number of antitrust cases and has benefitted from his 20 plus years of experience in complex antitrust cases. Significantly, Mr. Rutledge was not paid a guaranteed salary for his work on Lidoderm but worked on a contingency basis without any assurance of compensation. His experience and years in practice justify his rate.

   d. <u>Alfred Yates</u> ($590/hr.) has been a practicing attorney for 45 years and has over 20 years of experience litigating complex antitrust cases. Mr. Yates has worked with the

Supp'l Decl. of Peter Kohn ISO Direct Purchaser
Plaintiffs' Motion for Reimbursement of Costs and
Attorneys' Fees                                             3
Case No. 3:14-md-02521-WHO

Garwin firm in a number of antitrust cases and, like Mr. Rutledge, also worked on the Lidoderm case on a purely contingent basis. Mr. Yates's hourly rate is justified and even relatively low in comparison to other attorneys in this case with similar experience.

    e. <u>Joseph Klein</u> ($425/hr.) has been a practicing attorney for 28 years and has over 14 years of experience litigating complex antitrust cases. Mr. Klein has been working with Berger Montague PC since 2013, and, as part of this work with Berger Montague PC, has helped to develop the economic evidentiary record in more than a half dozen similar pharmaceutical antitrust cases, including *In re Solodyn Antitrust Litigation* and *In re Aggrenox Antirust Litigation*. Mr. Klein played an important role in discovery, helping with deposition preparation for at least four depositions and helping to develop the economic factual record that served as the basis for direct purchasers' motion for class certification and plaintiffs' motion for summary judgment as to the definition of the relevant antitrust market, both of which were granted. His rate is justified, if not conservative.

    f. <u>Nikos Valence</u> ($435/hr.) performed 60 hours of work on this case. He has practiced law since 2010. In addition to a J.D. degree, Mr. Valence also has an M.A. in Economics, from which the economic issues in this case benefited. Through his work with Berger Montague PC, Mr. Valence has contributed to several antitrust class actions, including *Marchbanks Truck Serv., Inc. v. Comdata Network, Inc.*, and including pharmaceutical antitrust cases similar to *Lidoderm*. In light of his specialization and 8 years in practice, his rate is justified.

7.    **Claims administrator expenses.** Attached as Exhibit 1 is an estimate from RG/2, the Court-approved claims administrator for the direct purchasers in this case, explaining the amounts to be charged, in this case. The total is just about $17,000. I am informed that RG/2 has already billed around $5,000 of that amount.

Supp'l Decl. of Peter Kohn ISO Direct Purchaser
Plaintiffs' Motion for Reimbursement of Costs and
Attorneys' Fees
Case No. 3:14-md-02521-WHO

4

1    8.    Pursuant to 28 U.S.C. § 1746, I declare under the penalties of perjury that the foregoing,
2 is true and correct.

4    Executed this 20th day of September, 2018.

*[signature]*

PETER KOHN
*Co-Lead Counsel for the Direct Purchaser Class*

Supp'l Decl. of Peter Kohn ISO Direct Purchaser
Plaintiffs' Motion for Reimbursement of Costs and
Attorneys' Fees                                                5
Case No. 3:14-md-02521-WHO

# EXHIBIT 1



www.rg2claims.com

Presented by:
William W. Wickersham, Esquire
Vice President, Business Development and Client Relations
(212) 471-4777
wwwickersham@rg2claims.com

**Estimate of Costs for Settlement Administration Services related to:**
*In re: Lidoderm Antitrust Litigation*

| | Quantity (hours/pieces) | Rate | Amount |
|---|---|---|---|
| **Case Intake** | | | |
| Intake - Review of Case Documents, Design and Typeset Forms, and related communications with Counsel | 4 | $ 238.50 | $ 954 |
| Set Up Static Website to post Case Documents | | | |
| Website Monthly Maintenance (months) | 6 | $ 50.00 | $ 300 |
| **Subtotal: Setup Cost** | | | **$ 1,254** |
| **Claimant Notification** | | | $ 1,073 |
| Print and Mail Notice Package | 55 | $ 4.50 | $ 248 |
| Issue Notices via Federal Express | 55 | $ 15.00 | $ 825 |
| **Notice Follow Up** | | | $ 398 |
| Confirm Receipt | 55 | $ 4.50 | $ 248 |
| Locate Missing Class Members (Locator Services)/ Troubleshoot | 5 | $ 15.00 | $ 75 |
| Re-Mail | 5 | $ 15.00 | $ 75 |
| **Subtotal: Notification Cost** | | | **$ 1,470** |
| Data Entry of claims | 55 | $ 4.50 | $ 248 |
| Review of Supporting documentation | 15 | $ 125.00 | $ 1,875 |
| Deficiency Correspondence | 10 | $ 15.00 | $ 150 |
| Process Responses | 10 | $ 4.50 | $ 45 |
| **Subtotal: Processing Cost** | | | **$ 2,318** |
| **Telephonic Database Support** | | | |
| Live Phone Support/ Escalated Communications | | | $ 250 |
| **Subtotal: Telephone and Email Support** | | | **$ 250** |
| **First Distribution** | | | |
| Set Up data Pro-Rate Damages | | | $ 500 |
| Print Checks | 55 | $ 4.50 | $ 248 |
| Federal Express | 55 | $ 15.00 | $ 825 |
| Reissue Checks | 5 | $ 4.50 | $ 23 |
| Federal Express | 5 | $ 15.00 | $ 75 |
| **Second Distribution** | | | |
| Set Up data Pro-Rate Damages | | | $ 500 |
| Print Checks | 55 | $ 4.50 | $ 248 |
| Federal Express | 55 | $ 15.00 | $ 825 |
| Qualified Settlement Fund Tax Reporting (3 accounts for 2 years) | 5.00 | $ 1,050.00 | $ 5,250 |
| **Subtotal: Tax Preparation** | | | **$ 8,493** |
| Case Management including Preparation of Declaration to the Court | | | $ 2,500 |
| **Subtotal: Project Management** | | | **$ 2,500** |
| **Estimated Notice Costs and Expenses** | | | **$ 16,284** |