[Submitting Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re LIDODERM ANTITRUST LITIGATION | Master File No. 14-md-02521-WHO<br><br>MDL No. 2521 |
| THIS DOCUMENT RELATES TO: END-PAYOR ACTIONS | **ORDER [AS MODIFIED] GRANTING END-PAYOR CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

On March 20, 2018, End-Payor Plaintiffs,[1] on behalf of themselves and the End-Payor Class, entered into separate settlement agreements with (a) defendant Endo Pharmaceuticals, Inc. ("Endo"); (b) defendants Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. (together, "Teikoku"); (c) defendants Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., and Actavis plc (together, "Watson" and together with Endo and Teikoku, "Defendants") (the "Settlement Agreements"). The Court preliminarily approved the Settlements on May 1, 2018, and the settlements have now been granted final approval.

The Court has considered End-Payor Class Counsel's Motion for an Award of Attorneys' Fees, Expenses, and Service Awards, including all arguments and briefing presented and any opposition thereto, as well as any objections to the requests.

The Court **GRANTS** the motion and **ORDERS** as follows:

1. Terms capitalized in this Order and not otherwise defined herein have the same meanings as those used in the Settlement Agreements and exhibits thereto.

I. **Attorneys' Fees**

2. Class counsel[2] requests the payment of attorneys' fees equal to one-third of the settlement amounts ($34,916,000), plus proportionate interest from the Settlement Fund. This amount represents a 1.37 multiplier on class counsel's reported lodestar. In support of their request, each firm submitted a declaration that (1) identifies the attorneys and staff members

---

[1] Allied Services Division Welfare Fund, City of Providence, International Union of Operating Engineers Local 49 Health and Welfare Fund, International Union of Operating Engineers Local 132 Health and Welfare Fund, Iron Workers District Council of New England Welfare Fund, NECA-IBEW Welfare Trust Fund, United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund, Welfare Plan of the International Union of Operating Engineers Locals 137, 137A, 137B, 137C, 137R, and Ottavio Gallotto.

[2] Cohen Milstein Sellers & Toll PLLC; Girard Gibbs LLP; Heins Mills & Olson, P.L.C.; Joseph Saveri Law Firm, Inc.; Hilliard & Shadowen LLP; Miller Law LLC; Motley Rice LLC; Robbins Geller Rudman & Dowd LLP; Cohen, Placitella & Roth, P.C.; Freed Kenner London & Millen LLC; Glancy Prongay & Murry LLP; Hach Rose Schirripa & Cheverie LLP; Kohn, Swift & Graf, P.C.; Krause, Kalfayan, Benink & Slavens, LLP; Labaton Sucharow LLP; Law Offices of Robert W. Sink; Lockridge Grindal Nauen P.L.L.P.; Meredith & Narine; Pomerantz LLP; Shepherd, Finkelman, Miller & Shah, LLP; Spector Roseman & Kodroff, P.C.; Weinstein Kitchenoff & Asher LLC; and Wexler Wallace LLP.

1

ORDER [AS MODIFIED] GRANTING END-PAYOR CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
CASE NO. 14-MD-02521-WHO

who worked on the case and the tasks they performed, (2) describes the amount of time spent by each of the firm's attorneys and staff members, and the hourly rates for each of them, and (3) breaks down the amount billed by each attorney or staff member for specific tasks.

3. Pursuant to Federal Rule of Civil Procedure 23(h), a "court may award reasonable attorneys' fees" to plaintiffs' counsel in class action cases. "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable[.]" *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942. "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *Id.* The Court finds that class counsel's requested fee is reasonable under either approach and awards class counsel one-third of the settlement amounts ($34,916,000, plus a proportional share of interest from the Settlement Fund). Co-Lead Counsel shall allocate the awarded attorneys' fees among class counsel.

A. **The Lodestar Method**

4. The lodestar figure is calculated by multiplying the number of hours reasonably spent by a reasonable hourly rate. *Bluetooth*, 654 F.3d at 941. Courts may "adjust [the lodestar figure] upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors." *Id.* at 941-42 (citation omitted). Class counsel spent 51,668.35 hours prosecuting this litigation on behalf of the End-Payor Class with a resulting lodestar of $25,560,049.50. Class counsel's requested fee award of one-third of the settlement amounts represents a modest upward adjustment of 1.37 on their lodestar.

5. Class counsel's lodestar reflects time that was necessarily and reasonably expended for the benefit of the End-Payor Class. Co-Lead Counsel Girard Gibbs, Heins Mills, and Cohen Milstein performed the significant majority of the work in this matter. Non-lead firms carried out a limited number of non-duplicative tasks at Co-Lead Counsel's direction, primarily reviewing documents produced by Defendants and responding to discovery served by Defendants on their clients. In addition, Co-Lead Counsel undertook significant efforts to

2

ORDER [AS MODIFIED] GRANTING END-PAYOR CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
CASE NO. 14-MD-02521-WHO

increase efficiency and avoid duplication. The record also reflects that Co-Lead Counsel worked cooperatively with counsel for the direct purchaser and opt-out plaintiffs.

6. The second part of the lodestar calculation is multiplying the hours spent by a "reasonable hourly rate for the region and the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. Class counsel's historic rates—which range from $350 to $1,050 for partners and senior counsel, $300 to $675 for associates, and $100 to $400 for paralegals and other litigation staff (including senior cases managers)—meet both criteria. The requested rates are consistent with rates approved in recent antitrust class actions in this district. *E.g. In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.* ("*NCAA*"), 2017 WL 6040065, at *8 (N.D. Cal. Dec. 6, 2017) (approving hourly rates for partners of $578 to $1,035 and rates for associates of $295 to $635); *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (partner rates of $490 to $975, non-partner rates of $310 to $800, and staff rates of $190 to $430). Co-Lead Counsel set an hourly cap of $350 for all time spent on document review (with the exception of Japanese language review, which was capped at $400 per hour). Class counsel's declarations also provided examples of other cases in which their rates have been approved and explain that class counsel assigned tasks to attorneys and staff based on their skills and experience.

7. The Court also finds that the multiplier class counsel request here is warranted. In deciding whether to deviate from the lodestar figure, courts consider "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues present, and the risk of nonpayment." *Bluetooth*, 654 F.3d at 942 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). Each of these factors weighs in favor of a 1.37 multiplier.

8. Class counsel obtained a significant benefit for the End-Payor Class. Defendants will pay a total of $104.75 million in cash to settle EPPs' claims. The End-Payor Class will recover 46% of the highest single damages estimate EPPs were prepared to seek at trial ($229 million). *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009) (antitrust settlement for 30% of plaintiffs' estimated damages was "fair and reasonable no

3

matter how you slice it"). Class counsel have reported that they are not aware of any other end-payor pay-for-delay case in federal court since 2005 that has settled for more than $100 million. The size of the recovery here—whether measured in dollars or by reference to percentage-of-damages recovery—warrants the multiplier. *See Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *10 (N.D. Cal. June 5, 2017) (awarding a 2.0 multiplier for a 30.5% recovery).

9. Class counsel provided their clients with diligent and skilled representation in this matter. Co-Lead Counsel litigated numerous complex issues and their efforts produced substantial benefits for the End-Payor Class. This case was the first post-*Actavis* pay-for-delay case in the Ninth Circuit, and many of the issues class counsel litigated were matters of first impression in this Circuit. The litigation also involved substantial risk. In the only pay-for-delay case to proceed through trial since *Actavis*, the jury returned a victory for the defendants. *See In re: Nexium (Esomeprazole) Antitrust Litig.*, No. 1:12-md-02409-WGY, ECF No. 1383 (D. Mass. Dec. 5, 2014) (verdict form). In other cases, plaintiffs have lost at summary judgment. *See In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132 (3d Cir. 2017). Obtaining certification of an end-payor class presents challenges that are unique to end-payors.

10. In addition, even if EPPs had prevailed at trial, Defendants were poised to appeal several important decisions, including the Court's certification of the End-Payor Class, its summary judgment order on the relevant market, and its order regarding the appropriate standard for establishing causation at trial. Here, "Class Counsel litigated this action without pay for several years, even though recovery was uncertain." *High-Tech*, 2015 WL 5158730, at *10.

11. Finally, the requested multiplier is within the range of multipliers awarded in the Ninth Circuit. In *Vizcaino v. Microsoft Corporation*, the Ninth Circuit surveyed common fund cases with settlements ranging from $50-200 million and found that multipliers ranged from 1.0-4.0 in the vast majority of cases. 290 F.3d 1043, 1052-54 (9th Cir. 2002). Courts in this district have recently awarded significantly larger multipliers in antitrust cases than the

4

ORDER [AS MODIFIED] GRANTING END-PAYOR CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
CASE NO. 14-MD-02521-WHO

multiplier requested by class counsel. *E.g.*, *DreamWorks*, 2017 WL 2423161, at *10 (2.0 multiplier).

12. Viewed in light the above factors and awards in other cases, a 1.37 multiplier on class counsel's lodestar is warranted.

**B.     The Percentage-of-the Recovery Method**

13. In the Ninth Circuit, the benchmark for attorneys' fees under a percentage-of-the-recovery method is 25% of the settlement fund. *Bluetooth*, 654 F.3d at 942 (citation omitted). But "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (emphasis added). The factors courts consider when determining whether to depart from the 25% benchmark are: "(1) the result achieved; (2) the risk involved in the litigation; (3) the skill required and quality of work by counsel; (4) the contingent nature of the fee; and (5) awards made in similar cases." *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *9 (N.D. Cal. July 11, 2014) (citing *Vizcaino*, 290 F.3d at 1048-50). Consideration of these factors weighs in favor of class counsel's requested fee.

The first three factors largely mirror the considerations discussed above with respect to a lodestar multiplier. Just as those factors weigh in favor of a multiplier, they also weigh in favor of a fee award of one-third of the settlements. With respect to the fourth factor, class counsel undertook this matter on an entirely contingent fee basis with no apparently actively litigated, parallel government litigation, and litigated under the demanding rule-of-reason standard. Here, "the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing for their work." *Larsen*, 2014 WL 3404531, at *9.

As to the fifth factor, a fee award of one-third is within the range of awards in this Circuit. *See id.*, 2014 WL 3404531, at *9 (citing cases awarding fees of 32% or greater); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33%). Fee

5

awards of one-third are common in pay-for-delay litigation and were very recently awarded in two such cases. *E.g.*, *In re Aggrenox Antitrust Litig.*, No. 2:14-md-02516-SRU, ECF 821, at 9-10 (July 19, 2018) (awarding 33 1/3%); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 1:14-md-02503-RJC, ECF 1176, at 5 (July 18, 2018) (fee award of 33 1/3%; 1.08 multiplier); *In re Tricor Indirect Purchaser Antitrust Litig.*, No. 1:05-cv-00360-SLR, slip op. at 4, ECF No. 544 (D. Del. Oct. 28, 2009) (fee award of 33⅓% of the $67,500,000 settlement fund; 1.48 multiplier); *In re Relafen Antitrust Litig.*, No. 01-cv-12239-WGY, slip op. at 9, ECF No. 459 (D. Mass. Oct 13, 2005) (fee award of 33⅓% of the $67,000,000 settlement fund; 2.02 multiplier).

There is "no rule in the Ninth Circuit that requires a court to decrease the percentage of the fee award as the size of the settlement increases." *In re Toyota Corp. Unintended Marketing, Sales Pracs. and Prods. Liability Litig.*, 2013 WL 12327929, at *34 (C.D. Cal. July 24, 2013) (citing *Vizcaino*, 290 F.3d at 1047). Instead, the size of the fund is simply one factor courts look to when determining a reasonable fee. *Vizcaino*, 290 F.3d at 1047. "[F]ederal district courts across the country have, in the class action settlement context, routinely awarded class counsel fees in excess of the 25% 'benchmark,' even in so-called 'mega-fund' cases." *NCAA*, 2017 WL 6040065, at *5 & n.30 (collecting cases, including those awarding fees of 1/3 of the settlement fund); *see also*, *e.g.*, *Vizcaino*, 290 F.3d at 1050 (affirming 28% fee with a multiplier of 3.65); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533, at *6, 10 (N.D. Cal. Aug. 3, 2016) (awarding a fee of 27.5%, which was a 1.96 multiplier). The rationales for awarding fees at or below the 25% benchmark in some cases—*i.e.* to avoid a windfall for class counsel—do not apply here. As detailed above, the hours class counsel reasonably spent on this case and the relevant factors support the requested fee award.

II.     **Expenses**

Class counsel also seeks the payment of $3,948,118.06 in unreimbursed expenses. "Class counsel is entitled to reimbursement of reasonable expenses." *Larsen*, 2014 WL 3404531, at *10 (citing Fed. R. Civ. P. 23(h)). Class counsel seeks the reimbursement of costs reasonably incurred for the prosecution of the litigation on behalf of the End-Payor Class,

6

including filing fees, computerized research, copies, postage and messenger services, document hosting services, experts, sales data purchased from third-parties, transcripts, translations of documents, case-related travel, and distributing notice of the Court's certification order. The categories of expenses for which class counsel seeks reimbursement are the type routinely charged to clients, and should be reimbursed. *See High-Tech*, 2015 WL 5158730, at *16 (awarding costs for (1) expert witness fees; (2) mediators' fees; (3) document review; (4) court reporting and videographer services; (5) electronic research; (6) copying, mailing, and serving documents; and (7) case-related travel for Plaintiffs, witnesses, experts, and counsel); *In re Media Vision,* 913 F. Supp. 1362, 1367-72 (N.D.Cal.1996) (costs related to experts, photocopying, legal research fees, travel expenses, postage, and filing fees may be reimbursed). Class counsel's request for the reimbursement of their expenses in the amount of $3,948,118.06 is granted.

### III. Service Awards

Class counsel also request a service award of $10,000 to each of the nine Class Representatives ($90,000 total, which is .086% of total value of the Settlements). The Court finds that the requested service awards are reasonable. Each Class Representative actively participated in the litigation, including staying abreast of the progress of the case, collecting and produced documents, and responding to interrogatories and, in the case of two of the class representatives, preparing to testify at trial. Awards of $10,000 are frequently awarded to end-payors in pay-for-delay cases. *E.g.*, *Aggrenox*, No. 2:14-md-02516-SRU, ECF 821, at 10; *Solodyn*, No. 1:14-md-02503-RJC, ECF 1176, at 4. The requested awards are also consistent with similar service awards regularly approved in class actions in this district. *E.g. Alvarez v. Farmers Ins. Exchange*, 2017 WL 2214585, at *1 (N.D. Cal. Jan. 18, 2017) (approving nine $10,000 service awards that in the aggregate were 1.8% of the settlement value).

### IV. Objection of Pamela Sweeney

Only one individual—Pamela Sweeney—objected to the requested attorneys' fees and expense award. ECF 1035. Ms. Sweeney objects to class counsel's requested fees and expenses as too high, but she "does not cite any record evidence or legal authority in support of her

7

ORDER [AS MODIFIED] GRANTING END-PAYOR CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
CASE NO. 14-MD-02521-WHO

conclusory argument." *Rikos v. Proctor & Gamble*, 2018 WL 2009681, at *13 (S.D. Ohio Apr. 30, 2018) (overruling objection from Ms. Sweeney). As discussed above, class counsel's requested attorneys' fees and expenses are appropriate and supported by the record. Ms. Sweeney's objection is overruled.

Ms. Sweeney's objection was also untimely. The deadline to submit objections was August 21, 2018 (ECF 1016 at 5) and the postmark date on Ms. Sweeney's objections is August 25, 2018 (ECF 1035-1). While may "refuse to consider" untimely objections and I could reject the objection on this ground, *see In re Yahoo Mail Litig.*, 2016 WL 4474612, at *8 (N.D. Cal. Aug. 25, 2016) (denying untimely objection submitted by Patrick Sweeney) (citation omitted); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *3 (N.D. Cal. Dec. 27, 2011) ("refus[ing] to consider" an untimely objection), I have considered it on its merits and nonetheless overrule it..

## V. Payment Schedule

Endo will not make its second and third payments (of $10 million, or 9.5% of the total settlement amount, each) until February 15, 2019 and 2020, respectively. While the first distribution of settlement funds to class members in March 2019 will include Endo's first and second payments, Endo's third payment will not be available for distribution until March 2020.

In light of the staggered nature of Endo's payments, entitlement to attorneys' fees, expense, and service award payments shall occur according to the following schedule:

| Event | Date |
|---|---|
| 81% of the Court-awarded attorneys' fees, $3,948,118.06 in expenses, and the service awards may be distributed to Co-Lead Counsel for their allocation of fees and expenses to class counsel and to pay the class representatives their service awards | Thirty days after final approval and the running of any appeal(s) of the settlement approval (*i.e.* settlement "finality," as defined in the Settlement Agreements) |
| Endo's second payment ($10 million) | By February 15, 2019 |
| 9.5% of the court-awarded attorneys' fees may be distributed to Co-Lead Counsel for their allocation of fees to class counsel | Upon Endo's second payment |

8

ORDER [AS MODIFIED] GRANTING END-PAYOR CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
CASE NO. 14-MD-02521-WHO

| Event | Date |
|---|---|
| First distribution of settlement funds to class members | Early March 2019 |
| Endo's third payment ($10 million) | By February 15, 2010 |
| 9.5% of the court-awarded attorneys' fees may be distributed to Co-Lead Counsel for their allocation of fees to class counsel | Upon Endo's third payment |
| Second distribution of settlement funds | Early March 2020 |

The schedule protects the interests of the End-Payor Class by ensuring that class counsel will receive their awarded fees related to the subsequent Endo payments only after those payments have been received.

**IT IS SO ORDERED.**

DATED: September 20, 2018

_____
THE HONORABLE WILLIAM H. ORRICK
United States District Court Judge

9

ORDER [AS MODIFIED] GRANTING END-PAYOR CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
CASE NO. 14-MD-02521-WHO