1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| In re LIDODERM ANTITRUST LITIGATION | MDL Docket No. 14-md-02521-WHO |
|---|---|
| THIS DOCUMENT RELATES TO: END-PAYOR PLAINTIFF ACTIONS | **FINAL JUDGMENT AND ORDER** |

On March 20, 2018, End-Payor Plaintiffs[1], on behalf of themselves and the End-Payor Class, entered into separate settlement agreements with (a) defendant Endo Pharmaceuticals Inc. ("Endo"); (b) defendants Teikoku Pharma USA, Inc. and Teikoku Seiyaku Co., Ltd. (together, "Teikoku"); and (c) defendants Actavis, Inc. (f/k/a Watson Pharmaceuticals, Inc.), Watson Laboratories, Inc., and Actavis plc (together, "Watson" and together with Endo and Teikoku, "Defendants") (the "Settlement Agreements"). The Court preliminarily approved the Settlements on May 1, 2018.

The Court has considered End-Payor Plaintiffs' Motion for Final Approval, including all arguments and briefing presented and any opposition thereto, as well as any objections to the Settlements. The Court finds that the Settlements warrant final approval.

The Court **GRANTS** the Motion and **ORDERS** as follows:

1. Terms capitalized in this Order and not otherwise defined herein have the same meanings as those used in the Settlement Agreements and exhibits thereto.

I. **Final Approval**

2. This Court has subject matter jurisdiction over this action and each of the parties to the Settlements.

3. The members of the End-Payor Class were provided with notice of this action after the Court certified the End-Payor Class. At that time, all End-Payor Class members were given the opportunity to exclude themselves from the End-Payor Class. After the Court preliminarily approved the Settlements, members of the End-Payor Class were provided with notice of the Settlements through the Court-approved Notice and Claims Plan. Notice was distributed via both direct mail and publication notice. The Court finds that the End-Payor Class was reasonably and sufficiently notified of the Settlements in accordance with Federal Rule of Civil Procedure 23.

---

[1] Allied Services Division Welfare Fund, City of Providence, International Union of Operating Engineers Local 49 Health and Welfare Fund, International Union of Operating Engineers Local 132 Health and Welfare Fund, Iron Workers District Council of New England Welfare Fund, NECA-IBEW Welfare Trust Fund, United Food and Commercial Workers Local 1776 & Participating Employers Health and Welfare Fund, Welfare Plan of the International Union of Operating Engineers Locals 137, 137A, 137B, 137C, 137R, and Ottavio Gallotto.

4. The Court finds that the proposed Settlements are fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23 and are hereby approved. The Settlements were entered into after substantial discovery, pretrial preparations, and arm's-length negotiations by experienced counsel with the assistance of court-ordered mediation. There is no indicia that the Settlements were the product of collusion between Co-Lead Counsel for the End-Payor Class and Defendants.

5. The Settlements collectively provide $104.75 million in cash to settle the claims of the End-Payor Class. This amount is approximately 46% of End-Payor Plaintiffs' highest single damages claim they would have sought at trial ($229 million). *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009) (antitrust settlement for 30% of plaintiffs' estimated damages was "fair and reasonable no matter how you slice it"); *Edwards v. Nat'l Milk Producers Federation*, 2017 WL 3623734, at * 2 (N.D. Cal. June 26, 2017) (that settlement was 30% of estimated indirect purchaser damages "strongly weighs in favor of granting final approval"); *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015) (approving total settlements that were 14% of the class damages estimate, and noting that "District courts in the Ninth Circuit routinely approve settlements with much larger differences between the settlement amount and estimated damages.").

6. All members of the End-Payor Class shall be bound by the Settlement Agreements and all of their terms. Excluded from the End-Payor Class are the following entities: Carter Bank & Trust; CVS Health Corporation; Darby Dental Supply, LLC; Powell's City of Books; Rite Aid Corporation; The Western Union Co.; Wisconsin Evangelical Lutheran Synod; and Wood Group Management Services, Inc. *See* ECFs 946 and 997.

7. The claims of the End-Payor Class, including entities that opted out and later rejoined the End-Payor Class (ECF 997), in this litigation are dismissed with prejudice and without costs. Accordingly, the End-Payor Plaintiffs' Corrected Third Consolidated Amended Complaint (ECF 208) and Government Employees Health Association's Second Amended Complain (ECF 123) ("Complaints") are hereby dismissed with prejudice and without costs.

8. Upon the Settlements becoming final in accordance Paragraph 5 of each Settlement Agreement, Releasors (defined in the Settlement Agreements to include, among others, each of the End-Payor Plaintiffs and members of the End-Payor Class, including entities that opted out and later rejoined the End-Payor Class (ECF 997)), release, forever discharge, and covenant not to sue the Releasees with respect to any and all Released Claims.

9. The Settlements and this Judgment and Order shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or lack thereof, of any liability or wrongdoing by Defendants or lack thereof, or of the truth or lack thereof of any of the claims or allegations contained in the Complaints or any other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way other than to enforce the terms of this Settlement Agreement.

10. There is no just reason for delay in the entry of this Judgment and Order, and the Clerk of the Court is directed to immediately enter final judgment dismissing with prejudice the End-Payor Class's and Government Employees Health Association's claims against Defendants. Such judgment shall be final.

11. The Court retains exclusive jurisdiction to consider all further matters arising out of or connected with the Settlements and the Settlement Agreements, including the administration and consummation of the Settlements.

12. For a period of five years, the Clerk of the Court shall maintain the record of the entities that have excluded themselves from the End-Payor Class (which are identified in ECF 946, as modified by ECF 997) and that a certified copy of such records shall be provided to Defendants.

## II. Plan of Allocation

13. "[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Rieckborn v. Velti PLC*, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (citation omitted). The Court finds that the Plan of Allocation is fair, reasonable, and adequate and is hereby approved.

14. The Court finds that the allocation of the proceeds of the Settlements among consumers and third-party payors is fair and reasonable. The *pro rata* allocation of the consumer pool among

eligible consumer claimants and the third-party payor pool among third-party payor claims is also fair and reasonable. *See In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 9266493, at *8 (N.D. Cal. Dec. 17, 2015) (use of *pro rata* allocation plan "has frequently been determined to be fair, adequate, and reasonable in comparable cases") (collecting cases).

15. Although certain large insurers that had previously opted out of the End-Payor Class and have decided to return to the End-Payor Class may receive an initial portion of their claims payment before other claimants, the insurers will only receive their *pro rata* share of the settlement proceeds subject to a "true-up" adjustment after all claims are submitted, and any initial payment will not delay the distribution of settlement funds to other class members.

16. While EPPs' settlement notice and administration efforts are ongoing, and the final costs for those efforts are presently unknown, based on the estimated costs provided by EPPs' settlement administrator, the Court authorizes payment from the Settlement Fund of the reasonable costs of settlement notice and administration actually incurred, up to $725,000. In the event settlement notice and administration costs exceed $725,000, EPPs may submit a request to the Court to authorize payment of the additional amount.

**IT IS SO ORDERED.**

DATED:  September 20, 2018

_____
THE HONORABLE WILLIAM H. ORRICK
United States District Court Judge